STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006
Daniel A. Fliman
Jennifer S. Recine
Tiffany L. Ho
Isaac S. Sasson

*Counsel for Brooklyn Lender LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re* | Chapter 11 |
| 53 STANHOPE LLC,[1] | Case No. 19-23013 (RDD) |
| Debtor. | Jointly Administered |

*EX PARTE* **APPLICATION OF BROOKLYN LENDER LLC FOR ENTRY OF AN ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 AND 9016 AUTHORIZING THE EXAMINATION OF THE DEBTORS, CHASKIEL STRULOVITCH, DAVID GOLDWASSER, GC REALTY ADVISORS, NACHMAN STRULOVITCH, CHASKEIL JACOBOWITZ AND JOSHUA WAGSHAL**

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC Holding 1 LLC (0290); D&W Real Estate Spring LLC (4591); Meserole and Lorimer LLC (8197); 106 Kingston LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155) (collectively, the "Debtors").

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .....................................................................................................................3

    A.    The Bankruptcy Cases ..............................................................................3

    B.    The Mortgages ..........................................................................................4

    C.    The Federal Action ...................................................................................5

    D.    The Default, Acceleration and Foreclosure Actions.................................6

RELIEF REQUESTED.............................................................................................................8

BASIS FOR RELIEF REQUESTED...........................................................................................8

    I.    Brooklyn Lender Has Standing to Conduct a Rule 2004 Examination ..................8

    II.    An Examination of the Rule 2004 Parties on the Rule 2004 Topics
        is Appropriate in these Circumstances....................................................9

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*In re Bakalis*,
    199 B.R. 443 (Bankr. E.D.N.Y. 1996) ...................................................................12

*In re Drexel Burnham Lambert Grp., Inc.*,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991) ...................................................................8

*In re Ecam Publications, Inc.*,
    131 B.R. 556 (Bankr. S.D.N.Y. 1991) ...................................................................10

*ePlus, Inc. v. Katz (In re Metiom, Inc.)*,
    318 B.R. 263 (S.D.N.Y. 2004)...........................................................................10, 14

*In re GHR Companies, Inc.*,
    41 B.R. 655 (Bankr. D. Mass. 1984) ....................................................................10

*In re Harris Grp., Inc.*,
    64 B.R. 417 (Bankr. E.D. Pa. 1986) ................................................................10, 14

*In re Hughes*,
    281 B.R. 224 (Bankr. S.D.N.Y. 2002)...................................................................10

*Ionosphere Clubs, Inc. v. American National Bank and Trust Co. of Chicago*
    *(In re Ionosphere Clubs, Inc.)*, 156 B.R. 432 (S.D.N.Y. 1993)....................................... *passim*

*In re Lehman Bros. Inc.*,
    No. 08-01420(JMP)(SIPA), 2008 WL 5423214
    (Bankr. S.D.N.Y. Nov. 26, 2008) ...........................................................................8

*In re Madison Williams & Co., LLC*,
    No. 11-15896, 2014 WL 56070 (Bankr. S.D.N.Y. Jan. 7, 2014) ......................................10, 14

*People's Bank v. Poirier (In re Poirier)*,
    214 B.R. 53 (Bankr. D. Conn. 1997) .....................................................................8

*In re Recoton Corp.*,
    307 B.R. 751 (Bankr. S.D.N.Y. 2004)...................................................................12

*Schonberg, et al.  v. Strulovitch, et al.*,
    Case No. 17-cv-2161-CBA-RML (E.D.N.Y. Nov. 2, 2017) ...................................................6

*In re Symington*,
    209 B.R. 678 (Bankr. D. Md. 1997) ......................................................................10

*Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*,
    493 F.3d 345 (3d Cir. 2007), *as amended* (Oct. 12, 2007) ......................................................9

*In re Valley Forge Plaza Assocs.*,
    109 B.R. 669 (Bankr. E.D. Pa. 1990) .........................................................................9

**Statutes**

11 U.S.C. § 101(51B) ...........................................................................................................3

11 U.S.C. § 1109(b) ............................................................................................................9

**Other Authorities**

Fed. R. Bankr. P. 2004 .................................................................................. *passim*

Local Rule 1007-2 ..............................................................................................................3

Brooklyn Lender LLC ("Brooklyn Lender"), creditor in interest in the above-captioned jointly-administered bankruptcy cases (the "Bankruptcy Cases"), by and through the undersigned counsel, hereby submits this *ex parte* application (the "Application"), for entry of an order authorizing the examination of the Debtors, Chaskiel Strulovitch (a/k/a Yechezkel Strulovitch) ("Strulovitch"), David Goldwasser ("Goldwasser"), GC Realty Advisors ("GC Realty"), Nachman Strulovitch ("N. Strulovitch"), Chaskeil Jacobowitz ("Jacobowitz") and Joshua Wagshal ("Wagshal," and, collectively with the Debtors, Strulovitch, Goldwasser, GC Realty, N. Strulovitch and Jacobowitz, the "Rule 2004 Parties") pursuant to Rule 2004 ("Rule 2004") and Rule 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") and, in support thereof, respectfully states as follows:

## PRELIMINARY STATEMENT[1]

1.     By this Application, Brooklyn Lender seeks to examine, *first*, who controls the Debtors and, *second*, whether they should stay in control.

2.     Questions concerning the Debtors' ownership, management and control have been the subjects of litigation for the last one and a half years.  Brooklyn Lender sought foreclosure on its Loans upon learning of purposeful misrepresentations on these topics made by the Debtors and their (purported) principal, Chaskiel Strulovitch.  Statements filed by Strulovitch, under penalty of perjury, in the Foreclosure Actions and in a separate securities fraud action, establish that the Debtors and Strulovitch lied in loan documents concerning these issues.  Yet, to this day, complete opacity remains concerning who directs decisions regarding the Debtors and their estates.  Indeed, the Petitions commencing these Bankruptcy Cases

---

[1]     Capitalized terms used in this Preliminary Statement but not herein defined shall have the meanings otherwise ascribed to them herein.

introduced a new actor: David Goldwasser, who signed the Petitions, through his entity GC Realty Advisors, as a Vice President for each Debtor. To Brooklyn Lender's knowledge, Goldwasser was not previously involved with the Debtors, and understanding his new role and responsibilities with respect to these Bankruptcy Cases and the Debtors' management is of paramount importance.

3.    Understanding who controls the debtor is necessary in all cases; however, such an examination is particularly critical here to enable Brooklyn Lender (as well as the Court and other stakeholders) to assess if the Debtors can be managed free of fraud, deceit and dishonesty. To the extent Strulovitch exerts control over the Debtors, allegations against him in the securities fraud action, as well as his misrepresentations in connection with the Loan Documents -- which strongly suggest a pattern of misconduct -- must be investigated. Moreover, to the extent that Goldwasser exerts control over the Debtors, then, among other things, his prior criminal conviction for fraud, for which he was sentenced to prison and ordered by a Federal judge "not to be employed in any position requiring fiduciary responsibilities," should be further examined.

4.    Ensuring that the persons in control of the Debtors, the Bankruptcy Cases and these estates are trustworthy and operate free of misconduct is essential. The examination sought by Brooklyn Lender will yield such information and, additionally, will enable Brooklyn Lender (and others) to determine if the appointment of a chapter 11 trustee is warranted.

5.    Last, the examination sought by Brooklyn Lender relates to facts underlying its claims against the Debtors. Brooklyn Lender's claims are, by far, the Debtors' largest liabilities and establishing the amount of such claims is needed to formulate any plan in these Bankruptcy Cases. Brooklyn Lender's ability to investigate promptly important facts underlying its claims

(including the existence and timing of prepetition defaults) is imperative and benefits all stakeholders by facilitating a quicker emergence.

6.    As such, and for the reasons set forth further below, the Application should be granted.

## BACKGROUND

**A.    The Bankruptcy Cases**

7.    On May 20, 2019 and May 21, 2019 (the "Petition Date"), the Debtors commenced the Bankruptcy Cases by filing voluntary petitions (collectively, the "Petitions") for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Court consolidated the Bankruptcy Cases and they are being jointly administered for procedural purposes only by Order dated May 24, 2019. (*See Order Directing Joint Administration* [Case No. 19-23013 at Docket No. 6].)

8.    Each of the Debtors is in the business of owning residential apartment buildings in Brooklyn, New York. (*See Application for Joint Administration* [Case No. 19-23013 at Docket No. 4] ("Joint Admin. Motion"), at ¶ 3.) Approximately half of the Petitions identify the corresponding debtor as a Single Asset Real Estate entity (as defined in 11 U.S.C. § 101(51B)).

9.    According to the Debtors, they are "'affiliates' through a common control." (Joint Admin. Motion, at ¶ 9.) However, the Petitions and related filings did not identify the person(s) or entit(ies) that commonly control the Debtors and did not include the accompanying required schedules, lists of equity security holders or Local Rule 1007-2 affidavits. The Petitions are each signed by "David Goldwasser," an "authorized signatory of GC Realty Advisors," as "Vice President" of the corresponding debtor -- who Brooklyn Lender is not aware to have had any involvement with the Debtors prior to the commencement of the Bankruptcy Cases.

10.     On June 3, 2019, each of the Debtors filed their schedules, lists of equity security holders and Local Rule 1007-2 affidavits (collectively, the "June 3 Filings"). However, the June 3 Filings continue to be deficient in several material respects.

