UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                                    Chapter 11

    53 Stanhope LLC, *et al*,[1]                Case no.  19-23013 (RDD)
                                                                      Jointly Administered
                           Debtor.
-----------------------------------------------------------x

# OBJECTION TO APPLICATION FOR RULE 2004 EXAMINATION

        53 Stanhope LLC, and each of the jointly administered debtors herein, (the "Debtors"), as and for their objection to the application made by Brooklyn Lender LLC ("Brooklyn Lender" or "Mortgagee") to examine the Debtor and numerous third parties under Bankruptcy Rule 2004, respectfully represents as follows:

## BACKGROUND

        1.      On May 20, 2019, each of the Debtors filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code"), except 167 Hart LLC which filed its petition on May 21, 2019.

        2.      These cases involve loans made by Signature Bank to the Debtors in the form of 13 separate notes and mortgages covering 26 properties dating back to September 2012. All of the loans were assigned to Brooklyn Lender LLC ("Brooklyn Lender" or "Mortgagee") on or about May 17, 2017. At that time, each Debtor was current on its payment obligations and not

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC  Holding 1 LLC (0290); D&W Real Estate Spring LLC (4591); Meserole and Lorimer  LLC (8197); 106 Kingston  LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155).

otherwise in default. The principal amount owed on the loans total at the time of transfer to Brooklyn Lender was approximately thirty-six million ($36,000,000) dollars, as follows:

| Debtor | Property | Value | Mortgage Principal |
|---|---|---|---|
| 53 Stanhope LLC<br>325 Franklin LLC<br>(Joint Owners) | 53 Stanhope Street Brooklyn NY<br>325 Franklin Avenue, Brooklyn NY | $3,500,000 | $2,664,019 |
| 119 Rogers LLC | 119 Rogers Avenue, Brooklyn, NY | $3,000,000 | $2,077,307 |
| 127 Rogers LLC | 127 Rogers Avenue, Brooklyn, NY | $3,500,000 | $2,121,334 |
| 167 Hart LLC | 167 Hart Street, Brooklyn, NY | $2,100,000 | $791,396 |
| 106 Kingston LLC | 106 Kingston Ave Brooklyn, NY | $2,100,000 | $730,949 |
| 618 Lafayette LLC | 618 Lafayette Ave<br>Brooklyn, New York | $1,900,000 | $779,122 |
| C&YSW, LLC<br>Natliach LLC<br>(Joint Owners) | 129 South 2nd Street, Brooklyn, NY<br>107 South 3rd Street Brooklyn, NY<br>109 South 3rd Street Brooklyn NY | $9,000,000 | $4,943,431 |
| Eighteen Homes LLC | 263 18th Street, Brooklyn, NY | $1,800,000 | $823,000 |
| 1213 Jefferson LLC | 1213 Jefferson Avenue, Brooklyn, NY | $1,500,000 | $898,840 |
| 92 South 4th LLC<br>834 Metropolitan LLC<br>(Joint Owners) | 92 South 4th Street, Brooklyn, NY<br>834 Metropolitan Ave, Brooklyn, NY | $4,500,000 | $2,236,419 |
| 1125-1131 Greene Avenue, LLC | 1125-1131 Greene Avenue, Brooklyn, NY | $6,000,000 | $3,025,651 |
| APC Holding 1 LLC | 568 Willoughby Avenue, Brooklyn, NY | $3,500,000 | $1,256,364 |
| D&W Real Estate Spring LLC<br><br>Meserole & Lorimer LLC<br>(Joint Owners) | 130 South 2nd Street, Brooklyn, NY<br>318 Bedford A venue, Brooklyn, NY<br>740 Driggs Avenue, Brooklyn, NY<br>144 Huntington Street, Brooklyn, NY<br>68 Carroll Street, Brooklyn, NY<br>342 Rodney Street, Brooklyn, NY<br>178 Meserole Street, Brooklyn NY<br>180 Meserole Street, Brooklyn NY<br>182 Meserole Street, Brooklyn NY<br>440 Lorimer Street, Brooklyn NY | $26,000,000 | $12,897,588 |

