Hearing Date: June 19, 2019 at 10:00 a.m. (Eastern Time)

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006
Daniel A. Fliman
Jennifer S. Recine
Tiffany L. Ho
Isaac S. Sasson

*Counsel for Brooklyn Lender LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 |
| 53 STANHOPE LLC,[1] | Case No. 19-23013 (RDD) |
| Debtor. | Jointly Administered |

**BROOKLYN LENDER LLC'S REPLY IN FURTHER SUPPORT
OF ITS APPLICATION TO AUTHORIZE EXAMINATIONS
UNDER BANKRUPTCY RULES 2004 AND 9016**

Brooklyn Lender LLC ("Brooklyn Lender"), by and through its undersigned counsel, hereby submits this reply in further support of the *Application of Brooklyn Lender LLC for entry of an Order pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing the Examination of the Debtors, Chaskiel Strulovitch, David Goldwasser, GC Realty Advisors, Nachman Strulovitch, Chaskeil Jacobowitz and Joshua Wagshal* [Docket No. 10] (the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC Holding 1 LLC (0290); D&W Real Estate Spring LLC (4591); Meserole and Lorimer LLC (8197); 106 Kingston LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155) (collectively, the "Debtors").

"Application") [2] and in response to the objection to the Application filed by the Debtors [Docket No. 12] (the "Objection"), and respectfully states as follows:

1. In the Application, Brooklyn Lender seeks authority to examine (1) who controls the Debtors, (2) whether those persons should remain in control and (3) facts underlying its claims against the Debtors. The Objection contains no valid arguments for denying such examination.

2. ***First***, the Objection **entirely ignores** Brooklyn Lender's request to ascertain who controls the Debtors.[3] The Debtors do not -- because they cannot -- posit any reasons that Brooklyn Lender should not be allowed an examination on this topic. Transparency concerning such matters is fundamental in all bankruptcy proceedings, but especially here given the history of conflicting accounts concerning the Debtors' ownership and control and the recent introduction of Mr. Goldwasser, a third-party with undisclosed authority. As such, Brooklyn Lender should be accorded authority to conduct all examinations necessary to ascertain who owns and ultimately exerts control over the Debtors.

3. ***Second***, the examinations are ***not*** premature. The Debtors argue that any examinations concerning potential misconduct are premature "given prompt post-petition payment of debt service and progress towards payment in full under a plan." (Objection at ¶ 13.) That argument lacks merit. Brooklyn Lender's collateral is in the Debtors' hands ***today***. Receiving debt service payments is hardly assurance that the ultimate value of such collateral will be preserved or that these bankruptcy cases will be administered by honest and reliable fiduciaries. Moreover, the Objection discloses that the Debtors are ***presently*** negotiating exit

---

[2]    Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Application.

[3]    *See* (Objection at ¶ 12 (characterizing the Application as seeking an examination "to (a) determine the potential for Chapter 11 misconduct based on the Debtors' principals' background, (b) to evaluate creditor claims for plan purposes, and (c) to determine the existence of defaults under Brooklyn Lender's loan documents.").)

2

financing and working to formulate a plan. (Objection at ¶ 10.) Brooklyn Lender is entitled to determine if those important tasks are being carried out by capable and trustworthy individuals.

4. *Third*, Brooklyn Lender respectfully submits that the Court should reject the Debtors' invitation to endorse a 'no harm, no foul' approach on the issue of accountability. That the Debtors *may* propose a plan that *may* repay Brooklyn Lender's claims in full is irrelevant to the Application. By commencing these bankruptcy cases, the Debtors voluntarily availed themselves of this Court's jurisdiction in order to access the myriad rights and protections that the Bankruptcy Code affords debtors-in-possession. (Indeed, the Debtors openly admit that a key goal of these cases is to seek to disallow a substantial portion of Brooklyn Lender's claims.) With the Bankruptcy Code's rights and protections come duties and responsibilities to ensure, among other things, that a debtor is held accountable to its stakeholders and to the court. Those duties and responsibilities continue until a debtor emerges from bankruptcy -- they are not excused while a debtor formulates a plan, regardless of what that plan may provide. Unless and until Brooklyn Lender truly is repaid in full, it is entitled to assess if the Debtors are the proper stewards of their estates (and its collateral) or if, instead, seeking a trustee is proper.

5. *Fourth*, the Debtors claim Brooklyn Lender is using the Application to "get a head start on discovery [concerning its claims] and to take advantage of the broad scope of Rule 2004 instead of discovery under the Federal Rules when the litigation [concerning its claims] ripens." (Objection ¶ 15.) As set forth in the Application, Rule 2004 squarely contemplates examinations concerning a debtor's liabilities (i.e., Brooklyn Lender's claims) and, indeed, courts have acknowledged that a proper use of Rule 2004 is for a claimant to obtain discovery pertinent to its claims. (*See* Application ¶ 32.)

6.      *Last*, the Debtors accuse Brooklyn Lender of seeking information as a "Trojan horse for discovery for a dismissed lawsuit among alleged equity interest holders" and cite to the fact that the Application's proposed examination topics include "communications, documents, agreements and/or memoranda" concerning the Debtors' relationships with plaintiffs and defendants in another litigation. (Objection ¶¶ 17, 18.)  First, as set forth in the Application and as discussed above, legitimate grounds exist to seek information concerning ownership of the Debtors to ascertain who has control.  Second, it is hardly remarkable that, in seeking to examine who owns the Debtors, Brooklyn Lender seeks communications and agreements with parties that have alleged in court filings to be equity holders.  Third, to the extent this presents a concern, the Debtors can seek protections to limit the use of information obtained via the Application, but clearly this argument is not a valid basis to deprive Brooklyn Lender of the examination is seeks.

WHEREFORE, Brooklyn Lender respectfully requests that the Court grant the Application, overrule the Objection and grant to Brooklyn Lender such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: June 14, 2019<br>New York, New York | STROOCK & STROOCK & LAVAN LLP<br><br>*/s/ Daniel A. Fliman*<br>Daniel A. Fliman<br>Jennifer S. Recine<br>Tiffany L. Ho<br>Isaac S. Sasson<br>180 Maiden Lane<br>New York, New York 10038<br>Telephone: (212) 806-5400<br>Facsimile: (212) 806-6006<br><br>*Counsel for Brooklyn Lender LLC* |