UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                                                        Chapter 11

      53 STANHOPE LLC, *et al*,[1]                         Case no.  19-23013 (RDD)
                                          Jointly Administered

                        Debtors.
----------------------------------------------------------x

## NOTICE OF HEARING

        PLEASE TAKE NOTICE, a hearing will be held on January 15, 2020 at 10:00 a.m. (the "Hearing") before the Honorable Robert D. Drain, at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008 to consider the annexed application of 53 STANHOPE LLC and the jointly consolidated debtors herein under sections 502(a) of the Bankruptcy Code for the entry of an order reducing the claims filed by Brooklyn Lender LLC.

        PLEASE TAKE FURTHER NOTICE, that the exhibits to the application are too large to attach but are available upon request to the undersigned.

Dated: New York, New York
       October 28, 2019

                                BACKENROTH FRANKEL & KRINSKY, LLP

                By:    s/ Mark Frankel
                              800 Third Avenue
                              New York, New York  10022
                              (212) 593-1100

-----------------------------

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC  Holding 1 LLC (0290); D&W Real Estate Spring LLC (4591); Meserole and Lorimer  LLC (8197); 106 Kingston  LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155).

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                                                    Chapter 11

      53 STANHOPE LLC                         Case No.  19-23013

                      Debtor.
----------------------------------------------------------x

## OBJECTION TO BROOKLYN LENDER LLC CLAIMS

        53 STANHOPE LLC and the jointly administered debtors herein (each a "Debtor" and collectively, the "Debtors")), as and for their motion ("Motion") under section 502(a) of the Bankruptcy Code for the entry of an order reducing the claims filed by Brooklyn Lender LLC (the "Mortgagee" or "Brooklyn Lender") against each of the Debtors, respectfully represent as follows:

**(a) Since no material default was proven when Brooklyn Lender accelerated the loans, there was no legitimate basis for acceleration,**

**(b) Even if the loans were properly accelerated, the Court should disallow default interest on equitable grounds including unconscionability, unjust enrichment, and lender misconduct,**

**(c) Legal fees should be disallowed since (i) the Mortgagee wrongfully accelerated, (ii) the loan documents permit fees only to "protect the Mortgagee's interest in the Mortgaged Property," and (iii) in all events, the fees claimed are unreasonably high, and**

**(d) Late fees are not allowed except on installment payments, nor are late fees allowed in addition to default interest.**

## **<u>BACKGROUND</u>**

1.      On May 20, 2019, each of the Debtors filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code"), except 167 Hart LLC which filed its petition on May 21, 2019.

2.      These cases involve loans made by Signature Bank to the Debtors in the form of 14 separate notes and mortgages covering 31 properties dating back to September 2012. All of the loans were assigned to Brooklyn Lender on or about May 17, 2017. At that time, each Debtor was current on its payment obligations and not otherwise in default. The principal amount owed on the loans total at the time of transfer to Brooklyn Lender, as reflected in Signature Bank loan statements, was $37,283,614.25, as follows:

| Debtor | Property | Value | Mortgage Principal |
|---|---|---|---|
| 53 Stanhope LLC<br>325 Franklin LLC<br>(Joint Owners) | 53 Stanhope Street Brooklyn NY<br>325 Franklin Avenue, Brooklyn NY | $3,500,000 | $2,664,019 |
| 119 Rogers LLC | 119 Rogers Avenue, Brooklyn, NY | $3,000,000 | $2,077,307 |
| 127 Rogers LLC | 127 Rogers Avenue, Brooklyn, NY | $3,500,000 | $2,121,334 |
| 167 Hart LLC | 167 Hart Street, Brooklyn, NY | $2,100,000 | $791,396 |
| 106 Kingtston LLC | 106 Kingtston Ave Brooklyn, NY | $2,100,000 | $730,949 |
| 618 Lafayette LLC | 618 Lafayette Ave<br>Brooklyn, New York | $1,900,000 | $779,122 |
| C&YSW, LLC<br><br>Natliach LLC<br>(Joint Owners) | 129 South 2nd Street, Brooklyn, NY<br>107 South 3rd Street Brooklyn, NY<br>109 South 3rd Street Brooklyn NY | $9,000,000 | $4,943,431 |
| Eighteen Homes LLC | 263 18th Street, Brooklyn, NY | $1,800,000 | $823,000 |
| 1213 Jefferson LLC | 1213 Jefferson Avenue, Brooklyn, NY | $1,500,000 | $898,840 |
| 92 South 4th LLC<br><br>834 Metropolitan LLC<br>(Joint Owners) | 92 South 4th Street, Brooklyn, NY<br>834 Metropolitan Ave, Brooklyn, NY | $4,500,000 | $2,236,419 |
| 1125-1131 Greene Avenue, LLC | 1125 Greene Avenue, Brooklyn, NY<br>1127 Greene Avenue, Brooklyn, NY<br>1129 Greene Avenue, Brooklyn, NY<br>1131 Greene Avenue, Brooklyn, NY<br>1133 Greene Avenue, Brooklyn, NY | $6,000,000 | $3,025,651 |
| APC Holding 1 LLC | 568 Willoughby Avenue, Brooklyn, NY | $3,500,000 | $1,256,364 |
| D&W Real Estate Spring LLC<br><br>Meserole & Lorimer LLC<br>(Joint Owners) | 130 South 2nd Street, Brooklyn, NY<br>318 Bedford A venue, Brooklyn, NY<br>740 Driggs Avenue, Brooklyn, NY<br>144 Huntington Street, Brooklyn, NY<br>68 Carroll Street, Brooklyn, NY<br>342 Rodney Street, Brooklyn, NY<br>178 Meserole Street, Brooklyn NY<br>180 Meserole Street, Brooklyn NY<br>182 Meserole Street, Brooklyn NY<br>440 Lorimer Street, Brooklyn NY | $26,000,000 | $12,897,588 |
| 55 Stanhope, LLC | 55 Stanhope Street, Brooklyn, NY | $5,000,000 | $2,038,183.88 |

