# STROOCK

Via ECF

Jennifer S. Recine
Direct Dial:  212.806.1301
Fax:  212.806.6006
jrecine@stroock.com

October 31, 2019

The Honorable Robert D. Drain
United States Bankruptcy Court
300 Quarropas Street
White Plains, NY 10601-4140

Re:    In re 53 Stanhope LLC, et al., Case No. 19-23013 (RDD) (Bankr. S.D.N.Y.)

To the Honorable Robert D. Drain:

Brooklyn Lender LLC ("Brooklyn Lender") respectfully submits this letter to provide notice to the Court of the Debtors' latest failure to comply with the exceedingly tight deadlines set forth in this Court's October 16, 2019 *Scheduling Order with Respect to Discovery and Briefing Schedule in Connection with Brooklyn Lender's Rule 2004 Application and Confirmation of the Debtors' Proposed Plan of Reorganization* [Docket No. 47] (the "Order"),[1] and to respectfully request that this Court schedule a conference at its earliest availability to address the Debtors' ongoing dilatory tactics.

The Order sets October 28, 2019 as the "[d]eadline for the Debtors to complete their production in connection with Brooklyn Lender's existing document requests pursuant to the 2004 Application Order."  The parties incorporated this mutually agreed upon deadline into the Order based on the express representations by Debtors' (unretained) litigation counsel, Susan Mauro, that Debtors' initial August 21, 2019 production in response to Brooklyn Lender's Rule 2004 document requests did not "constitute the universe of responsive, relevant, and non-privileged documents that are in the Debtor Entities' possession, custody or control" and that the Debtors "will continue to provide responsive documents on a rolling basis."  (Letter from Susan Mauro to Jennifer Recine, dated August 29, 2019, annexed hereto at **Appendix A**.)[2]  Moreover, the October 28 deadline takes into account this Court's specific direction, at a September 9, 2019 discovery conference concerning the Debtors' initial deficient production, that it was "not enough" for Debtors' counsel "to say on information and belief, we don't have these documents," but must instead "represent on penalty of perjury that they've done a diligent search and that there are no

---

[1]    Brooklyn Lender notified this Court, by letter dated October 28, 2019, of the Debtors' previous failure to comply with the October 25, 2019 deadline to file their objection to Brooklyn Lender's claims [Docket No. 51.].

[2]    In the interest of brevity, we have omitted the supplemental production enclosed with Ms. Mauro's August 29, 2019 letter.

The Honorable Robert D. Drain
October 31, 2019
Page **2** of **3**

such documents in their possession, custody or control." (Transcript of September 9, 2019 Hearing, annexed hereto at **Appendix B**, at 20:22-21:07.)

Notwithstanding the foregoing, to date the Debtors have failed to provide any further production of documents in response to Brooklyn Lender's Rule 2004 discovery requests, other than the production of incomplete, improperly redacted and unexecuted tax returns, each of which are watermarked "DRAFT." Instead, the Debtors have again ignored a deadline set by this Court's Order. The Debtors did not contact Brooklyn Lender before the October 28 deadline regarding any anticipated delay in production, and Brooklyn Lender is not aware of any application by the Debtors to amend the Order for "proof of cause beyond the [Debtors'] control," as required by the Order.

On October 29, 2019, counsel for Brooklyn Lender asked Ms. Mauro to confirm (1) that the Debtors made their production and, if so, to provide details concerning the date and method of transmittal, or (2) that the Debtors would not make be making any further production in response to Brooklyn Lender's Rule 2004 discovery requests. (Email from Daniel Fliman to Susan Mauro, dated October 29, 2019, annexed hereto at **Appendix C**.) Instead of confirming the status of production, on October 30, 2019, Ms. Mauro responded to a different communication, noting that she "got stuck in court all day" and that she "will provide a response by Friday." (Email from Susan Mauro to Jennifer Recine, dated October 30, 2019, annexed hereto at **Appendix D**.) This non-responsive answer is yet another example of the Debtors' pattern of willful failures to comply with deadlines and their history of gamesmanship in this proceeding.

The Order sets forth a comprehensive and consensual schedule with back-to-back deadlines leading up to the January 15, 2020 Confirmation Hearing. The Debtors' compliance with each deadline is critical to Brooklyn Lender's ability to meet its own deadlines and to prepare for the Confirmation Hearing. Indeed, the October 28 deadline for the Debtors to complete their Rule 2004 production was intended to provide Brooklyn Lender with sufficient time to review the production and to provide important documents to its experts in advance of the November 15, 2019 deadline to produce expert reports—a deadline that Brooklyn Lender negotiated with the expectation that the Debtors would comply with the Order. The Debtors' failure to timely complete their production, or to otherwise respond to requests concerning their plans regarding their obligations under the Order, undermines Brooklyn Lender's ability to prepare expert reports with responsive Rule 2004 discovery and to evaluate the production to determine whether it is adequate, and if necessary to move to compel a more complete production.

As further evidence of the Debtors' cavalier attitude towards these matters, this Court is reminded of the September 9, 2019 discovery conference, where Debtors' counsel informed this Court that the Debtors would file an application to retain Ms. Mauro as Debtors' counsel "right away." (Appendix A at 19:23-20:05.) To date, however, not less than 165 days into these proceedings, the Debtors have similarly failed to file any such application.

The Honorable Robert D. Drain
October 31, 2019
Page **3** of **3**

Respectfully, the Debtors' repeated utter disregard for the process set out by this Court, including their obligations pursuant to the Order, unfairly prejudices Brooklyn Lender's ability to prosecute its claims, is abusive, and should not be tolerated.

Given the Debtors' repeated disregard for the dates and deadlines set forth in the Order the bankruptcy process generally, and the resulting prejudice to Brooklyn Lender, Brooklyn Lender respectfully requests that this Court schedule a hearing at its earliest convenience for purposes of requiring the Debtors (1) to explain why they should not be sanctioned in connection with their latest failure to comply with their obligations in the Order and (2) to immediately complete their production in connection with Brooklyn Lender's Rule 2004 document requests.

Respectfully Submitted,

/s/ Jennifer S. Recine

Jennifer S. Recine

Attachments

cc:   Mark Frankel, Esq.
      Susan Mauro, Esq.
      Serene Nakano, Esq.

# APPENDIX A

# ABRAMS $\boxed{\text{A F}}$ FENSTERMAN

### Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP

**Attorneys at Law**
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
Telephone:  (718) 215-5300
Fax:  (718) 215-5304
www.abramslaw.com

**Susan Mauro, Esq.**
**Partner**
smauro@abramslaw.com

August 29, 2019

**Via E-Mail: JRecine@stroock.com**
Jennifer S. Recine, Esq.
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038

Re:     *In Re 53 Stanhope LLC, et al*
        Case No. 19-23013 (RDD) (Bankr. S.D.N.Y.)

Dear Ms. Recine:

I write in response to your letter dated August 27, 2019.

First, enclosed herewith please find a supplemental production of operating agreements that were previously omitted for 618 Lafayette LLC and 325 Franklin LLC.

Second, as previously advised by email dated August 1, 2019, the Debtor Entities are producing documents responsive to your request on a rolling basis. Accordingly, contrary to the implication in your letter, the Debtor Entities have not represented that the documents produced on August 21, 2019 constitute the universe of responsive, relevant, and non-privileged documents that are in the Debtor Entities' possession, custody or control. Accordingly, this office will continue to provide responsive documents on a rolling basis. To the extent that, pursuant to a complete search by counsel, the Debtor Entities are not in possession, custody or control of particular documents or category of documents, you will be so advised.

Third, as your office has been advised on several occasions, not least of which was by email on August 19, 2019, I will be representing Mr. Goldwasser at his deposition. Furthermore, as your office has also been advised by email on August 19, 2019, I am unavailable for a deposition in this matter on September 3, 2019. Moreover, to date your office has not provided any compelling reason why the deposition cannot be conducted on September 16, 2019 especially where your office does not dispute that there is currently no deadline set by which depositions must be conducted.  Your insistence on unilaterally scheduling same is of no avail and as such, you are

hereby once again on notice that neither Mr. Goldwasser nor I will be appearing on September 3, 2019 for a deposition. In the event that your office takes any action on September 3, 2016 regarding the deposition, your willful conduct and refusal to conduct Mr. Goldwasser's deposition on a mutually convenient date and time given my scheduling conflict will be immediately reported to the Court and a request made for costs and sanctions.

The ability to select the time to conduct an adverse deposition is not unqualified or absolute. There is no authority for the proposition that you are entitled to select a date for an adverse deposition that you have been advised weeks in advance cannot be accommodated by counsel for the witness.

Finally, I am out of the office today and Friday and therefore unavailable to conduct a conference on this matter, but my co-counsel Mark Frankel is available to do so. Otherwise I am happy to schedule in the afternoon on a mutually convenient date during the week following the Labor Day holiday.

Very truly yours,

/s/ Susan Mauro

# APPENDIX B

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23013-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    53 STANHOPE LLC,

8

9          Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  300 Quarropas Street, Room 248

14                  White Plains, NY 10601

15

16                  September 9, 2019

17                  10:41 AM

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  A. VARGAS

Page 2

1    HEARING re Discovery Conference

2

3    HEARING re Motion to Extend Exclusivity Period for Filing a

4    Chapter 11 Plan and Disclosure Statement

5

6    HEARING re Notice of Hearing on Disclosure Statement

7    Approval (related document(s)30)

8

9    HEARING re Objection to Disclosure Statement Brooklyn Lender

10   LLCs Preliminary Objection to Approval of the Debtors

11   Disclosure Statement (related document(s)30)

12

13   HEARING re Brooklyn Lender LLCs Omnibus Objection to

14   Approval of the Debtors Disclosure Statement and Application

15   for Order Extending Exclusivity Periods (related document(s)

16   36, 30, 33, 31)

17

18   HEARING re Response to Disclosure Statement Objection

19   (related document(s)39)

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
1    A P P E A R A N C E S :

