**Hearing Date:** Wednesday, January 8, 2020 at 10:00 a.m. (prevailing Eastern Time)
**Objection Deadline:** Thursday, January 2, 2020

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006
Daniel A. Fliman
Jennifer S. Recine
Patrick N. Petrocelli
Tiffany L. Ho
Isaac S. Sasson

*Counsel for Brooklyn Lender LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 |
| 53 STANHOPE LLC, *et al.*[1] | Case No. 19-23013 (RDD) |
| Debtors. | Jointly Administered |

**BROOKLYN LENDER LLC'S MOTION PURSUANT TO**
**11 U.S.C. § 1104(a) FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC Holding 1 LLC (0290); D & W Real Estate Spring LLC (4591); Meserole and Lorimer LLC (8197); 106 Kingston LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155) (collectively, the "Debtors").

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...............................................................................................................4

    A.    The Bankruptcy Cases .........................................................................4

    B.    The Debtors' Lack of Full Disclosure ...................................................5

    C.    The Debtors' Mismanagement of the Properties ...................................8

    D.    The Failure to Produce Responsive Documents ...................................10

    E.    Debtors' Failure and Refusal to Address Glaring Misrepresentations
          Made Under Penalty of Perjury .........................................................13

    F.    Allegations of Fraud Against the Debtors .............................................19

    G.    The Debtors' Failure to File Key Case Documents ...............................20

JURISDICTION AND VENUE ...........................................................................................21

ARGUMENT ..................................................................................................................21

    I.    Cause Exists to Appoint a Trustee Pursuant to Section 1104(a)(1).......................22

    II.    Appointment of a Trustee under Section 1104(a)(2) is in the Best Interest
          of the Estate and All Other Parties .....................................................26

CONCLUSION................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ancona*,
　No. 14-10532 (MKV), 2016 WL 7868696 (Bankr. S.D.N.Y. Nov. 30, 2016)........................26

*In re AG Serv. Centers, L.C.*,
　239 B.R. 545 (Bankr. W.D. Mo. 1999) ................................................................................24

*In re Ashley River Consulting, LLC*,
　No. 14-13406 (MG), 2015 WL 1540941 (Bankr. S.D.N.Y. Mar. 31, 2015) ................... *passim*

*In re Celeritas Techs., LLC*,
　446 B.R. 514 (Bankr. D. Kan. 2011) ..............................................................................21, 24

*In re Deena Packaging Industries, Inc.*,
　29 B.R. 705 (Bankr. S.D.N.Y. 1983)....................................................................................24

*In re Euro-Am. Lodging Corp.*,
　365 B.R. 421 (Bankr. S.D.N.Y. 2007)...........................................................................25, 28

*In re Eurospark Indus., Inc.*,
　424 B.R. 621 (Bankr. E.D.N.Y. 2010)..................................................................................25

*In re Futterman*,
　584 B.R. 609 (Bankr. S.D.N.Y. 2018)..................................................................................22

*In re Marvel Entm't Grp.*,
　140 F.3d 463 (3d Cir. 1998).................................................................................................25

*In re Plaza de Retiro, Inc.*,
　417 B.R. 632 (Bankr. D. N. M. 2009) .................................................................................23

*In re Ridgemour Meyer Properties, LLC*,
　413 B.R. 101 (Bankr. S.D.N.Y. 2008) .................................................................................27

*In re Sillerman*,
　605 B.R. 631 (Bankr. S.D.N.Y. 2019).....................................................................22, 23, 24

*In re Soundview Elite, Ltd.*,
　503 B.R. 571 (Bankr. S.D.N.Y. 2014)..................................................................................26

*In re V. Savino Oil & Heating Co., Inc.*,
　99 B.R. 518 (Bankr. E.D.N.Y. 1989)........................................................................21, 24, 26

**Statutes**

11 U.S.C. § 1104 ................................................................................................................. *passim*

28 U.S.C. § 157 ................................................................................................................................ 21

28 U.S.C. § 1334 ............................................................................................................................. 21

28 U.S.C. § 1408 ............................................................................................................................. 21

28 U.S.C. § 1409 ............................................................................................................................. 21

Brooklyn Lender LLC ("Brooklyn Lender"), a creditor in interest in the above-captioned jointly-administered bankruptcy cases[1] (the "Bankruptcy Cases"), by and through the undersigned counsel, hereby submits this motion (the "Motion"), for entry of an order appointing a chapter 11 trustee pursuant to section 1104(a) of Title 11 of the United States Code (the "Bankruptcy Code") and in support thereof, respectfully states as follows:

## PRELIMINARY STATEMENT [2]

1. In the face of fourteen orders directing the appointment of a rent receiver in connection with foreclosure actions pending in the Supreme Court of New York, King's County -- signaling the end of years of gross mismanagement, frivolous litigation, and gamesmanship -- the Debtors filed voluntary petitions for chapter 11 relief before this Court.

2. During the seven months that the Bankruptcy Cases have been pending, the Debtors have perpetuated their pre-petition dilatory and prejudicial behavior by chronically failing to abide by the duties and obligations imposed on all debtors-in-possession, as well as orders and directives of this Court.

3. Indeed, during the course of these proceedings, all of the Debtors have breached their statutory obligations, have violated this Court's orders and rulings, and have acted with clear disregard for their fiduciary duties to their estates and creditors. In sum, the Debtors have acted as if they are not debtors-in-possession, while at the same time enjoying the benefits and protections of the automatic stay.

---

[1]  As set forth in Brooklyn Lender's prior filings before this Court, Brooklyn Lender is an assignee of certain loans and mortgages provided by Signature Bank to the Debtors between 2012 and 2016 (collectively, the "Mortgages").

[2]  Capitalized terms used in this Preliminary Statement shall have the meanings ascribed to them herein. References to "Ex. _" or "Exhibit _" herein refer to the exhibits annexed to the *Declaration of Daniel A. Fliman in Support of Brooklyn Lender LLC's Motion Pursuant to 11 U.S.C. § 1104(a) for Appointment of a Chapter 11 Trustee* (the "Fliman Decl."), filed contemporaneously herewith.

4.      The Debtors' trustworthiness is called into question by numerous indicia of fraud that have come to overshadow every aspect of these cases, which include, but are not limited to: (i) the material differences in ownership evidenced by and between the Debtors' tax returns, operating agreements and Schedules, seemingly obfuscating who are the Debtors' actual equity interest holders, (ii) the myriad of lawsuits, brought by hundreds of litigants, lodging serious allegations of fraud against the Debtors' principal and equity interest holders in connection with real estate investments, including involving properties of the Debtors and (iii) the fact that the Bankruptcy Cases are now being managed by someone who pleaded guilty to bank fraud (no less for producing false tax returns and false bank statements) and who, as a result, was prohibited for years from acting in any fiduciary capacity by the United States District Court for the Southern District of New York.

5.      The Debtors' inadequate and inconsistent record keeping, failure to disclose relevant materials, and discovery deficiencies have made it more difficult to evaluate the Debtors' corporate and ownership structure and insider transactions.  What little information the Debtors have provided is incomplete and often directly contradicted by transactional documents, sworn testimony and tax returns.

