Yitzchak E. Soloveichik, Esq.
BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
*Attorneys for the Claimants Identified in*
*Exhibit A (annexed hereto)*
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484


Ilana Volkov, Esq.
McGRAIL & BENSINGER LLP
*Special Bankruptcy Counsel for the Parties*
*Identified on the Notice of Appearance filed at Docket #71*
888-C 8th Ave. #107
New York, NY  10019
(201) 931-6910

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
In re

53 Stanhope LLC, et al.,[1]


                        Debtors.
---------------------------------------------------------------X

Chapter 11

Case No. 19-23013 (RDD)
Jointly Administered

### RESPONSE TO DEBTORS' OBJECTION TO "INVESTOR CLAIMS"

**TO THE HONORABLE ROBERT D. DRAIN,**
**UNITED STATES BANKRUPTCY JUDGE:**

The claimants identified in Exhibit A annexed hereto (collectively, the "Claimants"), by and through their undersigned attorneys, file this response (the "Response") to the objection of 53 Stanhope LLC and the jointly administered debtors herein (each a "Debtor" and collectively,

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC Holding 1 LLC (0290); D&W Real Estate Spring LLC (4591); Meserole and Lorimer LLC (8197); 106 Kingston LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155).

the "Debtors") to "Investor Claims" [Docket No. 67] (the "Claim Objection"), and respectfully represent as follows:

## PRELIMINARY STATEMENT

1. As a gating issue, the Claimants respectfully submit that the hearing on the Claim Objection should be adjourned for two significant reasons: (i) if the Court appoints a Chapter 11 Trustee, that independent fiduciary will need time to assess the merits of the Claimants' claims (the "Claims") and address them accordingly; and (ii) in any event, there is need for extensive discovery to rebut the conclusory, dismissive and oftentimes misleading positions advanced by the Debtors in opposition to the Claims.

2. By way of quick procedural context, on December 18, 2019, some of the Claimants retained McGrail & Bensinger LLP ("M&B") as special bankruptcy counsel. M&B filed a Notice of Appearance on December 19, 2019 at Docket No. 71. On the same day, the Brooklyn Lenders filed a motion to appoint a Chapter 11 Trustee [Docket No. 72] (the "Trustee Motion"). Shortly thereafter, M&B contacted Debtors' counsel to request an adjournment of the hearing on the Claim Objection as a professional courtesy (*i.e.*, so they can get up to speed on the case and evaluate how to respond to the Claim Objection) and in view of the Trustee Motion. After speaking with the Court's deputy clerk on December 26, 2019, M&B advised Debtors' counsel of two potential hearing dates to which the Claim Objection could be rescheduled (one in late January and one in late February 2020). On the morning of December 27, 2019, Debtors' counsel advised M&B that the Debtors do not consent to an adjournment.

3. The potential appointment of a Chapter 11 Trustee and the need for an evidentiary hearing on the Claim Objection establish that the hearing on the Claim Objection should be adjourned. First, if the Court appoints a Chapter 11 Trustee, it should be the Trustee

2

who determines whether and on what grounds to object to the Claims, as well as whether any of the Claims, if allowed, should be subordinated to equity. Second, regardless of whether the Court appoints a Trustee, the Claimants are entitled to a trial on the merits of their Claims (as was clearly requested by them in their proofs of claim). Thus, the Court should allow them the opportunity to engage in meaningful discovery and to an evidentiary hearing as opposed to having to respond, in a truncated hearing on motion day, to a sweeping pleading without the rights afforded by the Federal Rules of Civil Procedure (the "Civil Rules") and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. In the event the Court determines to hear the Claim Objection on the January 8th return date, the Claimants set forth their preliminary response herein and respectfully reserve the right to supplement this pleading if ultimately the Court determines to hold an evidentiary hearing on the merits of the Claims.

5. The Claims are based on unjust enrichment, conversion and securities fraud; none of the general unsecured claims is based on a writing. The Claims are direct claims against twelve (12) of the Debtors (the "Twelve Debtors") and are not asserted in any derivative capacity. The Claims clearly allege that more than $20 million were misappropriated or stolen from the Claimants, but that a trial is required to prove the Claimants' exact damages against the Twelve Debtors. Exhibit A, annexed hereto, sets forth a summary of the claims asserted by the Claimants against the Twelve Debtors.

