**Hearing Date:** Wednesday, January 8, 2020 at 10:00 a.m. (prevailing Eastern Time)

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006
Daniel A. Fliman
Jennifer S. Recine
Patrick N. Petrocelli
Tiffany L. Ho
Isaac S. Sasson

*Counsel for Brooklyn Lender LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re* | Chapter 11 |
| 53 STANHOPE LLC, *et al.*[1] | Case No. 19-23013 (RDD) |
| Debtors. | Jointly Administered |

**BROOKLYN LENDER LLC'S REPLY IN FURTHER SUPPORT**
**OF ITS MOTION PURSUANT TO 11 U.S.C. § 1104(a)**
**FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE**

---

[1]  The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC Holding 1 LLC (0290); D & W Real Estate Spring LLC (4591); Meserole and Lorimer LLC (8197); 106 Kingston LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155) (collectively, the "Debtors").

Brooklyn Lender LLC ("Brooklyn Lender"), creditor in interest in the above-captioned jointly-administered bankruptcy cases (the "Bankruptcy Cases"), by and through the undersigned counsel, hereby submits this reply (the "Reply") in further support of its *Motion Pursuant to 11 U.S.C. § 1104(a) for Appointment of a Chapter 11 Trustee* [Docket No. 72] (the "Motion")[1] and in response to the Debtors' *Objection to Trustee Motion* [Docket No. 78] (the "Objection") and in support thereof, respectfully states as follows:

1.      Throughout these Bankruptcy Cases, the Debtors have consistently conducted themselves with one overarching principle:  avoid taking any position in the Bankruptcy Cases that could shed light on the fraud that the Debtors' principal, Chaskiel Strulovitch ("Strulovitch"), has perpetrated over the last seven-plus years.  Thus, since the Petition Date, the Debtors have, time and time again, undertaken herculean efforts to obfuscate their true ownership and, in doing so, have demonstrated they cannot be honest and forthright with the Court, the US Trustee or their creditors.

2.      The motivation behind the Debtors' deceit has only become clearer through the Objection.  There, the Debtors admit that they are aware of the inexplicable inconsistencies concerning their ownership made by the Debtors and/or by Strulovitch (1) to this Court under penalty of perjury, (2) to Federal and state taxing authorities under penalty of perjury, (3) to Signature Bank ("Signature") at loan origination and (4) set forth in the Debtors' own operating agreements.  Moreover, as alleged by certain investors before this Court, the ownership representations in all the foregoing documents only further contradict statements Strulovitch made to those investors, which is the subject of ongoing litigation.

---

[1] Capitalized terms used herein but not herein defined shall have the meanings ascribed to them in the Motion.

3.      The Debtors and Strulovitch are scrambling to find a consistent narrative and defensible explanation for these inconsistencies, but seemingly cannot do so.  And, that, we believe, is why, at all costs – and now with the retention of a ***third*** law firm – the Debtors have avoided their most fundamental disclosure obligations as debtors-in-possession.  It is evident that the Debtors' desire to protect Strulovitch from ancillary civil (and presumably, criminal) exposure is behind their abdication of duties to this Court, their estates and their creditors.  The Debtors have consistently put Strulovitch's interests before their own, which has, and will continue to, derail these Bankruptcy Cases unless and until a chapter 11 trustee is appointed.

4.      It is for this reason that Brooklyn Lender first filed its Motion on December 19, 2019.  Recent events – the Debtors' admissions in the Objection, and the allegations incorporated by reference in the *Claimants' Joinder To Brooklyn Lender LLC's Motion To Appoint A Chapter 11 Trustee* [Docket No. 80] (the "Investors' Claim Joinder") – have only served to heighten Brooklyn Lender's concerns.  Indeed, the Objection should be overruled for the following key reasons:

5.      First, the Debtors refuse to take responsibility for their failures and use the Objection to blame everyone else.  (*See* Objection at ¶¶ 66, 80, 100, 102, 103 (blaming, among others, Signature, the Court, Brooklyn Lender, and the US Trustee for failure of progress in the Bankruptcy Cases).)  However, the true culprit is the Debtors' unwillingness to take any action that may implicate Strulovitch in the various other litigations to which he already is (and may become) a target.

