UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re                                                                    Chapter 11

      53 STANHOPE LLC, *et al*,[1]                        Case no.  19-23013 (RDD)

                                                             Jointly Administered

                      Debtors.

-----------------------------------------------------------x

## **AMENDED DISCLOSURE STATEMENT**

      THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO ALL CREDITORS AND PARTIES IN INTEREST OF 53 STANHOPE LLC, 55 STANHOPE LLC, 119 ROGERS LLC, 127 ROGERS LLC, 325 FRANKLIN LLC, 618 LAFAYETTE LLC, C & YSW LLC, NATZLIACH LLC, 92 SOUTH 4TH ST LLC, 834 METROPOLITAN AVENUE LLC, 1125-1133 GREENE AVE LLC, APC  HOLDING 1 LLC, D&W REAL ESTATE SPRING LLC, MESEROLE AND LORIMER  LLC, 106 KINGSTON LLC, EIGHTEEN HOMES LLC, 1213 JEFFERSON LLC, AND 167 HART LLC (EACH A DEBTOR, AND COLLECTIVELY, THE "DEBTORS").

      THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' AND INTEREST HOLDERS' DECISIONS TO SUPPORT OR OPPOSE THE PLAN OF REORGANIZATION, A COPY OF WHICH IS ANNEXED HERETO AS EXHIBIT A.

      THESE CASES HAVE NOT BEEN SUBSTANTIVELY CONSOLIDATED.

      ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY.  ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION.

      COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:   53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC  Holding 1 LLC (0290); D&W Real Estate Spring LLC (4591); Meserole and Lorimer  LLC (8197); 106 Kingston  LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155).

**INTRODUCTION**

1.      53 Stanhope LLC, 55 Stanhope LLC; 119 Rogers LLC, 127 Rogers LLC, 325 Franklin LLC, 618 Lafayette LLC, C & YSW, LLC, Natzliach LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC, APC  Holding 1 LLC, D&W Real Estate Spring LLC, Meserole Andand Lorimer  LLC, 106 Kingston LLC, Eighteen Homes LLC, 1213 Jefferson LLC, Andand 167 Hart LLC (each a "Debtor", and collectively, the "Debtors") submit this joint disclosure statement ("Disclosure Statement") in connection with their joint plan of reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code.  A copy of the Plan is attached hereto as Exhibit A.  All Creditors are urged to review the Plan, in addition to reviewing this Disclosure Statement.  All capitalized terms used but not defined shall have the meaning set forth in the Plan.

2.      This Disclosure Statement is not intended to replace a review and analysis of the Plan.  Rather, it is submitted as a review of the Plan in an effort to explain the Plan.  To the extent a Creditor has questions, the Debtors urge you to contact Debtors' counsel and every effort will be made to assist you.

3.      THE DEBTORS WILL NOT BE SOLICTING VOTES ON THE PLAN BECAUSEFROM CLASS 5 INTERESTS AND CLASS 6 CREDITORS.  ALL OTHER CREDITORS ARE DEEMED UNIMPAIRED UNDER THE PLAN.

4.      On January 21, 20192020, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail, in light of, among other things, the

2

nature and history of the Debtors and the condition of the Debtors' books and records, to enable

~~Creditors to~~parties in interest make an informed judgment on ~~whether to object to~~ the Plan.

5.    THE INFORMATION CONTAINED IN THIS DISCLOSURE

STATEMENT HAS BEEN SUPPLIED BY THE DEBTORS.  THE DEBTORS' BOOKS AND

RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE

DEBTORS' FINANCIAL CONDITION AS SET FORTH IN THE DISCLOSURE

STATEMENT.  BASED UPON THE INFORMATION MADE AVAILABLE, DEBTORS'

COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION

DISCLOSED HEREIN IS INACCURATE.  NEITHER THE DEBTORS NOR DEBTORS'

COUNSEL, HOWEVER, ~~IS~~ARE ABLE TO STATE DEFINITIVELY THAT THERE IS NO

INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE

INFORMATION CONTAINED HEREIN INACCURATE.

6.    The Bankruptcy Court has entered an Order fixing

February 26, ~~2019~~2020, at 10:00 a.m., at the United States

Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601-4140, as the date, time

and place for the hearing on confirmation of the Plan and fixing

February 19, ~~2019~~2020, as the last date for the filing and serving of

any objections to confirmation of the Plan.  A copy of any objection to confirmation of the Plan

must be delivered to the Court's chambers on or before such date.

**BACKGROUND**

7.      On May 20, 2019, each of the Debtors filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code"), except 167 Hart LLC which filed its petition on May 21, 2019.

8.      These cases involve loans made by Signature Bank to the Debtors in the form of 14 separate notes and mortgages covering 31 properties dating back to September 2012. All of the loans were assigned to Brooklyn Lender LLC ("Brooklyn Lender" or "Mortgagee") on or about May 17, 2017. At that time, each Debtor was current on its payment obligations and, they assert, not otherwise in default.  As reflected in Signature Bank loan statements, The aggregate principal amount owed onof the loans total at the time of transfer to Brooklyn Lender was $37,283,614.25, as follows:

| Debtor | Property | Value | Mortgage Principal |
|---|---|---|---|
| 53 Stanhope LLC<br>325 Franklin LLC<br>(Joint Owners) | 53 Stanhope Street Brooklyn NY<br>325 Franklin Avenue, Brooklyn NY | $3,500,000 | $2,664,019 |
| 119 Rogers LLC | 119 Rogers Avenue, Brooklyn, NY | $3,000,000 | $2,077,307 |
| 127 Rogers LLC | 127 Rogers Avenue, Brooklyn, NY | $3,500,000 | $2,121,334 |
| 167 Hart LLC | 167 Hart Street, Brooklyn, NY | $2,100,000 | $791,396 |
| 106 Kingtston LLC | 106 Kingtston Ave Brooklyn, NY | $2,100,000 | $730,949 |
| 618 Lafayette LLC | 618 Lafayette Ave<br>Brooklyn, New York | $1,900,000 | $779,122 |
| C&YSW, LLC<br><br>Natliach LLC<br>(Joint Owners) | 129 South 2nd Street, Brooklyn, NY<br>107 South 3rd Street Brooklyn, NY<br>109 South 3rd Street Brooklyn NY | $9,000,000 | $4,943,431 |
| Eighteen Homes LLC | 263 18th Street, Brooklyn, NY | $1,800,000 | $823,000 |
| 1213 Jefferson LLC | 1213 Jefferson Avenue, Brooklyn, NY | $1,500,000 | $898,840 |
| 92 South 4th LLC<br><br>834 Metropolitan LLC<br>(Joint Owners) | 92 South 4th Street, Brooklyn, NY<br>834 Metropolitan Ave, Brooklyn, NY | $4,500,000 | $2,236,419 |
| 1125-1131 Greene Avenue, LLC | 1125 Greene Avenue, Brooklyn, NY<br>1127 Greene Avenue, Brooklyn, NY<br>1129 Greene Avenue, Brooklyn, NY<br>1131 Greene Avenue, Brooklyn, NY<br>1133 Greene Avenue, Brooklyn, NY | $6,000,000 | $3,025,651 |
| APC Holding 1 LLC | 568 Willoughby Avenue, Brooklyn, NY | $3,500,000 | $1,256,364 |
| D&W Real Estate Spring LLC<br><br>Meserole & Lorimer LLC<br>(Joint Owners) | 130 South 2nd Street, Brooklyn, NY<br>318 Bedford A venue, Brooklyn, NY<br>740 Driggs Avenue, Brooklyn, NY<br>144 Huntington Street, Brooklyn, NY<br>68 Carroll Street, Brooklyn, NY<br>342 Rodney Street, Brooklyn, NY<br>178 Meserole Street, Brooklyn NY<br>180 Meserole Street, Brooklyn NY<br>182 Meserole Street, Brooklyn NY<br>440 Lorimer Street, Brooklyn NY | $26,000,000 | $12,897,588 |
| 55 Stanhope, LLC | 55 Stanhope Street, Brooklyn, NY | $5,000,000 | $2,038,183.88 |

5

9.      Brooklyn Lender LLC was created on May 9, 2017, immediately before it acquired the loans. Upon information and belief, Brooklyn Lender is affiliated with Maverick Real Estate Partners LLC. According to its website, Maverick is a private equity fund manager that acquires commercial mortgages secured by real estate in New York City.  Upon information and belief, Maverick, Brooklyn Lender and or its affiliated entities' business model involves predatory purchases of loans and mortgages for the purpose of defaulting borrowers on performing loans.[2]

**The Federal Action**

10.      On April 24, 2017 the Debtors, among others, were sued in the United States District Court for the Eastern District of New York (the "Federal Action").  The Federal Action plaintiffs sued several dozen defendants alleging a "Bernie Madoff" type scheme.  They asserted contract claims, tort claims, equitable claims, and securities law claims.  The plaintiffs included limited liability companies ("LLC Plaintiffs") and super-minority individual members of those limited liability companies ("Individual Plaintiffs," with the LLC Plaintiffs, the "Plaintiffs") who sued on their own behalf and derivatively on behalf of the LLC Plaintiffs.

11.      The LLC Plaintiffs hold profit sharing interests in four of the Debtors, each of whom was named as an "LLC Defendant":  106 Kingston LLC, 1213 Jefferson LLC, 618 LaFayette LLC and 325 Franklin LLC ("Debtor LLC Defendants").  The Individual Plaintiffs are Israeli nationals.  The managing members of the LLC Plaintiffs include Chaskiel Strulovitch.  He was named as an individual defendant.

---

[2] *See, e.g., Lenders in glass houses? Judge rules Maverick can't foreclose on Chelsea property because it violated loan agreement,* The Real Deal, May 20, 2019.

12.    Fourteen of the Debtors were named as 'relief defendants' ("Relief Defendants"):  53 Stanhope LLC, 55 Stanhope LLC, 119 Rogers LLC, 127 Rogers LLC, C & YSW, LLC, Natzliach LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, Greene Ave LLC, APC  Holding 1 LLC, D&W Real Estate Spring LLC, Meserole and Lorimer  LLC, Eighteen Homes LLC, and 167 Hart LLC ("Debtor Relief Defendants").  None of the Plaintiffs alleged any existing interest in the Debtor Relief Defendants.  The Plaintiffs asserted claims against the Debtor Relief Defendants that some of the money they invested may have been diverted to the Debtor Relief Defendants.  The Plaintiffs filed notices of pendency against all of the LLC Defendants and the Debtor Relief Defendants.

13.    The Debtor LLC Defendants moved to dismiss arguing that, among other things, they fulfilled their obligations under the Prospectuses by "returning the vast majority of the investment funds," and any dispute was nonetheless subject to arbitration.  On procedural grounds, the District Court dismissed the complaint on November 2, 2017 (Amon, J.) and vacated the notices of pendency, finding that as to the claims against the LLC Defendants, Plaintiffs may arbitrate any claim they may have.  No arbitration was commenced.

14.    The Debtor Relief Defendants moved to dismiss, arguing, among other things, that the Plaintiffs' allegations of diversion of funds were conclusory with no facts pled to support a constructive trust claim, and that even if the Plaintiffs properly alleged facts to support their claims, at best their claims were limited to claims against the Relief LLC Defendants' LLC membership interests as personalty and cannot serve as the basis for attaching the real property owned by the LLC Defendants.  On procedural and jurisdictional grounds, the District Court dismissed the complaint and vacated the notices of pendency, finding that as to the claims

against the Debtor Relief LLC Defendants, Plaintiffs may sue in State Court.  No State Court lawsuits have been filed.

