UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                :

In re                                          :      Chapter 11

                                                :      Case No. 19-23013 (RDD)

53 STANHOPE LLC, *et al.*,             :

                       Debtors.              :
------------------------------------------------------------- x


# DEBTORS' REPLY TO BROOKLYN LENDER LLC'S
# POST-TRIAL MEMORANDUM OF LAW
# <u>CONCERNING BANKING LAWS AND REGULATIONS</u>


**ROBINSON BROG LEINWAND**
**GREENE GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
Telephone: (212) 603-6300
*Special Counsel to the Debtors*

**BACKENROTH FRANKEL &**
**KRINSKY, LLP**
800 Third Avenue, Floor 11
New York, New York 10022
(212) 593-1100
*Attorneys for Debtors*

**ABRAMS, FENSTERMAN, FENSTERMAN,**
**EISMAN, FORMATO, FERRARA,**
**WOLF & CARONE, LLP**
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
(718) 215-5300
*Special Counsel to the Debtors*

{01069930.DOCX;1 }

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 2

ARGUMENT .................................................................................................................................. 3

    I.    BROOKLYN LENDER'S PRESENTATION OF THE APPLICABLE BANKING LAWS AND REGULATIONS ARE MISLEADING AND INACCURATE ........................... 3

        A.  Verifying "Beneficial" Ownership Was Not Required From 2012 Through 2016 When The Loans Originated ................................................................................................ 3

        B.  The 2018 CDD Regulation Is Not Retroactive ............................................................. 5

        C.  Brooklyn Lender's Reliance on Authorities It Cites Is Misplaced ................................ 6

    II.   BROOKLYN LENDER'S VERSION OF THE TESTIMONY AND EVIDENCE FROM TRIAL CONTAINS SEVERAL FACTUAL MISSTATEMENTS ............................... 8

        A.  Kenneth Stagnari's Testimony Did Not Include Profit-Sharers ..................................... 8

CONCLUSION ............................................................................................................................ 10

Debtors[1] by and through their undersigned counsel, respectfully submit this memorandum in reply to Brooklyn Lender LLC's Post-Trial Memorandum of Law [ECF Doc No. 172] concerning banking laws and regulations to correct several misstatements of law and fact in its Post-Trial Memorandum.

**PRELIMINARY STATEMENT**

At the conclusion of the Confirmation Hearing on August 7, 2020, the Court requested that the parties provide briefing on one discrete issue: whether failing to disclose the holders of profit participations to Signature Bank when the Debtors' loans were originated violated the banking laws. The Debtors submitted a concise post-trial brief ("Debtors' Br.")[ECF Doc No. 170] that complied with those instructions, laying out for the Court the relevant regulatory scheme and demonstrating that there was no requirement that an individual's indirect or beneficial interest in a borrowing entity be disclosed to a lender until May 11, 2018, two years after the last of the Debtors' loans was originated by Signature Bank.

Brooklyn Lender's brief[2], purposefully obscured this plain and critical fact. Brooklyn Lender states repeatedly that Signature Bank was required to obtain information on holders of "beneficial" interests in an entity with which it was doing business during the time it originated and held the loans with the Debtors, i.e., prior to May 2017. However, the term "beneficial interests" is from the current regulations that did not become a requirement until May 11, 2018, nearly one year after Brooklyn Lender acquired the Debtors' loans and defaulted each of them. Before May 11, 2018, there was no such requirement, and the Debtors provided all the information

---

[1] The Debtors are 53 Stanhope LLC, 55 Stanhope LLC, 119 Rogers LLC, 127 Rogers LLC, 325 Franklin LLC, 618 Lafayette LLC, C & YSW, LLC, Natzliach LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC, APC Holding 1 LLC, D&W Real Estate Spring LLC, Meserole and Lorimer LLC, 106 Kingston LLC, Eighteen Homes LLC, 1213 Jefferson LLC, and 167 Hart LLC (each a "Debtor", and collectively referred to herein as the "Debtors").

[2] The brief consists of 875 pages, inclusive of its 24 exhibits.

requested by Signature and required by the applicable regulatory framework.  Brooklyn Lender not only misrepresented the applicable regulatory scheme but also misrepresented Kenneth Stagnari's testimony to argue that he agreed that the Debtors violated the applicable regulations. The Court is aware of this falsehood because it asked Mr. Stagnari questions on this topic, and Mr. Stagnari proffered no testimony that the Debtors violated any statutes or regulations by not disclosing any profit participation interest when the loans were originated.

