**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 |
| 53 STANHOPE LLC,[1] | Case No. 19-23013 (RDD) |
| Debtor. | Jointly Administered |

## CHAPTER 11 PLAN OF LIQUIDATION
## PROPOSED BY BROOKLYN LENDER LLC

**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone:    (212) 506-1700
Facsimile:    (212) 506-1800

*Attorneys for Brooklyn Lender LLC*

Dated:  March 11, 2021

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC Holding 1 LLC (0290); D&W Real Estate Spring LLC (4591); Meserole and Lorimer LLC (8197); 106 Kingston LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155).

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARTICLE I.  DEFINITIONS AND INTERPRETATION........................................................ 1

    A.    Definitions................................................................................................ 1

    B.    Rules of Interpretation ........................................................................... 8

    C.    Controlling Document ........................................................................... 8

ARTICLE II.  ADMINISTRATIVE, PROFESSIONAL FEE AND PRIORITY TAX
CLAIMS ............................................................................................................ 8

    A.    Administrative Expense Claims.............................................................. 9

    B.    United States Trustee Fees..................................................................... 9

    C.    Professional Fee Claims......................................................................... 9

    D.    Priority Tax Claims ............................................................................. 10

ARTICLE III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS ..................................................................................................... 10

    A.    Classification of Claims and Interests.................................................. 10

    B.    Treatment of Claims and Interests ...................................................... 11

        1.    Class 1 – Other Senior Secured Claims ................................... 11

        2.    Class 2 – Brooklyn Lender Secured Claim............................... 11

        3.    Class 3 – Other Priority Claims ............................................... 12

        4.    Class 4 – General Unsecured Claims........................................ 12

        5.    Class 5 – Interest Holders ........................................................ 12

    C.    Subordinated Claims and Interests....................................................... 13

ARTICLE IV.  MEANS FOR IMPLEMENTATION OF THE PLAN ...................................... 13

    A.    Implementation ................................................................................... 13

    B.    The Sale .............................................................................................. 13

C.    Vesting of Assets ............................................................................. 14

D.    The Plan Funds ................................................................................. 14

E.    The Brooklyn Lender Cash Contribution ......................................... 14

F.    Transfer Taxes .................................................................................. 14

G.    Preservation of Causes of Action .................................................... 14

ARTICLE V.  PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 15

A.    Disbursing Agent .............................................................................. 15

B.    Manner of Payment ........................................................................... 15

C.    Timing and Calculation of Distributions .......................................... 15

D.    Claims Objection Deadline ............................................................... 16

E.    Prosecution of Objections ................................................................. 16

F.    No Distribution Pending Allowance ................................................. 16

G.    Undeliverable Distributions .............................................................. 16

H.    Unclaimed Distributions ................................................................... 16

I.    Set-offs ............................................................................................. 17

J.    Estimation of Claims ......................................................................... 17

K.    The Disputed Claim Reserve ............................................................ 17

ARTICLE VI.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 18

A.    Assumption and Assignment of Executory Contracts and Unexpired
       Leases ................................................................................................ 18

B.    Assumption Cure Payments .............................................................. 18

C.    Rejection Claims ............................................................................... 19

ARTICLE VII.  RELEASE, INJUNCTION, EXCULPATION AND RELATED
PROVISIONS ................................................................................... 19

A.    Binding Effect ................................................................................... 19

B.    No Discharge ..................................................................................... 19

C.      Injunction .................................................................................................... 19

D.      Limitation of Liability.................................................................................. 20

E.      Releases by the Debtors .............................................................................. 20

F.      Releases by the Holders of Claims and Interests ................................... 21

ARTICLE VIII.  CONDITIONS TO THE OCCURRENCE OF THE EFFECTIVE DATE ....... 21

A.      Conditions to Confirmation ....................................................................... 21

B.      Conditions to the Occurrence of the Effective Date ............................. 21

ARTICLE IX.  MISCELLANEOUS PROVISIONS ................................................................ 22

A.      Statutory Fees.............................................................................................. 22

B.      Amendments ................................................................................................ 22

C.      Revocation .................................................................................................... 22

D.      Request for Relief Under Section 1129(b)............................................... 23

E.      Filing of Additional Documents ............................................................... 23

F.      Computation of Time.................................................................................. 23

ARTICLE X.  RETENTION OF JURISDICTION ................................................................. 23

## INTRODUCTION

Capitalized terms used in this Plan shall have the meanings set forth in Article I. Brooklyn Lender LLC ("Brooklyn Lender") proposes this Plan for the resolution of outstanding Claims against, and Interests in, the Debtors. Holders of Claims and Interests may refer to the Disclosure Statement for a summary and description of the Plan. Brooklyn Lender is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code, and the Plan constitutes a separate plan for each of the Debtors.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.

## ARTICLE I.  DEFINITIONS AND INTERPRETATION

**A.    Definitions**

As used in this Plan, capitalized terms have the meanings set forth below.

1.  "*Administrative Expense Claim*" means any cost or expense of administration of the Chapter 11 Cases entitled to priority under Section 507(a)(1) and allowed under Section 503(b) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors and (b) Allowed Professional Fee Claims.

2.  "*Administrative Expense Claim Backstop*" means the pledge by Brooklyn Lender to contribute Cash to the Debtors or the Dispersing Agent, as applicable, in an amount sufficient to guarantee the payment of all Administrative Expense Claims in full to the extent that Plan Funds are insufficient to pay Administrative Expense Claims in full.

3.  "*Administrative Expense Claim Bar Date*" means the first Business Day that is at least thirty (30) days after the Closing Date.

4.  "*Administrative Expense Claim Objection Deadline*" means the deadline for objecting to an Administrative Expense Claim, which shall be means the first Business Day that is at least thirty (30) days after the Administrative Expense Claim Bar Date.

