UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re                                                         Chapter 11

        53 STANHOPE LLC, *et al*,[2]                  Case no.  19-23013 (RDD)
                                                        Jointly Administered

                                  Debtors.

------------------------------------------------------------x

## FOURTH AMENDED PLAN OF REORGANIZATION FOR 53 STANHOPE LLC, 325 FRANKLIN LLC, 618 LAFAYETTE LLC, 92 SOUTH 4TH ST LLC, 834 METROPOLITAN AVENUE LLC. 1125-1133 GREENE AVE LLC, APC HOLDING 1 LLC; EIGHTEEN HOMES LLC, AND 1213 JEFFERSON LLC

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

ATTORNEYS FOR THE DEBTORS

_____

[2] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC  Holding 1 LLC (0290); D&W Real Estate Spring LLC (4591); Meserole and Lorimer  LLC (8197); 106 Kingston  LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155).

## INTRODUCTION

1.      53 Stanhope LLC, 325, Franklin LLC, 618 Lafayette LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC, APC  Holding 1 LLC; Eighteen Homes LLC, and 1213 Jefferson LLC (each a "Debtor", and collectively, the "Debtors") submit this joint plan of reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code.  UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG EACH DEBTOR AND EACH DEBTOR'S CREDITORS AND INTEREST HOLDERS (AS SUCH TERMS ARE DEFINED BELOW).

## DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.      "Administrative Expense" Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code.

2.      "Administrative Expense Claim" shall mean a Claim for payment of an Administrative Expense.

3.      "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

4.      "Allowed Amount" shall mean the amount of a Claim:  (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on a

2

Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

5.      "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on a Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

6.      "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

7.      "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

8.      "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

9.      "Bankruptcy Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.).

10.     "Bankruptcy Court" shall mean the Court as defined below.

11.     "Bar Date" shall mean August 9, 2019.

12.     "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

13.     "Claim" shall have the meaning set forth in § 101(5) of the Bankruptcy Code.

14.     "Claimant" shall mean the holder of a Claim.

3

15.     "Confirmation Date" shall mean the date of the entry of the Confirmation

Order.

16.     "Confirmation Hearing" shall mean the hearing pursuant to the

Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed

confirmation of the Plan.

17.     "Confirmation Order" shall mean the order of the Court confirming the

Plan.

18.     "Court" shall mean the United States Bankruptcy Court for the Southern

District of New York.

19.     "Creditor" shall mean any entity that holds a Claim against a Debtor.

20.     "Debtors" shall mean 53 Stanhope LLC, 325, Franklin LLC, 618 Lafayette

LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC, APC

Holding 1 LLC, Eighteen Homes LLC, and 1213 Jefferson LLC.

21.     "Disputed Claim" shall mean the whole or any portion of any Claim

against a Debtor to which an objection is timely filed as to which a Final Order has not been

entered allowing or disallowing such Claim or any portion thereof.

22.     "Disputed Claim Reserve" shall mean Cash to be set aside by the Debtors

on the Effective Date in an IOLA account maintained by Debtors' counsel, in an amount equal to

the amount that would have been distributed to the holders of Disputed Claims had such Claims

been deemed Allowed Claims on the Effective Date, or in such other amount as may be

approved by the Bankruptcy Court.

4

23.    "Effective Date" shall mean the Date after the Confirmation Order is a Final Order at which time the Properties shall be transferred to the Purchaser.

24.    "Estate" shall mean the estate of each Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

25.    "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

26.    "Federal Action" shall mean the certain dismissed lawsuit captioned Jacob Schonberg, et al v. Yechezkel Strulovitch a/k/a Chaskiel Strulovitch, et al., Case No. 17-cv-02161, filed in the United States District Court for the Eastern District of New York.

27.    "Final Order" shall mean an order of a court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

28.    "Impaired" shall mean not Unimpaired.

29.    "Interest" shall mean an existing ownership interest in a Debtor.

30.    "Interest Holder" shall mean a holder and owner of an existing Interest in a Debtor.

31.    "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

32.    "Lien" shall mean a valid and enforceable charge against or interest in property to secure payment of a debt or performance of an obligation.

33.    "Mortgagee" shall mean Brooklyn Lender LLC.

5

34.    "Petition Date" shall mean May 20, 2019.

35.    "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

36.    "Plaintiffs" shall mean the Federal Action plaintiffs.

37.    "Professional(s)" shall mean any entity or person employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to sections 327, 328, 329, 330 and/or 331 of the Bankruptcy Code.

38.    "Professional Fee Claim" shall mean those fees and expenses claimed by a Professional pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code.

39.    "Professional Fee Claim Bar Date" shall mean the last day for a Professional to file a Professional Fee Claim, which shall be no later than thirty (60) days after the Effective Date.

40.    "Properties" and each "Property" shall mean the real properties itemized on Exhibit D to the Plan.

41.    "Property Sale Proceeds" shall mean the proceeds of sale of the Properties, less all charges to be incurred in connection with the marketing, negotiation, documentation, execution, and closing of the sale of the Properties, including, without limitation, any fees and expenses paid to retain an auctioneer, real estate broker, and/or special real estate counsel.

42.    "Purchaser" shall mean the purchaser of the Properties pursuant to the Plan.

6

43.     "Reorganized Debtors" shall mean the Debtors on and after the Effective Date.

44.     "Secured Claim" shall mean a Claim secured by a Lien on property included within a Debtor's Estate, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent provided in Section 506 of the Bankruptcy Code.

45.     "Secured Creditor" shall mean the owner or holder of a Secured Claim.

46.     "Unimpaired" shall mean not impaired under section 1124 of the Bankruptcy Code.

47.     "Unsecured Claim" shall mean a Claim that is not a Secured Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include Administrative Expense Claims.

48.     "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION, TREATMENT AND VOTING

### Class 1

49.     **Classification** – Allowed Secured Claims for New York City real estate taxes and other non-Class 2 Liens.  Annexed to the Plan as Exhibit B is a breakdown of the amount due to Class 1, by Debtor. The Debtors estimate the aggregate amount of all Class 1 Claims is approximately $87,934.54 (as of 4/8/2021).

50.    **Treatment** -- Payment in Cash on the Effective Date of Allowed Amount of each such Claim, including Internal Revenue Service Claims not set forth on Exhibit B, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

51.    **Voting** – Unimpaired under section 1124 of the Bankruptcy Code and deemed to accept the Plan.

### Class 2

52.    **Classification** –Allowed Secured Claims of the Mortgagee.  Annexed to the Plan as Exhibit B is a breakdown of the estimated Allowed Secured Claims of the Mortgagee, by Debtor.  The Debtors estimate the aggregate of all Class 2 Claims is $18,455,337.70 (as of 5/31/21).

53.    **Treatment** –Each Debtor shall pay the Class 2 Claimant in Cash on the Effective Date the net Property Sale Proceeds from the sale of its Property after payment of Administrative Claims, Class 1 Claims, Class 3 Claims and Priority Tax Claims, up to the Allowed Amount of such Claim 2 Claim plus interest at the applicable contractual rate as it accrues from the Petition Date through the date of payment. The Mortgagee asserts that it is also entitled to $4,500,000 for legal fees.  As it relates to these Debtors, the Bankruptcy Court held that the Mortgagee's acceleration was improper.  These Debtors, therefore, do not believe that the Mortgagee is entitled to any legal fees except for the small amounts incurred in asserting maturity defaults.

54.    **Voting** – Unimpaired under section 1124 of the Bankruptcy Code and deemed to accept the Plan..

8

## Class 3

55.    **Classification** – Allowed Priority Claims under sections 507(a)(3),(4),(5),(6), and (7) of the Bankruptcy Code.  Annexed to the Plan as Exhibit B is a breakdown of such estimated Allowed Priority Claims, by Debtor. $0.

56.    **Treatment** – Payment in Cash on the Effective Date of Allowed Amount of each such Claim, including Internal Revenue Service Claims not set forth on Exhibit B, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

57.    **Voting --** Unimpaired under section 1124 of the Bankruptcy Code and deemed to accept the Plan..

## Class 4

58.    **Classification** – Allowed General Unsecured Claims.  Annexed to the Plan as Exhibit B is a breakdown of estimated Allowed General Unsecured Claims by Debtor. The Debtors estimate that the aggregate amount of all Class 4 Claims is approximately$1,268,154.17.

59.    **Treatment** – Each Debtor shall pay each Class 4 Claimant in Cash on the Effective Date, its pro-rata share of the net Property Sale Proceeds from the sale of its Property after payment of Administrative Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims and Priority Tax Claims, up to the Allowed Amount of its Class 4 Claim plus interest at the applicable contractual rate as it accrues from the Petition Date through the date of payment.

60.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## Class 5

61.    **Classification** – Allowed Interest Holders.

62.    **Treatment** – Each Debtor shall pay each Interest Holder in Cash on the Effective Date, its pro-rata share of the net Property Sale Proceeds from the sale of its Property after payment of Administrative Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims and Priority Tax Claims.