11.     While the June 3 Filings include an affidavit by David Goldwasser (the "Goldwasser Aff."), the affidavits fail to contain certain information required by Local Rule 1007-2. The missing information includes: (1) the names of the individuals who comprise the debtor's existing senior management, their tenure with the Debtors and a brief summary of their relevant responsibilities and experience, as required by Local Rule 1007-2(a)(12); and (2) all of the additional information that operating debtors are required to disclose pursuant to Local Rule 1007-2(b), including amounts proposed to be paid to employees or amounts to be paid for services to officers or financial or business consultants, like GC Realty and Goldwasser.

12.     Moreover, Debtor 119 Rogers LLC failed to include a list of equity security holders in its entirety and Debtor C & YSW LLC's list of equity security holders is incorrect as it lists Chaskiel Strulovitch as the "510%" owner of C & YSW LLC's membership interests.

**B.    The Mortgages**

13.     Between 2012 and 2016, Signature Bank ("Signature") provided loans to each of the Debtors (each a "Loan" and collectively, the "Loans") secured by mortgages on the Debtors' residential apartment buildings located in Brooklyn, New York (each a "Mortgage" and collectively, the "Mortgages"). (Joint Admin. Motion, at ¶ 3.) In connection with each of the Loans, each Debtor, through Strulovitch, represented on the documents attendant to each Loan (the "Loan Documents") that Strulovitch was the "Sole Member" and 100% owner of each Debtor entity.

14.     In connection with the Loans, and to provide further security to Signature for extending credit to the Debtors, Strulovitch provided guarantees (each a "Guarantee" and

collectively, the "Guarantees"), whereby he "unconditionally and absolutely" guaranteed the payment of any losses incurred by Signature arising out of, or due to, among other things "fraud or intentional misrepresentation of either the Mortgagor or a Principal of the Mortgagor; [and] the gross negligence or willful misconduct of either the Mortgagor or a Principal of the Mortgagor."

15.    On May 17, 2017, Signature assigned the Loans, Mortgages and Guarantees to Brooklyn Lender.

**C.    The Federal Action**

16.    On April 10, 2017, Strulovitch and certain of the Debtors, among others, were named as defendants in a complaint commenced in the United States District Court for the Eastern District of New York (Case No. 1-17-cv-2161-CBA-RML) (the "Federal Action").

17.    The complaint in the Federal Action alleged that, beginning in 2012, Strulovitch and others engaged in a scheme to fraudulently induce the plaintiffs -- foreign national investors and part owners of the Debtors -- to invest in the acquisition and development of certain real estate, only to then unlawfully funnel substantial portions of the plaintiffs' investments to themselves or certain other properties.

18.    The plaintiffs in the Federal Action further alleged that Strulovitch "distributed fraudulent prospectuses for each of the Investment Properties . . . [and] distributed fraudulent updates and assurances as to the status of the investments and their rate of progress to avoid the arousal of any suspicion."  The plaintiffs alleged that they suffered approximately $20 million of damages.

19.    During the pendency of the Federal Action, Strulovitch admitted that, contrary to his sworn representations made in connection with the Loans, he was not in fact the sole member or 100% owner of many of the Debtor entities.

20.    On November 2, 2017, Judge Amon dismissed in part the Federal Action, referring certain causes of action contained therein to arbitration pursuant to the terms of the governing documents.  *See Schonberg, et al. v. Strulovitch, et al.*, Case No. 17-cv-2161-CBA-RML, [Docket No. 257] (E.D.N.Y. Nov. 2, 2017) at *46-47.

## D.    The Default, Acceleration and Foreclosure Actions

21.    Upon becoming aware of the Federal Action, and in particular, Strulovitch's admissions regarding the ownership structure of the Debtor entities, in May of 2017, Brooklyn Lender placed the Debtors on notice that an event of default had occurred pursuant to, among other provisions, paragraph 18(g) of the Mortgage documents, which provided that the Loans will become due and payable at the option of Brooklyn Lender:

> if any representation or warranty of the Mortgagor or of any person (a 'guarantor') guaranteeing payment of the Debt or any portion thereof or the performance by the Mortgagor of any of the terms of the notes, the Mortgage or this Agreement, made herein or in any such guaranty or in any certificate, report, financial statement or other instrument furnished in connection with the making of the notes, the Mortgage, this Agreement or any such guaranty, shall prove false or misleading in any material respect.

22.    In October of 2017, Brooklyn Lender filed fourteen (14) foreclosure actions (the "Foreclosure Actions") on the accelerated Loans against Strulovitch-owned or controlled entities.[2]

---

[2]    *Brooklyn Lender LLC v. D & W Real Estate Spring LLC, et al.*, Kings County Supreme Court Index No. 519437/2017; *Brooklyn Lender LLC v. C & YSW, LLC, et al.*, Kings County Supreme Court Index No. 519665/2017; *Brooklyn Lender LLC v. 1125-1133 Greene Ave LLC, et al.*, Kings County Supreme Court Index No. 519671/2017; *Brooklyn Lender LLC v. 92 South 4th St LLC, et al.*, Kings County Supreme Court Index No. 519682/2017; *Brooklyn Lender LLC v. 55 Stanhope LLC, et al.*, Kings County Supreme Court Index No. 519695/2017; *Brooklyn Lender LLC v. 167 Hart LLC, et al.*, Kings County Supreme Court Index No. 519812/2017; *Brooklyn Lender LLC v. 106 Kingston LLC, et al.*, Kings County Supreme Court Index No. 519820/2017; *Brooklyn Lender LLC v. Eighteen Homes LLC, et al.*, Kings County Supreme Court Index No. 519825/2017; *Brooklyn Lender LLC v. 618 Lafayette LLC, et al.*, Kings County Supreme Court Index No. 519826/2017; *Brooklyn Lender LLC v. 1213 Jefferson LLC, et al.*, Kings County

23.    In the Foreclosure Actions, Brooklyn Lender alleged, among other things, that Strulovitch's misrepresentations regarding the Debtors' ownership structure were material under the terms of the Loan Documents, in that they directly implicated each Debtor's honesty and credit-worthiness, ability to fully repay the Loans and ownership of the properties, among other important credit considerations.

24.    Accordingly, in the Foreclosure Actions, Brooklyn Lender sought to declare the outstanding Loans immediately due and payable, with interest due at the default rate from the date of Strulovitch's material misrepresentations at loan origination.[3]

25.    Although the Foreclosure Actions were outstanding for more than a year and a half, the Foreclosure Actions did not advance to judgment.  Instead, among other things, counterclaims by Strulovitch and the Debtors were brought and dismissed, Strulovitch and the Debtors' motions to dismiss the Foreclosure Actions were denied and a temporary receiver was appointed to manage certain of the Debtor-owned properties.  On January 17, 2019, the Debtors moved by Order to Show Cause for leave to reargue Brooklyn Lender's motion to appoint a receiver and to temporarily stay and restrain enforcement of the receiver appointment pending the motion to reargue.  The Debtors commenced these Bankruptcy Cases while cross-motions for summary judgment were pending.  No discovery from the Rule 2004 Parties took place in the Foreclosure Actions.

---

Supreme Court Index No. 519842/2017; *Brooklyn Lender LLC v. 119 Rogers LLC, et al.*, Kings County Supreme Court Index No. 519843/2017; *Brooklyn Lender LLC v. 127 Rogers LLC, et al.*, Kings County Supreme Court Index No. 519848/2017; *Brooklyn Lender LLC v. 325 Franklin LLC, et al.*, Kings County Supreme Court Index No. 519849/2017; and *Brooklyn Lender LLC v. APC Holding 1 LLC, et al.*, Kings County Supreme Court Index No. 519969/2017.

[3]    Brooklyn Lender reserves all rights with respect to the Foreclosure Actions, and in particular, the other defaults and events of default alleged therein that are unrelated to paragraph 18(g) of the Mortgages.

## RELIEF REQUESTED

26.    Through this Application, Brooklyn Lender seeks entry of an Order authorizing Brooklyn Lender to conduct oral examinations of, and to seek the production of documents from, the Rule 2004 Parties (and to issue subpoenas in connection with same) relating to: (a) current ownership and management of the Debtors, (b) any fraud, deceit or dishonesty in connection with management of the Debtors; (c) any facts underpinning Brooklyn Lender's claims against the Debtors and (d) any materials related to or arising in connection with the foregoing topics (a)-(c) (collectively, the "Rule 2004 Topics").  Attached as Schedule 1 to Exhibits 1 and 2 of the proposed Order (annexed hereto as Exhibit A) is the form of document requests that Brooklyn Lender proposes to serve upon the Rule 2004 Parties.