3.      Brooklyn Lender LLC was created on May 9, 2017, immediately before it acquired the loans. Upon information and belief, Brooklyn Lender is affiliated with Maverick Real Estate Partners LLC. According to its website, Maverick is a private equity fund manager that

acquires commercial mortgages secured by real estate in New York City. Maverick, Brooklyn Lender and or its affiliated entities actively sought loans in which Chaskiel Strulovitch was the guarantor or principal of the borrower. From correspondence between Maverick and various banks, including Bank United, Maverick requested that the banks default the Strulovitch loans and then assign them.

    4.  Evidently, Signature refused to default the Debtors.  As soon as Brooklyn Lender acquired the loans, it sent its own default notices primarily alleging non-monetary defaults arising from alleged misrepresentations in financial statements Chaskiel Strulovitch submitted with the Debtors' loan applications as the potential guarantor of the mortgages.  Brooklyn Lender claims that due to those alleged defaults, it is entitled to 24% default interest retroactive to the loans' origination dates, for a total of about $25 million more than the principal amount due!  This, notwithstanding the fact that the loans are essentially non-recourse with only limited guaranties, so the value of Mr. Strulovitch's stake in the properties listed was not particularly important. Brooklyn Lender also made allegations that Mr. Strulovitch misrepresented the extent of his ownership of a few of the Debtors.

    5.  Maverick relied upon allegations made against Mr. Strulovitch in the District Court for the Eastern District of New York a month earlier on April 10, 2017, by various Israeli investors alleging that they were entitled to ownership interests in certain properties controlled by Mr. Strulovitch.  Those certain properties included several owned by the Debtors and others listed on the financial statement submitted by Strulovitch in connection with his limited guarantee for the Debtors' loan applications.

6. The Federal Court lawsuit was dismissed in a 47-page Memorandum and Order dated November 2, 2017 (Amon, J.) where the District Court either dismissed or refereed to arbitration plaintiffs' federal securities' claim and declined to retain jurisdiction over plaintiffs' remaining state law claims. The plaintiffs appealed, but then withdrew the appeal. Although the state law claims were dismissed without prejudice for re-filing in state court, no such state claims were filed. Nor have the plaintiffs proceeded with the arbitration of their alleged Federal claims. The Brooklyn Lender's foreclosure case, however, proceeds.

7. Besides the misrepresentations alleged as an event of default, Brooklyn Lender also declared each loan in default for various alleged open water and sewer bills and HPD and DOB violations, as an additional basis for 24% interest.

8. New York law does little to protect a borrower from a bank assigning a loan to a predatory secondary market purchaser seeking to declare a technical default to effectuate a forfeiture or windfall profits. In the City of New York where minor building violations are common and often time consuming, expensive and difficult to remove, the consequences of a loan assignment to a predator can be devastating for owners and general unsecured creditors.

9. The Debtors filed these cases to obtain a determination that the default notices were defective and that the loans were not in default. Alternatively, the Debtors seek to effectuate a cure of any default under a Chapter 11 plan pursuant to section 1124(2)(A) incorporating section 365(b)(2)(D), which does not require the satisfaction of a penalty rate relating to the failure to perform a nonmonetary obligation.

10. The Debtors have proceeded with their case strategy since filing these cases on May 20, 2019. The Debtors paid June debt service to Brooklyn Lender and shall continue to

pay debt service during the pendency of these cases. The Debtors obtained a letter of intent, a copy of which is annexed hereto, from a lender prepared to refinance the Brooklyn Lender mortgages. Thus, the Debtors intend to draft and file a Chapter 11 Plan that pays all creditors in full, including Brooklyn Lender without interest at the penalty rate on the effective date of the plan.