3.      Brooklyn Lender LLC was formed on May 9, 2017, immediately before it acquired the loans. Upon information and belief, Brooklyn Lender is affiliated with Maverick Real Estate Partners LLC. According to its website, Maverick is a private equity fund manager that acquires commercial mortgages secured by real estate in New York City.  Upon information and belief, Maverick, Brooklyn Lender and or its affiliated entities' business model involves predatory purchases of loans and mortgages for the purpose of defaulting borrowers on performing loans.[2]

4.      On April 24, 2017 the Debtors, among others, were sued in the United States District Court for the Eastern District of New York (the "Federal Action").  The Federal Action plaintiffs sued several dozen defendants alleging a "Bernie Madoff" type scheme.  They asserted contract claims, tort claims, equitable claims, and securities law claims.  The plaintiffs included limited liability companies ("LLC Plaintiffs") and super-minority individual members of those limited liability companies ("Individual Plaintiffs," with the LLC Plaintiffs, the "Plaintiffs") who sued on their own behalf and derivatively on behalf of the LLC Plaintiffs.

5.      The LLC Plaintiffs hold profit sharing interests in four of the Debtors, each of whom was named as an "LLC Defendant":  106 Kingston LLC, 1213 Jefferson LLC, 618 LaFayette LLC and 325 Franklin LLC ("Debtor LLC Defendants").  The Individual Plaintiffs are Israeli nationals.  The managing members of the LLC Plaintiffs include Charles Strulovitch.  He was named as an individual defendant.

---

[2]  *See, e.g., Lenders in glass houses? Judge rules Maverick can't foreclose on Chelsea property because it violated loan agreement,* The Real Deal, May 20, 2019.

4

6.       As to the Debtor LLC Defendants, the complaint alleges no misrepresentations in any prospectus.  To the contrary, the complaint alleges that the Debtor LLC Defendants, "returned the vast majority of the investment funds."  That, in fact, was the promise made in the so-called "Prospectuses" that the Plaintiffs rely on.

7.       Fourteen of the Debtors were named as 'relief defendants' ("Relief Defendants"):  53 Stanhope LLC, 55 Stanhope LLC, 119 Rogers LLC, 127 Rogers LLC, C & YSW, LLC, Natzliach LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, Greene Ave LLC, APC  Holding 1 LLC, D&W Real Estate Spring LLC, Meserole and Lorimer  LLC, Eighteen Homes LLC, and 167 Hart LLC ("Debtor Relief Defendants").  None of the Plaintiffs alleged any existing interest in the Relief Defendants.  The Plaintiffs asserted constructive trust claims, arguing that some of the money they invested may have been diverted to the Relief Defendants.  The Plaintiffs filed notices of pendency against all of the LLC Defendants' and the Relief Defendants' real property.

8.       The Debtor LLC Defendants moved to dismiss arguing that, among other things, they fulfilled their obligations under the Prospectuses by "returning the vast majority of the investment funds," and any dispute was nonetheless subject to arbitration.  The District Court dismissed the complaint on November 2, 2017 (Amon, J.) and vacated the notices of pendency, finding that as to the claims against the LLC Defendants, Plaintiffs may arbitrate any claim they may have.  No arbitration was commenced.

9.       The Debtor Relief Defendants moved to dismiss arguing that the Plaintiffs' allegations of diversion of funds were conclusory with no facts pled to support a constructive trust claim.  The Debtor Relief Defendants argued further that even if the Plaintiffs

5

properly alleged facts to support their claims, at best their claims were limited to claims against

the Relief LLC Defendants' LLC membership interests as personalty and cannot serve as the

basis for attaching the real property owned by the LLCs.  The District Court dismissed the

complaint and vacated the notices of pendency, finding that as to the claims against the Debtor

Relief LLC Defendants, Plaintiffs may sue in State Court.  No State Court lawsuits have been

filed.

        10.     The Plaintiffs filed a notice of appeal which they later withdrew.  The

Plaintiffs then made a motion to amend the dismissed complaint, which was pending at the time

the Debtors filed these cases.