2

3    BACKENROTH FRANKEL & KRINSKY, LLP

4         Attorneys for the Debtor

5         800 Third Avenue, 11th Floor

6         New York, NY 10022

7

8    BY:  MARK A. FRANKEL

9

10   STROOCK & STROOCK & LAVAN LLP

11        Attorneys for Brooklyn Lender

12        180 Maiden Lane

13        New York, NY 10038

14

15   BY:  DANIEL A. FLIMAN

16        TIFFANY HO

17

18   ALSO PRESENT TELEPHONICALLY:

19

20   GREG ZIPES

21

22

23

24

25
```

1          P R O C E E D I N G S

2              THE COURT:  All right.  In re 53 Stanhope, LLC et

3    al.  Okay, good morning.  There are a few things on the

4    calendar today.  There's a, at least a placeholder for a

5    discovery conference, although the letter requesting that

6    that be added to the agenda made it clear that some or all

7    of those issues might be resolved by the time we got here

8    today.

9              There's the Debtors' request for an extension of

10   its -- or their exclusive periods under Section 1121, and

11   then there's the Debtors' request for approval of their

12   disclosure statement.

13             MR. FRANKEL:  Cash collateral.

14             THE COURT:  All right.  I didn't see any pleadings

15   on that, though.

16             MR. FRANKEL:  Well, we filed our application, and

17   in the interim order, it was adjourned for the hearing

18   today.

19             THE COURT:  Right.  But this -- I didn't see any

20   objection to an extension of that.

21             MR. FRANKEL:  We have a consent.

22             THE COURT:  Okay, good.  My clerk was getting

23   worried.  Well, before we forget that then, there's an

24   extension, so further interim order.  Is that what's

25   contemplated?

1          MR. FRANKEL:  We have a final order through the

2     end of the year.

3          THE COURT:  I don't know.  You say it was agreed.

4     I'm just asking what the agreement is.

5          MR. FLIMAN:  Your Honor, for the record, Daniel

6     Fliman on behalf of Brooklyn Lender.  We reached an

7     agreement probably about a half an hour ago with the Debtors

8     to submit a form of a final order --

9          THE COURT:  Okay.

10         MR. FLIMAN:  -- that extends the use of cash

11    collateral through the end of the year.

12         THE COURT:  All right.

13         MR. FLIMAN:  And with Your Honor's permission,

14    we'll be submitting that on consent to chambers.

15         THE COURT:  That's fine.  So you can email that to

16    chambers, okay.  Everyone can sit down unless they're

17    speaking.  So shall we cover the -- well, the thing about

18    the -- let's put the discovery dispute at the end because I

19    think the discovery issues and timetable here will be

20    informed by where we are on the plan and disclosure

21    statement.

22         And similarly, I think -- I mean, I don't know.

23    As far as I can see, the dispute over exclusivity is over

24    one month, which -- or actually perhaps even less than a

25    whole month.  My inclination would be to grant the motion in

1    light of that.

2            MR. FLIMAN:  Your Honor, our clients' view with

3    respect to the extension of exclusivity is that we consent

4    to it so long as there's a schedule put forth and right to

5    adjudicate the issues.

6            THE COURT:  Sure, that's fine.  I mean, obviously,

7    I'm looking towards confirmation sometime before the end of

8    this year or early January, which exclusivity is extended

9    to.  I think it was January 16th.

10           MR. FLIMAN:  Yes, Your Honor.

11           THE COURT:  Okay.  So I'll grant the motion in

12   light of where we are in the plan process at this point.

13   You can email that over to the chambers.  The motion lays

14   out sufficient cause given that we're here on approval of

15   disclosure statement, and it looks to me that quite likely

16   that I'll be holding the confirmation hearing sometime

17   towards the end of December or the beginning of January.

18           So then we have the disclosure statement.  I've

19   reviewed the objection, as well as the Debtors' reply and,

20   of course, the blackline of the disclosure statement and

21   plan.  And as I often do, or almost always do, I have

22   comments of my own.  But I guess before we get to those, I'm

23   happy to hear Brooklyn Lender as to its objection.

24           MR. FLIMAN:  Thank you, Your Honor.  For the

25   record, Daniel Fliman, Strook, Strook & Lavan, on behalf of

1    Brooklyn Lender.  Your Honor, we submitted an objection with

2    respect to the approval of the disclosure statement, which I

3    will characterize as being in the nature of two separate

4    parts.  One is the lack of disclosures in the disclosure

5    statement itself.  The Debtors, frankly, did amend the

6    disclosure statement in a way that added a lot of

7    disclosures that we had been requesting, so we're not going

8    to push that part of the objection itself.

9         Where we are going to focus, Your Honor, is on the

10   fact that this plan that is being solicited via the

11   disclosure statement if Your Honor was to approve it is

12   patently unconfirmable.  It relies on assumptions that,

13   under the case law -- it relies on assumptions that we

14   believe are unrealistic and uneconomic.  And under the case

15   law, it would be a waste of the state resources to proceed

16   with approval of the disclosure statement and solicitation

17   for a plan that is unconfirmable.

18        The reasons it is unconfirmable, Your Honor, is

19   because, at most, it allocates about $39 million in order to

20   pay our clients' claims.  The amount of our asserted --

21   claims asserted by our clients is about $75 million.  And

22   so, the Debtors' answer to how they're going to bridge

23   between the 39 million that is the maximum amount of

24   financing available to pay our clients and unimpair our

25   clients' claims and the 75 million we have asserted is

1    twofold.

2           First, they are optimistic that they'll be able to

3    disallow our clients' claims to the point where we get no

4    default interest whatsoever.  Your Honor, I think there's

5    sufficient record that we've laid out in our papers to say

6    that there is a possibility that we will be -- we think we

7    will be -- entitled to default interest in some quantum.

8    And that, by itself, means that there's insufficient funding

9    for the claim.

10          THE COURT:  Possibility doesn't mean that the plan

11   should be rejected out of hand.

12          MR. FLIMAN:  Well, Your Honor, the -- let me give

13   you a couple of data points on that.  So, for example, we've

14   laid out what has been admitted in State Court litigation by

15   the Debtors with respect to their being more than one owner

16   of the properties at the time that the loans were

17   originated, while at the same time, they were making

18   misrepresentations with respect to ownership.

19          THE COURT:  I've read your documents.  Move on.

20          MR. FLIMAN:  Yes, Your Honor.

21          THE COURT:  I'm tempted to give you a Rule 11

22   warning on the default issue.

23          MR. FLIMAN:  Your Honor, I will sit down then.

24          THE COURT:  Yes.

25          MR. FLIMAN:  Thank you.

Page 9

1          THE COURT:  Okay.  And as far as feasibility is

2     concerned, it wasn't clear to me, but it appears that the

3     prospective take out lenders raised its commitment?

4          MR. FRANKEL:  Yes.  From 40 million to 42.5

5     million, which after interest reserves and points leaves

6     enough money to fund the plan as proposed, as opposed to at

7     the $40 million number, the interest reserves and points

8     would have taken us a little under.

9          THE COURT:  Okay.  All right.  So, to me, that's a

10    plan confirmation issue as well.  We'll see what the claims

11    are like at that point.  But as far as the math and the

12    objection is concerned, that number takes it above the

13    minimum amount that the Debtors needs, according to their

14    own estimates, which before correctly was an issue.

15          Do you contend that Mr. Strulovitch was a

16    guarantor?

17          MR. FLIMAN:  He was --

18          THE COURT:  Other than a bad boy guarantor or a

19    good guy guarantor?

20          MR. FLIMAN:  He provided guarantor of any losses

21    that we suffer with respect to representations that he made,

22    Your Honor.  He didn't guarantee the debt to --

23          THE COURT:  That's how you read 18(g).

24          MR. FLIMAN:  I don't have --

25          THE COURT:  Any losses you have at all.  You

1    better read that carefully.  I'm serious about Rule 11.  If

2    all of this was brought upon by an overly broad and

3    obviously overly broad reading of 18(g), your client and his

4    counsel are in serious trouble.

5              MR. FLIMAN:  Understood, Your Honor.

6              THE COURT:  You rely on the documents; you live by

7    them and you die by them.

8              MR. FLIMAN:  Yes, Your Honor.

9              THE COURT:  All right.  Now, as far as my comments

10   of the disclosure statement is concerned.  I have added

11   repeatedly throughout this edition clauses, such as the

12   Debtors asserts, the Debtors will contend, et cetera.  I

13   don't want this to appear to be, you know, a -- although I

14   think sophisticated parties will understand that this is the

15   Debtors' version.  I want to make it crystal clear that it's

16   the Debtors' version of the facts.

17             More importantly, I have three other sets of

18   comments.  I think the other ones are self-evident.  There's

19   a lengthy discussion here -- well, let me back up.  The

20   Debtors object to the default interest as part of

21   unimpairment on two grounds: first, no default, there was no

22   default, so there was no default interest; and secondly,

23   that under 1124, as it incorporates 365, they would no

24   default interest.

25             But the discussion is all about reinstatement, as

1   the objection points out.  And they're not really

2   reinstating here; they're paying it off.  So, to me, this is

3   -- I think you should take it out.  I mean, there are a

4   couple of paragraphs in that discussion that I think you

5   could leave in that deal with equitable exceptions under the

6   Bankruptcy Code to default interest.

7            But other than that, I just don't - I mean, you're

8   not contending that they're under secured, so I don't think

9   you can rely on, you know, Ultra Petroleum and that line of

10  cases, and it's not reinstatement, so I think those sections

11  just don't really fit here.

12           MR. FRANKEL:  The concept was that if there was

13  found to be a default that we would cure for a moment in

14  time and then pay.

15           THE COURT:  Well, that's --

16           MR. FRANKEL:  If we don't need it, then we don't.

17           THE COURT:  It just -- I mean, you're planning to

18  pay it on the effective date.  I mean, it was just total

19  metaphysical, this concept of reinstatement since it's

20  really a cash pay.

21           MR. FRANKEL:  Okay.

22           THE COURT:  So I've checked two paragraphs here

23  that refer to, you know, the equity and sort of the like.

24  And that just meant -- I suppose you could leave those in.

25  Those are separate bankruptcy defenses, in other words,

```
 1    beyond the contract law defenses and state law defenses.

 2            The second point deals with the interplay between

 3    the treatment of the Class 4 creditors, who are the

 4    unsecureds, and Class 5, the interest holders.  Class 4 gets

 5    paid in cash or, alternatively, has the right to elect an

 6    equal value of stock.  Now, the -- the stock that they're

 7    getting in the plan is in the post-confirmation, the

 8    respective post-confirmation Debtors.  But on the effective

 9    date, those are going to be the new owners, right?  So you

10    need to make it in the new owners, I think, the respective

11    new owners because, otherwise, they'd be getting it in a

12    company that doesn't --

13            MR. FRANKEL:  That was a mistake.

14            THE COURT:  Okay.  And then secondly, there needs

15    to be an election form for them to do that.

16            MR. FRANKEL:  Yes.

17            THE COURT:  And I'm assuming this includes the

18    people who file the $20 million claims, right?  I mean,

19    they've asserted unsecured claims.  They have --

20            MR. FRANKEL:  They filed them --

21            THE COURT:  I mean, obviously, there has to be an

22    allowed claim for them to get this treatment.  But I'm

23    assuming that's -- they're included because they did assert

24    a claim.