6.      The Debtors also have demonstrated an inability to properly manage their estates and properties.  Each of the Debtors' properties suffer from numerous uncured building code violations, past-due property tax payments and, despite repeated requests, the Debtors have failed to produce adequate evidence of insurance.  In addition, it appears that two new property tax liens were assessed against properties owned by 119 Rogers LLC and 127 Rogers LLC during the month of September 2019.  Accordingly, Brooklyn Lender's collateral is at risk in the Debtors' hands.

7.      The Debtors cannot credibly dispute their repeated failures to abide by Court orders, the Bankruptcy Code, the Bankruptcy Rules, the United States Trustee Guidelines, nor their shortcomings in protecting their assets.  As discussed in detail below, those failings are well documented, and in many instances, acknowledged on the record by Debtors' counsel.  Indeed, the Debtors' blunders have already caused them to be admonished by the Office of the United States Trustee (the "US Trustee") and this Court.

8.      In response, it is expected that the Debtors -- unable to dispute the factual recitations in this Motion -- will argue that their deficiencies have been innocent, existing management is necessary for prosecution of the Proposed Plan and that they have not harmed Brooklyn Lender.  That position fails on numerous fronts.

9.      First, whether the Debtors are harming Brooklyn Lender or others is irrelevant. No legal principle should excuse a debtor-in-possession's duty to comply with court orders and statutory obligations.  The Debtors' obligations here are absolute and are the price they must pay to enjoy the protections afforded by the Bankruptcy Code.

10.      Second, even if relevant, the Debtors' failures have most certainly harmed Brooklyn Lender and all stakeholders.  The Debtors have continuously failed to undertake necessary efforts to protect their assets and, each day that passes, Brooklyn Lender's collateral is put at further risk.  Moreover, the Debtors' misconduct has exponentially delayed progress in the Bankruptcy Cases and has required the Court and Brooklyn Lender to expend time and resources addressing issues that could have been easily avoided.  The fact that the Debtors are making payments at the non-default rate to Brooklyn Lender is hardly remarkable given that many of the Bankruptcy Cases are single asset real estate cases and such payments are required for the Debtors to maintain the automatic stay.

11.     Third, there is reason to believe that the Debtors' disclosure failures are not a mere oversight, but rather an orchestrated strategy.  There is a clear pattern of the Debtors failing to make proper disclosures regarding ownership or transactions with insiders.  Brooklyn Lender surmises that the Debtors are deploying this strategy because any information they provide is destined to contradict some of the highly inconsistent promises and representations that the Debtors and Chaskiel Strulovitch ("Strulovitch") made to lenders, investors, taxing authorities and others.  In other words, the Debtors appear to be purposefully dodging disclosures in hopes of avoiding the consequences of their and Strulovitch's material misrepresentations.

12.     Finally, the Proposed Plan is a "reorganization" in name only and the Debtors' existing management is unnecessary for its execution.  As set forth in the Disclosure Statement, through the Proposed Plan, the Debtors intend to liquidate their property portfolio by selling each of the properties to "New Owners" and to use the proceeds therefrom to make plan distributions. The Debtors are in no better position to implement a chapter 11 liquidation plan than a chapter 11 trustee.

13.     For these reasons and those set forth in greater detail below, it is evident that the Debtors are not proper stewards of their estates.  They have abandoned their duties as debtors-in-possession and accordingly should be removed from that role.  Only the appointment of a trustee will ensure that the Bankruptcy Cases are managed as the law requires -- in the best interests of the Debtors' estates.

## BACKGROUND

### A.    The Bankruptcy Cases

14.     On May 20, 2019 and May 21, 2019 (collectively, the "Petition Date"), the Debtors commenced the Bankruptcy Cases by filing voluntary petitions (collectively, the "Petitions") for relief under chapter 11 of the Bankruptcy Code.  The Court consolidated the

Bankruptcy Cases and they are being jointly administered for procedural purposes. (*See Order Directing Joint Administration* [Case No. 19-23013-rdd at Docket No. 6].)

15.    Each of the Petitions was filed in the face of foreclosure actions regarding the Mortgages.

16.    The Debtors continue to manage and operate their businesses as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.  As of the date hereof, no official committee of unsecured creditors has been appointed in the Bankruptcy Cases.

**B.    The Debtors' Lack of Full Disclosure**

17.    Since the commencement of the Bankruptcy Cases, the Debtors have repeatedly and consistently failed to produce required information critical for this Court and the US Trustee to oversee properly and to evaluate if the Debtors were properly acting as debtors-in-possession.

18.    From day one, the Debtors' Petitions and related filings did not include the accompanying required schedules, lists of equity security holders or Local Rule 1007-2 affidavits. (*See* May 23, 2019 Docket Entry ("Deficiencies Set: Section 521(i) Incomplete Filing Date: 7/8/2019.  Declaration of Schedules due 6/3/2019.  Corporate Resolution due 6/3/2019. Local Rule 1007-2 Affidavit due by: 6/3/2019.  Incomplete Filings due by 6/3/2019").)

19.    Once filed, the Debtors' Statements of Financial Affairs ("SOFAs") and Statements of Assets and Liabilities ("SOALs" and with the SOFAs, the "Schedules"), included deficiencies and inaccuracies, many of which remain unaddressed.  For instance, Debtor 119 Rogers LLC failed to file a list of equity security holders in its entirety, Debtor C & YSW, LLC listed Strulovitch as a "510 Percent" owner and Debtor 167 Hart LLC listed Chaskeil Jacobowitz as its sole owner in its list of equity security holders, when it apparently intended to list Strulovitch.  The Debtors acknowledged these errors and deficiencies at the section 341 meeting held on July 23, 2019 (the "July 341 Meeting") and were instructed by the US Trustee to file

amended lists no later than the continued section 341 meeting held on September 10, 2019 (the "September 341 Meeting").  (*See* Ex. A (July 341 Meeting Tr.) at 9:23-10:25; 20:20-21:6.)  However, amended lists for Debtor 167 Hart LLC and Debtor 119 Rogers LLC were not filed until October 11, 2019 (over a month after the deadline set by the US Trustee) and Debtor C & YSW, LLC still has not filed an amended list of equity security holders.  (*See* Case Nos. 19-23041 [Docket No. 12], 19-23015 [Docket No. 12].)

20.     It is noteworthy that the July 341 Meeting was adjourned because, notwithstanding numerous requests by the US Trustee, the Debtors failed to timely provide required information, including the SOFAs, tax returns, proof of insurance, and debtor-in-possession checks.  (*See* Ex. A (July 341 Meeting Tr.) at 20:20-21:6.)

21.     The Debtors finally filed delinquent SOFAs on August 14, 2019.  (*See, e.g.,* *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* [Docket No. 37].)[3]  While at the July 341 Meeting, the Debtors testified, via David Goldwasser ("Goldwasser"), that the reason they had delayed filing their SOFAs was because they needed time to reconcile transfers made to certain insiders, including Strulovitch.  (*See* Ex. A (July 341 Meeting Tr.) at 16:24-17:17; 32:6-18.)  However, the filed SOFAs listed no such transfers.[4]

22.     The omission was alarming given Strulovitch's unquestionable status as an insider and the representations made at the July 341 Meeting, which confirmed that such transfers took place.  Brooklyn Lender raised its concerns at the September 341 Meeting.  When pressed on the issue, the Debtors, via Goldwasser, testified that because the transfers to Strulovitch were all "zeroed out" they did not need to be disclosed.  (*See* Ex. B (Sept. 341 Meeting Hearing Tr.) at

---

[3]  SOFAs were filed in each of the Bankruptcy Cases at or around the same time.