6. The Twelve Debtors are fully aware of the nature of the Claims, when the Claims arose and the basis for the Claims, as all but one of the Twelve Debtors have been involved in litigation with many of the Claimants since 2017. Most egregiously, the Twelve Debtors, through the two individuals in control – Yechezkel Strulovitch ("Strulovitch") and

Yechiel Oberlander ("Oberlander") – are in possession of the majority of documents needed to trace their fraud and conversion of the Claimants' significant funds.

## BACKGROUND

7. The Debtors took part in a massive scheme to defraud over 180 people, along with related corporate entities, out of more than $20,000,000 through the promotion of so-called "investments" in New York real estate. The Claimants are individuals (the "Individual Claimants") and twenty-three limited liability companies (the "LLC Claimants") who comprise the substantial majority of the defrauded parties in number and dollar amount. The scheme was masterminded by Strulovitch and Oberlander (collectively, the "Individual Malefactors").

8. Specifically, the Individual Malefactors persuaded numerous individuals – mostly foreigners – to "invest" collectively over $20 million (the "Funds") in over twenty parcels of real property located in New York City (collectively, the "Investment Properties" and, individually, the "Investment Property"). Those Individual Claimants transferred their money based upon false representations that the Individual Malefactors made in prospectuses, including with respect to the properties' purchase price, and that the Funds would be used solely to purchase and renovate specific Investment Properties. In return for the transmittal of Funds, the Individual Claimants would purchase membership interests in the LLC Claimant.[2] The LLC Claimants, in turn, were given 45 or 46 percent interests in one of twenty-two limited liability companies (collectively, the "Holding Companies" and, individually, a "Holding Company") that each held title to a respective Investment Property.[3] CSRE LLC ("CSRE"), an entity wholly owned by the Individual Malefactors, owns the remaining 54 or 55 percent in each Holding Company.

---

[2] The Debtors inaccurately contend (in Paragraph 3 of the Claim Objection) that the LLC Claimants hold only "profit sharing interests" in four subject Debtors.
[3] One LLC Claimant – 1283 Bushwick Operations LLC – never received an interest in a Holding Company, because the intended investment property was never purchased.

4

9. The Individual Malefactors were the managers of the LLC Claimants until September 2019, when they were removed as managers by the LLC Claimants' members. The Individual Malefactors are the managers of the Holding Companies.[4]

10. Rather than use the Funds to purchase and develop the Investment Properties, the Individual Malefactors diverted them to other limited liability companies controlled by the Individual Malefactors. These other companies included both (i) the Holding Companies and (ii) other entities (the "Secret LLCs") controlled by the Individual Malefactors that owned and developed properties (the "Secret Properties") in which the Individual Claimants and LLC Claimants held no interest. Some of the Funds were diverted by the Individual Malefactors before the Funds even reached the LLC Claimants' accounts. Likewise, even when Funds reached the LLC Claimants' accounts, they were then diverted by the Individual Malefactors before the funds reached their respective Holding Companies. The Funds were commingled in Strulovitch and Oberlander's personal accounts or other accounts controlled by them and then used for unrelated Holding Companies, in which the LLC Claimants had no ownership interest, and/or the Secret LLCs.

11. The Twelve Debtors against whom the Claimants assert claims consist of four Holding Companies and eight Secret LLCs, all as more particularly illustrated on Exhibit A hereto.

Federal Court Litigation

12. In April 2017, the LLC Claimants[5] and some of the Individual Claimants commenced an action in the United States District Court for the Eastern District of New York

---

[4] As noted in the proposed amended complaint in the Federal Action, there are two exceptions. With respect to 657-665 5th Avenue LLC and Willoughby Estates LLC, CSRE transferred a small portion of their ownership interests to individual investors, and those investors, together with the LLC Claimant, removed the Individual Malefactors as managers in September 2019.

[5] One LLC Claimant – 1285 Bushwick – was not a Plaintiff in the Federal Action.