6.      For instance, the Debtors provide no explanation in their Objection as to why they still have failed to disclose admitted transfers to Strulovitch made in the year prior to the Petition Date.  (*See Motion* at ¶¶ 22-23, 37, 57.)

2

7.      Similarly, as the Court is aware, every document produced so far by the Debtors in these Bankruptcy Cases was only produced after Brooklyn Lender expended substantial time and expense pushing for production and seeking Court intervention.  (*See* Motion ¶¶ 22-24, 29-42.)  The Debtors attempt to deflect their discovery deficiencies by arguing that Signature has not yet produced all the documents the Debtors requested.  (*See* Objection at ¶ 80.)  However, Signature is a third party unrelated to Brooklyn Lender, and Signature's alleged failure to comply with its discovery requests does not absolve the Debtors of their obligations.  The Debtors' blame game is without basis in reality, and their delays are instead motivated by their desire to avoid potentially producing any documents that may implicate Strulovitch elsewhere.[2]

8.      Indeed, the Debtors' desire to avoid producing critical documents to protect Strulovitch is reflected by recent events in ancillary cases (not involving Brooklyn Lender) pending before Judge Craig in the United States Bankruptcy Court for the Eastern District of New York.  In November of 2019, Strulovitch and CSRE LLC ("CSRE") moved to dismiss those cases,[3] which had been authorized by some of the claimants in the Investors' Claim. Strulovitch argued that those cases were filed without authority and that certain transfers of equity interests were based on, among other things, "forged amendments" to operating

---

[2]  The Debtors further argue that they "did not anticipate such an onslaught" of discovery and "that the demands are overly broad and many are irrelevant to the mortgages."  (Objection at ¶ 82.)  However, the majority of requested discovery was approved by the Court as part of the 2004 Application, and has been outstanding since at least July of 2019.  The Debtors have no legitimate excuse for delaying to start pulling and reviewing such documents until November of 2019.  (*See* Motion at ¶ 33.)

[3]  The chapter 11 cases are styled as *In re 657-665 5th Avenue LLC*, Case No. 1:19-45884-cec (Bankr. E.D.N.Y) ("657-665 5th Ave.") and *In re Willoughby Estates LLC*, Case No. 1:19-45886-cec (Bankr. E.D.N.Y) ("Willoughby Estates" and collectively, the "Brooklyn Cases")

agreements.  (*See* 657-665 5th Ave. [Docket No. 21]; Willoughby Estates [Docket No. 24], attached hereto as Exhibit A.[4])

9.      Strulovitch then attempted to avoid material discovery in connection with that litigation; however, once Judge Craig allowed broad discovery of Strulovitch (and, seemingly, Strulovitch realized that facts would come to light that could implicate him in other disputes including, these Bankruptcy Cases), Strulovitch withdrew the dismissal motion and stipulated to the validity of the Brooklyn Cases.  Tellingly, in doing so, Strulovitch required the parties to stipulate that such agreement and his admissions of ownership therein were "solely for purposes of [that] bankruptcy case" and "not intended to have, and do not have, any force or effect outside of the [Brooklyn Cases]."  (*See* 657-665 5th Ave. [Docket No. 54]; Willoughby Estates [Docket No. 54], attached hereto as Exhibit B.)  We believe that those same motivations – avoiding potential collateral damage on Strulovitch's other interests – are constraining the Debtors' ability to conduct themselves properly in these Bankruptcy Cases.

10.     <u>Second</u>, the Debtors argue that a trustee should not be appointed because the Debtors are in the process of prosecuting a "plan [that] pays all creditors in full and preserves the ownership interests of equity holders."  (Objection at ¶ 114.)  Thus, the Debtors attempt to portray confirmation of the Proposed Plan as a *fait accompli* and to paint these Bankruptcy Cases as moving apace towards a confirmation hearing.  Nothing could be further from the truth.

11.     It is beyond dispute that if the Debtors fail to prevail *in full* on their objection to Brooklyn Lender's proofs of claim ***and*** also *in full* on their objection to the Investors' Claim, the

---

[4] Due to their voluminous nature, the exhibits annexed to 657-665 5th Ave. [Docket No. 21] and Willoughby Estates [Docket No. 24] are not attached hereto and are available upon request of the Court or any party in interest.