15.    The Plaintiffs filed a notice of appeal which they later withdrew.  The Plaintiffs then made a motion to amend the dismissed complaint, which was pending at the time the Debtors filed these cases.

16.    Annexed to the Plan as Exhibit E is a list of claims filed against the Debtors by certain of the Plaintiffs as well as other Claimants whose Claims are based on similar allegations, including each Claimant's name and the Debtors against whom the Claims are filed (such Claims, to the extent Allowed, the "Class 6 Claims").

17.    Under section 510(b) of the Bankruptcy Code, claims arising from the "sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security. . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security."

18.    Paragraph 4 of the narrative attached to the proofs of Class 6 Claims, like the Federal Action complaint, asserts that such Claims arise from false representations in certain prospectuses that "Through the funds contributed by the investors, the investors would purchase ownership of separate limited liability companies (the "Investor LLCs"), each of which, in turn, would hold a 45% interest in a Holding Company."  At paragraph 11, the Class 6 Claimants identify Strulovitch as manager of the Holding Companies, which include the Holding Company Debtors.  At paragraph 13, the Narrative states that "Individual Fraudsters" own and control the "Secret LLCs," i.e. the named Relief Debtors.

19.    A membership interest in a limited liability company is a security under

section 101(49) of the Bankruptcy Code.  *E.g, In re Tristar Esperanza Properties, LLC,* 782 F.3d

492 (9th Cir. 2015).  The proofs of claim narrative alleges damages arising from the claimants'

intended purchase of interests (i.e. securities) in Holding Companies, including the Holding

Company Debtors.  Since Strulovitch owns or controls more than 20% of the both the Holding

Company Debtors and the named Relief Debtors, they are affiliates as defined by section 101(2)

of the Bankruptcy Code.

20.    In, *In re Lehman Bros. Inc.,* 503 B.R. 778, 782–83 (Bankr. S.D.N.Y.),

*aff'd on other grounds,* 519 B.R. 434 (S.D.N.Y. 2014), *aff'd,* 808 F.3d 942 (2d Cir. 2015) the

court explained the rules for applying section 510(b) as follows:

> The Court of Appeals for the Second Circuit along with the bankruptcy courts
> within the Second Circuit have uniformly applied a "broad interpretation of
> section 510(b)." *Rombro v. Dufrayne (In re Med Diversified, Inc.),* 461 F.3d 251,
> 255 (2d Cir.2006) (citing *In re Enron Corp.,* 341 B.R. 141, 162–63
> (Bankr.S.D.N.Y.2006) and *In re PT–1 Commc'ns, Inc.,* 304 B.R. 601, 610
> (Bankr.E.D.N.Y.2004)); *783 KIT Digital, Inc. v. Invigor Group Ltd. (In re KIT
> Digital, Inc.),* 497 B.R. 170, 181 (Bankr.S.D.N.Y.2013) ("While I certainly agree
> that other Circuits have construed section 510(b) broadly, so has the Second
> Circuit, along with bankruptcy and district court judges in the Second Circuit.").
> The inclusion of the word "shall" in the statute mandates subordination for claims
> meeting the criteria set forth in the statute.

21.    *Lehman* concluded that where, as here, claims arise from the sale of a

"security" of an "affiliate" as defined in the Bankruptcy Code, "The language is clear on its face

and applies to these claims."  *Lehman* 503 B.R. at 788.

22.    To the extent they may be Allowed, the Plan subordinates the Class 6

Claims to the Claims of General Unsecured Creditors and they are treated under the Plan as

9

Interests.  To the extent such Interests are "Allowed" as of the deadline for voting on the Plan the holders are entitled to vote to accept or reject the Plan.

**Brooklyn Lender Claims**

23.   10. Apparently, Maverick discovered the Federal Court lawsuitAction against Mr. Strulowitz and, the Debtors assert, predatorially targeted the loans on the Debtors' Properties.  Maverick then offered to purchase such loans from Bank United and Signature Bank to implement a scheme to effectuate technical defaults on the loans.  Correspondence between Maverick and various banks, including Bank United, indicates that Maverick requested that the banks issue non-monetary technical defaults on the Strulovitch loans and then assign them as defaulted loans.

24.   11. Evidently, Signature refused to default the Debtors, no doubtapparently because the loans were all performing based on the DebtorDebtors's excellent payment history.  As soon as Brooklyn Lender acquired the loans, it sent its own default notices ("Acceleration Letters") primarily alleging non-monetary defaults arising from unproven allegations in the now -dismissed Federal Court lawsuit that Chaskiel Strulovitch, as the potential guarantor of the mortgages, submitted potentially misleading financial statements with the Debtors' loan applications.  Brooklyn Lender claims that due to those alleged defaults, it is entitled to 24% default interest retroactive to the loans' origination dates, plus other related charges, for a total of about $35 million more than the principal amount due.  This, notwithstanding the fact that the loans are essentially non-recourse with only limited guaranties, so the value of Mr. Strulovitch' s stake in the properties listed was not particularly important. .

12. In summary, even though there was no monetary default, Maverick sent default notices based on mere allegations made against Mr. Strulovitch in the District Court for the Eastern District of New York a month earlier on April 10, 2017, by various Israeli investors alleging that they were entitled to ownership interests in certain properties controlled by Mr. Strulovitch. Those certain properties included several owned by the Debtors and others listed on the financial statement submitted by Strulovitch in connection with his limited guarantee for the Debtors' loan applications.

13. The Federal Court lawsuit was dismissed in a 47-page Memorandum and Order dated November 2, 2017 (Amon, J.) where the District Court either dismissed or refereed to arbitration plaintiffs' federal securities' claim and declined to retain jurisdiction over plaintiffs' remaining state law claims. The plaintiffs appealed, but then withdrew the appeal. Although the state law claims were dismissed without prejudice for re-filing in state court, no such state claims were filed. Nor have the plaintiffs proceeded with the arbitration of their alleged Federal claims. The Brooklyn Lender's foreclosure case, however, proceeds.

14. Besides the misrepresentations alleged as an event of default, Brooklyn Lender also declared each loan in default for various alleged open water and sewer bills and HPD and DOB violations, as an additional basis for 24% interest.

25. The Acceleration Letters state that each of the Debtors are in default primarily based on purported allegations in the Federal Action. The Acceleration Letters state:

> Please be advised that Lender has been made aware of the certain lawsuit against Guarantor captioned Jacob Schonberg, et al v. Yechezkel Strulovitch a/k/a Chaskiel Strulovitch, et al., Case No. 17-cv-02161, currently pending in the United States District Court for the Eastern District of New York, wherein it is alleged, among other things, that [Mr. Stulovitch] misrepresented that he is the sole member of certain limited liability companies in connection with the making

of certain mortgage loans. Pursuant to Paragraph 18(g) of the Agreement, the Debt "will become due at the option of the Mortgagee upon any one or more of the following events: (g) if any representation or warranty of the Mortgagor or of any person (a "guarantor") guaranteeing payment of the Debt or any portion thereof or the performance by the Mortgagor of any of the terms of the notes, the Mortgage or this Agreement, made herein or in any such guaranty or in any certificate, report, financial statement or other instrument furnished in connection with the making of the notes, the Mortgage, this Agreement or any such guaranty, shall prove false or misleading in any material respect.

Such misrepresentation constitutes any Event of Default under the Loan Documents. Moreover, pursuant to the terms of the Note, "any acts or omissions constituting fraud or misrepresentation by the Maker in connection with applying for the loan secured by the Agreement or in supplying information or documentation to the Payee subsequent to the date hereof" shall give Lender rights of full recourse against Borrower and Guarantor for any deficiency remaining after a foreclosure sale of the Property.

26.     It bears repeating that as to the Debtor Relief Defendants there were no allegations nor any affidavits concerning membership interests. As to those fourteen Debtors, the Federal Action Complaint contradicts the Acceleration Letters' allegation that there are undisclosed members.

27.     As to the four Debtor LLC Defendants, at one point in time, the Federal Action LLC Plaintiffs had an indirect membership interest in those entities under certain operating agreements produced by the Debtor LLC Defendants in support of their dismissal motion. The LLC Plaintiffs actually argued that those operating Agreements were not effective. The LLC plaintiffs argued that the operating agreements the Debtor LLC Defendants submitted to Signature identifying Chaskiel Strulovitz as sole member controlled.

28.     The operating agreements the Debtor LLC Defendants produced in the Federal Action evidenced the profit sharing and arbitration provisions among the parties. When the Debtors sought financing from Signature, the Federal Action Plaintiffs stated that they did

not want to be identified.  Thus, the Debtor LLC Defendants made Chaskiel Strulovitch sole member but continued the profit-sharing arrangement and arbitration provisions.  In the Federal Action, therefore, the Debtors insisted upon compliance with the arbitration provisions of the agreements they produced.

29.    In addition to the Mortgagee's mistaken assumption that the Debtors had misrepresented their ownership, the default letters also declared an event of default premised on other non-Debtor operating agreements for entities Mr. Strulovitch listed as wholly owned on his personal financial statements submitted to Signature.

30.    Paragraph 18(g) of the Mortgage requires that an event of default occurs only "if any representation or warranty …. shall prove false or misleading in any material respect."  According to Black's Law Dictionary, the word "prove" is defined as "to establish a fact or hypothesis as true by satisfactory and sufficient evidence."  Based on the language of the Mortgage, therefore, **before** declaring a default on that basis, the Debtors assert, there must have been proof to establish that the representation claimed by Lender was *false or misleading* and *material.*

31.    The Federal Action was dismissed.  Nothing has been adjudicated because the Plaintiffs did not submit to arbitration against the LLC Defendants, nor did they sue in State Court as the District Court permitted for the Relief Defendants.

32.    Therefore, the Debtors assert, the existence of the Federal Action alone was and is insufficient to "prove" that any representation was false or misleading in any material respect prior to declaring an event of default based on Paragraph 18(g).  In summary, the Debtors contend that the Acceleration Letters did not even allege a present default or constitute a valid

13

notice of a present default. Instead, the letters simply notified the Debtors that IF the allegations in the Federal Complaint were determined to be true, it would constitute a potential FUTURE event of default. Accordingly, the Debtors assert, the Mortgagee's demand for 24% interest dating back to the origination of the loans on the basis of these alleged misrepresentations is at best premature.

33.    The Debtors assert Brooklyn Lender has failed further to sufficiently allege or establish that any such claimed misrepresentation was "material" as also required under Paragraph 18(g), particularly with respect to Mr. Strulovitch's financial statement. The courts have defined a "material misrepresentation" in this context to be one that is a "basic credit consideration" that has a "direct relationship to [the borrower's] ability to repay the loan." *Sunrise Federal Savings Bank v. Verex Assurance, Inc.*, 204 A.D.2d 617 (2d Dep't 1994).

34.    The Loans were originated by Signature Bank.  There is no evidence that Signature required that Strulowitz have a minimum net worth as part of its basic credit consideration, or that the allegations in the Federal Action, if proven, would drop Strulowitz' net worth below such minimum net worth.