The Debtors complied with both applicable law and Signature Bank's request for information.  No amount of obfuscation of the facts and the law by Brooklyn Lender can change the facts elicited at trial.

## ARGUMENT

I. **BROOKLYN LENDER'S PRESENTATION OF THE APPLICABLE BANKING LAWS AND REGULATIONS ARE MISLEADING AND INACCURATE**

   A. **Verifying "Beneficial" Ownership Was Not Required From 2012 Through 2016 When The Loans Originated**

Beginning in the Preliminary Statement, and continuing throughout its post-trial brief, Brooklyn Lender attempts to mislead the Court into believing that the regulations in effect between September 2012 and August 2016 required the disclosure of "beneficial" interests or owners.  For example, the second paragraph of its submission, Brooklyn Lender cites to a purported requirement that Signature Bank obtain from its customers information for "beneficial" interests or owners. Brooklyn Lender then mentions the purported requirement of disclosing a "beneficial" interest during the relevant 2012-2016 period over fifty times.  But the requirement did not exist until 2018.

As detailed in the Debtors' brief, the reference pertaining to "beneficial interests" is from the current Customer Due Diligence ("CDD") regulations, which first required compliance on May 11, 2018. Before May 11, 2018, there was <u>no requirement</u> to verify or identify the beneficial owners/profit participants. *See* Rules and Regulations Department of the Treasury, Financial Crimes Enforcement Network, 81 Fed. Reg. 29398-01, 2016 WL 2643654 (F.R.) (the "CDD Regulations").

While Brooklyn Lender cites to 31 C.F.R. 1020.220, (*see* Paragraph 34 at n. 21), the regulation does not include the new CDD requirement of May 11, 2018 which codifies "beneficial" ownership requirements. Contrary to the numerous misstatements and omissions in Brooklyn Lender's brief, before 2018 the CDD regulations only needed to comply with the Customer Information Program ("CIP") requirements in 31 C.F.R. 1020.220. As stated in the Customer Information Program Regulations, the bank need obtain only the following information from the customer before opening an account:

(1) Name;
(2) Date of birth, for an individual;
(3) Address, which shall be:
    (i) For an individual, a residential or business street address;
    (ii) For an individual who does not have a residential or business street address, an Army Post Office (APO) or Fleet Post Office (FPO) box number, or the residential or business street address of next of kin or of another contact individual; or
    (iii) For a person other than an individual (such as a corporation, partnership, or trust), a principal place of business, local office, or other physical location; and
(4) Identification number, which shall be:
    (i) For a U.S. person, a taxpayer identification number; or

>   (ii) For a non-U.S. person, one or more of the following: A taxpayer identification number; passport number and country of issuance; alien identification card number; or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

31 C.F.R. § 1020.220(a)(2)

The new "beneficial" ownership rule <u>does not</u> apply to the loans originated from 2012 to 2016. The guidance, issued in 2010, predates the May 11, 2018 Final CDD Rule and Update to 2018 FFIEC BSA Examination Manual, which makes obtaining beneficial ownership mandatory for banks. From 2012 to 2016, Signature Bank complied with the applicable regulations and the Debtors provided all the information requested by Signature. Brooklyn Lender simply refused to address the relevant statutory scheme before 2018 because it cannot avoid the fact that this is fatal to their argument.

### B. The 2018 CDD Regulation Is Not Retroactive

Brooklyn Lender's post-trial brief assumes that the 2018 CDD Regulations were retroactive and applied to the loans at issue in this case which originated between 2012 and 2016. However, Brooklyn Lender's brief is devoid of any authority for that retroactivity proposition. That is because there is no such authority. This assumption and application by Brooklyn Lender is a clear misstatement of the regulation.