5.  "*Allowed*" means, with respect to any Claim or Interest, that is: (a) listed in the Debtors' Schedules, including any amendments thereto, filed in these Chapter 11 Cases as of the Effective Date and not listed as "disputed," "contingent," "unliquidated," or "unknown" and as to which no objection to the allowance thereof is filed; (b) set forth in a Proof of Claim timely and properly filed in these Chapter 11 Cases on or before the deadline fixed by the Bankruptcy Court, or by applicable rule or statute, as the last day for filing such Proof of Claim, or filed following such date with leave of the Bankruptcy Court after notice and opportunity for hearing having been given, and as to which no objection to the allowance thereof is filed; or (c) determined to be allowed by Final Order of the Bankruptcy Court.  To the extent permitted under Section 506(b) of the Bankruptcy Code, an Allowed Claim may

include unpaid postpetition interest on such Claim and any reasonable unpaid postpetition fees, costs or charges provided for under the agreements under which such Claim arose.

6.   "*Assets*" means all assets owned by the Debtors, including the mortgaged residential apartment buildings located in Brooklyn, New York that are owned by the Debtors.

7.   "*Auction*" means the auction, if any, for the Sale of the Assets to be held in accordance with the Sale and Bid Procedures.

8.   "*Available Cash*" at any time means the aggregate amount of Cash held by the Dispersing Agent in the Plan Funds.

9.   "*Avoidance Action*" means any Claims, rights, defenses or other causes of action arising under any section of Chapter 5 of the Bankruptcy Code, including Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including state fraudulent transfers laws, whether or not prosecution of such actions has commenced as of the Confirmation Date or the Effective Date.

10. "*Bankruptcy Code*" means Title 11 of the United States Code (11 U.S.C. § 101 et. seq.).

11. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York.

12. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

13. "*Broker*" means Cushman and Wakefield plc, or such other commercial real estate broker appointed by the Plan Proponent pursuant to the Sale and Bid Procedures.

14. "*Brooklyn Lender*" shall have the meaning ascribed to it in the Introduction.

15. "*Brooklyn Lender Cash Contribution*" means, collectively, the Administrative Expense Claim Backstop and the Claim Distribution Enhancement.

16. "*Brooklyn Lender Loan Agreement*" means each and every agreement, promissory note, including any amendment or modification thereof, evidencing a Claim held by Brooklyn Lender against any of the Debtors.

17. "*Brooklyn Lender Secured Claim*" means the Secured Claim against the Debtors, or the Assets, on account of the Brooklyn Lender Loan Agreement and/or the Brooklyn Lender Security Documents.

18. "*Brooklyn Lender Security Documents*" means each and every mortgage, assignment of leases and rents, security agreements, and/or any such other documents granting Brooklyn

Lender a lien on any of the Assets to secure the loan under the Brooklyn Lender Loan Agreement.

19. "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

20. "*Cash*" means legal tender of the United States of America.

21. "*Chapter 11 Cases*" means the above-captioned jointly-administered cases under Chapter 11 of the Bankruptcy Code commenced by the Debtors, and styled *In re 53 Stanhope LLC*, Case No. 19-23013 (RDD).

22. "*Claim*" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

23. "*Claim Distribution Enhancement*" means a voluntary contribution agreed to by Brooklyn Lender to the Dispersing Agent for the purpose of enhancing the distribution of Cash in excess of Available Cash from Plan Funds to Holders of Allowed Other Secured Claims, Allowed Priority Claims, and Allowed General Unsecured Claims, to ensure that the Holders of such claims are paid in full in Cash.

24. "*Class*" means any group of Claims or Interests classified pursuant to Article III of the Plan.

25. "*Closing Costs*" means those costs and expenses paid by the Dispersing Agent in connection with a transfer of title to the Assets, which may include, but not be limited to, brokerage commissions or auctioneer's fees that are approved by a Final Order of the Bankruptcy Court, recording fees, transfer and stamp taxes to the extent that such transfer is not exempt therefrom pursuant to Section 1146(c), closing adjustments, title costs and other similar, customary and necessary expenses, costs or credits.

26. "*Closing Date*" means the date that the consummation of the Sale to the Purchaser takes place.

27. "*Confirmation*" means the entry on the docket of the Chapter 11 Cases of the Confirmation Order subject to the conditions set forth in the Plan, including the conditions precedent to Confirmation as specified in Article VIII hereof.

28. "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order.

29. "*Confirmation Hearing*" means the hearing to be held before the Bankruptcy Court regarding Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

30. "*Confirmation Order*" means a Final Order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

31. "*Debtors*" means 53 Stanhope LLC, 55 Stanhope LLC, 119 Rogers, LLC, 127 Rogers LLC, 325 Franklin LLC, 618 Lafayette LLC, C & YSW, LLC, Natzliach LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC, APC Holding 1 LLC, D&W Real Estate Spring LLC, Meserole And Lorimer LLC, 106 Kingston LLC, Eighteen Homes LLC, 1213 Jefferson LLC, and 167 Hart LLC.

32. "*Disclosure Statement*" means the Disclosure Statement for the Plan including all exhibits, attachments or amendments thereto, approved by Final Order of the Bankruptcy Court.

33. "Disbursing Agent" shall mean a person or entity with the duties as set forth in Section V.A of the Plan

34. "*Disputed Claim*" means a Claim or any portion thereof that is not Allowed, but that has not been disallowed by a Final Order.

35. "*Disputed Claim Reserve*" means the segregated account established on the Effective Date, or as soon thereafter as reasonably practicable, and maintained by the Dispersing Agent, funded with Cash from the Plan Funds to pay Holders of Disputed Claims, if and when such Disputed Claims become Allowed Claims, as set forth more fully in Article V of the Plan.

36. "*Effective Date*" means, with respect to the Plan, the date on which (a) no stay of the Confirmation Order is in effect and (b) all conditions specified in Article VIII of the Plan hereof have been satisfied or waived (in accordance with the Plan).

37. "*Entity*" shall have the meaning set forth in Section 101(15) of the Bankruptcy Code.

38. "*Estate*" means the estate of each Debtor created on the Petition Date pursuant to Section 541 of the Bankruptcy Code.

39. "*Executory Contract*" means an executory contract within the meaning of Section 365 of the Bankruptcy Code.

40. "*Federal Action*" means the lawsuit captioned *Jacob Schonberg, et al v. Yechezkel Strulovitch a/k/a Chaskiel Strulovitch, et al.*, Case No. 17-cv-02161, filed in the United States District Court for the Eastern District of New York.