63.    **Voting –** Impaired and entitled to vote to accept or reject the Plan.

## UNCLASSIFIED PRIORITY TAX CLAIMS

64.    Annexed to the Plan as Exhibit B is breakdown of Priority tax Claims under Section 507(a)(8) of the Bankruptcy Code by Debtor.  The Debtors estimate that the amount due by all Debtors in respect of such claims total approximately $0.  The treatment of such Claims, if any, including Internal Revenue Service Claims not set forth on Exhibit B, shall be payment in Cash on the Effective Date, of the Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

65.    Allowed Administrative Expense Claims, including professional fees, shall be paid in full in Cash on the later of the Effective Date and the date such Administrative Expense Claim becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment; provided, however, that Allowed Administrative Expense Claims representing obligations

incurred in the ordinary course of business or under Executory Contracts assumed by the Debtors shall be paid in full or performed by the Debtors in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  The Debtors estimate that through the entry of a final decree in this case, Allowed Administrative Expenses will total approximately $564,998.51 for legal fees, which amount shall be escrowed for payment when Allowed, and then paid in the amounts Allowed.

66.    Any outstanding U.S. Trustee fees and any statutory interest thereon shall be paid in full in Cash on the Effective Date.  Thereafter, United States Trustee fees and any statutory interest thereon shall be paid until entry of final decree or until Bankruptcy Case is converted or dismissed.  The Debtors shall file quarterly post-Confirmation operating reports.

## MEANS FOR IMPLEMENTATION

67.    **Source of Funds** –The Properties shall be sold subject to sections 363(b), 1123(a)(6), 1129 and 1141 of the Bankruptcy Code and the "Sale and Auction Procedures" annexed to the Plan as Exhibit A.  The sale expenses and Effective Date payments under the Plan will be paid from the proceeds of such sale.

68.    In general, the Sale and Auction Procedures provide for a sale of the Properties at an auction sale to be conducted on a date to be announced at the offices of Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022.  The Properties shall be sold "as is."  Bidding shall be limited to all cash offers.  The minimum opening aggregate bid and the minimum opening Property-by Property bids will be in amounts to be announced no later than seven days in advance of the auction after consultation with the Mortgagee and Rosewood Properties.  The Mortgagee shall have the right under section 363(k)

11

of the Bankruptcy Code to credit bid for each Debtors' property up to the Allowed Amount of its

Secured Claim against such Debtor and may assign such bid to its designee.  All prospective

bidders except the Mortgagee are required to deposit 10% of their opening bid (the "Deposit") in

escrow with the undersigned counsel by bank check or wire deposit. The sale will be subject to

the approval of the Bankruptcy Court.  The highest bidder shall be the purchaser (the

"Purchaser") of the Properties, free and clear of all liens, claims and encumbrances, with any

such liens, claims and encumbrances to attach to the proceeds of sale.  The Deposit shall be non-

refundable. In the event the Purchaser closes on or before thirty (30) days after the entry of an

order approving the sale, the Deposit shall be applied to the purchase price.  In the event

Purchaser fails to close on or before fifteen days after the entry of an order approving the sale,

the Deposit shall be remitted to the Debtors.  Time shall be of the essence in the closing of this

transaction.  In the event Purchaser fails to close as set forth herein, then the Debtors shall have

the right to accept the bid next highest in amount to the original Purchaser's bid.

69.    In order a bid to be considered, it must be a "Qualified Bid."  A potential

bidder will be deemed to be a "Qualified Bidder."  A Qualified Bid may be either a Qualified

Aggregate Bid or a Qualified Partial Bid.

70.    A bid will be considered a "Qualified Aggregate Bid" only if the Bid is for

the sale of all of the Properties and fulfills the other bid requirements.  A bid will be considered a

Qualified Partial Bid if (a) it is for less than all of the Properties, only if the Qualified Partial Bid,

when combined with other additional non-overlapping Qualified Partial Bids, if accepted and

executed without modification, exceed the value of, or be considered a better offer, than any

Qualified Aggregate Bid, and (b) fulfils the other bid requirements.

71.    The transfer of the Properties under the Plan shall be free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and to be disbursed under the Plan, provided, however, that the Mortgagee shall provide for an assignment of each of its mortgage and an assumption by the Purchaser in connection with the sale of the Properties under the Plan.

72.    Marketing will be performed by Rosewood Group under the direction of Greg Corbin (the "Broker"), who shall market to prospective well-qualified purchasers that are ready, willing and able to purchase the Properties.  The Broker will use its own staff to advertise and promote the sale of the Properties through its network of contacts and database to market the Properties.  Additionally, the Broker will, among other things, (i) vet any potential buyers, (ii) conduct all property tours, and (iii) assist in price negotiations.  The Broker will provide real time updates as to the status of all marketing efforts, as well as feedback from potential buyers and will conduct an auction of the Properties.

73.    Subject to further Broker consultation, follows, the sale process shall proceed as follows:

    Week 1:        finalize marketing materials
    Weeks 2 to 3:  "quiet" marketing campaign to top investors
    Week 4:        press releases
    Week 5:        mass email blasts
    Weeks 6 to 7:  posts to all industry websites
    Week 8:        posts to all social media
    Week 9:        sign stalking horse contract if one has not been executed prior
    Week 10:       repeat select portions of the aforementioned
    Week 11:       bid deadline
    Week 12:       auction

13

74.    **Sale Approval** The sale shall be subject to a post-confirmation sale hearing.  The Plan requires that the post-confirmation sale order contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the Debtors' sale, and the Purchaser's purchase, of the Properties pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Properties to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the Purchaser, as transferee of the Properties, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Properties to the Purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Properties to the Purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

75.    **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Reorganized Debtors free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

76.    **Execution of Documents** -- The Debtors shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

14

77.    **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

78.    **Preservation of Claims** -- All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all Avoidance Actions shall be preserved for the benefit of the Reorganized Debtors' estate, provided, however, that the Reorganized Debtors shall have sole authority for prosecuting any such claims.  The Debtors' rights to assert claims, including without limitation, tort, contract and lender liability claims against Brooklyn Lender are fully preserved.

79.    **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(a), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Properties by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer

15

under, in furtherance of, or in connection with, the Plan, including, without limitation, the

Confirmation Order, shall not be subject any applicable document recording tax, stamp tax,

conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or

governmental assessment.

        80.   **Release of Liens** – Except as otherwise provided for in the Plan, (a) each

holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Debtors

any and all Collateral that secures or purportedly secures such Claim, as pertains to the

Properties or such Lien shall automatically, and without further action by the Debtors be deemed

released, and (y) execute such documents and instruments as the Debtors requests to evidence

such Claim holder's release of such property or Lien.

## CONDITIONS TO CONFIRMATION AND OCCURRENCE OF EFFECTIVE DATE

        81.   The Confirmation Order shall be a Final Order and a post-confirmation

sale order shall provide for the sale of the Properties to Purchaser or Purchasers.  The

Confirmation Order shall be in a form acceptable to the Debtors.  These conditions to

confirmation of the Plan and to the occurrence of the Effective Date are for the benefit of the

Debtors.  The requirement that a particular condition be satisfied may be waived in whole or part

by the Debtors.

## DISTRIBUTIONS TO CREDITORS

        82.   Each Debtor shall be disbursing agent under its Plan without a bond.  The

Debtors reserve the right to file objections to Claims in the event grounds exist to object to

particular Claims, for a period of 60 days after the Effective Date; or in the case of a Claim based

on the rejection of an Executory Contract, 60 days after such proof of Claim is filed.  On the

16

initial distribution date and on each distribution date as may thereafter be necessary, the Debtors

shall maintain a Disputed Claim Reserve for the holders of Disputed Claims as of such date in a

sum not less than the amount required to pay each such Disputed Claim under the Plan if such

Claim was Allowed in full.  To the extent that a Disputed Claim becomes an Allowed Claim, the

distributions reserved for such Allowed Claim, shall be released from the Disputed Claim

Reserve and paid to the holder of such Allowed Claim.  After all the amounts of all Disputed

Claims have been fixed, the balance of the Disputed Claim Reserve shall thereafter be paid in

accordance with the Plan.

## EXECUTORY CONTRACTS

83.    Tenant leases shall be deemed assumed under the Plan and assigned to the

Purchaser under sections 365 and 1123 of the Bankruptcy Code.  Except for any other Executory

Contracts that a Debtor assumes before the Confirmation Date, all other Executory Contracts

shall be rejected under the Plan on the Effective Date pursuant to sections 365 and 1123 of the

Bankruptcy Code.  In the event of a rejection which results in damages, a proof of Claim for such

damages must be filed by the non-Debtor party with the Court on or before sixty (60) days after

the Effective Date. All Allowed Claims arising from the rejection of any Executory Contract

shall be treated as Class 4 Claims.  Any Claim arising from the rejection of any Executory

Contract not filed with the Court within the time period provided herein shall be deemed

discharged and shall not be entitled to participate in any distribution under the Plan.