## BASIS FOR RELIEF REQUESTED

## I.    Brooklyn Lender Has Standing to Conduct a Rule 2004 Examination

27.    An examination pursuant to Rule 2004 of the Bankruptcy Rules may be ordered "[o]n motion of any party in interest."  Fed. R. Bankr. P. 2004(a).  The primary purpose of a Rule 2004 examination is to determine the full extent of the estate, including all claims and other assets.  *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991).  Accordingly, a Rule 2004 examination is not limited to debtors and official committees.  Instead, courts have repeatedly recognized that creditors and other parties in interest may conduct a Rule 2004 examination.  *See In re Lehman Bros. Inc.*, No. 08-01420(JMP)(SIPA), 2008 WL 5423214, at *2-3 (Bankr. S.D.N.Y. Nov. 26, 2008) (granting motion filed by individual creditors to conduct Rule 2004 examination to determine "what is owed to these individuals"); *People's Bank v. Poirier (In re Poirier)*, 214 B.R. 53, 58 (Bankr. D. Conn. 1997) (stating that "[t]he broad scope and ready availability of a Rule 2004 Examination *provides a forum for an individual creditor* to question a debtor at great length on all matters relevant to the debtors' financial

affairs . . . .") (emphasis added); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (stating that Rule 2004 is intended "to allow a trustee, *or others interested in accomplishing the same ends*, to discover and investigate how to bring to light possession of assets of the debtor") (emphasis added).

28.     Brooklyn Lender is a "party in interest" with standing to seek authorization for, and to undertake, a Rule 2004 examination.  *See* 11 U.S.C. § 1109(b) ("A party in interest, including . . . a creditor . . . may raise and may appear and be heard on any issue in a case under this chapter.").

## II.     An Examination of the Rule 2004 Parties on the Rule 2004 Topics is Appropriate in these Circumstances

29.     A Rule 2004 examination "allows parties with an interest in the bankruptcy estate to conduct discovery into *matters affecting the estate*."  *Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*, 493 F.3d 345, 354 n.6 (3d Cir. 2007), *as amended* (Oct. 12, 2007) (emphasis added).  The examination may relate to, among other things, "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtors' estate."  Fed. R. Bankr. P. 2004(b).  Additionally, in a chapter 11 case, Rule 2004 provides that examination "may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and *any other matter relevant to the case* or to the formulation of a plan."  *Id.* (emphasis added).

30.     Courts have repeatedly recognized the extraordinarily broad scope of an examination under Rule 2004 and have thus analogized the scope of a Rule 2004 examination to a "fishing expedition."  *See Ionosphere Clubs, Inc. v. American National Bank and Trust Co. of*

*Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 432 (S.D.N.Y. 1993) (stating the Rule 2004 "is supposed to be a 'fishing expedition,' as exploratory and groping as appears proper to the [e]xaminer") *aff'd*, 17 F.3d 600 (2d Cir. 1994); *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) (same).  Indeed, the scope of a Rule 2004 examination is broader than discovery generally governed by the Federal Rules of Civil Procedure.  *See In re Ecam Publications, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991) (noting that the scope of Rule 2004 questioning is extremely broad).

31.    This broad application of Rule 2004 is consistent with the Rule's purpose:  "to give parties in interest an opportunity to examine individuals having knowledge of the financial affairs of the debtor in order to preserve the rights of creditors." *In re GHR Companies, Inc.*, 41 B.R. 655, 660 (Bankr. D. Mass. 1984).  Courts therefore have generally permitted the examination of "any third party who can be shown to have a relationship with the debtor." *In re Ionosphere Clubs, Inc.*, 156 B.R. at 432.

32.    Moreover, a Rule 2004 examination "need not be tied to specific factual allegations at issue between parties to a complaint or contested matter." *In re Symington*, 209 B.R. 678, 684 (Bankr. D. Md. 1997).  To the contrary, courts have repeatedly held that good cause exists to warrant a Rule 2004 examination where, as here, a creditor intends to use the examination "to establish the claim of the party seeking the examination." *In re Madison Williams & Co., LLC*, No. 11-15896, 2014 WL 56070, at \*4 (Bankr. S.D.N.Y. Jan. 7, 2014) (*citing ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 268 (S.D.N.Y. 2004) ("Generally, good cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination") (citations omitted)); *see also In re Harris Grp., Inc.*, 64 B.R. 417, 419-20 (Bankr. E.D. Pa. 1986).

33.     While the scope of a Rule 2004 examination is broad, Brooklyn Lender has narrowly tailored the requested examination to appropriate topics, *i.e.*, the Rule 2004 Topics, which fall squarely within the permissible scope of Rule 2004.

34.     **First**, examination regarding the ownership, management and control of the Debtors is essential to determining the identity of person(s) that will be administering the estates and that may have influence over decision-making by the Debtors.  While full disclosure of such basic information is important in all bankruptcy cases, it is especially critical here.

35.     Strulovitch has, and continues to, provide false and conflicting information regarding the ownership of the Debtors.  For instance, in the June 3 Filings, thirteen of the Debtors list Chaskiel Strulovitch as owner of 100% of their membership interests. [4]  However, these representations directly contradict Strulovitch's representations made less than two years earlier in the Federal Action, where, for example, the publicly disclosed operating agreements for Debtors 106 Kingston LLC, 325 Franklin LLC, 618 Lafayette LLC and 1213 Jefferson LLC each confirm that Strulovitch is not the 100% owner of the membership interest in those Debtors.  The three remaining lists of equity security holders filed by Debtors 167 Hart LLC, Meserole and Lorimer LLC and D & W Real Estate Spring LLC disclose for the first time that these Debtors' equity holders include Nachman Strulovitch, Chaskeil Jacobowitz and Joshua Wagshal, each of whom was never previously disclosed to Brooklyn Lender.  Thus, it remains a mystery as to who actually owns the Debtors and who is directly (or effectively) directing decisions concerning the Debtors.

---

[4]     As discussed above, Debtor C & YSW LLC lists Chaskiel Strulovitch as "510%" owner of its membership interests leaving Brooklyn Lender unaware as to whether there are any other outstanding owners of C & YSW LLC's membership interests.  Debtor 119 Rogers LLC entirely failed to include a list of equity security holders in its June 3 Filings.

36.    Indeed, the eleventh-hour introduction of Goldwasser and GC Realty as purported "Vice President" of each Debtor further underscores the total lack of clarity concerning the Debtors' ownership and management, and bolsters the absolute need to examine who controls, or could claim control over, the Debtors and their estates.

37.    **Second**, ample cause exists to examine if fraud, deceit and dishonesty infects the Debtors' management and such examination is essential so that Brooklyn Lender can, among other things, assess whether it should seek the appointment of a chapter 11 trustee.

38.    The scope of Rule 2004 covers examinations on these topics. *See*, *e.g.*, *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and *assessing whether wrongdoing has occurred*") (emphasis added); *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (purpose of Rule 2004 motion is to "facilitate the discovery of assets and the *unearthing of frauds*") (emphasis added).

39.    The Federal Action includes credible allegations regarding Strulovitch's fraud, deceit and dishonesty.  While his misrepresentations concerning ownership and control of the Debtors have been demonstrated in prior proceedings, the existence of any other misdeeds that may bear upon management of the Debtors must be examined.

40.    Moreover, concerns of fraud and dishonesty infecting the Debtors' management are heightened by Goldwasser's involvement.  In June 2003, Goldwasser (who, as noted above, signed the Petitions here), pled guilty to defrauding two banks and admitted that "in connection with numerous applications for loans for others and for a company in which he had a beneficial interest, he submitted false financial documents to the banks, including false tax returns and false

bank and brokerage statements." On October 7, 2003, United States District Judge Charles L.

Brieant sentenced Goldwasser to 27 months imprisonment, ordered him to pay $3,318,680.80 in

restitution and, importantly, ordered that Goldwasser "***is not to be employed in any position***

***requiring fiduciary responsibilities***."[5]

41.     Given the legitimate questions regarding the integrity of the two known

individuals with potential authority and control over the Debtors, Brooklyn Lender's requested

investigation should be granted.[6]

42.     **Third,** Brooklyn Lender is entitled to examine the Rule 2004 Parties concerning

facts relevant to its claims against the estates.

---

[5]     *See USA vs. Goldwasser*, 03-cr-00785-CLB at Docket 14 (Oct. 7, 2003) ("JUDGMENT #03,0339 WP. Deft David Goldwasser (1) pled guilty to count 1. Imprisonment: 27 months on count 1; Supervised Release: 36 months on count 1. Special Assessment: $100.00 due immediately. The Court recommends that the Deft be incarcerated at Otisville, NY due to religious considerations. Deft shall surrender for service of sentence before 2:00pm on 12/1/03. The drug testing condition is suspended based on the Courts determination that the Deft poses a low risk of future substance abuse. Deft shall not possess a firearm. Special Conditions of Supervision: The Deft shall provide the probation officer with access to any requested financial information. The Deft shall not incur new credit charges or open additional lines of credit without the approval of the probation officer. The Deft is not to be employed in any position requiring fiduciary responsibilities. In the event the Deft is incarcerated and engaged in a BOP non-UNICOR work program, the Deft shall pay $25.00 per quarter toward the criminal financial penalties. However, if the Deft participates in the BOP's UNICOR program as a grade 1 through 4, the Deft shall pay 50% of his monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations. Any payment made that is not payment in full shall be divided proportionately among the persons named. Deft is to make restitution in the amount of $3,318,680.80 payable to the Clerk of Court, US District Court, for disbursement as follows: First Union National Bank (Wachovia Bank), 190 River Road, Summit, NJ 07901, Attn: Peter Mottley, Vice Pres., Mail Code #: NJ3181, (908) 598-3227 - $2,775,526.00 and Key Bank, 100 Gannett Dr., South Portland, ME 04106, Attn: Ann Poss, Senior Vice Pres, (207) 842-1019 - $543,154.80.; Judgment and Commitment issued to U.S. Marshal ( Signed by Judge Charles L. Brieant ) (ac) (Entered: 10/08/2003).") (emphasis added).