## ARGUMENT

11. A court considering a Rule 2004 motion must determine whether the proposed discovery is for a proper purpose: "Despite the breadth of Bankruptcy Rule 2004, it must *first* be determined that the examination is proper." *In re Enron Corp.*, 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002) (emphasis in original) (internal citations and quotations omitted). "[T]he examiner bears the burden of proving that good cause exists for taking the requested discovery" under Bankruptcy Rule 2004. *Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (quashing Rule 2004 discovery). "[T]he burden of showing good cause is an affirmative one and is not satisfied merely by a showing that justice would not be impeded by production of the requested documents, (citation omitted)." *Id.* Seeking discovery for a "proposed proceeding" is improper. *In re Interpictures, Inc.*, 86 B.R. 24, 29 (Bankr. E.D.N.Y. 1989) (denying Rule 2004 discovery).

12. Here, Brooklyn Lender's stated purposes for its examination are to (a) determine the potential for Chapter 11 misconduct based on the Debtors' principals' background, (b) to evaluate creditor claims for plan purposes, and (c) to determine the existence of defaults under Brooklyn Lender's loan documents.

13.  The Debtors respectfully submit that the purported concern over post-petition misconduct is at best premature given prompt post-petition payment of debt service and progress towards payment in full under a plan, which is in prospect based on the Letter of Intent. And on the determination of potential Debtor defaults, that has been the subject of two years of litigation in the Supreme Court, which will likely continue in this Court.

14.  Indeed, the Debtors first announced in their goal in this case in their Local Rule Affidavit – to avoid Brooklyn Lender's demand for $25,000,000 of default interest, despite the payment of debt service when due, based on pre-loan a technical default, which technical default originates in unproven allegations in a third party lawsuit commenced five years after the loan was made. The veracity and materiality of Brooklyn Lender's default allegations is at issue, as well as the allowance of default interest under section 1124 of the Code, even if such default allegations are proven to be material defaults.

15.  Knowing that such a proceeding is likely, the Debtors believe Brooklyn Lender made its 2004 application to get a head start on discovery and to take advantage of the broad scope of Rule 2004 instead of discovery under the Federal Rules when the litigation ripens.

16.  The Debtors suspect further that Brooklyn Lender's is trying to distract the Debtors by tying them up in discovery making it harder to focus on refinancing, plan confirmation, property management, and generally keeping up with their obligations as debtors in possession, particularly at the outset of the case.

17.  Brooklyn Lender may have another hidden agenda as well. The plaintiffs in that case recently made a motion to re-open after withdrawing their appeal. Although the application states that the purpose of the examination is to examine parties regarding post-petition

6

management and Brooklyn Lender's claim, the specific items sought read more like discovery demands for the dismissed Federal Court litigation.  For example, item 15, which is only the tip of the iceberg, seeks all documents between the plaintiffs and defendants in that case:

> All communications, documents, agreements and/or memoranda concerning each Debtor-Entity's relationship with Chaskeil Jacobowitz, Nachman Strulovitch, Joshua Wagshal, Meir Bamberger, Jacob Schonberg, Bertha Schonberg, Nathan Gross, Michael Muller, Zwiebel Chaja Chava, Binyomin Halpern, Benjamin Schonberg, Frieda Karmel, Morris Karmel, David Schonfeld, Pnina Schonfeld and/or any other investor.

18. In summary, the application is improper not only because it seeks discovery for almost certain claim litigation, ostensibly based on potential post-petition mismanagement, but also because it is a Trojan horse for discovery for a dismissed lawsuit among alleged equity interest holders.

19. In summary, it is barely two weeks into the case, the Debtors are current with debt service, and preparing a plan that will pay all creditors in full in cash with interest on the Effective Date.  The Debtor should be permitted to satisfy Brooklyn Lender's legitimate interests under the Bankruptcy Code undisturbed by discovery designed to advance an unspoken agenda unrelated to payment in full under a Chapter 11 plan.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Application be denied and that the Court grant such other and further relief as may be just and proper.

Dated: New York, New York
June 7, 2019

        **BACKENROTH FRANKEL & KRINSKY, LLP**
        **Attorneys for Debtors**

By:   s/Mark Frankel
      800 Third Avenue
      New York, New York 10022
      (212) 593-1100