**(a) Since no material default was proven when Brooklyn Lender accelerated the loans, there was no legitimate basis for acceleration**

        11.     Under New York law, a lender must strictly comply with the contract

provisions governing notice of default and acceleration of its loan. *See Destiny USA Holdings,*

*LLC v. Citigroup Global Mkts. Realty Corp.*, 24 Misc.3d 1222(A) at *15, 897 N.Y.S.2d 669

(Sup. Ct., Ond. Cty.), *aff'd in part and modified in part*, 69 A.D.3d 212 (4th Dep't 2009); *Dale v.*

*Industrial Ceramics, Inc.*, 150 Misc.2d 935, 937, 571 N.Y.S.2d 185 (Sup. Ct., N.Y. Cty. 1991)

(holding that notice provisions under promissory note that trigger acceleration of loan must be

strictly construed).

        12.     A lender's strict compliance with the default provisions is required

because, where there is no basis to accelerate a mortgage obligation, an acceleration notice sent

by the lender is a nullity and constitutes a material breach of the loan agreement. *Seidman v.*

*Indus. Recycling Props., Inc.*, 106 A.D.3d 983, 984-985, 967 N.Y.S.2d 77 (2d Dep't 2013)

(lender's improper acceleration of mortgage loan and commencement of foreclosure action constituted a breach of loan agreement); *Luxonomy Cars, Inc. v. Citibank, N.A.*, 65 A.D.2d 549, 550, 408 N.Y.S.2d 951 (2d Dep't 1978) (lender's wrongful acceleration of note as predicate for foreclosure action was an actionable breach of contract); *cf. Rocky Aspen Management 204 LLC v. Hanford Holdings LLC*, 16 Civ. 4270 (VM), 2018 WL 3471809, at *12 (S.D.N.Y. June 28, 2018), *subsequent determination*, 358 F.Supp.3d 279 (S.D.N.Y. Jan. 30, 2019), *aff'd in part, vacated in part*, 2019 WL 1447260 (S.D.N.Y., Mar. 8, 2019) (allegations that lender wrongfully accelerated loan by wrongfully declaring a default stated a breach of contract claim); *Household Fin. Realty Corp. of NY v. Dunlap*, 15 Misc.3d 659, 665, 834 N.Y.S.2d 438 (Sup. Ct., N.Y. Cty. 2007) (where "there was no basis for the acceleration of the mortgage, and the acceleration notice plaintiff sent was premature and therefore improper," "[i]t cannot form the predicate basis for this foreclosure action ….").

13.     Under these principles, the Mortgagee was required to strictly comply with the various provisions in the Loan Agreement governing the "Events of Default" that constituted a basis for accelerating the loan.

14.     Apparently, Maverick discovered the Federal Action against Mr. Strulovitch and, the Debtors assert, predatorially targeted the loans on the Debtors' Properties. Maverick then offered to purchase such loans from Bank United and Signature Bank to implement a scheme to effectuate technical defaults on the loans.  Correspondence between Maverick and various banks, including Bank United, indicates that Maverick requested that the banks issue non-monetary technical defaults on the Strulovitch loans and then assign them as defaulted loans.

15.    Evidently, Signature refused to default the Debtors, apparently because the loans were all performing based on the Debtors' excellent payment history.  As soon as Brooklyn Lender acquired the loans, it sent own default notices ("Acceleration Letters") primarily alleging non-monetary defaults arising from the now-dismissed Federal Court lawsuit.

16.    The Acceleration Letters state that each of the Debtors are in default primarily based on purported allegations in the Federal Action.  The Acceleration Letters state:

> Please be advised that Lender has been made aware of the certain lawsuit against Guarantor captioned Jacob Schonberg, et al v. Yechezkel Strulovitch a/k/a Chaskiel Strulovitch, et al., Case No. 17-cv-02161, currently pending in the United States District Court for the Eastern District of New York, wherein it is alleged, among other things, that [Mr. Stulovitch] misrepresented that he is the sole member of certain limited liability companies in connection with the making of certain mortgage loans. Pursuant to Paragraph 18(g) of the Agreement, the Debt "will become due at the option of the Mortgagee upon any one or more of the following events: (g) if any representation or warranty of the Mortgagor or of any person (a "guarantor") guaranteeing payment of the Debt or any portion thereof or the performance by the Mortgagor of any of the terms of the notes, the Mortgage or this Agreement, made herein or in any such guaranty or in any certificate, report, financial statement or other instrument furnished in connection with the making of the notes, the Mortgage, this Agreement or any such guaranty, shall prove false or misleading in any material respect.
>
> Such misrepresentation constitutes any Event of Default under the Loan Documents. Moreover, pursuant to the terms of the Note, "any acts or omissions constituting fraud or misrepresentation by the Maker in connection with applying for the loan secured by the Agreement or in supplying information or documentation to the Payee subsequent to the date hereof" shall give Lender rights of full recourse against Borrower and Guarantor for any deficiency remaining after a foreclosure sale of the Property.