25            MR. FRANKEL:  Well, we're going to file an
```

1    objection to that claim.  And as part of the objection, I

2    think we're going to be arguing that, at best, they have a

3    claim to ownership, equity ownership, as opposed to --

4              THE COURT:  All right.  But I just -- it goes --

5    what my point is going to the election form.

6              MR. FRANKEL:  Right.

7              THE COURT:  It should go to all claimants.

8              MR. FRANKEL:  Yes.

9              THE COURT:  All Class 4 claimants.  And then

10   obviously to the extent they're not allowed, the election

11   wouldn't be valid.

12             MR. FRANKEL:  Yes.

13             THE COURT:  And that goes over then to Class 5,

14   the interest holders.  Looking at the claims, I at least

15   infer that you might be filing that type of objection and

16   treating them as interest holders.  And this new language, I

17   think, it says, "And subject to the claims filed in this

18   case asserting claims to existing interest."  Is that meant

19   to cover them?

20             MR. FRANKEL:  That was my imperfect of doing what

21   you said I should do.

22             THE COURT:  I think you need to make that a little

23   clearer because those claims don't assert claims to existing

24   interests.  I think what you should say to, and subject to

25   the rights of those who've asserted claims that may be

1    recharacterized as interest, something like that, right?

2              MR. FRANKEL:  Yes.

3              THE COURT:  Or were you trying to preserver their

4    claims generally?  I don't think so.  You couldn't be in the

5    interest section.  It's to the rights of these people to the

6    extent that they are recharacterized as interests.

7              MR. FRANKEL:  Actually, my only goal was to let

8    the existing interest holders know they might get diluted.

9              THE COURT:  Well, okay.  But I think -- I think

10   you need to phrase it -- because they haven't -- I mean, as

11   a contract, this wouldn't necessarily apply to them because

12   they haven't filed a claim asserting a claim to an interest.

13   They've filed a claim to money, so I think you need to say

14   that claims filed in this case that are recharacterized as

15   interest.  And then it's not just dilution by them; it's

16   also dilution by those who successfully elect from Class 4.

17             MR. FRANKEL:  Right.

18             THE COURT:  So I just said how does this relate to

19   the election in the prior section, but I think you need to,

20   particularly in the disclosure statement, make it clear.

21   But I think in both places, the plan and disclosure

22   statement, that it's subject to not only to the extent

23   claims are recharacterized as interest, but also the

24   dilution pursuant to the election.

25             MR. FRANKEL:  Okay.

Page 15

1            THE COURT:  And that's why they're impaired.

2            MR. FRANKEL:  Right.

3            THE COURT:  So I think that should just be laid

4     out.

5            MR. FRANKEL:  Thank you.

6            THE COURT:  And then there's a glitch between the

7     plan and disclosure statement on Page 32, which says, in

8     estimating the amount of allowed administrative expenses.

9     In the disclosure statement, it says 255,000 plus any

10    litigation costs; in the plan, it says 255,000 including

11    estimated litigation costs.  So you should just clarify

12    that.

13           MR. FRANKEL:  Okay.

14           THE COURT:  The last -- I think these other

15    comments are self-explanatory, but I had two comments on the

16    plan that I think you need to focus on and maybe deal with

17    them in the disclosure statement.  I think when you talk

18    about the new owners in the disclosure statement, you

19    describe what they are generically.

20           The plan it just says, new owners shall mean

21    blank.  I think you should define it generically, you know,

22    the new special purpose vehicle in connection with the exit

23    financing pursuant to which the equity -- the existing

24    interests will be transferred under the plan, subject to the

25    dilution under the plan.

1          And then there's nothing in here -- and this

2     relates to what we were talking about next, which is the

3     schedule.  There's no section in the plan -- I think, unless

4     I missed it -- or in the disclosure statement that lays out

5     the conditions to confirmation and the effective date.  And

6     I'm assuming that the exit financing would be a condition to

7     the effective date, and I'm also assuming that it's a

8     condition to confirmation that, you know, there's a ruling

9     under 506 and 1124 in respect of the Brooklyn Lender claim

10    that enables that funding to be applied as contemplated

11    under the plan.  I think you should put those in.

12          MR. FRANKEL:  Okay.

13          THE COURT:  I mean, the former can be -- the first

14    one, the funding would be to the effective date.  The other

15    one I think would be to confirmation.  Although, you know,

16    conceivably, you could schedule the hearing on the Brooklyn

17    Lender issues to follow confirmation.  I think there's

18    enough time between now and, you know, the end of the

19    year/beginning of January to do that.

20          MR. FRANKEL:  What I was thinking was that --

21          THE COURT:  Any related discovery, so that all the

22    issues could be dealt with at one time at the confirmation

23    hearing.

24          MR. FRANKEL:  What I was thinking was a claims

25    estimation hearing.

1           THE COURT:  Well, I mean, it's just -- I mean,

2      you've laid out all the issues.  I don't know why it's just

3      not decided on the merits.

4           MR. FRANKEL:  Okay.

5           THE COURT:  I mean, there are document issues and

6      there's the -- I mean, as far as testimony, I think it's

7      fairly limited.  You have testimony about what happened with

8      the building violations and the taxes.  And, you know, I

9      don't view this as retrying the whole federal action.  I

10     mean, there's no standing to retry that.  Those facts are

11     facts.  So, to me, it would seem to me that the discovery

12     could be done in time to have a hearing on confirmation at

13     the end of the year or beginning of January.

14          MR. FRANKEL:  That would be great.

15          THE COURT:  Okay.  So let me give you my markup

16     here, and I'm going to ask you to email the blackline to

17     chambers and to struck.  And then, you know, we'll -- and

18     also the markup, of course.  And then, you know, assuming

19     that the points have been dealt with, you can file the plan

20     and submit the disclosure statement order.

21          Have you gotten a date from Miss Lee for a

22     confirmation hearing?

23          MR. FRANKEL:  No.

24          THE COURT:  No, okay.  Well, I haven't either, but

25     I'm assuming there'll be a day again towards the end of

Page 18

1    December up to the, you know, the 16th of January, sometime

2    in between there.

3           So then turning to the schedule here, I don't

4    really see the need for an adversary proceeding to determine

5    the claim.  There should be one of two things: the Debtor

6    should object to the claim; or, alternatively, you can

7    refine the treatment and the plan, such that the claim will

8    be allowed in the amount of X.  And that would be the issue

9    for confirmation, you know, can it be allowed in that

10   amount.  It's probably safer to file the objection, but you

11   could do it either way, but I would hear it at confirmation.

12          MR. FRANKEL:  Obviously, I'm in pretty good shape

13   to file an objection.

14          THE COURT:  Well, it looks like it, yeah.  And

15   then, I guess the only issue I have is whether we should

16   build in, as Brooklyn Lender suggested, briefing on

17   unimpairments.  My inclination is not.  Again, I don't think

18   -- I think the only unimpair- -- 1124 issue here is not

19   really an 1124 issue; it's a bankruptcy default interest

20   issue, separate and apart from 1124.

21          MR. FRANKEL:  Okay.

22          THE COURT:  Because you're assuming they're over-

23   secured.  So, you know, we're not talking Ultra Petroleum,

24   which, you know, contract -- a fair amount of case law would

25   say that for an under-secured creditor, it's not entitled to

1    default interest because the Bankruptcy Code would be

2    incorporated into 1124.  But that's not the issue here;

3    that's the issue they remanded on in Ultra Petroleum, are

4    they over-secured or not.

5           So I think you're only dealing with the

6    discretionary point, which is part and parcel of, you know,

7    four or five of your arguments that, you know, Brooklyn

8    Lender has the -- either the equities against it or has

9    unclean hands or any number of equitable arguments that

10   you'd make.  So it seems to me that all of those issues can

11   be dealt with as part of leading up to briefing on

12   confirmation.

13           MR. FLIMAN:  That's fine.

14           THE COURT:  So where are you on discovery?  We