[4]  The Debtors filed amended SOFAs for Debtors 92 South 4th St LLC and 106 Kingston LLC as the original SOFAs for these Debtors were allegedly filed by mistake.  (*See* Ex. A (July 341 Meeting Tr.) at 11:1-11:15.)

12:16-13:1 ("So, I said there might be some disbursements made to Mr. Strulovitch which would not be advances or payments or and/or, and/or, but they were reimbursements. It's very clear to me, able to explain, that you might see -- but they all zeroed out, so we didn't have to disclose them").) Goldwasser elaborated that the Debtors' "accounting department reviewed that they were loans repaid, they were not disbursements," which apparently is the reason the Debtors concluded that they did not need to be disclosed. (*See id.* at 13:6-21.)[5]

23.     Moreover, the SOFAs for Debtors 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC and APC Holding 1 LLC each list certain "Partners" of the Debtors as insiders who received payments within the year preceding the Petition Date. (*See* Case Nos. 19-23024 [Docket No. 11], 19-23025 [Docket No. 11], and 19-23026 [Docket No. 11].) To date, the Debtors have failed to produce any agreements evidencing such partnership interests. (*See infra* ¶ 39.) The SOFAs are also incomplete in that they fail to fully disclose the Debtors' "officers, directors, managing members, general partners, members in control, [or] controlling shareholders," as evidenced by the limited documents that the Debtors have produced to date, including the Schedule K-1s issued by the Debtors. (*See infra* ¶ 37.)

24.     Likewise, the Debtors have failed to timely file their required monthly operating reports. At the July 341 Meeting, the US Trustee reminded the Debtors that they are required to file monthly operating reports during the Bankruptcy Cases, otherwise, the US Trustee's Office may be prompted to file a motion to convert or dismiss the Bankruptcy Cases. (*See* Ex. A (July 341 Hearing Tr.) at 19:19-20:19.) Yet, the Debtors have been dilatory in filing their monthly

---

[5] Bankruptcy Rule 1007(b)(1) obligates the Debtors to file "a statement of financial affairs" that is "prepared as prescribed by the appropriate Official Form." Fed. R. Bankr. Proc. 1007(b)(1). Official Form B-207 at Part 2, Item 4, expressly requires disclosure of all "payments or transfers, *including expense reimbursements*, made within 1 year before filing [the] case on debts owed to an insider . . . ." (*See* Ex. C (Official Form B-207) at p. 2 (emphasis added).)

operating reports since the Petition Date.  (*See Operating Statements* [Docket Nos. 42-44, 62-64] (majority being filed one to two months late).)  Thus, notwithstanding that the Debtors represented to the US Trustee that once the Debtors are able to file their first monthly operating report -- which, as a result of the Debtors' corporate structure will be "unwieldy" -- the monthly operating reports will be "in a process" and will be filed timely, the Debtors continue to file their monthly operating reports tardily.  (*See* Ex. A (July 341 Hearing Tr.) at 20:3-13.)

### C.    The Debtors' Mismanagement of the Properties

25.    Throughout the periods covered by the Mortgages (pre- and post-petition), the Debtors' properties have been mismanaged, placing Brooklyn Lender's collateral in jeopardy. Among other things, the Debtors have repeatedly failed to maintain sufficient insurance, have been late in paying taxes and other fees and expenses to various governmental agencies,[6] and have incurred numerous uncured violations from, among others, the Environmental Control Board of the City of New York ("ECB"), the New York City Department of Housing Preservation, and Development ("HPD"), and the New York City Department of Buildings ("DOB").

26.    Brooklyn Lender understands that at all times during the twelve-month period concluding on October 18, 2019, the Debtors have had more than 300 outstanding building code violations, with at least 350 violations outstanding as of October 18, 2019, with total outstanding potential fines exceeding $475,000.  (*See* Ex. E (Sitecompli Property Report); *see also* Ex. F (NYC Office of Administrative Trials and Hearings proofs of claim).)  Indeed, just a few months ago, the Debtors' management company contacted Strulovitch and Joshua Wagshal imploring

---

[6]  As set forth in the disclosure statement, the Debtors owe at least $209,566 in "New York City real estate tax and other Liens."  (*See Disclosure Statement* [Docket No. 30] (the "Disclosure Statement"), at ¶ 22.)  The Debtors were also late in paying their **post-petition** real estate taxes.  (*See* Ex. D (Summary of Outstanding Real Estate Taxes).)

them to wire funds into a "Natzliach TD account" as they had not "paid Con Edison, National Grid, Water, Taxes and basic cleaning and repairs for months; and the open expenses are only increasing totaling over **$100,000!**" (*See* Ex. G (Sept. 17 e-mail) (emphasis in original).)

27.    Moreover, despite agreeing in connection with entry of the interim cash collateral order to promptly provide Brooklyn Lender with "proofs of insurance for all Properties, on a monthly basis, listing the Mortgagee as an additional insured," the Debtors habitually have failed to provide compliant proofs of insurance. (*See Interim Order Granting Debtor's Application to Use of Cash Collateral* [Docket No. 25] (the "Interim Cash Collateral Order"), at p. 2.)

28.    On October 25, 2019, Brooklyn Lender provided the Debtors with notice that the proofs of insurance the Debtors provided are "deficient" "and do not comply with the terms of the Mortgages" and demanded that the Debtors promptly cure those deficiencies. (*See* Ex. H (Oct. 25, 2019 e-mail).)  Brooklyn Lender further noted that, of the proofs of insurance the Debtors did provide, the insurance for at least seven of the Debtors' properties had already expired, with an additional seven certificates set to expire by no later than November 15, 2019. (*See id.*)  The Debtors failed to respond to Brooklyn Lender's reasonable request for nearly a month.  Indeed, on November 1, 2019, the Debtors responded to Brooklyn Lender's October 25, 2019 e-mail and completely ignored Brooklyn Lender's request to promptly cure deficiencies with the Debtors' insurance policies. (*See* Ex. I (Nov. 1, 2019 e-mail).)  Brooklyn Lender thus followed up with the Debtors again on November 19, 2019, and requested updated proofs of insurance. (*See* Ex. J (Nov. 19, 2019 e-mail).)  On November 20, 2019, the Debtors provided Brooklyn Lender with updated insurance certificates, which still appear to be deficient in many material respects. (*See* Ex. K (Nov. 20, 2019 e-mail).)  At least ten properties owned by the Debtors lack general liability coverage (both on a per occurrence basis (for nine of the

properties) and aggregate basis (for all ten)) and thirteen properties lack sufficient umbrella coverage. Moreover, not one of the properties appears to have flood insurance as required by the Mortgages. Thus, to the best of Brooklyn Lender's knowledge, many of the Debtors' properties do not maintain sufficient insurance, placing Brooklyn Lender's collateral at serious risk of loss.