5

against the Individual Malefactors, the Holding Companies, most of the Secret LLCs, and other entities controlled by the Individual Malefactors (the "Federal Action").

13.    In the Second Amended Complaint[6] in the Federal Action, the plaintiffs asserted securities fraud claims against Strulovitch, Oberlander, and the Holding Companies based upon the purchase of membership interests in the Holding Companies. The plaintiffs also asserted claims for breaches of fiduciary duty by Strulovitch and Oberlander in their roles as managers of the Holding Companies. The LLC Claimants asserted claims for constructive trust against most of the Secret LLCs. Finally, the plaintiffs asserted claims for common law fraud, unjust enrichment, constructive trust, and accounting.

14.    The claims in the Second Amended Complaint were asserted directly, and not derivatively, by the LLC Claimants.

15.    The defendants moved to compel arbitration based upon twenty-two operating agreements (the "Holding Company Agreements") among the LLC Claimants, their respective Holding Companies, CSRE, and certain members of the LLC Claimants. The Holding Company Agreements contain an arbitration clause providing that any claims relating to the Holding Company Agreements should be arbitrated.

16.    The district court (Amon, J.) held that "the LLC Plaintiffs and the Individual Plaintiffs who executed a Holding Company Agreement must arbitrate their claims against the Individual Defendants and the Holding Company Defendants for each agreement signed," though claims against other defendants were not arbitrable. (Slip Op.[7] at 30, 34)

17.    Because the court either dismissed or referred to arbitration the plaintiffs' federal securities claim – their sole federal cause of action – the court declined to retain supplemental

---

[6] A copy of the Second Amended Complaint is attached hereto as Exhibit B.
[7] A copy of Judge Amon's decision is attached hereto as Exhibit C.

6

jurisdiction over the plaintiffs' remaining state law claims. (*Id.* at 40.)

18. On December 23, 2018, after the parties failed to reach an agreement on arbitrating all claims, including those not subject to the arbitration agreements, the plaintiffs submitted a pre-motion letter, in accordance with the court's individual rules, seeking leave to amend their complaint in order to proceed with the litigation of their viable, non-arbitrable claims.

19. On November 26, 2019, after significant pre-motion briefing and oral argument, the court directed the plaintiffs to file a formal motion for leave to amend, including a proposed amended complaint. On December 30, 2019, the plaintiffs filed their motion for leave to amend and submitted a proposed amended complaint. (*See* Exhibit D, attached hereto).

The Bankruptcy Proceedings and the Claimants' Claims

20. On May 20, 2019, each of the Debtors filed a Chapter 11 petition, except 167 Hart LLC, which filed its petition on May 21, 2019.

21. The Debtors include four of the Holding Companies[8] and eight of the Secret LLCs.[9]

22. On August 9, 2019, the Claimants filed their proofs claim.

23. The Claimants filed proofs of claim (the "Claims") against the four Holding Company Debtors and the eight Secret LLC Debtors (the "Twelve Debtors"). A description of each Claimant, the Twelve Debtors against whom the Claims are asserted and the nature of each claim is set forth on Exhibit A.

The Bankruptcy Proceedings and the Claimants' Claims

---

[8] The four Holding Company Debtors are 325 Franklin LLC, 618 Lafayette LLC, 106 Kingston LLC, and 1213 Jefferson LLC (collectively, the "Holding Company Debtors").
[9] The seven Secret LLC Debtors are 53 Stanhope LLC, 55 Stanhope LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC, APC Holding 1 LLC, 167 Hart LLC, and Eighteen Homes LLC (collectively, the "Secret LLC Debtors").

24. The Claimants attached statements of claim ("Statements of Claim") to the Claims. The Statements of Claim explained how the Twelve Debtors had injured the Claimants, giving rise to their claims. In particular, the Individual Malefactors diverted Funds from both the Individual Claimants *and* from the LLC Claimants. The Statements of Claim further explained that, as noted above, the Individual Malefactors diverted those funds to the Debtors. The Debtors retained and used those funds for their own benefit or for the benefit of other entities owned and/or controlled by the Individual Malefactors, and not for the benefit of the Claimants as intended.