Proposed Plan will necessarily fail for lack of funding.  Even if proper funding does exist to cover distributions under the Proposed Plan, the present record in these Bankruptcy Cases – including the Debtors' own admissions in the Objection – raises serious doubts that the Debtors could obtain requisite findings under sections 1129(a)(2) or (3) of the Bankruptcy Code.  While these are confirmation issues not presently before the Court, they are worth noting now given the Debtors' attempts to ward off a trustee by hiding behind their highly-flawed Proposed Plan.

12.    <u>Third</u>, the Debtors' efforts to minimize the consequences of the indisputable contradictions set forth in years of sworn-to filings and submissions just serve to highlight their untrustworthiness and to bolster the need for a trustee.  The Objection admits that, after nearly nine (9) months in bankruptcy, the Debtors now, with the retention of Robinson Brog Leinwand Greene Genovese & Gluck, P.C.'s ("<u>Robinson Brog</u>"), are evaluating their tax returns and/or operating  agreements "to reflect the actual business deals among the parties" and then intend to "determine" whether "amendments to [*sic*] will be needed to reflect the proposed amendments to the operating agreements."  (*Id.* at ¶ 90.)  In other words, the Debtors concede that they ***<u>did not previously perform this analysis</u>*** and certainly not before the Debtors filed their Schedules (under penalty of perjury) or before they filed their disclosure statement and Proposed Plan.  The delay is inexcusable and calls into doubt the veracity of the Debtors' statements and filings before this Court.  And, again, given the extensive exposure that Strulovitch potentially faces based on how the Debtors reconcile these inconsistencies, the Debtors' trustworthiness on these matters is in serious doubt.

13.    The Debtors' suggestion that amending their tax returns (dating at least back to 2012) would somehow negate their misstatements is baseless.  There is strong reason to believe, given the surrounding circumstances, that if the Debtors consistently misstated their ownership

over the last six (6) years, they did so for strategic reasons (i.e., to benefit Strulovitch), not mere oversight.  Such amendments would not somehow make the Debtors suddenly trustworthy. Moreover, it is doubtful that the Debtors could, even if proper, amend tax returns dating back that far.[5]  But, in any event, doing so would have massive implications on parties that, since at least 2012, have received K-1s from the Debtors and have reflected same on their personal tax returns.

14.    In any event, the Debtors' *post-hoc* rationalizations should not be countenanced. New York law is clear that Schedule K-1s are probative evidence of an entity's ownership.  *See Man Choi Chiu v. Chiu,* 125 A.D.3d 824, 825-26 (2d Dep't 2015*) (upholding finding that "LLC's records, which included the LLC's tax returns . . .  established . . . membership interest"); *Rosin v. Schnitzler*, No. 504136/15, 2018 WL 4466247, at *2-4 (Sup. Ct. N.Y. C'ty Sep. 18, 2018) (finding that the plaintiff "established, by way of . . . federal and state tax returns, that he was a one-third owner of all the membership interests . . .").[6]

15.    Ultimately, the Debtors' response to the inconsistencies between their tax returns, operating agreements, and Schedules proves Brooklyn Lender's concerns:  given the various litigations filed (and expected) against the Debtors and Strulovitch, the Debtors are just unwilling to be open and honest with the Court and thus a chapter 11 trustee is required.  *See* Motion at ¶¶

---

[5]  Indeed, given the recent changes to the tax code, it is unclear how, mechanically, the Debtors would amend their tax returns for those entities or seek an administrative adjustment for the entities that are now claiming to be wholly-owned by Strulovitch, as wholly-owned limited liability companies are "disregarded entities," which are not required to file tax returns or Schedule K-1s because the income and assets of disregarded entities are treated as being directly owned by their sole members.

[6]  We note that it would be highly improper for Robinson Brog to provide expert testimony in connection with the Objection and also that any attempts to introduce Robinson Brog as an expert witness in connection with confirmation should be denied because the Debtors did not disclose Robinson Brog prior to the deadline for parties to disclose expert witnesses under the Amended Scheduling Order.  (*See* Amended Scheduling Order [Docket No. 70], at p. 2 (setting the deadline at October 25, 2019).)

56-57 (*citing In re Ashley River Consulting, LLC*, No. 14-13406 (MG), 2015 WL 1540941, at \*9

(Bankr. S.D.N.Y. Mar. 31, 2015); *In re Sillerman*, 605 B.R. 631, 652 (Bankr. S.D.N.Y. 2019)).