35.    The Debtors assert that Brooklyn Lender's allegation of an event of default on the basis of allegedly false statements in his personal financial statement fails for the additional reason that Mr. Strulovitch is not an entity or person covered by the relevant mortgage provision. The Mortgage states, in pertinent part, as follows:

> The Debt will become due at the option of the Mortgagee upon any one or more of the following events:

> (g) if any representation or warranty of the Mortgagor or of any person (a "guarantor") **guaranteeing payment of the Debt** or any portion thereof or the

performance by the Mortgagor of any of the terms of the notes, the Mortgage or this Agreement, made herein or in any such guaranty or in any certificate, report, financial statement or other instrument furnished in connection with the making of the notes, the Mortgage, this Agreement or any such guaranty, shall **prove false or misleading in any material respect**;" (emphasis added).

36.    The plain reading of this section demonstrates that if a "representation or warranty" by any of three categories of person or entity proves false in a material respect then such misrepresentation shall constitute an event of default. The three categories of person or entity are the following: (i) the Mortgagor; (ii) any person (a "guarantor") guaranteeing payment of the Debt or any portion thereof; or (iii) any person (a "guarantor") guaranteeing . . . the performance by the Mortgagor of any of the terms of the notes, the Mortgage or this Agreement, made therein.

37.    Mr. Strulovitch is not a mortgagor. Mr. Strulovitch did not guaranty repayment of the debt.  Signature did not require Mr. Strulovitch to execute a "personal" guaranty.  The Non-Recourse Indemnity/Carve-Outs only guaranteed "losses[es], cost[s] or expense[s]" resulting from specific conditions at the mortgaged premises. Accordingly, Mr. Strulovitch did not guarantee any performance by the Debtors.

38.    Here, based on the plain language of the Mortgage, any alleged misrepresentation by Mr. Strulovitch, even if true, would not constitute an event of default under the loan documents because he is not a guarantor. Accordingly, the Debtors dispute the allegation of default by Brooklyn Lender on multiple grounds.

39.    As additional events of default, Brooklyn Lender alleged the Debtors' failure to promptly cure property violations issued by the Environmental Control Board of the City of New York ("ECB") and the New York City Department of Housing Preservation and

15

Development ("HPD"), or pay two water and sewer bills. Separate and apart from whether the cure or payment was not "prompt," the Debtors contend it is clear that (i) there is no "cure" required of the ECB violation, (ii) the ECB violation has been paid, (iii) all of the HPD violations have been dismissed, and (iv) the water bills have been paid. Furthermore, the alleged monetary penalty from the violations issued by ECB are, the Debtors contend, trivial relative to the loan balances.  Similarly, the alleged "unpaid taxes" claimed by Plaintiff as an event of default were small Property Registration Fees. The fees were paid.  The amounts in dispute, the Debtors contend, are trivial, and moreover, all have been "cured" or resolved, as have the allegedly unpaid water and sewer bills.

40.    The Debtors consistently and timely made all payments of the monthly principal and interest owned not only to Signature but also to Brooklyn Lender. Because monthly principal and interest payments have been consistently paid, the Debtors contend Brooklyn Lender has not and cannot show that any direct relationship existed between any trivial defaults or alleged misrepresentation and the Debtors' ability to repay their loans.  Brooklyn Lender was not prejudiced.  Its security was not impaired.

41.    The Debtors contend that against this background, strict enforcement would irreparably injure the Debtors and undermine all equitable considerations.  In 1977, the Court of Appeals adopted the dissenting opinion of Chief Judge Cardozo and applied "the general equitable principle that 'the gravity of the fault must be compared with the gravity of the hardship.'" *J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.*, 42 N.Y.2d 392 (1977).  Evolving case law has stepped away from the decision in *Graf v. Hope Building Corp.*, 254 N.Y. 1 (1930), which held "acceleration clauses in mortgages will be strictly enforced irrespective of the

circumstances and nature of default." *Karas*, 91 A.D.2d at 812, citing to *Blomgren*, 18 A.D.2d 979; 100 Eighth Ave. Corp., 4 A.D.2d 754; More Realty Corp., 232 A.D. 705; Scelza v. Ryba, 169 N.Y.S.2d 462 (Sup. Ct. 1957); *Domus Realty Corp. v. 3440 Realty Co.*, 40 N.Y.S.2d 69 (Sup. Ct. 1943), aff'd, 266 A.D. 725 (1st Dep't 1943). Indeed, the dissenting opinion of Chief Judge Cardozo, which stated that the equitable remedy of foreclosure may be denied based upon the circumstances and nature of default, has been embraced instead. *See J.N.A. Realty Corp.*, 42 N.Y.2d at 392.

42.    Here, the Debtors contend that to the extent, if any, defaults exist, the nature and circumstances of such defaults are such that they should not be enforced by a court of equity.

43.    Indeed, Chief Judge Cardozo stated that strict enforcement is unconscionable where, among other things, the default "is limited to a trifling balance." *Graf*, 254 N.Y. at 12 (Cardozo, J., dissenting). In *J.N.A. Realty Corp.*, the Court held that "[t]here would be a forfeiture and the gravity of the loss is certainly out of all proportion to the gravity of the fault," warranting equitable relief if there is no prejudice. 42 N.Y.2d at 399-40; accord, *4 B's Realty* 818 F.Supp.2d at 659 *(quoting* N.Y.C.P.L.R. § 500l(a)) (citing *Danielowich v. PEL Dev.*, 292 A.D.2d 414, 415, 739 N.Y.S.2d 408, 409 (2d Dep't 2002)); *See generally Blomgren v. Tinton 763 Corp.*, 18 A.D.2d 979, 980 (1st Dep't 1963); *W.F.M. Restaurant, Inc. v. Austern*, 35 N.Y.2d 610 (1974); *In Rockaway Park Series Corp. v. Hollis Automotive Corp.*, 135 N.Y.S.2d 588 (Sup. Ct. 1954); *Caspert v. Anderson Apartments*, 94 N.Y.S.2d 521 (Sup. Ct. 1949); *European American Bank v. Harper*, 163 A.D.2d 458 (2d Dep't 1990); *ING Real Estate* Finance

*(USA) LLC v. Park Ave. Hotel Acquisition LLC*, 26 Misc.3d 1226(A) (Sup. Ct. 2010); *Fifty States Management Corp. v. Pioneer Auto Parks, Inc.*, 46 N.Y.2d 573 (1979)

44.    Laches is a defense as well.  In *Caspert*, a foreclosure action brought on the basis of alleged municipal building violations, the mortgagee was not entitled to foreclosure where it failed to ***promptly*** assert its rights. 94 N.Y.S.2d at 521. "Equity aids the vigilant, and he who seeks the aid of equity must show that he has used reasonable diligence in asserting his rights and demanding their protection." *Id.* at 526.  Where, as here, the basis for foreclosure is building violations that were issued months or years prior to assertion of the event of default, equity does not permit foreclosure. *See also Karas v. Wasserman*, 91 A.D.2d 812 (3d Dep't 1982) (it is a defense to foreclosure that the mortgagee failed to complain about a continuing default for five years; foreclosure was not warranted because mortgagor was entitled to rely on the absence of complaints by mortgagee); *More Realty Corp. v. Mootchnick*, 232 A.D. 705 (2d Dep't 1931) (mortgagee may be estopped from foreclosure where mortgagee did not object to mortgagor's conduct in breach of the mortgage agreement over years of dealings); *Amsterdam Sav. Bank v. City View Management Corp.*, 45 N.Y.2d 854 (1978) (three-month delay in taking action together with detriment to other parties "require[d] application of the doctrine of laches"); *Deutsche Bank Nat. Trust Co. v. Joseph*, 117 A.D.3d 982 (2d Dep't 2014) (citations omitted).

45.    In summary, the Debtors will contend at the Confirmation Hearing that default interest is disproportionate to the allegations of default, and, under such circumstances, equity requires relief to the borrower and Brooklyn Lender's claim to default interest should be disallowed.

46.     The Debtors will contend that the portion of Brooklyn Lender's Claim for "Legal Fees" of $1,337,510 should be disallowed in its entirety. At the outset, no documentation (such as attorney invoices, billing statements, time records, attorney affidavits, and the like supporting the fees and costs allegedly incurred) was submitted in support of any attorneys' fees or collection costs claimed.  As a result, it is impossible for the Debtor or the Court to properly consider the purported validity of this portion of the Claim. Absent sufficient evidentiary support, the claim for "Legal Fees" has no prima facie merit.

47.     In addition, the mortgages provide for the recovery of "reasonable" attorneys' fees in paragraph 18(j), but only to "protect the Mortgagee's interest in the Mortgaged Property."  Under paragraph 19, attorneys' fees are recoverable "If the Mortgagor fails to make any payment or to do any act as herein provided. . ."  Since debt service was paid and all acts performed, even if the Mortgagee has evidentiary support for attorneys' fees, the Debtors will argue that the Mortgages do not permit legal fees for collection action arising from a misrepresentation, particularly since the alleged misrepresentations were not made by "Mortgagor."

48.     In any event, Brooklyn Lender's pre-Petition Date efforts to enforce the Consolidated Note and the Consolidated Mortgage consisted entirely of issuing the Acceleration Notices and, shortly thereafter, commencing the foreclosure actions in which the only meaningful matter undertaken was the Receiver litigation and the filing of the Summary Judgment Motion.  In that context, the Debtors contend that $1.3 million for fees appears to be unreasonably high.

49.     Even if the $1.3 million of fees were reasonable and allowable under the mortgages, the foreclosure action itself was improper, the Debtors contend, and thus the legal fees incurred by Lender should be denied in their entirety, because, as noted above, the Mortgagee incurred those fees prosecuting a bad faith foreclosure action in breach of the Loan Agreements.

50.     In that regard, a failure to properly accelerate is a complete defense to a mortgage foreclosure action.  *See,* 1 Bergman, *New York Mortgage Foreclosures,* § 4.05[1][b].  Where there is no basis for the acceleration of a mortgage obligation, an acceleration notice sent by the lender is a nullity and constitutes a material breach of the loan agreement.  *Household Fin. Realty Corp. of NY v Dunlap,* 15 Misc 3d 659, 665 (Sup Ct, N.Y. County 2007); *see also* Bergman, B., *Strict Acceleration in New York Mortgage Foreclosure-Has the Doctrine Eroded?,* Pace Law Review, 480 (June 1988).

51.     According to the Debtors, since there was no evidence of material default, by wrongfully accelerating the debt, the Mortgagee materially breached.  A breach is material if it goes to the "root" of the agreement, i.e., it defeats the object of the parties and deprives the injured party of the benefit it justifiably expected. *Frank Felix Assoc. v Austin Drugs,* Docket No. 96-7604, 1997 U.S. App. LEXIS 19795 at * 14 (2d Cir. Apr. 10, 1997); *Times Mirror Mags., Inc. v Field & Stream Licenses Co.,* 103 F. Supp. 2d 711, 731 (S.D.N.Y. 2000)).  Not surprisingly, courts have found that the improper acceleration of a mortgage loan constitutes a material breach of the loan agreement. *See Seidman v Indus. Recycling Props., Inc.,* 106 A.D.3d 983, 984-985 (2nd Dep't 2013)(the improper acceleration of a mortgage loan and commencement of a foreclosure action constitutes a breach of the loan agreement); *see also*

20

*Mayo v Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 26383 at * 8 (E.D Va. Mar. 4, 2015) (a deficient acceleration notice may constitute a material breach); *Johnson Fed. Home Loan Mortg. Corp.*, No. 4:13cv163, 2013 U.S. Dist. Lexis 97713 at * 9 (W.D. Va. 2013) (same).