As set forth in Debtors' brief, not only is there no authority which supports Brooklyn Lender's version of the regulation, the published authorities contradict that position. *See* Debtors' Br. at 12-13; *see also* Steven Mark Levy, Federal Money Laundering Regulation: Banking, Corporate and Securities Compliance, § 7A.02 Beneficial Ownership Rule (1010.230); Walter Kluwer Law and Business, Aspen Publishers, 2nd Edition 2020 (citing 81 Fed. Reg. 29398, 29404 (May 11, 2016) ("There is no retroactive requirement to obtain beneficial ownership information for all existing accounts."). Accordingly, any current requirement to obtain beneficial ownership

information on new accounts or loans originated after the compliance requirement of the 2018 CDD Requirement does not affect the loans held by the Debtors.

### C. Brooklyn Lender's Reliance on Authorities It Cites Is Misplaced

Brooklyn Lender also claims that Debtors failure to disclose profit participation interests caused Signature to violate OFAC. *See generally* Brooklyn Lender's Br. at Paragraphs 5, 55-69. This too is a misstatement of law.

As set forth in Debtors' brief, OFAC was not required for non-customers or any profit-participants of the Debtors. OFAC is an office of the U.S. Treasury established in the 1950's that administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against entities such as targeted foreign countries, terrorists, international narcotics traffickers, and those engaged in activities related to the proliferation of weapons of mass destruction. *See* Debtors' Br. at 12-13.

In general, banks must screen (i) account owners who may be individuals or legal entities before opening any account, including a loan, and (ii) transactions, including the originator and originating bank, beneficiary, and beneficiary bank involved in incoming or outgoing payments, against several OFAC screening lists provided by OFAC to banks.

From September 4, 2012 to August 4, 2016, Signature Bank was not required to conduct an OFAC search on individuals or legal entities who (i) the bank was not aware of, (ii) were not a "Customer", or (iii) were not a Counterparty to an incoming or outgoing payment order. Signature Bank was not required to conduct an OFAC search on any profit-sharers since the profit-sharers were not legal "customers" of the bank. Federal regulation states: A customer is a "person" (an individual, a corporation, partnership, a trust, an estate, or any other entity recognized as a legal person) who opens a new account. A customer does not include a person

{01069930.DOCX;1 }                                                6

who does not receive banking services. *See* https://bsaaml.ffiec.gov/docs/manual/BSA_AML_Man_2014_v2_CDDBO.pdf at pg. 48, ¶2.

Accordingly, despite Brooklyn Lender's arguments, an OFAC check was not required for any profit-participants in the debtor entities.[3]

Thus, Brooklyn Lender's reliance on the authorities it cites is misplaced. *E.g.* DFS, Consent Order, *In the Matter of: Mega International Commercial Bank Co., Ltd.*, ¶¶ 25, 37 (Aug. 19, 2016) (violations for failure to comply with independent anti-money laundering compliance program unrelated to beneficial ownership); DFS, Consent Order, *In the Matter of: Deutsche Bank AG and Deutsche Bank AG, New York Branch*, at ¶¶ 46-50, 72 (Jan. 30, 2017) (colluding in mirror transactions in violation of anti-money laundering program unrelated to beneficial ownership); DFS, Consent Order, *In the Matter of: Nonghyup Bank and Nonghyup Bank* (Dec. 21, 2017) (failure to review suspicious activity reports of cash transactions unrelated to beneficial ownership); DFS, Consent Order, *In the Matter of: Mashreqbank, PSC and Mashreqbank, PSC, New York Branch*, ¶¶ 12, 18, 27 (Oct. 10, 2018) (failure to review suspicious activity reports of cash transactions following DFS examination, unrelated to beneficial ownership); FinCEN, Press Release, *JPMorgan Admits Violation of the Bank Secrecy Act for Failed Madoff Oversight; Fined $461 Million by FinCEN* (Jan. 7, 2014) and FinCEN, Penalty Assessment, *In the Matter of JP Morgan Chase Bank N.A.*, No. 2014-01 (Jan. 7, 2014) (failing to file suspicious activity reports for transactions related to Bernie Madoff, unrelated to beneficial ownership); FinCEN, Consent Order, *In the Matter of U.S. Bank, N.A.,* No. 2018-1 (Feb. 15, 2018) (failure to file suspicious activity reports and allowed non-customer currency transfers, unrelated to beneficial ownership);

---

[3] Moreover, the Debtors provided the bank what was required by regulation at the time of the origination. It is not the responsibility of the customer to know more about the relevant banking regulations than the lender. The customer relies on the lender to tell them what they need to comply with the banking regulations.