41. "*Final Order*" means a judgment, order, ruling or other decree of the Bankruptcy Court (or court of competent jurisdiction) entered by the clerk on the docket of the Chapter 11 Cases (or on the docket of any court of competent jurisdiction) that has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for certiorari proceeding or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari proceeding, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, reargument or rehearing

shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Bankruptcy Rule 9023 or 9024, or any analogous rule under the Bankruptcy Rules (or rule of a court of competent jurisdiction), may be filed relating to such order shall not cause such order not to be a Final Order.

42. "*General Unsecured Claim*" means any Claim against the Debtors that is not an Administrative Expense Claim, Priority Tax Claim, Other Senior Secured Claim, Brooklyn Lender Secured Claim, Other Priority Claim or Subordinated 510(b) Claim.

43. "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

44. "*Holder*" means a Person or an Entity holding a Claim or Interest, as applicable.

45. "*Impaired*" means, with respect to a Claim, Interest or Class of Claims or Interests, a Claim, Interest or Class of Claims or Interests that is "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

46. "*Interest*" means any equity security (as defined in Section 101(16) of the Bankruptcy Code) in any Debtor, including, for purposes of treatment under the Plan, Claims based on facts as generally alleged in the Federal Action, which are subordinated pursuant to Section 510(b) of the Bankruptcy Code including, but not limited to, Subordinated 510(b) Claims.

47. "*Israeli Investors*" means those entities and individuals identified on Exhibit A to the *Objection to Confirmation of Debtors' Amended Plan of Reorganization*, dated April 22, 2020 [Dkt. No. 124]

48. "*Lien*" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

49. "*Other Priority Claim*" means any Unsecured Claim against the Debtors entitled to priority in payment as specified in Section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

50. "*Other Senior Secured Claim*" means any Secured Claim that is senior in priority to the Brooklyn Lender Secured Claim pursuant to the Bankruptcy Code.

51. "*Person*" shall have the meaning set forth in Section 101(41) of the Bankruptcy Code.

52. "*Petition Date*" means May 20, 2019 (other than with respect to 167 Hart LLC, for which it means May 21, 2019).

53. "*Plan*" means this plan of liquidation, as it may be amended, supplemented or modified from time to time, including any exhibits, supplements, or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

54. "*Plan Funds*" means one or more accounts (a) into which shall be deposited (i) all Sale Proceeds, (ii) all Cash held by the Debtors, and (iii) the Brooklyn Lender Cash Contribution, and (b) from which distributions shall be made in accordance with the Plan, and the funds held therein.

55. "*Plan Proponent*" means Brooklyn Lender.

56. "*Plan Supplement*" means the compilation of documents to be filed with the Bankruptcy Court as a supplement to this Plan that shall contain the documents necessary to administer this Plan, including the Sale and Bid Procedures and any information required to be disclosed in accordance with Section 1129(a)(5) of the Bankruptcy Code; *provided, however*, that through the Effective Date, the Plan Proponent shall have the right to amend any documents contained in, and annexed to, the Plan Supplement.

57. "*Priority Tax Claim*" means an Allowed Claim of a Governmental Unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

58. "*Professional*" means an attorney, accountant, appraiser, consultant, broker, auctioneer, financial advisor, investment banker, or other professional retained by the Debtors under Sections 105, 327, 363 or 330 of the Bankruptcy Code to render professional services in these Chapter 11 Cases.

59. "*Professional Fee Claim*" means an Administrative Expense Claim for professional services rendered or costs incurred by Professionals after the Petition Date and prior to the Closing Date, in accordance with Sections 330 and 331 of the Bankruptcy Code.

60. "*Professional Fee Claims Bar Date*" means the date that is thirty (30) days after the Closing Date.

61. "*Proof of Claim*" means a proof of claim filed against the Debtors in the Chapter 11 Cases.

62. "*Pro Rata*" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

63. "*Purchase Agreement*" means an agreement providing for the Sale of the Assets, in accordance with the Plan, the Confirmation Order, and the Sale and Bid Procedures and determined by the Plan Proponent pursuant to the Sale and Bid Procedures reflecting the highest or otherwise best offer for the Assets.

64. "*Purchaser*" means the Person or Entity that is selected by the Debtors as having made the highest and best bid, in accordance with the Sale and Bid Procedures, to purchase the Assets pursuant to the Purchase Agreement.

65. "*Related Persons*" means as to any person, such Person's current and former direct and indirect equity holders, members, partners, subsidiaries, affiliates, funds, managers, investors, managing members, officers, directors, employees, advisors, principals, attorneys,

professionals, accountants, investment bankers, consultants, agents and other representatives (including their respective equity holders, members, partners, subsidiaries, affiliates, funds, managers, managing members, officers, directors, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents and other representatives).

66. "*Released Parties*" means the Plan Proponent and any and all of its officers, directors, members, general partners, managers or employees (acting in such capacity) and any Professional employed by it (acting in such capacity).

67. "*Sale*" means a sale of the Assets in accordance with the Sale and Bid Procedures and the Confirmation Order and on the terms set forth in the Purchase Agreement, as applicable, which is effectuated through this Plan pursuant to Sections 363 and 1123 of the Bankruptcy Code.

68. "*Sale and Bid Procedures*" means the sale, bid and Auction procedures set forth in the Plan Supplement and approved by the Confirmation Order that, among other things, establishes procedures for the Auction and the terms and conditions related to the Sale of the Assets under this Plan.

69. "*Sale Proceeds*" means the proceeds received from the Sale, net of Closing Costs.

70. "*Schedules*" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtors under Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended.

71. "*Secured Claim*" means a Claim against any Debtor to the extent it is (i) secured by property of the Estate, the amount of which is equal to or less than the value of such property, as agreed to by the Holder of such Claim and a Debtor or as determined by a Final Order in accordance with Section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the Holder thereof under Section 553 of the Bankruptcy Code.

72. "*Subordinated 510(b) Claim*" means a Claim held by any of the Israeli Investors subordinated pursuant to 11 U.S.C. § 510(b) as determined by the *Order on (1) Debtors' Request for Confirmation of Chapter 11 Plan, (2) Debtors' Partial Objection to Claims of Brooklyn Lender, (3) Debtors' Partial Objection to Claims of Israeli Investors, and (4) Motions by Brooklyn Lender and Israeli Investors for Appointment of Chapter 11 Trustee*, dated February 19, 2021 [Dkt. No. 192].