## RETENTION OF JURISDICTION

84.    <u>Retention of Jurisdiction</u>.  The Court shall have jurisdiction over all

matters arising under, arising in, or relating to each Debtor's Bankruptcy Case to the fullest

17

extent permitted including, but not limited to, with respect to section 1142 of the Bankruptcy

Code and proceedings:

- To consider any modification of the Plan under Section 1127 of the Bankruptcy Code;

- To hear and determine all Claims, controversies, suits and disputes against the Debtors to the full extent permitted under 28 U.S.C. §§ 1334 and 157;

- To hear, determine and enforce all Claims and causes of action which may exist on behalf of the Debtors or a Debtor's Estate, including, but not limited to, any right of a Debtor or a Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

- To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

- To value assets of the Estate.

- To enforce the Confirmation Order, the final decree, and all injunctions therein;

- To enter an order concluding and terminating the Bankruptcy Case;

- To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

- To determine all questions and disputes regarding title to the assets of the Debtors.

- To re-examine Claims which may have been Allowed or disallowed for purposes of voting, and to determine objections which may be filed to any Claims.

## **GENERAL PROVISIONS**

85.    **Headings**.  The headings in the Plan are for convenience of reference only

and shall not limit or otherwise affect the meaning of the Plan.

18

86.    **Disputed Claims**.  The Debtors shall hold in escrow the distribution that would be due on account of any Disputed Claim.  No Disputed Claims shall be paid until such Claim becomes an Allowed Claim.

87.    **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

88.    **Other Actions**.  Nothing contained herein shall prevent the Debtors, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

89.    **Modification of Plan**.  The Debtors may seek amendments or modifications to the Plan in accordance with Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtors may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan

## INJUNCTION AND DISCHARGE

90.    **Injunction**.  The Confirmation of this Plan shall constitute an injunction of the Court against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtors or their property or properties, any obligation or debt except pursuant to the terms of the Plan.

## CLOSING THE BANKRUPTCY CASE

91.    Upon substantial consummation, the Debtors may move for a final decree to close the Bankruptcy Case and to request such other orders as may be just.

19

Dated: New York, New York
       April 19, 2021

                                        53 STANHOPE LLC ET AL.

                                  By:     <u>s/ David Goldwasser, as authorized signatory of GC Realty Advisors, LLC, as Vice President</u>

                                        BACKENROTH FRANKEL & KRINSKY, LLP
                                        Attorneys for Debtors

                                  By:     <u>s/Mark A. Frankel</u>
                                        800 Third Avenue
                                        New York, New York 10022
                                        (212) 593-1100

Exhibit A

## EXHIBIT A TO PLAN

## BIDDING AND AUCTION PROCEDURES

These Terms and Conditions of Sale are promulgated in connection with the auction sale (the "Sale") of the following real property (each a "Property" and collectively, the "Properties"):

| Debtor | Property |
|---|---|
| 53 Stanhope LLC<br>325 Franklin LLC<br>(Joint Owners) | 53 Stanhope Street Brooklyn NY<br>325 Franklin Avenue, Brooklyn NY |
| 618 Lafayette LLC | 618 Lafayette Ave<br>Brooklyn, New York |
| Eighteen Homes LLC | 263 18th Street, Brooklyn, NY |
| 1213 Jefferson LLC | 1213 Jefferson Avenue, Brooklyn, NY |
| 92 South 4th LLC<br><br>834 Metropolitan LLC<br>(Joint Owners) | 92 South 4th Street, Brooklyn, NY<br>834 Metropolitan Ave, Brooklyn, NY |
| 1125-1131 Greene Avenue, LLC | 1125 Greene Avenue, Brooklyn, NY<br>1127 Greene Avenue, Brooklyn, NY<br>1129 Greene Avenue, Brooklyn, NY<br>1131 Greene Avenue, Brooklyn, NY<br>1133 Greene Avenue, Brooklyn, NY |
| APC Holding 1 LLC | 568 Willoughby Avenue, Brooklyn, NY |

Time and Place of Sale:  The Sale will be held on _____, 2021 at ____ __ m. at the offices of Backenroth Frankel & Krinsky, LLP, 800 Third Avenue New York, New York 10022.

Sale Pursuant to Chapter 11 Plan:  The Sellers of the Properties are 53 Stanhope LLC, 325, Franklin LLC, 618 Lafayette LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC, APC Holding 1 LLC; Eighteen Homes LLC, and 1213 Jefferson LLC. The sale shall be conducted pursuant to Bankruptcy Code sections 363(b), 1123(a)(6), 1129 and 1141 and the Chapter 11 Plan of Reorganization (the "Plan") proposed by the Debtors as the Plan proponent ("Proponent").

Sale free and Clear of Liens:  The Sale of the Properties shall be conducted pursuant to the Proponent's Plan of Reorganization free and clear of liens, claims, and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and disbursed under the Plan.

Qualification to Bid:   In order to be qualified to bid on the Properties, within seven days prior to the commencement of the Sale, each prospective bidder (except the Brooklyn Lender LLC or its designee ("Mortgagee")) must deliver to the Proponent (a) a bank check in the amount of 10% of its opening bid (the "Qualifying Deposit") payable to "Backenroth Frankel & Krinsky, LLC, as

Attorneys" (b) evidence reasonably demonstrating such bidder's ability to consummate a sale on the terms proposed, and (c) a written offer to purchase substantially in the form annexed hereto. No later than one business day before the Sale, each bidder will be notified by the Proponent as to whether the Proponent deems such bidder qualified to bid at the Sale.

A qualified bid may either be a qualified aggregate bid or a qualified partial bid. A bid will be considered a qualified aggregate bid only if the bid is for the sale of all of the Properties and fulfills the other bid requirements. A bid will be considered a qualified partial bid if (a) it is for less than all of the Properties, and only if the qualified partial bid, when combined with other additional non-overlapping qualified partial bids, if accepted and executed without modification, exceed the value of, or be considered a better offer, than any qualified aggregate bid, and (b) fulfils the other bid requirements.

Bidding:  Bidding shall be conducted openly at the Sale. Bidding shall be limited to all cash offers. Bidding shall be limited to all cash offers. The minimum opening aggregate bid and the minimum opening Property-by Property bids will be in amounts to be announced no later than seven days in advance of the auction after consultation with the Mortgagee and Rosewood Properties. The Mortgagee shall have the right under section 363(k) of the Bankruptcy Code to credit bid for each Debtors' property up to the Allowed Amount of its Secured Claim against such Debtor and may assign such bid to its designee.

Successful Bidder Additional Deposit: At the Sale, once a bidder is determined to have made the highest or best bid for the Property at the Sale (the "Successful Bidder"), bidding shall be deemed closed and no additional bids will be considered. Within one business day after the Successful Bidder is determined, the Successful Bidder (except for the Mortgagee) shall be required to increase the Qualifying Deposit to an amount equal to ten percent of the winning bid, which amount shall serve as a good faith deposit against payment of the Purchase Price. At the conclusion of the Sale, the Proponent's counsel will return the Qualifying Deposits to all other bidders except the Second Highest Bidder.

Sale Approval Hearing:  A hearing will be conducted by the Bankruptcy Court on approval of the sale on the ___ day of _____, 2020 at _____, at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008.

Sale Approval Order:  the sale approval order shall approve the Sale, and in connection therewith, shall contain the following findings of fact and conclusions of law with respect to each Property: (a) that the Terms and Conditions of the Sale are fair and reasonable, (b) that the Sale and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the Purchaser, as transferee of the Property, is a good faith Purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code §

363(m), (e) the sale of the Property to the Purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

Closing:  With respect to each Property, the Successful Bidder must pay the balance of the Purchase Price for the Property (the difference between the amount of the successful bid and the Qualifying Deposit) to the Proponent, by bank check, or wire transfer at the closing of title to the Property (the "Closing").  With respect to each Property, the Successful Bidder must close title to the Property at a date that is no more than thirty (30) days after the Order by the Bankruptcy Court is entered, TIME BEING OF THE ESSENCE as to the Successful Bidder, although such date may be extended solely by the Proponent.

Transfer Tax:  Under the Plan, pursuant to section 1146(c) Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of each Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York State Documentary Tax.

Damages for Failure to Close:  With respect to each Property, time is of the Essence as Against the Successful Bidder and the failure of the Successful Bidder to either timely pay the additional Qualifying Deposit or timely close for any reason whatsoever (except as otherwise provided below) including its failure to pay the balance of the Purchase Price on the Closing Date, will result in the Proponent retaining the deposit as liquidated damages and the termination of the Successful Bidder's right to acquire the Property under these Terms and Conditions of Sale. With respect to each Property, the Successful Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale other than the Proponent's inability to deliver bargain and sale deeds to the Property.  With respect to each Property, expenses incurred by the Successful Bidder, or any competing bidder relating to any due diligence, such as obtaining title reports or environmental inspections, shall be the sole

responsibility of such bidder, and under no circumstances shall the Proponent or the Proponent's professionals be responsible for, or pay, such expenses.