[6]     Notably, examination of the non-Debtor parties is appropriate here given their purported ownership and/or control over the Debtors. *See In re Ionosphere Clubs, Inc.*, 156 B.R. at 432 (allowing discovery of "any third party who can be shown to have a relationship with the debtor").

43.    As set forth above, the scope of Rule 2004 covers an examination of "liabilities

. . . of the debtor," which would include Brooklyn Lender's claims.  Fed. R. Bankr. P. 2004(b);

*see also In re Madison Williams & Co., LLC*, No. 11-15896, 2014 WL 56070, at *4; *In re*

*Metiom, Inc.*, 318 B.R. at 268; *In re Harris Grp., Inc.*, 64 B.R. at 419-20.

44.    Brooklyn Lender is the Debtors' largest creditor, by far, and setting the amount of

its claims is imperative to the progress of the Bankruptcy Cases.   At the heart of Brooklyn

Lender's claims are questions concerning the timing and existence of defaults under the Loan

Documents, all of which are disputed by the Debtors.   Indeed, the Debtors have represented that

one of the reasons they filed these Bankruptcy Cases is "to obtain a determination that the default

notices were defective," underscoring the importance of the requested examination.   (*See*

Goldwasser Aff., at ¶ 10.)   Many of the factual issues underlying those questions overlap with

the other Rule 2004 Topics, *i.e.*, regarding current management and control.   However, several

other factual issues relevant to Brooklyn Lender's claims do not overlap, in particular, historical

ownership and control and the timing of defaults under the Loan Documents.   These issues must

be examined.

## NO PRIOR REQUEST

45.    No prior request for the relief sought in this Motion has been made by Brooklyn

Lender or any other party in these proceedings.

## NOTICE

46.    Notice of this Application will be provided to (a) counsel to the Debtors; (b) the

Office of the United States Trustee for the Southern District of New York; (c) the Rule 2004

Parties; and (d) those parties that have requested notice in these cases pursuant to Bankruptcy

Rule 2002.

## RESERVATION OF RIGHTS

47.    Brooklyn Lender reserves all rights with respect to the Application and these Bankruptcy Cases, including the right to amend and/or supplement this Application, the right to participate in additional briefing, and the right to be heard at any hearing or trial related to the Application.  Nothing contained herein shall constitute a waiver of any of the rights or remedies of Brooklyn Lender, each of which is expressly reserved.

## CONCLUSION

WHEREFORE, for the reasons stated herein, Brooklyn Lender respectfully requests that this Court enter an Order, pursuant to Rule 2004, in the form attached hereto as Exhibit A: (i) requiring the production of documents by the Rule 2004 Parties not later than twenty (20) days after service of a request, this Application and an Order granting the Application; (ii) requiring Rule 2004 Parties to appear for an examination not later than thirty (30) days after service of a request, this Application and an Order granting the Application and (iii) granting to Brooklyn Lender such other and further relief as this Court may deem just and proper.

Dated: June 6, 2019
      New York, New York

STROOCK & STROOCK & LAVAN LLP

/s/ Daniel A. Fliman
Daniel A. Fliman
Jennifer S. Recine
Tiffany L. Ho
Isaac S. Sasson
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

Counsel for Brooklyn Lender LLC

# **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

In re                                                                    Case No. 19-23013 (RDD)

53 Stanhope LLC, *et al.*[1],                                    Chapter 11

                                        Debtors.              (Jointly Administered)

---------------------------------------------------------------

## ORDER PURSUANT TO RULES 2004 AND 9016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING DISCOVERY AND EXAMINATION OF THE DEBTORS, CHASKIEL STRULOVITCH, DAVID GOLDWASSER, GC REALTY ADVISORS, NACHMAN STRULOVITCH, CHASKEIL JACOBOWITZ AND JOSHUA WAGSHAL

Upon the *ex parte* application, dated June 6, 2019, (the "Application"), of Brooklyn Lender LLC (the "Movant") for an order pursuant to Fed. R. Bankr. P. 2004 and 9016 directing the production of documents by and oral examination of the Debtors, Chaskiel Strulovitch (a/k/a Yechezkel Strulovitch) ("Strulovitch"), David Goldwasser ("Goldwasser"), GC Realty Advisors ("GC Realty") Nachman Strulovitch ("N. Strulovitch"), Chaskeil Jacobowitz ("Jacobowitz") and Joshua Wagshal ("Wagshal") and any other employee most knowledgeable about the Rule 2004 Topics (as defined herein) (collectively, with the Debtors, Strulovitch, Goldwasser, GC Realty, N. Strulovitch, Jacobowitz and Wagshal the "Rule 2004 Parties") about: (a) the current ownership and management of the Debtors; (b) any fraud, deceit or dishonesty in connection with management of the Debtors; (c) any facts underpinning the Movant's claims against the Debtors and (d) any materials related to or arising in connection with the foregoing topics

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC Holding 1 LLC (0290); D&W Real Estate Spring LLC (4591); Meserole and Lorimer LLC (8197); 106 Kingston LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155).

(a)-(c) (together, the "Rule 2004 Topics"), and, after due deliberation, the Court having concluded that the Movant has established sufficient cause for the relief granted herein; and no additional notice being required except as specified herein; now, therefore, it is hereby ORDERED that:

1.    The Movant is authorized, pursuant to Fed. R. Bankr. P. 2004, to conduct oral examinations of the Rule 2004 Parties regarding the Rule 2004 Topics.

2.    The Movant is authorized, pursuant to Fed. R. Bankr. P. 2004 and 9016, to issue requests and subpoenas, in the forms annexed hereto as Exhibits 1 and 2, for the production of documents relevant to the Rule 2004 Topics and for attendance at the foregoing examinations (each, a "Rule 2004 Examination Request"), which the Movant is authorized to serve on the Rule 2004 Parties via U.S. mail.

3.    Not later than twenty (20) days after the service of a Rule 2004 Examination Request, the corresponding Rule 2004 Parties shall produce the documents (including electronically stored information) in their possession, custody or control referenced in such Rule 2004 Examination Request, to be delivered to the offices of Stroock & Stroock & Lavan LLP located at 180 Maiden Lane, New York, New York 10038 (the Movant's counsel).

4.    Not later than thirty (30) days after the service of a Rule 2004 Examination Request, the Application and a copy of this Order, the corresponding Rule 2004 Parties shall appear for an examination at the offices of Stroock & Stroock & Lavan LLP located at 180 Maiden Lane, New York, New York 10038.

5.    The production and examination required hereby are subject to any applicable privilege; provided, that if production of a document required to be produced hereby is withheld on the basis of an asserted privilege, the party asserting privilege with respect to such document

shall provide a proper privilege log to the Movant's counsel at the time of document production hereunder.

6.    The recipient of each Rule 2004 Examination Request shall inform the Movant's counsel of its search terms and other search parameters when conducting an electronic search. If necessary, the recipient of each Rule 2004 Examination Request shall meet and confer with the Movant's counsel to attempt to agree on appropriate search terms and other search parameters.

7.    All disputes concerning a Rule 2004 Examination Request, including objections thereto, that are not resolved by agreement of the parties may be raised only by letter brief to the Court not exceeding five pages, single-spaced.  The other party shall file a responsive letter brief within three business days, which shall not exceed five pages, single-spaced.  Copies of such letter briefs shall also be emailed to the Court's chambers.

8.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  White Plains, New York

_____ __, _____          _____

                                                    THE HONORABLE ROBERT D. DRAIN
                                                    UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 1**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re

53 Stanhope LLC, *et al.*,[1]

                          Debtors.

---

Case No. 19-23013 (RDD)

Chapter 11

(Jointly Administered)

## BROOKLYN LENDER LLC'S
## NOTICE OF EXAMINATION AND FOR PRODUCTION OF DOCUMENTS
## PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF
## BANKRUPTCY PROCEDURE

PLEASE TAKE NOTICE that pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, Brooklyn Lender LLC ("Brooklyn Lender"), by its attorneys, requests that [●] produce the documents described in Schedule 1 attached hereto by delivering such documents to its counsel, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038, not later than 20 days after service of this notice.

PLEASE TAKE FURTHER NOTICE that pursuant to the above-mentioned rule, Brooklyn Lender, by its attorneys, will undertake an examination of [●], on [●], at [●] at the offices of Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038. The examination shall be taken before a notary public or such other person authorized by the laws of the State of New York to administer oaths, and shall be recorded by audio-visual and stenographic means. The examination will continue from day to day until completed or adjourned.

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC Holding 1 LLC (0290); D&W Real Estate Spring LLC (4591); Meserole and Lorimer LLC (8197); 106 Kingston LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155).

Dated: _____, 2019            STROOCK & STROOCK & LAVAN LLP
       New York, New York

                                    /s/ DRAFT
                                    Daniel A. Fliman
                                    Jennifer S. Recine
                                    Tiffany L. Ho
                                    Isaac S. Sasson
                                    180 Maiden Lane
                                    New York, New York 10038
                                    Telephone: (212) 806-5400
                                    Facsimile: (212) 806-6006

                                    *Counsel for Brooklyn Lender LLC*

## SCHEDULE 1

## DEFINITIONS

1.      "Bankruptcy Case" means the chapter 11 proceeding jointly administered in *In re 53 Stanhope LLC, et al.*, Case No. 19-23013 (RDD), commenced on May 20 and 21, 2019 and pending in the United States Bankruptcy Court for the Southern District of New York.