17.    It bears repeating that as to the Debtor Relief Defendants there were no allegations nor any affidavits concerning membership interests.  As to those fourteen Debtors, the Federal Action Complaint contradicts the Acceleration Letters' allegation that there are undisclosed members.

8

18.     As to the four Debtor LLC Defendants, the Federal Action LLC Plaintiffs

had an indirect membership interest in those entities under certain operating agreements

produced by the Debtor LLC Defendants in support of their dismissal motion.  The LLC

Plaintiffs, however, argued that those operating agreements were not effective.  The LLC

plaintiffs argued that the operating agreements the Debtor LLC Defendants submitted to

Signature identifying Chaskiel Strulovitz as sole member controlled.

19.     The operating agreements the Debtor LLC Defendants produced in the

Federal Action evidenced the profit sharing and arbitration provisions among the parties.  When

the Debtors sought financing from Signature, the Federal Action Plaintiffs stated that they did

not want to be identified.  Thus, the Debtor LLC Defendants made Chaskiel Strulovitch sole

member but continued the profit-sharing arrangement and arbitration provisions.  In the Federal

Action, therefore, the Debtors insisted upon compliance with the arbitration provisions of the

agreements they produced.

20.     In addition to the Mortgagee's mistaken assumption that the Debtors had

misrepresented their ownership, the default letters also declared an event of default premised on

other non-Debtor operating agreements for entities Mr. Strulovitch listed as wholly owned on his

personal financial statements submitted to Signature.

21.     Paragraph 18(g) of the Mortgage requires that an event of default occurs

only "if any representation or warranty …. shall prove false or misleading in any material

respect."  According to Black's Law Dictionary, the word "prove" is defined as "to establish a

fact or hypothesis as true by satisfactory and sufficient evidence."  Based on the language of the

Mortgage, therefore, **before** declaring a default on that basis, the Debtors assert, there must have

been proof to establish that the representation claimed by Lender was *false or misleading* and *material*.

22.    The Federal Action was dismissed.  Nothing has been adjudicated because the Plaintiffs did not submit to arbitration against the LLC Defendants, nor did they sue in State Court as the District Court permitted for the Relief Defendants.

23.    Therefore, the existence of the Federal Action alone was and is insufficient to "prove" that any representation was false or misleading in any material respect prior to declaring an event of default based on Paragraph 18(g).  In summary, the Acceleration Letters did not even allege a present default or constitute a valid notice of a present default. Instead, the letters simply notified the Debtors that IF the allegations in the Federal Complaint were determined to be true, it would constitute a potential FUTURE event of default. Accordingly, the Debtors assert, the Mortgagee's demand for 24% interest dating back to the origination of the loans on the basis of these alleged misrepresentations is at best premature.

24.    The Debtors assert Brooklyn Lender has failed further to sufficiently allege or establish that any such claimed misrepresentation was "material" as also required under Paragraph 18(g), particularly with respect to Mr. Strulovitch's financial statement. The courts have defined a "material misrepresentation" in this context to be one that is a "basic credit consideration" that has a "direct relationship to [the borrower's] ability to repay the loan." *Sunrise Federal Savings Bank v. Verex Assurance, Inc.*, 204 A.D.2d 617 (2d Dep't 1994).

25.    The Loans were originated by Signature Bank.  There is no evidence that Signature required that Strulowitz have a minimum net worth as part of its basic credit

consideration, or that the allegations in the Federal Action, if proven, would drop Strulowitz' net

worth below such minimum net worth.

26.    The Debtors assert that Brooklyn Lender's allegation of an event of

default on the basis of allegedly false statements in his personal financial statement fails for the

additional reason that Mr. Strulovitch is not an entity or person covered by the relevant mortgage

provision. The Mortgage states, in pertinent part, as follows:

> The Debt will become due at the option of the Mortgagee upon any one or more
> of the following events:
>
> (g) if any representation or warranty of the Mortgagor or of any person (a
> "guarantor") **guaranteeing payment of the Debt** or any portion thereof or the
> performance by the Mortgagor of any of the terms of the notes, the Mortgage or
> this Agreement, made herein or in any such guaranty or in any certificate, report,
> financial statement or other instrument furnished in connection with the making
> of the notes, the Mortgage, this Agreement or any such guaranty, shall **prove
> false or misleading in any material respect**;" (emphasis added).

27.    The plain reading of this section demonstrates that if a "representation or

warranty" by any of three categories of person or entity proves false in a material respect then

such misrepresentation shall constitute an event of default. The three categories of person or

entity are the following: (i) the Mortgagor; (ii) any person (a "guarantor") guaranteeing payment

of the Debt or any portion thereof; or (iii) any person (a "guarantor") guaranteeing . . . the

performance by the Mortgagor of any of the terms of the notes, the Mortgage or this Agreement,

made therein.

28.    Mr. Strulovitch is not a mortgagor. Mr. Strulovitch did not guaranty

repayment of the debt.  Signature did not require Mr. Strulovitch to execute a "personal"

guaranty.  The Non-Recourse Indemnity/Carve-Outs only guaranteed "losses[es], cost[s] or

11

expense[s]" resulting from specific conditions at the mortgaged premises. Accordingly, Mr.