15   incorporated the Federal Rules into the Rule 2004, so I'm

16   assuming the discovery that's been had so far can continue

17   as part of the confirmation hearing discovery.  But you may

18   want other discovery, I don't know, as part of the

19   confirmation process.

20           MR. FLIMAN:  We will, Your Honor.  With Your

21   Honor's permission, my partner Jennifer Recine will handle

22   the discovery portion.

23           THE COURT:  Okay.  And do I have -- no, I don't.

24   I mean, let me just -- before we get to that.  You have,

25   quote, "special counsel"?  But I haven't retain- -- I

1   haven't authorized their retention yet and they're not here,

2   so I'm not sure.  Do you have special counsel?

3          MR. FRANKEL:  Yes, Judge, and I will get the

4   application filed right away.  Ms. Morrow had a conflict, so

5   I'm covering.

6          THE COURT:  Okay.  But are you able to talk about

7   a discovery schedule?

8          MR. FRANKEL:  Yes.  I spoke to her this morning.

9          THE COURT:  Okay.  All right.  Okay.

10          MS. RECINE:  So where we are in discovery, Your

11   Honor, is that there are some concerns we have about the

12   diligence and adequacy of the searches in response to the

13   allowed discovery requests.  I think it's fair to say that

14   when the discovery was served on July 16th, it was not a

15   surprise to Debtors or their special counsel.

16          I've been dealing with Ms. Morrow.  She, after we

17   sent a letter to her, she sent a letter back, told us

18   there'd be a rolling production.  We've received no further

19   documents.  She did agree, based on a conversation we had

20   this morning, to produce tax returns for the relevant time

21   period, so that is some progress.

22          The area of most concern for me, based on our

23   conversation, was the adequacy of the search with respect to

24   correspondence.

25          THE COURT:  Right.  So can I just stop you --

Page 21

1              MS. RECINE:  Of course.

2              THE COURT:  because I read your letter.  It's not

3     enough to say on information and belief, we don't have these

4     documents.  People need to represent on penalty of perjury

5     that they've done a diligent search and that there are no

6     such documents in their possession, custody or control.  It

7     needs to be in that shape.

8              MR. FRANKEL:  Your Honor, we're going to go a

9     little beyond that.

10             THE COURT:  Okay.

11             MR. FRANKEL:  We did provide two years of tax

12    returns, all of the operating agreements, certificates of

13    incorporation and the management agreements, including Mr.

14    Goldwasser's and the on-site management companies.  On

15    correspondence, the client was willing to sign such an

16    affidavit.  Ms. Morrow wasn't satisfied with that.  She

17    wants to do a forensic search of his computer.  She got his

18    password and email address to do that, and she's going to do

19    it in-house with her own IT people.

20             THE COURT:  Okay, all right.

21             MS. RECINE:  Some concerns about that.  I did just

22    speak with Ms. Morrow about this this morning.  First of

23    all, it's not clear to me -- well, it is clear to me that

24    there is correspondence, and there are two reasons that I

25    know that there are correspondence.  Because we have the

1    loan files, I do know, in fact, that there's correspondence

2    concerning ownership in the form of commitment letters;

3    those would not necessarily be electronic.  It's not clear

4    whether a thorough search has been undertaken because none

5    have been produced.

6              THE COURT:  Well, but that's part of the

7    requirement --

8              MS. RECINE:  I understand that.

9              THE COURT:  -- that there be a thorough search.

10             MS. RECINE:  But in speaking to Ms. Morrow this

11   morning, her idea of what she's going to do to forensically

12   determine whether or not her client's representations are

13   accurate was to go through a single custodian's email box.

14             THE COURT:  Right.  Well, okay, it -- she needs to

15   do more.  I mean, that should -- she needs to talk to the

16   clients about where the documents might be.  If she wants to

17   verify it herself, that's fine.  But the onus is on the

18   clients after she explains to them what needs to be

19   produced, for them to go and diligently search wherever they

20   might be, and talk it through with her and then provide the

21   declaration.

22             MS. RECINE:  What would be useful, Your Honor,

23   because in speaking with Ms. Morrow this morning, obviously

24   two months have passed since these discovery requests have

25   been issued, and as we heard from her today, she just

1    recently got the single password to the single account she

2    intends to search.  I think it would be helpful to establish

3    some deadlines for meeting and conferring on the appropriate

4    custodians and search protocols and also search terms, and

5    then a date for production so that we can schedule the

6    depositions and proceed.  We shouldn't be required to

7    proceed with the depositions without completed discovery.

8              THE COURT:  Right.

9              MS. RECINE:  But --

10             THE COURT:  So you should work back from the --

11   get a confirmation hearing date from Ms. Lee and work back

12   from that.  It would seem to me that all discovery should be

13   complete at least a couple of weeks before the confirmation

14   hearing.

15             MR. FRANKEL:  Yes.  I think that what is in

16   dispute here are the documents that relate to the

17   guarantor's breach, as opposed to the documents relating to

18   the Debtor.

19             MS. RECINE:  I don't see that to be the case at

20   all.  I believe that this concerns the Debtors and the

21   Debtors' representations and the ownership structure.  So I

22   don't see this distinction that you're making.

23             THE COURT:  Well, I thought it was just -- I

24   didn't -- I don't know what you all have been talking about,

25   but I didn't get the impression that the Debtors were

1   withholding information because they believe that the

2   request was overly broad.

3           MR. FRANKEL:  No.  I'm just saying that the search

4   is very broad because Debtors' principal has a lot of

5   entities.

6           THE COURT:  All right.  Well, I mean, it needs to

7   be related to the request.  I mean, that's why there's a

8   lawyer.

9           MR. FRANKEL:  Yes.

10          THE COURT:  Okay.

11          MS. RECINE:  And based on Ms. Morrow's

12  representations, I am somewhat concerned that perhaps she's

13  not paying enough -- quite enough attention to this.  Her

14  response to me was based -- the delay was a result of the

15  fact that she has a busy docket and she's just one person.

16          THE COURT:  Okay.  Well, we now have a schedule.

17  So if she needs help, I'm sure you will help her or have

18  someone from her firm help her, because we're really getting

19  to the point where the discovery will actually be used or

20  not.

21          MS. RECINE:  I think we can, based on these dates

22  that are now being established, set reasonable dates for

23  depositions.  But I am also somewhat concerned about getting

24  on the calendar both the depositions of Mr. Goldwasser and

25  Mr. Strulovitch.

1          THE COURT:  Right.

2          MS. RECINE:  I was told by Ms. Morrow some dates

3     that Mr. Goldwasser are available.  We're trying to work

4     that out based on her schedule.

5          THE COURT:  Okay.  But I think, again, go from the

6     confirmation hearing backwards.  So the parties should be in

7     a position to submit trial declarations to me and a joint

8     exhibit book a week before the confirmation hearing, so I'm

9     assuming all discovery will be complete at least two weeks

10    before the confirmation hearing.

11         You're entitled, both sides, to get the documents

12    at least a week before you depose people.  So, you know, you

13    have an outside date for depositions and then an earlier

14    outside date for the document production.  I wouldn't -- I

15    wouldn't wait 'til that deadline in each case to fail to

16    produce it because those are tight deadlines, so it's

17    unlikely that I'm going to be moving things to extend the

18    deadlines, unless someone, you know, breaks their leg or

19    some third party is uncooperative.

20         Are you contemplating any expert discovery?  I'm

21    assuming not, but I don't know.

22         MS. RECINE:  At this point, we're unsure.  It's

23    unlikely, but we have not reached a final conclusion.

24         THE COURT:  All right.  Well, you should have a

25    date -- you should pick a date where experts are identified,

1    and you start that process.  And I don't know whether the

2    Debtors intend to take any discovery.

3            MR. FRANKEL:  Well, we do -- we are going to take

4    some discovery.

5            THE COURT:  So, anyway, I mean, those are tight

6    deadlines.  I'm not giving -- I mean, basically that means

7    that discovery is complete, and people have a week to work