**D.    The Failure to Produce Responsive Documents**

29.    On June 6, 2019, Brooklyn Lender filed its *Ex Parte Application of Brooklyn Lender LLC for Entry of an Order pursuant to Federal Rule of Bankruptcy Procedure 2004 and 9016 Authorizing the Examination of the Debtors, Chaskiel Strulovitch, David Goldwasser, GC Realty Advisors, Nachman Strulovitch, Chaskeil Jacobowitz and Joshua Wagshal* [Docket No. 10] (the "2004 Application"). In the 2004 Application, Brooklyn Lender sought discovery related to (a) the current ownership and management of the Debtors; (b) any fraud, deceit, or dishonesty in connection with management of the Debtors and (c) the facts underpinning Brooklyn Lender's claims against the Debtors.

30.    At a hearing before this Court on June 19, 2019, the Court granted in part the 2004 Application, recognizing that determining the true owners of the Debtors is a key issue in these Bankruptcy Cases. As described in the various letters submitted to the Court by Brooklyn Lender, and set forth below, the Debtors and their purported equity holders have been uncooperative in responding to the Court-ordered discovery. Given the Court's order requiring the Debtors to produce these documents, and the allegations by Brooklyn Lender and others regarding the Debtors' ownership structure, and the litigations related thereto, the Debtors' and their purported equity holders' lack of disclosure regarding these issues is alarming. (*See, e.g.*, *Brooklyn Lender LLC's Omnibus Objection to Approval of the Debtors' Disclosure Statement and Application for Order Extending Exclusivity Periods* [Docket No. 39], at pp. 5-8 (describing the pre-petition federal and state court actions filed against the Debtors).)

31.    <u>First</u>, the Debtors have consistently refused to comply with Court-ordered discovery obligations.  They have failed "to complete their production in connection with Brooklyn Lender's existing document requests pursuant to the 2004 Application Order" as required by this Court's October 16, 2019 *Scheduling Order with Respect to Discovery and Briefing Schedule in Connection with Brooklyn Lender's Rule 2004 Application and Confirmation of the Debtors' Proposed Plan of Reorganization* [Docket No. 47] (the "<u>Scheduling Order</u>").

32.    The Debtors' productions throughout August, September, October, November, and thus far in December have been deficient.  Initially, the Debtors' tardily production, with few exceptions, simply mirrored the documents they were obligated to provide to the US Trustee (consisting only of operating agreements, an incomplete set of management agreements, forty-six heavily redacted e-mails, and one agreement between the Debtors and Goldwasser regarding his appointment).  Beyond that, the Debtors only produced an incomplete and improperly redacted set of tax returns.

33.    Remarkably, until November 27, 2019, the Debtors had failed and refused to produce any communications whatsoever.  (*See generally October 31, 2019 Letter Brief* [Docket No. 54].)[7]  That happened following numerous misrepresentations by Debtors' counsel regarding collection and review of the Debtors' communications.  As the Debtors' November 1, 2019 response to Brooklyn Lender's letter makes clear, despite having received Brooklyn Lender's document requests in July and representing to the Court on September 9, 2019 that they were in the process of collecting and reviewing the Debtors' e-mails, Debtors' counsel had not yet

---

[7]  Notably, this was the Debtors' second violation of the Scheduling Order, as the Debtors had, three days prior, failed to timely file their objection to Brooklyn Lender's proof of claim.  (*See generally October 28, 2019 Letter Brief* [Docket No. 51].)

reviewed any of the Debtors' "electronically stored information." (*See November 1, 2019 Letter Brief* [Docket No. 55] at p. 1 ("we anticipate being able to begin review in the next week and continue production, if any, immediately thereafter."); Ex. S (Sept. 9 Hearing Tr.) at 21:11-19.) On November 7, 2019, the Court held a telephonic conference (the "November 7 Conference") to address, among other things, the Debtors' failure to comply with the mutually agreed October 28, 2019 deadline for the Debtors to complete their production in connection with the 2004 Application. At the conference, the Debtors' (purported) special litigation counsel, Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP ("Abrams Fensterman"), represented that they had applied search terms to Strulovitch's e-mail account, were in the process of reviewing Strulovitch's e-mails, and would be able to complete their production by November 21, 2019.

34.    Shockingly, on November 21, 2019, the Debtors, despite their express assurances directly to the Court at the November 7 Conference, yet again, failed to make a timely production, forcing Brooklyn Lender to seek further relief from this Court. (*See generally November 22, 2019 Letter Brief* [Docket No. 65].) Indeed, in an e-mail, Debtors' counsel revealed that, contrary to their representations to the Court, the Debtors had not yet even run searches on Strulovitch's e-mails. (*See id.*) In a letter dated November 25, 2019, the Debtors, in characteristic fashion, defended their latest of many discovery violations with excuses and by claiming that they had not really agreed to the November 21, 2019 production deadline. (*See generally November 25, 2019 Letter Brief* [Docket No. 66].) On December 18, 2019, the Court entered an amended scheduling order setting December 20, 2019 as the deadline for the Debtors to complete their production. (*See Amended Scheduling Order with Respect to Discovery and*

*Briefing Schedule in Connection with Brooklyn Lender's Rule 2004 Application and Confirmation of the Debtors' Proposed Plan of Reorganization* [Docket No. 70].)

35.     Second, both Nachman Strulovitch and Joshua Wagshal, who are described in the Debtors' Schedules as "equity security holders" of Debtors D & W Real Estate Spring LLC, Meserole and Lorimer LLC, and 167 Hart LLC, have completely failed to respond to Brooklyn Lender's subpoenas.  (*See generally October 25, 2019 Letter Brief* [Docket No. 49].)  Despite repeated requests for mechanisms to contact these individuals, through counsel or otherwise, Debtors' counsel (who purport to know the travel schedules of Nachman Strulovitch and Joshua Wagshal) refused to provide their telephone numbers or names of their counsel until a conference on November 7, 2019, when they claimed to have learned for the first time the name of Nachman Strulovitch's lawyer.  However, when Brooklyn Lender reached out to Nachman Strulovitch's purported lawyer, they were informed that he was "declin[ing] the potential representation and [would] notify the applicable parties as such."  (*See* Ex. L (Nov. 18, 2019 e-mail).)

**E.     Debtors' Failure and Refusal to Address Glaring Misrepresentations Made Under Penalty of Perjury**

36.     The limited universe of documents produced by the Debtors as of the date hereof, namely, the Debtors' tax returns (many of which have not been executed, and are marked *DRAFT*) indicate that the Debtors' ownership has not changed between 2012 (the time that subject mortgage loans began to be issued) and 2017 (the year of the latest returns provided by the Debtors).