25. The claims submitted by the LLC Claimants were submitted by the LLC Claimants directly; they were not submitted derivatively on behalf of the LLC Claimants. Nothing in the Proofs of Claim suggests that their claims are derivative.

## Objection to Proof of Claim

26. The Claim Objection alleges that:

(a) To the extent the Claims are allowed, they arise from the sale of securities of affiliates of the Debtors and must be subordinated under Bankruptcy Code section 510(b),
(b) The Claims are not *prima facie* allowed because no claim amounts are stated, no documentation for the Claims is provided, no dates are provided for when the claims arose, nor is a legal basis for liability alleged,
(c) The Claimants assert both direct claims on their personal behalf and derivative claims on behalf of investment entities through which they invested, thereby creating an impermissible conflict of interest under both New York and Federal law,
(d) The Claims against the Holding Company Debtors are contradicted by the Federal Action Complaint which admits that all amounts invested in the Holding Company Debtors were returned to the Claimants,
(e) The Claims fails to allege specific misconduct by the Relief Debtors, let alone facts that would support a legally cognizable claim, and
(f) Even if the Relief Debtor Claims are deemed prima facie valid, their allowance is subject to the outcome of arbitration proceedings against the LLC Defendants, and should be stayed pending arbitration.

8

# LEGAL ARGUMENT

### A.   The Claims are *Prima Facie* Valid

27.   Pursuant to Bankruptcy Rule 3001(a), a proof of claim "is a written statement setting forth a creditor's claim." Furthermore, the proof of claim must conform to the appropriate Official Form (Form B10). Fed. R. Bank. P. 3001(a); *see In re Residential Capital, LLC,* 501 B.R. 531, 538 (Bankr. S.D.N.Y. 2013) (*quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992)* ("Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is 'prima facie' valid.")).

28.   Pursuant to Bankruptcy Rule 3001(c), only if a claim is based on a writing should a copy of the writing be attached to the proof of claim. Fed. R. Bankr. P. 3001(c).

29.   Bankruptcy Rule 3001(f) states, in turn, that a proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). *See In re Residential Capital, LLC, No. 12-12020 (MG), 2014 Bankr. LEXIS 502, at \*9 (Bankr. S.D.N.Y. Feb. 6, 2014)* *("Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim.")*.

30.   Official Bankruptcy Form B10 sets forth the content and format for proofs of claim, and instructs the creditor as follows:

> Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary.

9

*In re Minbatiwalla,* 424 B.R. 104, 111-12 (Banks. S.D.N.Y. 2010) (quoting from Official Bankruptcy Form B 10).

31.     Here, none of the Claimants' general unsecured claims is based on a writing. Accordingly, those Claims did not need to attach a writing and, the failure to attach a "writing" is not fatal to the Claims.

32.     Moreover, the Claims set forth sufficient facts to support the Claimants' claims against the Twelve Debtors. The standard for assessing the prima facie validity of a claim mirrors the standard of Rule 12(b) of the Civil Rules. *See In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure.").

33.     The Claims meet the pleading standard of Rule 12(b) of the Civil Rules, as explained in Section B below.

34.     Moreover, even if the Claims failed to set forth sufficient facts and did not meet the standard for prima facie validity, the claims would not be disallowed out of hand, as the Debtors would have this Court believe. Rather, the burden of establishing the entitlement to the claim would merely shift to the Claimants. *See, e.g., In re Oneida Ltd.,* 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Residential Capital, LLC,* 501 B.R. 531, 539 (Bankr. S.D.N.Y. 2013);*In re Ellipso, Inc.,* No. 09-00148, 2011 Bankr. LEXIS 367, at *30 (Bankr. D.D.C. Feb. 7, 2011) ("If the complaint fails to set forth sufficient facts that would show as a matter of law that the claimant would be entitled to relief, then the proof of claim is not entitled to the presumption of prima facie validity, and the claimant bears the entire burden of showing its entitlement to the claim.").