Indeed, numerous courts have recognized that acrimony between debtors and their creditors

constitutes further "cause" for the appointment of a trustee. *See* Motion at ¶ 60 (*citing In re

Marvel Entm't Grp.*, 140 F.3d 463, 473 (3d Cir. 1998); *In re Eurospark Indus., Inc.*, 424 B.R.

621, 630 (Bankr. E.D.N.Y. 2010)).

16.     <u>Fourth</u>, the Debtors attempt to link the Motion to Brooklyn Lender's proofs of

claim, spending almost 15 pages arguing why Brooklyn Lender is not entitled to default interest

and why its claim should be denied.  (*See* Objection at pp. 2-17.)[7]  However, Brooklyn Lender's

entitlement to default interest is irrelevant to the Court's consideration of whether bases exist to

appoint a chapter 11 trustee (and Brooklyn Lender specifically did not raise those allegations in

the Motion).  Rather, the Debtors focus on Brooklyn Lender's prepetition claims to bury the fact

that they have no explanation for the numerous inconsistencies between their Schedules, tax

returns, and operating agreements.

17.     <u>Finally</u>, in their Objection, the Debtors attempt to downplay the allegations raised

in the Investors' Claim by pointing out that such claims were initially dismissed on jurisdictional

---

[7]  The Debtors go out of their way to argue that their misrepresentations to Signature are inconsequential because
"Mr. Strulovitch is not an entity or person covered by the relevant mortgage provision." (*See* Objection at ¶¶ 23-
26.)  The Debtors' argument is a red herring.  First, Strulovitch's relationship to the Mortgages is irrelevant to the
Motion, which deals with, among other things, the Debtors' trustworthiness in filings before this Court and their
pattern of mismanagement.  Second, the Debtors ignore that ***they themselves*** made material misrepresentations to
Signature – via the ownership information included in their operating agreements and otherwise – in connection
with each Mortgage.  Yet, as the Debtors admit, misrepresentations by the Debtors, each of whom was a
"Mortgagor" under the Mortgages, are sufficient to trigger a default pursuant to section 18(g) of the Mortgages.
(*See id.* at ¶ 24 (recognizing that section 18(g) covers "three categories . . .: (i) ***the Mortgagor***; (ii) any person (a
'guarantor') guaranteeing payment of the Debt or any portion thereof; or (iii) any person (a 'guarantor')
guaranteeing . . . the performance by the Mortgagor of any of the terms of the notes, the Mortgage or this
Agreement, made therein.") (emphasis added).)

grounds and "because [they] did not submit to arbitration . . . ." (Objection at ¶¶ 8, 19, 95, 98.) The Debtors, however, fail to disclose to the Court that the claims were not arbitrated because the parties could not mutually agree upon the terms for arbitration, and instead the parties have been in motion practice regarding a potential third amended complaint for nearly a year. (*See Response to Debtors Objection to "Investor Claims"* [Docket No. 79], at ¶¶ 18-19.) In any event, that the claims were dismissed on jurisdictional grounds is of no moment. Instead, the allegations raised by the purportedly defrauded investors, which are incorporated by reference in the Investors' Claim Joinder, paint a vivid picture of numerous fraudulent acts conducted by Strulovitch and certain of the Debtors, each of which, standing alone, would form an independent basis for the appointment of a chapter 11 trustee in these Bankruptcy Cases.

18.    For the forgoing reasons, and for the reasons set forth more fully in the Motion, the Debtors cannot be relied on to be neutral shepherds of the estate, and a chapter 11 trustee is required to move these cases along towards a successful reorganization.

Dated: January 5, 2020          STROOCK & STROOCK & LAVAN LLP
        New York, New York
                                 /s/ *Daniel A. Fliman*
                                 Daniel A. Fliman
                                 Jennifer S. Recine
                                 Patrick N. Petrocelli
                                 Tiffany L. Ho
                                 Isaac S. Sasson
                                 180 Maiden Lane
                                 New York, New York 10038
                                 Telephone: (212) 806-5400
                                 Facsimile: (212) 806-6006

                                 *Counsel for Brooklyn Lender LLC*