52.     In addition, the Debtors will argue that the actions taken by the Lender were in breach of its implied obligation of good faith and fair dealing under the Loan Agreement. New York law recognizes that UCC §1-203 imposes an obligation of good faith on a secured party's enforcement of its security agreement. *See Tudisco v Duerr*, 89 A.D.3d 1372, 1376 (4th Dep't 2011); *Stillwater Liquidating LLC v Partner Reins. Co., Ltd.*, Index No. 652451/15, 2017 N.Y. Slip. Op 30257[U] at * 20 (Sup. Ct, N.Y. Cty. 2017).

53.     In summary, the Debtors will argue that the Mortgagee improperly noticed alleged defaults asserting ownership misrepresentations and trivial other defaults, and utilized those asserted defaults as the basis to accelerate the amounts due under the loan, commence a foreclosure action and seek the appointment of a receiver. The Mortgagee's breach was material since it goes to the root of the contract and was intended to deprive the Debtors of the right to its use and enjoyment of their Properties by forcing sales in a foreclosure proceeding.

54.     When one party commits a material breach of a contract, the other party to the contract is relieved, or excused, from further performance under the contract. *Grace v Nappa*, 46 N.Y.2d 560, 567 (1979). Having repudiated and materially breached its contract with Debtors, the Mortgagee could not claim relief either in the form of foreclosure or damages. *Net2Globe Intl. v Time Warner Telecom of NY*, 273 F Supp. 2d 436, 457 (S.D.N.Y 2003); *see also Daniel Perla Assocs. LP v. ZLD Realty LLC*, 277 A.D.2d 115, 115 (1st Dep't 2000)(upholding lower court's dismissal of the foreclosure complaint and reducing the principal

of the mortgage based upon plaintiff's bad faith breach). The foreclosure action was improper, as it was based on an improper acceleration.

55.    The Debtors contend that Brooklyn Lender's claimed $873,158 "Late Fee" must also be disallowed in its entirety.  Paragraph 20 of the Mortgages provide a late fee on an "Installment to defray the expense incurred by the Mortgagee in handling and processing such delinquent payment and such amount."  Installment refers to monthly payments, which were paid timely.  Presumably, the Mortgagee deems the improperly accelerated amounts due as an installment and has imposed late fees on such amounts.

56.    It is well-settled that, under New York law, "'[i]n the absence of a provision in the mortgage to the contrary, the collection of late fees after a mortgage note has been accelerated is impermissible.'" *Home Loan Inv. Bank v. Goodness & Mercy, Inc.*, No. 10-CV-4677 (ADS) (ETB), 2012 U.S. Dist. LEXIS 46256 at *17 (E.D.N.Y. March 30, 2012) (*quoting Carreras v. Weinreb*, 33 A.D.3d 953, 955 (2d Dep't 2006)); *see also Pereira v. Cogan*, 294 B.R. 449, 515 (S.D.N.Y. 2003) ("The Trustee is only entitled to a late charge up until the time that the notes at issue were accelerated ... ") (*citing Centerbank v. D 'Assaro*, 158 Misc. 2d 92 (N.Y. Sup. Ct., Suffolk Cnty. 1993)). The basis for this general rule is that it is "inconsistent to allow a lending institution to accelerate a note, thereby denying the debtor the right under the mortgage note to make monthly installments and to continue to insist on its own right under the note to impose monthly late charges." *Id.* (*citing Green Point Sav. Bank v. Varana*, 236 A.D.2d 443, 443 (2d Dep't 1997) (*quoting Centerbank*, 158 Misc. 2d at 95); *LaSalle Bank Nat'l Ass 'n v. Shepherd Mall Partners, LLC*, 2006 OK CIV APP 91, 140 P.3d 559, 562 (Okla. Civ. App. 2005)); *see also Reis v. Decker*, 135 Misc. 2d 741, 742 (Cnty. Ct. of N.Y., Delaware Cnty. 1987)

(by electing to accelerate the mortgage debt and proceeding by foreclosure plaintiff had "elected to seek recovery of the full amount due, rather than to sue only for those installments which are currently due. The purpose of late charges is to compensate a creditor for the expense and inconvenience of collecting installments. Such charges are proper and recoverable in actions to recover installments which are due and unpaid, but are not recoverable in a foreclosure proceeding whereat one seeks to recover a full accelerated principal debt.").  Courts have consistently held further, that a creditor should not receive both default interest and late charges as both are "designed to compensate the lender for the same injury, and awarding both amounts to a double recovery." *In re 785 Partners LLC*, 470 B.R. 126, 137 (Bankr. S.D.N.Y. 2012); *see also In re Vest Assocs.*, 217 B.R. 696, 701 (Bankr. S.D.N.Y. 1998).

57.   15. The In summary, the principal amount due to, as reflected in Signature was and remains about $36,000,000 Bank loan statements, is $37,283,614.25.  Brooklyn Lender now seeks more than $72,000,000 74,515,177, claiming $37,231,563 for default interest, late fees, and legal fees, even though there are no despite, the Debtors assert, the absence of payment defaults.  The Debtors respectfully submit that contrary to Brooklyn Lender's insinuations of Debtor misconduct, Brooklyn lender Lender is the true party with unclean hands.  Brooklyn Lender disagrees, and, unless the foregoing issues are consensually resolved, the Bankruptcy Court will determine them at the Confirmation Hearing to the extent relevant to the Debtors' request for confirmation of the Plan.

16.   On October 13, 2017, Brooklyn Lender commenced foreclosure actions and the appointment of a receiver, based on unproven allegations in the Federal Court lawsuit that was dismissed two weeks later.  This, even though the unproven allegations were not

"material" for purposes of repayment.  Indeed, Sturlowitz' limited non-recourse obligation did not even make him a guarantor of the notes under the Signature loan documents.  In summary, even the misrepresentations alleged would not constitute an event of default under the loan documents.

17.    Similarly, the violations that Brooklyn Lender alleged in its foreclosure complaint by the City of New York Environmental Control Board ("ECB") and Housing Preservation and Development ("HPD") were relatively trivial.  The ECB violations were paid and the HPD violations dismissed.  The alleged monetary penalties totaled $700.00.

18.    Unfortunately, New York law does little to protect a borrower from a bank assigning a loan to a predatory secondary market purchaser seeking to declare a technical default to effectuate a forfeiture or windfall profits.  In the City of New York where minor building violations are common and often time consuming, expensive and difficult to remove, the consequences of a loan assignment to a predator can be devastating for owners and general unsecured creditors. The legal fees alone can cripple a borrower.

**Treatment of Brooklyn Lender**

58.    19. The Debtors filed these cases to obtain a determination that the default notices Acceleration Notices were defective, that the loans were not in default, and/or that any such default defaults were so non-material or remote in time as to be unenforceable in law and equity.  As noted in footnote 2 above, the Debtors would not be the first to defeat Maverick's attempt attempts to capture its prey.  Alternatively, the Debtors seek to effectuate a cure of any default under a Chapter 11 plan pursuant to section 1124(2)(A) incorporating section

~~365(b)(2)(D), which does not require the satisfaction of a penalty rate relating to the failure to perform a nonmonetary obligation.~~ manufacture defaults.

59.    In any event, the Court may disregard a contractual provision calling for high default interest rates when such rates would be inequitable. In *In re P. G. Realty Co.,* 220 B.R. 773 (Bankr. E.D.N.Y. 1998), the Court held that "it possesses the power to modify rights created by state law or private agreement.  Indeed, the Bankruptcy Code itself contains many provisions which specifically modify or abrogate such rights.  The Code is also replete with instances in which Congress has made such a power explicit." *Id.,* 220 B.R. at 780 (citations omitted). *See also In re Marfin Ready Afix Corp.,* 220 B.R. 148, 155-56 (Bankr. E.D.N. Y. 1998) (acknowledging that Courts may take a flexible approach when considering the application of contractual default interest rates); *accord, In re Vest Assocs.,* 217 B.R. 696, 702-703 (S.D.N.Y. 1998); *Cf. In re General Growth Properties, Inc.,* 451 B.R. 323 (Bankr. S.D.N.Y. 2011); *See, In re Northwest Airlines, Corp.,* 2007 WL 3376895, (Bankr. S.D.N.Y. 2007).  Here, 24% interest is punitive and should not be permitted under any circumstances because it bears no reasonable relationship to the Mortgagee's actual damages.

60.    ~~20.~~ The Debtors have obtained ~~exit financing, proof~~Exit Financing, the terms of which ~~is~~are annexed as Exhibit A to the Plan, to pay all creditors the Allowed Amounts their Claims under the Plan, including Brooklyn Lender at the non-default contract rate.

61.    ~~21.~~ In the meantime, the Properties~~,~~' rental income is being used to pay debt service to Brooklyn Lender and to preserve and protect the Properties.

62.   The Plan is based on the Property values set forth on Exhibit C to the Plan. Those values were estimated generally based on the Exit Financing amounts set forth in Exhibit A to the Plan.

## DEBTORS' PLAN OF REORGANIZATION

## CLASSIFICATION AND TREATMENT OF CLAIMS

### Class 1

63.   22. **Classification** – Allowed Secured Claims for New York City real estate taxtaxes and other non-Class 2 Liens.  Annexed to the Plan as Exhibit B is a breakdown of the amount due to Class 1, by Debtor. The Debtors estimate that the aggregate amount due byof all DebtorsClass 1 Claims is approximately $209,866.

64.   23. **Treatment** -- Payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

65.   24. **Voting** – Unimpaired under section 1124 of the Bankruptcy Code and deemed to accept the Plan.

### Class 2

66.   25. **Classification** – Brooklyn Lender LLCAllowed Secured Claims of the Mortgagee.  Annexed to the Plan as Exhibit B is a breakdown of the amount due to Brooklyn Lender LLCestimated Allowed Secured Claims of the Mortgagee, by Debtor.  The Debtors estimate that the amount due byaggregate of all DebtorsClass 2 Claims is $37,625,717.

67.   26. **Treatment** –On the Effective Date, pursuant to section 1124 of the Bankruptcy Code, each Debtor shall cure pre-petitionPetition Date and post-petitionPetition Date defaults, if any, retroactively extend the maturity dates with respect to each Debtor who could not extend due the Mortgagee's acceleration, and then pay in Cash the outstanding amounts due on the date of paymentEffective Date.

68.   27. **Voting** – Unimpaired under section 1124 of the Bankruptcy Code and deemed to accept the Plan..

### Class 3

69.   28. **Classification** –   Allowed Priority Claims under Sectionssections 507(a)(3),(4),(5),(6), and (7) of the Bankruptcy Code.  Annexed to the Plan as Exhibit B is a breakdown of such estimated Allowed Priority Claims, by Debtor.  The Debtors estimate that the aggregate amount due byof all DebtorsClass 3 Claims is approximately $0.

70.   29. **Treatment** – Payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

71.   30. **Voting** -- Unimpaired under section 1124 of the Bankruptcy Code and deemed to accept the Plan..

### Class 4

72.   31. **Classification** – Allowed General Unsecured Claims.  Annexed to the Plan as Exhibit B is a breakdown of estimated Allowed General Unsecured Claims by Debtor. The Debtors estimate that the aggregate amount due byof all DebtorsClass 4 Claims is approximately $4,785,330.