*Manhattan U.S. Attorney Announces Criminal Charges Against U.S. Bancorp For Violations of the Bank Secrecy Act* (Feb. 15, 2018) (willfully failing to file suspicious activity reports unrelated to beneficial ownership); FinCEN, Assessment of Civil Money Penalty, *In the Matter of: Gibraltar Private Bank and Trust Company*, No. 2016-01 (Feb. 25, 2016) (violation of due diligence programs specific to private banking accounts and correspondent accounts for foreign financial institutions, unrelated to rules controlling Signature loans to Debtors); FinCEN, Assessment of Civil Money Penalty, *In the Matter of Lone Star National Bank* No. 2017-04 (Oct. 27, 2017) (penalty for processing hundreds of millions of bulk cash dollars, unrelated to beneficial ownership); FinCEN, The SAR Activity Review: Trends, Tips, and Issues, No. 10 (May 2006), No. 13 (May 2008), No. 14 (October 2008), and FinCEN, Index to Topics for The SAR Activity Review Volumes 1-23, available at: https://www.fincen.gov/index- topics-sar-activity-review-volumes-1-23 (tips for suspicious activity reports governing cash transactions and foreign correspondent shell accounts, unrelated to customer identification program for lending activity).

## II. BROOKLYN LENDER'S VERSION OF THE TESTIMONY AND EVIDENCE FROM TRIAL CONTAINS SEVERAL FACTUAL MISSTATEMENTS

### A. Kenneth Stagnari's Testimony Did Not Include Profit-Sharers

At numerous points, Brooklyn Lender states that the testimony of Kenneth Stagnari supports its position that the Debtors were required to disclose the existence of any profit-sharing interest. *See* Brooklyn Lender's Brief at ¶¶ 7, 28-31. Brooklyn Lender states that "the law is exactly consistent with Stagnari's testimony, and Signature's loan documents." *See* Brooklyn Lender's Brief at ¶ 31.

Putting aside that Brooklyn Lender is simply wrong on the law during the relevant period, Stagnari did not opine on whether Signature Bank would have been required to run any background

{01069930.DOCX;1 }                                   8

checks or take any verification measures as to any individual who held a profit participation interest in the Debtors.  To the contrary, Mr. Stagnari testified that he lacked any knowledge of requirements to disclose profit-sharing interests during the mortgage application process.  Tr. 8/6/20 at 105:13-23.  In response to questioning from the Court, Stagnari made clear distinctions between what the Court was asking about profit-sharers and the Bank's need for equity ownership information.  Tr. 8/6/20 at 106:2-3. Signature Bank requested no information about profit participants, but only membership information for each Borrower entity, which was provided and Stagnari did not testify to the contrary. Brooklyn Lender's Post-Trial Brief contains no citations to the trial record to the contrary.

**CONCLUSION**

For all of the above reasons and for the reasons set forth in Debtors' prior submissions to the Court, based upon the CIP regulations in effect when the loans originated, Signature Bank did not have to obtain information from the Debtors regarding any profit participations held in them. Notwithstanding Brooklyn Lender's misstatements in its post-trial brief, , no disclosure of the borrower's profit participants was required by the regulatory framework in effect when the Debtors' loans were originated and thus no banking laws or regulations were violated by the disclosures which the Debtors made to their lender at loan origination.

BACKENROTH FRANKEL
& KRINSKY, LLP

By:   /s/Mark Frankel
    Mark Frankel
    800 Third Avenue, Floor 11
    New York, New York 10022
    (212) 593-1100
    *Attorneys for Debtors*

ABRAMS, FENSTERMAN, FENSTERMAN,
EISMAN, FORMATO, FERRARA,
WOLF & CARONE, LLP

By: /s/ Andrea J. Caruso
    Andrea J. Caruso
    1 MetroTech Center, Suite 1701
    Brooklyn, New York 11201
    (718) 215-5300
    *Special Counsel to the Debtors*

ROBINSON BROG GREENE
GENOVESE & GLUCK P.C.

By:   /s/ Fred B. Ringel
    Fred B. Ringel
    Steven B. Eichel
    875 Third Avenue
    New York, New York 10022
    Telephone: (212) 603-6300
    *Special Counsel to the Debtors*