73. "*Unexpired Lease*" means a lease of residential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code. All leases regarding commercial real property shall be deemed rejected.

74. "*Unimpaired*" means, with respect to a Claim, Interest or Class of Claims or Interests, that such Claim, Interest or Class of Claims or Interests is not "impaired" within the meaning of Sections 1123(a)(4) and 1124 of the Bankruptcy Code.

75. "*United States Trustee*" means the United States Trustee for the Southern District of New York.

76. "*United States Trustee Fees*" means all fees and charges assessed against the Estates under Section 1930 of title 28 of the United States Code.

77. "*Unsecured Claim*" means a Claim that is not a Secured Claim.

## B.    Rules of Interpretation

Unless otherwise specified, all Article, Section or exhibit references in the Plan are to the respective article, section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time.  The words "herein," "hereof," "hereto," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the interpretation of the Plan.  For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference to a Person or Entity as a Holder of a Claim or Interest includes that Person or Entity's successors and assigns; (4) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

## C.    Controlling Document

In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan shall control (unless stated otherwise in the Plan).  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## ARTICLE II.  ADMINISTRATIVE, PROFESSIONAL FEE AND PRIORITY TAX CLAIMS

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims or Priority Tax Claims.  Such Claims, to the extent Allowed, shall receive the treatment provided in this Article II in full satisfaction, release and discharge thereof.

A.      **Administrative Expense Claims**

A notice setting forth the Administrative Expense Claim Bar Date shall be filed on the Bankruptcy Court's docket and served with the notice of the Effective Date.  No other notice of the Administrative Expense Claim Bar Date will be provided.  All requests for payment of Administrative Expense Claims that accrued on or before the Effective Date (other than Professional Fee Claims) must be filed with the Bankruptcy Court and served on counsel for the Plan Proponent by the Administrative Expense Claim Bar Date.  Any requests for payment of Administrative Expense Claims that are not properly filed and served by the Administrative Expense Claim Bar Date shall be disallowed automatically without the need for any objection or any action by the Bankruptcy Court.  Unless the Debtors or Plan Proponent objects to a timely filed and properly served Administrative Expense Claim by the Administrative Expense Claim Objection Deadline, or such Administrative Expense Claim has been allowed by prior order of the Bankruptcy Court, then such Administrative Expense Claim shall be deemed allowed in the amount requested.  If the Debtors or the Plan Proponent objects to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Expense Claim should be allowed and, if so, in what amount.

Each Holder of an Allowed Administrative Expense Claim (other than Holders of Professional Fees or United States Trustee Fees) shall be paid in full, in Cash, by the Dispersing Agent from the Plan Funds or, if Plan Funds are insufficient to pay Administrative Expense Claims in full, in Cash, from the Administrative Expense Claim Backstop, as soon as reasonably practicable after the later of the Effective Date, the Closing Date, and the date on which such Claim becomes an Allowed Administrative Expense Claim, or on such other date and upon such other terms as may be agreed by the Holder of such Allowed Administrative Expense Claim and the Debtors or ordered by the Bankruptcy Court.  Holders of Administrative Expense Claims are not entitled to vote on the Plan and are deemed to have accepted the Plan.

B.      **United States Trustee Fees**

The United States Trustee Fees are unimpaired.  All United States Trustee Fees incurred by the United States Trustee prior to the Effective Date and not yet paid shall be paid in full, in Cash, by the Dispersing Agent from the Plan Funds, or, if Plan Funds are insufficient to pay the United States Trustee Fees in full, in Cash, from the Administrative Expense Claim Backstop, on the Effective Date or as soon as reasonably practicable thereafter in accordance with the applicable schedule for payment of such fees including any interest thereon.  Until each of the Chapter 11 Cases is closed by entry of a final decree of the Bankruptcy Court, the Debtors shall pay all additional United States Trustee Fees incurred in accordance with the applicable schedule for the payment of such fees including any interest thereon.

C.      **Professional Fee Claims**

All final applications for payment of Professional Fee Claims shall be filed with the Bankruptcy Court and served on the Debtors and Plan Proponent on or before the Professional Fee Claims Bar Date.  Any Professional Fee Claim that is not asserted in accordance with this Article II shall be deemed disallowed under this Plan and the Holder thereof shall be enjoined

from commencing or continuing any action, employment of process, or act to collect, offset, recoup, or recover such Professional Fee Claim against any of the Estates.

Each Holder of an Allowed Professional Fee Claim shall be paid by the Dispersing Agent in full in Cash from the Plan Funds, or, if Plan Funds are insufficient to pay the United States Trustee Fees in full, in Cash, from the Administrative Expense Claim Backstop, on or as soon as reasonably practicable after the first Business Day following the date upon which such Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, unless such Holder shall agree to a different treatment of such Claim.

## D.      Priority Tax Claims

Except as may be otherwise mutually agreed in writing between the Debtors or the Plan Proponent and any applicable Governmental Units, all Allowed Priority Tax Claims shall be paid by the Dispersing Agent from the Plan Funds in full, in Cash, on or as soon as reasonably practicable after the later of the Effective Date and the Closing Date.

## ARTICLE III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

## A.      Classification of Claims and Interests

Claims and Interests, except as otherwise provided in Article II, are classified in the Classes set forth in this Article III.  A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied.  ***As provided herein, the treatment of Allowed Claims and Interests shall be based upon the results of the Sale (as discussed below)***.

The Plan shall constitute a separate chapter 11 plan for each Debtor, each of which shall include the classifications set forth below, and (ii) to the extent that a Class contains Claims or Interests only with respect to one or more particular Debtors, such Class applies solely to such Debtor(s) and shall be treated as a separate Class.