<u>Backup Bidder</u>:  With respect to each Property, in the event that the Successful Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Terms and Conditions of Sale, the Proponent, at its sole option, shall be authorized to sell the Property to the Second Highest Bidder without any further notice without giving credit for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Proponent deems appropriate.  With respect to each Property, should the Second Highest Bidder fail to close on the Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from the Proponent to the Second Highest Bidder, the Proponent shall be authorized to sell the Property to the next highest or best bidder, without the necessity of any further notice.  With respect to each Property, all bidders will be bound by these Terms and Conditions of Sale, including, without limitation, those items set forth in the paragraphs above, except that the Second Highest Bidder must close within thirty (30) days of notification that his bid is accepted. TIME IS OF THE ESSENCE.

<u>No Representations</u>:  With respect to each Property, the Debtors and the Debtors' professionals have not made and do not make any representations as to the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or the Sale, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the present and future condition and operating state of any and all machinery or equipment on the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (vii) the ownership or state of title of any personal property on the Property; (viii) the presence or absence of any laws, ordinances, rules, rent regulations, or other regulations of any governmental authority, agency or board and any violations thereof; (ix) any present or future issues concerning subdivision or non-subdivision of the Property; or (x) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property.  With respect to each Property, each bidder shall be deemed to have agreed and acknowledged that no such representations have been made.  With respect to

each Property, the Proponent is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, made or furnished by the Proponent or any real estate broker agent, employee, servant or other person or professional representing or purporting to represent the Proponent unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by the Proponent.  For the avoidance of doubt, neither the Debtor nor the Debtor's professionals are authorized to provide any such warranties, guaranties, promises, statements, representations or information.

As Is Sale: With respect to each Property, the Property is being sold subject to leases, but otherwise free and clear of all liens, claims, and encumbrances, with any such liens, claims and encumbrances to attach to the net proceeds of sale after deduction of any expenses of sale. Furthermore, each Property is being sold "AS IS", "WHERE IS""WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions, including, without limitation, the Property's compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Property.  With respect to each Property, by delivering their respective Qualifying Deposits, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Property in making its bid.  With respect to each Property, neither the Proponent nor any of its representatives make any representations or warrantees with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property.  All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with each Property and are not relying on any information provided by the Proponent or Proponent's professionals.

Deed:  The Proponent shall convey each Property by delivery of a bargain and sale deed without covenants against grantor's acts.

Broker:  Neither the Proponent nor the Proponent's professionals are liable or responsible for the payment of fees of any broker retained by the Purchaser.

Conduct of Sale: These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Properties.  By making a bid for a Property, all bidders will be required to acknowledge these Terms and Conditions of Sale and agree to be bound by them.

<u>Failure to Close</u>:  If the Proponent is unable to deliver title to any Property in accordance with these Terms and Conditions of Sale for any reason whatsoever or in the event that the Bankruptcy Court refuses to confirm the Proponent's Chapter 11 plan or approve the sale of the Property pursuant to Section 363 of the Bankruptcy Code, the Proponent's only obligation will be to refund the Deposit, together with interest earned thereon, if any, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against the Proponent or the Proponent's professionals.

<u>Right to Withdraw Sale</u>:  The Proponent reserves its right to withdraw any Property from the Sale, either prior or subsequent to the Sale, for any reasonable reason, as the Proponent deems necessary or appropriate.

<u>Plan Confirmation</u>:  The Sale of the Property is subject to confirmation of the Proponent's Plan and approval by the Bankruptcy Court.

<u>Breakup Fee</u>:  Proponent shall have the option before the bidding deadline to designate a Qualified Bidder as the "Stalking Horse."  If Proponent consummates a sale of the Property to a third party other than the Mortgagee or the Mortgagee's designee, then Proponent shall pay the Stalking Horse 2% of the Purchase Price in cash following consummation of such alternative transaction.

<u>Mortgagee</u>:  Notwithstanding anything to the contrary herein, the Mortgagee shall be entitled to name a designee or designees who shall be deemed qualified to bid without posting a Qualifying Deposit or complying with the other requirements otherwise necessary to bid, and, if the Successful Bidder and Purchaser, With respect to each Property, shall be entitled to purchase the Property subject to some or all of the Mortgagee's mortgage.

<u>Bankruptcy Court Jurisdiction:</u>  The Bankruptcy Court shall determine any disputes concerning the Sale of the Property.  By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtors' pending cases.

CONTRACT dated as of the ____ day of _____, 2021 (this "Contract") , between

_____
_____
_____
_____, (collectively, the "Seller" or "Debtor") and
_____ having an address at _____
_____ ("Purchaser").

      Seller and Purchaser hereby covenant and agree as follows:

1. Sale of Property

      Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real properties located at

_____
_____
_____
_____ (collectively, the "Property").  The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights"; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c)  all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of  the Property (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

      Paragraph 1.02.   Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 19-23013, entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on _____ and is deemed annexed to this Contract.

      Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict

with (1) and (2), above, and (4) the Bidding and Auction Procedures approved pursuant to the motion of the Seller.

2. Purchase Price, Acceptable Funds

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is (            ) Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

(B) THIS CONTRACT IS "ALL CASH" AS KNOWN IN THE COMMON PARLANCE.  PURCHASER'S OBLIGATIONS UNDER THIS CONTRACT ARE NOT CONDITIONED UPON PURCHASER'S ABILITY TO SECURE FINANCING OF ANY KIND OR NATURE.

(C) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Cash Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds.  Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

3. Escrow of Down Payment

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Backenroth Frankel & Krinsky LLP ("Escrowee").  The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section.  At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures.  If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment.  If Escrowee does receive

such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Seller in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Cash Balance by Purchaser shall take place _____ days following the entry of an Order approving the Contract and the transaction embodied therein if that is a business day, and if not, the following business day (the "Closing"). The Closing is to be held at the office of the Escrowee, or such other location as designated by the Seller within the Southern or Eastern District of New York. Purchaser will have a one-time right to adjourn the Closing for up to five Business Days from the original date (such adjourned date, "Purchaser's Mandatory Closing Date").  Time is of the essence with respect to Purchaser's obligations to close title in accordance with this Contract on or before Purchaser's Mandatory Closing Date.

5.  Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby;  (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser  (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to

the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

6.  Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

7.  Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Seller to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures.  Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04.  Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

8.  Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01.  The Cash Balance to the Seller.

Paragraph 8.02.  All required New York City and State transfer tax returns and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.  Purchaser will pay any and all applicable transfer taxes and recording fees.

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract

and which are incorporated in this Contract by this reference as though fully set forth herein at length.

11.  Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's attorney at the address set forth below, and to Purchaser addressed to Purchaser's attorney at the address set forth below.

Seller's Attorney:  Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022.

Purchaser's Attorney:

12.  Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

13.  Assignment of Contract

Paragraph 13.01.  Purchaser shall not assign this Contract or its rights hereunder without the prior written consent of the Proponent, whose consent will not be unreasonably withheld or delayed. Additionally, Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Proponent.  Any purported assignment without Proponent's consent or that is not to a Controlled Entity with proof of such relationship given to Proponent shall be void.  Any sale, transfer or assignment of any interests in Purchaser

will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract. Nevertheless, an assignment of Purchaser's rights under this Contract, if and when consented to by Proponent, shall not be effective unless and until an executed counterpart of the instrument of assignment and of an assumption agreement by the assignee shall have been delivered to Seller.

Paragraph 13.02.  Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

14.  Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03.  This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto.  This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement.  A

signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

IN WITNESS WHEREOF, the parties hereto have executed this Contract as of the date first above written.

Seller:                                              Purchaser:

By: _____              By: _____
     Name:                                                  Name:
     Title:                                                    Title:

Backenroth Frankel & Krinsky, LLP,
Escrowee:

By: _____
       Name:
           Title:



**RETENTION AGREEMENT**

This Retention Agreement ("Agreement") is between 53 Stanhope LLC, 325, Franklin LLC, 618 Lafayette LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC, APC Holding 1 LLC; Eighteen Homes LLC, and 1213 Jefferson LLC (collectively, the "Debtor") and Rosewood Realty Group ("Rosewood"). Debtor hereby employs and retains Rosewood, granting Rosewood for a period of time as set forth herein to act as special real estate advisor for the Debtor having, among other things, the sole and exclusive and irrevocable right and authority to arrange financing or recapitalization, negotiate refinancing, sell, net lease or otherwise dispose of all or any portion of the real property known as, and/or air rights pertaining to, the properties on the schedule annexed hereto (all or a portion of the properties and/or air rights related thereto are referred to hereinafter as the "Property"). Rosewood agrees to use its best efforts to market and sell the Property on the following timetable:

Week 1: finalize marketing materials
Weeks 2 to 3: "quiet" marketing campaign to top investors
Week 4: press releases
Week 5: mass email blasts
Weeks 6 to 7: posts to all industry websites
Week 8: posts to all social media
Week 9: sign stalking horse contract if one has not been executed prior
Week 10: repeat select portions of the aforementioned
Week 11: bid deadline
Week 12: auction

1.  Subject to approval of the Bankruptcy Court (defined hereinafter), the term of Debtor's retention of Rosewood shall be effective and commence on the date this Agreement is executed by both parties and shall continue in effect for one hundred eighty (180) days from the date of entry an order of the Bankruptcy Court approving this Agreement (the "Term"). Thereafter, the Term shall be automatically extended for successive thirty (30) day periods until terminated by either party upon at least thirty (30) days advance written notice to the other party.