2.      The term "communication" means any transmittal and/or receipt of information (in the form of facts, ideas, inquiries or otherwise), whether oral or written and whether chance, prearranged, formal or informal, and specifically includes, but is not limited to, conversations in person, telephone conversations, e-mail (including instant messages and text messages), voicemail, letters, memoranda, statements, media releases, press conferences, magazines and newspaper articles, testimony before a governmental body, and video and audio transmissions. For the avoidance of doubt, the term "communication" shall include any and all electronic messages and/or conversations using text messaging and mobile device chat services, including, without limitation, BlackBerry Messenger, Google Hangouts, Apple iMessage, Facebook Messenger, WhatsApp, KakaoTalk, Line, and SnapChat.

3.      The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

4.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure, *i.e.*, "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form."   A draft or non-identical copy is a separate

document within the meaning of this term. For the avoidance of doubt, the term "document" shall include any and all forms of recorded communications, including, without limitation, records of electronic messages and/or conversations using text messaging and mobile device chat services.

5.    "Debtor-Entities" means 53 Stanhope LLC, 55 Stanhope LLC, 92 South 4th St LLC, 106 Kingston LLC, 119 Rogers LLC, 127 Rogers LLC, 167 Hart LLC, 325 Franklin LLC, 618 Lafayette LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC, 1213 Jefferson LLC, APC Holding 1 LLC, C & YSW, LLC, D & W Real Estate Spring LLC, Eighteen Homes LLC, Meserole and Lorimer LLC, and Natzliach LLC, which are debtors in the above-captioned Chapter 11 cases.

6.    "Properties" refer to the following properties:

  a) 53 Stanhope Street, Brooklyn, New York 11221

  b) 55 Stanhope Street, Brooklyn, New York 11221

  c) 92 South 4th Street, Brooklyn, New York 11249

  d) 106 Kingston Avenue, Brooklyn, New York 11213

  e) 119 Rogers Avenue, Brooklyn, New York 11216

  f) 127 Rogers Avenue, Brooklyn, New York 11216

  g) 167 Hart Street, Brooklyn, New York 11206

  h) 325 Franklin Avenue, Brooklyn, New York 11238

  i) 618 Lafayette Avenue, Brooklyn, New York 11216

  j) 834 Metropolitan Avenue, Brooklyn, New York 11211

  k) 1125 Greene Avenue, Brooklyn, New York 11221

  l) 1127 Greene Avenue, Brooklyn, New York 11221

m) 1129 Greene Avenue, Brooklyn, New York 11221

n) 1131 Greene Avenue, Brooklyn, New York 11221

o) 1133 Greene Avenue, Brooklyn, New York 11221

p) 1213 Jefferson Avenue, Brooklyn, New York 11221

q) 568 Willoughby Avenue, Brooklyn, New York 11206

r) 107 South 3rd Street, Brooklyn, New York 11249

s) 109 South 3rd Street, Brooklyn, New York 11249

t) 129 South 2nd Street, Brooklyn, New York 11249

u) 263 18th Street, Brooklyn, New York 11215

v) 129 South 2nd Street, Brooklyn, New York 11249

w) 318 Bedford Avenue, Brooklyn, New York 11249

x) 740 Driggs Avenue, Brooklyn, New York 11211

y) 144 Huntington Street, Brooklyn, New York 11231

z) 68 Carroll Street, Brooklyn, New York 11231

aa) 342 Rodney Street, Brooklyn, New York 11211

bb) 178 Meserole Street, Brooklyn, New York 11206

cc) 180 Meserole Street, Brooklyn, New York 11206

dd) 182 Meserole Street, Brooklyn, New York 11206

ee) 440 Lorimer Street, Brooklyn, New York 11206

7.     "Notes" refer to the mortgage notes on each of the Properties, executed by each of the Debtor-Entities in favor of Signature Bank.

8.     "Mortgages" refers to the mortgages made between Signature Bank and each of the Debtor-Entities on the Properties, and which were assigned to Brooklyn Lender.

3

9.    The term "person" means any natural person or any business, legal or governmental entity, agency, service, or association.

10.    The terms "reflecting," "relating to," and/or "relate to," mean describing, discussing, analyzing, comprising, constituting, containing, considering, embodying, evaluating, evidencing, mentioning, memorializing, supporting, collaborating, demonstrating, identifying, referencing, discussing, indicating, providing, referring to, showing, refuting, disputing, rebutting, controverting, contradicting, made in connection with or by reason of or arising therefrom, or otherwise pertaining in any way, in whole or in part, to the subject matter referenced.

11.    "Request" or "requests" refers generally to the document requests set forth herein.

12.    The terms "you" and "your" mean the person or entity to which these requests are directed as well as their agents, employees, directors, officers, representatives, attorneys, advisors, or any other person acting, speaking, or purporting to act or speak on their behalf.

## INSTRUCTIONS

1.    Unless otherwise indicated, the communications and documents hereby requested for production and inspection include all documents in your possession, custody, or control. Without limitation of the terms "possession, custody, or control" as used in the preceding sentence, a communication or document is in your possession, custody, or control if you have actual possession or custody or the right to obtain the document or a copy thereof upon demand from one or more of your employees, representatives, agents, independent contractors, consultants, attorneys, advisors, accountants, auditors, or any other person or public or private entity that has actual physical possession thereof.   This includes, but is not limited to, documents physically held by your agents, representatives, employees, attorneys, financial advisors, or other advisors.   It also includes any communications and documents contained in any computer,

4

mobile device, server, mainframe, or other storage device (including (i) documents on or in computer memory; (ii) documents on or in computer or network backup files; and (iii) documents which have been "deleted" or "erased" but are recoverable) whether located on-site or at an off-site facility, within your possession, custody, or control.  For the avoidance of doubt, this also includes any communications and documents contained on any personal computer, mobile device, server, mainframe, or other storage device within the possession of your agents, representatives, employees, attorneys, financial advisors, or other advisors, regardless of whether the device is issued or owned by you.

2.      As the term "possession" relates to e-mail, text messages, mobile device chats, and any other electronically stored information, the term includes, but is not limited to, documents and communications contained in your electronic e-mail, cloud-based, and mobile device directories, including, but not limited to:  (a) "deleted" documents and communications that have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (b) "sent" documents and communications, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" documents and communications, including all subdirectories irrespective of the title of such subdirectories.

3.      As the requests relate to e-mail, text messages, mobile device chats, and any other electronically stored information, you are to review the text of each individual document and communication (*i.e.*, not simply review the subject heading or utilize an electronic search device).

4.      The documents produced pursuant to this request are to be segregated and identified by the number of the request below to which they are responsive, or are to be produced as they are maintained in the ordinary course of business.

5.      All documents that are produced in electronic format should be provided with: (i) Group IV "tiff" images and IPRO-ready OPT files; (ii) a Concordance DAT delimited file with boundaries; (iii) full text OCR, with OCR text files provided on a document level; and (iv) all metadata fields associated with each electronic document.  Brooklyn Lender also requests that all spreadsheets created in Microsoft Excel or similar spreadsheet programs be produced in their native format.   Brooklyn Lender reserves its right to request that other documents be produced in their native format.  The following metadata fields are also to be produced with all documents produced in electronic format:

| Field Name | Description |
|---|---|
| BEGDOC | Auto-generated number assigned to first page of document |
| ENDDOC | Auto-generated number assigned to last page of document |
| BEGATTACH | Auto-generated number assigned to first page of the parent document in a family |
| ENDATTACH | Auto-generated number assigned to last page of an attachment in a document family |
| PARENT_ID | The beginning DOCID for a parent document |
| ATTACH_IDS | The beginning DOCID for all attachments |
| ATTCOUNT | The number of attachments to an email |
| DOC_TYPE | The type of file from the header (e.g., Microsoft Outlook, Excel, Word, etc.) |
| PARENT_CHILD | Vendor populated field where "P" denotes a parent document and "A" denotes an attachment |
| PAGECOUNT | The number of pages of each individual document |
| FROM | Name of the sender of an email from the "From" field in Outlook |
| TO | Recipients of an email from the "To" field in Outlook |
| CC | Name of persons to whom a copy of an email was sent |

| | |
|---|---|
| **BCC** | The name of any person blind copied on an email |
| **SUBJECT** | The text in the "Subject" line or "Re" line of an email or application file |
| **CUSTODIAN** | The name of the person from which a collection of email or application files originate |
| **AUTHOR** | The name of the author or the creator of an application file from the "Author" field |
| **DATE_SENT** | The date on which an email was sent |
| **DATE_RCVD** | The date on which an email was received |
| **DATE_LASTMOD** | The date on which an email or application file was last modified |
| **DATE_CREATED** | The date an email or application file was created |
| **TIME_CREATED** | The time at which an email or application file was created |
| **TIME_SENT** | The time at which an email was sent |
| **TIME_RCVD** | The time at which an email was received |
| **TITLE** | The text in the "Title" field of an application file |
| **LAST_AUTHOR** | The name in the "last author" field for an application file |
| **LAST_SAVED** | The date in the "last saved" field for an application file |
| **LAST_PRINTED** | The date in the "last printed" field for an application file |
| **APPLICATION** | The name of the application that generated the native file |
| **FILEEXT** | The file name extension for each email, attachment or application file |
| **FILENAME** | The name of the application file, including extension |
| **FILESIZE** | The size of a document in bytes |
| **SOURCEFOLDER** | The full path information for email, attachments and application files beginning with the original source folder name |
| **HASHVALUE** | Output of algorithm-generated value for each individual file |
| **SEARCH_HIT** | The search term or terms that "hit" on a document |

| NATIVE_FILE | Hyperlink to the native file |

6.      Selection of documents from files and other sources, and the numbering of such documents, shall be performed in such a manner as to ensure that the source of each document may be determined, if necessary.