Strulovitch did not guarantee any performance by the Debtors.

29.    Here, based on the plain language of the Mortgage, any alleged

misrepresentation by Mr. Strulovitch, even if true, would not constitute an event of default under

the loan documents because he is not a guarantor. Accordingly, the Debtors dispute the

allegation of default by Brooklyn Lender on multiple grounds.

30.    As additional events of default, Brooklyn Lender alleged the Debtors'

failure to promptly cure property violations issued by the Environmental Control Board of the

City of New York ("ECB") and the New York City Department of Housing Preservation and

Development ("HPD"), or pay two water and sewer bills. Separate and apart from whether the

cure or payment was not  "prompt," the Debtors contend it is clear that (i) there is no "cure"

required of the ECB violation, (ii) the ECB violation has been paid, (iii) all of the HPD

violations have been dismissed, and (iv) the water bills have been paid. Furthermore, the alleged

monetary penalty from the violations issued by ECB are, the Debtors contend, trivial relative to

the loan balances.  Similarly, the alleged "unpaid taxes" claimed by Plaintiff as an event of

default were small Property Registration Fees. The fees were paid.  The amounts in dispute, the

Debtors contend, are trivial, and moreover, all have been "cured" or resolved, as have the

allegedly unpaid water and sewer bills.

31.    The Debtors consistently and timely made all payments of the monthly

principal and interest owned not only to Signature but also to Brooklyn Lender. Because monthly

principal and interest payments have been consistently paid, the Debtors contend Brooklyn

Lender has not and cannot show that any direct relationship existed between any trivial defaults

12

or alleged misrepresentation and the Debtors' ability to repay their loans.  Brooklyn Lender was

not prejudiced.  Its security was not impaired.

> **(b) Even if the loans were properly accelerated, the Court should disallow default interest on equitable grounds including unconscionability, unjust enrichment, and lender misconduct**

32.    Under New York law, the Court has discretion to disallow Maverick's

Claim for pre-petition default interest.  *See In re Residential Capital, LLC*, 508 B.R. 851, 856

(S.D.N.Y Bankr. 2014) ("In an action of an equitable nature, the recovery of interest is within the

court's discretion," and "[t]he exercise of that discretion will be governed by the particular facts

in each case, including any wrongful conduct by either party." *See Citicorp Trust Bank, FSB v.

Vidaurre*, 155 A.D.3d 934, 935-936, 65 N.Y.S.3d 237 (2d Dep't 2017) (rejecting claim for

interest that accrued during period of time tolled by lender's misconduct in delaying prosecution

of foreclosure action); *Dayan v. York*, 51 A.D.3d 964, 965, 859 N.Y.S.2d 673 (2d Dep't 2008),

*lv. to appeal denied*, 12 N.Y.3d 839, 881 N.Y.S.2d 13 (Mem) (2009).

33.    In 1977, the Court of Appeals adopted the dissenting opinion of Chief

Judge Cardozo and applied "the general equitable principle that 'the gravity of the fault must be

compared with the gravity of the hardship.'" *J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.*, 42

N.Y.2d 392 (1977).  Evolving case law has stepped away from the decision in *Graf v. Hope

Building Corp.*, 254 N.Y. 1 (1930), which held "acceleration clauses in mortgages will be strictly

enforced irrespective of the circumstances and nature of default." *Karas*, 91 A.D.2d at 812,

citing to *Blomgren,* 18 A.D.2d 979; 100 Eighth Ave. Corp., 4 A.D.2d 754; More Realty Corp.,

232 A.D. 705; Scelza v. Ryba, 169 N.Y.S.2d 462 (Sup. Ct. 1957); *Domus Realty Corp. v. 3440

Realty Co.,* 40 N.Y.S.2d 69 (Sup. Ct. 1943), aff'd, 266 A.D. 725 (1st Dep't 1943). Indeed, the

13

dissenting opinion of Chief Judge Cardozo, which stated that the equitable remedy of foreclosure may be denied based upon the circumstances and nature of default, has been embraced instead. *See J.N.A. Realty Corp.*, 42 N.Y.2d at 392.

34.    Indeed, Chief Judge Cardozo stated that strict enforcement is unconscionable where, among other things, the default "is limited to a trifling balance." *Graf*, 254 N.Y. at 12 (Cardozo, J., dissenting). In *J.N.A. Realty Corp.*, the Court held that "[t]here would be a forfeiture and the gravity of the loss is certainly out of all proportion to the gravity of the fault," warranting equitable relief if there is no prejudice. 42 N.Y.2d at 399-40; accord, *4 B 's Realty* 818 F.Supp.2d at 659 *(quoting* N.Y.C.P.L.R. § 500l(a)) (*citing Danielowich v. PEL Dev.,* 292 A.D.2d 414, 415, 739 N.Y.S.2d 408, 409 (2d Dep't 2002)); *See generally Blomgren v. Tinton 763 Corp.*, 18 A.D.2d 979, 980 (1st Dep't 1963); *W.F.M. Restaurant, Inc. v. Austern*, 35 N.Y.2d 610 (1974); *In Rockaway Park Series Corp. v. Hollis Automotive Corp.*, 135 N.Y.S.2d 588 (Sup. Ct. 1954); *Caspert v. Anderson Apartments*, 94 N.Y.S.2d 521 (Sup. Ct. 1949); *European American Bank v. Harper*, 163 A.D.2d 458 (2d Dep't 1990); *ING Real Estate* Finance *(USA) LLC v. Park Ave. Hotel Acquisition LLC*, 26 Misc.3d 1226(A) (Sup. Ct. 2010); *Fifty States Management Corp. v. Pioneer Auto Parks, Inc.*, 46 N.Y.2d 573 (1979).