8    on preparing for the -- well, two weeks to work on preparing

9    for a contested confirmation hearing and one week to prepare

10   declarations and a joint exhibit book.

11           So I'm not going to extend those deadlines, so you

12   two should go up, get a date from Ms. Lee from mid-January

13   to, you know -- frankly, nothing's going to happen between

14   Christmas and New Year's.  It's just not, there's -- it's

15   not going to happen.  That week is -- I'm out, so it's going

16   to be after that or the week before then, so it's likely

17   going to be the second week of January.

18           MR. FRANKEL:  Okay.

19           THE COURT:  And then just work backwards for the

20   deadlines.  And you should set a meet and confer to go over

21   all of this and do that this week.  Okay?

22           MR. FRANKEL:  We will do that.

23           THE COURT:  All right.

24           MS. RECINE:  Thank you, Your Honor.

25           THE COURT:  And, again, my customary practice for

1   trials is to take declarations or affidavits by parties who

2   are under the -- by people who are under the parties'

3   control by a week before the trial, and have them there for

4   cross-examination and redirection.  And to have a joint

5   exhibit book, to have the parties meet and confer and agree

6   on the admissibility of as many exhibits as possible and

7   provide that exhibit book a week before the trial.

8            And if there are discovery disputes, the parties -

9   - as the Rule 2004 order says, the parties should send an

10   email letter to chambers copying the other side after trying

11   to work out the dispute obviously and we'll set up a

12   telephonic discovery conference.

13            The last point is I'm not a big fan at all of

14   motions in limine.  I find that 99 percent of evidentiary

15   rulings are perfectly fine at the trial.  But if something's

16   really affecting your whole trial strategy, then I'll hear

17   that.

18            And I don't really see here, given the schedule

19   we're on and the issues we're on, the need to have, you

20   know, summary judgment in advance.  I think we can just deal

21   with that as part of the briefing and the confirmation

22   hearing.  I mean, clearly, some of the issues the Debtors

23   are raising I think would not be summary judgment issues, so

24   I think we should just go to the confirmation hearing.

25            MR. FLIMAN:  Your Honor, just one more question

1     for clarification.

2               THE COURT:  Right.

3               MR. FLIMAN:  And so, the Debtors will be filing an

4     objection to our claim.

5               THE COURT:  I'm assuming.  I mean, I gave them two

6     options.  I don't think there's a need for -- since you

7     filed the claim, I don't think there's a need for you to

8     then request allowance.  I think it's just, you know, it's

9     up to the Debtors to object and tee that up and it will be

10    heard at the same time as confirmation.

11              MR. FLIMAN:  And then we'll work then to the

12    briefing schedule for confirmation in terms of our response

13    to their objection?

14              THE COURT:  Right.

15              MR. FLIMAN:  Okay, understood.

16              THE COURT:  The response to that objection really

17    should be at the same time and part of the confirmation

18    objection.

19              MR. FLIMAN:  Understood.

20              THE COURT:  There's no need to file two separate

21    objections.

22              MR. FLIMAN:  Thank you.

23              THE COURT:  All right.  I guess one last point.

24    I'm assuming the Debtors -- I mean, you may be precluded at

25    this point by rulings, I don't know, but I'm assuming you

1  are not seeking affirmative claims against Brooklyn Lender.

2  If that were the case, we'd have to -- you'd have to do a

3  Complaint and, you know, and the like, as opposed to --

4          MR. FRANKEL:  The plan will preserve those claims.

5          THE COURT:  All right.  So those issues would not

6  be teed up for confirmation.

7          MR. FRANKEL:  Correct.

8          THE COURT:  Okay, all right.  So obviously, you

9  should file an objection soon, but you can work out the

10  discovery schedule in advance.  You don't need to have the

11  objection filed.  I'm assuming the disclosure statement is

12  your -- is telegraphing your main arguments in any event, so

13  you can decide accordingly on what discovery needs to be

14  taken.

15          Okay.  So I'll look for the stip on the cash

16  collateral, the order on exclusivity, and the blackline and

17  my markup on the disclosure statement.

18          MR. FRANKEL:  Thank you, very much.

19          THE COURT:  Okay.

20          MR. FLIMAN:  Thank you, Your Honor.

21          THE COURT:  Thank you.

22          MS. RECINE:  Thank you, Your Honor.

23          (Whereupon these proceedings were concluded at

24  11:20 AM)

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   Sonya
    Landanski
7   Hyde

    Digitally signed by Sonya
    Landanski Hyde
    DN: cn=Sonya Landanski Hyde,
    o, ou,
    email=digital1@veritext.com,
    c=US
    Date: 2019.09.11 14:23:07 -04'00'

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  September 11, 2019

| & | |
|---|---|
| **&** | 3:3,10,10 6:25 |

| 1 | |
|---|---|
| **10022** | 3:6 |
| **10038** | 3:13 |
| **10601** | 1:14 |
| **10:41** | 1:17 |
| **11** | 2:4 8:21 10:1 |
| | 30:25 |
| **1121** | 4:10 |
| **1124** | 10:23 16:9 |
| | 18:18,19,20 19:2 |
| **11501** | 30:23 |
| **11:20** | 29:24 |
| **11th** | 3:5 |
| **16th** | 6:9 18:1 |
| | 20:14 |
| **18** | 9:23 10:3 |
| **180** | 3:12 |
| **19-23013** | 1:3 |

| 2 | |
|---|---|
| **20** | 12:18 |
| **2004** | 19:15 27:9 |
| **2019** | 1:16 30:25 |
| **248** | 1:13 |
| **255,000** | 15:9,10 |

| 3 | |
|---|---|
| **30** | 2:7,11,16 |
| **300** | 1:13 30:22 |
| **31** | 2:16 |
| **32** | 15:7 |
| **33** | 2:16 |
| **330** | 30:21 |
| **36** | 2:16 |
| **365** | 10:23 |
| **39** | 2:19 7:19,23 |

| 4 | |
|---|---|
| **4** | 12:3,4 13:9 |
| | 14:16 |
| **40** | 9:4,7 |

| 42.5 | 9:4 |
|---|---|

| 5 | |
|---|---|
| **5** | 12:4 13:13 |
| **506** | 16:9 |
| **53** | 1:7 4:2 |

| 7 | |
|---|---|
| **75** | 7:21,25 |

| 8 | |
|---|---|
| **800** | 3:5 |

| 9 | |
|---|---|
| **9** | 1:16 |
| **99** | 27:14 |

| a | |
|---|---|
| **able** | 8:2 20:6 |
| **account** | 23:1 |
| **accurate** | 22:13 |
| | 30:4 |
| **action** | 17:9 |
| **added** | 4:6 7:6 |
| | 10:10 |
| **address** | 21:18 |
| **adequacy** | 20:12 |
| | 20:23 |
| **adjourned** | 4:17 |
| **adjudicate** | 6:5 |
| **administrative** | |
| | 15:8 |
| **admissibility** | 27:6 |
| **admitted** | 8:14 |
| **advance** | 27:20 |
| | 29:10 |
| **adversary** | 18:4 |
| **affidavit** | 21:16 |
| **affidavits** | 27:1 |
| **affirmative** | 29:1 |
| **agenda** | 4:6 |
| **ago** | 5:7 |
| **agree** | 20:19 27:5 |
| **agreed** | 5:3 |
| **agreement** | 5:4,7 |

| **agreements** | 21:12 |
|---|---|
| | 21:13 |
| **al** | 4:3 |
| **allocates** | 7:19 |
| **allowance** | 28:8 |
| **allowed** | 12:22 |
| | 13:10 15:8 18:8,9 |
| | 20:13 |
| **alternatively** | 12:5 |
| | 18:6 |
| **amend** | 7:5 |
| **amount** | 7:20,23 |
| | 9:13 15:8 18:8,10 |
| | 18:24 |
| **answer** | 7:22 |
| **anyway** | 26:5 |
| **apart** | 18:20 |
| **appear** | 10:13 |
| **appears** | 9:2 |
| **application** | 2:14 |
| | 4:16 20:4 |
| **applied** | 16:10 |
| **apply** | 14:11 |
| **appropriate** | 23:3 |
| **approval** | 2:7,10 |
| | 2:14 4:11 6:14 7:2 |
| | 7:16 |
| **approve** | 7:11 |
| **area** | 20:22 |
| **arguing** | 13:2 |
| **arguments** | 19:7,9 |
| | 29:12 |
| **asking** | 5:4 |
| **assert** | 12:23 13:23 |
| **asserted** | 7:20,21 |
| | 7:25 12:19 13:25 |
| **asserting** | 13:18 |
| | 14:12 |
| **asserts** | 10:12 |
| **assuming** | 12:17 |
| | 12:23 16:6,7 |
| | 17:18,25 18:22 |
| | 19:16 25:9,21 |

| | 28:5,24,25 29:11 |
|---|---|
| **assumptions** | 7:12 |
| | 7:13 |
| **attention** | 24:13 |
| **attorneys** | 3:4,11 |
| **authorized** | 20:1 |
| **available** | 7:24 |
| | 25:3 |
| **avenue** | 3:5 |

| b | |
|---|---|
| **b** | 1:21 |
| **back** | 10:19 20:17 |
| | 23:10,11 |
| **backenroth** | 3:3 |
| **backwards** | 25:6 |
| | 26:19 |
| **bad** | 9:18 |
| **bankruptcy** | 1:1 |
| | 1:12,23 11:6,25 |
| | 18:19 19:1 |
| **based** | 20:19,22 |
| | 24:11,14,21 25:4 |
| **basically** | 26:6 |
| **beginning** | 6:17 |
| | 16:19 17:13 |
| **behalf** | 5:6 6:25 |
| **belief** | 21:3 |
| **believe** | 7:14 23:20 |
| | 24:1 |
| **best** | 13:2 |
| **better** | 10:1 |
| **beyond** | 12:1 21:9 |
| **big** | 27:13 |
| **blackline** | 6:20 |
| | 17:16 29:16 |
| **blank** | 15:21 |
| **book** | 25:8 26:10 |
| | 27:5,7 |
| **box** | 22:13 |
| **boy** | 9:18 |
| **breach** | 23:17 |
| **breaks** | 25:18 |

bridge  7:22
briefing  18:16
  19:11 27:21 28:12
broad  10:2,3 24:2
  24:4
brooklyn  2:9,13
  3:11 5:6 6:23 7:1
  16:9,16 18:16
  19:7 29:1
brought  10:2
build  18:16
building  17:8
busy  24:15

**c**

c  3:1 4:1 30:1,1
calendar  4:4
  24:24
carefully  10:1
case  1:3 7:13,14
  13:18 14:14 18:24
  23:19 25:15 29:2
cases  11:10
cash  4:13 5:10
  11:20 12:5 29:15
cause  6:14
certificates  21:12
certified  30:3
cetera  10:12
chambers  5:14,16
  6:13 17:17 27:10
chapter  2:4
characterize  7:3
checked  11:22
christmas  26:14
claim  8:9 12:22,24