37.     As set forth in the chart below, the Schedule K-1s annexed to each of the Debtors' tax returns -- which include the names of any parties who hold a share of the Debtors' profit, loss, or capital and are substantially consistent year to year -- contradict the ownership

information listed by the Debtors in each of their Schedules, all of which were made and filed under penalty of perjury.

| Debtor | 2013-2017 Tax Returns[8] | SOALs | SOFAs |
|---|---|---|---|
| **1125-1133 Greene Ave LLC** | Moses Guttman - 50% Chaskiel Strulovitch - 50% | Chaskiel Strulovitch - 100% Membership | Moses Guttman - Partner |
| **D & W Real Estate Spring LLC** | Joshua Wagshal - 100% | Chaskiel Strulovitch - 99% Membership Joshua Wagshal - 1% Membership | Joshua Wagshal is one of Debtors' "officers, directors, managing members, general partners, members in control, controlling shareholders" |
| **Meserole and Lorimer LLC** | Joshua Wagshal - 100% | Chaskiel Strulovitch - 99% Membership Joshua Wagshal - 1% Membership | Joshua Wagshal is one of Debtors' "officers, directors, managing members, general partners, members in control, controlling shareholders" |

---

[8]  The ownership information included in each of the 2013 through 2017 tax returns that were produced to date are substantially similar, other than APC Holdings LLC's return, which lists Imre Oberlander and Chaskiel Strulovitch as each owning a 50% share of APC Holdings LLC in 2013, 2014, and 2015 (with Imre Oberlander's share increasing to 70% in 2016) and 119 Rogers LLC's and 127 Rogers LLC's tax returns, which each list Chaskiel Strulovitch as owning a 99% share and Moses Strulovitch as owning a 1% share of the respective Debtors in 2013.  Brooklyn Lender has requested and is awaiting production of additional tax returns, including, but not limited to, missing 2013-2017 tax returns, Debtor APC Holdings LLC's 2012 tax return and the full set of 2018 tax returns. Due to the voluminous nature of the tax returns, they are not attached to the Fliman Decl. and are available upon request of the Court or any party in interest.

14

| Debtor | 2013-2017 Tax Returns[8] | SOALs | SOFAs |
|---|---|---|---|
| C & YSW, LLC | Chaskiel Strulovitch - 50% Joshua Wagshal - 50% | Chaskiel Strulovitch - 510% Membership | N/A |
| Natzliach LLC | Chaskiel Strulovitch 95% Joshua Wagshal - 5% | Chaskiel Strulovitch - 100% Membership | N/A |
| 92 South 4th Street LLC | Moses Guttman - 50% CSRE LLC - 50% | Chaskiel Strulovitch - 100% Membership | N/A |
| 834 Metropolitan Avenue LLC | Moses Guttman - 50% Chaskiel Strulovitch - 50% | Chaskiel Strulovitch - 100% Membership | Moses Guttman - Partner |
| 55 Stanhope LLC | 53 Stanhope Operations LLC - 50% CSRE LLC - 50% | Chaskiel Strulovitch - 100% Membership | N/A |
| 167 Hart LLC | CSRE LLC - 50% Nachman Strulovitch - 50% | Chaskiel Strulovitch - 50% Membership Nachman Strulovitch - 50% Membership | N/A |
| 106 Kingston LLC | CSRE LLC - 55% Kingston Operations LLC - 45% | Chaskiel Strulovitch - 100% Membership | N/A |
| Eighteen Homes LLC | Herman Greenfeld - 50% Chaskiel Strulovitch - 50% | Chaskiel Strulovitch - 100% Membership | N/A |
| 618 Lafayette LLC | CSRE LLC - 55% 618 Lafayette Operations LLC - 45% | Chaskiel Strulovitch - 100% Membership | N/A |

15

| Debtor | 2013-2017 Tax Returns[8] | SOALs | SOFAs |
|---|---|---|---|
| 1213 Jefferson LLC | CSRE LLC - 55% Jefferson Operations LLC - 45% | Chaskiel Strulovitch - 100% Membership | N/A |
| 119 Rogers LLC | Chaskiel Strulovitch - 85% Moses Strulovitch - 15% | Chaskiel Strulovitch - 100% Membership | N/A |
| 127 Rogers LLC | Chaskiel Strulovitch - 85% Moses Strulovitch - 15% | Chaskiel Strulovitch - 100% Membership | N/A |
| 325 Franklin LLC | Cheskel CSRE LLC - 55% 325 Franklin Operations LLC - 45% | Chaskiel Strulovitch - 100% Membership | N/A |
| 53 Stanhope LLC | 53 Stanhope Operations LLC - 50% CSRE LLC - 50% | Chaskiel Strulovitch - 100% Membership | N/A |
| APC Holding 1 LLC | Imre Oberlander - 99% Chava Rosenberg - 1% | Chaskiel Strulovitch - 100% Membership | I & C O Associates - Partner Chava Oberlander - Partner |

38.     It seems highly unlikely that these discrepancies arise from ownership interests in the respective Debtors being conveyed between the submission of the 2017 tax return and the Petition Date.   Indeed, each affected Debtor was required to disclose any such transfers to Brooklyn Lender under the Mortgages.  However, no such disclosures were made by any Debtor,

and the aforementioned inconsistencies seem to evidence a scheme perpetrated by the Debtors to hide their true equity owners.

39.     Beyond the foregoing unexplained inconsistencies, the Debtors have identified certain other persons as having "profit sharing interests."  At the July 341 Meeting, Goldwasser was asked about the following scheduled claims: Joshua Wagshal ($2,500,000), Amrum Oberlander ($500,000), Allen Stein ($600,000), and Moses Guttman ($500,000).  (*See* Ex. A (July 341 Meeting Tr.) at 28:02-30:23.)  As to each, Goldwasser testified that he believed the amounts related to "profit sharing interests."  (*See id.*)  When pressed as to the nature of such interests, Goldwasser testified (at both the July and September 341 Meetings) that agreements evidencing the interests exist, but that he had not yet reviewed the agreements.  (*See id.* at 29:19-30:6; Ex. B (Sept. 341 Meeting Tr.) at 11:22-25.)  However, despite the acknowledgement of the existence of the profit sharing agreements, when asked as to why no such agreements were produced, the Debtors backtracked on Goldwasser's sworn testimony and now maintain that no written agreements exist evidencing the profit sharing interests.  (*See* Ex. M (Dec. 4 e-mail).)

40.     It is also noteworthy that when Goldwasser was confronted with the inconsistencies between the Schedules and the tax returns at the September 341 Meeting, he did not answer.  Indeed, counsel instructed Goldwasser not to answer any questions asking the Debtors to reconcile the tax returns with the conflicting Schedules.   (*See* Ex. B (Sept. 341 Meeting Tr.) at 8:5-12; 10:15-11-3.)