**B.     The Claims Set Forth Sufficient Facts to Support Legally Cognizable Claims Against the Debtors, Including the Secret LLC Debtors**

35.    The Claims make specific allegations of misconduct by both the Holding Company Debtors and the Secret LLC Debtors that support legally cognizable claims against them.

36.    First, Strulovitch and Oberlander improperly diverted the Claimants' funds to the Debtors. Through their receipt and use of the Claimants' Funds, the Holding Company Debtors and the Secret LLC Debtors exercised dominion and control over personal property belonging to the Claimants, thereby interfering with the Claimants' right to possession of such property, to the Claimants' detriment. Thus, the Claimants have a claim against the Twelve Debtors for conversion of the Funds.

37.    Second, because the Twelve Debtors knowingly received and used the converted funds, the Twelve Debtors were wrongfully in possession of Claimants' Funds and have received substantial benefits from the wrongful possession thereof. Equity and good conscience require that the Twelve Debtors return the value of the Funds to the Claimants. Thus, the Claimants have a claim against the Twelve Debtors for unjust enrichment.

38.    To the extent that the Debtors take issue with the Claimants' failure to specify how much money was diverted to each particular Debtor from each particular Claimant, Claimants need discovery from the Debtors to ascertain those facts – especially in light of the general commingling of funds by the Individual Malefactors/Debtors , and failure by them to account heretofore. Therefore, discovery is needed by the Claimants so that they can demonstrate at trial the precise amount of their Claims.

39. Based on the Claims, the Debtors are indebted to Claimants for general unsecured liabilities. The general unsecured liabilities are based on funds that were misappropriated to the Debtors from (i) the LLC Claimants and (ii) funds from the Individual Claimants that were never placed in the LLC Claimants' accounts.

C. **Virtually All of the Claims are General Unsecured Claims, and the Debtors Also Failed to Bring an Adversary Proceeding to Subordinate Claims under Bankruptcy Code section 510(b)**

40. As an initial matter, contrary to the Debtors' bare contention, virtually none of the Claims arises from the sale of securities. Rather, the Claims arise primarily from the diversion of Claimants' funds to the Debtors, not the sale of any securities. Only the securities fraud claims of *four* LLC Claimants against the four Holding Company Debtors, in which those four LLC Claimants are members, arguably arise from the sale of securities.

41. The Debtors' attempt to swiftly subordinate the Claims in their entirety by way of motion practice contravenes Bankruptcy Rule 7001(8), which states that an adversary proceeding is required to "subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination[.]" Rule 7001(8). As a result, the Claimants are entitled to the rights and protections afforded by the Civil Rules and Bankruptcy Rules in connection with any attempted subordination of their Claims.

(D. **The Claimants Assert Only Direct Claims on Their Own Behalf and Do Not Assert Derivative Claims**

42. None of the Claims is asserted derivatively. The Claims are asserted by the Individual Claimants and the LLC Claimants on their own behalf, and nothing in the proofs of claims indicates otherwise. Likewise, none of the claims in the Second Amended Complaint in the Federal Action was asserted derivatively. And none of the claims in the First Amended Complaint, which the Debtors attach to their Objection, was asserted derivatively. The Debtors'

12

naked assertion that the LLC Claimants' Claims are asserted derivatively is simply erroneous.

43. Nor are the claims of the Individual Claimants and the LLC Claimants overlapping or duplicative. The Debtors received funds that were diverted directly from both the Individual Claimants and the LLC Claimants. To the extent the Debtors are now complaining that the Claimants should specify exactly how much was diverted from each Claimant to each Debtor, only the Debtors have that information. Accordingly, the Claimants should be allowed to seek, and the Debtors should be compelled to provide, discovery with respect to the precise amount of the Claims.

E. **The Claims Against the Holding Company Debtors Are Not Contradicted by the Claims in the Federal Action**

44. The Claims accord completely with the claims asserted by the plaintiffs in the Federal Action. Neither of the Debtors' arguments to the contrary bears scrutiny.

45. First, the Second Amended Complaint stated that Strulovitch and Oberlander "returned some of the investment funds" in connection with the four Holding Company Debtors. At most, this return of *some* of the Funds would decrease the size of the claims asserted by the four LLC Claimants and the Individual Claimants who are members thereof, against these four Holding Company Debtors. But it by no means would invalidate their claims. Perhaps more importantly, this return of Funds would have no effect on the other Claimants whose Funds were improperly diverted to the Four Holding Company Debtors.