73.   32. **Treatment** – Payment in Cash on the Effective Date, of Allowed

Amount of each such Claim plus interest at the Legal Rate as it accrues from the Petition Date

through the date of payment.  A Claimant may elect to receive Interests in a Post-Confirmation

Debtor instead of Cash payment.  Each Claimant, provided, that each Class 4 Creditor shall be

entitled to elect to take New Owner Interests in the post-confirmationNew Owner succeeding the

Debtor against whomwhich the Claimant holds an Allowed Claim as provided herein in lieu of

Cash payment of its Class 4 Claim.  Annexed to the Plan as Exhibit C is a spreadsheet indicating

the projected percentage membership InterestNew Owner Interests allocated by Debtor per

$1,000 of Allowed Class 4 Claims.  The value of such Interest a Claimantbasis for the pro-rata

calculation of the New Owner Interests that a Class 4 Creditor may elect to receive is

approximately the same as the Claimant'sits Class 4 Claim.  The calculation of the value of the

New Owner Interests to be disbursed is based on the Post-Confirmation Debtoreach New

Owner's net equity in its Property.  The net equity is calculated by subtracting the

Debtorrespective New Owner's Postpost-Confirmation Date mortgage from the Property value.

For example, if a Post-Confirmation DebtorNew Owner owns a $500,000 property encumbered

by a $400,000 Postpost-Confirmation mortgage, such DebtorNew Owner will have net equity of

$100,000 in the Property.  If a Claimant holds a $1,000 AllowedClass 4 Claim, the Claimant

shall be entitled to New Owner Interests in the Debtorsuch New Owner equal to $1,000 of such

net equity, which, in this example would equate to a 1% membership interestInterest

representing 1% of the DebtorNew Owner's $100,000 net equity.  If the dollar amount of Class 4

Claims electing to take New Owner Interests exceeds the dollar amount of the respective New

Owner's net equity, such holders of Class 4 Claims shall be entitled to their Pro-Rata percentage

of the New Owner Interests in such new Owner.   The Debtors believe that Claimants with Class 4 Claims totaling at least $4,331,000 will elect to receive Interests instead of Cash.

74.     Unlike Cash payment, ownership of New Owner Interests involves risks associated with the ownership of an interest in an entity that owns real property.  If a Creditor elects to take Interest in lieu of Cash, the value of such Interests is subject change based on the real estate market, the management of the New Owner, and the management of the New Owner's Property.  Interests may lose some or all of their value based on these and other factors.  In addition, there is no assurance that the Interests can be easily liquidated.

75.     To elect to receive Interests instead of Cash, a Class 4 Claimant must complete the "Unsecured Creditor Election Form" annexed as Exhibit C to the Disclosure Statement and deliver the completed form so as to be received no later than February 19, 2020 at 5:00 p.m. (EST) at the following address:

> Backenroth Frankel & Krinsky, LLP
> 800 Third Avenue
> New York, New York 10022
> Attn:  Mark A. Frankel, Esq.
> (212) 593-1100

76.     33. **Voting** – .Unimpaired under section 1124 of the Bankruptcy Code and deemed to accept the Plan.

## Class 5

77.     34. **Classification** – InterestsAllowed Interest Holders.

78.     35. **Treatment** – On the Effective Date, all Interests will be cancelled and Interest Holders shall be entitled to new interests in the New Owners (formed as a condition to the Exit Financing)New Owner Interests under the same terms as their exiting Interests in the

Debtors, but subject to dilution Pro Rata, by the New Owner Interests distributed hereunder to (a) holders of Class 4 Claims that elect to receive New Owner Interests in the respective New Owners instead of Cash payment and (b) holders of Class 6 Claims.  If the distribution of New Owner Interests to holders of Class 4 Claims and or Class 6 Claims exceeds a New Owner's net equity in its Property, existing Class 5 Interest Holders of the predecessor Debtor will be entitled to no Interests in such New Owner.

79.      36.  **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Class 6**

80.      **Classification** – Allowed Claims based on facts as generally alleged in the Federal Action in Proofs of Claim set forth in Exhibit E to the Plan.

81.      **Treatment** – Class 6 Claims shall be subordinated pursuant to section 510(b) of the Bankruptcy Code to the same priority as Class 5 Interests.  On the Effective Date, all Class 6 Claims shall be entitled to New Owner Interests in the respective New Owners based on the Allowed Amount of such Class 6 Claim.  The value of the Interests that a Federal Action Claimant may elect to receive is based on the Claimant's Claim.  The calculation of the value of the New Owner Interests to be distributed is based on each New Owner's net equity in its Property.  The net equity is calculated by subtracting the respective Post Confirmation New Owner's Post-Confirmation mortgage from the Property value.  The New Owner's net equity must then be reduced further by New Owner Interests distributed to Class 4 Creditors who elect Interests in lieu of Cash.  For example, if a Post-Confirmation New Owner owns a $500,000 property encumbered by a $400,000 Post-Confirmation mortgage, such Post Confirmation New Owner will have net equity of $100,000 in the Property.  That net equity will then be reduced by

30

the Interests distributed to Class 4 Claimants that elect to take Interests in lieu of Cash.  If, in this example, Class 4 Claimants with Claims totaling $60,000 elect to take Interests, $40,000 of New Owner Interests will be available to Class 6 Claimants.  If a Class 6 Claimant holds a $1,000 Allowed Class 6 Claim, the Claimant shall be entitled to Interests in the Post Confirmation New Owner equal to $1,000 of such net equity, which, in this example would equate to a 1% membership interest representing 1% of the Post Confirmation New Owner's net equity.  But if in this example the Allowed dollar amount of Class 6 Claims entitled to take Interests exceeds the $40,000 dollar amount of the New Owner's net equity after distribution of Interests to electing Class 4 Claimants, such Class 6 Claimants shall be entitled to their pro-rata percentage of the remaining $40,000 of New Owner Interests.

82.    **Voting –** Impaired and entitled to vote to accept or reject the Plan.

## UNCLASSIFIED PRIORITY TAX CLAIMS

83.    37. Annexed to the Plan as Exhibit B is breakdown of Priority tax Claims under ~~Sections~~ Section 507(a)(8) of the Bankruptcy Code by Debtor.  The Debtors estimate that the amount due by all Debtors ~~is approximately~~ in respect of such claims total approximately $0. The treatment of such Claims, if any, shall be payment in Cash on the Effective Date, of the Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

84.    38. Allowed Administrative Expense Claims, including professional fees, shall be paid in full in Cash on the later of the Effective Date~~, or~~ and the date such Administrative Expense Claim becomes Allowed or as soon as practicable thereafter, except to

31

the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment; provided, however, that Allowed Administrative Expense Claims representing obligations incurred in the ordinary course of business or under Executory Contracts assumed by each Debtorthe Debtors shall be paid in full or performed by such Debtorthe Debtors in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.

Annexed to the Plan as Exhibit B is breakdown of known unpaid Administrative Expense Claims by Debtor. The Debtors estimate that the amount due through the entry of a final decree in these cases is $255,000,this case, Allowed Administrative Expenses will total approximately $15,000 per Debtor plus any litigation costs. Professionallegal fees for a total of at least $255,000. $350,000 shall be escrowed for payment when Allowed, and then paid pursuant to order ofin the Bankruptcy Courtamounts Allowed.

85. 39. Any outstanding U.S. Trustee fees and any statutory interest thereon shall be paid in full in Cash on the Effective Date. Thereafter, United States Trustee fees and any statutory interest thereon shall be paid until entry of final decree or until Bankruptcy Case is converted or dismissed. The Debtors shall file quarterly post-confirmationConfirmation operating reports.

### MEANS FOR IMPLEMENTATION

86.    40. **Source of Funds** – Effective Date payments under the Plan will be paid from the Exit Financing, the terms of which are annexed to the Plan as Exhibit A.  Under the Exit Financing each Debtor must transfer its assets including its Property to the New Owners, which shall assume responsibility for repayment of the Exit Financing.  The transfer of each Property to the New Owners under the Plan shall be free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the Exit Financing in the same amount and order of priority, and subject to the same defenses as existed before the Effective Date, and to be disbursed under the Plan, provided, however, that the Mortgagee shall assign its mortgages to the holder of the Exit Financing in connection with the transfer of the Properties under the Plan.  The financing is short term hard money bridge financing which the Debtors intend to replace with conventional financing.  To the extent that the Debtors' net operating income is insufficient to pay debt service, the interest reserve under the Exit Financing will be applied.  The Debtors shall have no separate responsibility for Post-Confirmation debt service.  The New Owners are responsible for repayment of the Exit Financing.

87.    The New Owners shall be formed as New York or Delaware limited liability companies with operating agreements that comply with the terms of the Exit Financing.  All New Owner Interests to be distributed under the Plan shall be on the principle of "one share, one vote," with no proportionate voting, class voting or the like, and otherwise in conformance with New York law.  As a condition to receipt of New Owner Interests, each potential Interest holder shall comply with such disclosure as may be required as a condition to the Exit Financing.

88.    41. **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and ~~properties~~Properties of the Estate of each Debtor shall vest in such Debtor/New Owner free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

89.    42. **Execution of Documents** -- Each Debtor/New Owner shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, mortgage assignment, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

90.    43. **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

91.    44. **Preservation of Claims** -- All rights pursuant to ~~Sections~~sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to ~~Section~~section 547 of the Bankruptcy Code, all fraudulent transfer ~~claim~~claims pursuant to ~~Section~~sections 544 and 548 of the Bankruptcy Code, and all claims relating to post-~~petition~~Petition Date transactions under ~~Section~~section 549 of the Bankruptcy Code shall be preserved for the benefit of each Debtor's estate, provided, however, that such Debtor shall have sole authority for prosecuting

34

any such claims.  Because all creditors are being paid in full under the Plan, the Debtors do not anticipate preference or fraudulent claims.  The Debtors' rights to assert claims, including without limitation, tort, contract and lender liability claims against Brooklyn Lender are fully preserved.

92.    45. **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the transfer of each Property to the New Owners and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated inunder the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment.

93.    46. **Release of Liens** – Except as otherwise provided for in the Plan, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the subject Debtor/New Owner any and all Collateralproperty of the Estate that secures or purportedly secures such Claim, as pertains to such Property or such Lien shall automatically,

and without further action by such Debtor/New Owner be deemed released, and (y) execute such documents and instruments as such Debtor/New Owner requests to evidence such Claim holder's release of such property or Lien.

## LIQUIDATION ANALYSIS

94.    47. In a liquidation under Chapter 7 of the Bankruptcy Code, each Debtor's assets would be sold and the sale proceeds distributed to creditors in their order of priority.  The Debtors believe that the Plan provides at least an equivalent return for each Debtor's estate as could be achieved in a liquidation.  As set forth on Exhibit B hereto, each Debtor projects that in a Chapter 7 liquidation, the return to such Debtor's estateEstate would be reduced by an additional layer of administration legal expenses and commissions, which the Debtors estimates would total at least 15% of the sale proceeds.

95.