The following chart represents the classification of Claims and Interests for each Debtor pursuant to the Plan.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Senior Secured Claims | Unimpaired | Not entitled to vote (presumed to accept) |
| Class 2 | Brooklyn Lender Secured Claim | Impaired | Not entitled to vote (presumed to accept as plan proponent) |
| Class 3 | Other Priority Claims | Unimpaired | Not entitled to vote (presumed to accept) |

| Class 4 | General Unsecured Claims | Unimpaired | Not entitled to vote (presumed to accept) |
| Class 5 | Interests | Impaired | Not entitled to vote (deemed to reject) |

**B.      Treatment of Claims and Interests**

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors, the Plan Proponent and the Holder of such Allowed Claim or Interest, as applicable.

**1.      Class 1 – Other Senior Secured Claims**

*Classification*:  Class 1 consists of Allowed Other Senior Secured Claims.

*Treatment*:  On or as soon as practicable after the later of the Effective Date or the Closing Date, each Holder of an Allowed Other Senior Secured Claim shall receive on account of such Claim, except to the extent that any Holder of an Allowed Other Senior Secured Claim agrees to less favorable treatment thereof, a distribution of Available Cash, if any, from Plan Funds, equal to the amount of such Allowed Other Senior Secured Claim.  Additionally, to the extent Available Cash remaining from Plan Funds is not sufficient to pay Allowed Other Senior Secured Claims in full, in Cash, Holders of Allowed Other Senior Secured Claims, shall receive a distribution of Cash from the Claim Distribution Enhancement.

*Voting*:  Class 1 is Unimpaired.  Holders of Other Senior Secured Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Senior Secured Claims are not entitled to vote to accept or reject the Plan.

**2.      Class 2 – Brooklyn Lender Secured Claim**

*Classification*:  Class 2 consists of the Allowed Brooklyn Lender Secured Claim.  The Allowed Brooklyn Lender Secured Claim shall include all interest, including postpetition interest, and other costs and expenses, including post-petition legal fees, payable to Brooklyn Lender under the Brooklyn Lender Loan Agreement through and including the Closing Date.

*Treatment*:  On or as soon as practicable after the later of the Effective Date or the Closing Date, Brooklyn Lender shall receive, until its Claims are satisfied in full, a distribution of Available Cash, if any, from Plan Funds remaining after payment in full of Allowed Other Senior Secured Claims in accordance with this Article III, equal to the amount of the Allowed Brooklyn Lender Secured Claim.

*Voting*:  Class 2 is Impaired.  However, Brooklyn Lender, as Plan Proponent, is presumed to accept the Plan and is not entitled to vote.

### 3.    Class 3 – Other Priority Claims

*Classification*:  Class 3 consists of Allowed Other Priority Claims.

*Treatment*:  On or as soon as practicable after the later of the Effective Date or the Closing Date, each Holder of Allowed Other Priority Claims shall receive, until such Claims are satisfied in full in Cash, a distribution of Available Cash, if any, from Plan Funds remaining after payment in full of all Allowed Other Senior Secured Claims and Allowed Brooklyn Lender Secured Claims in accordance with this Article III, equal to the amount of Allowed Other Priority Claims.  Additionally, to the extent Available Cash remaining from Plan Funds is not sufficient to pay Allowed Other Priority Claims in full, in Cash, Holders of Allowed Other Priority Claims, shall receive a distribution of Cash from the Claim Distribution Enhancement.

*Voting*:  Class 3 is Unimpaired.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

### 4.    Class 4 – General Unsecured Claims

*Classification*:  Class 4 consists of Allowed General Unsecured Claims.

*Treatment*:  On or as soon as practicable after the later of the Effective Date or the Closing Date, Holders of Allowed General Unsecured Claims shall receive, until such Claims are satisfied in full in Cash, a distribution of Available Cash, if any, from Plan Funds remaining after payment in full of all Allowed Other Senior Secured Claims, Allowed Brooklyn Lender Secured Claims and Allowed Other Priority Claims in accordance with this Article III, equal to the amount of Allowed General Unsecured Claims.  Additionally, to the extent Available Cash remaining from Plan Funds is not sufficient to pay Allowed General Unsecured Claims in full, in Cash, Holders of Allowed General Unsecured Claims, shall receive a distribution of Cash from the Claim Distribution Enhancement.

*Voting*:  Class 4 is Unimpaired.  Holders of Allowed General Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed General Unsecured Claims are not entitled to vote to accept or reject the Plan.

### 5.    Class 5 – Interest Holders

*Classification*:  Class 5 consists of all Allowed Interests.

*Treatment*:  On or as soon as practicable after the later of the Effective Date or the Closing Date, Holders of Allowed Interests shall receive, a distribution of their Pro Rata share of Available Cash, if any, from Plan Funds remaining after payment in full of all Allowed Other

Senior Secured Claims, Allowed Brooklyn Lender Secured Claims, Allowed Other Priority Claims, and Allowed General Unsecured Claims in accordance with this Article III.

*Voting*:  Class 5 is Impaired.  Holders of Allowed Interests are conclusively deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Allowed Interests are not entitled to vote to accept or reject the Plan.

## C.    Subordinated Claims and Interests

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and their respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Section 510(b) of the Bankruptcy Code, or otherwise.

## ARTICLE IV.  MEANS FOR IMPLEMENTATION OF THE PLAN

## A.    Implementation

The Plan Proponent shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.  Specifically, the Confirmation Order shall contain provisions approving the Sale and Bid Procedures pursuant to Sections 363, 365, 1123(a)(5), 1123(b)(4) of the Bankruptcy Code governing the sale of the Assets free and clear of any and all Liens, Claims, and encumbrances to the fullest extent provided by the Bankruptcy Code or other applicable law.  The Estates are not being substantively consolidated such that the priority and extent of Claims against each of the Debtors shall be unaffected and the distribution of Sale Proceeds shall be made in accordance with the priorities established by the Bankruptcy Code.

## B.    The Sale

Pursuant to the Sale and Bid Procedures, on or as soon as practical after the Effective Date, the Plan Proponent will engage the Broker, who shall market the Assets and conduct the Auction.  The Broker's fees shall be paid from the proceeds of the Auction.  The Debtors shall file a notice of the results of each Auction, together with any additional pleadings and exhibits as may be required, to obtain an order from the Bankruptcy Court approving such Sale and finding the good faith and non-conclusive behavior of the Purchaser pursuant to Sections 363(m) and (n) of the Bankruptcy Code, on not less than seven days' notice.