2.  Should, during the Term, Debtor enter into an agreement to refinance, borrow against, restructure its existing debt encumbering the Property, and/or recapitalize the Property, in whole or in part, and/or enter into a joint venture agreement relating to the Property, then Debtor will pay Rosewood, at closing, a fee in an amount equal to five percent (5%) of the aggregate amount of gross refinancing or restructured indebtedness, recapitalization, and/or joint venture investment received or obtained, or to be received or obtained by Debtor, as the case may be, regardless of when the closing of same takes place.

3.  For the purposes of this Agreement, the "Additional Period" will be six months after expiration of the Term. Should, during the Additional Term, Debtor enter into an agreement to refinance, borrow against, restructure its existing debt encumbering the Property, and/or recapitalize the Property, in whole or in part, and/or enter into a joint venture agreement relating to the Property, in each case with a person or entity with whom Rosewood has negotiated concerning the Property, or to whose attention the Property has been brought by Rosewood, or who was introduced to Debtor by Rosewood during the Term, then Debtor will pay Rosewood, at closing, a fee in an amount equal to five percent (5%) of the aggregate amount of gross refinancing or restructured indebtedness, recapitalization, and/or joint venture investment received or obtained, or to be received or obtained by Debtor, as the case may be, regardless of when the closing of same takes place.

1



**RETENTION AGREEMENT**

4.  Rosewood will be paid a commission equal to five percent (5%) of the gross purchase price of the Property, which will be paid directly to Rosewood at closing without further order of the Court, by the successful purchaser, separate from and in addition to the consideration (or gross purchase price) that the successful purchaser pays for the Property, upon the occurrence of any of the following events:

   a.  Debtor enters into an agreement during the Term to sell, transfer or convey ownership of the Property in whole or in part, whether individually or as part of a package, or a sale of the Property at a bankruptcy auction, or other sale permitted by the bankruptcy court, such as a sale under Section 363 of the Bankruptcy Code or pursuant to a confirmed plan of reorganization, regardless of whether the closing occurs after the expiration of the Term and regardless of whether the Debtor engages a different broker or advisor to close a transaction; or

   b.  If a sale, exchange or other conveyance of the Property or ownership or control of the Property is made or takes place within the "Additional Period" after expiration of the Term to a Prospective Purchaser with whom Debtor had not reached an agreement during the Term, but with whom Rosewood has negotiated concerning the Property, or to whose attention the Property has been brought by Rosewood, or who was introduced to Debtor by Rosewood during the Term, or to a credit bidder. For these purposes, a "Prospective Purchaser" shall include partnerships, joint ventures, limited liability companies, corporations, trusts or other similar entities which the prospective buyer represents, is involved with, or in which it holds an ownership, management or beneficial interest.

For the purposes of this Agreement, the term "gross purchase price" includes the sum of the total consideration transferred to, or for the benefit of, the Debtor and value of debt and liabilities assumed and liabilities reduced, and any credit bid by a secured lender, and any consideration transferred to or for the benefit of the secured lender for the assignment of its credit bid or claim, and contingent, earned or other consideration paid or payable, directly or indirectly, in connection with a sale or transfer of title to the Property. For the purposes of this Agreement, the gross purchase price and the commission due to Rosewood will not be offset or reduced by the costs of advertising, the Debtor's legal fees, any break-up fees, broker's expenses or closing costs and/or closing adjustments, including any adjustments and/or payments of whatever kind to lienholders, secured parties or offerors. Debtor will not close on any sale or transfer of the Property unless Rosewood is paid at the closing the commission to which Rosewood is entitled hereunder.

For the avoidance of doubt, if Debtor enters into a contract for the sale of the Property, the result of which would entitle Rosewood to a commission hereunder, and a higher or better offer is approved by the Bankruptcy Court, then regardless of who may be the successful purchaser, Rosewood will be entitled to a commission pursuant to the terms of this Agreement, as, if and when the closing with the successful purchaser occurs, based on the successful purchaser's gross purchase price.

5.  All inquiries, offers, expressions of interest and communications from principals, outside brokers and other parties or professionals will be re-directed and referred to Rosewood by Debtor, its principals, officers, counsel, accountants and other professionals or representatives. Debtor agrees to conduct all negotiations through Rosewood exclusively and to advise all interested persons of this exclusive right. Debtor agrees to conduct all negotiations through Rosewood exclusively. Should another broker be involved in a sale, refinancing, recapitalization or restructuring of the Property, it may seek compensation only from its client.

2



**RETENTION AGREEMENT**

Subject to Bankruptcy Court approval of this Agreement, Rosewood will be authorized to act as agent for Debtor, and to advertise, market, negotiate and coordinate the closing on the sale or refinancing of the Property. In order to coordinate efforts concerning a possible transaction, neither Debtor nor any representative of Debtor will initiate any discussions with a third party regarding a potential transaction involving the property except through Rosewood.

6.  Debtor will, promptly after its execution of this Agreement, file an application and proposed order seeking from the Bankruptcy Court approval of its employment of Rosewood pursuant to the terms of this Agreement, pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code. Debtor agrees and acknowledges to attach a complete copy of this Agreement to the application. Debtor will provide Rosewood the employment application and proposed order authorizing Debtor's employment of Rosewood sufficiently in advance of their filing in order for Rosewood to have ample time to review and discuss any comments it may have with Debtor, and the employment application must be acceptable to Rosewood in its discretion. The proposed order will include, without limitation, the following terms and conditions: (a) finding that none of the fees or commissions to Rosewood hereunder constitute a "bonus" under applicable law; (b) directing that Rosewood will be exempt from keeping time records for its work hereunder (as Rosewood will not be billing on an hourly basis); (c) finding that the terms and conditions of this Agreement are reasonable. (d) all amounts due hereunder to Rosewood will be paid at closing without a further application or order of the Bankruptcy Court; and (e) directing that any unpaid commissions, fees, and marketing expenses owed to Rosewood shall be treated as an administrative claim under Section 507(a)(1) of the Bankruptcy Code.

7.  If an order containing these terms is not obtained from the Bankruptcy Court within 30 days after both parties have signed this Agreement, then Rosewood may terminate this Agreement in which case it will be null and void. If Debtor obtains an order of the Bankruptcy Court authorizing its use of cash collateral or debtor in possession financing and if the order requires submission of a proposed budget specifying post-petition expenditures, then Debtor will include in the budget line items providing for the payment of commissions or fees to be paid or reimbursed under this Agreement. All amounts projected to be paid to Rosewood under this Agreement will be included in the carve-out for professionals provided in Debtor's bankruptcy case.

8.  This Agreement may not be modified, assigned and or rescinded, and once approved by the Bankruptcy Court, will be binding on and inure to the benefit of all parties including any of Debtor's affiliates, representatives, designees, successors and assigns, unless it is changed in a writing signed by both parties. Debtor agrees to incorporate this Agreement into any sales contract for the Property.

9.  Debtor will deliver to Rosewood all financial and other information requested by Rosewood for the purpose of its performance hereunder, including without limitation title reports, engineering and environmental reports, building plans, plot plans and surveys, income and expense statements, lease summaries, and rent roll. All information provided by Debtor to Rosewood will be, to the knowledge of Debtor, accurate and complete in all material respects, and if Debtor becomes aware that any information it has provided Rosewood is or has become materially inaccurate or incomplete, Debtor will promptly so notify Rosewood in writing. Debtor agrees to disclose to Rosewood any existing liens or encumbrances against the Property and further agrees to disclose any new liens which arise during the Term. Debtor will immediately inform Rosewood of any building code violations, environmental hazard or contamination relating to the Property, and of any existing or pending violation of federal, state or local environmental laws that become known to

3



**RETENTION AGREEMENT**

Debtor. If Debtor has ordered any environmental reports or studies, as soon as same become available, Debtor will immediately provide a true and complete copy to Rosewood, and Rosewood is hereby authorized to disseminate same to prospects. Rosewood will be entitled to rely, without independent verification, on the accuracy and completeness of all information supplied to it by Debtor and Rosewood will not be responsible to Debtor, its creditors, or any third party for the inaccuracy or incompleteness of any information provided to it by Debtor.