7.      File folders with tabs, labels, or directories of files identifying documents must be produced intact with such tabs, labels, or directories and the documents contained therein.

8.      Documents attached to each other shall not be separated.

9.      A document with handwritten, typewritten, or other recorded notes, editing marks, additions, deletions, notations, insertions, corrections, or marginal notes is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

10.     Each requested document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other documents at any time affixed thereto.  If a document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

11.     In construing the requests, the singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

12.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests all responses that might otherwise be construed to be outside their scope.

13.     The terms "all," "any," and "each" shall be construed as encompassing any and all.

14.     For the avoidance of doubt, the word "including" shall be deemed to be followed by the words "without limitation."  A list following any of these terms shall be interpreted to contain illustrative examples of the types of documents responsive to the request, but the list is without limitation and does not constitute an exclusive, all-encompassing, or exhaustive listing of every type of document responsive to the request and shall not be deemed in any way to qualify, limit, or restrict the scope of the request.

15.     Any ambiguity in a request shall be construed to bring within the scope of the request all responses that otherwise could be construed to be outside of its scope.

16.     If you withhold any document requested herein on the basis of any assertion of privilege or other immunity from discovery, that document is to be identified by stating:  (i) any addressor and addressee; (ii) any indicated or blind copy; (iii) the document's date, subject matter, and attachment or appendages; and (iv) the nature of the privilege or immunity asserted.

17.     If you object to a request, you must clearly indicate whether any responsive materials are being withheld on the basis of that objection.  If you object to only a portion of a request, you must clearly indicate to which part of the request the objection is directed, whether any responsive materials are being withheld on the basis of that objection, and provide all documents to which objection is not made as if such part or portion of the request were propounded as a separate request.

18.     If your response to a particular request is that you lack the ability to comply with that request, you must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or

has never been, or is no longer, in your possession, custody, or control, in which case the name and address of any person or entity known or believed by you to have possession, custody, or control of that information, item, or category of information must be identified.

19.     If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action or unless otherwise permitted by the Court.

20.     Terms not specifically defined herein shall be given their ordinary meanings as you understand them to be used in the trade or pursuant to ordinary usage.

21.     When a request calls for documents for a certain period of time, that request shall encompass all documents and information relating, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior to that period.

22.     The relevant time period for each request is September 2012 through the date of production ("Relevant Time Period"), unless otherwise specifically indicated.  Each request shall be interpreted to include all documents and electronically-stored information ("ESI") that relate to the Relevant Time Period or otherwise-specified period, even if such documents or ESI was prepared or published outside of the Relevant Time Period or otherwise specified-period.  If a document or ESI prepared before or after this period is necessary for a correct or complete understanding of any document or ESI covered by a request, you must produce the earlier or subsequent document as well.  If any document or ESI is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the production request.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST NO. 1:

Documents sufficient to identify the names and addresses of all current equity holders, owners, shareholders, members or investors in each Debtor-Entity.

### REQUEST NO. 2:

Documents sufficient to identify the names and addresses of all equity holders, owners, shareholders, members or investors in each Debtor-Entity, at all times since September 2012.

### REQUEST NO. 3:

Documents sufficient to identify the names and addresses of persons currently responsible for managing or otherwise making decisions on behalf of or regarding any Debtor-Entity.

### REQUEST NO. 4:

All documents, resolutions, operating agreements, manager's certificates, shareholders agreements, partnership agreements or articles of organization pertaining to each Debtor-Entity.

### REQUEST NO. 5:

All organizational documents of each Debtor-Entity, including, without limitation, certificates of formation, bylaws, operating agreements and any shareholders or members agreements.

### REQUEST NO. 6:

All communications, documents, agreements and/or memoranda concerning the current management and governance of each Debtor-Entity, including without limitation, any organizational charts, resolutions, minute books, operating agreements, amendments of operating agreements, sales or assignments of shares in each Debtor-Entity or any similar governing documents.

**REQUEST NO. 7:**

Itemization of all payments received by, or on behalf of, any Debtor-Entity from Chaskiel Strulovitch ("Strulovitch") and/or from any equity holder, owner, shareholder, member or investor of any Debtor-Entity, including, without limitation, any equity holder located either in Israel and/or Canada.

**REQUEST NO. 8:**

All communications, documents, agreements and/or memoranda that identify how any Debtor-Entity utilized funds it obtained from any equity holder, owner, shareholder, member or investor.

**REQUEST NO. 9:**

All communications, documents, agreements and/or memoranda which identify any person or entity who conveyed any money or capital to Strulovitch, and which was used to fund any Debtor-Entity or acquire any Property.

**REQUEST NO. 10:**

Documents sufficient to show funds raised at any time for the Debtor-Entities and/or Properties, along with the purpose of such funds and how the Debtor-Entities used such funds.

**REQUEST NO. 11:**

Itemization of all payments of any kind whatsoever made by, or on behalf of, any Debtor-Entity and received by Strulovitch and/or any equity holder, owner, shareholder, member or investor of any Debtor-Entity, along with the date, amount and nature of such payments.

**REQUEST NO. 12:**

All communications, documents, agreements and/or memoranda concerning each Debtor-Entity's relationship with Strulovitch at all times.

**REQUEST NO. 13:**

All communications, documents, agreements and/or memoranda concerning each Debtor-Entity's relationship with Mendel Brach at all times.

**REQUEST NO. 14:**

All communications, documents, agreements and/or memoranda concerning each Debtor-Entity's relationship with CSRE LLC, CS Construction LLC and/or Goodliving Management LLC at all times.

**REQUEST NO. 15:**

All communications, documents, agreements and/or memoranda concerning each Debtor-Entity's relationship with Chaskeil Jacobowitz, Nachman Strulovitch, Joshua Wagshal, Meir Bamberger, Jacob Schonberg, Bertha Schonberg, Nathan Gross, Michael Muller, Zwiebel Chaja Chava, Binyomin Halpern, Benjamin Schonberg, Frieda Karmel, Morris Karmel, David Schonfeld, Pnina Schonfeld and/or any other investor.

**REQUEST NO. 16:**

All communications, documents, agreements and/or memoranda concerning or reflecting any statements made by any Debtor-Entity and/or by Strulovitch concerning the identity of the equity holders, owners, shareholders, members or investors of the Debtor-Entities.

**REQUEST NO. 17:**

All documents concerning any compensation, distributions or monies paid for any reason whatsoever by any Debtor-Entity to Strulovitch and/or any equity holder, owner, shareholder, member or investor of any Debtor-Entity.

**REQUEST NO. 18:**

All communications, documents, agreements and/or memoranda concerning each Debtor-Entity's relationship with David Goldwasser ("Goldwasser") or GC Realty Advisors

("GC Realty") at all times, including without limitation concerning any arrangements or agreements regarding Goldwasser and/or GC Realty's appointment as authorized representative or Vice President of each Debtor-Entity and/or the structure of each Debtor-Entity's relationship with Goldwasser and/or GC Realty.

**REQUEST NO. 19:**

All communications, documents, agreements and/or memoranda concerning Goldwasser's capacity to serve as a fiduciary with respect to any Debtor-Entity.

**REQUEST NO. 20:**

Documents sufficient to itemize payments of any kind whatsoever, made by any Debtor-Entity and received by Goldwasser and/or GC Realty, along with a description of the nature of such payments.

**REQUEST NO. 21:**

All communications, documents, agreements and/or memoranda concerning any allegations that Strulovitch or Goldwasser engaged in dishonesty, fraud, and/or mismanagement, including without limitation, the allegations of fraud in *Schonberg, et al. v. Strulovitch, et al.*, 1:17-cv-02161 (CBA), in the U.S. District Court for the Eastern District of New York.

**REQUEST NO. 22:**

Records of all transfers of real property and/or personal property of any kind by any Debtor-Entity, from 2012 to the present.

**REQUEST NO. 23:**

Documents sufficient to identify the names and addresses of management companies or other service providers for each of the Properties, and copies of agreements with such management companies or similar service providers.

**<u>REQUEST NO. 24:</u>**

Documents sufficient to show payments of any kind whatsoever, made by any Debtor-Entity to management companies or other service providers, along with a description of the nature of such payments.

# EXHIBIT 2

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

## Southern District of New York

In re 53 Stanhope LLC, et al.
\
Debtor

Case No. 19-23013 (RDD)

Chapter 11

## SUBPOENA FOR RULE 2004 EXAMINATION

To: _____
*(Name of person to whom the subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE<br>Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, NY 10038 | DATE AND TIME |
|---|---|

The examination will be recorded by this method: Audio-Visual and Stenographic

☑ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Schedule 1 attached hereto.