35.    Under the Bankruptcy Code, lender misconduct is also grounds to deny default interest. *E.g. In re General Growth Properties, Inc.*, 451 B.R. 323 (Bankr. S.D.N.Y. 2011); *See, In re Northwest Airlines, Corp.*, 2007 WL 3376895, (Bankr. S.D.N.Y. 2007). In any event, the Bankruptcy Court may disregard a contractual provision calling for high default interest rates when such rates would be inequitable. In *In re P. G. Realty Co.,* 220 B.R. 773 (Bankr. E.D.N.Y. 1998), the Court held that "it possesses the power to modify rights created by

state law or private agreement. Indeed, the Bankruptcy Code itself contains many provisions which specifically modify or abrogate such rights. The Code is also replete with instances in which Congress has made such a power explicit." *Id.,* 220 B.R. at 780 (citations omitted). *See also In re Marfin Ready Afix Corp.,* 220 B.R. 148, 155-56 (Bankr. E.D.N.Y. 1998) (acknowledging that Courts may take a flexible approach when considering the application of contractual default interest rates); *accord, In re Vest Assocs.,* 217 B.R. 696, 702-703 (S.D.N.Y. 1998). Here, 24% interest is punitive and should not be permitted under any circumstances because it bears no reasonable relationship to the Mortgagee's actual damages.

36.    Laches is a defense as well. In *Caspert*, a foreclosure action brought on the basis of alleged municipal building violations, the mortgagee was not entitled to foreclosure where it failed to ***promptly*** assert its rights. 94 N.Y.S.2d at 521. "Equity aids the vigilant, and he who seeks the aid of equity must show that he has used reasonable diligence in asserting his rights and demanding their protection." *Id.* at 526. Where, as here, the basis for foreclosure is building violations that were issued months or years prior to assertion of the event of default, equity does not permit foreclosure. *See also Karas v. Wasserman*, 91 A.D.2d 812 (3d Dep't 1982) (it is a defense to foreclosure that the mortgagee failed to complain about a continuing default for five years; foreclosure was not warranted because mortgagor was entitled to rely on the absence of complaints by mortgagee); *More Realty Corp. v. Mootchnick*, 232 A.D. 705 (2d Dep't 1931) (mortgagee may be estopped from foreclosure where mortgagee did not object to mortgagor's conduct in breach of the mortgage agreement over years of dealings); *Amsterdam Sav. Bank v. City View Management Corp.*, 45 N.Y.2d 854 (1978) (three-month delay in taking action together with detriment to other parties "require[d] application of the doctrine of laches"); *Deutsche Bank Nat. Trust Co. v. Joseph*, 117 A.D.3d 982 (2d Dep't 2014) (citations omitted).

15

37.    In summary, even if the Court finds that Maverick had legitimate grounds to accelerate and foreclose, the default interest demanded is disproportionate to the allegations of default, and under such circumstances, equity requires relief to the borrowers and Brooklyn Lender's claim to default interest should be disallowed.

**(c)    Legal fees should be disallowed since (i) the Mortgagee wrongfully accelerated, (ii) the loan documents permit fees only to "protect the Mortgagee's interest in the Mortgaged Property," and (iii) in all events, the fees claimed are unreasonably high**

38.    The Debtors contend that the portion of Brooklyn Lender's Claim for "Legal Fees" of $1,337,510 should be disallowed in its entirety.  "In determining reasonable compensation for an attorney, the court must consider such factors as the time, effort, and skill required; the difficulty of the questions presented; counsel's experience, ability, and reputation; the fee customarily charged in the locality; and the contingency or certainty of compensation. *See* Citicorp *Trust Bank, FSB*, 155 A.D.3d at 935-936 (quoting *Vigo*, 121 A.D.3d at 780 (citing *Green v. Silver*, 79 A.D.3d 1097, 1098, 913 N.Y.S.2d 574 (2d Dep't 2010)). An applicant seeking to recover its attorneys' fees must provide the Court with "sufficient information upon which to make an informed assessment of the reasonable value of the legal services rendered." *Citicorp Trust Bank, FSB*, 155 A.D.3d at 935 (citing *People's United Bank*, 143 A.D.3d at 691). "There must be a sufficient affidavit of services, detailing the hours reasonably expended ... and the prevailing hourly rate for similar legal work in the community." *Citicorp Trust Bank, FSB*, 155 A.D.3d at 935 (rejecting plaintiff's counsel's affirmation of services because it failed to set forth counsel's experience, ability, and reputation, and failed to detail the prevailing hourly rate for similar legal work in the community) (quoting *SO/Bluestar, LLC v. Canarsie Hotel Corp.*, 33 A.D.3d 986, 988, 825 N.Y.S.2d 80 (2d Dep't 2006)).  Here, no documentation (such as attorney