  13:1,3 14:12,12
  14:13 16:9 18:5,6
  18:7 28:4,7
claimants  13:7,9
claims  7:20,21,25
  8:3 9:10 12:18,19
  13:14,17,18,23,23
  13:25 14:4,14,23

16:24 29:1,4
clarification  28:1
clarify  15:11
class  12:3,4,4 13:9
  13:13 14:16
clauses  10:11
clear  4:6 9:2
  10:15 14:20 21:23
  21:23 22:3
clearer  13:23
clearly  27:22
clerk  4:22
client  10:3 21:15
client's  22:12
clients  6:2 7:20,21
  7:24,25 8:3 22:16
  22:18
code  11:6 19:1
collateral  4:13
  5:11 29:16
comments  6:22
  10:9,18 15:15,15
commitment  9:3
  22:2
companies  21:14
company  12:12
complaint  29:3
complete  23:13
  25:9 26:7
completed  23:7
computer  21:17
conceivably  16:16
concept  11:12,19
concern  20:22
concerned  9:2,12
  10:10 24:12,23
concerning  22:2
concerns  20:11
  21:21 23:20
concluded  29:23
conclusion  25:23
condition  16:6,8

conditions  16:5
confer  26:20 27:5
conference  2:1
  4:5 27:12
conferring  23:3
confirmation  6:7
  6:16 9:10 12:7,8
  16:5,8,15,17,22
  17:12,22 18:9,11
  19:12,17,19 23:11
  23:13 25:6,8,10
  26:9 27:21,24
  28:10,12,17 29:6
conflict  20:4
connection  15:22
consent  4:21 5:14
  6:3
contemplated
  4:25 16:10
contemplating
  25:20
contend  9:15
  10:12
contending  11:8
contested  26:9
continue  19:16
contract  12:1
  14:11 18:24
control  21:6 27:3
conversation
  20:19,23
copying  27:10
correct  29:7
correctly  9:14
correspondence
  20:24 21:15,24,25
  22:1
costs  15:10,11
counsel  10:4
  19:25 20:2,15
country  30:21
couple  8:13 11:4
  23:13

course  6:20 17:18
  21:1
court  1:1,12 4:2
  4:14,19,22 5:3,9
  5:12,15 6:6,11
  8:10,14,19,21,24
  9:1,9,18,23,25
  10:6,9 11:15,17
  11:22 12:14,17,21
  13:4,7,9,13,22
  14:3,9,18 15:1,3,6
  15:14 16:13,21
  17:1,5,15,24
  18:14,22 19:14,23
  20:6,9,25 21:2,10
  21:20 22:6,9,14
  23:8,10,23 24:6
  24:10,16 25:1,5
  25:24 26:5,19,23
  26:25 28:2,5,14
  28:16,20,23 29:5
  29:8,19,21
cover  5:17 13:19
covering  20:5
creditor  18:25
creditors  12:3
cross  27:4
crystal  10:15
cure  11:13
custodian's  22:13
custodians  23:4
custody  21:6
customary  26:25

**d**

d  1:22 4:1
daniel  3:15 5:5
  6:25
data  8:13
date  11:18 12:9
  16:5,7,14 17:21
  23:5,11 25:13,14
  25:25,25 26:12
  30:25

dates 24:21,22
  25:2
day 17:25
deadline 25:15
deadlines 23:3
  25:16,18 26:6,11
  26:20
deal 11:5 15:16
  27:20
dealing 19:5
  20:16
deals 12:2
dealt 16:22 17:19
  19:11
debt 9:22
debtor 1:9 3:4
  18:5 23:18
debtors 2:10,14
  4:9,11 5:7 6:19
  7:5,22 8:15 9:13
  10:12,12,15,16,20
  12:8 20:15 23:20
  23:21,25 24:4
  26:2 27:22 28:3,9
  28:24
december 6:17
  18:1
decide 29:13
decided 17:3
declaration 22:21
declarations 25:7
  26:10 27:1
default 8:4,7,22
  10:20,21,22,22,24
  11:6,13 18:19
  19:1
defenses 11:25
  12:1,1
define 15:21
delay 24:14
depose 25:12
depositions 23:6,7
  24:23,24 25:13

describe 15:19
determine 18:4
  22:12
die 10:7
diligence 20:12
diligent 21:5
diligently 22:19
diluted 14:8
dilution 14:15,16
  14:24 15:25
disallow 8:3
disclosure 2:4,6,9
  2:11,14,18 4:12
  5:20 6:15,18,20
  7:2,4,6,11,16
  10:10 14:20,21
  15:7,9,17,18 16:4
  17:20 29:11,17
disclosures 7:4,7
discovery 2:1 4:5
  5:18,19 16:21
  17:11 19:14,16,17
  19:18,22 20:7,10
  20:13,14 22:24
  23:7,12 24:19
  25:9,20 26:2,4,7
  27:8,12 29:10,13
discretionary
  19:6
discussion 10:19
  10:25 11:4
dispute 5:18,23
  23:16 27:11
disputes 27:8
distinction 23:22
district 1:2
docket 24:15
document 2:7,11
  2:15,19 17:5
  25:14
documents 8:19
  10:6 20:19 21:4,6
  22:16 23:16,17

25:11
doing 13:20
drain 1:22

**e**

e 1:21,21 3:1,1 4:1
  4:1 30:1
earlier 25:13
early 6:8
ecro 1:25
edition 10:11
effective 11:18
  12:8 16:5,7,14
either 17:24 18:11
  19:8
elect 12:5 14:16
election 12:15
  13:5,10 14:19,24
electronic 22:3
email 5:15 6:13
  17:16 21:18 22:13
  27:10
enables 16:10
entities 24:5
entitled 8:7 18:25
  25:11
equal 12:6
equitable 11:5
  19:9
equities 19:8
equity 11:23 13:3
  15:23
establish 23:2
established 24:22
estimated 15:11
estimates 9:14
estimating 15:8
estimation 16:25
et 4:2 10:12
event 29:12
evident 10:18
evidentiary 27:14
examination 27:4

example 8:13
exceptions 11:5
exclusive 4:10
exclusivity 2:3,15
  5:23 6:3,8 29:16
exhibit 25:8 26:10
  27:5,7
exhibits 27:6
existing 13:18,23
  14:8 15:23
exit 15:22 16:6
expenses 15:8
expert 25:20
experts 25:25
explains 22:18
explanatory
  15:15
extend 2:3 25:17
  26:11
extended 6:8
extending 2:15
extends 5:10
extension 4:9,20
  4:24 6:3
extent 13:10 14:6
  14:22

**f**

f 1:21 30:1
fact 7:10 22:1
  24:15
facts 10:16 17:10
  17:11
fail 25:15
fair 18:24 20:13
fairly 17:7
fan 27:13
far 5:23 9:1,11
  10:9 17:6 19:16
feasibility 9:1
federal 17:9 19:15
file 12:18,25
  17:19 18:10,13
  28:20 29:9

[filed - issue]                                                                                    Page 4

**filed**   4:16 12:20 13:17 14:12,13,14 20:4 28:7 29:11
**files**   22:1
**filing**   2:3 13:15 28:3
**final**   5:1,8 25:23
**financing**   7:24 15:23 16:6
**find**   27:14
**fine**   5:15 6:6 19:13 22:17 27:15
**firm**   24:18
**first**   8:2 10:21 16:13 21:22
**fit**   11:11
**five**   19:7
**fliman**   3:15 5:5,6 5:10,13 6:2,10,24 6:25 8:12,20,23 8:25 9:17,20,24 10:5,8 19:13,20 27:25 28:3,11,15 28:19,22 29:20
**floor**   3:5
**focus**   7:9 15:16
**follow**   16:17
**foregoing**   30:3
**forensic**   21:17
**forensically**   22:11
**forget**   4:23
**form**   5:8 12:15 13:5 22:2
**former**   16:13
**forth**   6:4
**found**   11:13
**four**   19:7
**frankel**   3:3,8 4:13 4:16,21 5:1 9:4 11:12,16,21 12:13 12:16,20,25 13:6 13:8,12,20 14:2,7 14:17,25 15:2,5

15:13 16:12,20,24 17:4,14,23 18:12 18:21 20:3,8 21:8 21:11 23:15 24:3 24:9 26:3,18,22 29:4,7,18
**frankly**   7:5 26:13
**fund**   9:6
**funding**   8:8 16:10 16:14
**further**   4:24 20:18

**g**

**g**   4:1 9:23 10:3
**generally**   14:4
**generically**   15:19 15:21
**getting**   4:22 12:7 12:11 24:18,23
**give**   8:12,21 17:15
**given**   6:14 27:18
**giving**   26:6
**glitch**   15:6
**go**   13:7 21:8 22:13 22:19 25:5 26:12 26:20 27:24
**goal**   14:7
**goes**   13:4,13
**going**   7:7,9,22 12:9,25 13:2,5 17:16 21:8,18 22:11 25:17 26:3 26:11,13,15,15,17
**goldwasser**   24:24 25:3
**goldwasser's**   21:14
**good**   4:3,22 9:19 18:12
**gotten**   17:21
**grant**   5:25 6:11
**great**   17:14

**greg**   3:20
**grounds**   10:21
**guarantee**   9:22
**guarantor**   9:16,18 9:19,20
**guarantor's**   23:17
**guess**   6:22 18:15 28:23
**guy**   9:19

**h**

**half**   5:7
**hand**   8:11
**handle**   19:21
**hands**   19:9
**happen**   26:13,15
**happened**   17:7
**happy**   6:23
**hear**   6:23 18:11 27:16
**heard**   22:25 28:10
**hearing**   2:1,3,6,6 2:9,13,18 4:17 6:16 16:16,23,25 17:12,22 19:17 23:11,14 25:6,8 25:10 26:9 27:22 27:24
**help**   24:17,17,18
**helpful**   23:2
**ho**   3:16
**holders**   12:4 13:14,16 14:8
**holding**   6:16
**hon**   1:22
**honor**   5:5 6:2,10 6:24 7:1,9,11,18 8:4,12,20,23 9:22 10:5,8 19:20 20:11 21:8 22:22 26:24 27:25 29:20 29:22
**honor's**   5:13 19:21

**hour**   5:7
**house**   21:19
**hyde**   2:25 30:3,8

**i**

**idea**   22:11
**identified**   25:25
**impaired**   15:1
**imperfect**   13:20
**importantly**   10:17
**impression**   23:25
**inclination**   5:25 18:17
**included**   12:23
**includes**   12:17
**including**   15:10 21:13
**incorporated**   19:2 19:15
**incorporates**   10:23
**incorporation**   21:13
**infer**   13:15
**information**   21:3 24:1
**informed**   5:20
**insufficient**   8:8
**intend**   26:2
**intends**   23:2
**interest**   8:4,7 9:5 9:7 10:20,22,24 11:6 12:4 13:14 13:16,18 14:1,5,8 14:12,15,23 18:19 19:1
**interests**   13:24 14:6 15:24
**interim**   4:17,24
**interplay**   12:2
**issue**   8:22 9:10,14 18:8,15,18,19,20 19:2,3

issued   22:25
issues   4:7 5:19 6:5
  16:17,22 17:2,5
  19:10 27:19,22,23
  29:5

**j**

january   6:8,9,17
  16:19 17:13 18:1
  26:12,17
jennifer   19:21
joint   25:7 26:10
  27:4
judge   1:23 20:3
judgment   27:20
  27:23
july   20:14

**k**

know   5:3,22
  10:13 11:9,23
  14:8 15:21 16:8
  16:15,18 17:2,8
  17:17,18 18:1,9
  18:23,24 19:6,7
  19:18 21:25 22:1
  23:24 25:12,18,21
  26:1,13 27:20
  28:8,25 29:3
krinsky   3:3

**l**

lack   7:4
laid   8:5,14 15:3
  17:2
lane   3:12
language   13:16
lavan   3:10 6:25
law   7:13,15 12:1,1
  18:24
lawyer   24:8
lays   6:13 16:4
leading   19:11
leave   11:5,24

leaves   9:5
ledanski   2:25 30:3
  30:8
lee   17:21 23:11
  26:12
leg   25:18
legal   30:20
lender   2:9,13 3:11
  5:6 6:23 7:1 16:9
  16:17 18:16 19:8
  29:1
lenders   9:3
lengthy   10:19
letter   4:5 20:17,17
  21:2 27:10
letters   22:2
light   6:1,12
limine   27:14
limited   17:7
line   11:9
litigation   8:14
  15:10,11
little   9:8 13:22
  21:9
live   10:6
llc   1:7 4:2
llcs   2:10,13
llp   3:3,10
loan   22:1
loans   8:16
long   6:4
look   29:15
looking   6:7 13:14
looks   6:15 18:14
losses   9:20,25
lot   7:6 24:4

**m**

maiden   3:12
main   29:12
making   8:17
  23:22
management
  21:13,14

mark   3:8
markup   17:15,18
  29:17
math   9:11
matter   1:5
maximum   7:23
mean   5:22 6:6
  8:10 11:3,7,17,18
  12:18,21 14:10
  15:20 16:13 17:1
  17:1,5,6,10 19:24
  22:15 24:6,7 26:5
  26:6 27:22 28:5
  28:24
means   8:8 26:6
meant   11:24
  13:18
meet   26:20 27:5
meeting   23:3
merits   17:3
metaphysical
  11:19
mid   26:12
million   7:19,21,23
  7:25 9:4,5,7 12:18
mineola   30:23
minimum   9:13
misrepresentati...
  8:18
missed   16:4
mistake   12:13
moment   11:13
money   9:6 14:13
month   5:24,25
months   22:24
morning   4:3 20:8
  20:20 21:22 22:11
  22:23
morrow   20:4,16