41.     The Debtors' trustworthiness is called into further doubt by the appointment of Goldwasser and his firm, GC Realty Advisors, as manager of the Debtors.  (*See* Ex. N (GC Realty Engagement Letter).)  In June 2003, Goldwasser pled guilty to defrauding two banks and admitted that "in connection with numerous applications for loans for others and for a company

in which he had a beneficial interest, he submitted false financial documents to the banks, including false tax returns and false bank and brokerage statements." (*See* Ex. O (Press Release) at p. 1.) On October 7, 2003, United States District Judge Charles L. Brieant sentenced Goldwasser to 27 months imprisonment, 36 months of supervised release, ordered him to pay $3,318,680.80 in restitution and, importantly, ordered that, during the term of his supervised release, Goldwasser "***is not to be employed in any position requiring fiduciary responsibilities***."[9]

42.      In light of Goldwasser's criminal record, it is especially troubling that the Debtors have entrusted him to run the Bankruptcy Cases and, among other things, to make sure "that the Trustee reports are presented properly," that no "false information" is filed and to "keep the record straight." (*See* Ex. B (Sept. 341 Hearing Tr.) at 16:18-17:4.) Indeed, the particular nature of Goldwasser's crimes (i.e., fraud through "false tax returns" and "false bank . . . statements") necessarily calls for an independent fiduciary to administer the Bankruptcy Cases.

---

[9]   *See USA vs. Goldwasser*, 03-cr-00785-CLB at [Docket No. 14] (Oct. 7, 2003) ("JUDGMENT #03,0339 WP. Deft David Goldwasser (1) pled guilty to count 1. Imprisonment: 27 months on count 1; Supervised Release: 36 months on count 1. Special Assessment: $100.00 due immediately. The Court recommends that the Deft be incarcerated at Otisville, NY due to religious considerations. Deft shall surrender for service of sentence before 2:00pm on 12/1/03. The drug testing condition is suspended based on the Court's determination that the Deft poses a low risk of future substance abuse. Deft shall not possess a firearm. Special Conditions of Supervision: The Deft shall provide the probation officer with access to any requested financial information. The Deft shall not incur new credit charges or open additional lines of credit without the approval of the probation officer. The Deft is not to be employed in any position requiring fiduciary responsibilities. In the event the Deft is incarcerated and engaged in a BOP non-UNICOR work program, the Deft shall pay $25.00 per quarter toward the criminal financial penalties. However, if the Deft participates in the BOP's UNICOR program as a grade 1 through 4, the Deft shall pay 50% of his monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations. Any payment made that is not payment in full shall be divided proportionately among the persons named. Deft is to make restitution in the amount of $3,318,680.80 payable to the Clerk of Court, US District Court, for disbursement as follows: First Union National Bank (Wachovia Bank), 190 River Road, Summit, NJ 07901, Attn: Peter Mottley, Vice Pres., Mail Code #: NJ3181, (908) 598-3227 - $2,775,526.00 and Key Bank, 100 Gannett Dr., South Portland, ME 04106, Attn: Ann Poss, Senior Vice Pres, (207) 842-1019 - $543,154.80.; Judgment and Commitment issued to U.S. Marshal (Signed by Judge Charles L. Brieant) (ac) (Entered: 10/08/2003)").

F.    **Allegations of Fraud Against the Debtors**

43.    On August 9, 2019, certain defrauded investors filed claims against ten of the

Debtors, alleging that Strulovitch, Yechiel Oberlander ("Oberlander") and the Debtors "took part

in a massive scheme to defraud over 180 people, along with related corporate entities, out of

more than $20,000,000 through the promotion of so-called 'investments' in New York real

estate" (the "Investors' Claim").    (*See* Ex. P (Proofs of Claim Nos. 4, 5, 7) at Ex. B ¶ 1.)[10]    The

Investors' Claim alleges that Strulovitch and Oberlander received and diverted $20,000,000 from

certain investors along with more than $35,000,000 of bank loan proceeds.    (*See id.* at ¶ 14.)    In

the "Statement of Claim" annexed to the Investors' Claim, the investors describe how they were

victims of a scheme whereby Strulovitch and Oberlander provided a series of fraudulent

prospectuses containing specific representations of facts, which they utilized to secretly divert,

for their own benefit and personal enrichment, millions of dollars provided by the investors.

(*See generally id.* at ¶¶ 1-19.)

44.    On September 26, 2019, additional allegations of fraud involving the Debtors'

principal, Strulovitch, and Oberlander surfaced, with the filing of two new chapter 11 cases in

United States Bankruptcy Court of the Eastern District of New York, styled as *In re 657-665 5th*

*Avenue LLC*, Case No. 1:19-45884-cec (Bankr. E.D.N.Y) and *In re Willoughby Estates LLC*,

Case No. 1:19-45886-cec (Bankr. E.D.N.Y) (collectively, the "Brooklyn Cases").    In the

Brooklyn Cases, Strulovitch, Oberlander and CSRE (an entity owned and/or controlled by

Strulovitch and listed prominently in the Debtors' tax returns) are accused of improperly

dissipating value to the detriment of approximately 50 investors, the vast majority of which are

foreign nationals.    (*See generally* Exs. Q and R (Local Rule 1007-4 Declarations).)    In particular,

---

[10]    Substantially similar proofs of claim were filed against each of the ten Debtors.

in the Brooklyn Cases, Strulovitch is accused of diverting investor funds for unrelated projects for his own pecuniary gain. (*See id.*)

## G. The Debtors' Failure to File Key Case Documents

45. In addition to the foregoing, the Debtors have failed to file crucial documents necessary to move these Bankruptcy Cases towards confirmation.

46. For instance, on June 20, 2019, the Debtors informed Brooklyn Lender that given the Court's ruling on the 2004 Application, they were retaining special litigation counsel -- Abrams Fensterman -- to assist the Debtors in responding to Brooklyn Lender's discovery requests. To date, the Debtors have not filed a retention application for Abrams Fensterman, despite representing at the September 9, 2019 hearing to the Court that the retention application would be "filed right away." (*See* Ex. S (Sept. 9 Hearing Tr.) at 20:3-5.)[11]

47. Similarly, although the Debtors' authority to use cash collateral expired in August of this year, the Debtors have yet to file their agreed-upon final cash collateral order. (*See* Interim Cash Collateral Order at p. 4.) This is despite representations made at the September 9, 2019 hearing that the Debtors were planning on filing a final cash collateral order shortly after the hearing. (*See* Ex. S (Sept. 9 Hearing Tr.) at 4:22-5:16.) That the Debtors would allow the Bankruptcy Cases to continue with expired authority to use cash collateral is both alarming and telling of their mismanagement of these cases. Most recently, the Debtors have insisted that the final cash collateral order include a stipulation that the Debtors have maintained sufficient insurance coverage. As set forth above, Brooklyn Lender has concerns with the insurance coverage and thus cannot agree to that stipulation. (*See supra* ¶ 28.)

---

[11] We note that the Debtors' SOALs list Abrams Fensterman as a creditor owed $150,400. (*See, e.g.*, *Schedule E/F: Creditors Who Have Unsecured Claims* [Docket No. 35] at 3.1.)

48.    The Debtors also failed to file a revised disclosure statement and plan of reorganization despite having received the Court's handwritten comments thereto at the September 9, 2019 hearing, and Brooklyn Lender having agreed to the form of order on November 4, 2019.

49.    The Debtors' inaction has evinced a wholesale disregard of their obligation to move these Bankruptcy Cases along towards confirmation.

## JURISDICTION AND VENUE

50.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).