46. Second, to the extent that the Debtors believe the Second Amended Complaint insufficiently set forth specific misrepresentations for the claims of securities fraud against the four Holding Company Debtors, that in no way *contradicts* a claim for securities fraud by the four LLC Claimants who were members in the Holding Company Debtors. Furthermore, the proposed Third Amended Complaint submitted in the Federal Action substantially augments the

13

specific allegations of misrepresentations relating to the four Holding Company Debtors.

### F. The Court Decision in the Federal Action Does Not Affect the Viability of the Claims Here

47. The court decision in the Federal Action does not affect the viability of any of the Claims here. Judge Amon dismissed only one claim on the merits, and this claim is not asserted here.

48. Judge Amon dismissed the claim by the Individual Claimants against the defendants for securities fraud based upon the membership interests in the Holding Companies because the Individual Claimants never directly purchased membership interests in the Holding Company. Here, no claim for securities fraud is asserted by the Individual Claimants. The only claim for securities fraud is asserted by four of the LLC Claimants against their respective four Holding Company Debtors. Judge Amon specifically recognized the ability of the LLC Claimants to assert securities fraud claims based upon the purchase of membership interests in their respective Holding Company. (*See* Slip Op. at 40 n.16 ("[N]ow that plaintiffs have submitted evidence that the members of the LLC Plaintiffs have authorized them to bring this suit, there is no barrier whatsoever to the actual purchaser of the securities at issue to interposing those claims against defendants.").)

49. Once Judge Amon dismissed the only federal claim, she dismissed the various common law claims based on lack of supplemental jurisdiction. She did not dismiss those claims on the merits. Thus, there is no impediment to the assertion of such claims by Claimants here.[10]

### G. The Vast Majority of Claims are Not Subject to Arbitration

50. The Debtors also misconstrue the holding of Judge Amon and the underlying facts

---

[10] Moreover, the assertion that no state court action has been commenced in Paragraph 7 of the Claim Objection is of no moment.

with respect to arbitration. Each Holding Company Agreement – which contained an arbitration provision – was entered into by CSRE, a Holding Company, the LLC Claimant that was a member of that particular Holding Company, and some members of that particular LLC Claimant. Judge Amon simply held that disputes between parties to a Holding Company Agreement arising out of that agreement are subject to arbitration.

51. Thus, as to each of the four Holding Company Debtors, only one LLC Claimant is bound by the arbitration agreement: the LLC Claimant that is a member of that particular Holding Company Debtor. Otherwise, all the other claims asserted by the Claimants against the Holding Company Debtors are not subject to arbitration and should not be disallowed on those grounds, summarily, as the Debtors disingenuously suggest.[11]

52. Consequently, the vast majority of the Claims against the Holding Company Debtors and the Secret LLC Debtors are not subject to arbitration, and these Claims are hardly secondary to the small minority of the Claims that are subject to arbitration.

---

[11] Arguably, the claims of five Individual Claimants against the Holding Company Debtors are arbitrable under the applicable Holding Company Agreements. (*See* Slip. Op. at 6 n.3.) Nevertheless, the vast majority of the Claims against the Twelve Debtors are not subject to arbitration.

## **CONCLUSION**

For the foregoing reasons and authorities, Claimants respectfully request that the Court (i) deny the relief requested in the Claim Objection or adjourn the hearing thereon to allow the parties to conduct discovery, and (ii) grant such other relief as the Court deems just and proper under the circumstances.

Dated: New York, New York
January 2, 2020

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

*Attorneys for the Claimants Identified in Exhibit A (annexed hereto)*

By: */s/ Yitzchak E. Soloveichik*
Yitzchak E. Soloveichik

**McGRAIL & BENSINGER LLP**

*Special Bankruptcy Counsel for the Parties Identified on the Notice of Appearance filed at Docket #71*

By: */s/ Ilana Volkov*
Ilana Volkov