## LITIGATION ANALYSIS

96.    48. The Debtors are aware of no litigation with third parties, except (a) the Mortgagee's foreclosure which will be moot upon payment under the Plan and, (b) motion to reopen a dismissed Federal Court action interposed by certain alleged Interest Holders, and (c) in the D & W Real Estate Spring LLC case, a contract dispute and personal injury lawsuit.  Since the Plan leaves all creditors unimpaired, the Debtors have no avoidance actions to pursue.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

97.    49. Each Debtor shall be disbursing agent under its Plan without a bond. The Debtors reserve the right to file objections to Claims in the event grounds exist to object to particular Claims, for a period of 60 days after the Effective Date; or in the case of a Claim based on the rejection of an Executory Contract, 60 days after such proof of Claim is filed.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtors shall maintain a Disputed Claim Reserve for the holders of Disputed Claims as of such date in a sum not less than the amount required to pay each such Disputed Claim under the Plan if such Claim was Allowed in full.  To the extent that a Disputed Claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the Disputed Claim Reserve and paid to the holder of such Allowed Claim.  After all the amounts of all Disputed Claims have been fixed, the balance of the Disputed Claim Reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

98. 50. Tenant leases shall be deemed assumed under the Plan and assigned to the New Owners under sections 365 and 1123 of the Bankruptcy Code. Except for any other Executory Contracts that a Debtor assumes before the Confirmation Date, all other Executory Contracts shall be rejected under the Plan on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code. In the event of a rejection which results in damages, a proof of Claim for such damages must be filed by the non-Debtor party with the Court on or before sixty (60) days after the Effective Date. All Allowed Claims arising from the rejection of any Executory Contract shall be treated as UnsecuredClass 4 Claims, provided, however, that such Claimants shall not be entitled to elect to take New Owner Interests in lieu of Cash payment. Any Claim arising from the rejection of any Executory Contract not filed with the Court within the time period provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## MANAGEMENT OF THE DEBTORS

99. 51. Each Debtor is managed by David Goldwasser, as authorized signatory of GC Realty Advisors, LLC, as Vice President. Post-confirmation management shall remain unchanged.

## TAX CONSEQUENCES

100. 52. The Debtors do not believe that there will be any negative tax consequences to the Debtors or to Creditors under the Plan. To the extent that a creditor is not paid in full under the Plan, such creditor may be entitled to a bad debt deduction. To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

101. 53. THE DEBTORS DO NOT PURPORT, THROUGH THIS
DISCLOSURE STATEMENT, TO ADVISE CREDITORS OR INTEREST HOLDERS
REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS
AND INTEREST HOLDERS UNDER THE PLAN.  CREDITORS AND INTEREST
HOLDERS SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX
CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.

102.

## **VOTING PROCEDURES AND REQUIREMENTS**

103.    54. Since all creditor classes are ~~unimpaired~~Unimpaired, there will be no

voting on the Plan by Creditors except holders of Class 6 Claims which are deemed to be

Interests in the Allowed Amount of their Claims.  Interest Holders are impaired and are entitled

to vote to accept or reject the Plan.  These cases have not been substantively consolidated.  Each

Interest Holder may vote to accept the Plan with respect to each Debtor in which it holds an

Interest.

104.    55. A ballot for voting to accept or reject the Plan is enclosed with this

Disclosure Statement.  Interest Holders must specify on the ballot the Debtor in which Interests

are held.  Each Interest Holder is entitled to execute the ballot, and return it to the undersigned to

be considered for voting purposes with respect to such Debtor.  The Bankruptcy Court has

directed that to be counted for voting purposes, ballots for the acceptance or rejection of the Plan

must be received no later than ~~February 19,~~February 19, ~~2019~~2020 at 5:00 p.m.

(EST) (the "Voting Deadline") at the following address:

> Backenroth Frankel & Krinsky, LLP
> 800 Third Avenue
> New York, New York 10022
> Attn:  Mark A. Frankel, Esq.

105.    56. Each Interest Holder impaired under the Plan is entitled to vote, if

either (i) its Interest has been scheduled by the Debtor, or (ii) it has filed a proof of Claim on

account of its Interest on or before the last date set by the Bankruptcy Court for such filings.

106.   57. Class 5 and Class 6 Interest Holders are impaired under the Plan and are eligible, subject to the limitations set forth above, to vote to accept or reject the Plan with respect to each Debtor in which it holds an Interest.

107.   58. Any Interest as to which an objection has been filed (and such objection is still pending) is not entitled to vote, pursuant to Section 1126(a) of the Bankruptcy Code, unless the Bankruptcy Court temporarily allows the interest, pursuant to Bankruptcy Rule 3018 for the purpose of accepting or rejecting the Plan, upon motion by an Interest Holder subject to an objection.  Such motion must be heard and determined by the Bankruptcy Court prior to the voting deadline in order for any such Interest Holder's vote to be counted.

108.   59. An Interest Holder's vote may be disregarded pursuant to Section 1126(e) of the Bankruptcy Code if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

109.   60. Section 1126(d) of the Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such interests.

**CRAMDOWN**

110.   61. In the event that an impaired class of Interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."

111.   62. A plan is fair and equitable with respect to a nonaccepting class of Interests in two instances.  First, a plan is fair and equitable with respect to a nonaccepting class

41

of Interests if the plan provides that each Interest Holder will receive or retain property of a value, as of the effective date of the plan, equal to the greatest of: (1) the allowed amount of any fixed liquidation preference to which the interest holder is entitled, (2) any fixed redemption price to which the interest holder is entitled or (3) the value of such interest. Second, a plan is fair and equitable with respect to a nonaccepting class of interests if the plan provides that the holder of any interest that is junior to the interests of such class will not receive or retain any property under the plan.

112.    63. In the event one that Class 5 or more classes Class 6 rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Interests that Class.

## CONFIRMATION OF THE PLAN

113. 64. Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

114. 65. By order of the Bankruptcy Court dated _____, 2019, the Confirmation Hearing, (as subsequently adjourned) has been scheduled for _____ February 26, 20192020, at ___ 10:00 a.m., in the Honorable Robert D. Drain's Courtroom, United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing.  Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following on or before _____ February 19, 20192020 at 5:00 p.m.:  Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York  10022, Attn:  Mark A. Frankel, Esq.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

115. 66. At the Confirmation Hearing, the Bankruptcy Court will determine with respect to each Debtor whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an order confirming the Plan.  For each Debtor, the applicable requirements are as follows:  (a)  The Plan complies with the applicable provisions of the Bankruptcy Code, (b) the Debtor has complied with the applicable provisions of the Bankruptcy Code; (c) the Plan has been proposed in good faith and not by any means forbidden by law, (d)

43

any payment made or promised or by a person issuing securities or acquiring property under the

Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in

connection with the Plan and incident to the Bankruptcy Case, has been disclosed to the

Bankruptcy Court, and any such payment made before the confirmation of the Plan is

reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is

subject to the approval of the Bankruptcy Court as reasonable, (e) the Debtor has disclosed the

identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a

director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a Plan

with the Debtor, or a successor to the Debtor under the Plan, and the appointment to, or

continuance in, such office of such individual, is consistent with the interests of Creditors and

equity security holders and with public policy, and the Debtor has disclosed the identity of any

insider that will be employed or retained by the reorganized Debtor, and the nature of any

compensation for such insider, (f) with respect to each class of impaired Claims, either each

holder of a Claim or interest of such class has accepted the Plan, or will receive or retain under

the Plan on account of such Claim or interest property of a value, as of the Effective Date of the

Plan, an amount that is not less than the amount that such holder would so receive or retain if the

Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code, (g) each class of

Claims or interests has either accepted the Plan or is not impaired under the Plan, (h) except to

the extent that the holder of a particular Claim has agreed to a different treatment of such Claim,

the Plan provides that Administrative Expenses and priority Claims will be paid in full on the

Effective Date, (i) at least one class of impaired Claims has accepted the Plan, determined

without including any acceptance of the Plan by any insider holding a Claim of such class, and

(j) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further

44

financial reorganization of the Debtor or any successors to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan.

116.   67. The Debtors believe that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that each Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

**CONDITIONS TO CONFIRMATION AND OCCURRENCE OF EFFECTIVE DATE**

117.   The Confirmation Order shall be a Final Order and shall provide for the transfer of the Debtors' real property to the respective New Owners free and clear of liens, claims, encumbrances and interests of any kind, other than the Exit Financing.  The Confirmation Order shall be in a form acceptable to the Debtors.  These conditions to confirmation of the Plan and to the occurrence of the Effective Date are for the benefit of the Debtors.  The requirement that a particular condition be satisfied may be waived in whole or part by the Debtors.

## CONCLUSION

The Debtors urge the Debtors' Creditors to support the Plan.

Dated: New York, New York
~~July 31, 2019~~
January 21, 2020

<div style="margin-left: 40%;">

53 STANHOPE LLC ET AL.

Debtors and Debtors in Possession


By:    s/ David Goldwasser, as authorized
signatory of GC Realty Advisors, LLC, as Vice
President

</div>

**BACKENROTH FRANKEL & KRINSKY, LLP**
**Attorneys for Debtors**


By:    <u>s/Mark Frankel</u>
       800 Third Avenue
       New York, New York 10022
       (212) ~~593-110~~<u>593-1100</u>

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re                                                            Chapter 11


      53 STANHOPE LLC, *et al*,[3]                    Case no.  19-23013 (RDD)

                                 Jointly Administered

                         Debtors.

-------------------------------------------------------x


## **AMENDED PLAN OF REORGANIZATION**


Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544


ATTORNEYS FOR THE DEBTORS

---

[3] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:   53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC Holding 1 LLC (0290); D&W Real Estate Spring LLC (4591); Meserole and Lorimer  LLC (8197); 106 Kingston LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155).

**INTRODUCTION**

53 Stanhope LLC, 55 Stanhope LLC;, 119 Rogers LLC, 127 Rogers LLC, 325 Franklin LLC, 618 Lafayette LLC, C & Ysw Llc YSW LLC, Natzliach LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC, APC  Holding 1 LLC, D&W Real Estate Spring LLC, Meserole And Lorimer  LLC, 106 Kingston LLC, Eighteen Homes LLC, 1213 Jefferson LLC, And 167 Hart LLC (each a "Debtor", and collectively, the "Debtors") submit this joint plan of reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code.  UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG EACH DEBTOR AND EACH DEBTOR'S CREDITORS AND INTEREST HOLDERS (AS SUCH TERMS ARE DEFINED BELOW).

**DEFINITIONS**

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.      "Administrative Expense" Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code.

2.      "Administrative Expense Claim" shall mean a Claim for payment of an Administrative Expense.

3.      "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

2

4.      "Allowed Amount" shall mean the amount of a Claim:  (a) to the extent
that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party
in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on a
Debtor's schedules or any amendments thereto but which is not listed therein as disputed,
unliquidated or contingent.

5.      "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of
Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files
an objection or (ii) which is allowed by a Final Order; or (b) which is listed on a Debtor's
schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or
contingent.

6.      "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an
Allowed Claim.

7.      "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent
it is an Allowed Claim.

8.      "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

9.      "Bankruptcy Code" shall mean Title 11 of the United States Code (11.
U.S.C. § 101 et. seq.).

10.      "Bankruptcy Court" shall mean the Court as defined below.

11.      "Bar Date" shall mean August 9, 2019.

12.      "Cash" shall mean all cash and cash equivalents which evidence
immediately available funds in United States dollars.

3

13.    "Claim" shall ~~mean a right to payment as~~have the meaning set forth in §
101(5) of the Bankruptcy Code.

14.    "Claimant" shall mean the holder of a Claim.

15.    "Confirmation Date" shall mean the date of the entry of the Confirmation
Order.

16.    "Confirmation Hearing" shall mean the hearing pursuant to the
Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed
confirmation of the Plan.

17.    "Confirmation Order" shall mean the order of the Court confirming the
Plan.

18.    "Court" shall mean the United States Bankruptcy Court for the
~~SOUTHERN~~Southern District of New York.