The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code that, among other things:  (A) directs the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Properties to the Purchaser and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan; (B) directs the Debtor to transfer all cash on hand to the Dispersing Agent immediately, which cash shall become part of the Available Cash; and (C) directs the Dispersing Agent, on or about the Effective Date, to make the payments required under this Plan to be made on or about the Effective Date.  Pursuant to

Section 1146(a) of the Bankruptcy Code, the deeds conveying the Assets shall be an instrument of transfer in connection with or in furtherance of the Plan and shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Taxes, mortgage recording tax or similar tax, and, to the extent provided by Section 1146(a) of the Bankruptcy Code, if any, shall not be subject to any state, local or federal law imposing sales tax. All proceeds of the Auction shall be deposited with the Dispersing Agent and become Available Cash.

**C.    Vesting of Assets**

Except as otherwise provided in the Plan, on the Closing Date, to the fullest extent provided by the Bankruptcy Code or other applicable law, the Assets shall vest in the Purchaser free and clear of all Liens, Claims and encumbrances and any other Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall attach to the Sale Proceeds as of such date.

**D.    The Plan Funds**

Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Dispersing Agent in accordance with the terms of the Plan. The Plan shall be funded by the Sale of the Assets pursuant to the Sale and Bid Procedures, the Cash held by the Debtors on the Effective Date, and the Brooklyn Lender Cash Contribution.

**E.    The Brooklyn Lender Cash Contribution**

The Dispersing Agent shall calculate the amount of the Brooklyn Lender Cash Contribution, if any, and shall provide notice to Brooklyn Lender of such amount within five (5) business days following the later of the Effective Date and the Closing Date. Brooklyn Lender shall deliver the Brooklyn Lender Cash Contribution to the Dispersing Agent within five (5) business days of receipt of such notice.

**F.    Transfer Taxes**

To the maximum extent permitted under Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan and the making or delivery of an instrument of transfer of property or otherwise, pursuant to or in connection with the Plan or the Sale shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax or governmental assessment in the United States or by any other governmental unit, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to or in connection with such transfers of property without the payment of any such tax or governmental assessment.

**G.    Preservation of Causes of Action**

Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement entered into or effected in connection with or pursuant to the Plan, in accordance with

Section 1123(b) of the Bankruptcy Code, any and all Claims and Causes of Action that were owned by the Debtors or their Estates as of the Effective Date, including all Avoidance Actions, shall vest in the Estates on the Effective Date, and the Debtors shall have the exclusive right to pursue and enforce such Claims and Causes of Action. **Notwithstanding the foregoing, in consideration for its acting as Plan Proponent, no such Claims or Causes of Action shall be brought against Brooklyn Lender or its Related Persons.**

## ARTICLE V.  PROVISIONS GOVERNING DISTRIBUTIONS

### A.     Disbursing Agent

The Disbursing Agent shall be selected by the Plan Proponent and his or her identity shall be disclosed in the Plan Supplement. The Disbursing Agent shall make distributions under the Plan for all Allowed Claims against the Debtors' Estates. The Disbursing Agent shall not be compensated for services rendered under the Plan and shall not be required to secure a bond. The Disbursing Agent shall not incur any liability, other than for willful misconduct or criminal conduct, which liability shall be expressly end on the date that all disbursements contemplated by the Plan have been distributed. The Disbursing Agent shall **not** be deemed to be an officer, fiduciary or agent of any of the Debtors. Furthermore, the Disbursing Agent shall have the express authority to execute a deed to the Property and other conveyance documents in place (including, but not limited to the appropriate transfer tax returns), and stead of members of the Debtors, or other authorized parties of the Debtors, and shall have no other powers or authority with respect to the Debtors. The Disbursing Agent shall have no obligation to file income tax returns or similar reports with the applicable taxing authorities, which obligations shall remain with the Debtors.

### B.     Manner of Payment

Unless otherwise set forth herein or the Confirmation Order, all distributions of Cash to the Holders of Allowed Claims and Allowed Interests shall be made from the Plan Funds, including the Disputed Claim Reserve and the Brooklyn Lender Cash Contribution, as applicable, by the Disbursement Agent. At the option of the Disbursement Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements. The Disbursement Agent may employ or contract such third parties as may be necessary to assist in or perform the distribution of Cash under the Plan.

### C.     Timing and Calculation of Distributions

Unless otherwise provided in the Plan, each Holder of an Allowed Claim or Allowed Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class on the Closing Date or as soon as reasonably practicable thereafter. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**D.      Claims Objection Deadline**

Subject to further extension by the Plan Proponent, objections to the allowance of any Claim may be filed no later than the later to occur of (i) thirty (30) days after the Effective Date or (ii) thirty (30) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed.

**E.      Prosecution of Objections**

After the Confirmation Date, only the Debtors and the Plan Proponent shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims.

**F.      No Distribution Pending Allowance**

Notwithstanding anything to the contrary herein, no payment or distribution of any kind shall be made with respect to any portion of a Claim that is a Disputed Claim unless and until all objections to such Claim are resolved by Final Order. For the avoidance of doubt, any portion of a Claim that is an Allowed Claim shall be timely paid pursuant to the provisions of the Plan.

**G.      Undeliverable Distributions**

If the distribution to the Holder of any Claim or Interest is returned to the Disbursement Agent as undeliverable, no further distribution shall be made to such Holder unless and until the Dispersing Agent is notified in writing of such Holder's then current address. Undeliverable distributions shall remain in the possession of the Dispersing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to the Plan.

Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to this Article V, within thirty (30) days after the end of each calendar quarter following the Closing Date, the Dispersing Agent shall make distributions of all Cash that has become deliverable during the preceding quarter. Each such distribution shall include the net return yielded from the investment of any undeliverable Cash from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

Nothing contained in the Plan shall require the Dispersing Agent to attempt to locate any Holder of an Allowed Claim or an Allowed Interest.