10.     Within seven days of its execution of this Agreement, Debtor will deliver to Rosewood a list of all brokers, principals or other prospects who have expressed an interest in acquiring, refinancing, recapitalizing or entering into a joint venture with respect to the Property, along with all correspondence and other records that relate to that interest.

11.     Debtor will share with Rosewood information Rosewood may request regarding the source of any sale, refinancing, recapitalization of the loan that Debtor asserts did not involve Rosewood or any of its agents or representatives to the extent such information may affect Rosewood's entitlement to payment hereunder.

12.     Any commission or fee to which Rosewood is entitled under this Agreement, as the case may be, will be paid at closing, by official bank / certified check or wire, and Rosewood will be entitled to make demand of any escrow holder or closing attorney for payment from the proceeds of sale or refinance. For the avoidance of doubt, Rosewood will be entitled to a commission or fee, as the case may be, regardless of whether the buyer or other party entering into the subject transaction with Debtor was first introduced to the Property by Rosewood. Debtor hereby authorizes and instructs any escrow agent or counsel (without need for further authorization or permission) to pay Rosewood its commission or fee in strict compliance with the terms of this Agreement, time being of the essence, simultaneously with the closing or other consummation of the subject transaction.

13.     Each party to this Agreement will deal with the other fairly so as to allow it to perform its duties and to receive the benefits of this Agreement and will not interfere, prevent or prohibit the other party, in any manner, before or during the closing of a sale of the Property, from carrying out its obligations under this Agreement.

14.     Should the Bankruptcy Court order a sale of the Property at auction, Rosewood is authorized to and will act as the exclusive auctioneer and all terms will remain the same.

15.     Debtor represents and warrants to Rosewood that:

    a.     Upon approval by the Bankruptcy Court, Debtor will have the right, power and authority to retain Rosewood and will be authorized and directed to perform this Agreement, and this Agreement will constitute a valid and legally binding obligation of Debtor, enforceable in accordance with its terms.

    b.     To the best of Debtor's knowledge and unless otherwise previously disclosed, Debtor now holds (and, up to the moment of sale provided for under this Agreement, will hold) good and marketable or insurable title to each Property.

4



**RETENTION AGREEMENT**

   c.  If Debtor reaches agreement with a third party to refinance, borrow against, recapitalize or sell any of the Property, Debtor will use its best efforts to obtain, and will not delay, any effort, application, petition or motion to obtain any necessary approval of the Bankruptcy Court or any other judicial, governmental, or regulatory authority approval.

16.  Debtor agrees that Rosewood and its affiliates, and their respective officers, directors, employees, agents and representatives will not be liable (whether directly or indirectly, in contract, tort or otherwise), to Debtor or its security holders or creditors for any matter, cause or thing related to or arising out of the retention of Rosewood pursuant to, or the performance by Rosewood of services under, this Agreement except to the extent that Rosewood if found by final judgment by a court of competent jurisdiction to have acted in bad faith, or with gross negligence or to have engaged in willful misconduct in providing services pursuant to this Agreement.

17.  All fees payable to Rosewood hereunder will be free and clear of any liens, claims and encumbrances, including the liens of any secured creditor of Debtor.

18.  Except as otherwise set forth herein, Rosewood will not be responsible for any other fees or commissions in connection with a disposition, refinancing or recapitalization by the Debtor, including any fees or commissions that may be owed to any other broker.

19.  Debtor's obligations under this Agreement will survive any change in control of the Debtor. If a trustee in bankruptcy is appointed for the Debtor, this Agreement will survive and remain in full force and effect.

20.  The Bankruptcy Court will retain jurisdiction over any and all disputes under or otherwise relating to the construction and enforcement of the transactions contemplated hereunder. If the Debtor's bankruptcy case is dismissed, or the Automatic Stay is lifted or modified with respect to a Property and that Property is not disposed of under Bankruptcy Court jurisdiction, then any dispute between the parties arising under this Agreement will be resolved in the New York State Supreme Court, County of New York, Commercial Division.

21.  Rosewood may at its option and own expense place announcements and advertisements or otherwise publicize its role in connection with this Agreement, including on Rosewood's internet website, in newspapers, periodicals, and in its marketing materials as it may choose, stating that it has acted as advisor to Debtor with respect to a transaction involving the Property.

22.  Rosewood will have no liability for delays, failure in performance, or damages due to fire, explosion, lightning, power surges or failures, strikes or labor disputes, water, war, civil disturbances, acts of civil or military authorities, telecommunications failures, fuel or energy shortages, acts or omissions of communications carriers, or other causes beyond Rosewood's control whether or not similar to the foregoing.

23.  From time to time, Rosewood or one of its affiliated entities may and shall have the right to advise or to provide services to several industry participants, some of which may be competitors of the Debtor. The Debtor, and its directors, officers, members and principals, waive any right to commence an action, suit or proceeding or to make any demand, complaint or claim against Rosewood, its subsidiaries, affiliates, directors, officers, members, principals or other personnel, that arises out of the right of Rosewood or one of

5



**RETENTION AGREEMENT**

its related entities to advise or provide services to an industry competitor of the Debtor. Notwithstanding the foregoing, because of the substantial number of brokers and salespersons employed by Rosewood, a broker or brokerage team employed by Rosewood may on occasion represent a prospect who may be interested in the Property, and which representation is intended to be independent of Rosewood's representation hereunder. In such a case, Rosewood will disclose its dual role in the potential transaction to the Debtor and to the prospect, will and implement reasonable industry safeguards to assure confidentiality to both the Debtor and the prospect. The Debtor acknowledges and agrees that: (a) such occasional dual representation may occur, subject to appropriate disclosure as provided above; (b) such brokerage team representing the prospect will be deemed to be a permitted independent engagement for purposes hereof, but Debtor will have no responsibility for same; and (c) Debtor agrees that Rosewood will be entitled to compensation and reimbursement of any and all amounts due and payable hereunder notwithstanding a disclosed dual engagement.

24. Rosewood's role will be as agent of the Debtor. The Debtor will remain fully responsible for all decisions and matters as to which Rosewood's advice is sought. Rosewood is not assuming any management responsibilities for or on behalf of the Debtor. Debtor and Rosewood acknowledge and agree that Debtor's engagement of Rosewood does not confer and is not intended to confer any rights upon any person or entity not a party hereto, including any security holders or creditors of the Debtor. Rosewood's duties hereunder run solely to the Debtor. All advice provided by Rosewood to the Debtor pursuant to this Agreement is intended solely for the use and benefit of the Debtor. Debtor agrees that Rosewood's advice may not be disclosed publicly or made available to third parties without Rosewood's prior written consent. Rosewood may condition the granting of such prior written consent upon obtaining a non-reliance letter and a release from any such third parties.

25. Any notice or communication sent with respect to this Agreement must be in writing and delivered via overnight mail (using a nationally recognized courier service):

If to Debtor:

_____

_____

_____

_____

If to Rosewood:
Rosewood Realty Group
38 East 29th Street, 5th Fl.
New York, New York 10016
Attn: Greg Corbin

All such notices or communications will be deemed to have been given one business day following the date of delivery by overnight mail addressed as aforesaid.

26. Signatures to this Agreement may be exchanged by hand, by mail, by fax, by photocopy, or in counterparts; any such method being binding on both sides when completed and exchanged.

6



**RETENTION AGREEMENT**

27. This agreement is subject to approval of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). If this Agreement is not approved by the Bankruptcy Court, then this Agreement will be deemed terminated and Rosewood will have an allowed quantum meruit claim for its services. This paragraph will survive termination of this Agreement. This Agreement has been made under and will be governed by the laws of the State of New York., without giving effect to conflicts of law rules.

     If the foregoing accurately sets forth our Agreement, please sign below and return this original Agreement to Rosewood. This Agreement contains the entire agreement between Debtor and Rosewood. Any prior discussions and agreements between the parties concerning this subject matter are superseded by this Agreement. This Agreement will be deemed to have been jointly drafted by the parties and there will be no presumption in interpretation against either party as the drafter of this Agreement. The terms of this Agreement may not be modified or changed except by a writing signed by the parties. Each of Debtor and Rosewood understands that this is a legal document, acknowledges that it has consulted with counsel of its choice regarding its terms before deciding whether to execute it, and agrees to the terms and conditions set forth herein.