      The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

          CLERK OF COURT

                          OR

    _____        _____
    *Signature of Clerk or Deputy Clerk*        *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Brooklyn Lender LLC , who issues or requests this subpoena, are:

Daniel Fliman, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038, dfliman@stroock.com, 212-806-5400

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because:  _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## SCHEDULE 1

## DEFINITIONS

1.    "Bankruptcy Case" means the chapter 11 proceeding jointly administered in *In re 53 Stanhope LLC, et al.*, Case No. 19-23013 (RDD), commenced on May 20 and 21, 2019 and pending in the United States Bankruptcy Court for the Southern District of New York.

2.    The term "communication" means any transmittal and/or receipt of information (in the form of facts, ideas, inquiries or otherwise), whether oral or written and whether chance, prearranged, formal or informal, and specifically includes, but is not limited to, conversations in person, telephone conversations, e-mail (including instant messages and text messages), voicemail, letters, memoranda, statements, media releases, press conferences, magazines and newspaper articles, testimony before a governmental body, and video and audio transmissions. For the avoidance of doubt, the term "communication" shall include any and all electronic messages and/or conversations using text messaging and mobile device chat services, including, without limitation, BlackBerry Messenger, Google Hangouts, Apple iMessage, Facebook Messenger, WhatsApp, KakaoTalk, Line, and SnapChat.

3.    The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

4.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure, *i.e.*, "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." A draft or non-identical copy is a separate

document within the meaning of this term. For the avoidance of doubt, the term "document" shall include any and all forms of recorded communications, including, without limitation, records of electronic messages and/or conversations using text messaging and mobile device chat services.

5.      "Debtor-Entities" means 53 Stanhope LLC, 55 Stanhope LLC, 92 South 4th St LLC, 106 Kingston LLC, 119 Rogers LLC, 127 Rogers LLC, 167 Hart LLC, 325 Franklin LLC, 618 Lafayette LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC, 1213 Jefferson LLC, APC Holding 1 LLC, C & YSW, LLC, D & W Real Estate Spring LLC, Eighteen Homes LLC, Meserole and Lorimer LLC, and Natzliach LLC, which are debtors in the above-captioned Chapter 11 cases.

6.      "Properties" refer to the following properties:

    a)  53 Stanhope Street, Brooklyn, New York 11221

    b)  55 Stanhope Street, Brooklyn, New York 11221

    c)  92 South 4th Street, Brooklyn, New York 11249

    d)  106 Kingston Avenue, Brooklyn, New York 11213

    e)  119 Rogers Avenue, Brooklyn, New York 11216

    f)  127 Rogers Avenue, Brooklyn, New York 11216

    g)  167 Hart Street, Brooklyn, New York 11206

    h)  325 Franklin Avenue, Brooklyn, New York 11238

    i)  618 Lafayette Avenue, Brooklyn, New York 11216

    j)  834 Metropolitan Avenue, Brooklyn, New York 11211

    k)  1125 Greene Avenue, Brooklyn, New York 11221

    l)  1127 Greene Avenue, Brooklyn, New York 11221

m) 1129 Greene Avenue, Brooklyn, New York 11221

n) 1131 Greene Avenue, Brooklyn, New York 11221

o) 1133 Greene Avenue, Brooklyn, New York 11221

p) 1213 Jefferson Avenue, Brooklyn, New York 11221

q) 568 Willoughby Avenue, Brooklyn, New York 11206

r) 107 South 3rd Street, Brooklyn, New York 11249

s) 109 South 3rd Street, Brooklyn, New York 11249

t) 129 South 2nd Street, Brooklyn, New York 11249

u) 263 18th Street, Brooklyn, New York 11215

v) 129 South 2nd Street, Brooklyn, New York 11249

w) 318 Bedford Avenue, Brooklyn, New York 11249

x) 740 Driggs Avenue, Brooklyn, New York 11211

y) 144 Huntington Street, Brooklyn, New York 11231

z) 68 Carroll Street, Brooklyn, New York 11231

aa) 342 Rodney Street, Brooklyn, New York 11211

bb) 178 Meserole Street, Brooklyn, New York 11206

cc) 180 Meserole Street, Brooklyn, New York 11206

dd) 182 Meserole Street, Brooklyn, New York 11206

ee) 440 Lorimer Street, Brooklyn, New York 11206

7.    "Notes" refer to the mortgage notes on each of the Properties, executed by each of the Debtor-Entities in favor of Signature Bank.

8.    "Mortgages" refers to the mortgages made between Signature Bank and each of the Debtor-Entities on the Properties, and which were assigned to Brooklyn Lender.

9.    The term "person" means any natural person or any business, legal or governmental entity, agency, service, or association.

10.    The terms "reflecting," "relating to," and/or "relate to," mean describing, discussing, analyzing, comprising, constituting, containing, considering, embodying, evaluating, evidencing, mentioning, memorializing, supporting, collaborating, demonstrating, identifying, referencing, discussing, indicating, providing, referring to, showing, refuting, disputing, rebutting, controverting, contradicting, made in connection with or by reason of or arising therefrom, or otherwise pertaining in any way, in whole or in part, to the subject matter referenced.

11.    "Request" or "requests" refers generally to the document requests set forth herein.

12.    The terms "you" and "your" mean the person or entity to which these requests are directed as well as their agents, employees, directors, officers, representatives, attorneys, advisors, or any other person acting, speaking, or purporting to act or speak on their behalf.

### INSTRUCTIONS

1.    Unless otherwise indicated, the communications and documents hereby requested for production and inspection include all documents in your possession, custody, or control. Without limitation of the terms "possession, custody, or control" as used in the preceding sentence, a communication or document is in your possession, custody, or control if you have actual possession or custody or the right to obtain the document or a copy thereof upon demand from one or more of your employees, representatives, agents, independent contractors, consultants, attorneys, advisors, accountants, auditors, or any other person or public or private entity that has actual physical possession thereof.   This includes, but is not limited to, documents physically held by your agents, representatives, employees, attorneys, financial advisors, or other advisors.   It also includes any communications and documents contained in any computer,

4

mobile device, server, mainframe, or other storage device (including (i) documents on or in computer memory; (ii) documents on or in computer or network backup files; and (iii) documents which have been "deleted" or "erased" but are recoverable) whether located on-site or at an off-site facility, within your possession, custody, or control.  For the avoidance of doubt, this also includes any communications and documents contained on any personal computer, mobile device, server, mainframe, or other storage device within the possession of your agents, representatives, employees, attorneys, financial advisors, or other advisors, regardless of whether the device is issued or owned by you.

2.      As the term "possession" relates to e-mail, text messages, mobile device chats, and any other electronically stored information, the term includes, but is not limited to, documents and communications contained in your electronic e-mail, cloud-based, and mobile device directories, including, but not limited to:  (a) "deleted" documents and communications that have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (b) "sent" documents and communications, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" documents and communications, including all subdirectories irrespective of the title of such subdirectories.

3.      As the requests relate to e-mail, text messages, mobile device chats, and any other electronically stored information, you are to review the text of each individual document and communication (*i.e.*, not simply review the subject heading or utilize an electronic search device).

4.      The documents produced pursuant to this request are to be segregated and identified by the number of the request below to which they are responsive, or are to be produced as they are maintained in the ordinary course of business.

5.      All documents that are produced in electronic format should be provided with: (i) Group IV "tiff" images and IPRO-ready OPT files; (ii) a Concordance DAT delimited file with boundaries; (iii) full text OCR, with OCR text files provided on a document level; and (iv) all metadata fields associated with each electronic document.  Brooklyn Lender also requests that all spreadsheets created in Microsoft Excel or similar spreadsheet programs be produced in their native format.   Brooklyn Lender reserves its right to request that other documents be produced in their native format.  The following metadata fields are also to be produced with all documents produced in electronic format:

| Field Name | Description |
|---|---|
| BEGDOC | Auto-generated number assigned to first page of document |
| ENDDOC | Auto-generated number assigned to last page of document |
| BEGATTACH | Auto-generated number assigned to first page of the parent document in a family |
| ENDATTACH | Auto-generated number assigned to last page of an attachment in a document family |
| PARENT_ID | The beginning DOCID for a parent document |
| ATTACH_IDS | The beginning DOCID for all attachments |
| ATTCOUNT | The number of attachments to an email |
| DOC_TYPE | The type of file from the header (e.g., Microsoft Outlook, Excel, Word, etc.) |
| PARENT_CHILD | Vendor populated field where "P" denotes a parent document and "A" denotes an attachment |
| PAGECOUNT | The number of pages of each individual document |
| FROM | Name of the sender of an email from the "From" field in Outlook |
| TO | Recipients of an email from the "To" field in Outlook |
| CC | Name of persons to whom a copy of an email was sent |

6

| | |
|---|---|
| **BCC** | The name of any person blind copied on an email |
| **SUBJECT** | The text in the "Subject" line or "Re" line of an email or application file |
| **CUSTODIAN** | The name of the person from which a collection of email or application files originate |
| **AUTHOR** | The name of the author or the creator of an application file from the "Author" field |
| **DATE_SENT** | The date on which an email was sent |
| **DATE_RCVD** | The date on which an email was received |
| **DATE_LASTMOD** | The date on which an email or application file was last modified |
| **DATE_CREATED** | The date an email or application file was created |
| **TIME_CREATED** | The time at which an email or application file was created |
| **TIME_SENT** | The time at which an email was sent |
| **TIME_RCVD** | The time at which an email was received |
| **TITLE** | The text in the "Title" field of an application file |
| **LAST_AUTHOR** | The name in the "last author" field for an application file |
| **LAST_SAVED** | The date in the "last saved" field for an application file |
| **LAST_PRINTED** | The date in the "last printed" field for an application file |
| **APPLICATION** | The name of the application that generated the native file |
| **FILEEXT** | The file name extension for each email, attachment or application file |
| **FILENAME** | The name of the application file, including extension |
| **FILESIZE** | The size of a document in bytes |
| **SOURCEFOLDER** | The full path information for email, attachments and application files beginning with the original source folder name |
| **HASHVALUE** | Output of algorithm-generated value for each individual file |
| **SEARCH_HIT** | The search term or terms that "hit" on a document |

| **NATIVE_FILE** | Hyperlink to the native file |
|---|---|

6.      Selection of documents from files and other sources, and the numbering of such documents, shall be performed in such a manner as to ensure that the source of each document may be determined, if necessary.