16

invoices, billing statements, time records, attorney affidavits, and the like supporting the fees and

costs allegedly incurred) was submitted in support of any attorneys' fees or collection costs

claimed.  As a result, it is impossible for the Debtor or the Court to properly consider the

purported validity of this portion of the Claim. Absent sufficient evidentiary support, the claim

for "Legal Fees" has no prima facie merit.

39.     In addition, the mortgages provide for the recovery of "reasonable"

attorneys' fees in paragraph 18(j), but only to "protect the Mortgagee's interest in the Mortgaged

Property."  Under paragraph 19, attorneys' fees are recoverable "If the Mortgagor fails to make

any payment or to do any act as herein provided. . ."  Since debt service was paid and all acts

performed, even if the Mortgagee has evidentiary support for attorneys' fees, the Mortgages do

not permit legal fees for collection action arising from a misrepresentation, particularly since the

alleged misrepresentations were not made by "Mortgagor."

40.     In any event, Brooklyn Lender's efforts to enforce the loan documents

consisted entirely of issuing the Acceleration Notices and, shortly thereafter, commencing the

foreclosure actions in which the only meaningful matter undertaken was the Receiver litigation

and the filing of the Summary Judgment Motion.  In that context, the Debtors contend that $1.3

million for fees appears to be unreasonably high.  Indeed, there is no disclosure of whether

Brooklyn Lender has already applied debt service payments to legal fees, in addition to the $1.3

million claimed.

41.     Even if the $1.3 million of fees were reasonable and allowable under the

loan documents, since the foreclosure action itself was an improper breach of the loan

documents, and the legal fees incurred are therefore not allowable.

17

42.     In that regard, a failure to properly accelerate is a complete defense to a

mortgage foreclosure action.  *See,* 1 Bergman, *New York Mortgage Foreclosures*, § 4.05[1][b].

Where there is no basis for the acceleration of a mortgage obligation, an acceleration notice sent

by the lender is a nullity and constitutes a material breach of the loan agreement.  *Household Fin.*

*Realty Corp. of NY v Dunlap*, 15 Misc 3d 659, 665 (Sup Ct, N.Y. County 2007); *see also*

Bergman, B., *Strict Acceleration in New York Mortgage Foreclosure-Has the Doctrine Eroded?*,

Pace Law Review, 480 (June 1988).

43.     According to the Debtors, since there was no evidence of material default,

by wrongfully accelerating the debt, the Mortgagee materially breached.  A breach is material if

it goes to the "root" of the agreement, i.e., it defeats the object of the parties and deprives the

injured party of the benefit it justifiably expected. *Frank Felix Assoc. v Austin Drugs*, Docket

No. 96-7604, 1997 U.S. App. LEXIS 19795 at * 14 (2d Cir. Apr. 10, 1997); *Times Mirror*

*Mags., Inc. v Field & Stream Licenses Co.*, 103 F. Supp. 2d 711, 731 (S.D.N.Y. 2000)).  Not

surprisingly, courts have found that the improper acceleration of a mortgage loan constitutes a

material breach of the loan agreement. *See Seidman v Indus. Recycling Props., Inc.*, 106 A.D.3d

983, 984-985 (2nd Dep't 2013)(the improper acceleration of a mortgage loan and

commencement of a foreclosure action constitutes a breach of the loan agreement); *see also*

*Mayo v Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 26383 at * 8 (E.D Va. Mar. 4, 2015) (a

deficient acceleration notice may constitute a material breach); *Johnson Fed. Home Loan Mortg.*

*Corp.*, No. 4:13cv163, 2013 U.S. Dist. Lexis 97713 at * 9 (W.D. Va. 2013) (same).

44.     In addition, the actions taken by the Lender were in breach of its implied

obligation of good faith and fair dealing under the Loan Agreement.  New York law recognizes

18

that UCC §1-203 imposes an obligation of good faith on a secured party's enforcement of its

security agreement. *See Tudisco v Duerr*, 89 A.D.3d 1372, 1376 (4th Dep't 2011); *Stillwater

Liquidating LLC v Partner Reins. Co., Ltd.*, Index No. 652451/15, 2017 N.Y. Slip. Op 30257[U]

at * 20 (Sup. Ct, N.Y. Cty. 2017).

45.    In summary, the Mortgagee improperly noticed alleged defaults asserting

ownership misrepresentations and trivial other defaults, and utilized those asserted defaults as the

basis to accelerate the amounts due under the loan, commence a foreclosure action and seek the

appointment of a receiver.  The Mortgagee's breach was material since it goes to the root of the

contract and was intended to deprive the Debtors of the right to its use and enjoyment of their

Properties by forcing sales in a foreclosure proceeding.