  21:16,22 22:10,23
  25:2
morrow's   24:11

motion   2:3 5:25
  6:11,13
motions   27:14
move   8:19
moving   25:17

**n**

n   3:1 4:1 30:1
nature   7:3
necessarily   14:11
  22:3
need   11:16 12:10
  13:22 14:10,13,19
  15:16 18:4 21:4
  27:19 28:6,7,20
  29:10
needs   9:13 12:14
  21:7 22:14,15,18
  24:6,17 29:13
new   1:2 3:6,13
  12:9,10,11 13:16
  15:18,20,22 26:14
nothing's   26:13
notice   2:6
number   9:7,12
  19:9
ny   1:14 3:6,13
  30:23

**o**

o   1:21 4:1 30:1
object   10:20 18:6
  28:9
objection   2:9,10
  2:13,18 4:20 6:19
  6:23 7:1,8 9:12
  11:1 13:1,1,15
  18:10,13 28:4,13
  28:16,18 29:9,11
objections   28:21
obviously   6:6 10:3
  12:21 13:10 18:12
  22:23 27:11 29:8
okay   4:3,22 5:9,16
  6:11 9:1,9 11:21

12:14 14:9,25
15:13 16:12 17:4
17:15,24 18:21
19:23 20:6,9,9
21:10,20 22:14
24:10,16 25:5
26:18,21 28:15
29:8,15,19
**old**   30:21
**omnibus**   2:13
**ones**   10:18
**onus**   22:17
**operating**   21:12
**opposed**   9:6 13:3
23:17 29:3
**optimistic**   8:2
**options**   28:6
**order**   2:15 4:17
4:24 5:1,8 7:19
17:20 27:9 29:16
**originated**   8:17
**outside**   25:13,14
**overly**   10:2,3 24:2
**owner**   8:15
**owners**   12:9,10,11
15:18,20
**ownership**   8:18
13:3,3 22:2 23:21

**p**

**p**   3:1,1 4:1
**page**   15:7
**paid**   12:5
**papers**   8:5
**paragraphs**   11:4
11:22
**parcel**   19:6
**part**   7:8 10:20
13:1 19:6,11,17
19:18 22:6 27:21
28:17
**particularly**
14:20

**parties**   10:14 25:6
27:1,2,5,8,9
**partner**   19:21
**parts**   7:4
**party**   25:19
**passed**   22:24
**password**   21:18
23:1
**patently**   7:12
**pay**   7:20,24 11:14
11:18,20
**paying**   11:2 24:13
**penalty**   21:4
**people**   12:18 14:5
21:4,19 25:12
26:7 27:2
**percent**   27:14
**perfectly**   27:15
**period**   2:3 20:21
**periods**   2:15 4:10
**perjury**   21:4
**permission**   5:13
19:21
**person**   24:15
**petroleum**   11:9
18:23 19:3
**phrase**   14:10
**pick**   25:25
**placeholder**   4:4
**places**   14:21
**plains**   1:14
**plan**   2:4 5:20 6:12
6:21 7:10,17 8:10
9:6,10 12:7 14:21
15:7,10,16,20,24
15:25 16:3,11
17:19 18:7 29:4
**planning**   11:17
**pleadings**   4:14
**plus**   15:9
**point**   6:12 8:3
9:11 12:2 13:5
19:6 24:19 25:22

27:13 28:23,25
**points**   8:13 9:5,7
11:1 17:19
**portion**   19:22
**position**   25:7
**possession**   21:6
**possibility**   8:6,10
**possible**   27:6
**post**   12:7,8
**practice**   26:25
**precluded**   28:24
**preliminary**   2:10
**prepare**   26:9
**preparing**   26:8,8
**present**   3:18
**preserve**   29:4
**preserver**   14:3
**pretty**   18:12
**principal**   24:4
**prior**   14:19
**probably**   5:7
18:10
**proceed**   7:15 23:6
23:7
**proceeding**   18:4
**proceedings**
29:23 30:4
**process**   6:12
19:19 26:1
**produce**   20:20
25:16
**produced**   22:5,19
**production**   20:18
23:5 25:14
**progress**   20:21
**properties**   8:16
**proposed**   9:6
**prospective**   9:3
**protocols**   23:4
**provide**   21:11
22:20 27:7
**provided**   9:20

**purpose**   15:22
**pursuant**   14:24
15:23
**push**   7:8
**put**   5:18 6:4 16:11

**q**

**quantum**   8:7
**quarropas**   1:13
**question**   27:25
**quite**   6:15 24:13
**quote**   19:25

**r**

**r**   1:21 3:1 4:1 30:1
**raised**   9:3
**raising**   27:23
**rdd**   1:3
**reached**   5:6 25:23
**read**   8:19 9:23
10:1 21:2
**reading**   10:3
**really**   11:1,11,20
18:4,19 24:18
27:16,18 28:16
**reasonable**   24:22
**reasons**   7:18
21:24
**received**   20:18
**recharacterized**
14:1,6,14,23
**recine**   19:21
20:10 21:1,21
22:8,10,22 23:9
23:19 24:11,21
25:2,22 26:24
29:22
**record**   5:5 6:25
8:5 30:4
**redirection**   27:4
**refer**   11:23
**refine**   18:7
**reinstatement**
10:25 11:10,19

reinstating 11:2
rejected 8:11
relate 14:18 23:16
related 2:7,11,15
  2:19 16:21 24:7
relates 16:2
relating 23:17
relevant 20:20
relies 7:12,13
rely 10:6 11:9
remanded 19:3
repeatedly 10:11
reply 6:19
represent 21:4
representations
  9:21 22:12 23:21
  24:12
request 4:9,11
  24:2,7 28:8
requesting 4:5 7:7
requests 20:13
  22:24
required 23:6
requirement 22:7
reserves 9:5,7
resolved 4:7
resources 7:15
respect 6:3 7:2
  8:15,18 9:21 16:9
  20:23
respective 12:8,10
response 2:18
  20:12 24:14 28:12
  28:16
result 24:14
retain 19:25
retention 20:1
retry 17:10
retrying 17:9
returns 20:20
  21:12
reviewed 6:19

right 4:2,14,19
  5:12 6:4 9:9 10:9
  12:5,9,18 13:4,6
  14:1,17 15:2 20:4
  20:9,25 21:20
  22:14 23:8 24:6
  25:1,24 26:23
  28:2,14,23 29:5,8
rights 13:25 14:5
road 30:21
robert 1:22
rolling 20:18
room 1:13
rule 8:21 10:1
  19:15 27:9
rules 19:15
ruling 16:8
rulings 27:15
  28:25

s

s 2:7,11,15,19 3:1
  4:1
safer 18:10
satisfied 21:16
saying 24:3
says 13:17 15:7,9
  15:10,20 27:9
schedule 6:4 16:3
  16:16 18:3 20:7
  23:5 24:16 25:4
  27:18 28:12 29:10
search 20:23 21:5
  21:17 22:4,9,19
  23:2,4,4 24:3
searches 20:12
second 12:2 26:17
secondly 10:22
  12:14
section 4:10 14:5
  14:19 16:3
sections 11:10
secured 11:8
  18:23,25 19:4

see 4:14,19 5:23
  9:10 18:4 23:19
  23:22 27:18
seeking 29:1
self 10:18 15:15
send 27:9
sent 20:17,17
separate 7:3
  11:25 18:20 28:20
september 1:16
  30:25
serious 10:1,4
served 20:14
set 24:22 26:20
  27:11
sets 10:17
shape 18:12 21:7
side 27:10
sides 25:11
sign 21:15
similarly 5:22
single 22:13 23:1
  23:1
sit 5:16 8:23
site 21:14
solicitation 7:16
solicited 7:10
solutions 30:20
something's 27:15
somewhat 24:12
  24:23
sonya 2:25 30:3,8
soon 29:9
sophisticated
  10:14
sort 11:23
southern 1:2
speak 21:22
speaking 5:17
  22:10,23
special 15:22
  19:25 20:2,15

spoke 20:8
standing 17:10
stanhope 1:7 4:2
start 26:1
state 7:15 8:14
  12:1
statement 2:4,6,9
  2:11,14,18 4:12
  5:21 6:15,18,20
  7:2,5,6,11,16
  10:10 14:20,22
  15:7,9,17,18 16:4
  17:20 29:11,17
states 1:1,12
stip 29:15
stock 12:6,6
stop 20:25
strategy 27:16
street 1:13
stroock 3:10,10
strook 6:25,25
struck 17:17
structure 23:21
strulovitch 9:15
  24:25
subject 13:17,24
  14:22 15:24
submit 5:8 17:20
  25:7
submitted 7:1
submitting 5:14
successfully 14:16
suffer 9:21
sufficient 6:14 8:5
suggested 18:16
suite 30:22
summary 27:20
  27:23
suppose 11:24
sure 6:6 20:2
  24:17
surprise 20:15

**t**

t  30:1,1
take  9:3 11:3 26:2
  26:3 27:1
taken  9:8 29:14
takes  9:12
talk  15:17 20:6
  22:15,20
talking  16:2 18:23
  23:24
tax  20:20 21:11
taxes  17:8
tee  28:9
teed  29:6
telegraphing
  29:12
telephonic  27:12
telephonically
  3:18
tempted  8:21
terms  23:4 28:12
testimony  17:6,7
thank  6:24 8:25
  15:5 26:24 28:22
  29:18,20,21,22
thing  5:17
things  4:3 18:5
  25:17
think  5:19,22 6:9
  8:4,6 10:14,18
  11:3,4,8,10 12:10
  13:2,17,22,24
  14:4,9,9,13,19,21
  15:3,14,16,17,21
  16:3,11,15,17
  17:6 18:17,18
  19:5 20:13 23:2
  23:15 24:21 25:5
  27:20,23,24 28:6
  28:7,8
thinking  16:20,24
third  3:5 25:19

thorough  22:4,9
thought  23:23
three  10:17
tiffany  3:16
tight  25:16 26:5
time  4:7 8:16,17
  11:14 16:18,22
  17:12 20:20 28:10
  28:17
timetable  5:19
today  4:4,8,18
  22:25
told  20:17 25:2
total  11:18
transcribed  2:25
transcript  30:4
transferred  15:24
treating  13:16
treatment  12:3,22
  18:7
trial  25:7 27:3,7
  27:15,16
trials  27:1
trouble  10:4
true  30:4
trying  14:3 25:3
  27:10
turning  18:3
two  7:3 10:21
  11:22 15:15 18:5
  21:11,24 22:24
  25:9 26:8,12 28:5
  28:20
twofold  8:1
type  13:15

**u**

u.s.  1:23
ultra  11:9 18:23
  19:3
unclean  19:9
unconfirmable
  7:12,17,18

uncooperative
  25:19
understand  10:14
  22:8
understood  10:5
  28:15,19
undertaken  22:4
uneconomic  7:14
unimpair  7:24
  18:18
unimpairment
  10:21
unimpairments
  18:17
united  1:1,12
unrealistic  7:14
unsecured  12:19
unsecureds  12:4
unsure  25:22
use  5:10
useful  22:22

**v**

valid  13:11
value  12:6
vargas  1:25
vehicle  15:22
verify  22:17
veritext  30:20
version  10:15,16
view  6:2 17:9
violations  17:8

**w**

wait  25:15
want  10:13,15
  19:18
wants  21:17 22:16
warning  8:22
waste  7:15
way  7:6 18:11
we've  8:5,13
  20:18
week  25:8,12 26:7
  26:9,15,16,17,21

  27:3,7
weeks  23:13 25:9
  26:8
whatsoever  8:4
white  1:14
who've  13:25
willing  21:15
withholding  24:1
words  11:25
work  23:10,11
  25:3 26:7,8,19
  27:11 28:11 29:9
worried  4:23

**x**

x  1:4,10 18:8

**y**

yeah  18:14
year  5:2,11 6:8
  16:19 17:13
year's  26:14
years  21:11
york  1:2 3:6,13

**z**

zipes  3:20

# APPENDIX C

**Ho, Tiffany L.**

| | |
|---|---|
| **From:** | Fliman, Daniel A. |
| **Sent:** | Tuesday, October 29, 2019 6:40 PM |
| **To:** | Susan Mauro |
| **Cc:** | Mark Frankel (mfrankel@bfklaw.com); Recine, Jennifer S. |
| **Subject:** | 53 Stanhope - Production Deadline |

Susan,

Pursuant to the 10/16 scheduling order, yesterday (10/28) was the "[d]eadline for the Debtors to complete their production in connection with Brooklyn Lender's existing document requests pursuant to the 2004 Application Order." Based on our prior discussions, and the colloquy at the September 9 hearing, we expected the Debtors to make a further production in response to our Rule 2004 discovery requests. However, we did not receive any further production by the 10/28 deadline (or so far today). Please confirm by 9:30AM ET tomorrow (1) that the Debtors have already made a further production and, if that is the case, provide details concerning the date and method of transmittal or (2) that the Debtors will not make any further production in response to our Rule 2004 discovery requests and thereby represent that their production is complete.

Dan

**Daniel Fliman**
Partner