51.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT

52.    "Chapter 11 of the Bankruptcy Code is designed to allow a debtor-in-possession to retain management and control of the debtor's business operations."  *In re Ashley River Consulting, LLC*, No. 14-13406 (MG), 2015 WL 1540941, at *8 (Bankr. S.D.N.Y. Mar. 31, 2015).  However, "[t]he willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee." *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989).  Where, as here, a "debtor-in-possession defaults in its responsibilities, the debtor may be dispossessed of control of its business and a chapter 11 trustee appointed." *Ashley River Consulting,* 2015 WL 1540941, at *8; *see also In re Celeritas Techs., LLC*, 446 B.R. 514, 518 (Bankr. D. Kan. 2011) (appointing chapter 11 trustee "to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served").

21

53.     The determination of whether to appoint a trustee is governed by section 1104(a)

of the Bankruptcy Code, which provides that, at any time after the commencement of a chapter

11 case but before confirmation of a plan, a bankruptcy court "shall" order the appointment of a

trustee:

> (1) for cause, including fraud, dishonesty, incompetence, or gross
> mismanagement of the affairs of the debtor by current
> management, either before or after the commencement of the case,
> or similar cause . . . ; or
>
> (2) if such appointment is in the interests of creditors, any equity
> security holders, and other interests of the estate . . . .

11 U.S.C. § 1104(a).   Appointment of a trustee is mandatory if the movant can satisfy either

subsection.  *Id.*  Here, both subsections are satisfied.

54.     The party moving for appointment of a chapter 11 trustee bears the burden of

showing entitlement to a trustee by clear and convincing evidence, though "bankruptcy courts

have wide discretion in considering the relevant facts and are not required to conduct a full

evidentiary hearing in considering a motion for the appointment of a chapter 11 trustee."  *In re*

*Sillerman*, 605 B.R. 631, 641 (Bankr. S.D.N.Y. 2019).

**I.      Cause Exists to Appoint a Trustee Pursuant to Section 1104(a)(1)**

55.     Pursuant to section 1104(a)(1) of the Bankruptcy Code, the appointment of a

chapter 11 trustee is mandatory upon a demonstration of cause "inclusive of fraud, dishonesty,

incompetence or gross mismanagement of the debtor's affairs by current management."  *Ashley*

*River Consulting,* 2015 WL 1540941, at *9.  The list is not exhaustive.  "Courts have held . . .

that factors that may constitute cause for the appointment of a trustee include inappropriate

relations between corporate parents and subsidiaries, misuse of assets and funds, inadequate

record-keeping and reporting, and various instances of conduct found to establish fraud or

dishonesty, lack of credibility, and lack of creditor confidence."  *In re Futterman*, 584 B.R. 609,

616 (Bankr. S.D.N.Y. 2018).    Under the facts of this case, "cause" exists under section 1104(a)(1) for the appointment of a trustee based on: (a) the Debtors' inadequate and inconsistent record keeping, failure to disclose relevant materials, and discovery deficiencies; (b) the Debtors' failure and refusal to comply with the Bankruptcy Code, Bankruptcy Rules, US Trustee guidelines, and this Court's orders and rulings; (c) the Debtors' gross mismanagement of the estates and Brooklyn Lender's collateral; and (d) the level of acrimony between the Debtors and its creditors.

56.    *First*, bankruptcy courts and commentators routinely recognize that where, as here, "a debtor 'fails to disclose material and relevant information to the Court and creditors, a chapter 11 trustee is required.'"    *Ashley River Consulting*, 2015 WL 1540941, at *9 (quoting *In re Plaza de Retiro, Inc.*, 417 B.R. 632, 641 (Bankr. D. N. M. 2009)).

57.    As described *supra*, throughout these Bankruptcy Cases, the Debtors have repeatedly failed to timely file their required Schedules and disclosures, and failed to produce responsive documents.  (*See supra* ¶¶ 22-24, 29-42.)  Even once filed, the filings were deficient and incomplete, and failed to include critical information, such as admitted transfers to insiders in the year prior to the Petition Date.  (*Id.* at ¶¶ 22-23, 37.)  Moreover, inconsistencies between the Debtors' Schedules and their tax returns signify apparent misrepresentations, for which the Debtors have failed and refused to provide any explanation.  (*Id.* at ¶ 40.)  The Debtors' wholesale disregard of the rules of disclosure in these Bankruptcy Cases should not be countenanced, and for this reason alone, cause exists to appoint a chapter 11 trustee.  *See, e.g.*, *In re Sillerman*, 605 B.R. at 652 (recognizing that cause existed to appoint a chapter 11 trustee where, among other things, the debtors failed to "make required filings and disclosures that would enhance transparency" and observing that the "lack of transparency also casts doubt on

23

the Debtor's trustworthiness"); *In re Celeritas Techs., LLC*, 446 B.R. at 521 (finding cause

existed to appoint a trustee where the Debtor, among other things, "produc[ed] illegible ledgers,

fail[ed] to disclose material information regarding improved finances . . . failed to provide

accurate information about their ownership [and] the recent pre-petition change in ownership");

*In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. at 526 (where debtor fails to disclose "material

and relevant information to the Court and creditors, a Chapter 11 trustee is required"); *In re*

*Deena Packaging Industries, Inc.*, 29 B.R. 705, 707-8 (Bankr. S.D.N.Y. 1983) (finding cause

where debtor failed to disclose items of income or certain liabilities in original and amended

schedules without justification and characterizing such omissions as "as dishonest conduct for

the purposes of section 1104(a)(1)").

58.    Second, courts have recognized that "noncompliance with court orders" or

"failure to comply with the Bankruptcy Code" "clearly falls within the scope circumscribed by

[section 1104(a)(1)]—either as a 'similar cause' or as a permutation of 'incompetence, or gross

mismanagement.'" *In re AG Serv. Centers, L.C.*, 239 B.R. 545, 550-51 (Bankr. W.D. Mo. 1999)

(explaining that "compliance with Court orders and the Code is *a fortiori* in the interests of

creditors and the estate").   Here, the Debtors have repeatedly failed to comply with the US

Trustee guidelines, this Court's Scheduling Order, rulings by the Court at the September 9, 2019

hearing, the requirements of the Bankruptcy Code for retaining professionals, the requirements in

the Bankruptcy Rules to comply with Official Form B-207 by disclosing payments to insiders --

"including expense reimbursements."  (*See supra* ¶¶ 22-24, 45-48.)  Thus, cause plainly exists to

appoint a chapter 11 trustee.  *See In re Sillerman*, 605 B.R. at 642, 645 (observing that

"[n]oncompliance with the Bankruptcy Code is conduct that clearly constitutes cause under

section 1104(a)(1)" and finding cause exists to appoint a trustee, where, like here, Debtors failed

to comply with section 327(a) of the Bankruptcy Code and generally did not comply with the court's orders) (collecting cases).

59.    <u>Third</u>, the Debtors' pre- and post-petition mismanagement of their properties constitutes further cause for the appointment of a trustee.  As described above, the Debtors have, and continue to, manage their properties in a way that is detrimental to both the estates and Brooklyn Lender's collateral, including by failing to obtain proper insurance, committing building code violations, failing to timely pay property taxes, and hiring a manager that previously pleaded guilty to fraud.  (*See supra* ¶¶ 25-28.)  When a debtor-in-possession and its management have exhibited an inability or unwillingness to comply with their basic fiduciary duties to maintain the property of the estate, as is the case here, the appointment of a trustee pursuant to section 1104(a) is warranted.  *See In re Euro-Am. Lodging Corp.*, 365 B.R. 421, 426-7 (Bankr. S.D.N.Y. 2007) (finding that debtor's failure to pay taxes and penalties constituted "gross mismanagement").