19.    "Creditor" shall mean any entity that holds a Claim against a Debtor.

20.    "Debtors" shall mean 53 Stanhope LLC, 55 Stanhope LLC~~;~~, 119 Rogers
LLC, 127 Rogers LLC, 325 Franklin LLC, 618 Lafayette LLC, C & ~~Ysw Llc~~YSW, LLC,
Natzliach LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave
LLC, APC  Holding 1 LLC, D&W Real Estate Spring LLC, Meserole And Lorimer  LLC, 106
Kingston LLC, Eighteen Homes LLC, 1213 Jefferson LLC, And 167 Hart LLC (each a
"Debtor", and collectively, the "Debtors").

21.    "Disputed Claim" shall mean the whole or any portion of any Claim against a Debtor to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

22.    "Disputed Claim Reserve" shall mean Cash to be set aside by the Debtors on the Effective Date in an IOLA account maintained by Debtors' counsel, in an amount equal to the amount that would have been distributed to the holders of Disputed Claims had such Claims been deemed Allowed Claims on the Effective Date, or in such other amount as may be approved by the Bankruptcy Court.

23.    "Effective Date" shall mean the Date upon which the Confirmation Order is a Final Order, or such other date no later than 60 days after the Confirmation Date as may be practicable.

24.    "Estate" shall mean the estate of each Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

25.    "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

26.    "Exit Financing" shall mean that certain financing to be entered into to fund the Plan on the Effective Date substantially on the terms described in Exhibit A to the Plan.

27.    "Federal Action" shall mean the certain dismissed lawsuit captioned Jacob Schonberg, et al v. Yechezkel Strulovitch a/k/a Chaskiel Strulovitch, et al., Case No. 17-cv-02161, filed in the United States District Court for the Eastern District of New York.

5

28.    26. "Final Order" shall mean an order of a court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

29.    27. "Impaired" shall mean not Unimpaired.

30.    28. "Interest" shall mean an existing ownership interest in a Debtor.

31.    29. "Interest Holder" shall mean a holder and owner of an existing Interest in a Debtor.

32.    30. "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

33.    31. "Lien" shall mean a valid and enforceable charge against or interest in property to secure payment of a debt or performance of an obligation.

34.    32. "Mortgagee" shall mean Brooklyn Lender LLC.

33.    "New Owners" shall mean [                                        ].

35.    "New Owner" shall mean, with respect to each Debtor, a newly created special purpose entity to whom such Debtor's real property will be transferred on the Effective Date as a condition to the Exit Financing.

36.    "New Owner Interests" shall mean the equity Interests in the New Owner.

37.    34. "Petition Date" shall mean May 20, 2019.

38.    35. "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

6

39.    "Plaintiffs" shall mean the Federal Action plaintiffs.

40.    36. "Properties" and each "Property" shall mean the real properties itemized on Exhibit D to the Plan.

41.    37. "Secured Claim" shall mean a Claim secured by a Lien on property included within a Debtor's Estate, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent provided in Section 506 of the Bankruptcy Code.

42.    38. "Secured Creditor" shall mean the owner or holder of a Secured Claim.

43.    39. "Unimpaired" shall mean not impaired under section 1124 of the Bankruptcy Code.

44.    40. "Unsecured Claim" shall mean a Claim for which the Claimant doesthat is not hold (a) a valid, perfected and enforceable Lien, or (b) a right to setoff to secure the payment of sucha Secured Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include Administrative Expense Claims.

45.    41. "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION, TREATMENT AND VOTING

### Class 1

46.    1. **Classification** – Allowed Secured Claims for New York City real estate taxtaxes and other non-Class 2 Liens.  Annexed to the Plan as Exhibit B is a breakdown of the

amount due to Class 1, by Debtor. The Debtors estimate ~~that~~ the aggregate amount ~~due by~~of all ~~Debtors~~Class 1 Claims is approximately $209,866.

47.   ~~2.~~ **Treatment** -- Payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

48.   ~~3.~~ **Voting** – Unimpaired under section 1124 of the Bankruptcy Code and deemed to accept the Plan.

**Class 2**

49.   ~~4.~~ **Classification** – ~~Brooklyn Lender LLC~~Allowed Secured Claims of the Mortgagee.  Annexed to the Plan as Exhibit B is a breakdown of the ~~amount due to Brooklyn Lender LLC~~estimated Allowed Secured Claims of the Mortgagee, by Debtor.  The Debtors estimate ~~that~~ the ~~amount due by~~aggregate of all ~~Debtors~~Class 2 Claims is $37,625,717.

50.   ~~5.~~ **Treatment** –On the Effective Date, pursuant to section 1124 of the Bankruptcy Code, each Debtor shall cure pre-~~petition~~Petition Date and post-~~petition~~Petition Date defaults, if any, retroactively extend the maturity dates with respect to each Debtor who could not extend due the Mortgagee's acceleration, and then pay in Cash the outstanding amounts due on the ~~date of payment~~Effective Date.

51.   ~~6.~~ **Voting** – Unimpaired under section 1124 of the Bankruptcy Code and deemed to accept the Plan..

**Class 3**

8

52.        7. **Classification** – Allowed Priority Claims under Sectionssections
507(a)(3),(4),(5),(6), and (7) of the Bankruptcy Code.  Annexed to the Plan as Exhibit B is a
breakdown of such estimated Allowed Priority Claims, by Debtor.  The Debtors estimate that the
aggregate amount due byof all DebtorsClass 3 Claims is approximately $0.

53.        8. **Treatment** – Payment in Cash on the Effective Date, of Allowed
Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the
Petition Date through the date of payment.

54.        9. **Voting** -- Unimpaired under section 1124 of the Bankruptcy Code and
deemed to accept the Plan..

**Class 4**

55.        10. **Classification** – Allowed General Unsecured Claims.  Annexed to the
Plan as Exhibit B is a breakdown of estimated Allowed General Unsecured Claims by Debtor.
The Debtors estimate that the aggregate amount due byof all DebtorsClass 4 Claims is
approximately $4,785,330.

56.        11. **Treatment** – Payment in Cash on the Effective Date, of Allowed
Amount of each such Claim plus interest at the Legal Rate as it accrues from the Petition Date
through the date of payment.  A Claimant may elect to receive Interests in a Post-Confirmation
Debtor instead of Cash payment.  Each Claimant, provided, that each Class 4 Creditor shall be
entitled to elect to take New Owner Interests in the post-confirmationNew Owner succeeding the
Debtor against whomwhich the Claimant holds an Allowed Claim as provided herein in lieu of
Cash payment of its Class 4 Claim.  Annexed to the Plan as Exhibit C is a spreadsheet indicating
the projected percentage membership InterestNew Owner Interests allocated by Debtor per

9

$1,000 of ~~Allowed~~ Class 4 Claims.  The ~~value of such Interest a Claimant~~basis for the pro-rata calculation of the New Owner Interests that a Class 4 Creditor may elect to receive is ~~approximately the same as the Claimant's~~its Class 4 Claim.  The calculation of the value of the New Owner Interests to be disbursed is based on ~~the Post-Confirmation Debtor~~each New Owner's net equity in its Property.  The net equity is calculated by subtracting the ~~Debtor~~respective New Owner's ~~Post~~post-Confirmation Date mortgage from the Property value.  For example, if a ~~Post-Confirmation Debtor~~New Owner owns a $500,000 property encumbered by a $400,000 ~~Post~~post-Confirmation mortgage, such ~~Debtor~~New Owner will have net equity of $100,000 in the Property.  If a Claimant holds a $1,000 ~~Allowed~~Class 4 Claim, the Claimant shall be entitled to New Owner Interests in ~~the Debtor~~such New Owner equal to $1,000 of such net equity, which, in this example would equate to a 1% membership ~~interest~~Interest representing 1% of the ~~Debtor~~New Owner's $100,000 net equity.  If the dollar amount of Class 4 Claims electing to take New Owner Interests exceeds the dollar amount of the respective New Owner's net equity, such holders of Class 4 Claims shall be entitled to their Pro-Rata percentage of the New Owner Interests in such new Owner.  The procedures to elect distribution of New Owner Interests in lieu of Cash are set forth in the Amended Disclosure Statement for the Plan.

57.    ~~12.~~ **Voting** – . Unimpaired under section 1124 of the Bankruptcy Code and deemed to accept the Plan..

## Class 5

58.    ~~13.~~ **Classification** – ~~Interests~~Interest Holders.

59.    ~~14.~~ **Treatment** – On the Effective Date, ~~Interests will be cancelled and Interest Holders shall be entitled to new interests in the New Owners (formed as a condition to~~

10

the Exit Financing) under the same terms as their exiting Interests in the Debtors.all Interests

will be cancelled and Interest Holders shall be entitled to New Owner Interests under the same

terms as their exiting Interests in the Debtors, but subject to dilution Pro Rata, by the New

Owner Interests distributed hereunder to (a) holders of Class 4 Claims that elect to receive New

Owner Interests in the respective New Owners instead of Cash payment and (b) holders of Class

6 Claims.  If the distribution of New Owner Interests to holders of Class 4 Claims and or Class 6

Claims exceeds a New Owner's net equity in its Property, existing Class 5 Interest Holders of

the predecessor Debtor will be entitled to no Interests in such New Owner.

60.    **Voting –** Impaired and entitled to vote to accept or reject the Plan.

**Class 6**

61.    **Classification** – Allowed Claims based on facts as generally alleged in the

Federal Action in Proofs of Claim set forth in Exhibit E to the Plan.

62.    **Treatment** – Class 6 Claims shall be subordinated pursuant to section

510(b) of the Bankruptcy Code to the same priority as Class 5 Interests.  On the Effective Date,

all Class 6 Claims shall be entitled to New Owner Interests in the respective New Owners based

on the Allowed Amount of such Class 6 Claim.  The value of the Interests that a Federal Action

Claimant may elect to receive is based on the Claimant's Claim.  The calculation of the value of

the New Owner Interests to be distributed is based on each New Owner's net equity in its

Property.  The net equity is calculated by subtracting the respective Post Confirmation New

Owner's Post-Confirmation mortgage from the Property value.  The New Owner's net equity

must then be reduced further by New Owner Interests distributed to Class 4 Creditors who elect

Interests in lieu of Cash.  For example, if a Post-Confirmation New Owner owns a $500,000

11

property encumbered by a $400,000 Post-Confirmation mortgage, such Post Confirmation New Owner will have net equity of $100,000 in the Property.  That net equity will then be reduced by the Interests distributed to Class 4 Claimants that elect to take Interests in lieu of Cash.  If, in this example, Class 4 Claimants with Claims totaling $60,000 elect to take Interests, $40,000 of New Owner Interests will be available to Class 6 Claimants.  If a Class 6 Claimant holds a $1,000 Allowed Class 6 Claim, the Claimant shall be entitled to Interests in the Post Confirmation New Owner equal to $1,000 of such net equity, which, in this example would equate to a 1% membership interest representing 1% of the Post Confirmation New Owner's net equity.  But if in this example the Allowed dollar amount of Class 6 Claims entitled to take Interests exceeds the $40,000 dollar amount of the New Owner's net equity after distribution of Interests to electing Class 4 Claimants, such Class 6 Claimants shall be entitled to their pro-rata percentage of the remaining $40,000 of New Owner Interests.