**H.      Unclaimed Distributions**

Any Cash or other assets to be distributed under the Plan shall revert to the Estates and distributed in accordance with the terms of this Plan if it is not claimed by the entity entitled thereto before the later of (i) one year after the Closing Date; (ii) one year after such scheduled payment to such entity under the Plan; or (iii) one year after an Order allowing the Claim of that entity becomes a Final Order, and such entity's claim shall be reduced to zero.

## I.    Set-offs

The Debtors, may, but shall not be required to, set off against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of action and liabilities of any nature that the Debtors may hold against the Holder of an Allowed Claim, *provided, however*, that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtors of any such claims, obligations, rights, causes of action and liabilities that the Debtors may have against such Holder. To the extent Debtors elect to effectuate a set-off, it shall notify the Holder of the Allowed Claim in writing at least ten (10) days prior to effectuating the set-off. To the extent the Holder of an Allowed Claim objects to the set-off, a written objection shall be provided to the Debtors, no later than three (3) days prior to the set-off date or the objection shall be waived. **Notwithstanding anything to the contrary herein, no Allowed Claim of the Plan Proponent shall be subject to set-off.**

## J.    Estimation of Claims

The Debtors and/or the Plan Proponent may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors and/or the Plan Proponent, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. **Notwithstanding anything to the contrary herein, no Claims of the Plan Proponent shall be subject to estimation pursuant to Section 502(c) of the Bankruptcy Code.**

## K.    The Disputed Claim Reserve

On any date that distributions are to be made under the terms of the Plan to a particular Class of Claims, the Dispersing Agent shall deposit in the Disputed Claim Reserve, Cash that would be distributed on such date on account of Disputed Claims in such Class of Claims, plus any and all interest that would accrue on the Disputed Claims during the pendency of any such dispute, as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto in accordance with the treatment of Allowed Claims set forth in Article III.B. *supra*. The Dispersing Agent shall also deposit any interest, dividends or other proceeds of such Cash. Cash in the Disputed Claim Reserve, together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

To the extent practicable, the Dispersing Agent may invest any Cash in the Disputed Claim Reserve (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; provided, however, that the Dispersing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash or proceeds.

On the later of (i) seven (7) Business Days after the entry of a Final Order resolving an objection to a Disputed Claim and (ii) the Closing Date, the Dispersing Agent shall distribute all Cash to which a Holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim. The Cash in the Disputed Claim Reserve, including the allocable portion of the net return yielded from any investment thereof, if any, remaining after all Disputed Claims have been resolved by Final Order shall revert to the Plan Funds for distribution pursuant to the terms of this Plan.

### ARTICLE VI.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.    Assumption and Assignment of Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided in the Plan or otherwise agreed to by the Debtors and the counterparty to an Unexpired Lease, any Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed **automatically assumed**, effective as of the Effective Date, pursuant to Sections 365 and 1123 of the Bankruptcy Code, and assigned to the Purchaser of the Assets, unless such Unexpired Lease: (i) is specifically described in the Purchase Agreement as being rejected in connection with Confirmation of the Plan or under the Purchase Agreement; (2) as of the Effective Date is subject to a pending motion to reject such Unexpired Lease; (3) was previously assumed or assumed and assigned to a third party during the pendency of the Chapter 11 Cases; or (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan.

On the Effective Date, except as otherwise provided in the Plan or otherwise agreed to by the Debtors and the counterparty to an Executory Contract, all Executory Contracts not previously assumed, assumed and assigned, or rejected shall be deemed **rejected,** effective as of the Effective Date, pursuant to Sections 365 and 1123 of the Bankruptcy Code, other than those assumed by a Debtor before the Confirmation Date.

**B.    Assumption Cure Payments**

Except as otherwise agreed to by the parties, on the Closing Date, the Purchaser shall cure any and all undisputed defaults under any Executory Contract or Unexpired Lease that is assumed by the Purchaser in accordance with Section 365 of the Bankruptcy Code. Unless the parties to the contract or lease agree otherwise, all disputed defaults that are required to be cured shall be cured by the later to occur of (i) seven (7) Business Days after the entry of a Final Order determining the amount, if any, of the Debtors' liability with respect thereto and (ii) the Closing Date.

18

## C.    Rejection Claims

Any Allowed Claim arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as a General Unsecured Claim.  A Proof of Claim with respect to any General Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtors no later than seven (7) Business Days after the later of: (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a bar date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely filed unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), and (ii) the Closing Date.  Any such Proof of Claim not timely filed and served shall be deemed discharged, and the Holder of the Claim shall not be entitled to participate in any distribution under the Plan.

## ARTICLE VII.  RELEASE, INJUNCTION, EXCULPATION AND RELATED PROVISIONS

## A.    Binding Effect

On the Effective Date, the terms of this Plan shall be immediately effective and enforceable and shall bind all Holders of Claims against or Interests in the Debtors, whether or not such Holders accept the Plan.

## B.    No Discharge

Pursuant to Section 1141(d)(3) of the Bankruptcy Code, neither the Plan nor Confirmation shall discharge any Claim against any of the Debtors, and nothing herein or in the Confirmation Order shall or shall be deemed to discharge, release or exculpate any of the Debtors from any Claims, all of which Claims shall survive the Confirmation and effectiveness of the Plan.

## C.    Injunction

*Except as otherwise provided under a Final Order entered by the Bankruptcy Court, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin, with respect to any Claim held against either of the Debtors' Estates as of the date of entry of the Confirmation Order, (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Assets, or from property of the Estates that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any Lien or encumbrance against the Assets and any property of the Estates that has been or is to be, distributed under the Plan.  Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Assets, or from property of the Estates, any Claim, obligation or debt that was held against the Assets or from property of the Estates by any person or entity as of the Confirmation Date except pursuant to the terms of the Plan.  The entry of the Confirmation Order shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.*

*For the avoidance of doubt, this Article VII shall not apply to Brooklyn Lender in any suit, action, or other proceeding to enforce its valid and enforceable Liens or collect upon any guaranty related to the Assets or property of the Estates, against the Debtors' Interest Holders or any affiliate of the Debtors that is not a Debtor in these Chapter 11 Cases.*