**ENTITY**

Name: David Goldwasser

Title: Manager

Authorized signature:

Date: 4/7/21

**ROSEWOOD REALTY GROUP**

Greg Corbin

President, Bankruptcy and Restructuring

Authorized signature:

Date: 4/7/21

7



**RETENTION AGREEMENT**

### Schedule of Properties

| Debtor | Property |
|---|---|
| 53 Stanhope LLC<br>325 Franklin LLC<br>(Joint Owners) | 53 Stanhope Street Brooklyn NY<br>325 Franklin Avenue, Brooklyn NY |
| 618 Lafayette LLC | 618 Lafayette Ave<br>Brooklyn, New York |
| Eighteen Homes LLC | 263 18th Street, Brooklyn, NY |
| 1213 Jefferson LLC | 1213 Jefferson Avenue, Brooklyn, NY |
| 92 South 4th LLC<br><br>834 Metropolitan LLC<br>(Joint Owners) | 92 South 4th Street, Brooklyn, NY<br>834 Metropolitan Ave, Brooklyn, NY |
| 1125-1131 Greene Avenue, LLC | 1125 Greene Avenue, Brooklyn, NY<br>1127 Greene Avenue, Brooklyn, NY<br>1129 Greene Avenue, Brooklyn, NY<br>1131 Greene Avenue, Brooklyn, NY<br>1133 Greene Avenue, Brooklyn, NY |
| APC Holding 1 LLC | 568 Willoughby Avenue, Brooklyn, NY |

8

Exhibit B

**Class 1 Claims**

| # | Address | Entity | Open RE Taxes (as of 4/8/21) | Open Water (as of 4/8/21) | Open ECB Violations (as of 4/8/21) | Total Class 1 Claims |
|---|---|---|---|---|---|---|
| 1 | 568 Willoughby Avenue, Brooklyn, NY 11206 | APC Holding 1 LLC | $2,048.44 | $258.35 | $0.00 | **$2,306.79** |
| 2 | 618 Lafayette Avenue, Brooklyn, NY 11216 | 618 Lafayette LLC | $3,250.67 | $323.14 | $0.00 | **$3,573.81** |
| 3 | 325 Franklin Ave, Brooklyn, NY 11238 | 325 Franklin LLC | $33,485.39 | $14,909.99 | $0.00 | **$48,395.38** |
| 4 | 53 Stanhope Street, Brooklyn, NY 11221 | 53 Stanhope LLC | $2,956.95 | $8,557.17 | $0.00 | **$11,514.12** |
| 5 | 263 18th Street, Brooklyn, NY 11215 | Eighteen Homes LLC | $1,513.54 | $175.68 | $0.00 | **$1,689.22** |
| 6 | 1213 Jefferson Ave, Brooklyn, NY 11221 | 1213 Jefferson LLC | $4,810.67 | $343.69 | $909.33 | **$6,063.69** |
| 7 | 92 South 4th Street, Brooklyn, NY 11249 | 92 South 4th St LLC | $2,109.04 | $93.01 | $0.00 | **$2,202.05** |
| 8 | 834 Metropolitan Ave, Brooklyn, NY 11211 | 834 Metropolitan Avenue LLC | $0.00 | $258.35 | $0.00 | **$258.35** |
| 9 | 1125 Greene Ave, Brooklyn, NY 11221 | | $2,142.93 | $289.35 | $0.00 | **$2,432.28** |
| 10 | 1127 Greene Ave, Brooklyn, NY 11221 | | $1,898.15 | $248.02 | $0.00 | **$2,146.17** |
| 11 | 1129 Greene Ave, Brooklyn, NY 11221 | 1125-1133 Greene Ave LLC | $1,898.15 | $330.69 | $0.00 | **$2,228.84** |
| 12 | 1131 Greene Ave, Brooklyn, NY 11221 | | $1,898.15 | $113.68 | $0.00 | **$2,011.83** |
| 13 | 1133 Greene Ave, Brooklyn, NY 11221 | | $1,898.15 | $1,213.86 | $0.00 | **$3,112.01** |
| | **Total** | | **$59,910.23** | **$27,114.98** | **$909.33** | **$87,934.54** |

## Class 2 Claims

| # | Address | Entity | Estimated Payoff (as of 5/31/2021 ) |
|---|---------|--------|--------------------------------------|
| 1 | 568 Willoughby Avenue, Brooklyn, NY 11206 | APC Holding 1 LLC | $2,111,649.92 |
| 2 | 618 Lafayette Avenue, Brooklyn, NY 11216 | 618 Lafayette LLC | $2,327,944.70 |
| 3 | 325 Franklin Ave, Brooklyn, NY 11238 | 325 Franklin LLC | $3,783,874.79 |
| 4 | 53 Stanhope Street, Brooklyn, NY 11221 | 53 Stanhope LLC | |
| 5 | 263 18th Street, Brooklyn, NY 11215 | Eighteen Homes LLC | $1,472,741.11 |
| 6 | 1213 Jefferson Ave, Brooklyn, NY 11221 | 1213 Jefferson LLC | $1,412,446.28 |
| 7 | 92 South 4th Street, Brooklyn, NY 11249 | 92 South 4th St LLC | $3,019,989.23 |
| 8 | 834 Metropolitan Ave, Brooklyn, NY 11211 | 834 Metropolitan Avenue LLC | |
| 9 | 1125 Greene Ave, Brooklyn, NY 11221 | 1125-1133 Greene Ave LLC | $4,326,691.67 |
| 10 | 1127 Greene Ave, Brooklyn, NY 11221 | | |
| 11 | 1129 Greene Ave, Brooklyn, NY 11221 | | |
| 12 | 1131 Greene Ave, Brooklyn, NY 11221 | | |
| 13 | 1133 Greene Ave, Brooklyn, NY 11221 | | |
| | **Total** | | **$18,455,337.70** |

**Class 3 Claims**

| # | Address | Entity | Total Class 3 Claims |
|---|---|---|---|
| 1 | 568 Willoughby Avenue, Brooklyn, NY 11206 | APC Holding 1 LLC | $0.00 |
| 2 | 618 Lafayette Avenue, Brooklyn, NY 11216 | 618 Lafayette LLC | $0.00 |
| 3 | 325 Franklin Ave, Brooklyn, NY 11238 | 325 Franklin LLC | $0.00 |
| 4 | 53 Stanhope Street, Brooklyn, NY 11221 | 53 Stanhope LLC | $0.00 |
| 5 | 263 18th Street, Brooklyn, NY 11215 | Eighteen Homes LLC | $0.00 |
| 6 | 1213 Jefferson Ave, Brooklyn, NY 11221 | 1213 Jefferson LLC | $0.00 |
| 7 | 92 South 4th Street, Brooklyn, NY 11249 | 92 South 4th St LLC | $0.00 |
| 8 | 834 Metropolitan Ave, Brooklyn, NY 11211 | 834 Metropolitan Avenue LLC | $0.00 |
| 9 | 1125 Greene Ave, Brooklyn, NY 11221 | 1125-1133 Greene Ave LLC | $0.00 |
| 10 | 1127 Greene Ave, Brooklyn, NY 11221 | | $0.00 |
| 11 | 1129 Greene Ave, Brooklyn, NY 11221 | | $0.00 |
| 12 | 1131 Greene Ave, Brooklyn, NY 11221 | | $0.00 |
| 13 | 1133 Greene Ave, Brooklyn, NY 11221 | | $0.00 |
| | **Total** | | **$0.00** |