7.      File folders with tabs, labels, or directories of files identifying documents must be produced intact with such tabs, labels, or directories and the documents contained therein.

8.      Documents attached to each other shall not be separated.

9.      A document with handwritten, typewritten, or other recorded notes, editing marks, additions, deletions, notations, insertions, corrections, or marginal notes is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

10.     Each requested document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other documents at any time affixed thereto.  If a document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

11.     In construing the requests, the singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

12.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests all responses that might otherwise be construed to be outside their scope.

13.     The terms "all," "any," and "each" shall be construed as encompassing any and all.

14.     For the avoidance of doubt, the word "including" shall be deemed to be followed by the words "without limitation."  A list following any of these terms shall be interpreted to contain illustrative examples of the types of documents responsive to the request, but the list is without limitation and does not constitute an exclusive, all-encompassing, or exhaustive listing of every type of document responsive to the request and shall not be deemed in any way to qualify, limit, or restrict the scope of the request.

15.     Any ambiguity in a request shall be construed to bring within the scope of the request all responses that otherwise could be construed to be outside of its scope.

16.     If you withhold any document requested herein on the basis of any assertion of privilege or other immunity from discovery, that document is to be identified by stating:  (i) any addressor and addressee; (ii) any indicated or blind copy; (iii) the document's date, subject matter, and attachment or appendages; and (iv) the nature of the privilege or immunity asserted.

17.     If you object to a request, you must clearly indicate whether any responsive materials are being withheld on the basis of that objection.  If you object to only a portion of a request, you must clearly indicate to which part of the request the objection is directed, whether any responsive materials are being withheld on the basis of that objection, and provide all documents to which objection is not made as if such part or portion of the request were propounded as a separate request.

18.     If your response to a particular request is that you lack the ability to comply with that request, you must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or

has never been, or is no longer, in your possession, custody, or control, in which case the name and address of any person or entity known or believed by you to have possession, custody, or control of that information, item, or category of information must be identified.

19.    If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action or unless otherwise permitted by the Court.

20.    Terms not specifically defined herein shall be given their ordinary meanings as you understand them to be used in the trade or pursuant to ordinary usage.

21.    When a request calls for documents for a certain period of time, that request shall encompass all documents and information relating, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior to that period.

22.    The relevant time period for each request is September 2012 through the date of production ("Relevant Time Period"), unless otherwise specifically indicated.  Each request shall be interpreted to include all documents and electronically-stored information ("ESI") that relate to the Relevant Time Period or otherwise-specified period, even if such documents or ESI was prepared or published outside of the Relevant Time Period or otherwise specified-period.  If a document or ESI prepared before or after this period is necessary for a correct or complete understanding of any document or ESI covered by a request, you must produce the earlier or subsequent document as well.  If any document or ESI is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the production request.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

Documents sufficient to identify the names and addresses of all current equity holders, owners, shareholders, members or investors in each Debtor-Entity.

**REQUEST NO. 2:**

Documents sufficient to identify the names and addresses of all equity holders, owners, shareholders, members or investors in each Debtor-Entity, at all times since September 2012.

**REQUEST NO. 3:**

Documents sufficient to identify the names and addresses of persons currently responsible for managing or otherwise making decisions on behalf of or regarding any Debtor-Entity.

**REQUEST NO. 4:**

All documents, resolutions, operating agreements, manager's certificates, shareholders agreements, partnership agreements or articles of organization pertaining to each Debtor-Entity.

**REQUEST NO. 5:**

All organizational documents of each Debtor-Entity, including, without limitation, certificates of formation, bylaws, operating agreements and any shareholders or members agreements.

**REQUEST NO. 6:**

All communications, documents, agreements and/or memoranda concerning the current management and governance of each Debtor-Entity, including without limitation, any organizational charts, resolutions, minute books, operating agreements, amendments of operating agreements, sales or assignments of shares in each Debtor-Entity or any similar governing documents.

**REQUEST NO. 7:**

Itemization of all payments received by, or on behalf of, any Debtor-Entity from Chaskiel Strulovitch ("Strulovitch") and/or from any equity holder, owner, shareholder, member or investor of any Debtor-Entity, including, without limitation, any equity holder located either in Israel and/or Canada.

**REQUEST NO. 8:**

All communications, documents, agreements and/or memoranda that identify how any Debtor-Entity utilized funds it obtained from any equity holder, owner, shareholder, member or investor.

**REQUEST NO. 9:**

All communications, documents, agreements and/or memoranda which identify any person or entity who conveyed any money or capital to Strulovitch, and which was used to fund any Debtor-Entity or acquire any Property.

**REQUEST NO. 10:**

Documents sufficient to show funds raised at any time for the Debtor-Entities and/or Properties, along with the purpose of such funds and how the Debtor-Entities used such funds.

**REQUEST NO. 11:**

Itemization of all payments of any kind whatsoever made by, or on behalf of, any Debtor-Entity and received by Strulovitch and/or any equity holder, owner, shareholder, member or investor of any Debtor-Entity, along with the date, amount and nature of such payments.

**REQUEST NO. 12:**

All communications, documents, agreements and/or memoranda concerning each Debtor-Entity's relationship with Strulovitch at all times.

## REQUEST NO. 13:

All communications, documents, agreements and/or memoranda concerning each Debtor-Entity's relationship with Mendel Brach at all times.

## REQUEST NO. 14:

All communications, documents, agreements and/or memoranda concerning each Debtor-Entity's relationship with CSRE LLC, CS Construction LLC and/or Goodliving Management LLC at all times.

## REQUEST NO. 15:

All communications, documents, agreements and/or memoranda concerning each Debtor-Entity's relationship with Chaskeil Jacobowitz, Nachman Strulovitch, Joshua Wagshal, Meir Bamberger, Jacob Schonberg, Bertha Schonberg, Nathan Gross, Michael Muller, Zwiebel Chaja Chava, Binyomin Halpern, Benjamin Schonberg, Frieda Karmel, Morris Karmel, David Schonfeld, Pnina Schonfeld and/or any other investor.

## REQUEST NO. 16:

All communications, documents, agreements and/or memoranda concerning or reflecting any statements made by any Debtor-Entity and/or by Strulovitch concerning the identity of the equity holders, owners, shareholders, members or investors of the Debtor-Entities.

## REQUEST NO. 17:

All documents concerning any compensation, distributions or monies paid for any reason whatsoever by any Debtor-Entity to Strulovitch and/or any equity holder, owner, shareholder, member or investor of any Debtor-Entity.

## REQUEST NO. 18:

All communications, documents, agreements and/or memoranda concerning each Debtor-Entity's relationship with David Goldwasser ("Goldwasser") or GC Realty Advisors

("GC Realty") at all times, including without limitation concerning any arrangements or agreements regarding Goldwasser and/or GC Realty's appointment as authorized representative or Vice President of each Debtor-Entity and/or the structure of each Debtor-Entity's relationship with Goldwasser and/or GC Realty.

**REQUEST NO. 19:**

All communications, documents, agreements and/or memoranda concerning Goldwasser's capacity to serve as a fiduciary with respect to any Debtor-Entity.

**REQUEST NO. 20:**

Documents sufficient to itemize payments of any kind whatsoever, made by any Debtor-Entity and received by Goldwasser and/or GC Realty, along with a description of the nature of such payments.

**REQUEST NO. 21:**

All communications, documents, agreements and/or memoranda concerning any allegations that Strulovitch or Goldwasser engaged in dishonesty, fraud, and/or mismanagement, including without limitation, the allegations of fraud in *Schonberg, et al. v. Strulovitch, et al.*, 1:17-cv-02161 (CBA), in the U.S. District Court for the Eastern District of New York.

**REQUEST NO. 22:**

Records of all transfers of real property and/or personal property of any kind by any Debtor-Entity, from 2012 to the present.

**REQUEST NO. 23:**

Documents sufficient to identify the names and addresses of management companies or other service providers for each of the Properties, and copies of agreements with such management companies or similar service providers.

**<u>REQUEST NO. 24:</u>**

Documents sufficient to show payments of any kind whatsoever, made by any Debtor-Entity to management companies or other service providers, along with a description of the nature of such payments.