46.    When one party commits a material breach of a contract, the other party to

the contract is relieved, or excused, from further performance under the contract.  *Grace v

Nappa*, 46 N.Y.2d 560, 567 (1979).  Having repudiated and materially breached its contract with

Debtors, the Mortgagee could not claim relief either in the form of foreclosure or damages.

*Net2Globe Intl. v Time Warner Telecom of NY*, 273 F Supp. 2d 436, 457 (S.D.N.Y 2003); *see

also Daniel Perla Assocs. LP v. ZLD Realty LLC*, 277 A.D.2d 115, 115 (1st Dep't 2000)

(upholding lower court's dismissal of the foreclosure complaint and reducing the principal of the

mortgage based upon plaintiff's bad faith breach). The foreclosure action was improper, as it was

based on an improper acceleration and the legal fees must be disallowed as similarly improper.

**(d) Late fees are not allowed except on installment payments, nor are late fees allowed
     in addition to default interest**

19

47.     Brooklyn Lender's claimed $873,158 "Late Fee" must also be disallowed in its entirety.  Paragraph 20 of the Mortgages provide a late fee on an "Installment to defray the expense incurred by the Mortgagee in handling and processing such delinquent payment and such amount."  Installment refers to monthly payments, which were paid timely.  Presumably, the Mortgagee deems the improperly accelerated amounts due as an installment and has imposed late fees on such amounts.

48.     It is well-settled that, under New York law, "'[i]n the absence of a provision in the mortgage to the contrary, the collection of late fees after a mortgage note has been accelerated is impermissible.'" *Home Loan Inv. Bank v. Goodness & Mercy, Inc.*, No. 10-CV-4677 (ADS) (ETB), 2012 U.S. Dist. LEXIS 46256 at *17 (E.D.N.Y. March 30, 2012) (*quoting Carreras v. Weinreb*, 33 A.D.3d 953, 955 (2d Dep't 2006)); *see also Pereira v. Cogan*, 294 B.R. 449, 515 (S.D.N.Y. 2003) ("The Trustee is only entitled to a late charge up until the time that the notes at issue were accelerated ... ") (*citing Centerbank v. D 'Assaro*, 158 Misc. 2d 92 (N.Y. Sup. Ct., Suffolk Cnty. 1993)). The basis for this general rule is that it is "inconsistent to allow a lending institution to accelerate a note, thereby denying the debtor the right under the mortgage note to make monthly installments and to continue to insist on its own right under the note to impose monthly late charges." *Id.* (*citing Green Point Sav. Bank v. Varana*, 236 A.D.2d 443, 443 (2d Dep't 1997) (*quoting Centerbank*, 158 Misc. 2d at 95); *LaSalle Bank Nat'l Ass 'n v. Shepherd Mall Partners, LLC*, 2006 OK CIV APP 91, 140 P.3d 559, 562 (Okla. Civ. App. 2005)); *see also Reis v. Decker*, 135 Misc. 2d 741, 742 (Cnty. Ct. of N.Y., Delaware Cnty. 1987) (by electing to accelerate the mortgage debt and proceeding by foreclosure plaintiff had "elected to seek recovery of the full amount due, rather than to sue only for those installments which are currently due. The purpose of late charges is to compensate a creditor for the expense and

20

inconvenience of collecting installments. Such charges are proper and recoverable in actions to recover installments which are due and unpaid, but are not recoverable in a foreclosure proceeding whereat one seeks to recover a full accelerated principal debt.").  Courts have consistently held further, that a creditor should not receive both default interest and late charges as both are "designed to compensate the lender for the same injury, and awarding both amounts to a double recovery." *In re 785 Partners LLC*, 470 B.R. 126, 137 (Bankr. S.D.N.Y. 2012); *see also In re Vest Assocs.*, 217 B.R. 696, 701 (Bankr. S.D.N.Y. 1998).

49.    In summary, the principal amount due, as reflected in Signature Bank loan statements, is $37,283,614.25.  Brooklyn Lender now seeks more than $74,515,177, claiming $37,231,563 for default interest, late fees, and legal fees, despite, the Debtors assert, the absence of payment defaults.  The Debtors respectfully submit that contrary to Brooklyn Lender's insinuations of Debtor misconduct, Brooklyn lender is the true party with unclean hands.

## <u>CONCLUSION</u>

WHERREFORE, the Debtors respectfully request that the Court grant the relief

requested herein, and that the Court grant such other relief as may be just and proper.

Dated: New York, New York
      October 4, 2019

53 STANHOPE LLC ET AL.

By:    <u>s/ David Goldwasser, as authorized signatory of GC
Realty Advisors, LLC, as Vice President</u>

BACKENROTH FRANKEL & KRINSKY, LLP
Attorneys for Debtors

By:    <u>s/Mark A. Frankel</u>
800 Third Avenue
New York, New York 10022
(212) 593-1100