**STROOCK**
180 Maiden Lane, New York, NY 10038
D: 212.806.5601

dfliman@stroock.com | vCard | www.stroock.com

# APPENDIX D

## Ho, Tiffany L.

| | |
|---|---|
| **From:** | Susan Mauro <SMauro@Abramslaw.com> |
| **Sent:** | Wednesday, October 30, 2019 5:50 PM |
| **To:** | Recine, Jennifer S. |
| **Cc:** | Fliman, Daniel A.; Mark Frankel (mfrankel@bfklaw.com) |
| **Subject:** | <EXTERNAL> RE: In re 53 Stanhope LLC, et al, Case No.: 19-23013 (RDD) |

Thank you will do.

I also owe you a response to your earlier email regarding discovery. Unfortunately I got stuck in court all day but I will provide a response by Friday.


*Susan Mauro, Esq.*

**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP**

*Partner*
**Tel:** 718-215-5300 x534
**Fax:** 718-215-5304
Email: SMauro@Abramslaw.com

**A F**

Brooklyn Office
1 Metrotech Center
Suite 1701
Brooklyn, New York 11201

| Long Island | Manhattan | Brooklyn | Rochester |
|---|---|---|---|
| (516) 328-2300 | (212) 279-9200 | (718) 215-5300 | (585) 218-9999 |

**WWW.ABRAMSLAW.COM**

CONFIDENTIALITY NOTICE: This e-mail may be an attorney-client communication and may contain information that is privileged and confidential and is therefore subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. If you are not the intended recipient you are prohibited from copying, forwarding, distributing, disseminating, or otherwise viewing this e-mail and any attachments hereto. Please notify the sender and delete this e-mail if you are not the intended recipient.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Recine, Jennifer S. [mailto:jrecine@stroock.com]
**Sent:** Wednesday, October 30, 2019 5:38 PM
**To:** Susan Mauro <SMauro@Abramslaw.com>
**Cc:** Fliman, Daniel A. <dfliman@stroock.com>; Mark Frankel (mfrankel@bfklaw.com) <mfrankel@bfklaw.com>
**Subject:** RE: In re 53 Stanhope LLC, et al, Case No.: 19-23013 (RDD)

Susan,

We have conferred with David Aviram and he is available for his deposition on December 19. Please provide us with dates for Mr. Goldwasser and Mr. Strulovitch to sit after December 6, 2019.


**Jennifer Recine**
Partner

**STROOCK**

180 Maiden Lane, New York, NY 10038
D: 212.806.1301

jrecine@stroock.com | vCard | www.stroock.com

**From:** Susan Mauro <SMauro@Abramslaw.com>
**Sent:** Friday, October 25, 2019 4:42 PM
**To:** Recine, Jennifer S. <jrecine@stroock.com>
**Cc:** Fliman, Daniel A. <dfliman@stroock.com>; Mark Frankel (mfrankel@bfklaw.com) <mfrankel@bfklaw.com>
**Subject:** <EXTERNAL> RE: In re 53 Stanhope LLC, et al, Case No.: 19-23013 (RDD)

Jennifer,

I have conferred with Mark Frankel and we are ok with Nov. 14th for your response and objections to the subpoenas served on your clients.  Please advise of Mr. Aviram's availability for depositions.  Thanks and have a good weekend.


*Susan Mauro, Esq.*

ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP

*Partner*                                                             **Brooklyn Office**
**Tel:** 718-215-5300 x534                                    **1 Metrotech Center**
**Fax:** 718-215-5304                                                     **Suite 1701**
**Email:** SMauro@Abramslaw.com                    **Brooklyn, New York 11201**

| Long Island | Manhattan | Brooklyn | Rochester |
|---|---|---|---|
| (516) 328-2300 | (212) 279-9200 | (718) 215-5300 | (585) 218-9999 |

WWW.ABRAMSLAW.COM

**CONFIDENTIALITY NOTICE:** This e-mail may be an attorney-client communication and may contain information that is privileged and confidential and is therefore subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. If you are not the intended recipient you are prohibited from copying, forwarding, distributing, disseminating, or otherwise viewing this e-mail and any attachments hereto. Please notify the sender and delete this e-mail if you are not the intended recipient.

**IRS CIRCULAR 230 DISCLOSURE:** To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Recine, Jennifer S. [mailto:jrecine@stroock.com]
**Sent:** Friday, October 25, 2019 10:54 AM
**To:** Susan Mauro <SMauro@Abramslaw.com>
**Cc:** Fliman, Daniel A. <dfliman@stroock.com>
**Subject:** RE: In re 53 Stanhope LLC, et al, Case No.: 19-23013 (RDD)

Susan


Checking in to see if you've heard back from your clients on using November 14, 2019 as the date for objections and responses?

Jen

**Jennifer Recine**
Partner

**STROOCK**

180 Maiden Lane, New York, NY 10038
D: 212.806.1301

jrecine@stroock.com | vCard | www.stroock.com

On Oct 22, 2019, at 5:40 PM, Recine, Jennifer S. <jrecine@stroock.com> wrote:

> Susan,
>
> When your co-counsel and client are back online, please let us know if November 14, 2019 is workable as the deadline for R&Os for all confirmation discovery, including the discovery sought in your subpoenas referenced below. In the meantime, while we all continue to confer on timing, we will consider all relevant deadlines to be extended out, extended consistent with caselaw applying FRCP 45. We look forward to hearing from you tomorrow.
>
> Jen
>
>
> **Jennifer Recine**
> Partner
>
> **STROOCK**
>
> 180 Maiden Lane, New York, NY 10038
> D: 212.806.1301
>
> jrecine@stroock.com | vCard | www.stroock.com
>
> ---
>
> **From:** Recine, Jennifer S.
> **Sent:** Monday, October 21, 2019 8:52 PM
> **To:** Susan Mauro <SMauro@abramslaw.com>
> **Cc:** Fliman, Daniel A. <dfliman@stroock.com>
> **Subject:** Re: <EXTERNAL> RE: In re 53 Stanhope LLC, et al, Case No.: 19-23013 (RDD)
>
> Susan,
>
>
> Given that your clients are not available at this time, will you agree that the deadline for outstanding responses and objections to the pending subpoenas are adjourned until this Friday October 25?
>
>
> Jen
>
>
> **Jennifer Recine**
> Partner
>
> **STROOCK**

180 Maiden Lane, New York, NY 10038
D: 212.806.1301

jrecine@stroock.com | vCard | www.stroock.com

On Oct 21, 2019, at 5:57 PM, Susan Mauro <SMauro@abramslaw.com> wrote:

Hi Jennifer,

Unfortunately client and co-counsel, etc. are all out of pocket until Wed given the current holiday and I need to confer with them 1st.  I will let you know.  Thanks.


### Susan Mauro, Esq.

<imagecc6403.JPG>

*Partner*                                                                          **Brooklyn Office**
**Tel:** 718-215-5300 x534                                          **1 Metrotech Center**
**Fax:** 718-215-5304              <imageb548ed.JPG>            **Suite 1701**
**Email:** SMauro@Abramslaw.com                        **Brooklyn, New York 11201**
<imagea03533.JPG>

CONFIDENTIALITY NOTICE: This e-mail may be an attorney-client communication and may contain information that is privileged and confidential and is therefore subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. If you are not the intended recipient you are prohibited from copying, forwarding, distributing, disseminating, or otherwise viewing this e-mail and any attachments hereto. Please notify the sender and delete this e-mail if you are not the intended recipient.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Recine, Jennifer S. [mailto:jrecine@stroock.com]
**Sent:** Monday, October 21, 2019 5:06 PM
**To:** Susan Mauro <SMauro@Abramslaw.com>
**Cc:** Fliman, Daniel A. <dfliman@stroock.com>
**Subject:** RE: In re 53 Stanhope LLC, et al, Case No.: 19-23013 (RDD)

Dear Susan,

I haven't heard back from you concerning setting a date for objections and responses for confirmation discovery.  As we discussed last week, the discovery served by you on Maverick, Brooklyn Lender and David Aviram is confirmation discovery and thus governed by the December 6, 2019 discovery deadline set forth in our agreed court ordered schedule.  Nevertheless, we also discussed the prospect of setting an earlier deadline for objections and responses.  You asked that we propose a date and last Friday, we proposed November 14, 2019.  We have not heard back from you.  If we do not hear back from you by 9 am tomorrow, we will assume that you agree to this date and will ask the court to so-order an amended schedule with this date as the date for all objections and responses with respect to confirmation related discovery, including for the referenced subpoenas.

Jen

**Jennifer Recine**
Partner

**STROOCK**

180 Maiden Lane, New York, NY 10038
D: 212.806.1301

jrecine@stroock.com | vCard | www.stroock.com

---

**From:** Recine, Jennifer S.
**Sent:** Friday, October 18, 2019 4:43 PM
**To:** Susan Mauro
**Cc:** Fliman, Daniel A.
**Subject:** In re 53 Stanhope LLC, et al, Case No.: 19-23013 (RDD)

Hi Susan,

Following up on yesterday's telephone call, we did not receive additional tax returns for the following entities:

? D & W Real Estate Spring LLC – 2013
? Meserole and Lorimer LLC – 2013
? Natzliach LLC – 2013
? 92 South 4th Street LLC – 2013 and 2014
? 53 Stanhope LLC – 2013
? 119 Rogers – 2013
? 127 Rogers – 2013

In addition, you asked that we propose a date for providing responses and objections to the subpoenas for documents and information related to confirmation served on Maverick, Brooklyn Lender and David Aviram on October 8. In looking over our agreed schedule, it seems prudent to agree to a global deadline for responding and objecting to the October 8 subpoenas and any additional discovery that might be served. We suggest November 14, 2019.

Please let us know if you agree.

Jen

**Jennifer Recine**
Partner

**STROOCK**

180 Maiden Lane, New York, NY 10038
D: 212.806.1301

jrecine@stroock.com | vCard | www.stroock.com