60.    <u>Finally</u>, the level of acrimony between the Debtors and their creditors constitutes further "cause" for the appointment of a trustee.  The Debtors' two largest creditors (Brooklyn Lender and the Investors' Claim claimants) have both alleged fraud by the Debtors and their current principal and have engaged in years of contentious pre-petition litigation with the Debtors.  Courts have held that acrimony of this sort is sufficient cause to appoint a trustee.  *See In re Marvel Entm't Grp.*, 140 F.3d 463, 473 (3d Cir. 1998) (holding that the acrimony between the debtor-in-possession and the creditors is sufficient "cause" under section 1104(a)(1) to warrant the appointment of a trustee); *In re Eurospark Indus., Inc.*, 424 B.R. 621, 630 (Bankr. E.D.N.Y. 2010) ("[A]crimony between the creditors and the debtor's management, standing

alone, has been found to be a basis to appoint a chapter 11 trustee under 11 U.S.C. §
1104(a)(2).").

## II.    Appointment of a Trustee under Section 1104(a)(2) is in the Best Interest of the Estate and All Other Parties

61.    Even if this Court does not find that a trustee should be appointed "for cause"
under section 1104(a)(1), doing so is appropriate under section 1104(a)(2), as doing so is in the
interests of the parties and the estate. *See Ashley River Consulting*, 2015 WL 1540941,
at *11. Section 1104(a)(2) "envisions a flexible standard" and "gives the [] court discretion to
appoint a trustee when doing so would serve the parties' and estate's interests." *Id.*; *In re
Soundview Elite, Ltd.*, 503 B.R. 571, 583 (Bankr. S.D.N.Y. 2014). In essence, section 1104(a)(2)
"reflects 'the practical reality that a trustee is needed.'" *See In re V. Savino Oil & Heating Co.,
Inc.*, 99 B.R. at 527 n.11. Factors that courts consider include:

> (i) the trustworthiness of the debtor; (ii) the debtor's past and
> present performance and prospects for reorganization; (iii) the
> confidence -- or lack thereof -- of the creditors in the present
> management; and (iv) the benefits derived by the appointment of a
> trustee, balanced against the cost of the appointment.

*In re Ancona*, No. 14-10532 (MKV), 2016 WL 7868696, at *12 (Bankr. S.D.N.Y. Nov. 30,
2016). Here, those factors militate in favor of appointing a chapter 11 trustee.

62.    <u>First</u>, the Debtors are not trustworthy. Leaving aside the extensive
misrepresentations made by the Debtors and their principal (which are the subject of ongoing
litigation), that the Debtors' current manager running the Bankruptcy Cases has pleaded guilty to
fraud (via false tax returns and/or false bank statements) is reason enough to question the
Debtors' truthfulness (*see supra* ¶¶ 41-42). *See Ashley River Consulting*, 2015 WL 1540941, at
*10 (finding that prior conviction of debtors' principal for fraud militated in favor of appointing
a trustee). Moreover, the Debtors (and their purported equity holders) have evaded their

discovery obligations (*see id.* at ¶¶ 29-35), which provides additional bases for distrust.  And, the

Debtors have refused to explain glaring inconsistencies between their Schedules and tax returns,

further calling into doubt their truthfulness.  *See, e.g.*, *In re Ridgemour Meyer Properties*, LLC,

413 B.R. 101, 110, 113-14 (Bankr. S.D.N.Y. 2008) (finding president and principal displayed a

lack of candor and were, among other things, untrustworthy).

63.     <u>Second</u>, the creditors have lost all confidence in the present management of the

Debtors for various reasons and because the Debtors have repeatedly failed to abide by this

Court's orders, the Bankruptcy Code, the Bankruptcy Rules, and the US Trustee guidelines.  *See*

*Ashley River Consulting*, 2015 WL 1540941, at *11 (granting motion to appoint a trustee and

noting that "the Debtors have not done much of anything in their bankruptcies since they filed

their petitions other than file their schedules[ ], applications to approve their retention of their

attorneys, and respond to the motions of other parties in interest, including the U.S. Trustee, who

seek relief to move these cases along").[12]

64.     <u>Third</u>, the benefits of appointing a trustee far outweigh the corresponding costs of

appointment.  A trustee will protect the integrity of, and maximize recovery to, the estate.  In

addition, appointment of a chapter 11 trustee that is diligent, focused, and trustworthy would

likely reduce the estate's costs in litigating the Investors' Claim and Brooklyn Lender's

entitlement to default interest.  With the Debtors in charge, almost every document and piece of

information required for the administration of this case, or for the prosecution of Brooklyn

Lender's claims, has required contentious motion practice.  (*See supra* ¶¶ 29-35.)  Such "savings

---

[12]   The Debtors' ability to successfully reorganize is in question and is currently on track to be litigated at the
confirmation hearing.  Leaving aside infirmities in the Debtors' Proposed Plan, it seems highly likely that given the
Debtors' inability to administrate their cases properly, that a chapter 11 trustee would be much better equipped to
build consensus around a confirmed plan.

will offset the additional cost resulting from the trustee's appointment." *In re Euro-Am. Lodging Corp.*, 365 B.R. at 432.

65.    For all these reasons, appointment of a trustee is warranted under section 1104(a)(2) of the Bankruptcy Code.

## PRIOR REQUEST

66.    No prior request for the relief sought in this Motion has been made by Brooklyn Lender or any other party in these proceedings.

## NOTICE

67.    Notice of this Motion will be provided to (a) counsel to the Debtors; (b) the Office of the United States Trustee for the Southern District of New York; and (c) those parties that have requested notice in these cases pursuant to Bankruptcy Rule 2002.

## RESERVATION OF RIGHTS

68.    Brooklyn Lender reserves all rights with respect to the Motion and these Bankruptcy Cases, including the right to amend and/or supplement this Motion, the right to participate in additional briefing, and the right to be heard at any hearing or trial related to the Motion.  Nothing contained herein shall constitute a waiver of any of the rights or remedies of Brooklyn Lender, each of which is expressly reserved.

## CONCLUSION

WHEREFORE, for the reasons stated herein, Brooklyn Lender respectfully requests that the Court (i) enter an Order, in the form attached hereto as Annex A, appointing a chapter 11 trustee for these Bankruptcy Cases pursuant to section 1104(a) of the Bankruptcy Code and (ii) grant to Brooklyn Lender such other and further relief as this Court may deem just and proper.

Dated: December 19, 2019          STROOCK & STROOCK & LAVAN LLP
     New York, New York

/s/ *Daniel A. Fliman*
Daniel A. Fliman
Jennifer S. Recine
Patrick N. Petrocelli
Tiffany L. Ho
Isaac S. Sasson
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Counsel for Brooklyn Lender LLC*

29