63.    15. **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## ADMINISTRATIVE EXPENSE CLAIMS AND STATUTORY FEES

64.    Allowed Administrative Expense Claims, including professional fees, shall be paid in full in Cash on the later of the Effective Date, or and the date such Administrative Expense Claim becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment; provided, however, that Allowed Administrative Expense Claims representing obligations incurred in the ordinary course of business or under Executory Contracts assumed by the Debtors shall be paid in full or performed by the Debtors in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  The Debtors

12

~~estimates~~estimate that through the entry of a final decree in this case, Allowed Administrative
Expenses will total approximately $15,000 per Debtor plus litigation legal fees for a total of at
least $255,000.   $350,000 shall be escrowed for payment when Allowed, and then paid in the
amounts Allowed.

65.     Any outstanding U.S. Trustee fees and any statutory interest thereon shall
be paid in full in Cash on the Effective Date.  Thereafter, United States Trustee fees and any
statutory interest thereon shall be paid until entry of final decree or until Bankruptcy Case is
converted or dismissed.  The Debtors shall file quarterly post-~~confirmation~~Confirmation
operating reports.

13

## MEANS FOR IMPLEMENTATION

66.    **Source of Funds** – Effective Date payments under the Plan will be paid from the Exit Financing, the terms of which are annexed to the Plan as Exhibit A.  Under the Exit Financing each Debtor must transfer its assets including its Property to the New Owners, which shall assume responsibility for repayment of the Exit Financing.  The transfer of each Property to the New Owners under the Plan shall be free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to Exit Financing proceeds in the same priority, with same validity and subject to the same defenses as existed immediately before the attachment, all as governed by the treatment of such Claims and Interests under the Plan, and to be disbursed under the Plan; provided, however, that the Mortgagee shall assign its mortgages to the holder of the Exit Financing in connection with the transfer of the Properties under the Plan.

67.    The New Owners shall be formed as New York or Delaware limited liability companies with operating agreements that comply with the terms of the Exit Financing. All New Owner Interests to be distributed under the Plan shall be on the principle of "one share, one vote," with no proportionate voting, class voting or the like, and otherwise in conformance with New York law.  As a condition to receipt of New Owner Interests, each potential Interest holder shall comply with such disclosure as may be required as a condition to the Exit Financing.

68.    **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of

14

any lease or sublease or the making or delivery of any deed or other instrument of transfer under~~,~~ ~~pursuant to, in furtherance of, or in connection with,~~ the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the transfer of each Property to the New Owners and any other transaction ~~contemplated~~ under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtors ~~pursuant to, in implementation of, or as contemplated in~~under the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under~~, in furtherance of, or in connection with,~~ the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment.

69.   **Release of Liens** – Except as otherwise provided for in the Plan, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the subject Debtor/New Owner any and all ~~Collateral~~property of the Estate that secures or purportedly secures such Claim, as pertains to such Property or such Lien shall automatically, and without further action by such Debtor/New Owner be deemed released, and (y) execute such documents and instruments as such Debtor/New Owner requests to evidence such Claim holder's release of such property or Lien.

70.   **Execution of Documents** -- Each Debtor/New Owner shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, mortgage assignment, Claim or encumbrance not expressly preserved in the Plan and

15

deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

71.    **Vesting of Assets** -- Except as otherwise provided in the Plan, on the Effective Date all assets and ~~properties~~Properties of the Estate of each Debtor shall vest in such Debtor/New Owner free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

72.    **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

73.    **Preservation of Claims** -- All rights pursuant to ~~Sections~~sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to ~~Section~~section 547 of the Bankruptcy Code, all fraudulent transfer claims pursuant to ~~Section~~sections 544 and 548 of the Bankruptcy Code, and all claims relating to post-Petition Date transactions under ~~Section~~section 549 of the Bankruptcy Code shall be preserved for the benefit of each Debtor's estate; provided, however, that ~~the Debtors~~such Debtor shall have sole authority for prosecuting any such claims.  Because all Creditors' Claims are being paid in full under the Plan, the Debtors do not anticipate pursuing preference or fraudulent transfer claims.  The Debtors' rights to assert

16

claims, including without limitation, tort, contract and lender liability claims against the Mortgagee are fully preserved.

### CONDITIONS TO CONFIRMATION AND OCCURRENCE OF EFFECTIVE DATE

74.     The Confirmation Order shall be a Final Order and shall provide for the transfer of the Debtors' Property to the respective New Owners free and clear of liens, claims, encumbrances and interests of any kind, other than the proceeds of the Exit Financing.  The Confirmation Order shall be in a form acceptable to the Debtors.  These conditions to Confirmation of the Plan and to the occurrence of the Effective Date are for the benefit of the Debtors.  The requirement that a particular condition be satisfied may be waived in whole or part by the Debtors.

### DISTRIBUTIONS TO CREDITORS

75.     Each Debtor shall be disbursing agent under its Plan without a bond.  The Debtors reserve the right to file objections to Claims in the event grounds exist to object to particular Claims, for a period of 60 days after the Effective Date; or in the case of a Claim based on the rejection of an Executory Contract, 60 days after such proof of Claim is filed.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtors shall maintain a Disputed Claim Reserve for the holders of Disputed Claims as of such date in a sum not less than the amount required to pay each such Disputed Claim under the Plan if such Claim was Allowed in full.  To the extent that a Disputed Claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the Disputed Claim Reserve and paid to the holder of such Allowed Claim.  After all the amounts of all Disputed

Claims have been fixed, the balance of the Disputed Claim Reserve shall thereafter be paid in
accordance with the Plan.

## EXECUTORY CONTRACTS

76.    Tenant leases shall be deemed assumed under the Plan and assigned to the
New Owners under sections 365 and 1123 of the Bankruptcy Code.  Except for any other
Executory Contracts that a Debtor assumes before the Confirmation Date, all other Executory
Contracts shall be rejected under the Plan on the Effective Date pursuant to sections 365 and
1123 of the Bankruptcy Code.  In the event of a rejection which results in damages, a proof of
Claim for such damages must be filed by the non-Debtor party with the Court on or before sixty
(60) days after the Effective Date. All Allowed Claims arising from the rejection of any
Executory Contract shall be treated as UnsecuredClass 4 Claims, provided, however, that such
Claimants shall not be entitled to elect to take New Owner Interests in lieu of Cash payment.
Any Claim arising from the rejection of any Executory Contract not filed with the Court within
the time period provided herein shall be deemed discharged and shall not be entitled to
participate in any distribution under the Plan.

## RETENTION OF JURISDICTION

77.    Retention of Jurisdiction.  The Court shall have jurisdiction over all
matters arising under, arising in, or relating to each Debtor's Bankruptcy Case to the fullest
extent permitted including, but not limited to, with respect to section 1142 of the Bankruptcy
Code and proceedings:

- To consider any modification of the Plan under Section 1127 of the
  Bankruptcy Code;

18

- To hear and determine all Claims, controversies, suits and disputes against the Debtors to the full extent permitted under 28 U.S.C. §§ 1334 and 157;

- To hear, determine and enforce all Claims and causes of action which may exist on behalf of the Debtors or a Debtor's Estate, including, but not limited to, any right of a Debtor or a Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

- To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

- To value assets of the Estate.

- To enforce the Confirmation Order, the final decree, and all injunctions therein;

- To enter an order concluding and terminating the Bankruptcy Case;

- To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

- To determine all questions and disputes regarding title to the assets of the Debtors.

- To re-examine Claims which may have been Allowed or disallowed for purposes of voting, and to determine objections which may be filed to any Claims.

**GENERAL PROVISIONS**

78.    **Headings**.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

79.    **Disputed Claims**.  The Debtors shall hold in escrow the distribution that would be due on account of any Disputed Claim.  No Disputed Claims shall be paid until such Claim becomes an Allowed Claim.

19

80.  **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

81.  **Other Actions**.  Nothing contained herein shall prevent the Debtors, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

82.  **Modification of Plan**.  The Debtors may seek amendments or modifications to the Plan in accordance with Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtors may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan

## INJUNCTION AND DISCHARGE

83.  **Injunction**.  The ~~confirmation~~Confirmation of this Plan shall constitute an injunction of the Court against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtors or their property or properties, any obligation or debt except pursuant to the terms of the Plan.

84.  **Discharge.**  On the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, the Plan shall:  (i) discharge each Debtor and any of its ~~Assets~~assets from all Claims, demands, liabilities and other debts that arose on or before the Effective Date, including, without limitation, all debts of the kind specified in ~~section~~Section 502 of the Bankruptcy Code, whether or not (A) a proof of Claim based on such debt is filed or deemed filed pursuant to ~~section~~Section 501 of the Bankruptcy Code, (B) a Claim based on such debt is Allowed pursuant to ~~section~~Section 502 of the Bankruptcy Code, (C) a Claim based on

20

such debt is or has been disallowed by order of the Bankruptcy Court, or (D) the holder of a

Claim based on such debt has accepted this Plan; and (ii) preclude all entities from asserting

against each Debtor or any of its ~~Assets~~assets any other or further Claims based upon any act or

omission, transaction or other activity of any kind or nature that occurred prior to the Effective

Date, all pursuant to ~~sections~~Sections 524 and 1141 of the Bankruptcy Code. The discharge

provided in this provision shall void any judgment obtained against each Debtor at any time, to

the extent that such judgment relates to a discharged Claim. The Debtor shall be discharged from

any Claims and agreements related to debts that arose on or before the Effective Date and such

debts, Claims and agreements are deemed restructured and new as set forth in the Plan.

## **CLOSING THE BANKRUPTCY CASE**

85.     Upon substantial consummation, the Debtors may move for a final decree

to close the Bankruptcy Case and to request such other orders as may be just.

Dated: New York, New York
       ~~July 31, 2019~~
       January 21, 2020

                              53 STANHOPE LLC ET AL.


                              By:     s/ David Goldwasser, as authorized signatory of GC
                              Realty Advisors, LLC, as Vice President


                              BACKENROTH FRANKEL & KRINSKY, LLP
                              Attorneys for Debtors


                              By:     s/Mark A. Frankel
                              800 Third Avenue
                              New York, New York 10022
                              (212) 593-1100

                              21

## EXHIBIT B

## ASSETS AND LIABILITIES UNDER PLAN

| Assets | |
|---|---|
| Real Property and misc. personal property | $56,431,800 |

| Liabilities | |
|---|---|
| Administrative Expense Claims | $255,000 |
| New York City Lien Claims | $209,866 |
| Brooklyn Lender LLC | $37,625,717 |
| Priority Claims | $0 |
| General Unsecured Claims | $4,785,330 |
| **Total** | $42,875,934 |

## CHAPTER 7 LIQUIDATION ANALYSIS

| Assets | |
|---|---|
| Real Property and misc. personal property | $56,431,800 |

| Liquidation Distributions | |
|---|---|
| Administrative Expense Claims | $5,898,180 |
| New York City Lien Claims | $209,866 |
| Brooklyn Lender LLC | $50,323,754 |
| Priority Claims | -0- |
| General Unsecured Claims | -0- |
| **Total** | $~~S~~$56,431,800 |

Note: All Claim amounts subject to objection.

Document comparison by Workshare 10.0 on Tuesday, January 21, 2020
2:37:46 PM

| Input: | |
|---|---|
| Document 1 ID | file://F:\Strulowitz\Discl.007.docx |
| Description | Discl.007 |
| Document 2 ID | file://F:\Strulowitz\Discl.015.docx |
| Description | Discl.015 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 547 |
| Deletions | 285 |
| Moved from | 5 |
| Moved to | 5 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 842 |