**D.    Limitation of Liability**

*Section 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan.  To the extent permitted by Section 1125(e) of the Bankruptcy Code, as set forth in this Article VII of the Plan, none of the Released Parties shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with this case or the Plan except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing contained herein shall limit the liability of professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct.  From and after the Closing Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to this Article VII of the Plan. No limitation of liability shall apply to the Debtors or their Related Persons.*

**E.    Releases by the Debtors**

*Pursuant to Section 1123(b) of the Bankruptcy Code for good and valuable consideration, on and after the Effective Date, the Released Parties are deemed released by the Debtors from any and all claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors or the estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any of the foregoing releases, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan or related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing releases shall not operate to waive or release any Released Party on account of liability that is judicially determined pursuant to a Final Order to have resulted from such Released Party's fraud, willful misconduct, gross negligence, or breach of fiduciary duty (if any).  Neither the Debtors nor their Related Persons shall receive any release provided for herein.*

**F.**     **Releases by the Holders of Claims and Interests**

*To the fullest extent permissible under applicable law, except as otherwise provided in the Plan or the Confirmation Order, upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the Holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Released Parties, on the one hand, and each Creditor and Interest Holder of the Debtors on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtors, their Creditors or Interest Holders ever had or now have against the Released Parties through the Closing Date in connection with their Claim or Interests (including, without limitation, any claims the Debtors may assert on their own behalf or on behalf of Creditors or Interest Holders pursuant to Sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtors absent bankruptcy, or any claims based on the negotiation, submission and confirmation of the Plan); provided, however, that the foregoing releases shall not operate to waive or release any Released Party on account of liability that is judicially determined pursuant to a Final Order to have resulted from such Released Party's fraud, willful misconduct, gross negligence, or breach of fiduciary duty (if any).  Nothing contained in this Section 8.5 shall limit the liability of professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct.  Neither the Debtors nor their Related Persons shall receive any release provided for herein.*

**ARTICLE VIII.  CONDITIONS TO THE OCCURRENCE OF THE EFFECTIVE DATE**

**A.**     **Conditions to Confirmation**

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived in accordance with the terms of the Plan:

(a)     The Plan shall be in form and substance acceptable to the Plan Proponent.

(b)     The Bankruptcy Court shall have approved the Plan Supplement in form and substance acceptable to the Plan Proponent.

(c)     The Bankruptcy Court shall have entered the Confirmation Order, which shall grant final approval of the Plan, in form and substance acceptable to the Plan Proponent.

(d)     The Bankruptcy Court shall have approved the Sale and Bid Procedures.

**B.**     **Conditions to the Occurrence of the Effective Date**

It shall be a condition to the occurrence of the Effective Date of the Plan that the following conditions shall have been satisfied or waived in accordance with the terms of the Plan:

(a)     The Confirmation Order shall be a Final Order and not subject to any stay.

21

(b)     The Closing Date has occurred.

(c)     Brooklyn Lender has funded the Brooklyn Lender Cash Consideration.

(d)     Claims held by the Israeli Investors are disallowed by Final Order.

(e)     Except to the extent not required under the Confirmation Order or other order of the Bankruptcy Court, all governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained or entered, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that could restrain, prevent or otherwise impose materially adverse conditions on such transactions.

(f)     All documents and agreements necessary to implement the Plan, as listed and set forth in the Plan Supplement, will have (a) been tendered for delivery and (b) been effected or executed by all entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of the Plan as expressly set forth herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

## ARTICLE IX.  MISCELLANEOUS PROVISIONS

### A.     Statutory Fees

On the Effective Date, as may be required, the Debtors shall pay all fees incurred pursuant to Section 1930 of Title 28 of the United States Code, together with interest, if any, pursuant to Section 3717 of Title 31 of the United States Code for the Chapter 11 Cases; *provided, however,* that after the Effective Date such fees shall only be payable with respect to the Chapter 11 Cases until such time as a Final Order closing, converting or dismissing the Chapter 11 Cases is entered.

### B.     Amendments

The Plan may be altered, amended or modified by the Plan Proponent, at any time before the Confirmation Date and any time prior to substantial consummation of the Plan, subject to the restrictions provided in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

### C.     Revocation

The Plan Proponent reserves the right to amend, revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Plan is amended, revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors; or (ii) prejudice in any manner the rights of the Plan Proponent or any other party in any further proceedings involving the Debtors or their Estates.

**D.        Request for Relief Under Section 1129(b)**

If the Plan is accepted by one or more, but not all, Impaired Classes of Claims, the Plan Proponent may request confirmation under Section 1129(b) of the Bankruptcy Code of any Class of Claims or Interests, subject to any modification of the Plan made pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**E.        Filing of Additional Documents**

Except as otherwise provided in the Plan, on or before the Effective Date, the Plan Proponent may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including, but not limited to, the Plan Supplement.

**F.        Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE X.  RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Bankruptcy cases for, among other things, the following purposes:

(a)        to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(b)        to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(c)        to insure that distributions to Holders of Allowed Claims and Allowed Interests, if any, are accomplished as provided herein;

(d)        to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(e)        to adjudicate any dispute related to the Sale and Bid Procedures, the Auction or the Sale;

(f)        to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan, including the Confirmation Order, or any other order of the Bankruptcy Court;

(g)        to hear and determine any application to modify the Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the

Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)      to hear and determine all applications under Sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(i)      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Purchase Agreement or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)      to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation thereof;

(k)      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(l)      to hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(m)      to adjudicate, decide or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

(n)      to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(o)      to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and Title 28 of the United States Code;

(p)      to enter a Final Order closing the Chapter 11 Cases;

(q)      to enforce all orders previously entered by the Bankruptcy Court;

(r)      to recover all assets of the Debtors and property of each Debtor's Estate, wherever located;

(s)      to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory; and

(t)      to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting there from.

[*Remainder of page intentionally left blank*]

Dated: March 11, 2021
New York, New York

**KASOWITZ BENSON TORRES LLP**

By: /s/   *Matthew B. Stein*_____
    Jennifer S. Recine
    David S. Rosner
    Matthew B. Stein
    1633 Broadway
    New York, NY 10019
    Telephone:  (212) 506-1717
    Facsimile:  (212) 506-1800

    *Attorneys for Brooklyn Lender LLC*