**Class 4 Claims**

| Entity | Creditor | | | Final Numbers |
|---|---|---|---|---|
| | # | Claim # | Creditor | |
| 1. 53 Stanhope LLC | 1 | 1-2 | NYS Dept of Tax & Finance | $1,024.91 |
| 1. 53 Stanhope LLC | 2 | 2-2 | Department of Treasury/IRS | $2,412.47 |
| 1. 53 Stanhope LLC | 3 | 3-2 | NYC Dept of Finance | $124,761.70 |
| 1. 53 Stanhope LLC | 4 | | Hutman & Hutman | $0.00 |
| 1. 53 Stanhope LLC | 5 | | S&F Locksmith INC | $0.00 |
| 1. 53 Stanhope LLC | | | CS Construction LLC | $4,255.00 |
| **Total** | | | | **$132,454.08** |
| 3. 325 Franklin LLC | 1 | 1-2 | NYS Dept of Tax & Finance | $604.74 |
| 3. 325 Franklin LLC | 2 | 2-2 | Department of Treasury/IRS | $2,412.47 |
| 3. 325 Franklin LLC | 3 | 4 | Shifra Stern | $6,920.00 |
| 3. 325 Franklin LLC | 4 | 5 | Zlata Stern | $6,920.00 |
| 3. 325 Franklin LLC | 5 | 6 | Yehuda Stern | $6,920.00 |
| 3. 325 Franklin LLC | 6 | | AmTrust North | $0.00 |
| 3. 325 Franklin LLC | 7 | | BMW Plumbing | $0.00 |
| 3. 325 Franklin LLC | 8 | | Herrick, Feinstein | $4,700.00 |
| 3. 325 Franklin LLC | 9 | | Hutman & Hutman | $375.00 |
| 3. 325 Franklin LLC | | | CS Construction LLC | $20,745.00 |
| **Total** | | | | **$49,597.21** |
| 10. Eighteen Homes LLC | 1 | 1 | NYS Dept of Tax & Finance | $523.71 |
| 10. Eighteen Homes LLC | 2 | 3 | Karelisa R. Kimmel | $1,850.00 |
| 10. Eighteen Homes LLC | 3 | | B&S Enterprise | $0.00 |
| 10. Eighteen Homes LLC | 4 | | Best Super cleaning | $0.00 |
| 10. Eighteen Homes LLC | 5 | | Con Edison | $0.00 |
| 10. Eighteen Homes LLC | 6 | | E&S Maintenance | $0.00 |
| 10. Eighteen Homes LLC | 7 | | Home Depot | $0.00 |
| 10. Eighteen Homes LLC | 8 | | National Grid | $1,170.95 |
| 10. Eighteen Homes LLC | 9 | | Park Slope | $0.00 |
| 10. Eighteen Homes LLC | 10 | | Perfect Pest | $0.00 |
| 10. Eighteen Homes LLC | 11 | | Sign Up | $0.00 |
| 10. Eighteen Homes LLC | | | CS Construction LLC | $19,200.00 |
| **Total** | | | | **$22,744.66** |
| 11. 1213 Jefferson LLC | 1 | 1 | NYS Dept of Tax & Finance | $104.74 |
| 11. 1213 Jefferson LLC | 2 | 6 | National Grid | $205.71 |
| 11. 1213 Jefferson LLC | 3 | | Con Edison | $0.00 |
| 11. 1213 Jefferson LLC | 4 | | E&S Maintenance | $0.00 |
| 11. 1213 Jefferson LLC | 5 | | Herrick, Feinstein | $0.00 |
| 11. 1213 Jefferson LLC | 6 | | Oriental Lumber | $0.00 |
| 11. 1213 Jefferson LLC | 7 | | Perfect Pest | $0.00 |
| 11. 1213 Jefferson LLC | | | CS Construction LLC | $16,800.00 |
| **Total** | | | | **$17,110.45** |
| 12. 92 South 4th LLC | 1 | 1 | NYS Dept of Tax & Finance | $208.38 |
| 12. 92 South 4th LLC | 2 | 2-3 | Department of Treasury/IRS | $921.77 |
| 12. 92 South 4th LLC | 3 | 8 | Deutsche Bank National Trust Company | $0.00 |
| 12. 92 South 4th LLC | 4 | | Certified Lumber | $0.00 |
| 12. 92 South 4th LLC | 5 | | Con Edison | $87.66 |
| 12. 92 South 4th LLC | 6 | | E&S Maintenance | $0.00 |
| 12. 92 South 4th LLC | | | Moses Gutman | $95,339.00 |
| **Total** | | | | **$96,556.81** |
| 13. 834 Metropolitan Avenue LLC | 1 | 1 | Consolidated Edison Company of New York, Inc | $294.13 |
| 13. 834 Metropolitan Avenue LLC | 2 | 2-2 | Department of Treasury/IRS | $1,327.93 |
| 13. 834 Metropolitan Avenue LLC | 3 | 6 | National Grid | $0.00 |
| 13. 834 Metropolitan Avenue LLC | 4 | 8 | NYS Dept of Tax & Finance | $12,325.32 |
| 13. 834 Metropolitan Avenue LLC | 5 | | 100 Jefferson LLC | $0.00 |
| 13. 834 Metropolitan Avenue LLC | 6 | | B&S Enterprise | $0.00 |
| 13. 834 Metropolitan Avenue LLC | 7 | | Best Super cleaning | $0.00 |
| 13. 834 Metropolitan Avenue LLC | 8 | | E&S Maintenance | $0.00 |
| 13. 834 Metropolitan Avenue LLC | 9 | | Home Depot | $0.00 |
| 13. 834 Metropolitan Avenue LLC | 10 | | Klein Slowik | $2,029.90 |
| 13. 834 Metropolitan Avenue LLC | 11 | | Oriental Lumber | $0.00 |
| 13. 834 Metropolitan Avenue LLC | 12 | | Perfect Pest | $0.00 |
| 13. 834 Metropolitan Avenue LLC | 13 | | Site Compli | $0.00 |
| 13. 834 Metropolitan Avenue LLC | | | Moses Gutman | $116,525.00 |
| **Total** | | | | **$132,502.28** |
| 14. 1125-1133 Greene Ave LLC | 1 | 1 | NYS Dept of Tax & Finance | $104.74 |
| 14. 1125-1133 Greene Ave LLC | 2 | 2 | Consolidated Edison Company of New York, Inc | $0.00 |
| 14. 1125-1133 Greene Ave LLC | 3 | 8 | National Grid | $1,102.83 |
| 14. 1125-1133 Greene Ave LLC | 4 | | 92 South 4th St LLC | $0.00 |
| 14. 1125-1133 Greene Ave LLC | 5 | | Ace Hardware | $0.00 |
| 14. 1125-1133 Greene Ave LLC | 6 | | Best Super cleaning | $0.00 |
| 14. 1125-1133 Greene Ave LLC | 7 | | BMW Plumbing | $0.00 |
| 14. 1125-1133 Greene Ave LLC | 8 | | E&S Maintenance | $0.00 |
| 14. 1125-1133 Greene Ave LLC | | | Moses Gutman | $288,136.00 |
| **Total** | | | | **$289,343.57** |
| 15. 618 Lafayette LLC | 1 | 1 | Consolidated Edison Company of New York, Inc | $371.43 |
| 15. 618 Lafayette LLC | 2 | 2-2 | Department of Treasury/IRS | $822.55 |
| 15. 618 Lafayette LLC | 3 | | E&S Maintenance | $0.00 |
| 15. 618 Lafayette LLC | 4 | | Herrick, Feinstein | $0.00 |
| 15. 618 Lafayette LLC | 5 | | Insurance | $307.09 |
| 15. 618 Lafayette LLC | 6 | | Perfect Pest | $0.00 |
| 15. 618 Lafayette LLC | 7 | | Site Compli | $0.00 |
| 15. 618 Lafayette LLC | | | CS Construction LLC | $25,000.00 |
| **Total** | | | | **$26,501.07** |
| 16. APC Holding 1 LLC | 1 | 1-2 | NYS Dept of Tax & Finance | $654.72 |
| 16. APC Holding 1 LLC | 2 | 2-2 | Department of Treasury/IRS | $100.00 |
| 16. APC Holding 1 LLC | 3 | 4 | Consolidated Edison Company of New York, Inc | $209.32 |
| 16. APC Holding 1 LLC | 4 | 9 | NYS Dept of Tax & Finance | $50.00 |
| 16. APC Holding 1 LLC | 5 | | E&S Maintenance | $330.00 |
| 16. APC Holding 1 LLC | 6 | | Oriental Lumber | $0.00 |
| 16. APC Holding 1 LLC | 7 | | Water & Sewer | $0.00 |
| 16. APC Holding 1 LLC | | | Amrum Oberlander | $500,000.00 |
| **Total** | | | | **$501,344.04** |
| | | | | |
| | | | **GRAND TOTAL** | **$1,268,154.17** |

Exhibit D

**Exhibit C**

| Debtor | Property | Value* | Estimated Payoff (as of 5/31/21) |
|---|---|---|---|
| 53 Stanhope LLC<br>325 Franklin LLC<br>(Joint Owners) | 53 Stanhope Street, Brooklyn, NY 11221<br>325 Franklin Ave, Brooklyn, NY 11238 | $2,991,139 | $3,783,874.79 |
| 618 Lafayette LLC | 618 Lafayette Avenue, Brooklyn, NY 11216 | $1,721,559 | $2,327,944.70 |
| Eighteen Homes LLC | 263 18th Street, Brooklyn, NY 11215 | $1,680,504 | $1,472,741.11 |
| 1213 Jefferson LLC | 1213 Jefferson Ave, Brooklyn, NY 11221 | $1,395,691 | $1,412,446.28 |
| 92 South 4th LLC<br>834 Metropolitan LLC<br>(Joint Owners) | 92 South 4th Street, Brooklyn, NY 11249<br>834 Metropolitan Ave, Brooklyn, NY 11211 | $4,503,580 | $3,019,989.23 |
| 1125-1131 Greene Avenue, LLC | 1125 Greene Ave, Brooklyn, NY 11221<br>1127 Greene Ave, Brooklyn, NY 11221<br>1129 Greene Ave, Brooklyn, NY 11221<br>1131 Greene Ave, Brooklyn, NY 11221<br>1133 Greene Ave, Brooklyn, NY 11221 | $5,571,886 | $4,326,691.67 |
| APC Holding 1 LLC | 568 Willoughby Avenue, Brooklyn, NY 11206 | $2,098,539 | $2,111,649.92 |
| **Total** | | **$19,962,898.00** | **$18,455,337.70** |

*Rosewood Realty Group