UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re                                                        Chapter 11

    53 STANHOPE LLC, *et al*,[1]                         Case no.  19-23013 (RDD)
                                                             Jointly Administered

              Debtors.
----------------------------------------------------------x

## NOTICE OF HEARING TO APPROVE SALE

        PLEASE TAKE NOTICE, that a hearing will be held on January 25, 2022 at

10:00 a.m. (the "Hearing") before the Honorable Robert D. Drain, by videoconference, to

consider approval of the sale of the real property owned by of 53 Stanhope LLC, 325, Franklin

LLC, 618 Lafayette LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133

Greene Ave LLC, APC Holding 1 LLC; Eighteen Homes LLC, and 1213 Jefferson LLC (each a

"Debtor", and collectively, the "Debtors"), a in accordance with the Order approving the

Debtors' Joint Plan of Liquidation (the "Plan").

        PLEASE TAKE FURTHER NOTICE, that the Debtors have the Debtors selected

the parties set forth on the schedule annexed hereto as the winning bidders in the amounts set

forth therein, pursuant to the proposed contracts collectively annexed hereto as Exhibit A.

--------------------

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC  Holding 1 LLC (0290); D&W Real Estate Spring LLC (4591); Meserole and Lorimer  LLC (8197); 106 Kingston  LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155).

Exhibit A also includes the form of contract for all proposed contracts marked to show revisions

to draft contract annexed to the Debtors' confirmed Chapter 11 plan.

PLEASE TAKE FURTHER NOTICE, that a marketing report prepared by

Rosewood Realty is annexed hereto as Exhibit B.

PLEASE TAKE FURTHER NOTICE, that the stalking course contract pursuant

to which the Debtors propose paying a break-up fee is annexed hereto as Exhibit C.

PLEASE TAKE FURTHER NOTICE, that a copy of the transcript of the auction

sale is annexed hereto as Exhibit D.

PLEASE TAKE FURTHER NOTICE, that the exhibits to this Notice are too

voluminous to attach, but are available upon request made to the undersigned.

PLEASE TAKE FURTHER NOTICE, that objections to approval of the sale must

be filed and served by January 18, 2022.

Dated: New York, New York
       January 12, 2022

BACKENROTH FRANKEL & KRINSKY, LLP
Attorneys for Debtors


By:    s/Mark A. Frankel
       800 Third Avenue
       New York, New York 10022
       (212) 593-1100

## SCHEDULE OF WINNING BIDDERS

- 
- 1125-1133 Greene Avenue
  Winning Bid: Marvin Azrak - Maguire Capital, $4,600,000.00

- 1213 Jefferson Avenue
  Winning Bid: Marvin Azrak - Maguire Capital, $975,000.00

- 568 Willoughby Avenue
  Winning Bid:  Josef Mikkelson, $1,800,000.00

- 618 Lafayette Avenue
  Winning Bid: Joel Wertzberger, $1,600,001.00

- 834 Metropolitan Avenue
  Winning Bid:  Joel Wertzberger, $1,610,000.00

- 92 South 4th Street, Brooklyn
  Winning Bid: Marvin Azrak - Maguire Capital, $2,400,000.00

- 325 Franklin Avenue, Brooklyn
  Winning Bid: Marvin Azrak - Maguire Capital, $2,725,000.00

- 53 Stanhope Street, Brooklyn
  Winning Bid: Marvin Azrak - Maguire Capital, $1,000,000.00

- 263 18th Street, Brooklyn
  Winning Bid: Marvin Azrak - Maguire Capital, $1,600,000.00

# Exhibit A

~~ONTRACT~~**CONTRACT** dated as of the _____ day of ~~January,~~ January, ~~2021~~2022 (this "Contract") , between

_____

_____

_____

_____, (collectively, a _____ limited liability company,  (the "Seller" or "Debtor") ~~and~~ _____having an address at _____ and _____, a _____ limited liability company , having an address at _____ (the "Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

## 1. Sale of Property

Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real properties located at

_____

_____

_____

| **Address** | **Entity** |
|---|---|
|  |  |
|  | _____ |
| _____ |  |

(collectively, the "Property").  The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights" of Sellers as of the date hereof; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c)  all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of the Property (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

Paragraph 1.02.   Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 19-23013, entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on _____ June 11, 2021 and is deemed annexed to this Contract.

Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding and Auction Procedures approved pursuant to the motion of the Seller.

## 2. Purchase Price, Acceptable Funds



Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is (⸺⸺)⸺⸺⸺⸺⸺⸺⸺⸺⸺Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ Dollars on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

~~(B) THIS CONTRACT IS "ALL CASH" AS KNOWN IN THE COMMON PARLANCE.  PURCHASER'S OBLIGATIONS UNDER THIS CONTRACT ARE NOT CONDITIONED UPON PURCHASER'S ABILITY TO SECURE FINANCING OF ANY KIND OR NATURE.~~

(~~C~~B) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "~~Cash~~ Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds.  Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

## 3. Escrow of Down Payment

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to ~~Backenroth Frankel & Krinsky LLP~~ ⸺⸺⸺⸺⸺ ("Escrowee"). The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section.  At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures.  If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount,

Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment.  If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Seller in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

## 4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the ~~Cash~~ Balance by Purchaser shall take place ~~days following the entry~~ on the thirtieth calendar day after the issuance of  an ~~Order~~ order from the bankruptcy court approving the Contract and authorizing the ~~transaction embodied therein if that is a business day, and if not, the following business day~~ sale under its terms  (the "Closing"). The Closing is to be held at the office of the ~~Escrowee, or such other location as designated by the Seller within the Southern or Eastern District of~~ Seller's attorney, Abrams Fensterman, LLP  1 MetroTech Center, Suite 1701, Brooklyn, New York~~.~~, 11201, Escrowee,, TIME OF THE ESSENCE. If the thirtieth (30th) calendar day shall fall on a Saturday, Sunday or legal holiday, the actual date of closing shall be the next business day following.

Paragraph 4.02.  Notwithstanding anything contained in Paragraph 4.01 to the contrary, Purchaser ~~will~~shall have a one-time right to adjourn the ~~Closing for~~closing of up to ~~five Business Days~~fifteen (15) calendar days from the original date ~~(such adjourned date, "~~.  Purchaser shall exercise the right to adjourn the closing date no less than ten (10) calendar days prior to the date set forth for Closing under Paragraph 4.01.  Upon the Purchaser's ~~Mandatory~~exercise of the right to

extend the Closing Date"). ~~Time is of the essence with respect to Purchaser's obligations to close title in accordance with this Contract on or before Purchaser's Mandatory~~, the Purchaser shall increase the contract deposit by an additional $                    .  Should the Purchaser not elect to extend the Closing Date or should the Purchaser fail to pay the additional contract deposit as required herein, then in either of those events, the Purchaser shall not be entitled to any extension of the Closing Date.

## 5.  Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby;  (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25,

2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders").  Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser  (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

## 6.  Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

## 7.  Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Seller to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of any vacant portions of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures.  Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04.  Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

## 8.  Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01.  The ~~Cash~~ Balance to the Seller.

Paragraph 8.02.  All required New York City and State transfer tax returns and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.  Purchaser will pay ~~any and all applicable~~all recording fees together with any brokerage commission to the broker herein. Per the Bankruptcy plan no transfer taxes ~~and recording fees~~are anticipated to be due on this sale.

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

## 9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

## 10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability.  Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length.

## 11. Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's attorney at the address set forth below, and to Purchaser addressed to Purchaser's attorney at the address set forth below.

Seller's Attorney: ~~Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022.~~
Abrams, Fensterman, LLP
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
Attn:  Mark J. Caruso, Esq.
mcaruso@abramslaw.com


Purchaser's Attorney:

_____

## 12. Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

## 13. Assignment of Contract

Paragraph 13.01.   Purchaser shall ~~not~~have no right to assign this Contract ~~or its rights hereunder without the prior written consent of the Proponent, whose consent will not be unreasonably withheld or delayed. Additionally,~~except as provided for herein.   Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Proponent.  Any purported assignment ~~without Proponent's consent or that is not to a Controlled Entity with proof of such relationship given to Proponent~~not in

conformity with the provisions hereof shall be void.  Any sale, transfer or assignment of any interests in this Contract will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract.  Nevertheless, ~~an~~no assignment ~~of Purchaser's rights under this Contract, if and when consented to by Proponent,~~ shall ~~not~~ be effective unless and until an executed counterpart of the instrument of assignment and ~~of an~~ assumption agreement by the ~~assignee~~Assignee in strict conformity of the requirements of this Paragraph shall have been delivered to Seller.

Paragraph 13.02.  Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

## 14.  Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03.  This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto.  This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement.  A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

Paragraph 14.09.  This Contract may be executed in counterparts, each of which when executed shall be deemed to be an original and all of which together shall constitute a single instrument binding upon the parties and the use of facsimile or electronic/.pdf signatures shall be deemed original signatures.

Paragraph 14.10.   Seller and Purchaser represent and warrant to each other that Rosewood Realty Group (the "Broker") is the only Broker with whom the Seller and Purchaser have dealt in connection with this Contract.  Any brokerage commission due Broker shall be paid by Purchaser at closing.  Purchaser shall indemnify and defend Seller against any out-of-pocket costs, claims or expenses including attorney's fees arising out of breach of this representation, warranty or any agreement contained within this paragraph.  This paragraph shall survive the closing or if the closing does not occur, the termination of the Contract.

Signature Page to Follow

*IN WITNESS WHEREOF*, the parties hereto have executed this Contract as of the date first above written.

Seller:                                          Purchaser:




By: _____            By: _____
        Name:                                           Name:
        Title:                                                Title:

Backenroth Frankel & Krinsky, LLP,
Escrowee:

By: _____
_____ Name: _____
_____ Title: _____

 ("Seller")

By _____
Name: _____
Title: _____

("Purchaser")

By: _____
Name: _____
Title: _____

Escrowee:

Abrams Fensterman, LLP

11

By _____
Name:
Title:

Document comparison by Workshare 10.0 on Wednesday, January 12, 2022
2:54:31 PM

| Input: | |
|---|---|
| Document 1 ID | file://F:\Strulowitz\Auction Hearing\SaleK Original.docx |
| Description | SaleK Original |
| Document 2 ID | file://F:\Strulowitz\Auction Hearing\Contract of Sale (1-11-22 - highlighted example of changes.docx |
| Description | Contract of Sale   (1-11-22 - highlighted example of changes |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 60 |
| Deletions | 48 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 108 |

**CONTRACT** dated as of the _____ day of January, 2022 (this "Contract") , between 92 South 4th St  LLC, a _____ limited liability company,  (the "Seller" or "Debtor") having an address at _____ and GD CAPITAL LLC, a _____ limited liability company , having an address at _____ (the "Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

## 1. Sale of Property

Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real properties located at

| Address | Entity |
|---|---|
| 92 South 4th Street, Brooklyn NY 11249_____ | 92 South 4th St LLC |

 (collectively, the "Property").  The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights" of Sellers as of the date hereof; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c)  all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of  the Property (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

Paragraph 1.02.   Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 19-23013, entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on June 11, 2021 and is deemed annexed to this Contract.

Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding and Auction Procedures approved pursuant to the motion of the Seller.

**2. Purchase Price, Acceptable Funds**

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is One Million ($ 1,000,000.00) and 00/100 Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) One Hundred Thousand ($ 100,000.00) and 00/100 Dollars on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

(B) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds. Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

**3. Escrow of Down Payment**

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Abrams Fensterman, LLP ("Escrowee"). The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section. At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of

the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Seller in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

## 4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Balance by Purchaser shall take place on the thirtieth calendar day after the issuance of  an order from the bankruptcy court approving the Contract and authorizing the sale under its terms  (the "Closing"). The Closing is to be held at the office of the Seller's attorney, Abrams Fensterman, LLP  1 MetroTech Center, Suite 1701, Brooklyn, New York, 11201, Escrowee,, <u>TIME OF THE ESSENCE</u>. If the thirtieth (30th) calendar day shall fall on a Saturday, Sunday or legal holiday, the actual date of closing shall be the next business day following.

Paragraph 4.02.  Notwithstanding anything contained in Paragraph 4.01 to the contrary, Purchaser shall have a one-time right to adjourn the closing of up to fifteen (15) calendar days from the original date.  Purchaser shall exercise the right to adjourn the closing date no less than ten (10) calendar days prior to the date set forth for Closing under Paragraph 4.01.  Upon the Purchaser's exercise of the right to extend the Closing Date, the Purchaser shall increase the contract deposit by an additional $100,000.00.  Should the Purchaser not elect to extend the Closing Date or should the Purchaser fail to pay the additional contract deposit as required herein, then in either of those events, the Purchaser shall not be entitled to any extension of the Closing Date.

## 5.  Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth

3

conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby;  (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser  (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the

4

Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

## 6. Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

## 7. Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Seller to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of any vacant portions of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures. Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04. Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

## 8. Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01. The Balance to the Seller.

Paragraph 8.02. All required New York City and State transfer tax returns and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing. Purchaser will pay all recording fees together with any brokerage commission to the broker herein. Per the Bankruptcy plan no transfer taxes are anticipated to be due on this sale.

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

## 9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

## 10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length.

## 11.  Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's attorney at the address set forth below, and to Purchaser addressed to Purchaser's attorney at the address set forth below.

Seller's Attorney:
Abrams, Fensterman, LLP
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
Attn:  Mark J. Caruso, Esq.
mcaruso@abramslaw.com

6

Purchaser's Attorney:
Michael Dabah, Esq.
1633 Broadway, 46th Fl.
New York, NY  10019
mdabah@steinadleraw.com

## 12.  Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

## 13.  Assignment of Contract

Paragraph 13.01.   Purchaser shall have no right to assign this Contract except as provided for herein.   Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Proponent.  Any purported assignment not in conformity with the provisions hereof shall be void.  Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract.  Nevertheless, no assignment shall be effective unless and until an executed counterpart of the instrument of assignment and assumption agreement by the Assignee in strict conformity of the requirements of this Paragraph shall have been delivered to Seller.

Paragraph 13.02.  Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

## 14.  Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03.  This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto.  This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement.  A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

Paragraph 14.09.  This Contract may be executed in counterparts, each of which when executed shall be deemed to be an original and all of which together shall constitute a single instrument binding upon the parties and the use of facsimile or electronic/.pdf signatures shall be deemed original signatures.

8

Paragraph 14.10.   Seller and Purchaser represent and warrant to each other that Rosewood Realty Group (the "Broker") is the only Broker with whom the Seller and Purchaser have dealt in connection with this Contract.   Any brokerage commission due Broker shall be paid by Purchaser at closing.   Purchaser shall indemnify and defend Seller against any out-of-pocket costs, claims or expenses including attorney's fees arising out of breach of this representation, warranty or any agreement contained within this paragraph.   This paragraph shall survive the closing or if the closing does not occur, the termination of the Contract.

Signature Page to Follow

*IN WITNESS WHEREOF*, the parties hereto have executed this Contract as of the date first above written.

92 South 4th St  LLC ("Seller")

By _____
Name: _____
Title: _____

GD CAPITAL LLC ("Purchaser")

By: _____
Name:  _____
Title:  _____

Escrowee:

Abrams Fensterman, LLP

By _____
Name:
Title:

**CONTRACT** dated as of the ____ day of January, 2022 (this "Contract") , between Eighteen Homes  LLC  (the "Seller" or "Debtor") having an address at _____ and Maguire Brooklyn LLC, having an address at _____ (the "Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

## 1. Sale of Property

Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real properties located at

| Address | Entity |
|---|---|
| 263 18th Street, Brooklyn NY 11215 | Eighteen Homes LLC |

 (collectively, the "Property").  The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights" of Sellers as of the date hereof; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c)  all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of  the Property (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

Paragraph 1.02.  Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 19-23013, entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on June 11, 2021 and is deemed annexed to this Contract.

Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding and Auction Procedures approved pursuant to the motion of the Seller.

**2. Purchase Price, Acceptable Funds**

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is One Million Six Hundred Thousand ($ 1,600,000.00) and 00/100 Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) One  Hundred Sixty Thousand ($ 160,000.00) and 00/100 Dollars on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

(B) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds.  Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

**3. Escrow of Down Payment**

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Abrams Fensterman,  LLP ("Escrowee").  The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section.  At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures.  If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment.  If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of

2

the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Seller in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

## 4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Balance by Purchaser shall take place on the thirtieth calendar day after the issuance of  an order from the bankruptcy court approving the Contract and authorizing the sale under its terms  (the "Closing"). The Closing is to be held at the office of the Seller's attorney, Abrams, Fensterman, LLP  1 MetroTech Center, Suite 1701, Brooklyn, New York, 11201, Escrowee,, <u>TIME OF THE ESSENCE</u>. If the thirtieth (30th) calendar day shall fall on a Saturday, Sunday or legal holiday, the actual date of closing shall be the next business day following.

Paragraph 4.02.  Notwithstanding anything contained in Paragraph 4.01 to the contrary, Purchaser shall have a one-time right to adjourn the closing of up to fifteen (15) calendar days from the original date.  Purchaser shall exercise the right to adjourn the closing date no less than ten (10) calendar days prior to the date set forth for Closing under Paragraph 4.01.  Upon the Purchaser's exercise of the right to extend the Closing Date, the Purchaser shall increase the contract deposit by an additional $160,000.00.  Should the Purchaser not elect to extend the Closing Date or should the Purchaser fail to pay the additional contract deposit as required herein, then in either of those events, the Purchaser shall not be entitled to any extension of the Closing Date.

## 5.  Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth

conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby;  (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser  (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the

Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

## 6.  Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

## 7.  Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Seller to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of any vacant portions of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures.  Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04.  Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

## 8.  Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01.  The Balance to the Seller.

Paragraph 8.02.  All required New York City and State transfer tax returns and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.  Purchaser will pay all recording fees together with any brokerage commission to the broker herein. Per the Bankruptcy plan no transfer taxes are anticipated to be due on this sale.

5

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

## 9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

## 10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length.

## 11.  Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's attorney at the address set forth below, and to Purchaser addressed to Purchaser's attorney at the address set forth below.

Seller's Attorney:
Abrams, Fensterman, LLP
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
Attn:  Mark J. Caruso, Esq.
mcaruso@abramslaw.com

6

Purchaser's Attorney:

_____

_____

_____

_____

## 12.  Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

## 13.  Assignment of Contract

Paragraph 13.01.   Purchaser shall have no right to assign this Contract except as provided for herein.   Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Proponent.   Any purported assignment not in conformity with the provisions hereof shall be void.   Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract.   Nevertheless, no assignment shall be effective unless and until an executed counterpart of the instrument of assignment and assumption agreement by the Assignee in strict conformity of the requirements of this Paragraph shall have been delivered to Seller.

Paragraph 13.02.   Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

## 14.  Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03.  This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto.  This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement.  A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

Paragraph 14.09.  This Contract may be executed in counterparts, each of which when executed shall be deemed to be an original and all of which together shall constitute a single instrument binding upon the parties and the use of facsimile or electronic/.pdf signatures shall be deemed original signatures.

Paragraph 14.10.   Seller and Purchaser represent and warrant to each other that Rosewood Realty Group (the "Broker") is the only Broker with whom the Seller and Purchaser have dealt in connection with this Contract.   Any brokerage commission due Broker shall be paid by Purchaser at closing.   Purchaser shall indemnify and defend Seller against any out-of-pocket costs, claims or expenses including attorney's fees arising out of breach of this representation, warranty or any agreement contained within this paragraph.   This paragraph shall survive the closing or if the closing does not occur, the termination of the Contract.

Signature Page to Follow

   *IN WITNESS WHEREOF*, the parties hereto have executed this Contract as of the date first above written.

Eighteen Homes LLC ("Seller")

By _____
Name: _____
Title: _____

Maguire Brooklyn LLC ("Purchaser")

By: _____
Name:  _____
Title:   _____

Escrowee:

Abrams Fensterman, LLP

By _____
Name:
Title:

10

**CONTRACT** dated as of the _____ day of January, 2022 (this "Contract") , between 325 Franklin LLC (the "Seller" or "Debtor") having an address at _____ and Maguire Brooklyn, LLC , having an address at _____ (the "Purchaser").

    Seller and Purchaser hereby covenant and agree as follows:

## 1. Sale of Property

    Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real properties located at

| Address | Entity |
|---|---|
| 325 Franklin Ave, Brooklyn NY 11238 | 325 Franklin LLC |

 (collectively, the "Property").  The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights" of Sellers as of the date hereof; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c)  all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of  the Property (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

    Paragraph 1.02.   Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 19-23013, entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on June 11, 2021 and is deemed annexed to this Contract.

    Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding and Auction Procedures approved pursuant to the motion of the Seller.

## 2. Purchase Price, Acceptable Funds

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is Two Million Seven Hundred Twenty Five Thousand ($ 2,725,000.00) and 00/100 Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) Two Hundred Seventy-Two Thousand Five Hundred  ($ 272,500.00) and 00/100 Dollars on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

(B) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds.  Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

## 3. Escrow of Down Payment

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Abrams Fensterman,  LLP ("Escrowee").  The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section.  At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures.  If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment.  If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Seller in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

## 4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Balance by Purchaser shall take place on the thirtieth calendar day after the issuance of  an order from the bankruptcy court approving the Contract and authorizing the sale under its terms  (the "Closing"). The Closing is to be held at the office of the Seller's attorney, Abrams, Fensterman, LLP  1 MetroTech Center, Suite 1701, Brooklyn, New York, 11201, Escrowee,, <u>TIME OF THE ESSENCE</u>. If the thirtieth (30th) calendar day shall fall on a Saturday, Sunday or legal holiday, the actual date of closing shall be the next business day following.

Paragraph 4.02.  Notwithstanding anything contained in Paragraph 4.01 to the contrary, Purchaser shall have a one-time right to adjourn the closing of up to fifteen (15) calendar days from the original date.  Purchaser shall exercise the right to adjourn the closing date no less than ten (10) calendar days prior to the date set forth for Closing under Paragraph 4.01.  Upon the Purchaser's exercise of the right to extend the Closing Date, the Purchaser shall increase the contract deposit by an additional $272,500.00  Should the Purchaser not elect to extend the Closing Date or should the Purchaser fail to pay the additional contract deposit as required herein, then in either of those events, the Purchaser shall not be entitled to any extension of the Closing Date.

## 5.   Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale

annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby;  (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser  (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the

prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

## 6. Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

## 7. Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Seller to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of any vacant portions of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures. Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04. Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

## 8. Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01. The Balance to the Seller.

Paragraph 8.02. All required New York City and State transfer tax returns and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing. Purchaser

5

will pay all recording fees together with any brokerage commission to the broker herein. Per the Bankruptcy plan no transfer taxes are anticipated to be due on this sale.

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

## 9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

## 10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length.

## 11.  Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's attorney at the address set forth below, and to Purchaser addressed to Purchaser's attorney at the address set forth below.

Seller's Attorney:
Abrams, Fensterman, LLP
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
Attn:  Mark J. Caruso, Esq.
mcaruso@abramslaw.com

Purchaser's Attorney:

_____

_____

_____

_____


## 12. Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

## 13. Assignment of Contract

Paragraph 13.01.   Purchaser shall have no right to assign this Contract except as provided for herein.   Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Proponent.  Any purported assignment not in conformity with the provisions hereof shall be void.  Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract.  Nevertheless, no assignment shall be effective unless and until an executed counterpart of the instrument of assignment and assumption agreement by the Assignee in strict conformity of the requirements of this Paragraph shall have been delivered to Seller.

Paragraph 13.02.  Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

## 14. Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH

SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03.  This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto.  This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement.  A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

Paragraph 14.09.  This Contract may be executed in counterparts, each of which when executed shall be deemed to be an original and all of which together shall constitute a single instrument binding upon the parties and the use of facsimile or electronic/.pdf signatures shall be deemed original signatures.

Paragraph 14.10.   Seller and Purchaser represent and warrant to each other that Rosewood Realty Group (the "Broker") is the only Broker with whom the Seller and Purchaser

have dealt in connection with this Contract.  Any brokerage commission due Broker shall be paid by Purchaser at closing.  Purchaser shall indemnify and defend Seller against any out-of-pocket costs, claims or expenses including attorney's fees arising out of breach of this representation, warranty or any agreement contained within this paragraph.  This paragraph shall survive the closing or if the closing does not occur, the termination of the Contract.

Signature Page to Follow

9

*IN WITNESS WHEREOF*, the parties hereto have executed this Contract as of the date first above written.

325 FRANKLIN LLC ("Seller")

By _____
Name: _____
Title: _____

MAGUIRE BROOKLYN LLC ("Purchaser")

By: _____
Name:  _____
Title:  _____

Escrowee:

Abrams Fensterman, LLP

By _____
Name:
Title:

10

**CONTRACT** dated as of the _____ day of January, 2022 (this "Contract") , between 1125-1133 Greene Ave LLC  (the "Seller" or "Debtor") having an address at _____ and Maguire Brooklyn, LLC, having an address at _____ (the "Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

## 1. Sale of Property

Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real properties located at

| Address | Entity |
|---|---|
| 1125-1133 Greene Ave, Brooklyn NY 11221 | 1125-1133 Greene Ave LLC |

 (collectively, the "Property").  The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights" of Sellers as of the date hereof; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c)  all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of  the Property (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

Paragraph 1.02.   Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 19-23013, entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on June 11, 2021 and is deemed annexed to this Contract.

Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding and Auction Procedures approved pursuant to the motion of the Seller.

## 2. Purchase Price, Acceptable Funds

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is Four Million Six Hundred Thousand ($ 4,600,000.00) and 00/100 Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) Four Hundred Sixty Thousand ($ 460,000.00) and 00/100 Dollars on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

(B) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds.  Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

## 3. Escrow of Down Payment

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Abrams Fensterman,  LLP ("Escrowee").  The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section.  At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures.  If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment.  If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission

2

on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Seller in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

## 4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Balance by Purchaser shall take place on the thirtieth calendar day after the issuance of  an order from the bankruptcy court approving the Contract and authorizing the sale under its terms  (the "Closing"). The Closing is to be held at the office of the Seller's attorney, Abrams, Fensterman, LLP  1 MetroTech Center, Suite 1701, Brooklyn, New York, 11201, Escrowee,, <u>TIME OF THE ESSENCE</u>. If the thirtieth (30th) calendar day shall fall on a Saturday, Sunday or legal holiday, the actual date of closing shall be the next business day following.

Paragraph 4.02.  Notwithstanding anything contained in Paragraph 4.01 to the contrary, Purchaser shall have a one-time right to adjourn the closing of up to fifteen (15) calendar days from the original date.  Purchaser shall exercise the right to adjourn the closing date no less than ten (10) calendar days prior to the date set forth for Closing under Paragraph 4.01.  Upon the Purchaser's exercise of the right to extend the Closing Date, the Purchaser shall increase the contract deposit by an additional $460,000.00.  Should the Purchaser not elect to extend the Closing Date or should the Purchaser fail to pay the additional contract deposit as required herein, then in either of those events, the Purchaser shall not be entitled to any extension of the Closing Date.

## 5.  Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth

3

conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby;  (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser  (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the

4

Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

## 6.  Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

## 7.  Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Seller to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of any vacant portions of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures.  Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04.  Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

## 8.  Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01.  The Balance to the Seller.

Paragraph 8.02.  All required New York City and State transfer tax returns and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.  Purchaser will pay all recording fees together with any brokerage commission to the broker herein. Per the Bankruptcy plan no transfer taxes are anticipated to be due on this sale.

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

## 9. Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

## 10. Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length.

## 11. Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's attorney at the address set forth below, and to Purchaser addressed to Purchaser's attorney at the address set forth below.

Seller's Attorney:
Abrams, Fensterman, LLP
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
Attn:  Mark J. Caruso, Esq.
mcaruso@abramslaw.com

6

Purchaser's Attorney:

_____
_____
_____
_____


## 12.  Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

## 13.  Assignment of Contract

Paragraph 13.01.   Purchaser shall have no right to assign this Contract except as provided for herein.   Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Proponent.  Any purported assignment not in conformity with the provisions hereof shall be void.  Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract.  Nevertheless, no assignment shall be effective unless and until an executed counterpart of the instrument of assignment and assumption agreement by the Assignee in strict conformity of the requirements of this Paragraph shall have been delivered to Seller.

Paragraph 13.02.  Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

## 14.  Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03.  This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto.  This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement.  A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

Paragraph 14.09.  This Contract may be executed in counterparts, each of which when executed shall be deemed to be an original and all of which together shall constitute a single instrument binding upon the parties and the use of facsimile or electronic/.pdf signatures shall be deemed original signatures.

Paragraph 14.10.   Seller and Purchaser represent and warrant to each other that Rosewood Realty Group (the "Broker") is the only Broker with whom the Seller and Purchaser have dealt in connection with this Contract.  Any brokerage commission due Broker shall be paid by Purchaser at closing.  Purchaser shall indemnify and defend Seller against any out-of-pocket

costs, claims or expenses including attorney's fees arising out of breach of this representation, warranty or any agreement contained within this paragraph.  This paragraph shall survive the closing or if the closing does not occur, the termination of the Contract.

Signature Page to Follow

*IN WITNESS WHEREOF*, the parties hereto have executed this Contract as of the date first above written.


1125-1133 Greene Ave LLC ("Seller")


By _____
Name: _____
Title: _____



Maguire Brooklyn LLC ("Purchaser")


By: _____
Name:  _____
Title:   _____







Escrowee:

Abrams Fensterman, LLP



By _____
Name:
Title:

**CONTRACT** dated as of the _____ day of January, 2022 (this "Contract") , 1213 Jefferson LLC (the "Seller" or "Debtor") having an address at _____ and Maguire Brooklyn, LLC, having an address at _____ (the "Purchaser").

      Seller and Purchaser hereby covenant and agree as follows:

## 1. Sale of Property

      Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real properties located at

| Address | Entity |
|---------|--------|
| 1213 Jefferson Avenue, Brooklyn NY   11221 | 1213 Jefferson LLC |

 (collectively, the "Property").  The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights" of Sellers as of the date hereof; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c)  all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of  the Property (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

      Paragraph 1.02.   Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 19-23013, entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on June 11, 2021 and is deemed annexed to this Contract.

      Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding and Auction Procedures approved pursuant to the motion of the Seller.

## 2. Purchase Price, Acceptable Funds

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is Four Million Six Hundred Thousand ($ 4,600,000.00) and 00/100 Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) Nine Hundred Seventy-Five Thousand ($ 97,500.00) and 00/100 Dollars on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

(B) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds. Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

## 3. Escrow of Down Payment

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Abrams Fensterman, LLP ("Escrowee"). The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section. At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of

2

the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Seller in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

## 4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Balance by Purchaser shall take place on the thirtieth calendar day after the issuance of  an order from the bankruptcy court approving the Contract and authorizing the sale under its terms  (the "Closing"). The Closing is to be held at the office of the Seller's attorney, Abrams, Fensterman, LLP  1 MetroTech Center, Suite 1701, Brooklyn, New York, 11201, Escrowee,, <u>TIME OF THE ESSENCE</u>. If the thirtieth (30th) calendar day shall fall on a Saturday, Sunday or legal holiday, the actual date of closing shall be the next business day following.

Paragraph 4.02.  Notwithstanding anything contained in Paragraph 4.01 to the contrary, Purchaser shall have a one-time right to adjourn the closing of up to fifteen (15) calendar days from the original date.  Purchaser shall exercise the right to adjourn the closing date no less than ten (10) calendar days prior to the date set forth for Closing under Paragraph 4.01.  Upon the Purchaser's exercise of the right to extend the Closing Date, the Purchaser shall increase the contract deposit by an additional $97,500.00.  Should the Purchaser not elect to extend the Closing Date or should the Purchaser fail to pay the additional contract deposit as required herein, then in either of those events, the Purchaser shall not be entitled to any extension of the Closing Date.

## 5.  Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth

conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby;  (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser  (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the

4

Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

## 6.  Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

## 7.  Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Seller to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of any vacant portions of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures.  Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04.  Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

## 8.  Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01.  The Balance to the Seller.

Paragraph 8.02.  All required New York City and State transfer tax returns and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.  Purchaser will pay all recording fees together with any brokerage commission to the broker herein. Per the Bankruptcy plan no transfer taxes are anticipated to be due on this sale.

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

## 9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

## 10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length.

## 11.  Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's attorney at the address set forth below, and to Purchaser addressed to Purchaser's attorney at the address set forth below.

Seller's Attorney:
Abrams, Fensterman, LLP
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
Attn:  Mark J. Caruso, Esq.
mcaruso@abramslaw.com

Purchaser's Attorney:

_____

_____

_____

_____

## 12. Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

## 13. Assignment of Contract

Paragraph 13.01.   Purchaser shall have no right to assign this Contract except as provided for herein.   Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Proponent.  Any purported assignment not in conformity with the provisions hereof shall be void.  Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract.  Nevertheless, no assignment shall be effective unless and until an executed counterpart of the instrument of assignment and assumption agreement by the Assignee in strict conformity of the requirements of this Paragraph shall have been delivered to Seller.

Paragraph 13.02.  Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

## 14. Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

7

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03.  This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto.  This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement.  A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

Paragraph 14.09.  This Contract may be executed in counterparts, each of which when executed shall be deemed to be an original and all of which together shall constitute a single instrument binding upon the parties and the use of facsimile or electronic/.pdf signatures shall be deemed original signatures.

Paragraph 14.10.   Seller and Purchaser represent and warrant to each other that Rosewood Realty Group (the "Broker") is the only Broker with whom the Seller and Purchaser have dealt in connection with this Contract.  Any brokerage commission due Broker shall be paid by Purchaser at closing.  Purchaser shall indemnify and defend Seller against any out-of-pocket

8

costs, claims or expenses including attorney's fees arising out of breach of this representation, warranty or any agreement contained within this paragraph.  This paragraph shall survive the closing or if the closing does not occur, the termination of the Contract.

Signature Page to Follow

*IN WITNESS WHEREOF*, the parties hereto have executed this Contract as of the date first above written.

1213 Jefferson LLC ("Seller")

By _____

Name: _____

Title: _____

Maguire Brooklyn LLC ("Purchaser")

By: _____

Name: _____

Title: _____

Escrowee:

Abrams Fensterman, LLP

By _____

Name:

Title:

**CONTRACT** dated as of the ____ day of January, 2022 (this "Contract") , between 618 Lafayette  LLC  (the "Seller" or "Debtor") having an address at _____ and Joyland Broadway Member LLC , having an address at _____ (the "Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

## 1. Sale of Property

Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real properties located at

| Address | Entity |
|---------|--------|
| 618 Lafayette Ave, Brooklyn NY 11216 | 618 Lafayette LLC |

 (collectively, the "Property").  The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights" of Sellers as of the date hereof; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c)  all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of  the Property (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

Paragraph 1.02.   Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 19-23013, entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on June 11, 2021 and is deemed annexed to this Contract.

Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding and Auction Procedures approved pursuant to the motion of the Seller.

## 2. Purchase Price, Acceptable Funds

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is One Million Six Hundred Thousand and One ($ 1,600,001.00) and 00/100 Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) One  Hundred Sixty Thousand ($ 160,000.00) and 00/100 Dollars on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

(B) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds.  Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

## 3. Escrow of Down Payment

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Abrams Fensterman,  LLP ("Escrowee").  The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section.  At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures.  If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment.  If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Seller in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

## 4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Balance by Purchaser shall take place on the thirtieth calendar day after the issuance of  an order from the bankruptcy court approving the Contract and authorizing the sale under its terms  (the "Closing"). The Closing is to be held at the office of the Seller's attorney, Abrams, Fensterman, LLP  1 MetroTech Center, Suite 1701, Brooklyn, New York, 11201, Escrowee,, <u>TIME OF THE ESSENCE</u>. If the thirtieth (30th) calendar day shall fall on a Saturday, Sunday or legal holiday, the actual date of closing shall be the next business day following.

Paragraph 4.02.  Notwithstanding anything contained in Paragraph 4.01 to the contrary, Purchaser shall have a one-time right to adjourn the closing of up to fifteen (15) calendar days from the original date.  Purchaser shall exercise the right to adjourn the closing date no less than ten (10) calendar days prior to the date set forth for Closing under Paragraph 4.01.  Upon the Purchaser's exercise of the right to extend the Closing Date, the Purchaser shall increase the contract deposit by an additional $160,000.00.  Should the Purchaser not elect to extend the Closing Date or should the Purchaser fail to pay the additional contract deposit as required herein, then in either of those events, the Purchaser shall not be entitled to any extension of the Closing Date.

## 5.  Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale

3

annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby;  (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser  (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the

4

prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

## 6.  Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

## 7.  Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Seller to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of any vacant portions of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures.  Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04.  Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

## 8.  Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01.  The Balance to the Seller.

Paragraph 8.02.  All required New York City and State transfer tax returns and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.  Purchaser

5

will pay all recording fees together with any brokerage commission to the broker herein. Per the Bankruptcy plan no transfer taxes are anticipated to be due on this sale.

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

## 9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

## 10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length.

## 11.  Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's attorney at the address set forth below, and to Purchaser addressed to Purchaser's attorney at the address set forth below.

Seller's Attorney:
Abrams, Fensterman, LLP
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
Attn:  Mark J. Caruso, Esq.
mcaruso@abramslaw.com

Purchaser's Attorney:

_____

_____

_____

_____

## 12.  Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

## 13.  Assignment of Contract

Paragraph 13.01.   Purchaser shall have no right to assign this Contract except as provided for herein.   Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Proponent.  Any purported assignment not in conformity with the provisions hereof shall be void.  Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract.  Nevertheless, no assignment shall be effective unless and until an executed counterpart of the instrument of assignment and assumption agreement by the Assignee in strict conformity of the requirements of this Paragraph shall have been delivered to Seller.

Paragraph 13.02.  Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

## 14.  Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH

7

SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03.  This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto.  This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement.  A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

Paragraph 14.09.  This Contract may be executed in counterparts, each of which when executed shall be deemed to be an original and all of which together shall constitute a single instrument binding upon the parties and the use of facsimile or electronic/.pdf signatures shall be deemed original signatures.

Paragraph 14.10.   Seller and Purchaser represent and warrant to each other that Rosewood Realty Group (the "Broker") is the only Broker with whom the Seller and Purchaser

have dealt in connection with this Contract.  Any brokerage commission due Broker shall be paid by Purchaser at closing.  Purchaser shall indemnify and defend Seller against any out-of-pocket costs, claims or expenses including attorney's fees arising out of breach of this representation, warranty or any agreement contained within this paragraph.  This paragraph shall survive the closing or if the closing does not occur, the termination of the Contract.

Signature Page to Follow

*IN WITNESS WHEREOF*, the parties hereto have executed this Contract as of the date first above written.

618 Lafayette LLC ("Seller")

By _____
Name: _____
Title: _____

Joyland Broadway Member LLC Purchaser")

By: _____
Name:  _____
Title:   _____

Escrowee:

Abrams Fensterman, LLP

By _____
Name:
Title:

**CONTRACT** dated as of the _____ day of January, 2022 (this "Contract") , between 834 Metropolitan Avenue  LLC  (the "Seller" or "Debtor") having an address at _____ and Upton Metropolitan LLC , having an address at _____ (the "Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

## 1. Sale of Property

Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real properties located at

| Address | Entity |
|---|---|
| 834 Metropolitan Ave, Brooklyn NY 11211 | 834 Metropolitan Avenue LLC |

 (collectively, the "Property").  The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights" of Sellers as of the date hereof; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c)  all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of  the Property (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

Paragraph 1.02.   Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 19-23013, entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on June 11, 2021 and is deemed annexed to this Contract.

Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding and Auction Procedures approved pursuant to the motion of the Seller.

**2. Purchase Price, Acceptable Funds**

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is One Million Six Hundred Ten Thousand ($1,610,000.00) and 00/100 Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) One Hundred Sixty-One Thousand ($161,000.00) and 00/100 Dollars on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

(B) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds.  Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

**3. Escrow of Down Payment**

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Abrams Fensterman,  LLP ("Escrowee").  The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section.  At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures.  If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment.  If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of

2

the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Seller in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

## 4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Balance by Purchaser shall take place on the thirtieth calendar day after the issuance of  an order from the bankruptcy court approving the Contract and authorizing the sale under its terms  (the "Closing"). The Closing is to be held at the office of the Seller's attorney, Abrams, Fensterman, LLP  1 MetroTech Center, Suite 1701, Brooklyn, New York, 11201, Escrowee,, <u>TIME OF THE ESSENCE</u>. If the thirtieth (30th) calendar day shall fall on a Saturday, Sunday or legal holiday, the actual date of closing shall be the next business day following.

Paragraph 4.02.  Notwithstanding anything contained in Paragraph 4.01 to the contrary, Purchaser shall have a one-time right to adjourn the closing of up to fifteen (15) calendar days from the original date.  Purchaser shall exercise the right to adjourn the closing date no less than ten (10) calendar days prior to the date set forth for Closing under Paragraph 4.01.  Upon the Purchaser's exercise of the right to extend the Closing Date, the Purchaser shall increase the contract deposit by an additional $161,000.00.  Should the Purchaser not elect to extend the Closing Date or should the Purchaser fail to pay the additional contract deposit as required herein, then in either of those events, the Purchaser shall not be entitled to any extension of the Closing Date.

## 5.  Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth

3

conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby;  (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser  (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the

4

Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

## 6. Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

## 7. Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Seller to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of any vacant portions of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures.  Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04.  Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

## 8. Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01.  The Balance to the Seller.

Paragraph 8.02.  All required New York City and State transfer tax returns and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.  Purchaser will pay all recording fees together with any brokerage commission to the broker herein. Per the Bankruptcy plan no transfer taxes are anticipated to be due on this sale.

5

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

## 9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

## 10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length.

## 11.  Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's attorney at the address set forth below, and to Purchaser addressed to Purchaser's attorney at the address set forth below.

Seller's Attorney:
Abrams, Fensterman, LLP
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
Attn:  Mark J. Caruso, Esq.
mcaruso@abramslaw.com

Purchaser's Attorney:

_____

_____

_____

_____

## 12. Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

## 13. Assignment of Contract

Paragraph 13.01.   Purchaser shall have no right to assign this Contract except as provided for herein.   Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Proponent.  Any purported assignment not in conformity with the provisions hereof shall be void.  Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract.  Nevertheless, no assignment shall be effective unless and until an executed counterpart of the instrument of assignment and assumption agreement by the Assignee in strict conformity of the requirements of this Paragraph shall have been delivered to Seller.

Paragraph 13.02.  Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

## 14. Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH

7

SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03.  This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto.  This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement.  A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

Paragraph 14.09.  This Contract may be executed in counterparts, each of which when executed shall be deemed to be an original and all of which together shall constitute a single instrument binding upon the parties and the use of facsimile or electronic/.pdf signatures shall be deemed original signatures.

Paragraph 14.10.   Seller and Purchaser represent and warrant to each other that Rosewood Realty Group (the "Broker") is the only Broker with whom the Seller and Purchaser

have dealt in connection with this Contract.  Any brokerage commission due Broker shall be paid by Purchaser at closing.  Purchaser shall indemnify and defend Seller against any out-of-pocket costs, claims or expenses including attorney's fees arising out of breach of this representation, warranty or any agreement contained within this paragraph.  This paragraph shall survive the closing or if the closing does not occur, the termination of the Contract.

Signature Page to Follow

     ***IN WITNESS WHEREOF***, the parties hereto have executed this Contract as of the date first above written.

834 Metropolitan Avenue  LLC  ("Seller")

By _____
Name: _____
Title: _____

Upton Metropolitan LLC  ("Purchaser")

By: _____
Name:  _____
Title:  _____

Escrowee:

Abrams Fensterman, LLP

By _____
Name:
Title:

10

**CONTRACT** dated as of the _____ day of January, 2022 (this "Contract") , between 53 Stanhope LLC  (the "Seller" or "Debtor") having an address at _____ and Maguire Brooklyn LLC, having an address at _____ (the "Purchaser").

      Seller and Purchaser hereby covenant and agree as follows:

## 1. Sale of Property

      Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real properties located at

| Address | Entity |
|---|---|
| 53 Stanhope Street, Brooklyn NY   11238 | 53 Stanhope LLC |

 (collectively, the "Property").  The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights" of Sellers as of the date hereof; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c)  all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of  the Property (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

      Paragraph 1.02.   Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 19-23013, entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on June 11, 2021 and is deemed annexed to this Contract.

      Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding and Auction Procedures approved pursuant to the motion of the Seller.

**2. Purchase Price, Acceptable Funds**

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is One Million ($1,000,000.00) and 00/100 Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) One Hundred  Thousand  ($100,000.00) and 00/100 Dollars on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

(B) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds.  Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

**3. Escrow of Down Payment**

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Abrams Fensterman,  LLP ("Escrowee").  The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section.  At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures.  If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment.  If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of

2

the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Seller in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

## 4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Balance by Purchaser shall take place on the thirtieth calendar day after the issuance of an order from the bankruptcy court approving the Contract and authorizing the sale under its terms (the "Closing"). The Closing is to be held at the office of the Seller's attorney, Abrams, Fensterman, LLP  1 MetroTech Center, Suite 1701, Brooklyn, New York, 11201, Escrowee,, <u>TIME OF THE ESSENCE</u>. If the thirtieth (30th) calendar day shall fall on a Saturday, Sunday or legal holiday, the actual date of closing shall be the next business day following.

Paragraph 4.02.  Notwithstanding anything contained in Paragraph 4.01 to the contrary, Purchaser shall have a one-time right to adjourn the closing of up to fifteen (15) calendar days from the original date.  Purchaser shall exercise the right to adjourn the closing date no less than ten (10) calendar days prior to the date set forth for Closing under Paragraph 4.01.  Upon the Purchaser's exercise of the right to extend the Closing Date, the Purchaser shall increase the contract deposit by an additional $100,000.00.  Should the Purchaser not elect to extend the Closing Date or should the Purchaser fail to pay the additional contract deposit as required herein, then in either of those events, the Purchaser shall not be entitled to any extension of the Closing Date.

## 5.  Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth

conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby;  (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser  (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the

4

Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

## 6. Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

## 7. Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Seller to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of any vacant portions of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures.  Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04.  Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

## 8. Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01.  The Balance to the Seller.

Paragraph 8.02.  All required New York City and State transfer tax returns and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.  Purchaser will pay all recording fees together with any brokerage commission to the broker herein. Per the Bankruptcy plan no transfer taxes are anticipated to be due on this sale.

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

## 9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

## 10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length.

## 11.  Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's attorney at the address set forth below, and to Purchaser addressed to Purchaser's attorney at the address set forth below.

Seller's Attorney:
Abrams, Fensterman, LLP
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
Attn:  Mark J. Caruso, Esq.
mcaruso@abramslaw.com

6

Purchaser's Attorney:

_____

_____

_____

_____

## 12.  Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

## 13.  Assignment of Contract

Paragraph 13.01.   Purchaser shall have no right to assign this Contract except as provided for herein.   Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Proponent.  Any purported assignment not in conformity with the provisions hereof shall be void.  Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract.  Nevertheless, no assignment shall be effective unless and until an executed counterpart of the instrument of assignment and assumption agreement by the Assignee in strict conformity of the requirements of this Paragraph shall have been delivered to Seller.

Paragraph 13.02.  Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

## 14.  Miscellaneous Provisions

7

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03.  This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto.  This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement.  A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

Paragraph 14.09.  This Contract may be executed in counterparts, each of which when executed shall be deemed to be an original and all of which together shall constitute a single instrument binding upon the parties and the use of facsimile or electronic/.pdf signatures shall be deemed original signatures.

Paragraph 14.10.   Seller and Purchaser represent and warrant to each other that Rosewood Realty Group (the "Broker") is the only Broker with whom the Seller and Purchaser have dealt in connection with this Contract.   Any brokerage commission due Broker shall be paid by Purchaser at closing.   Purchaser shall indemnify and defend Seller against any out-of-pocket costs, claims or expenses including attorney's fees arising out of breach of this representation, warranty or any agreement contained within this paragraph.   This paragraph shall survive the closing or if the closing does not occur, the termination of the Contract.

Signature Page to Follow

*IN WITNESS WHEREOF*, the parties hereto have executed this Contract as of the date first above written.

53 STANHOPD LLC ("Seller")

By _____
Name: _____
Title: _____

MAGUIRE BROOKLYN LLC ("Purchaser")

By: _____
Name: _____
Title: _____

Escrowee:

Abrams Fensterman, LLP

By _____
Name:
Title:

**CONTRACT** dated as of the _____ day of January, 2022 (this "Contract") , between APC HOLDING 1 LLC (the "Seller" or "Debtor") having an address at 116 Nostrand Ave., Brooklyn NY 11205 and CHAVA OBERLANDER, having an address at 253 Rutledge Street, Brooklyn, New York  11211  (the "Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

## 1. Sale of Property

Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real properties located at

| Address | Entity |
|---|---|
| 568 Willoughby Ave, Brooklyn NY  11206 | APC HOLDING 1 LLC |

 (collectively, the "Property").  The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights" of Sellers as of the date hereof; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c)  all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of  the Property (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

Paragraph 1.02.   Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 19-23013, entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on June 11, 2021 and is deemed annexed to this Contract.

Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding and Auction Procedures approved pursuant to the motion of the Seller.

**2. Purchase Price, Acceptable Funds**

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is One Million Eight Hundred Thousand ($ 1,800,000.00) and 00/100 Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) One Hundred Eighty Thousand  ($180,000.00) and 00/100 Dollars on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

(B) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds.  Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

**3. Escrow of Down Payment**

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Abrams Fensterman,  LLP ("Escrowee").  The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section.  At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures.  If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment.  If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of

2

the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Seller in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

## 4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Balance by Purchaser shall take place on the thirtieth calendar day after the issuance of  an order from the bankruptcy court approving the Contract and authorizing the sale under its terms  (the "Closing"). The Closing is to be held at the office of the Seller's attorney, Abrams, Fensterman, LLP  1 MetroTech Center, Suite 1701, Brooklyn, New York, 11201, Escrowee,, <u>TIME OF THE ESSENCE</u>. If the thirtieth (30th) calendar day shall fall on a Saturday, Sunday or legal holiday, the actual date of closing shall be the next business day following.

Paragraph 4.02.  Notwithstanding anything contained in Paragraph 4.01 to the contrary, Purchaser shall have a one-time right to adjourn the closing of up to fifteen (15) calendar days from the original date.  Purchaser shall exercise the right to adjourn the closing date no less than ten (10) calendar days prior to the date set forth for Closing under Paragraph 4.01.  Upon the Purchaser's exercise of the right to extend the Closing Date, the Purchaser shall increase the contract deposit by an additional $ 180,000.00.  Should the Purchaser not elect to extend the Closing Date or should the Purchaser fail to pay the additional contract deposit as required herein, then in either of those events, the Purchaser shall not be entitled to any extension of the Closing Date.

## 5.  Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth

3

conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby;  (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser  (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the

4

Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

## 6. Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

## 7. Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Seller to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of any vacant portions of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures.  Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04.  Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

## 8. Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01.  The Balance to the Seller.

Paragraph 8.02.  All required New York City and State transfer tax returns and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.  Purchaser will pay all recording fees together with any brokerage commission to the broker herein. Per the Bankruptcy plan no transfer taxes are anticipated to be due on this sale.

5

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

## 9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

## 10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length.

## 11.  Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's attorney at the address set forth below, and to Purchaser addressed to Purchaser's attorney at the address set forth below.

Seller's Attorney:
Abrams, Fensterman, LLP
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
Attn:  Mark J. Caruso, Esq.
mcaruso@abramslaw.com

6

Purchaser's Attorney:

_____

_____

_____

_____

## 12. Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

## 13. Assignment of Contract

Paragraph 13.01.   Purchaser shall have no right to assign this Contract except as provided for herein.   Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Proponent.  Any purported assignment not in conformity with the provisions hereof shall be void.  Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract.  Nevertheless, no assignment shall be effective unless and until an executed counterpart of the instrument of assignment and assumption agreement by the Assignee in strict conformity of the requirements of this Paragraph shall have been delivered to Seller.

Paragraph 13.02.  Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

## 14. Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH

7

SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03.  This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto.  This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement.  A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

Paragraph 14.09.  This Contract may be executed in counterparts, each of which when executed shall be deemed to be an original and all of which together shall constitute a single instrument binding upon the parties and the use of facsimile or electronic/.pdf signatures shall be deemed original signatures.

Paragraph 14.10.  Seller and Purchaser represent and warrant to each other that Rosewood Realty Group (the "Broker") is the only Broker with whom the Seller and Purchaser

have dealt in connection with this Contract.  Any brokerage commission due Broker shall be paid by Purchaser at closing.  Purchaser shall indemnify and defend Seller against any out-of-pocket costs, claims or expenses including attorney's fees arising out of breach of this representation, warranty or any agreement contained within this paragraph.  This paragraph shall survive the closing or if the closing does not occur, the termination of the Contract.

Signature Page to Follow

*IN WITNESS WHEREOF*, the parties hereto have executed this Contract as of the date first above written.


APC HOLDING 1 LLC ("Seller")


By _____

Name: _____

Title: _____




_____

CHAVA OBERLANDER   ("Purchaser")




Escrowee:

Abrams Fensterman, LLP



By _____

Name:

Title:

# Exhibit B



# MARKETING REPORT AND AUCTION RESULTS:

## BANKRUPTCY SALE, 13 BUILDING PORTFOLIO, BROOKLYN NY



Greg Corbin
President, Bankruptcy and Restructuring

# EXECUTIVE SUMMARY

Rosewood Realty Group marketed the subject 13 buildings as individual properties, in bulk, and as a package through numerous mediums to a vast number of investors, bankruptcy attorneys and trustees, lenders, family offices, syndicators, institutional funds, and distressed asset investors both locally and nationally. We also worked with Rosewood's internal team of brokers, and outside commercial and residential brokerage firms. With direct emails, snail mail, social media, industry websites, co-brokers, and print & online advertisements, we estimate that we've reached **over 80,000 people since May 2021.**

We:

- Created and sent multiple HTML email campaigns to 39,000 investors
- Sent emails to 2,540 bankruptcy and real estate attorneys, and trustees
- Launched multiple social media campaigns on LinkedIn, Instagram, Facebook, and Twitter
- Designed a 92-page offering memorandum to email to investors
- Snail mailed 1000 auction calendar brochures to investors and bankruptcy professionals; subject properties featured in calendar pages and 2-page spread
- Hired a 3rd party service to take aerial drone photos and create amenities maps
- Researched and featured important new developments in marketing materials
- Posted the listing to real estate websites: CoStar / Loopnet, Crexi, Brevitas, Crezma, Propertyshark / Commercial Café, Sonoture, and Apartmentbuildings.com
- Featured on the Rosewood Realty Group website
- Utilized our proprietary database to call and email Brooklyn-centric, greater New York, and nationwide investors
- Complied and utilized additional real time market data including new buyers and sellers of similar buildings, who we subsequently contacted
- Emailed the outside brokerage community, both residential and commercial, from our proprietary tri-state list of 26,250 brokers and sales agents
- Reached out to media and press and received coverage from multiple publications including The Real Deal
- Were featured as New York Real Estate Journal Property of the Month (paid advertorial)
- Ran banner ads in Pincus Media Co's newsletter
- Ran print and online ads in The Epoch Times





   

CREZMA | Listing



## Property Information

**Address:** 92 South 4th Street, Brooklyn, NY, USA

**Residential units:** 40

**Commercial units:** 1

**Lot size (SF.):** 33,900

**Asking price:** $0

**Annual income:** -

**Annual expenses:** -

**CAP rate:** -

**NOI:** -

## Description

Rosewood Realty Group is pleased to present a portfolio of walk-up apartment buildings in a few of Brooklyn's most transformed neighborhoods, including Williamsburg, Bedford-Stuyvesant, Bushwick & Greenwood Heights.

## Listed by

**Name:** chaya Milworn

**Broker:** Rosewood Realty Group

**Office:** 38 East 29th Street, New York, NY, USA

**Phone:** 2123599936

Contact Person





**92 SOUTH 4 STREET**
Elite Listing · Multifamily · Brooklyn · Williamsburg

| | | | |
|---|---|---|---|
| **Submit Best Offer** | **-%** | **40** | **Contact Agent** |
| Price | Cap Rate | Units | NOI |



| | |
|---|---|
| **Status** | Elite |
| **Days on Market** | 174 |
| **Property Type** | Multifamily |
| **Neighborhood** | Williamsburg |
| **Property Dimensions** | 23.0 x 45.0 |
| **Property Area** | 33,900 sq.ft. |
| **Total Units:** | 40 |
| **Stories:** | 3 |
| **NOI** | Contact Agent |
| **Price** | Submit Best Offer |
| **Price Per Unit** | - |
| **Cap Rate** | -% |

**Exclusive Agent**



**Greg Corbin**
Rosewood Realty Group

Greg Corbin

tcg@rosewoodrg.com

Phone

Please send me more information about 92 SOUTH 4 STREET.

**Contact Agent**

Rosewood Realty Group is pleased to present a portfolio of walk-up apartment buildings in a few of Brooklyn's most transformed neighborhoods, including Williamsburg, Bedford-Stuyvesant, Bushwick & Greenwood Heights.

The portfolio consists of 13 buildings totaling 40 apartments and 1 commercial unit, spanning 34,483 SF, with over 19,000 SF of air rights. The properties benefit from some operating efficiencies that include but are not limited to free market rents & favorable tax classes that result in very strong operating ratios. They are located in desirable Brooklyn residential neighborhoods that are in strong demand and as such command high rental rates. Further, there is a bundle of five buildings within the portfolio that are contiguous, allowing for managerial efficiencies.

The North Brooklyn market has been experiencing population growth in recent years as development has continued and the work & play lifestyle has taken a foothold. There has been a spike in deliveries of office space in the market in recent years with more in the pipeline, resulting in growth in rental demand from such workers. When such a trend is coupled with the already dominant characteristics that have led to the market's prominence, the future trend remains positive



# 13 Building Portfolio | Brooklyn

92 South 4th Street, brooklyn, NY 11211 United States

Published   On Market   Multifamily   **Market Price**

Featured

Site Builder   Edit   Last Call   Report   Share   Actions







## 13 Building Portfolio | Brooklyn
92 S 4th St, Brooklyn, NY 11249

For Sale
**Contact for pricing**

Property Type
**Multi-Family**

Property Size
**33,900 Sqft**

Units
**40**

Lot Size
**0.05 Acre**

Property Tenancy
**Multi-Tenant**

**ApartmentBuildings.com** | Listing



## 13 BUILDING PORTFOLIO | BROOKLYN



### PROPERTY DESCRIPTION

• 13 Building Portfolio • Williamsburg, Bed-Stuy, Bushwick, and Greenwood Hts. • 40 apartments and 1 commercial unit • 34,500 SF with 19,000 SF or air rights • Low taxes / favorable tax classes: 1 and 2A . Rosewood Realty Group is pleased to present a portfolio of walk-up apartment buildings in a few of Brooklyn's most transformed neighborhoods, including Williamsburg, Bedford-Stuyvesant, Bushwick & Greenwood Heights.The portfolio consists of 13 buildings totaling 40 apartments and 1 commercial unit, spanning 34,483 SF, with over 19,000 SF of air rights. The properties benefit from some operating efficiencies that include but are not limited to free market rents & favorable tax classes that result in very strong operating ratios. They are located in desirable Brooklyn residential neighborhoods that are in strong demand and as such command high rental rates. Further, there is a bundle of five buildings within the portfolio that are contiguous, allowing for managerial efficiencies.

## 92 South 4th street , Brooklyn, NY 11211

The North Brooklyn market has been experiencing population growth in recent years as development has continued and the work & play lifestyle has taken a foothold. There has been a spike in deliveries of office space in the market in recent years with more in the pipeline, resulting in growth in rental demand from such workers. When such a trend is coupled with the already dominant characteristics that have led to the market's prominence, the future trend remains positive




Listing







**13 Building Portfolio**
Williamsburg, Bedford-Stuyvesant, Bushwick, & Greenwood Heights, Brooklyn, NY















## SCHEDULED BANKRUPTCY AND FORECLOSURE SALES

| DATE | ADDRESS | TYPE |
|---|---|---|
| Jul 26th | 1414 & 1376 Utica Avenue, Brooklyn | Bankruptcy Sale |
| Jul 29th | 51-53 East 73rd Street, Manhattan | Bankruptcy Sale |
| Aug 2nd | 157 Beach 96th Street, Queens | Bankruptcy Sale |
| Aug 24th | 25-16 37th Street, LIC, Queens, | UCC Foreclosure |
| Aug 31st | 617 62nd Street, Brooklyn | UCC Foreclosure |
| Sept 1st | 4811, 5505 & 5507 5th Avenue, Brooklyn | UCC Foreclosure |
| Sept 2nd | 1580 Nostrand Avenue, Brooklyn | UCC Foreclosure |
| Sept 9th | 23 Orchard Street, Montgomery, NJ | CA Sale |
| Sept 10th | 540 Concord Avenue, Bronx | UCC Foreclosure |
| Oct/Nov | 650 & 700 Plaza Drive, Secaucus, NJ | UCC Foreclosure |
| Oct/Nov | 1526 52nd Street, Brooklyn | Bankruptcy Sale |
| Oct/Nov | 286 Rider Avenue, Bronx | Bankruptcy Sale |
| Oct/Nov | 13 Building Portfolio, Brooklyn | Bankruptcy Sale |
| Oct/Nov | 49-55 Dupont Avenue, Brooklyn | Bankruptcy Sale |
| Oct/Nov | 27 Marker Place, Irvington, NY | Bankruptcy Sale | Recap | JV |
| Oct/Nov | 140 East 37th Street, Manhattan | Foreclosure Sale |
| Oct/Nov | 159 Broadway, Brooklyn | Bankruptcy Sale | Recap | JV |

*Rosewood Realty Group | 5*



## AUCTION CALENDAR

### JULY

| SUN | MON | TUE | WED | THU | FRI | SAT |
|---|---|---|---|---|---|---|
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### AUGUST

| SUN | MON | TUE | WED | THU | FRI | SAT |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |

### SEPTEMBER

| SUN | MON | TUE | WED | THU | FRI | SAT |
|---|---|---|---|---|---|---|
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |

### OCTOBER/NOVEMBER



*Rosewood Realty Group | 7*

**BROCHURE 1** | Snail mailed to 1,000 investors and bankruptcy professionals

## 13 Building Portfolio
*Williamsburg, Bed-Stuy, Bushwick, & Greenwood Heights, Brooklyn, NY*

**BANKRUPTCY SALE: OCT/NOV**

### HIGHLIGHTS
- 13 Building Portfolio
- Can Be Sold Individually
- Prime Williamsburg, Bed-Stuy, Greenwood Hts., and Bushwick
- 40 apartments and 1 commercial unit
- 34,500 SF with 19,000 SF of air rights
- Low taxes / favorable tax classes: 1 and 2A

### ADDRESSES
- 92 South 4th Street
- 834 Metropolitan Avenue
- 1125-1133 Greene Avenue
- 53 Stanhope Street
- 1213 Jefferson Avenue
- 568 Willoughby Avenue
- 618 Lafayette Avenue
- 325 Franklin Avenue
- 263 18th Street










# BROCHURE |
Snail mailed to 1,000 investors and bankruptcy professionals



## 紐約州政府

# 紐約州「房東租金援助計畫」(LRAP)已經開放申請 先到先得

**紐約州長霍楚近日宣布：**
提供 1.25 億美元的資金，幫助無法獲得紐約緊急租金援助計畫(ERAP)補助的房東。

房東租金援助計畫採取先到先得。

- 優先考慮出租單位少於 20 個，並在 10 月 7 日起 45 天內提出申請的房東。
- 房東最多可獲得 12 個月的積欠租金補助。
- 已申請租金援助計畫的房東，可通過現有帳戶完成申請。
  網址 https://tinyurl.com/rvtevmac
  詳細資訊可上網站 otda.ny.gov/lrap 查詢。



**LRAP 申請條件**

1. 房東所出租物業的租金不得高於市場行情的 150%。
2. 必須是在 2020 年 3 月 1 日疫情爆發之後被積欠的租金，並提供相關紀錄。
3. 被積欠的租金是由於租戶拒絕申請紐約緊急租金援助計畫或因拖欠租金而撤離。



## 房屋買賣

### 皇后區3家庭房售

皇后區 Ridgewood 60-63 68th Ave,
一棟老磚制 3 家庭房，6臥3浴，3廳房，售$1,245,000
電: Rosa 718-710-1967 (英文)

旺角物業管理公司需要大量房源,同時為旺角土地提供物業管理.買賣一條龍服務
旺角地產杜先生: 917-607-2902

自住 投資 首選

**艾姆赫斯**
**闡中數獸**
**大街第 89.8萬**
近地鐵, 公園
24小時超市

可樂娜公園
8年前四家庭,獨立電梯
25年滿租,收入高穩定少
為95對面是公園 179萬9
近7號地鐵一站到法拉盛


Greg Corbin
212-359-9904
greg@rosewoodrg.com


Leah Chen
646-642-5650
leahchen8888@gmail.com

### 抵債拍賣 FORECLOSURE SALE



拍賣時間 :10月21日
曼哈頓東 37 街 140 號
- Murray Hill 中心歷史悠久的 5 層建築
- 清空無租客
- 可為一家庭或多家庭
- 5,342 SF + 900 SF 地下室
- 鐵物業可作為居住/政府和非營利組織/生活/工作/醫療股權/辦公室

### ROSEWOOD 法拍屋大拍賣 BANKRUPTCY SALES



**617-639 62nd street**
**布魯克林** UCC股權拍賣

- 20,000平方英尺
- 建地拍賣 :地下室可作為 18,000平方英尺的超市, 一樓可作為10,000平方英尺的零售商店 二樓可作為10,000平方英尺的餐廳 3 至5樓可作為28,000平方英尺尺的醫療辦公室。
- 40分鐘到曼哈頓中央車站
- 緊鄰N和R地鐵站



拍賣時間 :9月
13棟布魯克林大樓打包出售
- Williamsburg、Bed-Stuy Bushwick 和 Greenwood Hts。
- 40 套自由市場公寓 + 1 套社區服務
- 34,500 SF 19,000 SF 空中權
- 低稅/優惠稅種 1 和 2A



**1580 Nostrand Avenue,**
**布魯克林** UCC股權拍賣

- 228,856平方英尺的商住混合用途開發項目
- 已完工建築有95個單位
- 分別為2 3和4臥室
- 空地計畫建立115個單位
- 項目位於布魯克林展望公園
- 格局方正的格局並且前後都有大露臺
- 2條街到2和5地鐵站

## 拍賣時間 :9月

13棟布魯克林大樓打包出售
- Williamsburg、Bed-Stuy Bushwick 和 Greenwood Hts。
- 40 套自由市場公寓 + 1 套社區服務
- 34,500 SF 19,000 SF 空中權
- 低稅/優惠稅種 1 和 2A

### ROSEWOOD REALTY GROUP 法拍屋大拍

# 紐約布魯克林 13 棟建築 破產出售



- Williamsburg
- Bed-Stuy
- Bushwick
- Greenwood Hts
- 40套自由市場公寓 + 1套社區服務
- 34,500 SF, 19,000 SF 加蓋權
- 低稅/優惠稅種: 1 和 2A

拍賣時間 01/06















# INVESTOR DEMAND | Sample of inbound email requests for information and OMs



# INVESTOR DEMAND | Sample of inbound email requests for information and OMs



Market Minute
*Our business intelligence*
Ad: Pincus Media



**Development Leads**
*Our business intelligence*

Was this email forwarded to you?

Click here to get this free development email.



**BANKRUPTCY SALE**
13 Free Market Buildings

Properties can be sold individually

ROSEWOOD
REALTY GROUP

Aaron Jungreis          Greg Corbin
aaron@rosewoodrg.com  greg@rosewoodrg.com
212.359.9901          212.359.9904

*Development Leads is written using artificial intelligence technology, but relies on suggestions and insights from readers. It tracks new building, alteration (A1 and A2 filings above $20,000) and demolition filings with the Department of Buildings as well as Acris, New York State Attorney General and other public records. It is edited by Atticus O'Brien-Pappalardo, available at (203) 241-5788 or* atticus@pincusco.com.

**News summary**

- David Weisz files plans for 44-unit mixed-use building in Kensington

- Joseph Safdie files plans to add 24 units to resi building in Tremont

- Ascent Development permitted for 92-unit resi building in LIC



**BANKRUPTCY SALE**
13 Free Market Buildings

Properties can be sold individually

ROSEWOOD
REALTY GROUP

Aaron Jungreis          Greg Corbin
aaron@rosewoodrg.com  greg@rosewoodrg.com
212.359.9901          212.359.9904

## BANKRUPTCY SALE
### 13 Free Market Buildings



Williamsburg | Bushwick
Bed-Stuy | Greenwood Heights
Brooklyn, NY

40 Residential Units, 1 Commercial Unit

34,483 Total SF | 19,000 SF of Air Rights

Properties can be sold individually



Aaron Jungreis: aaron@rosewoodrg.com | 212.359.9901
Greg Corbin: greg@rosewoodrg.com | 212.359.9904



## BANKRUPTCY SALE
### 13 Free Market Buildings | Brooklyn, NY

Williamsburg | Bushwick | Bed-Stuy | Greenwood Hts

Aaron Jungreis:
aaron@rosewoodrg.com | 212.359.9901
Greg Corbin:
greg@rosewoodrg.com | 212.359.9904





## 1125-1133 Greene Ave, Brooklyn, NY 11221



| | |
|---|---|
| Block/Lot | 03285-1, 93, 92, 91 & 90 |
| Neighborhood | Bushwick |
| Lot Dimensions | 50 ft x 100 ft |
| Building SF | 10,975 |
| Stories | 3 |
| Residential | 10 |
| Commercial | 0 |
| Zoning | R6 |
| Year Built | 2013 |
| Tax Class | 1 |
| Air Rights | 1,176 |
| R.E. Taxes Tentative (21/22) | $39,165 |

### EXPENSES

| Revenue | |
|---|---|
| Residential | $396,300.00 |
| Vacancy & Collection Loss (5%) | $(19,815.00) |
| **Effective Gross Income** | **$376,485.00** |

| Operating Expenses | |
|---|---|
| R.E. Taxes Tentative (21/22) | $39,165.00 |
| Water & Sewer | $13,629.07 |
| Fuel | $11,000.00 |
| Electric | $3,500.00 |
| Insurance | $14,888.84 |
| Repairs, Maintenance, & Misc. | $13,290.31 |
| Cleaning | $8,134.32 |
| Exterminator | $4,763.27 |
| Supplies | $4,127.99 |
| Payroll | $10,000.00 |
| Management Fee (3%) | $11,294.55 |
| **Total Expenses** | **$133,793.35** |

| | |
|---|---|
| **Net Operating Income** | **$242,691.65** |

### RENT ROLL

| Building | Tenant | Unit | Type | Monthly | Annual |
|---|---|---|---|---|---|
| 1125 Greene Ave | Runtao Yang, Carmen Otey | 1125-1 | Residential | 3,450 | 41,400 |
| 1125 Greene Ave | Hirschtick, Emily | 1125-2 | Residential | 3,500 | 42,000 |
| 1127 Greene Ave | Loly Bo, Francia Valbuena, | 1127-1 | Residential | 3,200 | 38,400 |
| 1127 Greene Ave | Jessica E, Matthew Duell | 1127-2 | Residential | 3,775 | 45,300 |
| 1129 Greene Ave | Zoila Pomavilla, Luis Anguizaca | 1129-1 | Residential | 2,500 | 30,000 |
| 1129 Greene Ave | Kathleen Maas, Mallory Perry | 1129-2 | Residential | 3,200 | 38,400 |
| 1131 Greene Ave | Colin Denlinger, Joni Koay | 1131-1 | Residential | 2,500 | 30,000 |
| 1131 Greene Ave | Jones, Sidney | 1131-2 | Residential | 3,700 | 44,400 |
| 1133 Greene Ave | Alina Tip, Jared Shirkey, | 1133-1 | Residential | 3,300 | 39,600 |
| 1133 Greene Ave | Kelsey Legeny, Karolina Knepaite | 1133-2 | Residential | 3,900 | 46,800 |
| **Total** | | | | **33,025** | **396,300** |



# OFFERING MEMORANDUM | 92 Page OM (Sample Pages)





### PROPERTY DETAILS

| Address | Block/Lot | Neighborhood | Lot Dimensions | Building SF | Stories | Residential | Commercial | Zoning | Year Built | Tax Class | Air Rights | R.E. Taxes Tentative (21/22) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 325 Franklin Ave | 01954-0004 | Bedford-Stuyvesant | 20 ft x 82.5 ft | 4,000 | 2 | 4 | 1 | R6A, C2-4 | 1968 | 2A | 3,366 | $11,880 |
| 53 Stanhope St | 03254-72 | Bushwick | 25 ft x 100 ft | 1,848 | 2 | 2 | 0 | R6 | 1901 | 1 | 4,325 | $2,306 |
| 92 South 4th St | 02443-0010 | Williamsburg | 23 ft x 100 ft | 4,140 | 3 | 3 | 0 | M1-2/R6, MX-8 | 1899 | | | |
| 618 Lafayette Ave | 01789-0022 | Bedford-Stuyvesant | 18.75 ft x 100 ft | 1,944 | 3 | 4 | 0 | R6B | 1931 | | | |
| 834 Metropolitan Ave | 02916-0507 | Williamsburg | 25 ft x 100 ft | 2,136 | 3 | 3 | 0 | R6B, C2-4 | 1910 | | | |
| 1125-1133 Greene Ave | 03285-1, 93, 93, 91 & 90 | Bushwick | 50 ft x 100 ft | 10,975 | 3 | 10 | 0 | R6 | 2013 | | | |
| 1213 Jefferson Ave | 03382-0048 | Bushwick | 20 ft x 100 ft | 2,250 | 2 | 3 | 0 | R6 | 1905 | | | |
| 568 Willoughby Ave | 01762-0034 | Bedford-Stuyvesant | 20 ft x 100 ft | 4,290 | 4 | 6 | 0 | R6B | 1899 | | | |
| 263 18th St | 00463-0071 | Carroll Gardens | 20 ft x 97.83 ft | 2,267 | 2 | 5 | 0 | R6B | 1901 | | | |
| **Total** | | | | 33,900 SF | | 40 Units | 1 Units | | | | | |

*18 | 13 Building Portfolio, Brooklyn, NY*

## PORTFOLIO FINANCIAL ROLLUP

| Address | Effective Gross Income | Operating Expenses | Net Operating Income |
|---|---|---|---|
| 325 Franklin Ave | 145,202 | 40,427 | 104,775 |
| 53 Stanhope St | 61,104 | 15,071 | 46,033 |
| 92 South 4th St | 121,410 | 35,596 | 85,814 |
| 618 Lafayette Ave | 107,445 | 32,672 | 74,773 |
| 834 Metropolitan Ave | 106,020 | 33,906 | 72,114 |
| 1125-1133 Greene Ave | 376,485 | 133,793 | 242,692 |
| 1213 Jefferson Ave | 102,315 | 29,898 | 72,417 |
| 568 Willoughby Ave | 156,180 | 64,001 | 92,179 |
| 263 18th St | 130,245 | 40,193 | 90,052 |
| **Total** | **$1,306,406** | **$425,557** | **$880,849** |

*Offering Memorandum | 19*

## 92 South 4th Street, Brooklyn, NY 11211

### LOCATION MAP



### BIRDS-EYE-VIEW



### ZONING MAP

### TAX MAP

*26 | 13 Building Portfolio, Brooklyn, NY*

## Williamsburg Retail







*38 | 13 Building Portfolio, Brooklyn, NY*

*Offering Memorandum | 39*

**INVESTORS** | Sample of Emails Sent

| First Name | Last Name | Title | Company | Office Pho | D | Mobile Pho | Primary E-mai ( |
|------------|-----------|-------|---------|-----------|---|-----------|-----------------|
| Aaron | Marcus | | Lexin Capital | | | (212) 750-3500 | |
| Aaron | Segal | Vice President | M Melnick & Co | (718) 292-6. | | | aaron@mmelr . |
| Abraham | Esses | | Optimum Properties | (212) 980-1: | (646) 450-2( | | ae@optimump . |
| Abraham | Rabadi | | | | | (914) 403-7! | aberabadi4@g . |
| Achille | Raspantini | Founder | Tech Ops | (212) 465-1: | . | | a.raspantini@t . |
| Adam | Ecker | CEO | Davada Property Group | | | (914) 512-0! | adam@davada . |
| Adam | Geller | | Geller Associates | (973) 971-0 | (917) 226-2( | | adamgeller1@ . |
| Adam | Kessner | Principal | K5 Equities | (212) 289- | (: | (917) 662-0( | adamkessner@ . |
| Adam | Stein | Senior Vice President | WinnCompanies | (617) 239-4 | . | | astein@winncu . |
| Aharon | Watson | Acquisitions | Audubon Partners | | | (917) 498-5! | watson@audu . |
| Al | Bokhour | President | Bokhour Developers | (516) 882-2: | (516) 850-0! | | al@bokhourde . |
| Al | Gindi | Acquisitions | ASG Equities | (212) 235-6: | (917) 921-2: | | alrgindi@asge( . |
| Alan | Jamnik | | | (516) 308-1! | . | | alan@ajamk.c( . |
| Alan | Wasserman | Founder | Wasserman Management | (914) 637-6: | (914) 400-7: | | aw@swmanag . |
| Alec | Brackenridge | EVP, Investments | Equity Residential | (617) 648-2: | (617) 312-6( | | abrackenridge. . |
| Alessandro | Bonati | Partner | Colonnade Group | (917) 283-0! | . | | alessandro@e| . |
| Alex | Goldstein | CEO | Samson Management | (718) 830-0: | . | | alex@samsonr . |
| Alex | Mehmataj | | | | | (646) 879-2: | cabinetsexpres . |
| Alexander | Muravsky | Acquisitions Associat( | Kimco Realty Corporation | (516) 869-9( | . | | amuravsky@ki . |
| Alexander | Scharf | | Esplanade Partners | (212) 874-5( | (917) 921-2( | | ali545@aol.co . |
| Alexander | Spivak | CEO & Founder | Stagg Development | (347) 538-7 | . | | commercialace . |
| Alexander | Szikla | Acquisitions Associat( | Newcastle Realty Services | (646) 472-7! | . | | alex@newcast . |
| Allan | Kleban | Vice President of Bus | KBE Building Corporation | (860) 284-7 | (443) 812-6: | | akleban@kbet . |
| Allen | Handelman | VP of Development | Conifer | (585) 324-0! | (585) 943-3! | | ahandelman@ . |
| Allen | Stein | | Sprain Brook Manor Rehab | (914) 472-3: | (917) 337-0: | | stein1120@gn . |
| Alphonse | Lembo | Director of Pre-Const | Monadnock Development | (718) 875-8: | . | | alembo@mon . |
| Amer | Ebrahim | Transactions Manage | Namdar Realty Group | (516) 773-0( | . | | amer@namda . |
| Andrew | Carbonara | Acquisitions | Welllife Network | (718) 559-0! | . | | andrew.carbor . |
| Andrew | Ehinger | Acquisitions Associat( | Storage Deluxe | | | | aehinger@stoi . |
| Andrew | Goldberg | Vice Chairman Advisc | CBRE | (212) 984-8( | . | | andrew.goldbe . |
| Andrew | Landesman | | ADL Properties | (917) 455-8: | (646) 723-2 | | alandesman@ . |
| Angelo | Tamo | | | | | (917) 841-7: | newerafunding . |

**THE CORBIN GROUP** | List of 2,540 Real Estate & Bankruptcy Attorneys & Trustees

| First Name | Last Name | Company | Job Title | E-mail Addres | fice Pho | Business Stree | Business City | siness Postal |
|---|---|---|---|---|---|---|---|---|
| John F. | Iaffaldano | Stroock and Stroock and Lavan LLP | Associate | aldanc | ck (212) 806 132 | 180 Maiden Lane | New York | 10038 |
| Harold | (Allen | | Partner | orzin@ | w.cc (330) 670 077 | Cleveland-Massillo | Akron | 44333 |
| Seth Van | As | | Member | alten@ | hot: (646) 563 892 | enue of the Ameri | New York | 10019 |
| Anne Marie | Aar | | Partner | ason@ | hla (215) 575 719 | Market St. Ste 35 | Philadelphia | 19102 |
| Derek C. | Al | ll LLP | Partner | ott@me | hol (302) 351 935 | North Market Stree | Wilmington | 19899 |
| Eliot C. | Al | LP | Partner | eabbo | sha  (305) 358 | 800 Third | New York | 10022 |
| Philip | Ab | | Partner | abelson | eca (212) 819 890 | Avenue of the Am | New York | 10020 |
| Elizabeth M | Abc | | Partner | ulafia | llp. (516) 296 | 100 Quentin | Garden City | 11530 |
| Joseph S | Abc | | Partner | ryoun@ | aw.(973) 575-96( | Bloomfield Ave # | Pine Brook | NJ 07058 |
| Robert | Ab | | Vice President | rabrat | zca (212) 838 | 505 Park Ave Fl | New York | 10022 |
| Aleksandra | Abr | | Associate | nova@ | es sel_2) 478 72 | 8 Madison Ave Fl | New York | 10022 |
| Arthur | Abra | Podolsky, P.A. | Shareholder | itz@sh | ilve 561 661 208 | 08 Harper Dr #20 | Moorestown | NJ 08057 |
| Chelsea | Abra | | Associate | chelse | no  (212) 824 | 1500 Broadway | New York | 10036 |
| Steven M | Abra | | Partner | amowi | aw.(212) 237 013 | Avenue of the Am | New York | 10036 |
| Robert | Ab | | Executive Partner | babra | ora (516) 328 230 | 3 Dakota Drive, | Lake Success | 11042 |
| Marc | Ab | LP | Partner | brams | ie.c(12) 728-82( | 87 Seventh Avenu | New York | 10019 |
| Marc | Ab | LLP | Senior Counsel | mabra | rtpl  (302) 357 | 405 N King St | Wilmington | 19801 |
| Robert A | Ab | | Partner | ms@k | ring(12) 716 323 | 605 3rd Ave | New York | 10158 |
| Joseph A | Ac | Capital | Business Developmen | a.accar | ople(32) 590 016 | Wood Ave S Ste | Iselin | NJ 08830 |
| Anthony M | Acc | | Managing Director | ardino@ | ark(12) 909-84( | 900 3rd Ave Fl | New York | 10022 |
| Enrique | Ac | | Director | rado@ | tne(12) 202 2270 | 0 Broadway, Fl | New York | 10019 |
| Sally M | Ac | C | rector, Senior Legal Couns | do@gu | imp(12) 739 070 | Madison Ave Rm | New York | 10017 |
| Alan | Ack | | mmerical Banking Office | arali@ | ban(17) 492 273 | 1539 3rd Ave | New York | 10128 |
| Benjamin C. | Ac | P | Senior Counsel | ly@hu | erit(04) 788 847 | 51 East Bvrd Stre | Richmond | 23219 |
| Neil H | Ack | | Of Counsel | prvor | up.(16 997-0095 | Old Country Ro | Westbury | 11570 |
| Stephanie A. | Ack | | Associate | erman | law(12) 847-2855 | Rockefeller Plaz | New York | 10111 |
| Lesley P. | Ac | | Associate | mo@l | nin.(646) 414 797 | Avenue of the Am | New York | 10020 |
| Blaine E | Ac | LLP | Associate | adams | cor(12) 547 537 | 340 Madison | New York | 10173 |
| Colin | Ac | | Managing Director | ms@n | ers(12) 202 2270 | 0 Broadway, Fl | New York | 10019 |
| Diana G | Ac | | Attorney | ldberg. | (07) 643 245 | Main St P.O. Box | Hobart | 13788 |
| Rashida J | Ac | t LP | Vice President | ifo@a | cor(12) 402 692 | 505 Fifth | New York | 10017 |
| Jacob R. | Ac | | Associate | adams | cor(17) 390 402 | tington Avenue S | Boston | MA 02199 |
| Jason Reid | Ac | P | Partner | ms@k | ve.(12) 808 505 | 175 Greenwich | New York | 10007 |
| Sean D. | Ac | | Counsel | sean.a | hil  (609) 734 | 21 Roszel Road | Princeton | NJ 08540 |
| Steven J. | Ac | | Shareholder | a@ste | co(10) 478 213 | h Sixth Street P.O | Reading | 19603 |
| Purav | Ad | | Director | padiec | xp  (646) 428 | 909 3rd Ave. Fl | New York | 10022 |
| Edward J. | Ac | | Partner | adkins | cor(20) 722 720 | 3 S. Ulster St. Ste | Denver | 80237 |
| Arielle B. | Ac | | Associate | ler@lo | in.o(973) 597 243 | e Lowenstein Dri | Roseland | NJ 07068 |
| David J. | A | P | Partner | dadler | art  (212) 609 | 825 8th Ave Fl | New York | 10019 |
| Philippe | A | an LLP | Partner | adler@ | cor(12) 833 111 | 7 Times Square | New York | 10036 |
| Steven D. | A | | Associate | ler@b | w.c(02) 429 427 | 0 N. King St Ste 4 | Wilmington | 19899 |
| John | A | | President | thenes | ol.  (404) | 3445 Stratford | Atlanta | 30326 |
| Jacob | Adle | rison LLP | Partner | iadlers | au  (212) 373 | 1285 Avenue of | New York | 10019 |
| Brenda | Ac | | Managing Director | brenc | an  (12) 573-61( | Times Sq Ste 260 | New York | 10036 |
| Nicholas | Ad | | Associate | s.adzir | kla(12) 390 440 | 1 Lexington Avenu | New York | 10022 |
| Vinay | Ag | | Attorney | al@sai | msi(88) 859 2389 | E 54th St Rm 6 | New York | 10022 |
| John | Agoz | | Managing Director | iagogl | uar   (212) | 350 5th Ave Ste | New York | 10118 |
| Steven | A | | Managing Director | ran@c | cs.c(12) 909 844 | 900 3rd Ave Fl 33 | New York | 10022 |
| Alexandra | Ag | | Partner | iguirre | cor(12) 336 432 | 50 West 55th Stre | New York | 10019 |
| Ndukwe | At | Goidel, P.C. | Attorney | u@bor | steil(12) 431-13( | 377 Broadway | New York | 10013 |
| Liam | Ab | | Managing Director | @gord | p.c)486-3600 | 950 3rd Ave Fl 17 | New York | 10022 |
| Jacqueline | Ai | ng LLP | Associate | jiello@ | .co(12) 812 413 | 100 Park | New York | 10017 |
| Kathleen M | Ai | Stevens, LLP | Partner | iiello@ | t.cc(12) 972-30( | 00 W 41st St Fl 1 | New York | 10036 |
| Erica Feynman | Ai | P | Partner | eaisne | llp.  (914) | 700 Post Road, | Scarsdale | 10583 |
| Marianne | Aie | LP | Chair - Real Estate | iiemian | er.(17) 439 289 | 155 Seaport Blvd | Boston | MA 02210 |
| Elizabeth M. | Ake | n LLP | Associate | erman | ck.(12) 806 668 | 180 Maiden Lane | New York | 10038 |
| Adeola | Akin | | Director | kinrina | ner!12) 891 418 | 733 Third Avenue | New York | 10017 |
| Michael | Aks | LP | Associate | iel.aks | vei(12) 310 800 | 767 5th Ave | New York | 10153 |
| Kwame O | Ak | n LLP | Associate | akuffo@ | urv(12) 858 1071 | West 52nd Stree | New York | 10019 |

CREXI | Leads List

## Activity Summary



| First | Last | Level of Interest | Phone | Email | Last Action Date | Company | Industry Role | City |
|-------|------|-------------------|-------|-------|------------------|---------|---------------|------|

| Name | Company |
|---|---|
| Cathal Egan | Affect Group |
| Josh Agus | Agus Holdings |
| Aundre Oldacre | AoRa Development |
| Gia Gianchetta | AUM New York |
| Craig Berger | Avid Realty Partners |
| Abe Lowy | AYL Realty |
| Matthew Baron | Baron Properties |
| Chanie Milworn | Booth Capital |
| Chuni Reinhold | C&M Projects LLC |
| David Blatt | Centaur Properties |
| William Hubbard | Center Development Corporation |
| Chok Lei | Clearmount Capital |
| Gil Sidi | Commercial Real Estate Holdings |
| Sean Lefkowitz | DAVEAN HOLDINGS |
| Charles Shemano | David Stern |
| Marvin Davis | Davis Realty |
| Arsean Maqami | DB Partners |
| Chad Roberson | Delshah |
| Alexander Sachs | dna development llc |
| Elie Edalati | Edalati Int'l Inc. |
| Eli Scharf | Elay Equities LLC |
| Michael Dishi | Elysee Investment Company |
| Moshe Watson | Esplanade Capital |
| Menachem Brody | Extreme Homes Management |
| Margaret Streicker | Fortitude Capital, LLC |
| David Greenberg | Foundation Capital |
| Eliran Gilstron | GCRE Group LLC |
| Mark Guindi | GD Capital Group |
| Sam Friedman | Golden Lioness Corp. |

| Name | Company |
|---|---|
| Greg Fournier | Greenbrook RE |
| Elliot Horowitz | H Equities |
| David Switzer | Hammock Development, LLC |
| Rob Stufano | Highpoint |
| Bob Hold | Hold Thyssen |
| Shaul Ashkenazi | Honest Realty |
| Eury Vargas | Hubb NYC |
| Woody Chen | Infocus PC |
| Edward Tai | Island Capital Group |
| Moses Koslowitz | Jerseyside Properties |
| Joseph Frodella | JMF Enterprises |
| Justin Rofeim | JR Development Group |
| Daniel Frances | Kabr Group |
| Adam Hajibay | Klosed Properties |
| Jody Kriss | Kriss Capital |
| Kevin Liu | Lane Investments |
| Mike Pittman | Light Grove Capital |
| Michael Librett | Machine Investment Group |
| Jonathan Aylor | Mequity |
| Derrick Taub | Metro Pinnacle |
| Judah Yafeh | MNB Developers LLC |
| Robert Morgenstern | Morgenstern Cap |
| Shachar Melman | MW Real Estate Partners |
| Jonathan Lavian | Naftali Group |
| Manoj Ramprakash | Oxford Properties Group |
| Joseph Aghelian | Park Slope Associates |
| Steven Kordvani | Parkview Enterprises |
| Rob Siemens | Partner -Akoya Boca West |
| William Haddad | Partners Path |
| Ben Isfahany | Pasargad Home |
| Arthur Koptiev | Platinum Realty Associates |

| Name | Company |
|---|---|
| Evan Papanastasiou | Premier Equities |
| Mark Dilessio | Real Stars Capital |
| Aaron Hakimian | Rugs America Corporation |
| Bharat Patel | SBP Management Inc. |
| David Eisen | Sevenstone |
| Jonathan Snider | Sherwood Equities |
| Peter Weisman | Sinvin |
| Solomon Jacobs | SLJ Management Group llc. |
| Sam Strauss | Smrc Management |
| Jarid Darvin | Sovereign Partners, LLC |
| Greg Swedels | SSG Realty Corp |
| Victor Holliday | Stuy Wash N Dry Inc. |
| Oron Tanami | Superior home |
| Tom Bencivengo | TEC Partners |
| Rob Gatenio | The Davis Companies |
| Ryan Afari | The Hillcrest Company |
| Remy Raisner | The Raisner Group |
| Seth Weissman | Urban Standard |
| Sabah Rajput | Walison Corp. |
| Charles Wattley | WBG Property Advisors LLC |
| John Lagoudis | |
| Eric Gray | Millhouse Properties |
| Cheskel Jacobs | |
| Sean Sedaghatpour | Elisheva Realty |
| Barry Fein | Sidhal |
| | |
| Michael Correale | Correale Properties |
| Matthew Weissman | Weissman Equites |
| Ram Reddy | |
| Chaim Moskowitz | |

# BID CHART

| # | Name | Company | Email | Direct | Mobile | Offer (inc fee) | Property | Square Feet | Broker NOI | Broker Cap Rate | Actual NOI | Actual Cap Rate | Price Per SF |
|---|------|---------|-------|--------|--------|-----------------|----------|-------------|------------|-----------------|------------|-----------------|--------------|
| 2 | Mich── Cor── | Cor── Pro── | mic──@──real──per── | (──) 924-0─ | | $4,200,000 | 1125-1133 Greene Ave | 10,975 | $ 242,692.00 | 5.78% | $ 218,422.80 | 5.20% | $383 |
| 3 | Salo── | ─── | ─────@──ub── | (──) 266-7 | | $4,620,000 | 1125-1133 Greene Ave | 10,975 | $ 242,692.00 | 5.25% | $ 218,422.80 | 4.73% | $421 |
| 4 | Mich── St── | Alexa── Property C── | m──@──property── | (──) 855-5─ | | $3,675,000 | 1125-1133 Greene Avenue | 10,975 | $ 242,692.00 | 6.60% | $ 218,422.80 | 5.94% | $335 |
| 5 | Marv── K── | Wa── Capital | mar──@mag── (──) 178-1 | (──) 583-1─ | | $3,780,000 | 1125-1133 Greene Avenue | 10,975 | $ 242,692.00 | 6.42% | $ 218,422.80 | 5.78% | $344 |
| 6 | Matt── We── | We── E── | mat──@we──.c── | /804-53─ | | $1,260,000 | 1213 Jefferson Avenue | 2,250 | $ 72,417.00 | 5.75% | $ 65,175.30 | 5.17% | $560 |
| 7 | Matt── We── | We── E── | mat──@we──.c── | /804-53─ | | $1,711,500 | 263 18th Street | 2,267 | $ 90,052.00 | 5.26% | $ 81,046.80 | 4.74% | $755 |
| 8 | Mark G── | GD Capital | m──@ca──.c── (──) 355─ | (──) 844-0─ | | $2,152,500 | *325 Franklin Ave.* | 4,050 | $ 104,775.00 | 4.87% | $ 94,297.50 | 4.38% | $531 |
| 9 | John La── | Mortgage World Bank | jo──@── (──) 662-491 | | | $1,575,000 | 325 Franklin Avenue | 4,050 | $ 104,775.00 | 6.65% | $ 94,297.50 | 5.99% | $389 |
| 10 | Mich── St── | Alexa── Property C── | m──@──property── | (──) 855-5─ | | $1,575,000 | 325 Franklin Avenue | 4,050 | $ 104,775.00 | 6.65% | $ 94,297.50 | 5.99% | $389 |
| 11 | Shay── | | shay──@gmail.com | | | $1,500,000 | 325 Franklin Avenue | 4,050 | $ 104,775.00 | 6.99% | $ 94,297.50 | 6.29% | $370 |
| 12 | Marv── K── | Wa── Capital | mar──@mag── (──) 178-1 | (──) 583-1─ | | $1,680,000 | 325 Franklin Avenue | 4,050 | $ 104,775.00 | 6.24% | $ 94,297.50 | 5.61% | $415 |
| 13 | Just── R── | JR Development Gr── | just──@─.── (──) 547-2─ | | | $1,785,000 | 325 Franklin Avenue | 4,050 | $ 104,775.00 | 5.87% | $ 94,297.50 | 5.28% | $441 |
| 14 | Chaim S── | | ──@── (──) 591-90─ | | | $1,785,000 | 568 Willoughby Ave | 4,290 | $ 92,179.00 | 5.16% | $ 82,961.10 | 4.65% | $416 |
| 15 | Samuel V── | | samuel─03@gmail.com | | | $1,050,000 | 568 Willoughby Ave | 4,290 | $ 92,179.00 | 8.78% | $ 82,961.10 | 7.90% | $245 |
| 16 | Aunds── O── | | au──@──.com | | | $1,575,000 | 568 Willoughby Avenue | 4,290 | $ 92,179.00 | 5.85% | $ 82,961.10 | 5.27% | $367 |
| 17 | Isaac F── | | ju───26@gm── 347─6─ | | | $1,627,500 | 568 Willoughby Avenue | 4,290 | $ 92,179.00 | 5.66% | $ 82,961.10 | 5.10% | $379 |
| 18 | Mark G── | GD Capital | m──@ca──.c── (──) 355─ | (──) 844-0─ | | $2,100,000 | 568 Willoughby Avenue | 4,290 | $ 92,179.00 | 4.39% | $ 82,961.10 | 3.95% | $490 |
| 19 | Matt── We── | We── E── | mat──@we──.c── | (──) 804-53─ | | $1,750,000 | 568 Willoughby Avenue | 4,290 | $ 92,179.00 | 5.27% | $ 82,961.10 | 4.74% | $408 |
| 20 | Mich── St── | Alexa── Property C── | m──@──property── | (──) 855-5─ | | $1,575,000 | 568 Willoughby Avenue | 4,290 | $ 92,179.00 | 5.85% | $ 82,961.10 | 5.27% | $367 |
| 21 | Shay── | | shay──@gmail.com | | | $1,312,500 | 568 Willoughby Avenue | 4,290 | $ 92,179.00 | 7.02% | $ 82,961.10 | 6.32% | $306 |
| 22 | Marv── K── | Wa── Capital | mar──@mag── (──) 178-1(──) 183-1 | (──) 583-1─ | | $1,625,000 | 568 Willoughby Avenue | 4,290 | $ 92,179.00 | 5.67% | $ 82,961.10 | 5.11% | $379 |
| 23 | Sean D── | D── L── Realty | sean@──real──.com | | | $1,250,000 | 618 Lafayette | 1,944 | $ 74,773.00 | 5.98% | $ 67,295.70 | 5.38% | $643 |
| 24 | Shay── | | shay──@gmail.com | | | $1,155,000 | 618 Lafayette | 1,944 | $ 74,773.00 | 6.47% | $ 67,295.70 | 5.83% | $594 |
| 25 | Chaim W── | | ──@──.com | | | $1,470,000 | 618 lafayette ave | 1,944 | $ 74,773.00 | 5.09% | $ 67,295.70 | 4.58% | $756 |
| 26 | Just── R── | JR Development Gr── | just──@─.── (──) 547-2─ | | | $1,260,000 | 618 lafayette ave | 1,944 | $ 74,773.00 | 5.93% | $ 67,295.70 | 5.34% | $648 |
| 27 | Mark G── | GD Capital | m──@ca──.c── (──) 355─ | (──) 844-0─ | | $1,417,500 | 618 lafayette ave | 1,944 | $ 74,773.00 | 5.27% | $ 67,295.70 | 4.75% | $729 |
| 28 | Mich── St── | Alexa── Property C── | m──@──property── | (──) 855-5─ | | $1,260,000 | 618 Lafayette Avenue | 1,944 | $ 74,773.00 | 5.93% | $ 67,295.70 | 5.34% | $648 |
| 29 | Marv── K── | Wa── Capital | mar──@mag── (──) 178-1 | (──) 583-1─ | | $1,312,500 | 618 Lafayette Avenue | 1,944 | $ 74,773.00 | 5.70% | $ 67,295.70 | 5.13% | $675 |
| 30 | Matt── We── | We── E── | mat──@we──.c── | (──) 804-53─ | | $1,365,000 | 618 Lafayette Street | 1,944 | $ 74,773.00 | 5.48% | $ 67,295.70 | 4.93% | $702 |
| 31 | Arse── H── | 3W Partners | arsen@3wpart──.us | (──) 208-73─ | | $1,260,000 | 92 S. 4th Street | 4,140 | $ 74,773.00 | 5.93% | $ 67,295.70 | 5.34% | $304 |
| 32 | Mich── St── | Alexa── Property C── | m──@──property── | (──) 855-5─ | | $1,575,000 | 92 S. 4th Street | 4,140 | $ 85,814.00 | 5.45% | $ 77,232.60 | 4.90% | $380 |
| 33 | Shay── | | shay──@gmail.com | | | $1,550,000 | 92 S. 4th Street | 4,140 | $ 85,814.00 | 5.54% | $ 77,232.60 | 4.98% | $374 |
| 34 | Marv── K── | Wa── Capital | mar──@mag── (──) 178-1 | (──) 583-1─ | | $1,450,000 | 92 S. 4th Street | 4,140 | $ 85,814.00 | 5.92% | $ 77,232.60 | 5.33% | $350 |
| 35 | Eli S── | Bay Equities LLC | ──@── (──) 968-954 | | | $1,625,000 | 92 South 4th Street | 4,140 | $ 85,814.00 | 5.28% | $ 77,232.60 | 4.75% | $393 |
| 36 | Fred── A── | | fred──@──.c── N 7502─0 | | | $2,100,000 | 92 South 4th Street | 4,140 | $ 85,814.00 | 4.09% | $ 77,232.60 | 3.68% | $507 |
| 37 | Mark G── | GD Capital | m──@ca──.c── (──) 355─ | (──) 844-0─ | | $1,680,000 | 92 South 4th Street | 4,140 | $ 85,814.00 | 5.11% | $ 77,232.60 | 4.60% | $406 |
| 38 | Mich── Cor── | Cor── Pro── | mic──@──real──per── (──) 924-0─ | | | $2,180,000 | 92 South 4th Street | 4,140 | $ 85,814.00 | 3.94% | $ 77,232.60 | 3.54% | $527 |
| 39 | Aaro── H── | Rugs America Corp── | aaro──@──.com ──xt. 102 | | | $12,075,000 | Portfolio | 33,900 | $ 880,849.00 | 7.29% | $ 792,764.10 | 6.57% | $356 |
| 40 | Abra── O── | Na── Equities | abraham@──.── (──) 325-5─ | | | $14,700,000 | Portfolio | 33,900 | $ 880,849.00 | 5.99% | $ 792,764.10 | 5.39% | $434 |
| 41 | Adam H── | Ma── Properties | adam@──.── (──) 712-887 | | | $14,175,000 | Portfolio | 33,900 | $ 880,849.00 | 6.21% | $ 792,764.10 | 5.59% | $418 |
| 42 | Allan L── | Bridge City Funding | allan@──fund.── | | | $15,750,000 | Portfolio | 33,900 | $ 880,849.00 | 5.59% | $ 792,764.10 | 5.03% | $465 |
| 43 | Barry P── | ─── | BP──@──llc.com | (──) 477-18─ | | $12,705,000 | Portfolio | 33,900 | $ 880,849.00 | 6.93% | $ 792,764.10 | 6.24% | $375 |
| 44 | Che── J── | Liv── Realty | ──@──.com | (──) 941-524 | | $15,750,000 | Portfolio | 33,900 | $ 880,849.00 | 5.59% | $ 792,764.10 | 5.03% | $465 |

| # | Name | Company | Email | | | Type | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 45 | Eder | | | $15,120,000 | | Portfolio | 33,900 | $ | 880,849.00 | 5.83% | $ | 792,764.10 | 5.24% | $446 |
| 46 | Edward | | | $14,700,000 | | Portfolio | 33,900 | $ | 880,849.00 | 5.99% | $ | 792,764.10 | 5.39% | $434 |
| 47 | Eric | | -282-154 | $14,750,000 | | Portfolio | 33,900 | $ | 880,849.00 | 5.97% | $ | 792,764.10 | 5.37% | $435 |
| 48 | Eury | | 5653912 | $16,275,000 | | Portfolio | 33,900 | $ | 880,849.00 | 5.41% | $ | 792,764.10 | 4.87% | $480 |
| 49 | Greg | | | $15,750,000 | | Portfolio | 33,900 | $ | 880,849.00 | 5.59% | $ | 792,764.10 | 5.03% | $465 |
| 50 | Jason | | 7) 499-09 | $15,435,000 | | Portfolio | 33,900 | $ | 880,849.00 | 5.71% | $ | 792,764.10 | 5.14% | $455 |
| 51 | Jeremy | | 7) 512-12 | $15,750,000 | | Portfolio | 33,900 | $ | 880,849.00 | 5.59% | $ | 792,764.10 | 5.03% | $465 |
| 52 | Jonathan | | 7) 947-2 | $13,650,000 | | Portfolio | 33,900 | $ | 880,849.00 | 6.45% | $ | 792,764.10 | 5.81% | $403 |
| 53 | Josh | | -699-775 | $14,175,000 | | Portfolio | 33,900 | $ | 880,849.00 | 6.21% | $ | 792,764.10 | 5.59% | $418 |
| 54 | Josh | | 7) 548-50 | $15,750,000 | | Portfolio | 33,900 | $ | 880,849.00 | 5.59% | $ | 792,764.10 | 5.03% | $465 |
| 55 | Leor | | 6) 582-99 | $13,650,000 | | Portfolio | 33,900 | $ | 880,849.00 | 6.45% | $ | 792,764.10 | 5.81% | $403 |
| 56 | Matthew | | 1) 675-22 | $14,175,000 | | Portfolio | 33,900 | $ | 880,849.00 | 6.21% | $ | 792,764.10 | 5.59% | $418 |
| 57 | Meng | | 5) 459-06: | $18,217,500 | | Portfolio | 33,900 | $ | 880,849.00 | 4.84% | $ | 792,764.10 | 4.35% | $537 |
| 58 | Michael | | | $16,012,500 | | Portfolio | 33,900 | $ | 880,849.00 | 5.50% | $ | 792,764.10 | 4.95% | $472 |
| 59 | Moe | | | $14,910,000 | | Portfolio | 33,900 | $ | 880,849.00 | 5.91% | $ | 792,764.10 | 5.32% | $440 |
| 60 | Oren | | .325.077 | $14,962,000 | | Portfolio | 33,900 | $ | 880,849.00 | 5.89% | $ | 792,764.10 | 5.30% | $441 |
| 61 | Ram | | -266-058 | $15,225,000 | | Portfolio | 33,900 | $ | 880,849.00 | 5.79% | $ | 792,764.10 | 5.21% | $449 |
| 62 | Uri | | 7) 741-82 | $14,700,000 | | Portfolio | 33,900 | $ | 880,849.00 | 5.99% | $ | 792,764.10 | 5.39% | $434 |
| 63 | William | | -648-623 | $16,800,000 | | Portfolio | 33,900 | $ | 880,849.00 | 5.24% | $ | 792,764.10 | 4.72% | $496 |
| 64 | William | | -661-32 | $15,645,000 | | Portfolio | 33,900 | $ | 880,849.00 | 5.63% | $ | 792,764.10 | 5.07% | $462 |

# PROPERTY CONDITIONS REPORT EXCERPT. $850,000 - $1,200,000 REQUIRED

2021-934

Please accept the following summary of Critical Issues and Comments following our property condition assessments for the reference portfolio.  Detailed comments will be included within our Property Condition Reports (PCR) and Phase I Environmental Stie Assessments (ESA).  Please refer to our pending reporting for full details.

**All Buildings**
- Many electrical subpanels and main panels were observed with covers missing or not secured which should be properly secured immediately.
- Many shut off switches and meters were blocked with tenant stored items.  Clear paths should always be maintained.

**1213 Jefferson Avenue**
- The Current Certificate of Occupancy is 300462773 from 2/20/1996.
- There are 3 open ECB Violations with one being working without a permit from 2010 which will need to be properly remedied.  The current outstanding penalty is $0 with a 2011 payment.
- There is a heat trace on the water line in the cellar.  A better solution would be at minimum an electric heater and in this area although there is no insulation at walls.
- The cellar should be cleared of debris including mold stained gypsum board and concrete that has caved in the rear egress door.
- Parging is needed badly at foundation walls.
- There is an extension cord running in the ceiling plenum which is against code and it should be replaced with proper metallic conduit wiring.
- Pig tails at the cellar ceiling should be properly terminated.
- Property is depicted as residential for all years reviewed. Minimal listings in the area. No listings for the subject property. No environmental concerns at this time.

**1125-1133 Greene Avenue**
- The Certificate of Occupancy is Final from 10/3/2013 number 320190903F considered one zoning lot 90, 91, 92 and 93.  For 1127 Greene Avenue it is number 320190912F, 1129 Grene Avenue number 320190921F, 1131 Greene Avenue number 320190930F and 1133 Greene Avenue number 320190949F.
- There are no open DOB or ECB Violations.
- Lopez Auto Repair is next door.
- There is some ponded water at the boiler room from an unknown source.  It does not appear to be from the boilers or water heaters but possibly just drain down from the boiler.
- Property has no database listings. Property use was historically retail/commercial until redevelopment in the 1980s and use as an automobile repair shop in 1993 and subsequent years. Interview about tanks and property history should be done.

**53 Stanhope Street**
- There are two buildings on the lot – 53 Stanhope Street and 53 Rear Stanhope Street.
- There are no open DOB or ECB Violations.
- There are no Certificates of Occupancy on file.
- No roof access and no cellar access.
- General building structure and facade appeared to be in fair condition with no immediate remediation needed.
- No obvious environmental record concerns at this time.

**834 Metropolitan Avenue**
- There is one open DOB Violation from 2014 for site safety.
- There is a Stop Work Order from 2014 due to site safety which will need to be cleared from record.
- There are no Certificates of Occupancy on file.
- There is a gasoline station a short distance west from the site.
- The leader at the rear should be connected to a kicker brought 3' from the building.
- There is a section of the overhang above the side walkway that needs waterproofing attention.
- A wall pack air conditioner at the cellar states that it should be turned on or it will smoke.  This should be investigated.
- Two gas stations are listed near the subject property at 131 and 293 feet west of the property. The closer of the two spills has monitoring data that shows reduced levels of contaminants in soil and groundwater over the time period of monitoring and the site is closed at this time. Monitoring data and apparent closure documents indicate migrations downgradient is unlikely. No environmental concerns at this time.

# PROPERTY CONDITIONS REPORT EXCERPT: $850,000 – $1,200,000 REQUIRED

**92 South 4th Street**
- There is one open DOB Violation from 2015 which needs to be cleared.
- There is an ECB Violation from 2015 with $0 due for penalties for work not in accordance with plans.
- There is a Stop Work Order from 2015 for work contrary to plans.
- The Certificate of Occupancy is from 7/9/1948 number 106128.
- There is some masonry damage at front window lintels.
- Several area of joists at the first floor support had penetration exceeding an area or length times width greater than the joist depth. Sister joists should be installed.
- The cover and door entry to the lower unit from the front needs replacement.
- The lowest floor unit has electric baseboard heat and window unit cooling. However, there is also ducted work installed overhead for heating and cooling which is not utilized. It is unknown why this system was abandoned for electric heat and cooling.
- Several contaminated sites surrounding the property including the adjoining property to the west (98-116 South 4th Street) with apparently unresolved issues. VOC, SVOC and petroleum contaminants identified in the soil at adjacent properties. property use is residential for all years reviewed. No listings for subject property. Potential vapor intrusion concern. Further review needed.

**263 18th Street**
- There are two buildings on lot – 263 18 Street and 263 Rear 18 Street.
- There is one open Compliant regarding an illegal basement apartment.
- There are no open DOB or ECB Violations.
- There are no Certificates of Occupancy on file.
- Repairs or replacement of windows and doorway, wood door frame breaking at entry.
- Cellar mechanical room blocked, roof access blocked because of construction next door. Entry to roof and cellar should be cleared.
- No listings for subject property. Adjoining property to the north was historically a blind and door factory till the 1950s. Property is residential for all observed. No environmental concerns at this time.

**325 Franklin Avenue**
- There are no open DOB or ECB Violations.
- The Current Certificate of Occupancy is from 9/9/2009 number 302369498F.
- Cellar access was blocked. Clean up and debris removal so cellar can be accessed. General building structure and facade appeared to be in fair condition with no immediate remediation needed. Pile of stuff blocking the stairwell leading to roof access should be removed.
- Sanborns and database listings indicate that a dry cleaning facility was operated at the adjoining parcel to the north from at least 1962 through 2007. No spills were reported, however operation for this long at this proximity has the possibility of a release and concern of contaminated soil and groundwater beneath the property. Potential environmental concerns present, including groundwater, soil, and vapor intrusion concerns. Further review is needed.

**618 Lafayette Avenue**
- There are no open DOB or ECB Violations.
- The Current Certificate of Occupancy is from 2/16/1959 number 164472.
- General building structure and facade appeared to be in fair condition with no immediate remediation needed.
- Minor window leak in unit 3.
- Weather sealing of all windows or window replacement is recommended.
- Cellar with gas and electric meters should be cleaned, and lights should be added or fixed.
- No obvious environmental record concerns at this time.

**568 Willoughby Avenue**
- There are no open DOB or ECB Violations.
- The Current Certificate of Occupancy is from 7/31/2012 number 310275671F.
- General building structure and facade appeared to be in fair condition with no immediate remediation needed.
- Roof was in good condition, no reported leaks.
- Property is depicted as residential for all years reviewed. Minimal listings in the immediate area. No listings for the subject property. One leaking tank site 95 feet west of the property spilled heating oil. No environmental concerns at this time.

| Rosewood Realty Group: Registered Bidders for Auction | | |
|---|---|---|
| **#** | **Buyer Name** | **Attorney** |
| 1 | Marvin Azrak | Leslie Berkoff |
| 2 | Manu Leroy | Erica Aisner |
| 3 | Joel Wertzberger | Jeffrey Zwick |
| 4 | Mark Guindi | Michael Dabah |
| 5 | Aundre Oldacre | Uche Emelumadu |
| 6 | Chaim Schiff | Daniel Levine |
| 7 | Josef Michelson | Dan Weinberger |
| 8 | Eli Scharf | Elliot Steinmetz |
| 9 | Fredrik Wide | Peter Hardy |
| 10 | Meng Lee | Kim Longo |
| 11 | Brooklyn Lender | Matthew Stein |

# AUCTION: BID SUMMARY, INDIVIDUAL BIDS (PAGE 1)

| # | Address | Bids (Cash) | Lender Bid (Credit) | Cash Bid | Additional Bids | Cash Bid (Round 2) |
|---|---|---|---|---|---|---|
| 1 | 1125-1133 Greene Ave, Brooklyn, NY 11221 | $2,500,000 - Maguire | $5,050,000 | $2,500,000 (Maguire) | $3,500,000 (Joel Wertzberger) | $4,600,000 (Maguire) |
| 2 | 1213 Jefferson Ave, Brooklyn, NY 11221 | $750,000 - Joel<br>$825,000 - Erica<br>$875,000 - Joel<br>$925,000 - Maguire | $1,899,000 | $925,000 (Maguire) | | $975,000 (Maguire) |
| 3 | 568 Willoughby Avenue, Brooklyn, NY 11206 | $1,000,000 - Chaim Schiff<br>$1,200,000 - Josef<br>$1,350,000 - Chaim Schiff<br>$1,450,000 - Josef<br>$1,550,000 - Mark<br>$1,600,000 - Josef<br>$1,650,000 - Mark<br>$1,700,000 - Josef | $2,650,000 | $1,700,000 (Josef Michelson) | | $1,800,000 (Josef Michelson) |
| 4 | 618 Lafayette Avenue, Brooklyn, NY 11216 | $1,000,000 - Erica<br>$1,050,000 - Maguire<br>$1,100,000 - Erica<br>$1,150,000 - Maguire<br>$1,200,000 - Erica<br>$1,250,000 - Maguire<br>$1,500,000 - Joel | $2,937,000 | $1,500,000 (Joel Wertzberger) | | $1,600,001 (Joel Wertzberger) |
| 5 | 834 Metropolitan Ave, Brooklyn, NY 11211 | $850,000 - Opening Bid<br>$850,000 - Joel<br>$900,000 - Maguire<br>$1,350,000 - Joel<br>$1,400,000 - Maguire<br>$1,450,000 - Joel<br>$1,500,000 - Maguire<br>$1,550,000 - Joel | $3,640,000 | $1,550,000 (Joel Wertzberger) | | $1,610,000 (Joel Wertzberger) |

# AUCTION: BID SUMMARY, INDIVIDUAL BIDS

| # | Address | Bids (Cash) | Lender Bid (Credit) | Cash Bid | Additional Bids | Cash Bid (Round 2) |
|---|---------|-------------|---------------------|----------|-----------------|--------------------|
| 6 | 92 South 4th Street, Brooklyn, NY 11249 | $1,000,000 - Opening Bid<br>$1,000,000 - Eli Scharf<br>$1,500,000 - Fredrik Wide<br>$1,550,000 - Eli Scharf<br>$1,600,000 - Mark<br>$1,650,000 - Eli Scharf<br>$1,700,000 - Fredrik Wide<br>$1,750,000 - Maguire<br>$1,800,000 - Eli Scharf<br>$1,850,000 - Maguire<br>$1,900,000 - Eli Scharf<br>$1,925,000 - Maguire<br>$1,950,000 - Eli Scharf<br>$2,000,000 - Mark<br>$2,050,000 - Maguire<br>$2,100,000 - Eli Scharf<br>$2,150,000 - Maguire<br>$2,175,000 - Joel<br>$2,200,000 - Maguire<br>$2,225,000 - Eli Scharf<br>$2,250,000 - Maguire | $3,640,000 | $2,250,000<br>(Maguire) | | $2,400,000<br>(Maguire) |

# AUCTION: BID SUMMARY, INDIVIDUAL BIDS

| # | Address | Bids (Cash) | Lender Bid (Credit) | Cash Bid | Additional Bids | Cash Bid (Round 2) |
|---|---------|-------------|---------------------|----------|-----------------|--------------------|
| 7 | 325 Franklin Ave, Brooklyn, NY 11238 | $1,000,000 - Opening Bid<br>$1,000,000 - Erica<br>$1,100,000 - Maguire<br>$1,200,000 - Erica<br>$1,300,000 - Maguire<br>$1,400,000 - Mark<br>$1,500,000 - Erica<br>$1,600,000 - Maguire<br>$1,650,000 - Mark<br>$1,700,000 - Erica<br>$1,800,000 - Mark<br>$1,825,000 - Maguire<br>$1,850,000 - Mark<br>$1,875,000 - Maguire<br>$1,900,000 - Mark<br>$1,925,000 - Maguire<br>$1,950,000 - Mark<br>$1,975,000 - Maguire<br>$2,025,000 - Mark<br>$2,100,000 - Maguire<br>$2,125,000 - Mark<br>$2,150,000 - Maguire<br>$2,175,000 - Mark<br>$2,200,000 - Maguire<br>$2,225,000 - Mark<br>$2,250,000 - Maguire<br>$2,275,000 - Mark<br>$2,300,000 - Maguire<br>$2,325,000 - Mark<br>$2,350,000 - Maguire<br>$2,375,000 - Mark<br>$2,385,000 - Maguire<br>$2,395,000 - Mark<br>$2,405,000 - Maguire<br>$2,415,000 - Mark<br>$2,425,000 - Maguire<br>$2,435,000 - Mark<br>$2,445,000 - Maguire<br>$2,465,000 - Mark<br>$2,500,000 - Maguire<br>$2,525,000 - Mark<br>$2,575,000 - Maguire<br>$2,600,000 - Mark<br>$2,625,000 - Maguire | $4,470,000 | $2,625,000<br>(Maguire) | | $2,725,000<br>(Maguire) |

| # | Address | Bids (Cash) | Lender Bid (Credit) | Cash Bid | Additional Bids | Cash Bid (Round 2) |
|---|---------|-------------|---------------------|----------|-----------------|---------------------|
| 8 | 53 Stanhope Street, Brooklyn, NY 11221 | $775,000 - Opening Bid<br>$775,000 - Maguire<br>$825,000 - Erica<br>$850,000 - Maguire<br>$875,000 - Erica<br>$900,000 - Maguire<br>$925,000 - Erica<br>$950,000 - Maguire<br>$975,000 - Erica<br>$1,000,000 - Maguire | $4,470,000 | $1,000,000<br>(Maguire) | | $1,000,000<br>(Maguire) |
| 9 | 263 18th Street, Brooklyn, NY 11215 | $500,000 - Opening Bid<br>$500,000 - Magure<br>$1,000,000 - Joel<br>$1,250,000 - Eli Scharf<br>$1,300,000 - Joel<br>$1,350,000 - Maguire<br>$1,375,000 - Mark<br>$1,400,000 - Maguire<br>$1,425,000 - Mark<br>$1,440,000 - Mark<br>$1450,000 - Maguire<br>$1,460,000 - Mark<br>$1,470,000 - Maguire<br>$1,480,000 - Mark<br>$1,490,000 - Maguire<br>$1,500,000 - Mark<br>$1,510,000 - Maguire<br>$1,520,000 - Mark<br>$1,530,000 - Maguire<br>$1,540,000 - Mark<br>$1,550,000 - Maguire<br>$1,560,000 - Mark<br>$1,570,000 - Maguire<br>$1,590,000 - Mark<br>$1,600,00 - Maguire | $2,000,000 | $1,600,000<br>(Maguire) | | $1,600,000<br>(Maguire) |
| TOTAL | | | | $15,650,000 | | $18,310,001 |

| | |
|---|---|
| FREO Portfolio Bid (1st Round) | $17,350,000 |
| FREO Portfolio Bid (2nd Round) | $17,900,000 |
| FREO Portfolio Bid (3nd Round) | $17,950,000 |
| FREO Portfolio Bid (4th Round) | $18,000,000 |
| FREO Portfolio Bid (5th Round) | $18,050,000 |
| FREO Portfolio Bid (6th Round) | $18,250,000 |
| FREO Portfolio Bid (7th Round) | $18,300,000 |
| FREO Portfolio Bid (8th Round) | None |
| Brooklyn Lender Final Bid | $19,000,000 |

**The auction was determined a resounding success by all involved:**

- **7** months of robust marketing, which included multiple email campaigns, snail mail, phone campaigns, social media, posts on industry websites, and print & online advertisements*

- **80,000** estimated people were reached since May 2021: investors, bankruptcy attorneys and professionals, trustees, lenders, family offices, syndicators, institutional funds, developers, internal brokerage team and outside brokerage firms, both commercial and residential, and distressed asset investors both locally and nationally.

- **11** registered bidders

- **153** rounds of bidding throughout the auction

- **25%** estimated premium price above market comparables

*For a more detailed breakdown of the marketing process please see the Executive Summary on page 2 of this report*

# FOR FURTHER INFORMATION PLEASE CONTACT:







Exhibit C

**CONTRACT** dated as of the 17th day of December, 2021 (this "Contract"), between APC Holding 1 LLC, 618 Lafayette LLC, 325 Franklin LLC, 53 Stanhope LLC, Eighteen Homes LLC, 1213 Jefferson LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC (each individually and collectively, jointly and severally, the "Seller" or "Debtor") and FREO U.S. Acquisitions, LLC having an address at 1120 Avenue of the Americas, Suite 1803, New York, NY 10036 ("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

## 1. Sale of Property

Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real properties located at

| # | Address | Entity |
|---|---------|--------|
| 1 | 568 Willoughby Avenue, Brooklyn, NY 11206 | APC Holding 1 LLC |
| 2 | 618 Lafayette Avenue, Brooklyn, NY 11216 | 618 Lafayette LLC |
| 3 | 325 Franklin Ave, Brooklyn, NY 11238 | 325 Franklin LLC |
| 4 | 53 Stanhope Street, Brooklyn, NY 11221 | 53 Stanhope LLC |
| 5 | 263 18th Street, Brooklyn, NY 11215 | Eighteen Homes LLC |
| 6 | 1213 Jefferson Ave, Brooklyn, NY 11221 | 1213 Jefferson LLC |
| 7 | 92 South 4th Street, Brooklyn, NY 11249 | 92 South 4th St LLC |
| 8 | 834 Metropolitan Ave, Brooklyn, NY 11211 | 834 Metropolitan Avenue LLC |
| 9 | 1125 Greene Ave, Brooklyn, NY 11221 | 1125-1133 Greene Ave LLC |
| 10 | 1127 Greene Ave, Brooklyn, NY 11221 | |
| 11 | 1129 Greene Ave, Brooklyn, NY 11221 | |
| 12 | 1131 Greene Ave, Brooklyn, NY 11221 | |
| 13 | 1133 Greene Ave, Brooklyn, NY 11221 | |

(collectively, the "Property"). The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights" of Sellers as of the date hereof; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c) all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of the Property (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

Paragraph 1.02. Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 19-23013 confirming a joint chapter 11 plan for Seller dated June 11, 2021 (Dkt. No. 285), including the "Bidding and Auction Procedures" annexed to that plan (Dkt. No. 240, Exhibit A, hereinafter the "Bidding Procedures"), which Bidding Procedures are deemed annexed to this Contract. Sellers shall hold the auction within 10 days of the date of this Contract.

Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding Procedures.

Paragraph 1.04. In connection with the auction process or any other competition whereby others are allowed to bid or provide a better offer, Purchaser shall benefit as a stalking horse whereby the opening bidding must be more than the Purchase Price here by (i) $100,000 plus (ii) the Break-Up Fee (as defined below). If the Purchaser is not the successful bidder, Seller will pay Purchaser a break-up fee of $347,000.00 or 2% of the winning bid, whichever is higher (the "Break-Up Fee"), by wire transfer of immediately available funds at the time of Closing. For clarity, at the auction, Purchaser shall receive a continuing cash "credit" toward any bid, in an amount equal to the Break-Up Fee.

Paragraph 1.05. If the Debtors' Properties are sold piecemeal, such that one or some but not all are sold to a third party, Seller will pay Purchaser a Break-Up Fee for each Property not sold to Purchaser, to be calculated as 2% of the winning bid, which bid shall not be lower than the amount set forth on Exhibit A.

## 2. Purchase Price, Acceptable Funds

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is Seventeen Million Three Hundred Fifty Thousand ($17,350,000.00) Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) One Million ($1,000,000.00) Dollars on the signing of this Contract, by Purchaser's wire payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to the Bidding Procedures as defined above (the "Down Payment"). Notwithstanding any provision of the Bidding Procedures to the contrary, the Down Payment shall constitute the entire amount required to be paid over by Purchaser, as a deposit or otherwise, prior to Closing.

(B) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Balance").

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City

{11987825:6}                                    2

of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds. Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

## 3. Escrow of Down Payment

Paragraph 3.01. (a) The Down Payment shall be deposited into escrow by wire transfer of immediately available federal funds with Kensington Vanguard National Land Services ("Escrowee") and pursuant to the terms of this Section 3.01. The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section. At the Closing, the Down Payment shall be paid by Escrowee in accordance with the Bidding Procedures (a copy of which has been provided to Escrowee), subject to subsection (c) below. For the sake of clarity, the Down Payment shall be returned to Purchaser if for any reason Purchaser is not the successful bidder at auction. If for any other reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Notwithstanding any provision of this Contract or the Bidding Procedures to the contrary, to the extent Mortgagee is the successful bidder at auction, Escrowee shall return the Down Payment in full to Purchaser immediately following the auction and without the need for further notice by any party, and Purchaser shall have no obligations as a "Backup Bidder" or "Second Highest Bidder" under the Bidding Procedures.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

## 4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Balance by Purchaser shall take place on the forty-fifth calendar day after the issuance of an order from the bankruptcy court approving the Contract and authorizing the sale under its terms (the "Closing"). The Closing shall be held through escrow with Purchaser's title company, TIME OF THE ESSENCE. If the forty-fifth (45th) calendar day shall fall on a Saturday, Sunday or legal holiday, the actual date of closing shall be the next business day following.

Paragraph 4.02. Notwithstanding anything contained in Paragraph 4.01 to the contrary, Purchaser shall have a one-time right to adjourn the closing of up to thirty (30) calendar days from the original date. Purchaser shall exercise the right to adjourn the closing date no less than ten (10) calendar days prior to the date set forth for Closing under Paragraph 4.01. Upon the Purchaser's exercise of the right to extend the Closing Date, the Purchaser shall increase the contract deposit by an additional $500,000.00. Should the Purchaser not elect to extend the Closing Date or should the Purchaser fail to pay the additional contract deposit as required herein, then in either of those events, the Purchaser shall not be entitled to any extension of the Closing Date.

Paragraph 4.03. Each party is responsible for paying the legal fees of its counsel in negotiating, preparing, and closing the transaction contemplated by this Contract. Each party is responsible for paying one-half (1/2) of Escrowee's escrow fees. Purchaser is responsible for paying (i) the premium for the owner's and lender's policy of title insurance and all other title company charges that are not expressly Seller's responsibility hereunder, and (ii) all other costs of Purchaser's due diligence investigations. Seller is responsible for all State, City, County and municipal recording charges with respect to the Deed and any customary closing costs of sellers. Pursuant to the Bidding Procedures, no Transfer Taxes (as defined therein) will be due in connection with this sale. The provisions of this Section 4.03 shall survive Closing.

## 5. Acknowledgments and Representations of Purchaser and Seller

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale annexed hereto, and subject to Section 10.02, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract. The Terms of Sale set forth conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. Seller has used best efforts to make available to Purchaser, or will deliver to Purchaser within three (3) Business Days after the date hereof, copies of, or access to with the right to copy (i) all licenses and permits pertaining to each property (ii) certificates of occupancy (iii) records and other documents pertaining to the ownership, operation and maintenance of each property (iv) site plans (v) environmental reviews and (vi) property financial information for each Property.

Paragraph 5.04. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty. In the event of any default by the Seller in the terms of this Contract, the damages which are due to the Purchaser, by reason of said default, shall be deemed liquidated in the amount of the Down Payment (including any interest earned thereon), as Purchaser's sole remedy. The Down Payment (including interest) shall also be returned to the Purchaser if the sale does not occur, or does not become final, due to Mortgagee's pending appeal of the plan confirmation order.

Paragraph 5.05. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby; (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms; (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists

are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

Each Seller acknowledges and represents that:

Paragraph 5.06. As of the date hereof and as of the Closing Date, (i) it is a limited liability company duly organized, validly existing and in good standing under the laws of the State of [New York] and qualified to do business in the State of New York, (ii) subject to the Orders of the Bankruptcy Court, it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by such Seller in connection with the entering into this Contract and the consummation of the transactions contemplated hereby; (iii) subject to the Orders of the Bankruptcy Court, this Contract and all documents required hereby to be executed by such Seller are and will be valid, legally binding obligations of and enforceable against Seller in accordance with their terms.

Paragraph 5.07. Upon Closing, the Properties shall be transferred to Purchaser free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and the post-confirmation sale order shall contain a finding of fact / conclusion of law indicating same.

## 6. Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall apply to the sale and purchase provided for in this Contract.

## 7. Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts ("Deed"), executed by the Seller in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. An executed original counterpart of an assignment and assumption of leases, rents and security deposits ("Assignment of Leases").

Paragraph 7.03. An executed original certificate identifying all security deposits, including accrued interest thereon, if any, held by Seller on the Closing Date, and setting forth all arrears in rents, all prepayments of rents.

Paragraph 7.04. An executed original letter, executed by Seller or by its agent, advising the tenants of the sale of the Property to Purchaser and directing that rents and other payments thereafter be sent to Purchaser or as Purchaser may direct.

Paragraph 7.05. An executed affidavit of Seller pursuant to Section 1445(b)(2) of the Internal Revenue Code of 1986, as amended.

Paragraph 7.06. Executed originals of (a) an owner's title affidavit and (b) any other customary documentation reasonably requested by the Escrowee in order to issue a title policy.

Paragraph 7.07. The security deposits together with interest accrued thereon, if any, held by Seller as security under the Leases;

Paragraph 7.08. All required New York City and State transfer tax returns executed by the Seller to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.09. The right to possession of any vacant portions of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures. Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.10. Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

## 8. Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01. The Balance to the Seller.

Paragraph 8.02. All required New York City and State transfer tax returns and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 8.03. An executed original counterpart of the Assignment of Leases.

{11987825:6}                                        7

Paragraph 8.04. Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

## 9. Apportionments

Paragraph 9.01. The following apportionments shall be made between the parties at the Closing as of 12.01 a.m. on the Closing Date:

(a)     Rents collected by Seller and all prepaid rents and prepaid revenues, if any, and other prepaid income-producing agreements.

(b)     real estate taxes, water charges and sewer rents, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Property, apportionment at the Closing shall be based on the last available reading. Notwithstanding the foregoing, water meter and frontage charges and sewer rents, if any, shall be based upon a final water meter reading (and/or reconciliation, as applicable) and a so called "Title Read Letter" obtained by Seller, at Seller's sole expense, dated not more than thirty (30) days prior to the Closing Date.  Any adjustments for the period subsequent to such reading shall be made on a per diem basis based upon the most recent average daily usage, as shown by the special water meter reading. An adjustment shall be calculated using an estimated reading to the extent a final water meter reading is not available.

(c)     administrative charges, if any, permitted under the leases or applicable law, on security deposits held pursuant to the leases.

(d)     fuel, if any, as determined by an actual reading conducted by Seller's supplier within three (3) days of the Closing Date, at current cost, together with any sales taxes payable in connection therewith, if any (a letter from Seller's fuel supplier shall be conclusive evidence as to the quantity of fuel on hand and the current cost therefor absent manifest error).

(e)     any fees prepaid or payable for licenses and other permits assigned to Purchaser at the Closing.

(f)     electricity, gas, steam, telephone, internet, cable or satellite television and any other utilities (prepaid and/or due and payable), at the rates most recently charged to Seller, plus sales taxes thereon (including, any deposits held by any utility company in connection therewith), except to the extent required to be paid by tenants pursuant to leases in effect as of the Closing Date directly to the entity imposing same.

(g)     Except as expressly provided to the contrary herein, all apportionments and adjustments shall be made in accordance with the customs and practice of the Real Estate Board of New York.

Paragraph 9.02. Monthly base rents under the leases shall be adjusted and prorated on an "if, as and when" collected basis. If any tenant is in arrears in the payment of rent on the Closing

Date, rents received from such tenant after the Closing shall be applied in the following order of priority:

     (a)     first to the month in which the Closing occurred;

     (b)     then to any month or months following the month in which the Closing occurred until such tenant is current for such period of time;

     (c)     then to the period prior to the month in which the Closing occurred.

The security deposits together with interest accrued thereon currently held from the tenants will be transferred to the Purchaser at Closing.

Paragraph 9.03. Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser, which obligation shall survive the Closing.

The provisions of this Section 9 shall survive the Closing, provided, however, that with regard to any errors and/or omissions in the closing adjustments set forth in this Section 9, the same shall be corrected after the Closing (if any such error and/or omission is raised within one (1) year following the Closing) by the parties acting in good faith.

**10. Objections to Sale**

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures. Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller, subject to the terms of Section 10.02; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York. Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length. Notwithstanding the foregoing, if Purchaser's property condition assessment report or any other due diligence material reflects any repairs at the Property, the cost of which collectively exceeds $250,000 ("Capital Expenditure Amount"), then Seller agrees that the Purchase Price shall be reduced by the Capital Expenditure Amount.

{11987825:6}           9

## 11. Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's attorney at the address set forth below, and to Purchaser addressed to Purchaser's attorney at the address set forth below.

Seller's Attorney:

Abrams, Fensterman et al.
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
Attn: Mark J. Caruso, Esq.

Purchaser's Attorney:

Windels Marx Lane and Mittendorf LLP
156 West 56th Street
New York, NY 10019
Attn: Christopher E. Dean, Esq.

And

FREO U.S. Management, LLC
1120 Avenue of the Americas, Suite 1803
New York, NY 10036
Attention: Meng Lee

Any notice may be given or received by the attorney for a party.

## 12. Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the Deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

{11987825:6}                                  10

**13. Assignment of Contract**

Paragraph 13.01. Purchaser may assign its rights under this Contract, but only before or simultaneous with the Closing and payment of the Balance, to an entity that Purchaser owns and controls, directly or indirectly, in whole or in part with Fort Point Capital Partners LLC as a joint venture partner. Any purported assignment not in conformity with the provisions hereof shall be void. Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract. Nevertheless, no assignment shall be effective unless and until an executed counterpart of the instrument of assignment and assumption agreement by the Assignee in strict conformity of the requirements of this Paragraph shall have been delivered to Seller.

Paragraph 13.02. Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

**14. Miscellaneous Provisions**

Paragraph 14.01. THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03. This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to

2.01 (A) hereto. This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement. A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

Paragraph 14.09. In addition to the acts and deeds recited in this Contract and contemplated to be performed, executed and/or delivered by Seller or Purchaser, Seller and Purchaser agree to perform, execute and/or deliver or cause to be performed, executed and/or delivered at the Closing or after the Closing any and all further acts, deeds and assurances as are reasonably necessary to consummate and/or carry out the transactions contemplated hereby; provided same do not impose any obligations or liabilities on a party not contemplated in this Contract.

Paragraph 14.10. Seller and Purchaser mutually represent and warrant that Rosewood Realty Group ("Broker") is the only broker with whom they have dealt in connection with this Contract and that neither Seller nor Purchaser knows of any other broker who has claimed or may have the right to claim a commission in connection with this transaction. Seller and Purchaser shall indemnify and defend each other against any reasonable out-of-pocket costs, claims or expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representations, warranties or agreements contained in this paragraph. The representations and obligations under this paragraph shall survive the Closing or, if the Closing does not occur, the termination of this Contract.

Paragraph 14.11. Seller shall use commercially reasonable efforts to cause the mortgage(s) encumbering the Properties to be assigned to Purchaser's lender, with the cost and expenses of such assignment from the assigning lender (including reasonable attorneys' fees) to be paid by Purchaser. Any savings resulting from the assignment of any such mortgage(s) shall be for the sole benefit of Purchaser.

*Signature Pages Follow*

**IN WITNESS WHEREOF**, the parties hereto have executed this Contract as of the date first above written.


**Seller:**


**APC Holding 1 LLC**

By _____
Name: David Goldwasser
Title: Authorized Signatory


**618 Lafayette LLC**

By _____
Name: David Goldwasser
Title: Authorized Signatory


**325 Franklin LLC**

By_____
Name: David Goldwasser
Title: Authorized Signatory


**53 Stanhope LLC**

By _____
Name: David Goldwasser
Title: Authorized Signatory

**Eighteen Homes LLC**

By _____
Name: David Goldwasser
Title: Authorized Signatory


**1213 Jefferson LLC**

By _____
Name: David Goldwasser
Title: Authorized Signatory


**92 South 4th St LLC**

By _____
Name: David Goldwasser
Title: Authorized Signatory


**834 Metropolitan Avenue LLC**

By _____
Name: David Goldwasser
Title: Authorized Signatory


**1125-1133 Greene Ave LLC**

By _____
Name: David Goldwasser
Title: Authorized Signatory


{11987825:6}

**Purchaser:**

FREO U.S. Acquisitions, LLC

By _____

Name: Meng Lee

Title: Authorized Signatory


**Escrowee:**

Kensington Vanguard National Land Services


By _____

Name:

Title:

{11987825:6}

**Purchaser:**

FREO U.S. Acquisitions, LLC

By _____
Name:
Title:

**Escrowee:**

Kensington Vanguard National Land Services

By _____
Name:    Felix Tschanz
Title:    Senior Commercial Underwriter

EXHIBIT A
Purchase Price Breakdown

| Address | Amount |
|---|---|
| 568 Willoughby Avenue, Brooklyn, NY 11206 | |
| 618 Lafayette Avenue, Brooklyn, NY 11216 | |
| 325 Franklin Ave, Brooklyn, NY 11238 | |
| 53 Stanhope Street, Brooklyn, NY 11221 | |
| 263 18th Street, Brooklyn, NY 11215 | |
| 1213 Jefferson Ave, Brooklyn, NY 11221 | |
| 92 South 4th Street, Brooklyn, NY 11249 | |
| 834 Metropolitan Ave, Brooklyn, NY 11211 | |
| 1125 Greene Ave, Brooklyn, NY 11221 | |
| 1127 Greene Ave, Brooklyn, NY 11221 | |
| 1129 Greene Ave, Brooklyn, NY 11221 | |
| 1131 Greene Ave, Brooklyn, NY 11221 | |
| 1133 Greene Ave, Brooklyn, NY 11221 | |

Total: $17,350,000

Exhibit D

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 6, 2022

Page 1

IN THE MATTER OF THE AUCTION FOR

-----------------------------------

ROSEWOOD REALTY AUCTION
13 BUILDING PORTFOLIO

-----------------------------------

REMOTE PROCEEDINGS OF
Auction via WebEx
January 6, 2022
2:22 p.m. to 6:41 p.m.
Auctioneer: Matthew Mannion

FINAL COPY
JANE ROSE REPORTING   1-800-825-3341

Remote Proceedings Of                                  FINAL COPY
Rosewood Realty Auction                              January 6, 2022

```
                                                         Page 2

        APPEARANCES:


        AUCTIONEER:
        Matthew Mannion
        Mannion Auctions, LLC




        JANE ROSE REPORTING
        74 Fifth Avenue
        New York, New York 10011
        1-800-825-3341
        Kathleen K. Ohman, RMR
```

Remote Proceedings Of                                FINAL COPY
Rosewood Realty Auction                          January 6, 2022

Page 3

TABLE OF CONTENTS

Reporter's Certificate                              Page 96

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                         janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

                                                    Page 4

1           AUCTIONEER MANNION:  I'm going to start
2      recording audio and video-record this right
3      now, so you can go on the record beginning now.
4           THE REPORTER:  Okay.
5           AUCTIONEER MANNION:  Go ahead, Mr.
6      Frankel.
7           MR. FRANKEL:  This is sale of property in
8      Brooklyn pursuant to Chapter 11 plan in the
9      case of 53 Stanhope.
10          The specific properties to be sold will be
11     identified by the auctioneer.  Once bidding
12     starts, the bidding will be pursuant to the
13     bidding procedures approved by the bankruptcy
14     plan.
15          All of the potential bidders have had a
16     chance to review them and they are incorporated
17     by reference in the contracts that each of the
18     potential bidders signed.
19          And with regard to -- each bidder to
20     acknowledge that they have reviewed them and
21     are bound by them before they make a bid.
22     Obviously only the first time they make a bid.
23          The bidding will be under the bidding
24     procedures approved by the court.  The bidding
25     is limited to all cash offers except for the

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

Page 5

1   mortgagee, which has the right to credit bid.
2         Minimum opening bids will be announced by
3   the auctioneer for each property and for
4   aggregate bids.
5         The sale today will be subject to
6   bankruptcy court approval at a hearing on a
7   date to be announced.  As soon as we are done,
8   I'm going to contact the court and get the
9   earliest possible date.
10        The sale is free and clear of all liens,
11  claims and encumbrances, but subject to
12  existing leases.
13        I think each bidder has made a deposit.
14  They'll be -- the winning bidders will be
15  required to top off the deposit up to ten
16  percent of the bid within a day of the auction.
17  The deposits will be held for the winning
18  bidder and the second highest bidders until
19  closing, and closing is going to be 30 days
20  after bankruptcy court approval, time of the
21  essence.
22        To the extent that anyone is bidding on
23  terms different than in the bidding procedures,
24  as a condition of their bid, that's to be
25  announced so that when we review the bids we

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                      January 6, 2022

                                                    Page 6
1        can determine not only the highest bids but the
2        best bids.
3               For example, if someone insists on closing
4        within 60 days or 45 days, instead of 30 days,
5        they have to tell us that so that we can take
6        that into consideration.
7               There has been a stalking-horse bidder, or
8        the bulk bid, aggregate bid for all the
9        properties made by FREO, and that comes with a
10       break-up fee, which the auctioneer will
11       announce what the opening bid is for that on
12       the aggregate.
13              I would note for the benefit of Brooklyn
14       lender that in order for the plan to go
15       effective, in addition to the credit bids
16       there's got to be a cash component to
17       substitute for the carve-out for payment of
18       claims under the plan, and we estimate that
19       cash component to be $3 million.
20              That concludes my statement.  The
21       auctioneer will take it from here.
22              AUCTIONEER MANNION:  Thank you, Mr.
23       Frankel.
24              Just a little bit more about that cash
25       component.  The way this is going to work is,

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

                                                          Page 7
1        when the lender bids, if the lender decides to
2        bid, the mortgagee decides to bid, I will ask
3        for whether or not that includes a cash
4        component or a deposit.
5            If he answers that it does not include a
6        cash component, we will take the lender's bid
7        as high as the lender goes.  We will also then
8        take the other higher bids that include a cash
9        component.
10           Mr. Frankel, did I get that correct?
11           MR. FRANKEL:  Yes.
12           AUCTIONEER MANNION:  Thank you.
13           Okay.  It is now 2:22 p.m. eastern time on
14       January 6, 2022.  Once again, my name is
15       Matthew D. Mannion.  I'm the licensed
16       auctioneer.  Consumer Affairs License Number
17       1434494.
18           Once again, we are here today for auction
19       13 Building Portfolio, which will be done in
20       two parts.  The first part will first be the
21       bulk auction that Mr. Frankel had mentioned
22       earlier.
23           We'll do all the buildings that are
24       included in the portfolio for one bid.  We will
25       then, after that, regardless of what number

Remote Proceedings Of                        FINAL COPY
Rosewood Realty Auction                      January 6, 2022

Page 8

1       that is, we will be going to be auctioning off

2       the properties individually.

3            When it comes to individual auction, I

4       will announce the first property to be sold,

5       and we'll bid on that property.  Once we have

6       the highest bidder for that, I will knockdown

7       the price to whoever the highest bidder is, and

8       then we'll move on to the next property.  So on

9       and so forth.

10           MR. STEIN:  Mr. Mannion.  I'm sorry.

11           AUCTIONEER MANNION:  Yes.

12           MR. STEIN:  I'm sorry.  I would like a

13      moment to say a few comments before we get

14      started with the actual bidding.  I didn't want

15      to interrupt you with your preliminary remarks.

16           AUCTIONEER MANNION:  Okay.

17           MR. STEIN:  Is now a good time?  Have you

18      finished your preliminary remarks?

19           AUCTIONEER MANNION:  One second.  Almost

20      done.  Give me one more minute and then I'll it

21      over to you.

22           There are a lot of people here, a lot of

23      bidders here.  I ask you say your name when you

24      are bidding, and if I need to hear your name

25      again I will ask for you to repeat your name.

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

Page 9

1          The sale is going to be done in accordance
2     with Bankruptcy Code Section 363 and Chapter 11
3     plan reutilization proposed by the debtor as the
4     plan proponent.
5          All right, Mr. Stein, go ahead.
6          MR. STEIN:  Thank you, Mr. Mannion.
7          For the record, Matthew Stein, Kasowitz
8     Benson Torres on behalf of the mortgagee,
9     Brooklyn Lender.
10         A couple points.  In response to your
11    opening remarks, as well as Mr. Frank's remarks
12    about procedures.
13         First, Brooklyn lender does consent to the
14    bid procedures that were attached to and
15    incorporated in the confirmed plan with respect
16    to these nine nonconsolidated debtors.
17         First, I want to note for the record that
18    the notice that was filed on the docket last
19    week incorrectly stated the start time for this
20    auction.  The docket stated that it was
21    supposed to start at 11:00 a.m.
22         Can you confirm that all parties were
23    informed of the time change, because I did not
24    see a correction made to the docket?
25         MR. FRANKEL:  I'm sorry?  Can you repeat

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

---

Page 10

1      the question?
2          MR. STEIN:   The notice that was filed
3      informing everyone of the date of the auction
4      had the incorrect time.  I would like
5      confirmation on the record that all parties
6      were informed of the time change, given that it
7      is now 2:25 p.m.
8          MR. FRANKEL:  Yes, all potential bidders
9      were informed of the time change.
10         MR. STEIN:   Thank you.
11         Moving on.  The bid procedures require
12     that Brooklyn Lender, the mortgagee, was
13     supposed to be consulted throughout the
14     marketing process for these assets.
15         I want to put an objection on the record
16     that consultation was sporadic, at best, and
17     certainly never came, except at the requests of
18     Brooklyn Lender.
19         Third thing is, with respect to the bid
20     process.  I want to make sure that everyone on
21     this chat, on this video conference, is bidding
22     apples to apples and, therefore, I want
23     confirmation that the amounts of the bid are
24     aggregate amounts inclusive of all fees.
25         I understand that certain bids have been

---

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

Page 11

1    made on a net basis.  Other bids may be made on
2    an aggregate bases.
3         I think for the benefit of all parties
4    bids it should be made on an aggregate basis.
5         Mr. Mannion, do you have any issues with
6    that?
7         AUCTIONEER MANNION:  Can you repeat that,
8    please?
9         MR. STEIN:  Sure.  I'm aware of the
10   stalking-horse bid was made in an amount
11   without reference to the potential broker fee.
12   So that we are not -- so that everybody here on
13   the phone is comparing gross bids with gross
14   bids, we should be clear what the bid includes
15   and what the bid doesn't include and we should
16   make a rule at the top that all bids should be
17   gross amounts that would be realized by the
18   estate.
19        AUCTIONEER MANNION:  "Gross amount"
20   meaning each bid would include the buyer's
21   premium on top of it?
22        MR. STEIN:  The buyer's premium.  What do
23   you mean about the "buyer's premium"?
24        AUCTIONEER MANNION:  You just referenced
25   the buyer's premium before.  I was assuming

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

Page 12

1     that's what you were --
2          MR. STEIN:  No.  I mentioned the potential
3     broker commission.
4          MR. CORBIN:  Everyone is aware, that
5     whatever their bid is, that if it's a million
6     dollar bid, that the five percent they pay,
7     that's on top of that, and that's different and
8     aside.
9          MR. STEIN:  Understood.  I just want to
10    make sure that when bids are made they are made
11    in the gross amount so that we are comparing
12    apples to apples throughout this whole process
13    so that we don't have to do math on the fly.
14         MR. CORBIN:  By "gross amount," it's the
15    amount of the bid itself.  So, yeah, the
16    property is $1 million and they pay 50,000 for
17    the broker, we are not including that 50,000,
18    so they are not going to bid 1,050,000.  They
19    are going to bid $1 million on the property,
20    and they know on the side, per the terms of
21    sale, the bid procedure, that they are going to
22    pay the brokerage fee on top of whatever they
23    raise their panel at that number.
24         MR. STEIN:  And so the broker fee is
25    calculated on the net sale amount?  The amount

Remote Proceedings Of                                    FINAL COPY
Rosewood Realty Auction                               January 6, 2022

```
                                                    Page 13
 1        that the estate realizes?
 2             MR. CORBIN:  Right, because each bid they
 3        are not going to do the math of five percent.
 4        As the bids go on, 2,250,000, they are not
 5        going to add five percent on that and then bid
 6        that.  They are just going to say 2,250,000.
 7        The five percent is aside.  They know that
 8        that's on top of their bid.
 9             MR. STEIN:  As long as everyone on this
10        video conference and this auction is clear so
11        that we are always comparing apples to apples.
12             MR. CORBIN:  Got it.
13             MR. STEIN:  Along the same lines of the
14        bid process, the bid procedures require that
15        the bids be made for the property on an as-is
16        where-is basis.  I think it's important that
17        all bidders confirm that that is the terms of
18        their bid.
19             AUCTIONEER MANNION:  I believe Mr. Frankel
20        did state that before any bidding is to take
21        place that every individual bidder will need to
22        verbally confirm that they read the bid
23        procedures.
24             Mr. Frankel; is that correct?
25             MR. FRANKEL:  Yeah, and then thank you,
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                      January 6, 2022

Page 14

```
 1          Matt, for that comment because that
 2     reminds me that I should have noted, for the
 3     benefit of you and the auctioneer, that the
 4     FREO contract that was signed -- and I see Ms.
 5     Aisner.  The FREO contract that was signed had
 6     a couple of provisions in it that FREO has
 7     agreed to modify in that respect, and that is
 8     that on the break-up fee there will be no
 9     break-up --
10          MR. STEIN:  Mr. Frankel, I would rather
11     the bidder confirm itself rather than --
12          MR. FRANKEL:  No, I'm going to -- I'm
13     going to ask the bidder to -- I'm going to ask
14     FREO to do that as soon as I say the three
15     things.
16          MR. STEIN:  Understood.
17          MR. FRANKEL:  The first was the break-up
18     fee, that it does not apply if Brooklyn Lender
19     is the winning bidder.
20          The second is that there is no adjustment.
21     It's as-is where-is, no adjustments in the
22     purchase price.
23          And what was the third?
24          MR. STEIN:  Mark, I think it's simple.  If
25     FREO confirms it is as-is where-is, than that's
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

Page 15

1     subject to any after the fact reductions, and
2     that's stated on the record, then that should
3     be sufficient, but I would prefer FREO speak
4     for itself.
5          Thank you.
6          MS. LONGO:  Mark and Matthew, this is Kim
7     Longo, Windels Marx.  I represent FREO.  I
8     believe FREO is also on the WebEx.
9          I can confirm those two points, as Mark
10    and Matthew just raised.
11         AUCTIONEER MANNION:  Thank you.
12         MR. STEIN:  Thank you.
13         MS. LONGO:  Sure.
14         MR. WERTZBERGER:  Can it be clarified,
15    your second objection that you raised that
16    marketing was not consulted with the lender.
17         Is the lender withdrawing that objection
18    or is the lender bidding subject to the
19    objection and waiving that objection, because
20    we are not going to participate in a bid where
21    our bid goes hard but you have an open
22    objection while you are bidding yourself.
23         MR. STEIN:  We are reserving all rights.
24    We are not withdrawing any objection.
25         MR. WERTZBERGER:  I'm just going to say,

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

Page 16

1    for the record, that we're left with
2    uncertainty because we asked to go hard while
3    you have an objection.  That affects our bid.
4    You can proceed.
5            MR. STEIN:  I understand your comment.
6    Look, it's -- I'm reserving my right to the
7    top.  We are not stopping the auction from
8    going forward, but we are here where we are,
9    having followed what the terms of the plan and
10   the bid procedures provide.
11           Moving on.  With respect to qualified
12   bids, I don't know how many separate bidders
13   are in the room.  I guess we will find that
14   out, although it would be nice to know at the
15   top how many separate bidders did qualify.
16           I know you noted at the --
17           AUCTIONEER MANNION:  Eleven.
18           MR. STEIN:  Eleven?
19           AUCTIONEER MANNION:  Yes.
20           MR. STEIN:  Thank you.
21           And for each one, did all 11 bidders meet
22   all three requirements that appear on pages one
23   and two of Exhibit A to the plan under the
24   paragraph heading Qualification to Bid?
25           Typically, each bidder, other than --

Page 17

1    other than Brooklyn Lender, provide a ten
2    percent fee deposit.
3        Did all 11 bidders provide evidence
4    demonstrating the ability to close, and if all
5    11 bidders, other than Brooklyn Lender,
6    provided a written offer of its bid?
7        MR. FRANKEL:  We've got varying levels of
8    compliance, strict compliance, but the -- each
9    bidder was substantially in compliance to the
10   extent that we invited them to the auction.
11       MR. STEIN:  What does that mean?
12       MR. FRANKEL:  That means that, for
13   example, FREO, as you know, made a deposit less
14   than ten percent, that other bidders had minor
15   changes to the contract, and that will be taken
16   into account as to what's -- the winning
17   bidder, once the auction is concluded.
18       But we just got most of these bidders
19   qualified in the last day and we just have not
20   had time to go over all of this in advance of
21   the auction with you.
22       Contracts were coming in today, this
23   morning.  That's part of the reason we had to
24   put this off until 2:00.  We wanted to get as
25   many participants as possible, and we are going

Remote Proceedings Of                           FINAL COPY
Rosewood Realty Auction                         January 6, 2022

                                                      Page 18
1        to proceed with our judgment on bidders that

2        were substantially qualified enough to proceed.

3            Your rights are reserved.

4            MR. STEIN:   And my rights -- that's

5        exactly what I was going to say.   I'm reserving

6        all rights to challenge the qualification of

7        any bidder and, again, I don't have to remind

8        you, because you stated as well, but Brooklyn

9        Lender has complication rights that it would

10       want to -- want to utilize with respect to

11       that.

12           Finally, with respect to your comment as

13       to the cash component of the credit bid,

14       Brooklyn Lender vehemently objects to any such

15       requirement.

16           That requirement does not exist anywhere

17       in the plan or the bid procedures.   It

18       certainly does not comport with the Bankruptcy

19       Code or the ability of the debtors to sell its

20       collateral out from under it without its

21       consent, and, therefore, we reserve all rights.

22           The other thing I would note is that, with

23       respect to the disclosure statement, the fourth

24       amended disclosure statement that was filed on

25       the docket on April 21st, the debtors indicated

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

Page 19

1    that its estimate as of the effective date, or
2    as of the closing date of these nine debtors --
3    the plan for these nine debtors, that the
4    estimated administrative expenses was an amount
5    less than 300,000 dollars.
6    (audio disruption by crosstalk.)
7        I am flabbergasted that that the amount is
8    as high as $3 million.  I see no basis for it.
9        Brooklyn Lender -- can you mute your
10   phone?
11       AUCTIONEER MANNION:  Yeah, Joel, I think
12   your mike is on.
13       MR. WERTZBERGER:  Sorry.
14       MR. STEIN:  And, again, as I said, I'm
15   flabbergasted that the amount is now five to six
16   times greater than that appeared in the
17   disclosure statement.
18       Brooklyn Lender reserves all rights to
19   challenge that amount, including the new-found
20   requirement that the Brooklyn Lender's credit
21   bid have a cash component.
22       Thank you.
23       AUCTIONEER MANNION:  Okay.  All right.
24   Mr. Frankel, any last-minute announcements
25   before we begin?

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                      January 6, 2022

Page 20

1          MR. FRANKEL:  No, we'd like to commence.
2          AUCTIONEER MANNION:  Okay.  All right.  So
3     as mentioned before, we'll do this in two
4     parts.  The first part will be the bulk
5     auction, second part will be the individual
6     property auction, so without further ado, we
7     will be starting with the bulk auction of all
8     thirteen properties.
9          That is 1125-1133 Greene Avenue, 1213
10    Jefferson Avenue, 263 18th Street, 325
11    Franklin, 53 Stanhope Street, 568 Willoughby
12    Avenue, 618 Lafayette Avenue, 834 Metropolitan
13    Avenue, 92 South 4th Street and that is all the
14    properties.
15         At this time we are going to be opening
16    the bidding for the bulk auction.  Once again,
17    this is the bulk auction, not individual
18    auction.  This is the bulk auction.  We'll be
19    starting the bidding at $17,800,000.
20    $17,800,000.
21         Anyone want to bid 17,800,000?
22    17,800,000.  Any bids?
23         KARIM:  Hey, Matt.
24         AUCTIONEER MANNION:  Yes.
25         MING LEE:  I'm sorry.  This is Ming Lee and

Remote Proceedings Of                         FINAL COPY
Rosewood Realty Auction                       January 6, 2022

Page 21

1       Karim Elsayyad representing FREO.
2           Shouldn't we be starting at the
3       stalking-horse price that was 17.35 million?
4           AUCTIONEER MANNION:  Okay.  All right.
5       Give me one moment.
6           Mr. Frankel, can you confirm that it's a
7       two percent break-up fee?
8           MR. FRANKEL:  The way the -- this works is
9       that -- FREO is right.  Their bid is the
10      opening bid.  The next bid in order to beat
11      that bid is the amount that is their bid plus
12      the two percent break-up fee of $347,000, plus
13      we agreed to a $100,000 overbid protection, so
14      the total -- so the next bid above the opening
15      17,350,000 bid has to be, as you said,
16      17,800,000.
17          AUCTIONEER MANNION:  I understand.
18      Miscommunication.  All right.
19          FREO, my apologies.  Going back -- go
20      ahead.
21          MR. STEIN:  And for the record, just to
22      clarify, that's only with respect to parties
23      other than Brooklyn Lender because Brooklyn
24      Lender is not subject to the break-up fee.
25      Correct, Mr. Frankel?

JANE ROSE REPORTING                National Court-Reporting Coverage
1-800-825-3341                     janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                                    Page 22
 1          MR. FRANKEL:  Yes.  Brooklyn Lender can --
 2     I don't know about the -- I guess there's still
 3     the overbid, but since there is no break-up fee
 4     on the Brooklyn Lender bid, then that would not
 5     apply.
 6          AUCTIONEER MANNION:  Okay.  So if Brooklyn
 7     Lender were to -- Mr. Frankel, if they were to
 8     submit a bid after FREO's, what would theirs
 9     be?
10          MR. FRANKEL:  17,450,000.
11          AUCTIONEER MANNION:  Okay.  Okay.  At this
12     time we are going to reopen the bidding for the
13     bulk auction at FREO's opening bid at
14     $17,350,000.  $17,350,000.  Any further bids?
15          $50,000 increments.
16          $17,350,000 to FREO.
17          MR. FRANKEL:  Starting with 17,450,000.
18     There's a $100,000 overbid protection.
19          AUCTIONEER MANNION:  Correct, yes.  Thank
20     you, Mr. Frankel.
21          17,350,000 to FREO.
22          Any further bids?
23          Is someone trying to speak?
24          MR. LEIBOWITZ:  Matthew, can you hear me?
25          AUCTIONEER MANNION:  Barely.  Hold on.
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

---

Page 23

1       Let me find you.
2           MR. LEIBOWITZ:  Jason Leibowitz.
3           AUCTIONEER MANNION:  Jason Leibowitz.
4       Yes, I can hear you.
5           THE REPORTER:  I can't understand him.
6       It's very garbled.
7           AUCTIONEER MANNION:  Jason, can you get
8       closer to the mike?
9           MR. LEIBOWITZ:  I'm about as close as I
10      can get right now.  Can you hear me better?
11          AUCTIONEER MANNION:  It's very mixed up
12      and garbled.  Do you want to call on your
13      phone?
14          MR. LEIBOWITZ:  Yeah, I will do that.
15          Can you understand Jason?  Can you
16      understand Jason?
17          MS. LONGO:  I cannot hear him.
18          AUCTIONEER MANNION:  Okay.  Currently, we
19      had 17,350,000 as the current bid.
20          If you were going to bid above that, you
21      have to bid 17,800,000, unless you are the
22      lender, as Mr. Frankel mentioned.
23          We'll wait for Jason to call in.
24          MR. LEIBOWITZ:  I typed a message to you,
25      if you can see it, to everyone.

---

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

Page 24

1          AUCTIONEER MANNION:  Okay.  For the
2     record, I can see that Jason has messaged me
3     and said 19 million.
4          You can direct message me $19 million.
5     That's on the record for the -- on the video
6     chat right here.  $19 million to Jason.  19
7     million.
8          Now, Jason, does that include a cash
9     component, a deposit of any kind, or is that a
10    credit bid?
11         Jason, can you hear me?
12         MR. LEIBOWITZ:  Yes.
13         AUCTIONEER MANNION:  Does that include a
14    deposit?
15         MR. STEIN:  Mr. Mannion, I know the answer
16    to this.  It's all credit, no cash.
17         AUCTIONEER MANNION:  No cash, all credit.
18    Understood.
19         So for the lender's bid, that does not
20    include a cash component, we have $19 million.
21    And for the cash component, which is FREO,
22    $17,350,000.  17,350,000 to FREO.
23         $19 million dollars to the lender.
24         Since all of these sales will be subject
25    to the bankruptcy court approval, there will

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

                                                    Page 25
1       not be any "sold" mentioned today.  These are
2       just simply going to be knocked down to
3       whoever I state they are, and then afterwards
4       they'll be approved or not by the court.
5            Once again, for the bulk sale, FREO,
6       $17,350,000.  That includes a cash component,
7       and cash deposit; and the lender at $19
8       million.  It does not include a cash component.
9            All right.  Moving on.  We'll be going on
10      to the individual property auction.
11           First, we will start with Greene Avenue,
12      and then we will Jefferson, 263 18th, Franklin.
13      Stanhope, Willoughby, Lafayette, Metro,
14      Metropolitan Avenue, South 4th Street.
15           Once again, Greene Avenue, Jefferson
16      Avenue, 18th Street, Franklin Avenue, Stanhope,
17      Willoughby, Lafayette, Metro, South 4th Street.
18           To begin, 1125-1133 Greene Avenue.  Okay.
19      At this time 1125-1133 Greene Avenue is up for
20      auction.
21           We'll be starting at $1 million.
22      1,000,000.  We will be doing $50,000 increments
23      to begin.  50,000 increments.  $1 million.
24           Any further bids?  Any bids?  Anybody want
25      1,000,000?  $1 million for Greene Avenue.

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of
Rosewood Realty Auction

**FINAL COPY**
January 6, 2022

```
                                              Page 26
1            Anyone for 1,000,000?  $1 million Greene
2       Avenue.
3            Jason, are you -- okay.
4            Jason is chatting with everybody.  You can
5       all see, actually.  It's not a private message.
6       You can see on your chat, if you hit the little
7       button on the bottom right of your program,
8       there's a chat there.
9            Jason is bidding $5,050,000 for Greene.
10           And, Mr. Leibowitz, does that include a
11      cash component or is that all credit?
12           MR. LEIBOWITZ:  Credit.
13           AUCTIONEER MANNION:  Credit.  Credit.
14      Thank you.  5,000,000.
15           Is there anyone for the cash component?
16      Lender written down at 5,050,000.
17           Cash -- anybody at -- anybody for the cash
18      component for Greene?  Starting at 1,000,000.
19           Yes?
20           DAVID (Maguire Capital):  2.5 million,
21      cash component for Greene.
22           THE REPORTER:  Who was that?
23           DAVID (Maguire Capital):  Maguire Capital.
24           AUCTIONEER MANNION:  Maguire Capital?  Is
25      that right?  David, Maguire Capital?
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

Page 27

1          DAVID (Maguire Capital):  Yes.
2          AUCTIONEER MANNION:  Maguire Capital.
3          MR. LEIBOWITZ:  Brooklyn Lender,
4     5,000,000.
5          AUCTIONEER MANNION:  We are taking the
6     cash component bid right now, Jason.
7          MR. STEIN:  I just want to make sure
8     that's for 1125, 1127, 1129, 1131 and 1133?
9          AUCTIONEER MANNION:  Yes, that's correct.
10         And, Maguire Capital, what was your bid
11    again, David?
12         David?  David, can you hear me?
13         DAVID (Maguire Capital):  Yes.
14         AUCTIONEER MANNION:  What was your bid
15    again?  Please say it for the record.
16         DAVID (Maguire Capital):  2.5 million cash
17    component.
18         AUCTIONEER MANNION:  2.5 million.  Thank
19    you, David.
20         2.5 million.  Any further bids?  2.5
21    million.  2.5 million, Maguire cash component.
22    Any further bids?  $100,000 increments.
23         2.5 million to Maguire.
24         MS. LONGO:  Matthew, can you hold on a
25    moment.  I'd like to coordinate with FREO

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

Page 28

1    offline.
2         AUCTIONEER MANNION:  Yes, take your time.
3         Once again, everybody, this is going to be
4    a long auction, but run correctly.
5         And, David, I would offer the same time to
6    you if you ask on a future bid.
7         Currently, for this property, we have a
8    $2.5 million bid by Maguire Capital, cash
9    component, and for the lender's credit bid,
10   5,050,000.
11        I would ask that when you ask for a future
12   recess or future aside to try to make it as
13   quick as possible.  Please keep it to a couple
14   minutes.
15        Next up after Greene, once we are done
16   with Greene, we are going to go to Jefferson
17   Avenue next.  That's 1213 Jefferson.
18        MR. LEIBOWITZ:  Matt, can you hear me now?
19        AUCTIONEER MANNION:  Yes, that's a little
20   better, a little echoey, but I can hear you.
21        You may have multiple mikes on.
22        MR. LEIBOWITZ:  Are you better now?
23        AUCTIONEER MANNION:  It's echoing, but we
24   can hear you.  Are there people in there that
25   have their phones on, or multiple mikes?  It's

Remote Proceedings Of                           FINAL COPY
Rosewood Realty Auction                         January 6, 2022

Page 29

1    echoey.
2         MR. LEIBOWITZ:  Just this one phone and my
3    computer.
4         AUCTIONEER MANNION:  That's better, yeah,
5    Jason.  It is a little echoey, but we can deal
6    with that.
7         Kim -- is that Kim that asked for the
8    moment?
9         I guess it was.
10        Currently we are at 5,050,000 for the
11   lender's credit bid.  Maguire Capital,
12   2,500,000.
13        Kim, do we have an answer?  FREO, do we
14   have an answer?  Kim?  A couple more minutes.
15   We have to get going here.  We have 12 more
16   properties to get through.
17        MR. LEIBOWITZ:  I'm not sure I'm following
18   the idea of having two separate amounts on the
19   same sale?  There's one amount.  It's either
20   cash or credit.  If you don't have credit, you
21   are bidding cash, but you are not getting cash
22   in an amount less than the current bid.
23        AUCTIONEER MANNION:  Mr. Frankel, do you
24   want to opine on that?
25        In the meantime, Kim, we need an answer

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

Page 30

1        here in the next minute.
2            MR. LEIBOWITZ:  Mark, Frankel was muted.
3        We couldn't hear anything he said.
4            MR. FRANKEL:  Sorry about that.
5            What I had said was that we -- you've
6        explained how you are conducting the auction.
7        Brooklyn Lender, through Mr. Stein, has
8        reserved all rights, and we are proceeding
9        accordingly.
10           We understand Brooklyn Lender's position.
11           AUCTIONEER MANNION:  Kim, I'm going to
12       give you two minutes, and if you don't have an
13       answer in two minutes we are going to have to
14       move on.
15           Kim, can you hear me?  I know Windels Marx
16       Lane is representing FREO.
17           FREO, can you hear me?  Did Kim drop?
18           MS. LONGO:  I apologize.  I turned all the
19       volume down, so I couldn't hear you guys.
20           AUCTIONEER MANNION:  Okay.
21           MS. LONGO:  We are fine.  We are fine, and
22       we are not going to be submitting a further
23       bid.
24           AUCTIONEER MANNION:  Understood.  All
25       right.

Remote Proceedings Of                         FINAL COPY
Rosewood Realty Auction                       January 6, 2022

```
                                            Page 31
 1           So 1125 through 1135 Greene Avenue.  That
 2      includes 1125 Greene Avenue, 1127 Greene
 3      Avenue, 1129 Greene Avenue, 1131 Greene Avenue,
 4      1133 Greene Avenue, Brooklyn, New York.
 5           Lender credit bid, 5,050,000.  Cash
 6      component bid, Maguire, $2,500,000.  Knocked
 7      down.
 8           Moving on.  We are going to Jefferson.
 9      123 Jefferson Avenue, Brooklyn, New York.
10           Once again, if you have an aside, please
11      try to keep it short.  I will allow them to
12      happen.  I understand this is not a cattle
13      auction.  This is real property.  A lot of
14      money moving between parties.  I just ask that
15      you try to keep the time to a minimum, and
16      please don't mute yourselves so we can continue
17      to have conversation, if need be.
18           All right.  Moving right along.  1213
19      Jefferson Avenue.
20           What's that?  Okay.  All right.
21           The opening at $750,000 for Jefferson
22      Avenue.  1213 Jefferson Avenue.  750.  Does
23      anybody want to take 750?
24           Opening bid is 750,000.
25           MR. WERTZBERGER:  One second, please.  I'd
```

JANE ROSE REPORTING          National Court-Reporting Coverage
1-800-825-3341                  janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

                                                    Page 32

 1      like to place a bid.
 2            AUCTIONEER MANNION:  Yes.  Is that Joel?
 3            MR. WERTZBERGER:  Yeah.  We're going to
 4      bid 750,000.
 5            AUCTIONEER MANNION:  750,000 to Mr.
 6      Wertzberger.  750,000 to Joel.
 7            $50,000 increments.
 8            750,000 to Joel.
 9            MR. LEIBOWITZ:  Matthew, can you hear me?
10            AUCTIONEER MANNION:  Yes, I can hear you.
11            MR. LEIBOWITZ:  Jason Leibowitz.
12            We'd like to make a bid of 1,899,000.
13            AUCTIONEER MANNION:  Understood.  That's
14      from Brooklyn Lender, right?
15            MR. LEIBOWITZ:  Excuse me?
16            AUCTIONEER MANNION:  That's for Brooklyn
17      Lender?
18            MR. LEIBOWITZ:  Correct.
19            AUCTIONEER MANNION:  Brooklyn Lender bids
20      1,899,000 credit bid.  1,899,000 credited for
21      Brooklyn Lender.
22            Joel currently in the lead with the cash
23      component $750,000.
24            Any further bids on 1213 Jefferson Avenue,
25      cash component?

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                        Page 33
 1          MS. AISNER: I have a bid.
 2          AUCTIONEER MANNION:  Yes.
 3          MS. AISNER:  This is Erica Aisner, Kirby
 4     Aisner & Curley.  I have a bid of 825 all cash.
 5          AUCTIONEER MANNION:  825 cash component.
 6     Erica, thank you.
 7          MR. WERTZBERGER:  I'm sorry, but we
 8     announced that it's 50,000 increments, but we
 9     are going to bid 875.
10          AUCTIONEER MANNION:  875.
11          You can go above, but you can't go below
12     the increment.
13          875 to Joel.  Correct, Joel?
14          875.  875 to Joel.  875,000 Joel.  875,000
15     to Joel.  Current bid.
16          DAVID (Maguire Capital):  Maguire Capital.
17     925,000 cash component.
18          AUCTIONEER MANNION:  And that's for
19     Maguire?
20          DAVID (Maguire Capital):  Yes.
21          AUCTIONEER MANNION:  925.  925,000
22     Maguire.  925,000 Maguire.  925,000 Maguire,
23     current bid.
24          Any further bids?  Any other action?
25     925,000 Maguire.  925 to Maguire.
```

Remote Proceedings Of                      FINAL COPY
Rosewood Realty Auction                    January 6, 2022

```
                                                    Page 34
 1          Any further bids?
 2          Erica?  Don't want it at that price?
 3          925.
 4          Joel?
 5          MR. WERTZBERGER:  We're out.
 6          AUCTIONEER MANNION:  925 Maguire.  925
 7     Maguire, first call.  925,000 Maguire, second
 8     call.  Third and final call, all finished up,
 9     all done, 925,000 Maguire.  Knocked down for
10     925 for Maguire for the cash component.
11          Knocked down also to the lender, Brooklyn
12     Lender, at 1,899,000.
13          Okay.  Moving on.  Third property, 263
14     18th Street.  263 18th Street, Brooklyn, New
15     York.
16          One moment.  As you were, we are going to
17     go to Franklin Avenue next, actually.  The
18     third property, Franklin Avenue, 325 Franklin.
19     325 Franklin.  All right.  For Franklin.  325
20     Franklin, we are going to start at 1,000,000.
21          MR. LEIBOWITZ:  Just to be clear, Matthew,
22     there's two properties in connection with this
23     debtor and this loan.  It's 53 Stanhope and 325
24     Franklin, so those are both included here,
25     correct?
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

---

Page 35

1          THE REPORTER:  Who is speaking?
2          MR. LEIBOWITZ:  This is Jason Leibowitz
3     from Brooklyn Lender.
4          AUCTIONEER MANNION:  Mr. Corbin, can you
5     opine on that?
6          MR. CORBIN:  Mr. Frankel, can you weigh
7     in?
8          MR. FRANKEL:  These are jointly owned
9     properties, so I think Mr. Leibowitz is right.
10         MR. CORBIN:  These are one loan, two
11    different entities.  One loan, two different
12    entities.
13         MR. LEIBOWITZ:  Correct.  So the bidding
14    is for both.  Everything encumbered by the
15    properties.
16         AUCTIONEER MANNION:  All right.  For now
17    we are going to put Franklin/Stanhope on a
18    brief pause.  We are going to move to
19    Willoughby Avenue.  568 Willoughby.  568
20    Willoughby Avenue is the new property.  This
21    will be the third property up for auction
22    today.  Third property, Willoughby Avenue.
23         MR. SCHIFF:  (Phonetic)  I would like to
24    bid 1.1 million.
25         AUCTIONEER MANNION:  Who is that?

---

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

Page 36

1          JAIM SCHIFF:  Jaim Schiff (phonetic).
2          AUCTIONEER MANNION:  Gotcha.  1.1 million.
3     1.1 million to Jaim Schiff.
4          We will do $100,000 increments.  100,000
5     increments.
6          1.1 million to Jaim Schiff.  Any further
7     bids?
8          MR. MICHAELSON:  1.2 million.
9          AUCTIONEER MANNION:  Who is that?
10         MR. MICHAELSON:  Joseph Michaelson on
11    behalf of Capital Solutions on behalf of Abe
12    Rosenburg.  He's a creditor.
13         AUCTIONEER MANNION:  Does that include a
14    cash deposit?
15         MR. MICHAELSON:  Yes.
16         AUCTIONEER MANNION:  It includes a cash
17    deposit?
18         MR. MICHAELSON:  Yes.
19         AUCTIONEER MANNION:  1.2 million Joseph.
20    1.2 million to Joseph.
21         MR. SCHIFF:  1.350.
22         AUCTIONEER MANNION:  1.350 to Jaim.
23         MR. MICHAELSON:  1.4 million.
24         AUCTIONEER MANNION:  We are doing 100,000
25    increments.

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

Page 37

1           MR. MICHAELSON:  1.45.
2           AUCTIONEER MANNION:  1.45 to Joseph.
3           MR. LEIBOWITZ:  2,650,000.
4           AUCTIONEER MANNION:  Is that Jason?
5           MR. LEIBOWITZ:  It is.
6           AUCTIONEER MANNION:  On behalf of Brooklyn
7      Lender?
8           MR. LEIBOWITZ:  Yes.
9           AUCTIONEER MANNION:  That's a credit bid,
10     right?
11          MR. LEIBOWITZ:  Correct.
12          AUCTIONEER MANNION:  2,650,000 bid by
13     Brooklyn Lender as a credit bid.  2,650,000
14     credit bid Brooklyn Lender.
15          Current cash bid is Joseph at 1,450,000.
16          We will lower to 50,000 increments now for
17     the cash bids.  50,000 for cash bids.
18          We are at 1,450,000 Joseph.
19          Any further bids?
20          MARK:  1,550,000
21          AUCTIONEER MANNION:  To mark.
22          Go ahead.  Who was that?  Jaim?
23          MR. MICHAELSON:  1.6 million.
24          AUCTIONEER MANNION:  1.6 to Joseph.  1.6
25     Joseph.  1,600,000 to Joseph, current bid.

JANE ROSE REPORTING          National Court-Reporting Coverage
1-800-825-3341                    janerose@janerosereporting.com

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

```
                                              Page 38
 1          Any further advancement?
 2          1,600,000 to Joseph.  1,600,000 to Joseph,
 3     first call.
 4          MARK:  1,650,000.
 5          AUCTIONEER MANNION:  1,650,000 to Mark.
 6          MR. MICHAELSON:  Can you give me a minute,
 7     sir?
 8          AUCTIONEER MANNION:  Yeah, take a minute.
 9     Keep it brief.  One minute.  Keep it brief.
10          MR. MICHAELSON:  1.7 million.
11          AUCTIONEER MANNION:  1.7 million to
12     Joseph.  1.7 million to Joseph.  1.7 million
13     Joseph.
14          Any further advancement?
15          $1,700,000 Joseph, current bid.
16          Jaim?  Mark?  All finished up?
17          1,700,000 to Joseph, first call.
18          MR. WERTZBERGER:  Wait a second.  Did you
19     say 1.7 million or 2.7 million?
20          AUCTIONEER MANNION:  1,700,000.  50,000
21     increments.
22          All finished up?
23          1,700,000 to Joseph, first call.
24     $1,700,000 to Joseph, second call.  $1,700,000
25     to Joseph, third and final call.  Knockdown to
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                           Page 39
 1        Joseph for 1.7.   Joseph, Cash component for
 2        1.7 million.
 3             Brooklyn Lender for credit component,
 4        2,650,000.
 5             Moving along.  That was 568 Willoughby.
 6             Moving on to 618 Lafayette, for the fourth
 7        property.  Once again, 618 Lafayette Avenue.
 8             618 Lafayette Avenue.  We'll start the
 9        bidding at 1,000,000.  Do I hear anyone for
10        1,000,000?
11             MR. LEIBOWITZ:  We have a bid.  Matt, we
12        have a bid.
13             AUCTIONEER MANNION:  Okay.  That would be
14        Jason?
15             MR. LEIBOWITZ:  Yes.  This is for 618
16        Lafayette.  Our bid is 2,937,000.
17             AUCTIONEER MANNION:  2,937,000 by Brooklyn
18        Lender as a credit bid.  Credit bid, Brooklyn
19        Lender, 2,937,000.
20             Do I have any further -- do I have any
21        bids for cash component?  We're going to start
22        at 1,000,000.  Do I have 1,000,000 from
23        anybody?
24             MS. AISNER:  Yes.  1,000,000 here.  Erica
25        Aisner.
```

JANE ROSE REPORTING                National Court-Reporting Coverage
1-800-825-3341                     janerose@janerosereporting.com

Remote Proceedings Of                           FINAL COPY
Rosewood Realty Auction                         January 6, 2022

```
                                              Page 40
 1           AUCTIONEER MANNION:  Erica.  1,000,000.
 2      Thank you, Erica.
 3           We'll do $100,000 increments.  As you
 4      were, we'll do 50,000 increments.
 5           1,000,000 to Erica.  1,000,000 to Erica.
 6           DAVID (Maguire Capital):  Maguire Capital
 7      1,050,000.
 8           AUCTIONEER MANNION:  1,050,000 Maguire.
 9      1,050,000 Maguire Capital.
10           MS. AISNER:  1.1.
11           AUCTIONEER MANNION:  1,100,000, Erica.
12      1,100,000 to Erica.  Current bid.
13           Maguire, what do we got?
14           Erica.  1,100,000 to Erica.
15           DAVID (Maguire Capital):  One-one-five-oh
16      Maguire.
17           AUCTIONEER MANNION:  One-one-five-oh
18      Maguire.  1,150,000 to Maguire.  1,150,000.
19           MS. AISNER:  We'll go to one-two.
20           AUCTIONEER MANNION:  1.2 million Erica.
21      1,200,000 Erica.  1,200,000 Erica, current bid.
22           Any advancement?
23           DAVID (Maguire Capital):  1,250,000
24      Maguire.
25           AUCTIONEER MANNION:  1,250,000 Maguire.
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                              Page 41
 1      Thank you, Maguire.  1,250,000 Maguire.
 2           MR. WERTZBERGER:  Excuse me. how much was
 3      the credit bid on it?
 4           AUCTIONEER MANNION:  The credit bid
 5      2,937,000 by Brooklyn Lender.
 6           MR. WERTZBERGER:  We're bidding 1.5
 7      million in cash.
 8           AUCTIONEER MANNION:  That is Joel?
 9           MR. WERTZBERGER:  Yeah.
10           AUCTIONEER MANNION:  1,500,000 to Joel.
11      Thank you, Joel.  1,500,000 to Joel.
12           Any further bids?  Any further bids for
13      1,500,000?
14           We'll drop to 25,000 increments.  25,000
15      increments.
16           1,500,000 to Joel.
17           MR. WERTZBERGER:  People will think I'm --
18           AUCTIONEER MANNION:  Joel, you got a hot
19      mike.
20           $1,500,000 to Joel.
21           We'll do 25,000 increments.  Any interest?
22       Erica?
23           MS. AISNER:  We're out.
24           AUCTIONEER MANNION:  Maguire?
25           What's that?
```

JANE ROSE REPORTING            National Court-Reporting Coverage
1-800-825-3341                 janerose@janerosereporting.com

Remote Proceedings Of                         FINAL COPY
Rosewood Realty Auction                    January 6, 2022

---

Page 42

1       DAVID (Maguire Capital):  We're out.
2       AUCTIONEER MANNION:  $1,500,000 to Joel,
3   first call.  $1,500,000 to Joel, second call.
4   Third and final call.  All finished up.
5   $1,500,000 to Joel.  Knockdown cash component
6   1,500,000 to Joel, and knockdown to the lender
7   2,937,000 for its credit bid.
8       All right.  Okay.  Moving on.  We're going
9   to Metropolitan next.  834 Metropolitan Avenue.
10  834 Metropolitan Avenue, Brooklyn, New York.
11      At this time we are going to ask for an
12  opening bid of 850,000.  850,000.
13      UNIDENTIFIED MALE SPEAKER:  This is
14  another one that has multiple properties, so
15  we're talking about 834 Metropolitan Avenue and
16  also 92 South 4th Street.
17      MR. FRANKEL:  I was corrected by the
18  client.  We are going to be selling these
19  separately.
20      AUCTIONEER MANNION:  Understood.  Mr.
21  Frankel, that means we are going to be doing
22  834 Metro Avenue separately from 92 South 4th
23  Street and we'll also be doing 325 Franklin
24  Avenue separate from 53 Stanhope; is that
25  correct?

---

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

Page 43

1          MR. FRANKEL:  Yes.

2          AUCTIONEER MANNION:  Thank you.  All

3     right.  At this time we'll continue with 834

4     Metropolitan Avenue, and then we will go 92

5     South Street and then we'll go back to Franklin

6     and Stanhope.

7          So up next, 834 Metropolitan Avenue.  Once

8     again, I'm going to ask to see if anyone is

9     interested at 850,000.

10         MR. WERTZBERGER:  We'll bid 850.

11         AUCTIONEER MANNION:  Joel.  Thank you,

12    Joel, for opening us up at 850.  Thank you,

13    Joel.  850,000 to Joel.

14         We'll do $50,000 increments to begin.

15         850,000 to Joel.  Any further action?

16    850,000 to Joel.

17         DAVID (Maguire Capital):  Yes.  Maguire,

18    900,000.

19         AUCTIONEER MANNION:  Maguire, 900.

20         MR. LEIBOWITZ:  Brooklyn Lender,

21    3,640,000.

22         AUCTIONEER MANNION:  All right.  For the

23    credit bid we've got 3,640,000 bid by Brooklyn

24    Lender.

25         Cash component, we are at 900,000 by

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                      January 6, 2022

---

```
                                          Page 44
 1      Maguire Capital.  900,000 Maguire Capital.
 2          MR. WERTZBERGER:  Does the Brooklyn Lender
 3      bid include both properties or just for
 4      Metropolitan?
 5          MR. LEIBOWITZ:  Just 834 Metropolitan.
 6      That's what this auction is about.
 7          AUCTIONEER MANNION:  And, Mr. Leibowitz,
 8      can you confirm that's a credit bid?
 9          MR. LEIBOWITZ:  Confirmed.
10          AUCTIONEER MANNION:  Thank you, Mr.
11      Leibowitz.
12          $900,000 Maguire Capital is the current
13      bid.  $900,000 current bid.
14          MR. WERTZBERGER:  We are going to bid on
15      the cash component for this property 1,550,000.
16          AUCTIONEER MANNION:  $1,550,000 to Joel.
17          MR. WERTZBERGER:  One second.  One second.
18      One second.  One second.  We are going to --
19      one second.
20          We are going to credit bid on this
21      property 1,350,000.  1,350,000 cash bid.  Cash
22      bid, not credit.  1,350,000.
23          AUCTIONEER MANNION:  1,350,000.  Okay.
24      1,350,000 cash bid, right, Joel?
25          MR. WERTZBERGER:  Yep.
```

---

JANE ROSE REPORTING          National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                              Page 45
1          AUCTIONEER MANNION:  $1,350,000 on 834
2     Metro Ave.  $1,350,000 to Joel, current cash
3     component bid.
4          $50,000 increments.
5          1,350,000 to Joel.
6          DAVID (Maguire Capital):  Maguire, 1.4
7     million.
8          AUCTIONEER MANNION:  1.4, Maguire.  Thanks
9     for coming back in, Maguire.
10         1,400,000 Maguire, current bid.
11         Joel, what do you got?
12         1,400,000 to Maguire Capital.
13         MR. WERTZBERGER:  1,450,000.
14         AUCTIONEER MANNION:  Joel, is that a bid?
15         MR. WERTZBERGER:  Yeah.
16         AUCTIONEER MANNION:  1,450,000 to Joel.
17    1,450,000 to Joel, current bid.
18         Maguire?
19         DAVID (Maguire Capital):  1.5.
20         AUCTIONEER MANNION:  1,450,000?  Is that
21    what you said?
22         DAVID (Maguire Capital):  1.5.
23         AUCTIONEER MANNION:  1,500,000 Maguire.
24    1,500,000 Maguire Capital.  1,500,000 Maguire.
25    1,500,000.
```

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                            Page 46
 1          Joel, go ahead.
 2          MR. WERTZBERGER:  1,550,000.
 3          AUCTIONEER MANNION:  1,550,000 greenback
 4     U.S. dollars.  1,550,000 to Joel.  1,550,000 to
 5     Joel, current bid.
 6          Any further bids?
 7          1,550,000 to Joel.  1,550,000 to Joel.
 8          Maguire, what do we have?  What are we
 9     thinking?
10          1,550,000 to Joel, first call.  1,550,000
11     to Joel, second call.  Third and final call,
12     all finished up, 1,550,000 to Joel, cash
13     component knocked down.
14          Brooklyn Lender knocked down 3,640,000.
15          MR. WERTZBERGER:  I'm sorry?  What did you
16     say about the million to Brooklyn Lender?
17     Knockdown what?
18          AUCTIONEER MANNION:  The way we are doing
19     this is there's a cash component and the credit
20     component, and we're going to keep them
21     separate from now.
22          You won the cash component.  The Brooklyn
23     Lender had a credit bid of 3,640,000.
24          MR. WERTZBERGER:  For the record, of
25     course we earlier raised an objection that
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

Page 47

1    Brooklyn Lender has raised an objection while
2    participating bidding and waiving objection at
3    the same time, and we are preserving our rights
4    as vis-a-vis as relates to that, and of course
5    we bid on behalf of the entity that we
6    submitted our contract for.  Thank you.
7         AUCTIONEER MANNION:  Moving along.  92
8    South 4th Street.  All right.  92 South 4th
9    Street.  Here we are.
10        We are going to ask for opening bid of $1
11   million and we will do $100,000 increments.
12        Once again, this is 92 South 4th Street in
13   Brooklyn, New York.  $1 million.
14        MR. SCHARF:  This is Eli Scharf.  I'll do
15   $1 million.
16        AUCTIONEER MANNION:  Eli, thank you.
17   Scharf.  Got you.  $1 million, right?  $1
18   million to Eli.
19        100,000 increments.  $100,000 increments.
20        1,000,000 Eli.
21        MR. LEIBOWITZ:  Matthew, can you clarify
22   this one?
23        AUCTIONEER MANNION:  92 South 4th Street.
24        MR. LEIBOWITZ:  Okay.  That's what I
25   thought.  Our bid is the same.  It's 3,640,000.

Remote Proceedings Of                                    FINAL COPY
Rosewood Realty Auction                                  January 6, 2022

Page 48

1          AUCTIONEER MANNION:  Understood, Mr.
2     Leibowitz.  3,640,000 Brooklyn Lender for the
3     credit bid.
4          Now, for the cash component, we're
5     currently at 1,000,000 for Eli Scharf.
6     1,000,000, and we are at $100,000 increments.
7          1,000,000 Eli.
8          Any other players?  Joel?
9          MR. WERTZBERGER:  Yeah, one second.  I
10     just need to understand something.  One second.
11          MR. WIDE:  Hello.  This is Frederick Wide.
12     I'll do 1.5 million.
13          THE REPORTER:  Who is that?
14          AUCTIONEER MANNION:  Who is this?
15          MR. WIDE:  Frederick Wide.
16          AUCTIONEER MANNION:  Can you spell your
17     last name?
18          MR. WIDE:  W-i-d-e.
19          AUCTIONEER MANNION:  All right, Mr. Wide.
20     1.5 million, right?  Okay.
21          MR. WIDE:  Correct.
22          AUCTIONEER MANNION:  1,500,000 Mr. Wide.
23          We'll remain at 100,000 increments for
24     now.
25          1,500,000 Mr. Wide.  1,500,000 current

Remote Proceedings Of                                FINAL COPY
Rosewood Realty Auction                            January 6, 2022

---

```
                                              Page 49
 1      bid.
 2           Any advancement?  Joel, what are we
 3      thinking?
 4           MR. WERTZBERGER:  Nothing.
 5           AUCTIONEER MANNION:  1,500,000.  We'll go
 6      to 50,000 increments.
 7           MR. SCHARF:  One-five-five.  This is Eli
 8      Scharf.
 9           AUCTIONEER MANNION:  Eli, 1,550,000.
10      Gotcha.  1,550,000 to Mr. Scharf.
11           MARK:  1,600,000.
12           AUCTIONEER MANNION:  1,600,000 to Mark?
13           MARK:  Yeah.
14           AUCTIONEER MANNION:  1,600,000 to Mark.
15      Correction.  1,600,000 to Mark.
16           $50,000 increments.
17           MR. SCHARF:  This is again Eli Scharf.
18      One-six-five all crash.
19           AUCTIONEER MANNION:  1,650,000 to Mr.
20      Scharf.  Thank you, Mr. Scharf.  1,650,000.
21           Any advancement?  Joel?  Mr. Wide?
22           MR. WIDE:  1.7 million.
23           AUCTIONEER MANNION:  And that's Mr. Wide,
24      correct?
25           MR. WIDE:  Correct.
```

---

JANE ROSE REPORTING                National Court-Reporting Coverage
1-800-825-3341                      janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                       January 6, 2022

```
                                                    Page 50
 1              AUCTIONEER MANNION:  1,700,000 to Mr.
 2      Wide.  1,700,000, current bid.
 3              Go ahead.
 4              MR. LEIBOWITZ:  Matthew, this is still for
 5      92 South 4th Street, yes?
 6              AUCTIONEER MANNION:  Correct.  That's
 7      correct.
 8              1,700,000 is the current cash component
 9      bid for 92 South 4th.
10              Any further bids?
11              DAVID (Maguire Capital):  Maguire.
12      One-seven-five-zero.
13              AUCTIONEER MANNION:  Maguire, 1,750,000.
14      Thank you.  1,750,000 Maguire.
15              50,000 increments.
16              MR. SCHARF:  Eli Scharf.  1.8.
17              AUCTIONEER MANNION:  1,800,000 to Mr.
18      Scharf.  Thank you, Mr. Scharf.  1,800,000.
19      1,800,000 Mr. Scharf.
20              DAVID (Maguire Capital):  1,850,000,
21      Maguire.
22              AUCTIONEER MANNION:  Maguire 1,850,000.
23      Thank you, Maguire.  1,850,000 to Maguire.
24      1,850,000.
25              We will lower the increments to 25,000.
```

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                       January 6, 2022

```
                                            Page 51
 1          $25,000 increments.
 2               MR. SCHARF:  1.9.
 3               AUCTIONEER MANNION:  What did you say?
 4          1.87?  Or what did you say?  1.9?
 5               MR. SCHARF:  One-nine.
 6               AUCTIONEER MANNION:  1,900,000 to Mr.
 7          Scharf.  Thank you.  You were breaking up there
 8          a little bit, but I heard you.
 9               1,900,000 Mr. Scharf.  1,900,000 to Mr.
10          Scharf.
11               Any further bids?
12               1,900,000.
13               DAVID (Maguire Capital):  1,925,000
14          Maguire.
15               AUCTIONEER MANNION:  Maguire, 1,925,000.
16               We'll lower the increments to 25,000,
17          everybody.  25,000 increments.
18               The current bid is 1,925,000 to Maguire.
19          1,925,000 Maguire Capital.
20               Any advancement?  Any bids?
21               Mr. Scharf?  Anybody?  Mr. Wide?  Mark?
22               MR. SCHARF:  Yeah, give me one second.
23               AUCTIONEER MANNION:  Okay.  Take a moment.
24          Not too long, though, please.
25               MR. SCHARF:  Yeah, I'll do -- what are we
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

```
                                              Page 52
 1    up to now?
 2          AUCTIONEER MANNION:  It's currently
 3    1,925,000 to Maguire Capital as the current
 4    cash component bid.
 5          MR. SCHARF:  Okay.  So I'll do
 6    one-nine-five.
 7          AUCTIONEER MANNION:  1,950,000 to Mr.
 8    Scharf.  Thank you, Mr. Scharf.  1,950,000 Mr.
 9    Scharf.
10          MARK:  2,000,000.
11          AUCTIONEER MANNION:  2,000,000 to Mark.
12    2,000,000 to Mark, current bid.
13          Any further bids?  What have we got?  Any
14    advancement?
15          2,000,000 to Mark.
16          DAVID (Maguire Capital):  2,025,000
17    Maguire.
18          AUCTIONEER MANNION:  2,025,000 to Maguire
19    Capital.  Thank you, Maguire.  2,025,000.
20    2,025,000.
21          Eli, what do you think?  Eli?  Mr. Scharf?
22    We're at 2,025,000 for Maguire.  2,025,000
23    Maguire.
24          Any advancement?  Anybody need any time?
25    Two million --
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

```
                                              Page 53
 1            MR. SCHARF:  Yeah, I'll take -- go ahead.
 2            AUCTIONEER MANNION:  What's that?
 3            MR. SCHARF:  I just need one more minute.
 4            AUCTIONEER MANNION:  Okay.  Take one
 5       minute.
 6            MR. SCHARF:  Where are we now, again?
 7            AUCTIONEER MANNION:  We are at 2,025,000
 8       Maguire Capital.
 9            MR. SCHARF:  I'll do 2,050,000.
10            AUCTIONEER MANNION:  Okay.  And that is
11       who?
12            MR. SCHARF:  Eli Scharf again.
13            AUCTIONEER MANNION:  Okay.  2,050,000 to
14       Mr. Scharf.  2,050,000 to Mr. Scharf.
15       2,050,000.
16            DAVID (Maguire Capital):  2,075,000
17       Maguire.
18            AUCTIONEER MANNION:  2,075,000 for Maguire
19       Capital.  Thank you.  2,075,000.  $2,075,000
20       current bid.
21            Any other players?
22            MR. WERTZBERGER:  We have a question
23       because it's been raised to me that both bids,
24       the credit bids on South 4th and Metropolitan
25       are identical number and we just want to make
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                         January 6, 2022

```
                                              Page 54
 1        sure, unequivocally, that it is two separate
 2        bids.
 3             AUCTIONEER MANNION:  These are two
 4        separate bids, yes.
 5             MR. STEIN:  Two separate bids.  The
 6        obligations for both properties are joint and
 7        several.
 8             AUCTIONEER MANNION:  Moving on.
 9             MR. WERTZBERGER:  One second.
10             No, not moving on.  If it's two separate
11        bids, and it's joint and several, they cannot
12        use it twice as credit, so they need to clarify
13        that because it has a huge impact there.
14             MR. STEIN:  No, we do not.  For purposes
15        of bidding, we are allowed to bid up to the
16        maximum amount of our claim for each of the
17        properties that secure our loan.
18             MR. WERTZBERGER:  But you are taking
19        credit twice for the same amount.
20             MR. GOLDWASSER:  Mr. Wertzberger.  Mr.
21        Wertzberger.  Mr. Wertzberger, this is David
22        Goldwasser.
23             For clarity and no ambiguity, they are
24        owed a total amount of their credit bid, which
25        is 3,640,000-some-odd-thousand-dollars.  The
```

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

Page 55

1    combination of the price of 92 South 4th and

2    834 Metropolitan would be one number combined,

3    which would equal that credit bid.

4        So while you are correct, they bid the

5    same amount for each property, they cannot bid

6    it twice.  It's the same amount --

7        MR. WERTZBERGER:  We want to make a

8    combined bid, for both properties, totaling

9    $10,000 over the credit bid in cash.

10       And they have been misleading the auction

11   here because they use the same bid twice, and

12   we caught it.

13       MR. LEIBOWITZ:  We haven't misled

14   anything.  This is our credit.  We can bid it

15   --

16       AUCTIONEER MANNION:  All right.

17   Gentlemen, gentlemen.  If there's going to be

18   discussions about this, after the auction we

19   can deal with that then.

20       MR. WERTZBERGER:  No.  We enter it into

21   the record that they use the same credit bid

22   twice.

23       MR. LEIBOWITZ:  We can do that, which

24   is entire permissible.  It's entirely

25   permissible.  You are shaking your head, but it

JANE ROSE REPORTING                National Court-Reporting Coverage
1-800-825-3341                     janerose@janerosereporting.com

Remote Proceedings Of                        FINAL COPY
Rosewood Realty Auction                      January 6, 2022

```
                                                   Page 56
 1        is entirely permissible.
 2             AUCTIONEER MANNION:  Gentlemen, please.
 3        Please.  We're going to get back --
 4             MR. WERTZBERGER:  For the record, we are
 5        making a $10,000 bid over the credit bid for
 6        these two properties.
 7             AUCTIONEER MANNION:  I've made a note of
 8        that Mr. Wertzberger.  I have that written
 9        down.
10             All right.  But currently, for 92 South
11        4th Street, we have not knocked this down yet.
12        We're still 2,075,000 to Maguire.
13             Is there any additional bids to top that?
14        $25,000 increments.
15             2,075,000.
16             MR. WERTZBERGER:  We are bidding $2.1
17        million in conjunction with our other bid of
18        one-million-five-five for this property.
19             AUCTIONEER MANNION:  All right.  Mr.
20        Wertzberger, we are doing it separately.
21             MR. WERTZBERGER:  We are giving two
22        bids -- we are giving three bids over here.
23        You are right on all three.  1.55 for
24        Metropolitan, 2.1 million for South 4th, and a
25        combined bid $10,000 over the credit bid.
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

                                                    Page 57
```
 1          AUCTIONEER MANNION:  I got 2,100,000 for
 2     South 4th.  Any advancement on 2,100,000?
 3     $2,100,000.
 4          DAVID (Maguire Capital):  2,150,000.
 5          AUCTIONEER MANNION:  2,150,000 to Maguire.
 6     2,150,000 Maguire.
 7          Any further bids?
 8          2,150,000 Maguire Capital.
 9          MR. WERTZBERGER:  One second.
10          AUCTIONEER MANNION:  Take your time.
11     We're currently at 2,150,000.
12          While I wait for him to make a decision on
13     the bid, the next property will be Franklin.
14          Currently we're at 2,150,000 bid by
15     Maguire Capital for 92 South 4th Street.
16          MR. WERTZBERGER:  Matthew, I want to
17     confirm that you accepted as a formal bid our
18     combined bid as the lender presented theirs.
19          AUCTIONEER MANNION:  I'm sorry.  I can't
20     hear you.  It's muffled.
21          MR. WERTZBERGER:  I want to confirm 100
22     percent that you accepted our combined bid for
23     both properties, the $10,000 in cash over the
24     credit bid.
25          AUCTIONEER MANNION:  We are not offering
```

Remote Proceedings Of                        FINAL COPY
Rosewood Realty Auction                       January 6, 2022

Page 58

1    these properties combined for any combined
2    bidding.
3         MR. WERTZBERGER:  To the extent the lender
4    utilized the same debt, like David Goldwasser
5    pointed out, we want to have an increased bid,
6    so just to protect our bid, and we are going to
7    commit to it.
8         MR. GOLDWASSER:  Just for clarity, just --
9    and, again, you are running the auction, Mr.
10   Mannion.
11        Mr. Wertzberger, if you put the two
12   numbers together, it should equal the number.
13   It will be easier for proper accounting.  So
14   if you take your bid on Metropolitan and
15   whatever you bid on South 4th, it should come
16   above the credit bid if that's how you want to
17   do it.  I'm not trying to make it harder for
18   you, but it's easier for clarifying the auction,
19   as opposed to taking a bid that was not
20   anticipated.
21        MR. WERTZBERGER:  Well, we have a bid of
22   $10,000 in cash over the credit bid in combined
23   $3,640,000 for both properties, and we have an
24   independent bid that we hammered down before
25   for 1,150,000, and we are not going to bid

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                              Page 59
 1      anymore separately and independently on the
 2      South 4th property.
 3           AUCTIONEER MANNION:  All right.  Who is
 4      that?  We are going to finish.  If we are going
 5      to make an announcement, we're going to finish
 6      this property and then we can have an
 7      announcement.
 8           2,150,000 Maguire Capital.
 9           Any further bids cash component right now?
10           2,150,000.
11           $25,000 increments.
12           I'll finish up.  2,150,000 Maguire
13      Capital.
14           Anyone else want to bid?
15           MR. WERTZBERGER:  We are going to bid
16      $2,175,000 for this property itself.
17           AUCTIONEER MANNION:  2,175,000 for 92
18      South 40 Street, right, Mr. Wertzberger?
19           MR. WERTZBERGER:  Correct.
20           AUCTIONEER MANNION:  Okay.  2,175,000 to
21      Joel.  2,175,000.
22           Any advancement on 2,175,000?
23           DAVID (Maguire Capital):  2.2 Maguire.
24           AUCTIONEER MANNION:  $2,200,000 Maguire.
25      $2,200,000, current bid.
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                       January 6, 2022

---

Page 60

1          Any further bids?  Joel?

2          2,200,000 Maguire Capital.  2,200,000.

3          Any further bids?  Joel, any interest?

4     You need a minute, or are you all done?

5          MR. WERTZBERGER:  No, I don't need a

6     minute.  We are passing from bidding

7     individually on this property.

8          We have an open bid on this property on

9     those combined.

10         AUCTIONEER MANNION:  $2,200,000 for just

11    92 4th Street.  Maguire Capital, first call.

12    2,200,000 Maguire Capital, 92 South 4th Street.

13         MR. SCHARF:  Can I get 30 seconds?  This

14    is Eli Scharf.

15         AUCTIONEER MANNION:  Yes, take 30 seconds.

16         Everyone, once again, this is a very

17    deliberate auction.  We don't need to rush it.

18    If you need some time, just let me know.

19         MR. SCHARF:  I'll do 2.25.  Is that what

20    we are up to?

21         AUCTIONEER MANNION:  It's currently at

22    2,200,000.  Do you want 2,225,000?

23         MR. SCHARF:  Yes.

24         AUCTIONEER MANNION:  2,225,000 to Mr.

25    Scharf.  2,225,000 Mr. Scharf.

---

Remote Proceedings Of                                    FINAL COPY
Rosewood Realty Auction                                  January 6, 2022

```
                                                  Page 61
 1          DAVID (Maguire Capital):  2,250,000
 2     Maguire.
 3          AUCTIONEER MANNION:  2,250,000 Maguire.
 4     Thank you, Maguire.  2,250,000.  $2,250,000 to
 5     Maguire.
 6          Any further advancement on that?
 7          MR. SCHARF:  I'm out.
 8          AUCTIONEER MANNION:  2,250,000.
 9          Joel, any action on 2,250,000?
10          Anybody need a minute?
11          MR. WERTZBERGER:  We will not be
12     participating.  You don't have to wait for me.
13          AUCTIONEER MANNION:  2,250,000 to Maguire
14     Capital, first call.  2,250,000 to Maguire
15     Capital, second call.
16          Is somebody interested in bidding?
17     There's a hot mike.  Anybody?
18          2,250,000 Maguire Capital, third and final
19     call.  All finished up.  2,250,000 Maguire
20     Capital.  Knocked down 2,250,000 Maguire
21     Capital for the cash component.  Brooklyn
22     Lender submitted a credit bid of $3,640,000.
23          All right.  Moving right along.  We are
24     going to be going to 325 Franklin Avenue.  Once
25     again, this is going to be a separate bid.
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                             Page 62
 1      This is not a combined bid.  This is for 325
 2      Franklin Avenue.  325 Franklin Avenue.  325
 3      Franklin.
 4           We are going to ask for an opening bid of
 5      1,000,000.  Anybody for Franklin Avenue for
 6      1,000,000?
 7           MS. AISNER:  1,000,000.  This is Erica.
 8           AUCTIONEER MANNION:  Erica.  Thank you,
 9      Erica.  1,000,000 to Erica.
10           We'll do $100,000 increments to begin.
11           1,000,000.
12           MR. LEIBOWITZ:  We have a bid to place,
13      Matthew.
14           AUCTIONEER MANNION:  Okay, Brooklyn
15      Lender.
16           MR. LEIBOWITZ:  4,470,000.
17           AUCTIONEER MANNION:  $1,470,000.  That's a
18      credit bid, correct?
19           MR. LEIBOWITZ:  No, I said 4,470,000.
20           AUCTIONEER MANNION:  4,470,000 Brooklyn
21      Lender.  That's a credit bid, correct?
22           MR. LEIBOWITZ:  Yes.
23           AUCTIONEER MANNION:  4,470,000 credit bid
24      Brooklyn Lender.
25           Erica has a million for the cash
```

Remote Proceedings Of                                FINAL COPY
Rosewood Realty Auction                              January 6, 2022

```
                                                    Page 63
 1      component.
 2            Any bids at 1,000,000?  Any bids?
 3            $100,000 increments.
 4            Anybody want 1.1?
 5            DAVID (Maguire Capital):  Is this for 325
 6      Franklin?
 7            AUCTIONEER MANNION:  That's correct.  Yes.
 8            DAVID (Maguire Capital):  We're at
 9      1,100,000 Maguire.
10            AUCTIONEER MANNION:  Dave Maguire, 1.1.
11      1.1 to Maguire.  $1,100,000 to Maguire.
12            MS. AISNER:  We'll do 1.2.  This is Erica.
13            AUCTIONEER MANNION:  Erica, thank you.
14      1.2 million to Erica.  1.2 to Erica.  1,200,000
15      to Erica.
16            Any further bids on 325 Franklin?
17            $1,200,000, fair bid.
18            DAVID (Maguire Capital):  1.3 million
19      Maguire.
20            AUCTIONEER MANNION:  1.3 million Maguire.
21      Thank you.  1.3 million to Maguire.
22            MARK:  1.4 million.
23            AUCTIONEER MANNION:  Who is that?  Mark?
24      Mark.  Thank you, Mark.  1.4 million to Mark.
25            MS. AISNER:  We'll do 1.5.  This is Erica.
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

```
                                              Page 64
 1          AUCTIONEER MANNION:  1.5 to Erica.   Thank
 2     you, Erica.  $1.5 million.  1,500,000.
 3     $1,500,000 to Erica.
 4          DAVID (Maguire Capital):  1.6 Maguire.
 5          AUCTIONEER MANNION:  1.6 Maguire.
 6     1,600,000 Maguire.
 7          Any further bids?
 8          1,600,000.
 9          MR. WERTZBERGER:  We have the same
10     question as before.  Does this bid include debt
11     owed on another property?  The credit bid?
12          AUCTIONEER MANNION:  We are currently
13     auctioning off 325 Franklin Avenue.
14          MR. WERTZBERGER:  Well, what you fail to
15     understand is that if you do it separately, and
16     the lender credit bids combined, there is a
17     great prejudice to the process because the
18     lender will get partially paid off by one
19     property, but they're utilizing credit bid that
20     doesn't take credit for the winning bid on the
21     other property.
22          AUCTIONEER MANNION:  We are auctioning off
23     separately, and then when we are done here
24     we'll have everyone hold off for a minute and
25     we're going to have a brief discussion and then
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

Page 65

1     we will go from there.
2          But they are bidding separately.
3          MR. WERTZBERGER:  Because you bid
4     separately, while Mr. Frankel said it's
5     separately, the lender is utilizing a bid that
6     doesn't take credit for one property on the
7     other, so while I'm going --
8          AUCTIONEER MANNION:  I understand.  I
9     understand your opinion and your thoughts here.
10    We are going to auction off the unit
11    separately.
12         MR. GOLDWASSER:  Again, this is David
13    Goldwasser.
14         Mr. Wertzberger, your comments are clear.
15    They are bidding on a credit bid for 325
16    Franklin and 53 Stanhope.  They are not bidding
17    for the property.  They are using their total
18    amount, as Mr. Stein clarified, it was jointly
19    and severally.
20         We'll be taking each individual property
21    bid, as each bid is on one property, which is
22    owned by one entity, which is its own separate
23    entity within the bankruptcy, and we'll be
24    totaling them and making informed decisions,
25    after all of the bids are in, as to how we'll

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                             Page 66
 1      be splitting it up.
 2           But they are making their point for the
 3      record that they are jointly and severally.
 4      The totality of the two bids could exceed the
 5      amount of their credit bid.
 6           MR. WERTZBERGER:  Well, sir, you are
 7      confusing a bidder because while they said it
 8      jointly and severally, they are bidding
 9      separately.  The debt they announced is jointly
10      and severally, but they are utilizing separate
11      bids for each, which is a very big difference
12      from what you just said, so if you can clarify
13      --
14           MR. GOLDWASSER:  I'm stating for the
15      record the way that it is running.  They are
16      trying to say whatever they are trying to say,
17      and if it is their point to confuse the record,
18      it will be noted.  That's why the judge will
19      make decisions at the end of the day.
20           Understood, Mr. Goldwasser.
21           Mr. Wertzberger, we are going to continue
22      with the auction for the individual building.
23           Once again, we're at 1,600,000 for
24      Maguire.  1,600,000.
25           We'll drop to $50,000 increments 50,000
```

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                        Page 67
 1      increments.  50,000 increments.
 2             1.6 million to Maguire is the current bid.
 3             Any further bids?  Any further bids?
 4             1.6 million.
 5             Anybody need some time?
 6             DAVID (Maguire Capital):  1.65.
 7             AUCTIONEER MANNION:  To Mark, right?
 8             MARK:  Yeah.
 9             AUCTIONEER MANNION:  1,650,000 to Mark.
10      1,650,000 current bid.
11             $50,000 increments.
12             MS. AISNER:  1.7.
13             AUCTIONEER MANNION:  Is that Erica?
14             MS. AISNER:  Yep.
15             AUCTIONEER MANNION:  1.7 to Erica.  Thank
16      you, Erica.  1,700,000 to Erica.  1,700,000
17      Erica.
18             DAVID (Maguire Capital):  1,800,000.
19             AUCTIONEER MANNION:  That is Mark?
20             MARK:  Yep.
21             AUCTIONEER MANNION:  1,800,000 to Mark.
22      Thank you, Mark.  1,800,000 Mark.
23             Any further bids?  Anybody need some time?
24             We'll drop down to $25,000 increments.
25             $25,000 increments.
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                              Page 68
 1              1,800,000 to Mark.
 2              DAVID (Maguire Capital):  1,825,000.
 3              AUCTIONEER MANNION:  Maguire 1,825,000.
 4      1,825,000 Maguire.  1,825,000 Maguire, current
 5      bid.
 6              Any action?
 7              UNIDENTIFIED MALE SPEAKER:  Matthew, I
 8      just want to clarify.  We're still talking
 9      about 325 Franklin?
10              AUCTIONEER MANNION:  That's correct.
11              Current high bid Maguire for the cash
12      component 1,825,000.
13              Any action?  $25,000 increments.
14              MARK:  1.85 million.
15              AUCTIONEER MANNION:  That's Mark?
16              MARK:  Yeah.
17              AUCTIONEER MANNION:  1,850,000 Mark.
18      1,850,000 to Mark.
19              Any further bids?  Anybody else?
20              1,850,000 to Mark, current high bid.
21      1,850,000 to Mark.  1,850,000.
22              Anybody need a moment to think?  Anybody
23      need to call anybody?
24              1,850,000 to Mark.
25              DAVID (Maguire Capital):  1,875,000
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                              Page 69
  1      Maguire.
  2           AUCTIONEER MANNION:  1,875,000 Maguire.
  3      1,875,000 Maguire.  1,875,000 to Maguire.
  4           Anybody want to even it out at 1.9?
  5           MARK:  1.9 million.
  6           AUCTIONEER MANNION:  Who is that?  Mark?
  7      Is that --
  8           MARK:  Mark, yep.
  9           AUCTIONEER MANNION:  Thank you.
 10           1,900,000 to Mark.  Nice even number.
 11      Here we go.  1,900,000 to Mark.  1,900,000 to
 12      Mark, current bid.
 13           Maguire?  Need some time?
 14           DAVID (Maguire Capital):  1,925,000.
 15           AUCTIONEER MANNION:  1,925,000 Maguire.
 16      1,925,000 to Maguire, current bid.
 17           Bidding war here, folks.
 18           1,925,000 to Maguire.
 19           Mark, what are you thinking?  Maguire,
 20      1,925,000.  1,925,000.
 21           Any other players?
 22           MARK:  1.95 million.
 23           AUCTIONEER MANNION:  1.95 million to Mark.
 24      Thank you, Mark.  1,950,000 to Mark.
 25      1,950,000, current bid.
```

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 6, 2022

Page 70

```
1          DAVID (Maguire Capital):  1,975,000.
2          AUCTIONEER MANNION:  1,975,000 to Maguire.
3     Around and around we go.  Where we land, nobody
4     knows.
5          1,975,000 current bid.
6          MARK:  Can we have a minute?
7          AUCTIONEER MANNION:  Yes.  While he's
8     taking a minute, our next property will be 53
9     Stanhope.  53 Stanhope.
10         Almost done, ladies and gentlemen.  We
11    only got two more after this.  Currently on 325
12    Franklin Ave.
13         Current high bid is 1,975,000 to Maguire
14    Capital.
15         MARK:  Matthew, the signal just broke up.
16    Can you repeat that, please?
17         AUCTIONEER MANNION:  Sure.  We are still
18    on 325 Franklin Avenue.  The cash component
19    high bid is 1,975,000 and we have Brooklyn
20    Lender's credit bid of 4,470,000.  Again for
21    325 Franklin Avenue.
22         MARK:  Thank you.
23         Matthew, what's the current increments?
24         AUCTIONEER MANNION:  Currently we're at
25    $25,000 increments.
```

JANE ROSE REPORTING
1-800-825-3341

National Court-Reporting Coverage
janerose@janerosereporting.com

Remote Proceedings Of                           FINAL COPY
Rosewood Realty Auction                         January 6, 2022

```
                                      Page 71
1              1,975,000 Maguire Capital.
2              MARK:  2,025,000.
3              AUCTIONEER MANNION:  2,025,000 to Mark.
4      2,025,000 to Mark.  Current high bid 2,025,000.
5              Maguire Capital, what are we thinking?
6      Want to go higher?
7              2,025,000.
8              DAVID (Maguire Capital):  2.1 million
9      Maguire.
10             AUCTIONEER MANNION:  2.1 million Maguire.
11     2,100,000 Maguire, U.S. mint-printed dollars.
12     Current bid, 2,100,000.
13             $25,000 increments.
14             2,100,000.
15             MARK:  2,125,000.  Mark.
16             AUCTIONEER MANNION:  2,125,000 Mark.
17     2,125,000 to Mark.
18             DAVID (Maguire Capital):  2,150,000
19     Maguire.
20             AUCTIONEER MANNION:  2,150,000.  Is that
21     correct, Maguire Capital?
22             DAVID (Maguire Capital):  Yes.
23             AUCTIONEER MANNION:  2,150,000.  2,150,000
24     Maguire.  2,150,000 Maguire Capital.
25             2,150,000.
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

Page 72

1          Mark, how are we doing?
2          MARK:  2,175,000.
3          AUCTIONEER MANNION:  2,175,000 Mark.
4     2,175,000 to Mark.  2,175,000 Mark.
5          DAVID (Maguire Capital):  2.2 Maguire.
6          AUCTIONEER MANNION:  2.2 million Maguire.
7     2.2 million to Maguire.  2,200,000, high bid,
8     cash component, 325 Franklin Avenue.  Current
9     high bid Maguire Capital, 2,200,000.
10          Any further bids?
11          Mark, I can see your mike is on but I
12     don't hear anything.  You got a bid for us?  We
13     are at 2,200,000 Maguire.
14          MARK:  2,225,000.
15          AUCTIONEER MANNION:  2,225,000.  2,225,000
16     to Mark.  2,225,000.  2,225,000 to Mark,
17     current bid.
18          Maguire, want to jump back in?
19          DAVID (Maguire Capital):  2,250,000.
20          AUCTIONEER MANNION:  There we go.
21     2,250,000 Maguire.  Just got to pull it out of
22     him a little bit.  2,250,000 Maguire Capital.
23     High bid.  2,250,000 Maguire Capital.
24     2,250,000.
25          MARK:  2,275,000.

Remote Proceedings Of                           FINAL COPY
Rosewood Realty Auction                         January 6, 2022

```
                                              Page 73
 1           AUCTIONEER MANNION:  To Mark, right?
 2           MARK:  Yep.
 3           AUCTIONEER MANNION:  2,275,000 Mark.
 4      2,275,000.  2,275,000 to Mark.
 5           Increments remain 25,000.
 6           DAVID (Maguire Capital):  2,300,000
 7      Maguire.
 8           AUCTIONEER MANNION:  2.3 million Maguire
 9      Capital.  2.3 million Maguire Capital.
10      2,300,000 current bid, cash component, to
11      Maguire Capital.
12           Mark, how are we feeling?
13      2,300,000 Maguire Capital.  2,300,000.
14           MARK:  Two-three-two-five.
15           AUCTIONEER MANNION:  2,325,000 Mark.
16      2,325,000 to Mark.
17           Maguire?
18           DAVID (Maguire Capital):  2,350,000
19      Maguire.
20           AUCTIONEER MANNION:  2,350,000 Maguire
21      Capital.  2,350,000 Maguire Capital.  $2.350
22      million Maguire.
23           Mark, thoughts?  Any bids?
24           MARK:  Two-three-seven-five.
25           AUCTIONEER MANNION:  2,375,000 Mark.
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                                Page 74
 1      2,375,000.
 2            At this time we'll drop to $10,000
 3      increments.  Get some more bids going.
 4            2,375,000 to Mark.
 5            DAVID (Maguire Capital):  Two-three-eight-
 6      five.
 7            AUCTIONEER MANNION:  Two-three-eight-five
 8      from Maguire.  Two-three-eight-five Maguire
 9      Capital.
10            Mark, I saw your thing light up.  I think
11      you are muted, unless you are muted on purpose.
12      It's lighting up yellow.
13            MARK:  2,395,000.
14            AUCTIONEER MANNION:  2,395,000 to Mark.
15      2,395,000 to Mark.  2,395,000 to Mark.
16            DAVID (Maguire Capital):  2,405,000
17      Maguire.
18            AUCTIONEER MANNION:  2,405,000 Maguire.
19      $2,405,000 to Maguire.  2,405,000.
20            Mark, what are we thinking?  Currently
21      2,405,000 to Maguire Capital.
22            $10,000 increments.
23            2,405,000.
24            MARK:  2,415,000.
25            AUCTIONEER MANNION:  2,415,000 Mark.
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

                                                    Page 75
1      2,415,000.  2,415,000 to Mark.
2          Maguire Capital, any thoughts?  2,415,000
3      to Mark.  2,415,000 to Mark.
4          $10,000 increments.
5          DAVID (Maguire Capital):  2,425,000
6      Maguire.
7          AUCTIONEER MANNION:  2,425,000 Maguire.
8      Current bid 2,425,000 to Maguire.
9          $10,000 increments remain.
10         2,425,000 Maguire Capital.
11         Mark, any advancement on this one?
12     2,425,000 Maguire.
13         MARK:  2,435,000.
14         AUCTIONEER MANNION:  2,435,000 Mark.
15         $2,435,000 to Mark.  2,435,000 Mark.
16         DAVID (Maguire Capital):  2,445,000.
17         AUCTIONEER MANNION:  Say again.
18         DAVID (Maguire Capital):  2,445,000.
19         AUCTIONEER MANNION:  2,445,000.  2,445,000
20     to Maguire Capital.  2,445,000 Maguire Capital,
21     current bid.  Cash component 2,445,000.
22         Mark, any movement on 2,445,000?
23         MARK:  2,465,000.
24         AUCTIONEER MANNION:  2,465,000.  Big jump.
25     Big jump.  2,465,000.  $2,465,000.

Remote Proceedings Of                                    FINAL COPY
Rosewood Realty Auction                                  January 6, 2022

```
                                                      Page 76
 1             DAVID (Maguire Capital):  2.5 million.
 2             AUCTIONEER MANNION:  2.5 million.  That's
 3        Maguire, correct?
 4             DAVID (Maguire Capital):  Yes.
 5             AUCTIONEER MANNION:  2.5 million Maguire.
 6             2.5 million to Maguire.  2.5 million
 7        Maguire.
 8             MARK:  2.525.
 9             AUCTIONEER MANNION:  2,525,000 to Mark.
10        2,525,000 Mark.  2,525,000 to Mark.
11             DAVID (Maguire Capital):  2,575,000
12        Maguire.
13             AUCTIONEER MANNION:  2,575,000 Maguire.
14             Somebody has got a hot mike, whoever is
15        calling in.  There you go.  You are off now.
16             2,575,000 to Maguire.  2,575,000.
17             Mark, your mike is muted.  I don't know if
18        it is on purpose, but just letting you know.
19             2,575,000 current high bid for 325
20        Franklin Avenue.  Any advancements?
21             2,575,000.
22             MARK:  2,600,000.
23             AUCTIONEER MANNION:  2,600,000 to Mark.
24        2,600,000 Mark.
25             DAVID (Maguire Capital):  2,625,000
```

JANE ROSE REPORTING                National Court-Reporting Coverage
1-800-825-3341                     janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                          Page 77
 1      Maguire.
 2           AUCTIONEER MANNION:  2,625,000 Maguire.
 3      Here we go.  Quick bids.  Quick bids.
 4      2,625,000 Maguire.  2,625,000 Maguire for 325
 5      Franklin Avenue.  2,625,000 Maguire.
 6      2,625,000.
 7           Mark, any action?
 8           2,625,000 from Maguire Capital for 325
 9      Franklin Avenue.  2,625,000 Maguire Capital.
10           Mark, you are still muted.  It's turning
11      orange.  You are trying to talk.  There we go.
12           MARK:  We are not going to be bidding
13      further.
14           AUCTIONEER MANNION:  2,625,000 to Maguire
15      Capital.  2,625,000 Maguire Capital, first
16      call.  Any further bidders?
17           2,625,000 Maguire Capital, second call.
18      All finished up.  2,625,000.  2,625,000 Maguire
19      Capital, third and final call.  All finished
20      up.  2,625,000 Maguire Capital.  Knockdown cash
21      component 2,625,000.
22           There's also the credit bid of 4,475,000
23      Brooklyn Lender.  Thank you.
24           Moving on.  We got 53 Stanhope.  Only two
25      properties left, everybody.  53 Stanhope
```

Remote Proceedings Of                                    FINAL COPY
Rosewood Realty Auction                                  January 6, 2022

```
                                                          Page 78
 1        Street, Brooklyn, New York.
 2             We are going to start with a -- we are
 3        going to ask for 775,000.  775,000 for 53
 4        Stanhope.  Anybody want to take 775?
 5             DAVID (Maguire Capital):  Maguire 775.
 6             AUCTIONEER MANNION:  Maguire Capital 775.
 7             We will do $25,000 increments.  53
 8        Stanhope.
 9             MR. LEIBOWITZ:  Brooklyn Lender 4,470,000.
10             AUCTIONEER MANNION:  4,470,000.  Brooklyn
11        Lender.
12             Credit bid, correct?
13             MR. LEIBOWITZ:  Yes.
14             AUCTIONEER MANNION:  Credit bid
15        $4,470,000, cash component for 53 Stanhope.
16             We have Maguire Capital at 775,000.
17             Will do $50,000 increments to start.  We
18        will then adjust that, if necessary.  50,000
19        increments to start.
20             53 Stanhope.  Current bid 775 Maguire
21        Capital.
22             Next bid would be 825.
23             MS. AISNER:  We'll go to 825.  This is
24        Erica.
25             AUCTIONEER MANNION:  Erica, 825.  Thank
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

```
                                            Page 79
 1       you, Erica.  825,000 Erica.
 2            DAVID (Maguire Capital):  850 Maguire.
 3            AUCTIONEER MANNION:  Maguire.  We are
 4       doing $50,000 increments.
 5            DAVID (Maguire Capital):  25.
 6            AUCTIONEER MANNION:  Yeah, we had 825.
 7       50,000 increments would be 875.
 8            DAVID (Maguire Capital):  You said 25,000?
 9            AUCTIONEER MANNION:  Yeah, I changed it
10       before the first bid to 50,000.
11            DAVID (Maguire Capital):  Okay.  I'm
12       holding right now.
13            AUCTIONEER MANNION:  Okay.  You're
14       holding -- so 825 to Erica is the current high
15       bid.
16            DAVID (Maguire Capital):  825 to Erica,
17       yes.
18            AUCTIONEER MANNION:  Okay.  825 to Erica.
19       Any advancement 825 to Erica?  $50,000
20       increments.  825 to Erica.
21            We will lower to $25,000 increments now.
22       $25,000 increments.
23            825 to Erica.
24            DAVID (Maguire Capital):  850 Maguire.
25            AUCTIONEER MANNION:  850 Maguire.
```

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                            Page 80
 1          MS. AISNER:  875.
 2          AUCTIONEER MANNION:  875 to Erica.  875 to
 3     Erica.
 4          DAVID (Maguire Capital):  900.
 5          AUCTIONEER MANNION:  To Maguire.  900,000
 6     Maguire.  900,000 Maguire.
 7          MS. AISNER:  925.
 8          AUCTIONEER MANNION:  925 Erica.  925,000
 9     to Erica.
10          DAVID (Maguire Capital):  950.
11          AUCTIONEER MANNION:  950 Maguire.  Thank
12     you, Maguire Capital.  950 Maguire.
13          MS. AISNER:  975.
14          AUCTIONEER MANNION:  975 Erica.
15          We are going to see 1,000,000.  Who wants
16     it?  975 to Erica.
17          975,000 Erica.  975,000 Erica.  53
18     Stanhope Street, Brooklyn, New York.
19          DAVID (Maguire Capital):  $1 million
20     Maguire.
21          AUCTIONEER MANNION:  $1 million Maguire
22     Capital.  Thank you, Maguire Capital.  $1
23     million Maguire.  $1 million for Maguire.
24          MS. AISNER:  May I have a minute?
25          AUCTIONEER MANNION:  Yes.
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

```
                                         Page 81
 1          Joel, were you trying to talk or is that
 2     just a mike?  I think it's just his mike.
 3          MS. AISNER:  We are going to pass.
 4          AUCTIONEER MANNION:  $1,000,000 to Maguire
 5     Capital.
 6          Any further bids on this one?
 7          1,000,000 to Maguire.  1,000,000 to
 8     Maguire.
 9          We'll go to $10,000 increments.
10          1,000,000 to Maguire.  1,000,000 to
11     Maguire.
12          Anybody thinking about it?  Anybody need
13     time?
14          1,000,000 Maguire.  $1 million to Maguire
15     current bid.  1,000,000 Maguire, first call.
16     $1 million to Maguire, second call.  Third and
17     final call, $1 million Maguire.  Knocked down
18     to Maguire for $1 million cash component.
19          Also recognizing the credit bid of
20     Brooklyn Lender for $4,470,000.  Thank you.
21          Everybody, getting a little slow here.  We
22     are going to take a brief recess.  We are going
23     to take ten minutes right now, so come back
24     here -- I have 4:08 p.m.  Come back here at
25     four --
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

Page 82

1         DAVID (Maguire Capital):  And I believe
2    there's one property left, correct?
3         AUCTIONEER MANNION:  Yes.
4         DAVID (Maguire Capital):  So can we just
5    do it now?  A break would not make sense.
6         AUCTIONEER MANNION:  There's a discussion
7    we need to have.  It will take five minutes, so
8    we are asking for a quick ten-minute break.  It
9    might even be quicker than that, but I'm going
10   to ask everyone to come back here no later than
11   4:20 and we'll get going again and we'll knock
12   out this last property.
13        (Break taken.)
14        AUCTIONEER MANNION:  All right.  Has
15   everyone traipsed back?  We are going to start
16   here momentarily.
17        We have one more property left, 263 18th
18   Street.  It's 263 18th Street.  Last property
19   for the day.
20        Okay.  Let's give everyone another minute
21   to come back.  We don't want to get started
22   without everyone present.
23        Maguire Capital, do you have a
24   representative here?
25        DAVID (Maguire Capital):  Yes.

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

---

                                                       Page 83

```
 1            AUCTIONEER MANNION:  Erica, are you

 2      present?

 3            MS. AISNER:  I'm present, yes.

 4            AUCTIONEER MANNION:  Mark, or someone

 5      bidding on behalf of Mark?

 6            MARK:  I'm here.

 7            AUCTIONEER MANNION:  Eli Scharf still with

 8      us?  Jaim Schiff?

 9            MR. SCHARF:  Yes.

10            AUCTIONEER MANNION:  Okay.  Is Mr. Wide

11      still here?  I think he left.

12            Give everyone a minute.

13            Is anybody present aware of anyone who is

14      intending to bid who had left and did not

15      return yet, if we are waiting on anybody?

16            All right.  263 18th Street is the last

17      property for today.  We're going to open the

18      bidding at $500,000.

19            $100,000 increments.

20            Once again, this is 263 18th Street,

21      Brooklyn, New York.  We will start at $500,000.

22      Increments are $100,000 to begin.

23            Anybody want 500,000?

24            DAVID (Maguire Capital):  Maguire 500,000.

25            AUCTIONEER MANNION:  Maguire 500.  Thank
```

---

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                       January 6, 2022

```
                                                  Page 84
 1      you.  500,000 Maguire.
 2           MR. LEIBOWITZ:  Brooklyn Lender 2,000,000.
 3           AUCTIONEER MANNION:  That's a credit,
 4      correct, Brooklyn Lender?
 5           MR. LEIBOWITZ:  Yes.
 6           AUCTIONEER MANNION:  2,000,000 Brooklyn
 7      Lender.
 8           MR. WERTZBERGER:  1,000,000 on behalf of
 9      our entity.
10           AUCTIONEER MANNION:  Is that Joel?
11           MR. WERTZBERGER:  Yep.
12           AUCTIONEER MANNION:  How much?
13           MR. WERTZBERGER:  1,000,000 cash bid on
14      behalf of our entity.
15           AUCTIONEER MANNION:  1,000,000.  1,000,000
16      to Joel's entity.  $1 million Joel.
17           Remaining $100,000 increments for now.
18           $1 million Joel.
19           MR. SCHARF:  Eli Scharf 1.25 million.
20           AUCTIONEER MANNION:  Eli, 1.25.  Thank
21      you.  1,250,000 Eli.
22           $100,000 increments.  1,250,000 Eli.
23      1,250,000 Eli.
24           We'll drop down to $50,000 increments.
25           $50,000 increments.
```

Remote Proceedings Of                                    FINAL COPY
Rosewood Realty Auction                                  January 6, 2022

                                                              Page 85
1              1,250,000 to Eli.
2              MR. WERTZBERGER:  1.3 million.  Joel
3        Wertzberger.
4              AUCTIONEER MANNION:  1,300,000 to Joel's
5        entity.  1,300,000 Joel.  1,300,000.
6              $50,000 increments.
7              DAVID (Maguire Capital):  1,350,000
8        Maguire.
9              AUCTIONEER MANNION:  1,350,000 Maguire.
10       1,350,000 Maguire Capital.  1,350,000, current
11       bid.
12             Any advancement on 1,350,000?
13             $25,000 increments.
14             We are at 1,350,000 for Maguire.  $25,000
15       increments.
16             MARK:  One-three-seven-five Mark.
17             AUCTIONEER MANNION:  Mark, welcome.
18       One-three-seven-five.  Got it.  1,375,000 Mark.
19       1,375,000 to Mark, cash component.  1,375,000
20       Mark.
21             $25,000 increments.
22             Any action?  Any advancement?
23             Maguire, need some time?
24             DAVID (Maguire Capital):  What's the bid
25       at?

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                                    Page 86
 1              AUCTIONEER MANNION:  1,375,000 to Mark.
 2       $25,000 increments.
 3              DAVID (Maguire Capital):  1.4 million.
 4              AUCTIONEER MANNION:  1,400,000 Maguire.
 5       1,400,000 Maguire.  1,400,000 current bid
 6       Maguire.
 7              We'll go to $10,000 increments.
 8              Any action on 1,400,000 current bid by
 9       Maguire?  1,400,000 for 263 18th Street,
10       Brooklyn.
11              $10,000 increments.
12              1,400,000 Maguire.
13              Mark, need some time?
14              DAVID (Maguire Capital):  Matthew, this is
15       a little long, no?
16              AUCTIONEER MANNION:  It is, but we are
17       trying to get the best price I can, and I
18       afford everybody the opportunity to have some
19       time, so I'm affording Mark some time here if
20       he's thinking about it.
21              Mark, are you thinking about it or are you
22       out?
23              MARK:  One-four-two.
24              AUCTIONEER MANNION:  1,420,000.  1,420,000
25       to Mark.
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

```
                                              Page 87
 1            DAVID (Maguire Capital):  How long do I
 2       have now?
 3            AUCTIONEER MANNION:  Is that Maguire?
 4            DAVID (Maguire Capital):  I'm wondering
 5       how long I have to put in my next bid.
 6            AUCTIONEER MANNION:  As long as I gave
 7       Mark, so I think that was about two-and-a-half
 8       minutes.  Don't keep me on the edge of my seat,
 9       though.  Last one.
10            DAVID (Maguire Capital):  Okay.
11       Two-and-a-half minutes.
12            AUCTIONEER MANNION:  1,420,000 to Mark,
13       current bid.  263 18th Street Brooklyn.
14            DAVID (Maguire Capital):  How much longer
15       do I have?
16            AUCTIONEER MANNION:  I wasn't tracking
17       your exact time.  I think it is up, though.  Or
18       about to be.
19            DAVID (Maguire Capital):  What's the bid
20       at?
21            AUCTIONEER MANNION:  1,420,000 to Mark.
22            DAVID (Maguire Capital):  1,430,000.
23            AUCTIONEER MANNION:  1,430,000 to Maguire.
24            MARK:  1,440,000.
25            AUCTIONEER MANNION:  1,440,000 to Mark.
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                                    Page 88
 1      Here we go.  1,440,000 to Mark.
 2           DAVID (Maguire Capital):  I only have ten
 3      seconds?
 4           AUCTIONEER MANNION:  I think that's right,
 5      yes.
 6           DAVID (Maguire Capital):  1,450,000 to
 7      Maguire Capital.
 8           AUCTIONEER MANNION:  1,450,000 to Maguire
 9      Capital.  Thank you, Maguire Capital.
10      1,450,000 Maguire.
11           Mark, what are you thinking?
12           MARK:  1,460,000.
13           AUCTIONEER MANNION:  1,460,000 to Mark.
14      1,460,000 to Mark.
15           $10,000 increments.
16           DAVID (Maguire Capital):  1,470,000.
17           AUCTIONEER MANNION:  1,470,000 Maguire.
18      1,470,000.
19           MARK:  1,480,000.
20           AUCTIONEER MANNION:  1,480,000 Mark.
21           Someone else talking right there?
22           1,480,000 Mark.
23           Home stretch, ladies and gentlemen.
24      1,480,000 to Mark.
25           1,480,000, current bid.
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

```
                                                    Page 89
 1          DAVID (Maguire Capital):  1,490,000.
 2          AUCTIONEER MANNION:  1,490,000 to Maguire.
 3      Thank you, Maguire.  1,490,000 Maguire Capital.
 4      1,490,000 to Maguire.
 5          MARK:  1.5 million.
 6          AUCTIONEER MANNION:  Mark, right?
 7          MARK:  Yeah.
 8          AUCTIONEER MANNION:  1,500,000 Mark.
 9          1,500,000 even dollars to Mark.
10          264 18th Street, Brooklyn.
11          DAVID (Maguire Capital):  1,510,000.
12          AUCTIONEER MANNION:  1,510,000 to Maguire.
13      1,510,000.
14          MARK:  One-five-twenty.
15          AUCTIONEER MANNION:  1,520,000 Mark.
16          DAVID (Maguire Capital):  1,530,000.
17          AUCTIONEER MANNION:  1,530,000 Maguire.
18      Bidding war.  Bidding war.  1,530,000 Maguire.
19          What do we have next?
20          1,530,000 is the current bid.
21          MARK:  1,540,000.
22          AUCTIONEER MANNION:  1,540,000 Mark.
23          DAVID (Maguire Capital):  1,550,000.
24          AUCTIONEER MANNION:  What's that?  You say
25      550?
```

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                       janerose@janerosereporting.com

Remote Proceedings Of                      FINAL COPY
Rosewood Realty Auction                    January 6, 2022

```
                                                 Page 90
 1          DAVID (Maguire Capital):  Sure.
 2          AUCTIONEER MANNION:  1,550,000 Maguire.
 3     Sorry.  Yeah, 1,550,000 Maguire.  Got it.
 4     1,550,000 Maguire.  1,550,000 current bid to
 5     Maguire Capital.  1,550,000 Maguire.
 6          MARK:  1,560,000.
 7          AUCTIONEER MANNION:  Mark 1,560,000.
 8     Thank you.
 9          DAVID (Maguire Capital):  1,570,000
10     Maguire.
11          AUCTIONEER MANNION:  1,570,000 Maguire.
12     1,570,000 Maguire.  1,570,000, current bid.
13          Any advancement, Mark?  Any advancement on
14     1,570,000?
15          MARK:  One-five-ninety.
16          AUCTIONEER MANNION:  One-five-ninety.  Big
17     jump.  1,590,000.  Big jump for Mark.
18     1,590,000.
19          DAVID (Maguire Capital):  One-six.
20          AUCTIONEER MANNION:  1,600,000 Maguire.
21     Thank you.  1,600,000.
22          What's that?
23          1,600,000 Maguire Capital.
24          It's all up to you, Mark, or anyone else
25     that wants to bid.
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

```
                                            Page 91
 1              MARK:  I think we're good.
 2              AUCTIONEER MANNION:  1,600,000 Maguire
 3       Capital.  Any further bidders?
 4              1,600,000 Maguire Capital, 263 18th
 5       Street, Brooklyn.
 6              Going once.  All finished up.  1,600,000,
 7       second call.  Third and final call, $1,600,000
 8       Maguire.  All said, all finished up.
 9       $1,600,000 to Maguire.  Knocked down for the
10       cash component.
11              Note for the record as well Brooklyn
12       Lender's credit bid of 2,000,000.
13              All right.  That concludes the
14       individual --
15              MR. SCHARF:  Wait.  Hello?
16              AUCTIONEER MANNION:  Yep.
17              MR. SCHARF:  Oh, I got cut off.  It's Eli
18       Scharf.
19              AUCTIONEER MANNION:  Eli Scharf, you got
20       cut off?
21              MR. SCHARF:  Yeah.  Yeah.  I've been
22       trying to put in a bid and then my phone kept
23       knocking out.
24              AUCTIONEER MANNION:  Eli, let's talk
25       off-line after this, okay?
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

```
                                              Page 92
 1          MR. SCHARF:  Okay.  All right.
 2          AUCTIONEER MANNION:  We knocked it down,
 3     so...
 4          MR. SCHARF:  Where did it end up trading
 5     because my phone kept coming in and out?
 6          AUCTIONEER MANNION:  1,600,000.
 7          MR. SCHARF:  Oh.  I mean, is it too late
 8     to put in a bid?
 9          AUCTIONEER MANNION:  It's already been
10     knocked down.  We'll have to get back to you in
11     a few minutes.
12          Everyone, please note that that concludes
13     the individual auction.  Please don't go
14     anywhere.  We are going to have a 30-minute
15     recess where we are going to be discussing some
16     topics, especially the aggregate amount of the
17     bid compared to the bulk bid.
18          So we are going to take a 30-minute
19     recess.
20          Mr. Frankel, you can please confirm that
21     is the correct amount of time that we need.  If
22     that is the case, I have 4:40 right now, so
23     that would be 5:10.  5:10 p.m. link back up at
24     this WebEx meeting.
25          If you need me to send this invitation to
```

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

                                                    Page 93
1       you again, just let me know.  You can send me
2       an email at info@jpandr.com.  Once again that's
3       info@jpandr.com, if you get cut off and you
4       need me to send you the invitation directly.
5            With that said, Mr. Frankel, do you have
6       anything to say before we come back here in 30
7       minutes?
8            MR. FRANKEL:  No, but can we just stay
9       logged on for the 30 minutes?
10           AUCTIONEER MANNION:  Yes, I'll keep the
11      recording going and, yes, everyone can stay
12      logged on.  I'm not going to leave the room or
13      disband the room, so everyone can stay right
14      here.
15           MS. AISNER:  Mark, before we break, can
16      you just -- for those of us that are
17      representing unsuccessful bidders, can you just
18      tell us how the deposits are going to be
19      returned?  I don't think I need to stay on for
20      the conclusion.
21           MR. FRANKEL:  They will be returned -- I
22      think were all wired, so I assume they'll all
23      be returned by wire.
24           MS. AISNER:  Okay.
25           AUCTIONEER MANNION:  So, everyone, please

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 6, 2022

Page 94

1    also be aware we may be contacting you on an
2    individual basis to discuss what's transpired,
3    et cetera.
4         MR. WERTZBERGER:  Could you agree to send
5    an email because I just can't hang around for a
6    half-hour?
7         AUCTIONEER MANNION:  An email containing
8    what?  The wrap-up information, or what?
9         MR. WERTZBERGER:  If you need us back for
10   whatever reason here on this call, to notify us
11   because I'm just not going to wait around for
12   another half-hour.
13        AUCTIONEER MANNION:  If you can provide me
14   your contact information, I can give you a call
15   when we are back.
16        MR. WERTZBERGER:  If needed, you know.
17        AUCTIONEER MANNION:  Sure.  You can direct
18   message me on the app.
19        MR. WERTZBERGER:  Okay.  Thank you.
20        (Break taken.)
21        MR. FRANKEL:  All right.  We spoke over
22   the break with Brooklyn Lender, and we are
23   going to try to resolve the objections that
24   they put on the record so that we can complete
25   the auction without any further objections, and

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

```
                                          Page 95
 1      we are going to adjourn this auction to
 2      tomorrow at 11:00.
 3           MS. AISNER:  If I may, I just wanted to
 4      state on the record, and for the record, FREO's
 5      position that they do think this has been a
 6      highly irregular process.  They want to reserve
 7      all their rights and objections that the
 8      procedures have been improper here and
 9      irregular, and of course just reserve all
10      rights and objections generally as to the
11      auction and the results of that auction.
12           AUCTIONEER MANNION:  Understood.
13           All right.  Okay.  Mr. Frankel, do you
14      have anymore comments before we go off the
15      record?
16           MR. FRANKEL:  No.
17           AUCTIONEER MANNION:  All right.  We'll be
18      ending the recording now.  You can go off the
19      record now as well.
20           (The proceedings adjourned at 6:41 p.m.)
21
22
23
24
25
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 6, 2022

```
                                           Page 96
 1                REPORTER'S CERTIFICATE
 2
 3   State of Florida)
 4   County of Manatee)
 5
 6        I, Kathleen K. Ohman, Registered Professional
 7   Reporter, certify that I was authorized to and did
 8   stenographically report the foregoing proceedings
 9   and that the transcript is a true and complete
10   record of my stenographic notes.
11
12        DATED this 9thday of January 2022.
13
14
15        _____
16             Kathleen K. Ohman, RMR
17
18
19
20
21
22
23
24
25
```

Remote Proceedings Of
Rosewood Realty Auction

**A**

**Abe** 36:11
**ability** 17:4 18:19
**accepted** 57:17,22
**account** 17:16
**accounting** 58:13
**acknowledge** 4:20
**action** 33:24 43:15
   61:9 68:6,13 77:7
   85:22 86:8
**actual** 8:14
**add** 13:5
**addition** 6:15
**additional** 56:13
**adjourn** 95:1
**adjourned** 95:20
**adjust** 78:18
**adjustment** 14:20
**adjustments** 14:21
**administrative** 19:4
**ado** 20:6
**advance** 17:20
**advancement** 38:1,14
   40:22 49:2,21 51:20
   52:14,24 57:2 59:22
   61:6 75:11 79:19
   85:12,22 90:13,13
**advancements** 76:20
**Affairs** 7:16
**afford** 86:18
**affording** 86:19
**aggregate** 5:4 6:8,12
   10:24 11:2,4 92:16
**agree** 94:4
**agreed** 14:7 21:13
**ahead** 4:5 9:5 21:20
   37:22 46:1 50:3 53:1
**Aisner** 14:5 33:1,3,3,4
   39:24,25 40:10,19
   41:23 62:7 63:12,25
   67:12,14 78:23 80:1
   80:7,13,24 81:3 83:3
   93:15,24 95:3
**allow** 31:11
**allowed** 54:15
**ambiguity** 54:23
**amended** 18:24
**amount** 11:10,19
   12:11,14,15,25,25
   19:4,7,15,19 21:11
   54:24 55:5,6 65:18
   66:5 92:16,21
**amounts** 10:23,24
   11:17 29:18
**announce** 6:11 8:4
**announced** 5:2,7,25

33:8 66:9
**announcement** 59:5,7
**announcements**
   19:24
**answer** 24:15 29:13
   29:14,25 30:13
**answers** 7:5
**anticipated** 58:20
**anybody** 25:24 26:17
   26:17 31:23 39:23
   51:21 52:24 61:10
   61:17 62:5 63:4 67:5
   67:23 68:19,22,22
   68:23 69:4 78:4
   81:12,12 83:13,15
   83:23
**anymore** 59:1 95:14
**apologies** 21:19
**apologize** 30:18
**app** 94:18
**appear** 16:22
**APPEARANCES** 2:1
**appeared** 19:16
**apples** 10:22,22 12:12
   12:12 13:11,11
**apply** 14:18 22:5
**approval** 5:6,20 24:25
**approved** 4:13,24 25:4
**April** 18:25
**aside** 12:8 13:7 28:12
   31:10
**asked** 16:2 29:7
**asking** 82:8
**assets** 10:14
**assume** 93:22
**assuming** 11:25
**as-is** 13:15 14:21,25
**attached** 9:14
**auction** 1:1,4,10 5:16
   7:18,21 8:3 9:20
   10:3 13:10 16:7
   17:10,17,21 20:5,6,7
   20:16,17,18,18
   22:13 25:10,20 28:4
   30:6 31:13 35:21
   44:6 55:10,18 58:9
   58:18 60:17 65:10
   66:22 92:13 94:25
   95:1,11,11
**auctioneer** 1:13 2:4
   4:1,5,11 5:3 6:10,21
   6:22 7:12,16 8:11,16
   8:19 11:7,19,24
   13:19 14:3 15:11
   16:17,19 19:11,23
   20:2,24 21:4,17 22:6
   22:11,19,25 23:3,7

23:11,18 24:1,13,17
   26:13,24 27:2,5,9,14
   27:18 28:2,19,23
   29:4,23 30:11,20,24
   32:2,5,10,13,16,19
   33:2,5,10,18,21 34:6
   35:4,16,25 36:2,9,13
   36:16,19,22,24 37:2
   37:4,6,9,12,21,24
   38:5,8,11,20 39:13
   39:17 40:1,8,11,17
   40:20,25 41:4,8,10
   41:18,24 42:2,20
   43:2,11,19,22 44:7
   44:10,16,23 45:1,8
   45:14,16,20,23 46:3
   46:18 47:7,16,23
   48:1,14,16,19,22
   49:5,9,12,14,19,23
   50:1,6,13,17,22 51:3
   51:6,15,23 52:2,7,11
   52:18 53:2,4,7,10,13
   53:18 54:3,8 55:16
   56:2,7,19 57:1,5,10
   57:19,25 59:3,17,20
   59:24 60:10,15,21
   60:24 61:3,8,13 62:8
   62:14,17,20,23 63:7
   63:10,13,20,23 64:1
   64:5,12,22 65:8 67:7
   67:9,13,15,19,21
   68:3,10,15,17 69:2,6
   69:9,15,23 70:2,7,17
   70:24 71:3,10,16,20
   71:23 72:3,6,15,20
   73:1,3,8,15,20,25
   74:7,14,18,25 75:7
   75:14,17,19,24 76:2
   76:5,9,13,23 77:2,14
   78:6,10,14,25 79:3,6
   79:9,13,18,25 80:2,5
   80:8,11,14,21,25
   81:4 82:3,6,14 83:1
   83:4,7,10,25 84:3,6
   84:10,12,15,20 85:4
   85:9,17 86:1,4,16,24
   87:3,6,12,16,21,23
   87:25 88:4,8,13,17
   88:20 89:2,6,8,12,15
   89:17,22,24 90:2,7
   90:11,16,20 91:2,16
   91:19,24 92:2,6,9
   93:10,25 94:7,13,17
   95:12,17
**auctioning** 8:1 64:13
   64:22
**Auctions** 2:6

**audio** 4:2 19:6
**authorized** 96:7
**Ave** 45:2 70:12
**Avenue** 2:13 20:9,10
   20:12,12,13 25:11
   25:14,15,16,16,18
   25:19,25 26:2 28:17
   31:1,2,3,3,3,4,9,19
   31:22,22 32:24
   34:17,18 35:19,20
   35:22 39:7,8 42:9,10
   42:15,22,24 43:4,7
   61:24 62:2,2,5 64:13
   70:18,21 72:8 76:20
   77:5,9
**aware** 11:9 12:4 83:13
   94:1
**a.m** 9:21

**B**

**back** 21:19 43:5 45:9
   56:3 72:18 81:23,24
   82:10,15,21 92:10
   92:23 93:6 94:9,15
**bankruptcy** 4:13 5:6
   5:20 9:2 18:18 24:25
   65:23
**Barely** 22:25
**bases** 11:2
**basis** 11:1,4 13:16
   19:8 94:2
**beat** 21:10
**beginning** 4:3
**behalf** 9:8 36:11,11
   37:6 47:5 83:5 84:8
   84:14
**believe** 13:19 15:8
   82:1
**benefit** 6:13 11:3 14:3
**Benson** 9:8
**best** 6:2 10:16 86:17
**better** 23:10 28:20,22
   29:4
**bid** 4:21,22 5:1,16,24
   6:8,8,11 7:2,2,6,24
   8:5 9:14 10:11,19,23
   11:10,14,15,20 12:5
   12:6,15,18,19,21
   13:2,5,8,14,14,18,22
   15:20,21 16:3,10,24
   17:6 18:13,17 19:21
   20:21 21:9,10,10,11
   21:11,14,15 22:4,8
   22:13 23:19,20,21
   24:10,19 27:6,10,14
   28:6,8,9 29:11,22
   30:23 31:5,6,24 32:1

32:4,12,20 33:1,4,9
   33:15,23 35:24 37:9
   37:12,13,14,15,25
   38:15 39:11,12,16
   39:18,18 40:12,21
   41:3,4 42:7,12 43:10
   43:23,23 44:3,8,13
   44:13,14,20,21,22
   44:24 45:3,10,14,17
   46:5,23 47:5,10,25
   48:3 49:1 50:2,9
   51:18 52:4,12 53:20
   54:15,24 55:3,4,5,8
   55:9,11,14,21 56:5,5
   56:17,25,25 57:13
   57:14,17,18,22,24
   58:5,6,14,15,16,19
   58:21,22,24,25
   59:14,15,25 60:8
   61:22,25 62:1,4,12
   62:18,21,23 63:17
   64:10,11,19,20 65:3
   65:5,15,21,21 66:5
   67:2,10 68:5,11,20
   69:12,16,25 70:5,13
   70:19,20 71:4,12
   72:7,9,12,17,23
   73:10 75:8,21 76:19
   77:22 78:12,14,20
   78:22 79:10,15
   81:15,19 83:14
   84:13 85:11,24 86:5
   86:8 87:5,13,19
   88:25 89:20 90:4,12
   90:25 91:12,22 92:8
   92:17,17
**bidder** 4:19 5:13,18
   6:7 8:6,7 13:21
   14:11,13,19 16:25
   17:9,17 18:7 66:7
**bidders** 4:15,18 5:14
   5:18 8:23 10:8 13:17
   16:12,15,21 17:3,5
   17:14,18 18:1 77:16
   91:3 93:17
**bidding** 4:11,12,13,23
   4:23,24 5:22,23 8:14
   8:24 10:21 13:20
   15:18,22 20:16,19
   22:12 26:9 29:21
   35:13 39:9 41:6 47:2
   54:15 56:16 58:2
   60:6 61:16 65:2,15
   65:16 66:8 69:17
   77:12 83:5,18 89:18
   89:18
**bids** 5:2,4,25 6:1,2,15

19-23013-rdd   Doc 342   Filed 01/12/22   Entered 01/12/22 15:24:31   Main Document
Pg 270 of 347

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 6, 2022

Page 98

7:1,8 10:25 11:1,4
11:13,14,16 12:10
13:4,15 16:12 20:22
22:14,22 25:24,24
27:20,22 32:19,24
33:24 34:1 36:7
37:17,17,19 39:21
41:12,12 46:6 50:10
51:11,20 52:13
53:23,24 54:2,4,5,11
56:13,22,22 57:7
59:9 60:1,3 63:2,2
63:16 64:7,16 65:25
66:4,11 67:3,3,23
68:19 72:10 73:23
74:3 77:3,3 81:6
**big** 66:11 75:24,25
90:16,17
**bit** 6:24 51:8 72:22
**bottom** 26:7
**bound** 4:21
**break** 82:5,8,13 93:15
94:20,22
**breaking** 51:7
**break-up** 6:10 14:8,9
14:17 21:7,12,24
22:3
**brief** 35:18 38:9,9
64:25 81:22
**broke** 70:15
**broker** 11:11 12:3,17
12:24
**brokerage** 12:22
**Brooklyn** 4:8 6:13 9:9
9:13 10:12,18 14:18
17:1,5 18:8,14 19:9
19:18,20 21:23,23
22:1,4,6 27:3 30:7
30:10 31:4,9 32:14
32:16,19,21 34:11
34:14 35:3 37:6,13
37:14 39:3,13,18
41:5 42:10 43:20,23
44:2 46:14,16,22
47:1,13 48:2 61:21
62:14,20,24 70:19
77:23 78:1,9,10
80:18 81:20 83:21
84:2,4,6 86:10 87:13
89:10 91:5,11 94:22
**building** 1:5 7:19
66:22
**buildings** 7:23
**bulk** 6:8 7:21 20:4,7
20:16,17,18 22:13
25:5 92:17
**button** 26:7

**buyer's** 11:20,22,23
11:25

### C

**calculated** 12:25
**call** 23:12,23 34:7,8,8
38:3,17,23,24,25
42:3,3,4 46:10,11,11
60:1 61:14,15,19
68:23 77:16,17,19
81:15,16,17 91:7,7
94:10,14
**calling** 76:15
**Capital** 26:20,23,23,24
26:25 27:1,2,10,13
27:16 28:8 29:11
33:16,16,20 36:11
40:6,6,9,15,23 42:1
43:17 44:1,1,12 45:6
45:12,19,22,24
50:11,20 51:13,19
52:3,16,19 53:8,16
53:19 57:4,8,15 59:8
59:13,23 60:2,11,12
61:1,14,15,18,20,21
63:5,8,18 64:4 67:6
67:18 68:2,25 69:14
70:1,14 71:1,5,8,18
71:21,22,24 72:5,9
72:19,22,23 73:6,9,9
73:11,13,18,21,21
74:5,9,16,21 75:2,5
75:10,16,18,20,20
76:1,4,11,25 77:8,9
77:15,15,17,19,20
78:5,6,16,21 79:2,5
79:8,11,16,24 80:4
80:10,12,19,22,22
81:5 82:1,4,23,25
83:24 85:7,10,24
86:3,14 87:1,4,10,14
87:19,22 88:2,6,7,9
88:9,16 89:1,3,11,16
89:23 90:1,5,9,19,23
91:3,4
**carve-out** 6:17
**case** 4:9 92:22
**cash** 4:25 6:16,19,24
7:3,6,8 18:13 19:21
24:8,16,17,20,21
25:6,7,8 26:11,15,17
26:17,21 27:6,16,21
28:8 29:20,21,21
31:5 32:22,25 33:4,5
33:17 34:10 36:14
36:16 37:15,17,17
39:1,21 41:7 42:5

43:25 44:15,21,21
44:24 45:2 46:12,19
46:22 48:4 50:8 52:4
55:9 57:23 58:22
59:9 61:21 62:25
68:11 70:18 72:8
73:10 75:21 77:20
78:15 81:18 84:13
85:19 91:10
**cattle** 31:12
**caught** 55:12
**certain** 10:25
**certainly** 10:17 18:18
**Certificate** 3:3 96:1
**certify** 96:7
**cetera** 94:3
**challenge** 18:6 19:19
**chance** 4:16
**change** 9:23 10:6,9
**changed** 79:9
**changes** 17:15
**Chapter** 4:8 9:2
**chat** 10:21 24:6 26:6,8
**chatting** 26:4
**claim** 54:16
**claims** 5:11 6:18
**clarified** 15:14 65:18
**clarify** 21:22 47:21
54:12 66:12 68:8
**clarifying** 58:18
**clarity** 54:23 58:8
**clear** 5:10 11:14 13:10
34:21 65:14
**client** 42:18
**close** 17:4 23:9
**closer** 23:8
**closing** 5:19,19 6:3
19:2
**Code** 9:2 18:19
**collateral** 18:20
**combination** 55:1
**combined** 55:2,8
56:25 57:18,22 58:1
58:1,22 60:9 62:1
64:16
**come** 58:15 81:23,24
82:10,21 93:6
**comes** 6:9 8:3
**coming** 17:22 45:9
92:5
**commence** 20:1
**comment** 14:1 16:5
18:12
**comments** 8:13 65:14
95:14
**commission** 12:3
**commit** 58:7

**compared** 92:17
**comparing** 11:13
12:11 13:11
**complete** 94:24 96:9
**compliance** 17:8,8,9
**complication** 18:9
**component** 6:16,19
6:25 7:4,6,9 18:13
19:21 24:9,20,21
25:6,8 26:11,15,18
26:21 27:6,17,21
28:9 31:6 32:23,25
33:5,17 34:10 39:1,3
39:21 42:5 43:25
44:15 45:3 46:13,19
46:20,22 48:4 50:8
52:4 59:9 61:21 63:1
68:12 70:18 72:8
73:10 75:21 77:21
78:15 81:18 85:19
91:10
**comport** 18:18
**computer** 29:3
**concluded** 17:17
**concludes** 6:20 91:13
92:12
**conclusion** 93:20
**condition** 5:24
**conducting** 30:6
**conference** 10:21
13:10
**confirm** 9:22 13:17,22
14:11 15:9 21:6 44:8
57:17,21 92:20
**confirmation** 10:5,23
**confirmed** 9:15 44:9
**confirms** 14:25
**confuse** 66:17
**confusing** 66:7
**conjunction** 56:17
**connection** 34:22
**consent** 9:13 18:21
**consideration** 6:6
**consultation** 10:16
**consulted** 10:13 15:16
**Consumer** 7:16
**contact** 5:8 94:14
**contacting** 94:1
**containing** 94:7
**CONTENTS** 3:1
**continue** 31:16 43:3
66:21
**contract** 14:4,5 17:15
47:6
**contracts** 4:17 17:22
**conversation** 31:17
**coordinate** 27:25

**COPY** 1:24
**Corbin** 12:4,14 13:2
13:12 35:4,6,10
**correct** 7:10 13:24
21:25 22:19 27:9
32:18 33:13 34:25
35:13 37:11 42:25
48:21 49:24,25 50:6
50:7 55:4 59:19
62:18,21 63:7 68:10
71:21 76:3 78:12
82:2 84:4 92:21
**corrected** 42:17
**correction** 9:24 49:15
**correctly** 28:4
**County** 96:4
**couple** 9:10 14:6
28:13 29:14
**course** 46:25 47:4
95:9
**court** 4:24 5:6,8,20
24:25 25:4
**crash** 49:18
**credit** 5:1 6:15 18:13
18:19 24:10,16,17
26:11,12,13,13 28:9
29:11,20,20 31:5
32:20 37:9,13,14
39:3,18,18 41:3,4
42:7 43:23 44:8,20
44:22 46:19,23 48:3
53:24 54:12,19,24
55:3,9,14,21 56:5,25
57:24 58:16,22
61:22 62:18,21,23
64:11,16,19,20 65:6
65:15 66:5 70:20
77:22 78:12,14
81:19 84:3 91:12
**credited** 32:20
**creditor** 36:12
**crosstalk** 19:6
**Curley** 33:4
**current** 23:19 29:22
33:15,23 37:15,25
38:15 40:12,21
44:12,13 45:2,10,17
46:5 48:25 50:2,8
51:18 52:3,12 53:20
59:25 67:2,10 68:4
68:11,20 69:12,16
69:25 70:5,13,23
71:4,12 72:8,17
73:10 75:8,21 76:19
78:20 79:14 81:15
85:10 86:5,8 87:13
88:25 89:20 90:4,12

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 6, 2022

Page 99

currently 23:18 28:7
29:10 32:22 48:5
52:2 56:10 57:11,14
60:21 64:12 70:11
70:24 74:20
cut 91:17,20 93:3

**D**

D 7:15
date 5:7,9 10:3 19:1,2
DATED 96:12
Dave 63:10
David 26:20,23,25
27:1,11,12,12,13,16
27:19 28:5 33:16,20
40:6,15,23 42:1
43:17 45:6,19,22
50:11,20 51:13
52:16 53:16 54:21
57:4 58:4 59:23 61:1
63:5,8,18 64:4 65:12
67:6,18 68:2,25
69:14 70:1 71:8,18
71:22 72:5,19 73:6
73:18 74:5,16 75:5
75:16,18 76:1,4,11
76:25 78:5 79:2,5,8
79:11,16,24 80:4,10
80:19 82:1,4,25
83:24 85:7,24 86:3
86:14 87:1,4,10,14
87:19,22 88:2,6,16
89:1,11,16,23 90:1,9
90:19
day 5:16 17:19 66:19
82:19
days 5:19 6:4,4,4
deal 29:5 55:19
debt 58:4 64:10 66:9
debtor 9:3 34:23
debtors 9:16 18:19,25
19:2,3
decides 7:1,2
decision 57:12
decisions 65:24 66:19
deliberate 60:17
demonstrating 17:4
deposit 5:13,15 7:4
17:2,13 24:9,14 25:7
36:14,17
deposits 5:17 93:18
determine 6:1
difference 66:11
different 5:23 12:7
35:11,11
direct 24:4 94:17
directly 93:4

disband 93:13
disclosure 18:23,24
19:17
discuss 94:2
discussing 92:15
discussion 64:25 82:6
discussions 55:18
disruption 19:6
docket 9:18,20,24
18:25
doing 25:22 36:24
42:21,23 46:18
56:20 72:1 79:4
dollar 12:6
dollars 19:5 24:23
46:4 71:11 89:9
drop 30:17 41:14
66:25 67:24 74:2
84:24

**E**

earlier 7:22 46:25
earliest 5:9
easier 58:13,18
eastern 7:13
echoey 28:20 29:1,5
echoing 28:23
edge 87:8
effective 6:15 19:1
either 29:19
Eleven 16:17,18
Eli 47:14,16,18,20
48:5,7 49:7,9,17
50:16 52:21,21
53:12 60:14 83:7
84:19,20,21,22,23
85:1 91:17,19,24
Elsayyad 21:1
email 93:2 94:5,7
encumbered 35:14
encumbrances 5:11
enter 55:20
entire 55:24
entirely 55:24 56:1
entities 35:11,12
entity 47:5 65:22,23
84:9,14,16 85:5
equal 55:3 58:12
Erica 33:3,6 34:2
39:24 40:1,2,5,5,11
40:12,14,14,20,21
40:21 41:22 62:7,8,9
62:9,25 63:12,13,14
63:14,15,25 64:1,2,3
67:13,15,16,16,17
78:24,25 79:1,1,14
79:16,18,19,20,23

80:2,3,8,9,14,16,17
80:17 83:1
especially 92:16
essence 5:21
estate 11:18 13:1
estimate 6:18 19:1
estimated 19:4
et 94:3
everybody 11:12 26:4
28:3 51:17 77:25
81:21 86:18
evidence 17:3
exact 87:17
exactly 18:5
example 6:3 17:13
exceed 66:4
Excuse 32:15 41:2
Exhibit 16:23
exist 18:16
existing 5:12
expenses 19:4
explained 30:6
extent 5:22 17:10 58:3

**F**

fact 15:1
fail 64:14
fair 63:17
fee 6:10 11:11 12:22
12:24 14:8,18 17:2
21:7,12,24 22:3
feeling 73:12
fees 10:24
Fifth 2:13
filed 9:18 10:2 18:24
final 1:24 34:8 38:25
42:4 46:11 61:18
77:19 81:17 91:7
Finally 18:12
find 16:13 23:1
fine 30:21,21
finish 59:4,5,12
finished 8:18 34:8
38:16,22 42:4 46:12
61:19 77:18,19 91:6
91:8
first 4:22 7:20,20 8:4
9:13,17 14:17 20:4
25:11 34:7 38:3,17
38:23 42:3 46:10
60:11 61:14 77:15
79:10 81:15
five 12:6 13:3,5,7
19:15 74:6 82:7
flabbergasted 19:7,15
Florida 96:3
fly 12:13

folks 69:17
followed 16:9
following 29:17
foregoing 96:8
formal 57:17
forth 8:9
forward 16:8
four 81:25
fourth 18:23 39:6
Frankel 4:6,7 6:23
7:10,11,21 9:25 10:8
13:19,24,25 14:10
14:12,17 17:7,12
19:24 20:1 21:6,8,25
22:1,7,10,17,20
23:22 29:23 30:2,4
35:6,8 42:17,21 43:1
65:4 92:20 93:5,8,21
94:21 95:13,16
Franklin 21:11 25:12
25:16 34:17,18,18
34:19,19,20,24
42:23 43:5 57:13
61:24 62:2,2,3,5
63:6,16 64:13 65:16
68:9 70:12,18,21
72:8 76:20 77:5,9
Franklin/Stanhope
35:17
Frank's 9:11
Frederick 48:11,15
free 5:10
FREO 6:9 14:4,5,6,14
14:25 15:3,7,8 17:13
21:1,9,19 22:16,21
24:21,22 25:5 27:25
29:13 30:16,17
FREO's 22:8,13 95:4
further 20:6 22:14,22
25:24 27:20,22
30:22 32:24 33:24
34:1 36:6 37:19 38:1
38:14 39:20 41:12
41:12 43:15 46:6
50:10 51:11 52:13
57:7 59:9 60:1,3
61:6 63:16 64:7 67:3
67:3,23 68:19 72:10
77:13,16 81:6 91:3
94:25
future 28:6,11,12

**G**

garbled 23:6,12
generally 95:10
gentlemen 55:17,17
56:2 70:10 88:23

getting 29:21 81:21
give 8:20 21:5 30:12
38:6 51:22 82:20
83:12 94:14
given 10:6
giving 56:21,22
go 4:3,5 6:14 9:5 13:4
16:2 17:20 21:19
28:16 33:11,11
34:17 37:22 40:19
43:4,5 46:1 49:5
50:3 53:1 65:1 69:11
70:3 71:6 72:20
76:15 77:3,11 78:23
81:9 86:7 88:1 92:13
95:14,18
goes 7:7 15:21
going 4:1 5:8,19 6:25
8:1 9:1 12:18,19,21
13:3,5,6 14:12,13,13
15:20,25 16:8 17:25
18:5 20:15 21:19
22:12 23:20 25:2,9
28:3,16 29:15 30:11
30:13,22 31:8 32:3
33:9 34:16,20 35:17
35:18 39:21 42:8,11
42:18,21 43:8 44:14
44:18,20 46:20
47:10 55:17 56:3
58:6,25 59:4,4,5,15
61:24,24,25 62:4
64:25 65:7,10 66:21
74:3 77:12 78:2,3
80:15 81:3,22,22
82:9,11,15 83:17
91:6 92:14,15,18
93:11,12,18 94:11
94:23 95:1
Goldwasser 54:20,22
58:4,8 65:12,13
66:14,20
good 8:17 91:1
Gotcha 36:2 49:10
great 64:17
greater 19:16
greenback 46:3
Greene 20:9 25:11,15
25:18,19,25 26:1,9
26:18,21 28:15,16
31:1,2,2,3,3,4
gross 11:13,13,17,19
12:11,14
guess 16:13 22:2 29:9
guys 30:19

**H**

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 6, 2022

**half-hour** 94:6,12
**hammered** 58:24
**hang** 94:5
**happen** 31:12
**hard** 15:21 16:2
**harder** 58:17
**head** 55:25
**heading** 16:24
**hear** 8:24 22:24 23:4
23:10,17 24:11
27:12 28:18,20,24
30:3,15,17,19 32:9
32:10 39:9 57:20
72:12
**heard** 51:8
**hearing** 5:6
**held** 5:17
**Hello** 48:11 91:15
**Hey** 20:23
**high** 7:7 19:8 68:11,20
70:13,19 71:4 72:7,9
72:23 76:19 79:14
**higher** 7:8 71:6
**highest** 5:18 6:1 8:6,7
**highly** 95:6
**hit** 26:6
**hold** 22:25 27:24
64:24
**holding** 79:12,14
**Home** 88:23
**hot** 41:18 61:17 76:14
**huge** 54:13

**I**

**idea** 29:18
**identical** 53:25
**identified** 4:11
**impact** 54:13
**important** 13:16
**improper** 95:8
**include** 7:5,8 11:15,20
24:8,13,20 25:8
26:10 36:13 44:3
64:10
**included** 7:24 34:24
**includes** 7:3 11:14
25:6 31:2 36:16
**including** 12:17 19:19
**inclusive** 10:24
**incorporated** 4:16
9:15
**incorrect** 10:4
**incorrectly** 9:19
**increased** 58:5
**increment** 33:12
**increments** 22:15
25:22,23 27:22 32:7

33:8 36:4,5,25 37:16
38:21 40:3,4 41:14
41:15,21 43:14 45:4
47:11,19,19 48:6,23
49:6,16 50:15,25
51:1,16,17 56:14
59:11 62:10 63:3
66:25 67:1,1,11,24
67:25 68:13 70:23
70:25 71:13 73:5
74:3,22 75:4,9 78:7
78:17,19 79:4,7,20
79:21,22 81:9 83:19
83:22 84:17,22,24
84:25 85:6,13,15,21
86:2,7,11 88:15
**independent** 58:24
**independently** 59:1
**indicated** 18:25
**individual** 8:3 13:21
20:5,17 25:10 65:20
66:22 91:14 92:13
94:2
**individually** 8:2 60:7
**information** 94:8,14
**informed** 9:23 10:6,9
65:24
**informing** 10:3
**info@jpandr.com**
93:2,3
**insists** 6:3
**intending** 83:14
**interest** 41:21 60:3
**interested** 43:9 61:16
**interrupt** 8:15
**invitation** 92:25 93:4
**invited** 17:10
**irregular** 95:6,9
**issues** 11:5

**J**

**Jaim** 36:1,1,3,6,22
37:22 38:16 83:8
**JANE** 1:25 2:12
**January** 1:11 7:14
96:12
**Jason** 23:2,3,7,15,16
23:23 24:2,6,8,11
26:3,4,9 27:6 29:5
32:11 35:2 37:4
39:14
**Jefferson** 20:10 25:12
25:15 28:16,17 31:8
31:9,19,21,22 32:24
**Joel** 19:11 32:2,6,8,22
33:13,13,14,14,15
34:4 41:8,10,11,11

41:16,18,20 42:2,3,5
42:6 43:11,12,13,13
43:15,16 44:16,24
45:2,5,11,14,16,17
46:1,4,5,7,7,10,11
46:12 48:8 49:2,21
59:21 60:1,3 61:9
81:1 84:10,16,18
85:2,5
**Joel's** 84:16 85:4
**joint** 54:6,11
**jointly** 35:8 65:18 66:3
66:8,9
**Joseph** 36:10,19,20
37:2,15,18,24,25,25
38:2,2,12,12,13,15
38:17,23,24,25 39:1
39:1
**judge** 66:18
**judgment** 18:1
**jump** 72:18 75:24,25
90:17,17

**K**

**K** 2:16 96:6,16
**Karim** 20:23 21:1
**Kasowitz** 9:7
**Kathleen** 2:16 96:6,16
**keep** 28:13 31:11,15
38:9,9 46:20 87:8
93:10
**kept** 91:22 92:5
**Kim** 15:6 29:7,7,13,14
29:25 30:11,15,17
**kind** 24:9
**Kirby** 33:3
**knock** 82:11
**knockdown** 8:6 38:25
42:5,6 46:17 77:20
**knocked** 25:2 31:6
34:9,11 46:13,14
56:11 61:20 81:17
91:9 92:2,10
**knocking** 91:23
**know** 12:20 13:7
16:12,14,16 17:13
22:2 24:15 30:15
60:18 76:17,18 93:1
94:16
**knows** 70:4

**L**

**ladies** 70:10 88:23
**Lafayette** 20:12 25:13
25:17 39:6,7,8,16
**land** 70:3
**Lane** 30:16

**last-minute** 19:24
**late** 92:7
**lead** 32:22
**leases** 5:12
**leave** 93:12
**Lee** 20:25,25
**left** 16:1 77:25 82:2,17
83:11,14
**Leibowitz** 22:24 23:2
23:2,3,9,14,24 24:12
26:10,12 27:3 28:18
28:22 29:2,17 30:2
32:9,11,11,15,18
34:21 35:2,2,9,13
37:3,5,8,11 39:11,15
43:20 44:5,7,9,11
47:21,24 48:2 50:4
55:13,23 62:12,16
62:19,22 78:9,13
84:2,5
**lender** 6:14 7:1,1,7 9:9
9:13 10:12,18 14:18
15:16,17,18 17:1,5
18:9,14 19:9,18
21:23,24 22:1,4,7
23:22 24:23 25:7
26:16 27:3 30:7 31:5
32:14,17,19,21
34:11,12 35:3 37:7
37:13,14 39:3,18,19
41:5 42:6 43:20,24
44:2 46:14,16,23
47:1 48:2 57:18 58:3
61:22 62:15,21,24
64:16,18 65:5 77:23
78:9,11 81:20 84:2,4
84:7 94:22
**lender's** 7:6 19:20
24:19 28:9 29:11
30:10 70:20 91:12
**letting** 76:18
**let's** 82:20 91:24
**levels** 17:7
**License** 7:16
**licensed** 7:15
**liens** 5:10
**light** 74:10
**lighting** 74:12
**limited** 4:25
**lines** 13:13
**link** 92:23
**little** 6:24 26:6 28:19
28:20 29:5 51:8
72:22 81:21 86:15
**LLC** 2:6
**loan** 34:23 35:10,11
54:17

**logged** 93:9,12
**long** 13:9 28:4 51:24
86:15 87:1,5,6
**longer** 87:14
**Longo** 15:6,7,13 23:17
27:24 30:18,21
**Look** 16:6
**lot** 8:22,22 31:13
**lower** 31:16 50:25
51:16 79:21

**M**

**Maguire** 26:20,23,23
26:24,25 27:1,2,10
27:13,16,21,23 28:8
29:11 31:6 33:16,16
33:19,20,22,22,22
33:25,25 34:6,7,7,9
34:10 40:6,6,8,9,13
40:15,16,18,18,23
40:24,25 41:1,1,24
42:1 43:17,17,19
44:1,1,1,12 45:6,6,8,9
45:10,12,18,19,22
45:23,24,24 46:8
50:11,11,13,14,20
50:21,22,23,23
51:13,14,15,18,19
52:3,16,17,18,19,22
52:23 53:8,16,17,18
56:12 57:4,5,6,8,15
59:8,12,23,23,24
60:2,11,12 61:1,2,3
61:4,5,13,14,18,19
61:20 63:5,8,9,10,11
63:11,18,19,20,21
64:4,4,5,6 66:24
67:2,6,18 68:2,3,4,4
68:11,25 69:1,2,3,3
69:13,14,15,16,18
69:19 70:1,2,13 71:1
71:5,8,9,10,11,18,19
71:21,22,24,24 72:5
72:5,6,7,9,13,18,19
72:21,22,23 73:6,7,8
73:9,11,13,17,18,19
73:20,21,22 74:5,8,8
74:16,17,18,19,21
75:2,5,6,7,8,10,12
75:16,18,20,20 76:1
76:3,4,5,6,7,11,12
76:13,16,25 77:1,2,4
77:4,5,8,9,14,15,17
77:18,20 78:5,5,6,16
78:20 79:2,2,3,5,8
79:11,16,24,24,25
80:4,5,6,6,10,11,12

JANE ROSE REPORTING
1-800-825-3341

National Court-Reporting Coverage
janerose@janerosereporting.com

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 6, 2022

Page 101

80:12,19,20,21,22
80:23,23 81:4,7,8,10
81:11,14,14,15,16
81:17,18 82:1,4,23
82:25 83:24,24,25
84:1 85:7,8,9,10,14
85:23,24 86:3,4,5,6
86:9,12,14 87:1,3,4
87:10,14,19,22,23
88:2,6,7,8,9,10,16
88:17 89:1,2,3,3,4
89:11,12,16,17,18
89:23 90:1,2,3,4,5,5
90:9,10,11,12,19,20
90:23 91:2,4,8,9
**making** 56:5 65:24
66:2
**MALE** 42:13 68:7
**Manatee** 96:4
**Mannion** 1:13 2:5,6
4:1,5 6:22 7:12,15
8:10,11,16,19 9:6
11:5,7,19,24 13:19
15:11 16:17,19
19:11,23 20:2,24
21:4,17 22:6,11,19
22:25 23:3,7,11,18
24:1,13,15,17 26:13
26:24 27:2,5,9,14,18
28:2,19,23 29:4,23
30:11,20,24 32:2,5
32:10,13,16,19 33:2
33:5,10,18,21 34:6
35:4,16,25 36:2,9,13
36:16,19,22,24 37:2
37:4,6,9,12,21,24
38:5,8,11,20 39:13
39:17 40:1,8,11,17
40:20,25 41:4,8,10
41:18,24 42:2,20
43:2,11,19,22 44:7
44:10,16,23 45:1,8
45:14,16,20,23 46:3
46:18 47:7,16,23
48:1,14,16,19,22
49:5,9,12,14,19,23
50:1,6,13,17,22 51:3
51:6,15,23 52:2,7,11
52:18 53:2,4,7,10,13
53:18 54:3,8 55:16
56:2,7,19 57:1,5,10
57:19,25 58:10 59:3
59:17,20,24 60:10
60:15,21,24 61:3,8
61:13 62:8,14,17,20
62:23 63:7,10,13,20
63:23 64:1,5,12,22

65:8 67:7,9,13,15,19
67:21 68:3,10,15,17
69:2,6,9,15,23 70:2
70:7,17,24 71:3,10
71:16,20,23 72:3,6
72:15,20 73:1,3,8,15
73:20,25 74:7,14,18
74:25 75:7,14,17,19
75:24 76:2,5,9,13,23
77:2,14 78:6,10,14
78:25 79:3,6,9,13,18
79:25 80:2,5,8,11,14
80:21,25 81:4 82:3,6
82:14 83:1,4,7,10,25
84:3,6,10,12,15,20
85:4,9,17 86:1,4,16
86:24 87:3,6,12,16
87:21,23,25 88:4,8
88:13,17,20 89:2,6,8
89:12,15,17,22,24
90:2,7,11,16,20 91:2
91:16,19,24 92:2,6,9
93:10,25 94:7,13,17
95:12,17
**mark** 14:24 15:6,9
30:2 37:20,21 38:4,5
38:16 49:11,12,13
49:14,15 51:21
52:10,11,12,15
63:22,23,24,24,24
67:7,8,9,19,20,21,22
67:22 68:1,14,15,16
68:17,18,20,21,24
69:5,6,8,8,10,11,12
69:19,22,23,24,24
70:6,15,22 71:2,3,4
71:15,15,16,17 72:1
72:2,3,4,4,11,14,16
72:16,25 73:1,2,3,4
73:12,14,15,16,23
73:24,25 74:4,10,13
74:14,15,15,20,24
74:25 75:1,3,3,11,13
75:14,15,15,22,23
76:8,9,10,10,17,22
76:23,24 77:7,10,12
83:4,5,6 85:16,16,17
85:18,19,20 86:1,13
86:19,21,23,25 87:7
87:12,21,24,25 88:1
88:11,12,13,14,19
88:20,22,24 89:5,6,7
89:8,9,14,15,21,22
90:6,7,13,15,17,24
91:1 93:15
**marketing** 10:14 15:16
**Marx** 15:7 30:15

**math** 12:13 13:3
**Matt** 14:1 20:23 28:18
39:11
**MATTER** 1:1
**Matthew** 1:13 2:5 7:15
9:7 15:6,10 22:24
27:24 32:9 34:21
47:21 50:4 57:16
62:13 68:7 70:15,23
86:14
**maximum** 54:16
**mean** 11:23 17:11
92:7
**meaning** 11:20
**means** 17:12 42:21
**meet** 16:21
**meeting** 92:24
**mentioned** 7:21 12:2
20:3 23:22 25:1
**message** 23:24 24:4
26:5 94:18
**messaged** 24:2
**Metro** 25:13,17 42:22
45:2
**Metropolitan** 20:12
25:14 42:9,9,10,15
43:4,7 44:4,5 53:24
55:2 56:24 58:14
**Michaelson** 36:8,10
36:10,15,18,23 37:1
37:23 38:6,10
**mike** 19:12 23:8 41:19
61:17 72:11 76:14
76:17 81:2,2
**mikes** 28:21,25
**million** 6:19 12:5,16
12:19 19:8 21:3 24:3
24:4,6,7,20,23 25:8
25:21,23,25 26:1,20
27:16,18,20,21,21
27:23 28:8 35:24
36:2,3,6,8,19,20,23
37:23 38:10,11,12
38:12,19,19 39:2
40:20 41:7 45:7
46:16 47:11,13,15
47:17,18 48:12,20
49:22 52:25 56:17
56:24 62:25 63:14
63:18,20,21,22,24
64:2 67:2,4 68:14
69:5,22,23 71:8,10
72:6,7 73:8,9,22
76:1,2,5,6,6 80:19
80:21,23,23 81:14
81:16,17,18 84:16
84:18,19 85:2 86:3

89:5
**Ming** 20:25,25
**minimum** 5:2 31:15
**minor** 17:14
**mint-printed** 71:11
**minute** 8:20 30:1 38:6
38:8,9 53:3,5 60:4,6
61:10 64:24 70:6,8
80:24 82:20 83:12
**minutes** 28:14 29:14
30:12,13 81:23 82:7
87:8,11 92:11 93:7,9
**Miscommunication**
21:18
**misleading** 55:10
**misled** 55:13
**mixed** 23:11
**modify** 14:7
**moment** 8:13 21:5
27:25 29:8 34:16
51:23 68:22
**momentarily** 82:16
**money** 31:14
**morning** 17:23
**mortgagee** 5:1 7:2 9:8
10:12
**move** 8:8 30:14 35:18
**movement** 75:22
**moving** 10:11 16:11
25:9 31:8,14,18
34:13 39:5,6 42:8
47:7 54:8,10 61:23
77:24
**muffled** 57:20
**multiple** 28:21,25
42:14
**mute** 19:9 31:16
**muted** 30:2 74:11,11
76:17 77:10

**N**

**name** 7:14 8:23,24,25
48:17
**necessary** 78:18
**need** 8:24 13:21 29:25
31:17 48:10 52:24
53:3 54:12 60:4,5,17
60:18 61:10 67:5,23
68:22,23 69:13
81:12 82:7 85:23
86:13 92:21,25 93:4
93:19 94:9
**needed** 94:16
**net** 11:1 12:25
**never** 10:17
**new** 2:14,14 31:4,9
34:14 35:20 42:10

47:13 78:1 80:18
83:21
**new-found** 19:19
**nice** 16:14 69:10
**nine** 9:16 19:2,3
**nonconsolidated** 9:16
**note** 6:13 9:17 18:22
56:7 91:11 92:12
**noted** 14:2 16:16
66:18
**notes** 96:10
**notice** 9:18 10:2
**notify** 94:10
**number** 7:16,25 12:23
53:25 55:2 58:12
69:10
**numbers** 58:12

**O**

**objection** 10:15 15:15
15:17,19,19,22,24
16:3 46:25 47:1,2
**objections** 94:23,25
95:7,10
**objects** 18:14
**obligations** 54:6
**Obviously** 4:22
**offer** 17:6 28:5
**offering** 57:25
**offers** 4:25
**offline** 28:1
**off-line** 91:25
**Oh** 91:17 92:7
**Ohman** 2:16 96:6,16
**okay** 4:4 7:13 8:16
19:23 20:2 21:4 22:6
22:11,11 23:18 24:1
25:18 26:3 30:20
31:20 34:13 39:13
42:8 44:23 47:24
48:20 51:23 52:5
53:4,10,13 59:20
62:14 79:11,13,18
82:20 83:10 87:10
91:25 92:1 93:24
94:19 95:13
**once** 4:11 7:14,18 8:5
17:17 20:16 25:5,15
28:3,15 31:10 39:7
43:7 47:12 60:16
61:24 66:23 83:20
91:6 93:2
**One-five-five** 49:7
**One-five-ninety** 90:15
90:16
**One-five-twenty** 89:14
**One-four-two** 86:23

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 6, 2022

Page 102

one-million-five-five 56:18
One-nine 51:5
one-nine-five 52:6
One-one-five-oh 40:15,17
One-seven-five-zero 50:12
One-six 90:19
One-six-five 49:18
One-three-seven-five 85:16,18
one-two 40:19
open 15:21 60:8 83:17
opening 5:2 6:11 9:11 20:15 21:10,14 22:13 31:21,24 42:12 43:12 47:10 62:4
opine 29:24 35:5
opinion 65:9
opportunity 86:18
opposed 58:19
orange 77:11
order 6:14 21:10
overbid 21:13 22:3,18
owed 54:24 64:11
owned 35:8 65:22

**P**

Page 3:3
pages 16:22
paid 64:18
panel 12:23
paragraph 16:24
part 7:20 17:23 20:4,5
partially 64:18
participants 17:25
participate 15:20
participating 47:2 61:12
parties 9:22 10:5 11:3 21:22 31:14
parts 7:20 20:4
pass 81:3
passing 60:6
pause 35:18
pay 12:6,16,22
payment 6:17
people 8:22 28:24 41:17
percent 5:16 12:6 13:3 13:5,7 17:2,14 21:7 21:12 57:22
permissible 55:24,25 56:1
phone 11:13 19:10

23:13 29:2 91:22 92:5
phones 28:25
phonetic 35:23 36:1
place 13:21 32:1 62:12
plan 4:8,14 6:14,18 9:3,4,15 16:9,23 18:17 19:3
players 48:8 53:21 69:21
please 11:8 27:15 28:13 31:10,16,25 51:24 56:2,3 70:16 92:12,13,20 93:25
plus 21:11,12
point 66:2,17
pointed 58:5
points 9:10 15:9
portfolio 15:7 19,24
position 30:10 95:5
possible 5:9 17:25 28:13
potential 4:15,18 10:8 11:11 12:2
prefer 15:3
prejudice 64:17
preliminary 8:15,18
premium 11:21,22,23 11:25
present 82:22 83:2,3 83:13
presented 57:18
preserving 47:3
price 8:7 14:22 21:3 34:2 55:1 86:17
private 26:5
procedure 12:21
procedures 4:13,24 5:23 9:12,14 10:11 13:14,23 16:10 18:17 95:8
proceed 16:4 18:1,2
proceeding 30:8
proceedings 1:9 95:20 96:8
process 10:14,20 12:12 13:14 64:17 95:6
Professional 96:6
program 26:7
proper 58:13
properties 4:10 6:9 8:2 20:8,14 29:16 34:22 35:9,15 42:14 44:3 54:6,17 55:8 56:6 57:23 58:1,23

77:25
property 4:7 5:3 8:4,5 8:8 12:16,19 13:15 20:6 25:10 28:7 31:13 34:13,18 35:20,21,22 39:7 44:15,21 55:5 56:18 57:13 59:2,6,16 60:7 60:8 64:11,19,21 65:6,17,20,21 70:8 82:2,12,17,18 83:17
proponent 9:4
proposed 9:3
protect 58:6
protection 21:13 22:18
provide 16:10 17:1,3 94:13
provided 17:6
provisions 14:6
pull 72:21
purchase 14:22
purpose 74:11 76:18
purposes 54:14
pursuant 4:8,12
put 10:15 17:24 35:17 58:11 87:5 91:22 92:8 94:24
p.m 1:12,12 7:13 10:7 81:24 92:23 95:20

**Q**

qualification 16:24 18:6
qualified 16:11 17:19 18:2
qualify 16:15
question 10:1 53:22 64:10
quick 28:13 77:3,3 82:8
quicker 82:9

**R**

raise 12:23
raised 15:10,15 46:25 47:1 53:23
read 13:22
real 31:13
realized 11:17
realizes 13:1
REALTY 1:4
reason 17:23 94:10
recess 28:12 81:22 92:15,19
recognizing 81:19
record 4:3 9:7,17 10:5

10:15 15:2 16:1 21:21 24:2,5 27:15 46:24 55:21 56:4 66:3,15,17 91:11 94:24 95:4,4,15,19 96:10
recording 4:2 93:11 95:18
reductions 15:1
reference 4:17 11:11
referenced 11:24
regard 4:19
regardless 7:25
Registered 96:6
relates 47:4
remain 48:23 73:5 75:9
Remaining 84:17
remarks 8:15,18 9:11 9:11
remind 18:7
reminds 14:2
REMOTE 1:9
reopen 22:12
repeat 8:25 9:25 11:7 70:16
report 96:8
Reporter 4:4 23:5 26:22 35:1 48:13 96:7
Reporter's 3:3 96:1
REPORTING 1:25 2:12
represent 15:7
representative 82:24
representing 21:1 30:16 93:17
requests 10:17
require 10:11 13:14
required 5:15
requirement 18:15,16 19:20
requirements 16:22
reserve 18:21 95:6,9
reserved 18:3 30:8
reserves 19:18
reserving 15:23 16:6 18:5
resolve 94:23
respect 9:15 10:19 14:7 16:11 18:10,12 18:23 21:22
response 9:10
results 95:11
return 83:15
returned 93:19,21,23
reutilization 9:3

review 4:16 5:25
reviewed 4:20
right 4:2 5:1 9:5 13:2 16:6 19:23 20:2 21:4 21:9,18 23:10 24:6 25:9 26:7,25 27:6 30:25 31:18,18,20 32:14 34:19 35:9,16 37:10 42:8 43:3,22 44:24 47:8,17 48:19 48:20 55:16 56:10 56:19,23 59:3,9,18 61:23,23 67:7 73:1 79:12 81:23 82:14 83:16 88:4,21 89:6 91:13 92:1,22 93:13 94:21 95:13,17
rights 15:23 18:3,4,6,9 18:21 19:18 30:8 47:3 95:7,10
RMR 2:16 96:16
room 16:13 93:12,13
ROSE 1:25 2:12
Rosenburg 36:12
ROSEWOOD 1:4
rule 11:16
run 28:4
running 58:9 66:15
rush 60:17

**S**

sale 4:7 5:5,10 9:1 12:21,25 25:5 29:19
sales 24:24
saw 74:10
Scharf 47:14,14,17 48:5 49:7,8,10,17,17 49:20,20 50:16,16 50:18,18,19 51:2,5,7 51:9,10,21,22,25 52:5,8,8,9,21 53:1,3 53:6,9,12,12,14,14 60:13,14,19,23,25 60:25 61:7 83:7,9 84:19,19 91:15,17 91:18,19,21 92:1,4,7
Schiff 35:23 36:1,1,3,6 36:21 83:8
seat 87:8
second 5:18 8:19 14:20 15:15 20:5 31:25 34:7 38:18,24 42:3 44:17,17,18,18 44:19 46:11 48:9,10 51:22 54:9 57:9 61:15 77:17 81:16 91:7

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 6, 2022

Page 103

**seconds** 60:13,15
88:3
**Section** 9:2
**secure** 54:17
**see** 9:24 14:4 19:8
23:25 24:2 26:5,6
43:8 72:11 80:15
**sell** 18:19
**selling** 42:18
**send** 92:25 93:1,4
94:4
**sense** 82:5
**separate** 16:12,15
29:18 42:24 46:21
54:1,4,5,10 61:25
65:22 66:10
**separately** 42:19,22
56:20 59:1 64:15,23
65:2,4,5,11 66:9
**severally** 65:19 66:3,8
66:10
**shaking** 55:25
**short** 31:11
**side** 12:20
**signal** 70:15
**signed** 4:18 14:4,5
**simple** 14:24
**simply** 25:2
**sir** 38:7 66:6
**six** 19:15
**slow** 81:21
**sold** 4:10 8:4 25:1
**Solutions** 36:11
**somebody** 61:16
76:14
**soon** 5:7 14:14
**sorry** 8:10,12 9:25
19:13 20:25 30:4
33:7 46:15 57:19
90:3
**South** 20:13 25:14,17
42:16,22 43:5 47:8,8
47:12,23 50:5,9
53:24 55:1 56:10,24
57:2,15 58:15 59:2
59:18 60:12
**speak** 15:3 22:23
**SPEAKER** 42:13 68:7
**speaking** 35:1
**specific** 4:10
**spell** 48:16
**splitting** 66:1
**spoke** 94:21
**sporadic** 10:16
**stalking-horse** 6:7
11:10 21:3
**Stanhope** 4:9 20:11

25:13,16 34:23
42:24 43:6 65:16
70:9,9 77:24,25 78:4
78:8,15,20 80:18
**start** 4:1 9:19,21 25:11
34:20 39:8,21 78:2
78:17,19 82:15
83:21
**started** 8:14 82:21
**starting** 20:7,19 21:2
22:17 25:21 26:18
**starts** 4:12
**state** 13:20 25:3 95:4
96:3
**stated** 9:19,20 15:2
18:8
**statement** 6:20 18:23
18:24 19:17
**stating** 66:14
**stay** 93:8,11,13,19
**Stein** 8:10,12,17 9:5,6
9:7 10:2,10 11:9,22
12:2,9,24 13:9,13
14:10,16,24 15:12
15:23 16:5,18,20
17:11 18:4 19:14
21:21 24:15 27:7
30:7 54:5,14 65:18
**stenographic** 96:10
**stenographically** 96:8
**stopping** 16:7
**Street** 20:10,11,13
25:14,16,17 34:14
34:14 42:16,23 43:5
47:8,9,12,23 50:5
56:11 57:15 59:18
60:11,12 78:1 80:18
82:18,18 83:16,20
86:9 87:13 89:10
91:5
**stretch** 88:23
**strict** 17:8
**subject** 5:5,11 15:1,18
21:24 24:24
**submit** 22:8
**submitted** 47:6 61:22
**submitting** 30:22
**substantially** 17:9
18:2
**substitute** 6:17
**sufficient** 15:3
**supposed** 9:21 10:13
**sure** 5:20 10:9 11:9 12:10
15:13 27:7 29:17
54:1 70:17 90:1
94:17

**T**

**TABLE** 3:1
**take** 6:5,21 7:6,8
13:20 28:2 31:23
38:8 51:23 53:1,4
57:10 58:14 60:15
64:20 65:6 78:4
81:22,23 82:7 92:18
**taken** 17:15 82:13
94:20
**talk** 77:11 81:1 91:24
**talking** 42:15 68:8
88:21
**tell** 6:5 93:18
**ten** 5:15 17:1,14 81:23
88:2
**ten-minute** 82:8
**terms** 5:23 12:20
13:17 16:9
**thank** 6:22 7:12 9:6
10:10 13:25 15:5,11
15:12 16:20 19:22
22:19 26:14 27:18
33:6 40:2 41:1,11
43:2,11,12 44:10
47:6,16 49:20 50:14
50:18,23 51:7 52:8
52:19 53:19 61:4
62:8 63:13,21,24
64:1 67:15,22 69:9
69:24 70:22 77:23
78:25 80:11,22
81:20 83:25 84:20
88:9 89:3 90:8,21
94:19
**Thanks** 45:8
**theirs** 22:8 57:18
**thing** 10:19 18:22
74:10
**things** 14:15
**think** 5:13 11:3 13:16
14:24 19:11 35:9
41:17 52:21 68:22
74:10 81:2 83:11
87:7,17 88:4 91:1
93:19,22 95:5
**thinking** 46:9 49:3
69:19 71:5 74:20
81:12 86:20,21
88:11
**third** 10:19 14:23 34:8
34:13,18 35:21,22
38:25 42:4 46:11
61:18 77:19 81:16
91:7
**thirteen** 20:8
**thought** 47:25

**thoughts** 65:9 73:23
75:2
**three** 14:14 16:22
56:22,23
**time** 4:22 5:20 7:13
8:17 9:19,23 10:4,6
10:9 17:20 20:15
22:12 25:19 28:2,5
31:15 42:11 43:3
47:3 52:24 57:10
60:18 67:5,23 69:13
74:2 81:13 85:23
86:13,19,19 87:17
92:21
**times** 19:16
**today** 5:5 7:18 17:22
25:1 35:22 83:17
**tomorrow** 95:2
**top** 5:15 11:16,21 12:7
12:22 13:8 16:7,15
56:13
**topics** 92:16
**Torres** 9:8
**total** 21:14 54:24
65:17
**totaling** 55:8 65:24
**totality** 66:4
**tracking** 87:16
**trading** 92:4
**traipsed** 82:15
**transcript** 96:9
**transpired** 94:2
**true** 96:9
**try** 28:12 31:11,15
94:23
**trying** 22:23 58:17
66:16,16 77:11 81:1
86:17 91:22
**turned** 30:18
**turning** 77:10
**twice** 54:12,19 55:6,11
55:22
**two** 7:20 15:9 16:23
20:3 21:7,12 29:18
30:12,13 34:22
35:10,11 52:25 54:1
54:3,5,10 56:6,21
58:11 66:4 70:11
77:24
**two-and-a-half** 87:7
87:11
**Two-three-eight** 74:5
**Two-three-eight-five**
74:7,8
**Two-three-seven-five**
73:24
**Two-three-two-five**

73:14
**typed** 23:24
**Typically** 16:25

**U**

**uncertainty** 16:2
**understand** 10:25
16:5 21:17 23:5,15
23:16 30:10 31:12
48:10 64:15 65:8,9
**Understood** 12:9
14:16 24:18 30:24
32:13 42:20 48:1
66:20 95:12
**unequivocally** 54:1
**UNIDENTIFIED** 42:13
68:7
**unit** 65:10
**unsuccessful** 93:17
**use** 54:12 55:11,21
**utilize** 18:10
**utilized** 58:4
**utilizing** 64:19 65:5
66:10
**U.S** 46:4 71:11

**V**

**varying** 17:7
**vehemently** 18:14
**verbally** 13:22
**video** 10:21 13:10
24:5
**video-record** 4:2
**vis-a-vis** 47:4
**volume** 30:19

**W**

**wait** 23:23 38:18 57:12
61:12 91:15 94:11
**waiting** 83:15
**waiving** 15:19 47:2
**want** 8:14 9:17 10:15
10:20,22 12:9 18:10
18:10 20:21 23:12
25:24 27:7 29:24
31:23 34:2 53:25
55:7 57:16,21 58:5
58:16 59:14 60:22
63:4 68:8 69:4 71:6
72:18 78:4 82:21
83:23 95:6
**wanted** 17:24 95:3
**wants** 80:15 90:25
**war** 69:17 89:18,18
**wasn't** 87:16
**way** 6:25 21:8 46:18
66:15

JANE ROSE REPORTING
1-800-825-3341

National Court-Reporting Coverage
janerose@janerosereporting.com

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 6, 2022

Page 104

**WebEx** 1:10 15:8
92:24
**week** 9:19
**weigh** 35:6
**welcome** 85:17
**Wertzberger** 15:14,25
19:13 31:25 32:3,6
33:7 34:5 38:18 41:2
41:6,9,17 43:10 44:2
44:14,17,25 45:13
45:15 46:2,15,24
48:9 49:4 53:22 54:9
54:18,20,21,21 55:7
55:20 56:4,8,16,20
56:21 57:9,16,21
58:3,11,21 59:15,18
59:19 60:5 61:11
64:9,14 65:3,14 66:0
66:21 84:8,11,13
85:2,3 94:4,9,16,19
**we'll** 7:23 8:5,8 20:3
20:18 23:23 25:9,21
39:8 40:3,4,19 41:14
41:21 42:23 43:3,5
43:10,14 48:23 49:5
51:16 62:10 63:12
63:25 64:24 65:20
65:23,25 66:25
67:24 74:2 78:23
81:9 82:11,11 84:24
86:7 92:10 95:17
**we're** 16:1 32:3 34:5
39:21 41:6,23 42:1,8
42:15 46:20 48:4
52:22 56:3,12 57:11
57:14 59:5 63:8
64:25 66:23 68:8
70:24 83:17 91:1
**we've** 17:7 43:23
**where-is** 13:16 14:21
14:25
**Wide** 48:11,11,15,15
48:18,19,21,22,25
49:21,22,23,25 50:2
51:21 83:10
**Willoughby** 20:11
25:13,17 35:19,19
35:20,22 39:5
**Windels** 15:7 30:15
**winning** 5:14,17 14:19
17:16 64:20
**wire** 93:23
**wired** 93:22
**withdrawing** 15:17,24
**won** 46:22
**wondering** 87:4
**work** 6:25

**works** 21:8
**wrap-up** 94:8
**written** 17:6 26:16
56:8
**W-i-d-e** 48:18

**Y**

**yeah** 12:15 13:25
19:11 23:14 29:4
32:3 38:8 41:9 45:15
48:9 49:13 51:22,25
53:1 67:8 68:16 79:6
79:9 89:7 90:3 91:21
91:21
**yellow** 74:12
**yep** 44:25 67:14,20
69:8 73:2 84:11
91:16
**York** 2:14,14 31:4,9
34:15 42:10 47:13
78:1 80:18 83:21

**$**

**$1** 12:16,19 25:21,23
25:25 26:1 47:10,13
47:15,17,17 80:19
80:21,22,23 81:14
81:16,17,18 84:16
84:18
**$1,000,000** 81:4
**$1,100,000** 63:11
**$1,200,000** 63:17
**$1,350,000** 45:1,2
**$1,470,000** 62:17
**$1,500,000** 41:20 42:2
42:3,5 64:3
**$1,550,000** 44:16
**$1,600,000** 91:7,9
**$1,700,000** 38:15,24
38:24
**$1.5** 64:2
**$10,000** 55:9 56:5,25
57:23 58:22 74:2,22
75:4,9 81:9 86:7,11
88:15
**$100,000** 21:13 22:18
27:22 36:4 40:3
47:11,19 48:6 62:10
63:3 83:19,22 84:17
84:22
**$17,350,000** 22:14,14
22:16 24:22 25:6
**$17,800,000** 20:19,20
**$19** 24:4,6,20,23 25:7
**$2,075,000** 53:19
**$2,100,000** 57:3
**$2,175,000** 59:16

**$2,200,000** 59:24,25
60:10
**$2,250,000** 61:4
**$2,405,000** 74:19
**$2,435,000** 75:15
**$2,465,000** 75:25
**$2,500,000** 31:6
**$2.1** 56:16
**$2.350** 73:21
**$2.5** 28:8
**$25,000** 51:1 56:14
59:11 67:24,25
68:13 70:25 71:13
78:7 79:21,22 85:13
85:14,21 86:2
**$3** 6:19 19:8
**$3,640,000** 58:23
61:22
**$347,000** 21:12
**$4,470,000** 78:15
81:20
**$5,050,000** 26:9
**$50,000** 22:15 25:22
32:7 43:14 45:4
49:16 66:25 67:11
78:17 79:4,19 84:24
84:25 85:6
**$500,000** 83:18,21
**$750,000** 31:21 32:23
**$900,000** 44:12,13

**1**

**1,000,000** 25:22,25
26:1,18 34:20 39:9
39:10,22,22,24 40:1
40:5,5 47:20 48:5,6
48:7 62:5,6,7,9,11
63:2 80:15 81:7,7,10
81:10,14,15 84:8,13
84:15,15
**1,050,000** 12:18 40:7,8
40:9
**1,100,000** 40:11,12,14
63:9
**1,150,000** 40:18,18
58:25
**1,200,000** 40:21,21
63:14
**1,250,000** 40:23,25
41:1 84:21,22,23
85:1
**1,300,000** 85:4,5,5
**1,350,000** 44:21,21,22
44:23,24 45:5 85:7,9
85:10,10,12,14
**1,375,000** 85:18,19,19
86:1

**1,400,000** 45:10,12
86:4,5,5,8,9,12
**1,420,000** 86:24,24
87:12,21
**1,430,000** 87:22,23
**1,440,000** 87:24,25
88:1
**1,450,000** 37:15,18
45:13,16,17,20 88:6
88:8,10
**1,460,000** 88:12,13,14
**1,470,000** 88:16,17,18
**1,480,000** 88:19,20,22
88:24,25
**1,490,000** 89:1,2,3,4
**1,500,000** 41:10,11,13
41:16 42:6 45:23,24
45:24,25 48:22,25
48:25 49:5 64:2 89:8
89:9
**1,510,000** 89:11,12,13
**1,520,000** 89:15
**1,530,000** 89:16,17,18
89:20
**1,540,000** 89:21,22
**1,550,000** 37:20 44:15
46:2,3,4,4,7,7,10,10
46:12 49:9,10 89:23
90:2,3,4,4,5
**1,560,000** 90:6,7
**1,570,000** 90:9,11,12
90:12,14
**1,590,000** 90:17,18
**1,600,000** 37:25 38:2,2
49:11,12,14,15 64:6
64:8 66:23,24 90:20
90:21,23 91:2,4,6
92:6
**1,650,000** 38:4,5 49:19
49:20 67:9,10
**1,700,000** 38:17,20,23
50:1,2,8 67:16,16
**1,750,000** 50:13,14
**1,800,000** 50:17,18,19
67:18,21,22 68:1
**1,825,000** 68:2,3,4,4
68:12
**1,850,000** 50:20,22,23
50:24 68:17,18,20
68:21,21,24
**1,875,000** 68:25 69:2,3
69:3
**1,899,000** 32:12,20,20
34:12
**1,900,000** 51:6,9,9,12
69:10,11,11
**1,925,000** 51:13,15,18

51:19 52:3 69:14,15
69:16,18,20,20
**1,950,000** 52:7,8 69:24
69:25
**1,975,000** 70:1,2,5,13
70:19 71:1
**1-800-825-3341** 1:25
2:15
**1.1** 35:24 36:2,3,6
40:10 63:4,10,11
**1.2** 36:8,19,20 40:20
63:12,14,14
**1.25** 84:19,20
**1.3** 63:18,20,21 85:2
**1.350** 36:21,22
**1.4** 36:23 45:6,8 63:22
63:24 86:3
**1.45** 37:1,2
**1.5** 41:6 45:19,22
48:12,20 63:25 64:1
89:5
**1.55** 56:23
**1.6** 37:23,24,24 64:4,5
67:2,4
**1.65** 67:6
**1.7** 38:10,11,12,12,19
39:1,2 49:22 67:12
67:15
**1.8** 50:16
**1.85** 68:14
**1.87** 51:4
**1.9** 51:2,4 69:4,5
**1.95** 69:22,23
**100** 57:21
**100,000** 36:4,24 47:19
48:23
**10011** 2:14
**11** 4:8 9:2 16:21 17:3,5
**11:00** 9:21 95:2
**1125** 27:8 31:1,2
**1125-1133** 20:9 25:18
25:19
**1127** 27:8 31:2
**1129** 27:8 31:3
**1131** 27:8 31:3
**1133** 27:8 31:4
**1135** 31:1
**12** 29:15
**1213** 20:9 28:17 31:18
31:22 32:24
**123** 31:9
**13** 1:5 7:19
**1434494** 7:17
**17,350,000** 21:15
22:21 23:19 24:22
**17,450,000** 22:10,17
**17,800,000** 20:21,22

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 6, 2022

Page 105

21:16 23:21
**17.35** 21:3
**18th** 20:10 25:12,16
34:14,14 82:17,18
83:16,20 86:9 87:13
89:10 91:4
**19** 24:3,6

**2**

**2,000,000** 52:10,11,12
52:15 84:2,6 91:12
**2,025,000** 52:16,18,19
52:20,22,22 53:7
71:2,3,4,4,7
**2,050,000** 53:9,13,14
53:15
**2,075,000** 53:16,18,19
56:12,15
**2,100,000** 57:1,2 71:11
71:12,14
**2,125,000** 71:15,16,17
**2,150,000** 57:4,5,6,8
57:11,14 59:8,10,12
71:18,20,23,23,24
71:25
**2,175,000** 59:17,20,21
59:22 72:2,3,4,4
**2,200,000** 60:2,2,12,22
72:7,9,13
**2,225,000** 60:22,24,25
72:14,15,15,16,16
**2,250,000** 13:4,6 61:1
61:3,4,8,9,13,14,18
61:19,20 72:19,21
72:22,23,24
**2,275,000** 72:25 73:3,4
73:4
**2,300,000** 73:6,10,13
73:13
**2,325,000** 73:15,16
**2,350,000** 73:18,20,21
**2,375,000** 73:25 74:1,4
**2,395,000** 74:13,14,15
74:15
**2,405,000** 74:16,18,19
74:21,23
**2,415,000** 74:24,25
75:1,1,2,3
**2,425,000** 75:5,7,8,10
75:12
**2,435,000** 75:13,14,15
**2,445,000** 75:16,18,19
75:19,20,21,22
**2,465,000** 75:23,24,25
**2,500,000** 29:12
**2,525,000** 76:9,10,10
**2,575,000** 76:11,13,16

76:16,19,21
**2,600,000** 76:22,23,24
**2,625,000** 76:25 77:2,4
77:4,5,6,8,9,14,15
77:17,18,18,20,21
**2,650,000** 37:3,12,13
39:4
**2,937,000** 39:16,17,19
41:5 42:7
**2.1** 56:24 71:8,10
**2.2** 59:23 72:5,6,7
**2.25** 60:19
**2.3** 73:8,9
**2.5** 26:20 27:16,18,20
27:20,21,23 76:1,2,5
76:6,6
**2.525** 76:8
**2.7** 38:19
**2:00** 17:24
**2:22** 1:12 7:13
**2:25** 10:7
**2022** 1:11 7:14 96:12
**21st** 18:25
**25** 79:5
**25,000** 41:14,14,21
50:25 51:16,17 73:5
79:8
**263** 20:10 25:12 34:13
34:14 82:17,18
83:16,20 86:9 87:13
91:4
**264** 89:10

**3**

**3,640,000** 43:21,23
46:14,23 47:25 48:2
**3,640,000-some-od-**
54:25
**30** 5:19 6:4 60:13,15
93:6,9
**30-minute** 92:14,18
**300,000** 19:5
**325** 20:10 34:18,19,19
34:23 42:23 61:24
62:1,2,2 63:5,16
64:13 65:15 68:9
70:11,18,21 72:8
76:19 77:4,8
**363** 9:2

**4**

**4th** 20:13 25:14,17
42:16,22 47:8,8,12
47:23 50:5,9 53:24
55:1 56:11,24 57:2
57:15 58:15 59:2
60:11,12

**4,470,000** 62:16,19,20
62:23 70:20 78:9,10
**4,475,000** 77:22
**4:08** 81:24
**4:20** 82:11
**4:40** 92:22
**40** 59:18
**45** 6:4

**5**

**5,000,000** 26:14 27:4
**5,050,000** 26:16 28:10
29:10 31:5
**5:10** 92:23,23
**50,000** 12:16,17 25:23
33:8 37:16,17 38:20
40:4 49:6 50:15
66:25 67:1 78:18
79:7,10
**500** 83:25
**500,000** 83:23,24 84:1
**53** 4:9 20:11 34:23
42:24 65:16 70:8,9
77:24,25 78:3,7,15
78:20 80:17
**550** 89:25
**568** 20:11 35:19,19
39:5

**6**

**6** 1:11 7:14
**6:41** 1:12 95:20
**60** 6:4
**618** 20:12 39:6,7,8,15

**7**

**74** 2:13
**750** 31:22,23
**750,000** 31:24 32:4,5,6
32:8
**775** 78:4,5,6,20
**775,000** 78:3,3,16

**8**

**825** 33:4,5 78:22,23,25
79:6,14,16,18,19,20
79:23
**825,000** 79:1
**834** 20:12 42:9,10,15
42:22 43:3,7 44:5
45:1 55:2
**850** 43:10,12 79:2,24
79:25
**850,000** 42:12,12 43:9
43:13,15,16
**875** 33:9,10,13,14,14
79:7 80:1,2,2

**875,000** 33:14,14

**9**

**9thday** 96:12
**900** 43:19 80:4
**900,000** 43:18,25 44:1
80:5,6
**92** 20:13 42:16,22 43:4
47:7,8,12,23 50:5,9
55:1 56:10 57:15
59:17 60:11,12
**925** 33:21,25 34:3,6,6
34:10 80:7,8
**925,000** 33:17,21,22
33:22,25 34:7,9 80:8
**950** 80:10,11,12
**96** 3:3
**975** 80:13,14,16
**975,000** 80:17,17

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 7, 2022

Page 1

IN THE MATTER OF THE AUCTION FOR:
------------------------------------------

ROSEWOOD REALTY AUCTION
9 BUILDING PORTFOLIO


------------------------------------------

REMOTE PROCEEDINGS OF
Auction Via WebEx
January 7, 2022
1:00 P.M. to 2:35 P.M.
Auctioneer: Matthew Mannion

FINAL COPY
JANE ROSE REPORTING 1-800-825-3341

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 7, 2022

```
                                                          Page 2

     APPEARANCES:


     AUCTIONEER:
     Matthew Mannion
     Mannion Auctions, LLC






     JANE ROSE REPORTING
     74 Fifth Avenue
     New York, New York 10011
     1-800-825-3341
     Madeline Tavani, Court Reporter


```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                      January 7, 2022

                                                      Page 3
                        TABLE OF CONTENTS

      Reporter's Certificate                 Page 63

JANE ROSE REPORTING                National Court-Reporting Coverage
1-800-825-3341                        janerose@janerosereporting.com

Remote Proceedings Of                                    FINAL COPY
Rosewood Realty Auction                                  January 7, 2022

Page 4

1    MR. MATTHEW MANNION:   Good afternoon,
2    everybody.  This is Matthew D. Mannion, New York
3    City Division of Consumer Affairs.  Licensed
4    auctioneer license number 1434494.
5              This is continuation part two of
6        the auction that we started yesterday.  If
7        the time comes to submit these recordings,
8        the -- the same announcements that occurred
9        prior to yesterday's auction will apply here
10       as well.
11             It's currently 1:10 p.m. Eastern
12       Time on Friday, January 7th, 2022.  Now I'm
13       going to set the stage a little bit for how
14       this is going to go.  As we all know, we
15       submitted our bids yesterday.  We have one
16       bulk bid which is for all 13 properties of
17       $17,350,000, submitted by FREO.  And then we
18       have an aggregate bid, meaning the total bid
19       by all of the cash bidders which reached
20       $15,650,000 yesterday.  Again, that's for
21       all of the piecemeal properties combined,
22       15,650,000.  Additionally, for the record,
23       the (indecipherable) credit bid, a total
24       again for all properties combined of
25       $30,756,000.

JANE ROSE REPORTING                National Court-Reporting Coverage
1-800-825-3341                     janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                       January 7, 2022

Page 5

1           Now for today, what we're going to
2     do is we're going to go back to the
3     aggregate bidders, meaning the people who
4     bid on individual properties, and we're
5     going to ask you if you would like to
6     increase your bid.  The reason being is in
7     order to upend the stalking horse bidder of
8     17,350,000, we must -- you must, as the
9     aggregate bidders, reach a minimum of
10    $17,800,000.  That number is inclusive of
11    the stalking horse protection.
12          So once again, we're currently at
13    $15,650,000 for the aggregate bidders, and
14    you must get to a total of $17,800,000 in
15    order to upend the stalking horse bidder.
16    That is a differential of $2,150,000.  So
17    what we'll do soon is I'll be going down the
18    list of properties and I will announce the
19    property and I will announce the current
20    high bidder, and I will ask if you would
21    like to increase your bid.
22          To clarify, we are not reopening
23    the bidding.  Meaning, if you are the high
24    bidder, you can increase your bid, but
25    you're not competing against other

Remote Proceedings Of                                     FINAL COPY
Rosewood Realty Auction                                   January 7, 2022

                                                              Page 6
1          individuals, as you were the high bidder
2          yesterday, to clarify that.  Also to
3          clarify, all of these auctions and all of
4          the numbers and decisions are all up to
5          Court approval after this auction.  You will
6          not be sold, you will not be guaranteed
7          anything at this auction.  The Court will
8          decide upon whom the high -- high bidder
9          will be.
10              MR. JOEL WERTZBERGER:  If the Court has to
11     approve it anyway, why aren't we opening
12     everything for bidding?
13              MR. MATTHEW MANNION:  What's that?
14              MR. JOEL WERTZBERGER:  If the Court has to
15     approve it anyway, why don't we open everything
16     for bidding?
17              MR. MATTHEW MANNION:  Open everything for
18     bidding?
19              MR. JOEL WERTZBERGER:  Yeah.
20              MR. MATTHEW MANNION:  Because we had a
21     fair auction yesterday, and if you were the high
22     bidder at that moment, then you were the high
23     bidder.  Please let me finish the announcements
24     before we get to the bidding, Joel.
25              MR. JOEL WERTZBERGER:  Oaky.

Remote Proceedings Of                              FINAL COPY
Rosewood Realty Auction                         January 7, 2022

Page 7

1          MR. MATTHEW MANNION:  Okay.  Let's say if
2    all of the aggregate bidders do upend the stalking
3    horse and you go above 17,800,000, I will then go
4    back to the stalking horse and ask if FREO would
5    like to increase their bid, and we will go back
6    and forth until we have the highest number that we
7    can come to.
8          So, once again, I know I've said it
9    before.  I'm going to repeat myself a little bit
10   here, but I want to make sure everyone is clear on
11   what's going on.  Currently, all of the bidders
12   combined are 16 million -- sorry, $15,650,000.
13   You must increase by a minimum total of 2,150,000
14   to reach 17,800,000 in order to upend the stalking
15   horse bidder.
16         At this time, I'm going to ask
17   Mr. Frankel, Mr. Mark Frankel if he would like to
18   make any announcements prior to the bidding
19   beginning.
20         MR. MARK FRANKEL:  No, I don't.
21         MR. MATTHEW STEIN:  Mr. Mannion, this is
22   Matthew Stein, just one clarifying question, and
23   that is, were any of the individual high bidders
24   who are now being given the opportunity to up
25   their bid, were they informed of this opportunity

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 7, 2022

Page 8

1   prior to the recommencement of this auction this

2   afternoon?

3            MR. MATTHEW MANNION:  Mark, could you

4   opine on that?

5            MR. MARK FRANKEL:  I believe they were

6   told that that would be considered at this

7   auction, yes.

8            MR. MATTHEW MANNION:  Thank you.  All

9   right, Mr. Goldwasser, would you like to make any

10  announcements before the --

11           MR. DAVID GOLDWASSER:  Just in order to go

12  along with what Mr. Frankel said and to clarify as

13  to the question that was asked, we did inform the

14  high bidders from yesterday that this process will

15  be going on and that they should evaluate their

16  numbers prior to getting on so that in real time,

17  they can make and evaluate their positions, and go

18  along the way of the directive for the process of

19  this auction.

20           MR. MATTHEW MANNION:  Thank you,

21  Mr. Goldwasser.

22           All right.  So the first property we'll

23  be -- we will be going back to the high bidder is

24  the Greene Avenue properties 1125, 1127, 1129,

25  1131, 1133 Greene Avenue, Brooklyn 11221.

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

Page 9

1            Maguire Capital, are you here?

2            MR. AZRAK:  I'm here.

3            MR. MATTHEW MANNION:  For the record,

4    yesterday -- at yesterday's auction, Maguire

5    Capital was the high bidder.  Their high bid was

6    $2,500,000.

7            Now, Maguire Capital, I would ask you for

8    the record now if you would like to increase your

9    bid.  Please note that if -- if the aggregate

10   bidders do not increase their bids then the

11   bidding has been for naught and it will -- it's up

12   to the Court, but there's a significant

13   differential between the bulk offer and aggregate

14   bidders.  You can read between the lines on that.

15   So I will let you go, $2,500,000.

16           Would you like to increase your bid,

17   Maguire Capital?

18           MR. AZRAK:  Yes.

19           MR. MATTHEW MANNION:  What would you like

20   to increase your bid?

21           MR. AZRAK:  I don't know how this -- this

22   doesn't really make sense to me.  Because how

23   could I decide what I want to bid on this property

24   if I don't know -- I'd rather do it as an

25   aggregate for me because I own -- I took the

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

```
                                                 Page 10
1    majority of these down, and I'd like to give you

2    an aggregate number of what I would like to be at.

3            MR. MATTHEW MANNION:  Okay.  So if you

4    want to give an aggregate number, then how would

5    you --

6            MR. AZRAK:  I would rather wait for Joel

7    and Josef to make their decisions, given that

8    they're smaller percentage of these deals.  And

9    then I can see how I would like to play it, just

10   because it's only fair.

11           I don't want to give something and then it

12   just doesn't make any sense at that point because

13   if I can't hit the number -- if we're not going to

14   hit the number, what's the point of even

15   overbidding?  I might as well hold my bids.

16           MR. MATTHEW MANNION:  Joel -- Josef are

17   you here?

18           MR. JOSEF MICHELSON:  I'm here.

19           MR. MATTHEW MANNION:  Okay.

20           MR. JOSEF MICHELSON:  The same way it

21   doesn't make sense for him to bid against himself,

22   it doesn't make sense for me to bid against

23   myself.  Especially when I overpaid more than what

24   the debtor to begin with asked for.

25           MR. MATTHEW MANNION:  Okay.  Would you
```

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of                      FINAL COPY
Rosewood Realty Auction                    January 7, 2022

Page 11

1   three like to place an aggregate bid together?   I
2   mean, I'm --
3          MR. JOEL WERTZBERGER:   Matthew, I have
4   never been by a chessboard game at an auction.   I
5   believe -- and I'm saying it into the record, and
6   hopefully someone will look at this one day, and I
7   believe that the concept that it has to be all
8   bids cash or all bids credit is a fallacy, they
9   could be combined.
10          Some properties you have credit bids, some
11  property you have cash bids.   They aggregated over
12  $20 million, and I believe that the debtor is
13  being wronged and -- and it makes zero sense.
14  Credit should take the same preference as cash,
15  the combination of it is in excess of $20 million
16  in the back of my memory, and it's way more than
17  the aggregate bid from the credit bid itself.   And
18  I believe that the process is wrong, and we
19  reserve all rights.
20          MR. MATTHEW MANNION:   Your statement has
21  been noted, Joel.
22          Okay.   So going down the list again for
23  the properties.   So the -- okay.   So the
24  individual bidders from yesterday, you have no
25  interest in increasing your bids, is that what I'm

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

```
                                              Page 12
 1   hearing?
 2          MR. JOEL WERTZBERGER:  We want to -- we
 3   want to submit a bid into the record for 1125,
 4   1123 Greene Avenue for 3.5 million.  You can
 5   reject it, but it's in the record.
 6          We are interested in the same terms to buy
 7   it for 3.5 million.
 8          MR. AZRAK:  Yeah, he can't bid on it,
 9   obviously, because it's closed.
10          MR. JOEL WERTZBERGER:  I placed the bid,
11   the Court will decide if I --
12          MR. MATTHEW MANNION:  As I stated
13   before -- as I stated before, the bidding from
14   yesterday still holds.  So we are not reopening
15   the bidding.
16          MR. JOEL WERTZBERGER:  We are -- we are
17   submitting a bid that you will show the judge with
18   your whole spiel from your preamble that you did,
19   and the judge might say, you know what, I will
20   accept the bid because the bidding process was
21   very confusing all together.
22          MR. MATTHEW MANNION:  Understood, Joel.
23          MR. JOEL WERTZBERGER:  Thank you.
24          MR. MATTHEW MANNION:  All right.  Joel,
25   would you like to increase your bids from
```

Remote Proceedings Of                        FINAL COPY
Rosewood Realty Auction                      January 7, 2022

Page 13

1   yesterday for 618 Lafayette and/or 834
2   Metropolitan?  For 834 Metropolitan, you were at 1
3   million 550; and for 618 Lafayette, you were at
4   1 million 500.
5          MR. JOEL WERTZBERGER:  Am I top bidder on
6   618 Lafayette?  I think your chessboard is messed
7   up, a little bit mixed up, you know.  You have to
8   relocate your chessboard.
9          MR. MATTHEW MANNION:  Bear with me one
10  moment.  I have Joel 1,500,000 for 618 Lafayette.
11         MR. JOEL WERTZBERGER:  I would know if I
12  won an auction yesterday.  Maybe there's another
13  Joel.  Joel Wertzberger did not win 618 Lafayette.
14         MR. MATTHEW MANNION:  Okay.
15         MR. JOEL WERTZBERGER:  I placed a combined
16  bid on South 4th and 834 Metropolitan Avenue.  Is
17  that what you're referencing?
18         MR. MATTHEW MANNION:  For 834 Metropolitan
19  Avenue by itself, I have a bid of 1 million 550
20  from you.
21         MR. JOEL WERTZBERGER:  Okay.
22         MR. MATTHEW MANNION:  Would you like to
23  increase that bid?
24         MR. JOEL WERTZBERGER:  Hold a second.  One
25  second.  We'll increase it, but it's not yet

Remote Proceedings Of                                    FINAL COPY
Rosewood Realty Auction                                  January 7, 2022

---

Page 14

1   meaningful to discussion, so we will increase it
2   $50,000.
3          MR. MATTHEW MANNION:  How much, 50,000?
4          MR. JOEL WERTZBERGER:  Yeah.
5          MR. MATTHEW MANNION:  Okay.  So I have
6   Joel at 834 Metropolitan Avenue, 1,600,000.  Thank
7   you, Joel.
8          Give me one moment, everybody.
9          Thank you, everybody.  Sorry for the wait.
10  So we will now go through the list of the
11  individual properties one more time.  If we go
12  around and around, maybe we can do small
13  incriminate increases on the aggregate bidders'
14  parts.  That way you know you're not, you know,
15  putting the cart before the horse and increasing
16  your bids significantly, only to have someone
17  else --
18         MR. AZRAK:  (Indecipherable.)
19         MR. MATTHEW MANNION:  What's that?
20         MR. AZRAK:  So are you opening up the
21  bidding on every property to every individual on
22  the screen right now?
23         MR. MATTHEW MANNION:  No, no.  If you were
24  the high bidder and we will honor what happened
25  yesterday.  So Maguire Capital, for instance,

---

JANE ROSE REPORTING                National Court-Reporting Coverage
1-800-825-3341                     janerose@janerosereporting.com

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 7, 2022

Page 15

1   2.5 million is your current bid for the Greene
2   Avenue, and I'm going to ask you again if you want
3   to increase it.
4             MR. AZRAK:  I want to increase that bid to
5   4.6 million.
6             MR. MATTHEW MANNION:  4.6 million to
7   Maguire Capital.
8             MR. AZRAK:  Yes.
9             MR. MATTHEW MANNION:  Thank you.  Okay.
10  Going to -- do you want to add anything, Maguire
11  Capital, I'm going to -- do you -- I'm going to go
12  down the list first.
13            And next is Jefferson Avenue.  Your high
14  bid was 925,000.  Do you want to increase your bid
15  at all?
16            MR. AZRAK:  No.
17            MR. MATTHEW MANNION:  Okay.  And next up
18  is Maguire Capital at 92 South 4th Street.  I have
19  2 million --
20            MR. AZRAK:  Do me -- do me a favor,
21  please.  Can you give me the aggregate right now
22  that stands?
23            MR. MATTHEW MANNION:  Yes.  Stand by.
24  It's probably pretty close, but we'll find out.
25  One moment.  We're currently at 17,550,000.  So

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

```
                                              Page 16
 1   you're 15,000 from --
 2          MR. AZRAK:  No, Joel -- Joel went up
 3   50,000 on Metropolitan, correct?
 4          MR. MATTHEW MANNION:  He did.  You're
 5   right.  So now we're at 17 million -- 17,800,000.
 6          MR. AZRAK:  Okay.
 7          MR. MATTHEW MANNION:  So that -- FREO, are
 8   you on the line?
 9          MR. AZRAK:  You're good, we're good.
10          MR. MATTHEW MANNION:  FREO, are you on the
11   line?
12          FREO:  Yes.
13          MR. MATTHEW MANNION:  So currently the
14   aggregate bidders have gone up to 17,800,000,
15   which was the minimum price to upend your stalking
16   horse bid to include your protection.
17          So at this time, I would ask if you would
18   like to increase your bid.
19          FREO:  And what are the increments?
20          MR. MATTHEW MANNION:  We will do
21   increments of $50,000.
22          FREO:  Okay.  Can we get two minutes to
23   confer with the team there?
24          MR. MATTHEW MANNION:  Yes.
25          FREO:  Okay.  We'll be back.
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

Page 17

1          MR. AZRAK:  Matthew.
2          MR. MATTHEW MANNION:  Yes.
3          MR. AZRAK:  Is he going to be bidding
4    increments on the aggregate?
5          MR. MATTHEW MANNION:  He will be
6    bidding...
7          MR. AZRAK:  Because it's not -- it
8    wouldn't be fair to us because we're three
9    individuals.  How can we bid?
10          MR. MATTHEW MANNION:  He's going to be
11    bidding on top of his bulk bid with your
12    protection.
13          MR. AZRAK:  How is he going to be able to
14    bid?
15          MR. MATTHEW MANNION:  So we're going to go
16    back to you.  So if he increases his bid, I'm
17    going to go back to the aggregates and ask for the
18    properties that have not increased yet, if they
19    would like to increase.
20          MR. AZRAK:  Okay.
21          MR. MATTHEW MANNION:  And we'll go back
22    and forth.
23          MR. AZRAK:  Okay.
24          MR. MATTHEW MANNION:  So that way, he's
25    not going to submit a bid, and it will not be

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

Page 18

1   knocked out.  We're going to keep going.

2           MR. AZRAK:  Okay.

3           MR. MATTHEW MANNION:  So, so far while

4   they're deliberating, other properties that we

5   haven't gotten to yet, 92 South 4th Street, that's

6   a Maguire Capital at 2,250,000.

7           After that we have 325 Franklin Avenue,

8   again Maguire Capital, $2,625,000.

9           Next is 53 Stanhope that's at a million

10  for Maguire.

11          And lastly is 263 18th Street Brooklyn,

12  New York for 1,600,000.

13          MR. AZRAK:  Okay.  Matt, FREO is ready to

14  go up 100,000 from here.  So 17.9, right?

15          MR. MATTHEW MANNION:  17,900,000 for FREO.

16  Okay.  Received.  So at this point, I'm going to

17  go down the list of properties we haven't gotten

18  to yet.  And than once we finish that, if you've

19  upended the stalking horse again, we'll go back to

20  the stalking horse.  If you haven't, we'll go back

21  to the properties, and we'll keep -- I'm sorry, my

22  video is not on.  There we go.  Hello, everybody.

23  Okay.

24          So up next, just so everyone is aware of

25  what's going on, right now we have aggregate

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

```
                                            Page 19
 1   bidders who have 17,800,000.
 2        MR. AZRAK:  One second.  I don't like the
 3   fact that you're going to call out a property and
 4   then if I want to bid more on it, I want the
 5   ability to keep bidding on that one property.  Is
 6   that okay?
 7        MR. MATTHEW MANNION:  Yeah.  This is
 8   not -- there's no final bids, are you saying that
 9   like --
10        MR. AZRAK:  Close down -- we're going to
11   buy property, just keep the properties open that I
12   can keep bidding on the exact address.
13        MR. MATTHEW MANNION:  Yes, you can
14   continue to increase your bids.
15        MS. KIM LONGO:  Matthew, this is Kim,
16   FREO's counsel.
17        MR. MATTHEW MANNION:  Yes.
18        MS. KIM LONGO:  I just want to point out
19   that per purchase and sale agreement, it does
20   clarify that we will receive a continuing cash
21   credit towards each of our bids in the amount
22   equal to the breakup fee.  So that part of 17-9 is
23   a credit of our breakup fee.
24        MR. MATTHEW MANNION:  Understood.
25        MS. KIM LONGO:  Thank you.
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

```
                                              Page 20
 1          MR. MATTHEW MANNION:  All right.  Next up
 2   is -- Maguire Capital, do you want go back to
 3   increase any from previous properties we already
 4   discussed, or do you want me to go down to the new
 5   ones?
 6          MR. AZRAK:  You can go to the new ones
 7   now.
 8          MR. MATTHEW MANNION:  92 South Street --
 9   92 South 4th Street.  Currently at 2,250,000.  Do
10   you want to increase that at all?
11          MR. AZRAK:  I would like to increase that
12   by a hundred thousand.
13          MR. MATTHEW MANNION:  A hundred thousand.
14   Maguire Capital's new price for 92 South 4th
15   Street is $2,350,000.  Thank you.
16          Josef, I'm going come back up to you.  Do
17   you want to increase your bid at all?
18          MR. JOSEF MICHELSON:  If I have to, I
19   will.  But let's say -- first of all, where the
20   aggregate numbers are holding.
21          MR. MATTHEW MANNION:  Yes.  So we're at
22   17,000 -- 17 million 900 right now.
23          So, all right.  FREO, I'm going to come
24   back to you now.  Are you willing to increase your
25   bid once again?  Increments for 50,000.
```

JANE ROSE REPORTING                National Court-Reporting Coverage
1-800-825-3341                     janerose@janerosereporting.com

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 7, 2022

```
                                              Page 21
 1            FREO:  We'll go up another 50,000.
 2            MR. MATTHEW MANNION:  Okay.  So FREO's new
 3    bid, 17,950,000.  Okay.
 4            Josef, come back to you.  So FREO's
 5    current bid 17 million 950 for the bulk.
 6    Aggregate right now is 17 million 900.
 7            Josef, I'm going to come to you.  You had
 8    1.7 million for 568 Willoughby.
 9            MR. JOSEF MICHELSON:  I will go up 50,000.
10            MR. MATTHEW MANNION:  Okay.  So we're
11    going to put you up to 17 million 9.  One moment.
12    One million 750.  1,750,000 to Josef.
13            FREO, I will go back to you.
14            FREO:  Come in.
15            MR. MATTHEW MANNION:  What's that?
16            FREO:  How much time do we have for a
17    counterbid?
18            MR. MATTHEW MANNION:  You can -- you can
19    take a minute.  I would ask you not to take more
20    than two minutes.
21            FREO:  Okay.
22            MR. MATTHEW MANNION:  So we can get out of
23    here at a decent time today, but take your time.
24            The properties we haven't gotten to while
25    they deliberate, 325 Franklin Avenue, Maguire, 2
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 7, 2022

Page 22
1    million 625.
2           53 Stanhope, Maguire, 1 million.  263 18th
3    Street, Maguire, 1.6.
4           MS. KIM LONGO:  Hi, Matthew?
5           MR. MATTHEW MANNION:  Yes.
6           MS. KIM LONGO:  Hi.  It's Kim Longo on
7    behalf of FREO.  So we just wanted to point out
8    that the contract -- hold on one second, let me
9    turn my volume.  The contract as stated doesn't
10   have a set breakup fee; rather, it's 2 percent
11   over whatever the existing bid is.
12          So we think that the bids right now aren't
13   actually going in accordance with how they should
14   be going.  It should be, you know, 2 percent --
15   the bid has to be the breakup fee plus -- I'm
16   sorry, the bid plus the 2 percent breakup fee.  So
17   the bid has to be enough to cover that amount
18   which has been going up exponentially.  So we
19   think that has to be calculated each time.  You
20   understand?
21          MR. MATTHEW MANNION:  Okay.  So I believe
22   I understand.
23          MR. MATTHEW STEIN:  Just to be clear --
24   this is Matthew Stein on behalf of Brooklyn
25   Lender.  We have a standing objection to the

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 7, 2022

Page 23

1    allowance of that credit bid.

2         MR. MATTHEW MANNION:  Okay.

3         MR. MATTHEW STEIN:  Excuse me, excuse me,

4    I misspoke.  The allowance of the breakup fee.  It

5    has not been authorized by the Court.  We also

6    think there's no benefit to the estate for such a

7    breakup fee to be escalating as bidding increases.

8         MS. KIM LONGO:  All right.  And we would

9    refer to the court orders and similarly on the

10   record indicate that the breakup fee is

11   authorized.

12        And any event, we are where we are here,

13   and I believe the bidding has to be in accordance

14   with the stalking horse contract.

15        MR. JOEL WERTZBERGER:  I believe that once

16   we increase the bid more than 2 percent, that

17   further increase doesn't have to keep increasing

18   each bid with the -- in the way you see it, I

19   believe you're wrong.

20        MS. KIM LONGO:  Right.  Because so -- I'll

21   read the contract:  "Seller will pay purchaser a

22   breakup fee of $347,000 or 2 percent of the

23   winning bid, whichever is higher."

24        MR. JOEL WERTZBERGER:  Okay.  Therefore,

25   every increase in every bid has to be the same two

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                       January 7, 2022

```
                                                    Page 24
 1   percent.  You've made an initial bid, we -- we
 2   increased it with the amount needed, and now we
 3   can bid in $5,000 increment.  It's up to the
 4   auctioneer.
 5           MS. KIM LONGO:  Right.  I mean, how we bid
 6   it is -- you know, we're all open to how the math
 7   gets done, but it has to be 2 percent of the
 8   winning bid.  So if the winning bid is, you know,
 9   17 -- what are we at now, 17-95.  You know, the
10   breakup fee has to be 2 percent of that.
11           You know, however -- you know, however you
12   see it best to conduct through the auction with
13   those parameters in mind.
14           MR. JOEL WERTZBERGER:  Okay.  You instruct
15   the auction, but you're wrong.  It's noted that
16   the increase to the stalking horse breakup fee is
17   there.
18           MR. MATTHEW MANNION:  It's 2 percent.
19           MR. JOEL WERTZBERGER:  We can still bid
20   5,000 increments.  It's up to the auctioneer.
21           MS. KIM LONGO:  If you bid the 5,000
22   increments, then -- you can still bid in
23   increments but you, you know, a larger -- with the
24   understanding that the 2 will go to us in any
25   event.
```

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 7, 2022

Page 25

1        MR. JOEL WERTZBERGER:  Of course.  Thank
2   you.  Getting rich.
3        MS. KIM LONGO:  I believe that makes
4   sense.  Manny, I know you're on the line.  So does
5   that make sense to you?
6        FREO:  Yeah, it does.  So we'll keep
7   continuing with the bidding here.
8        MS. KIM LONGO:  We'll continue and we'll
9   reserve our rights.
10       MR. MATTHEW MANNION:  Okay.  So FREO is
11  ready to bid?
12       FREO:  We'll up our bid by 50,000.
13       MR. MATTHEW MANNION:  An even 18 million.
14  18 million by FREO in the bulk bid.  Thank you.
15  All right.  Moving on.
16       Properties we have not gotten to yet.  We
17  have 325 Franklin.  325 Franklin, that was to
18  Maguire, 2 million 625.  2 million 625 to Maguire
19  Capital.  Would you like to increase at all?
20       MR. AZRAK:  We'll increase it 50,000.
21       MR. MATTHEW MANNION:  50,000.  18 million
22  to the aggregate bidders.  Going back to FREO.
23       FREO:  Give us one minute.  We'll be right
24  back.
25       MR. MATTHEW MANNION:  Okay.

Remote Proceedings Of           FINAL COPY
Rosewood Realty Auction         January 7, 2022

Page 26

1          MS. KIM LONGO:  Hi, Matthew.

2          MR. MATTHEW MANNION:  Yes.

3          MS. KIM LONGO:  So FREO was just asking

4  for confirmation from Mark Frankel on the record,

5  that his understanding of our cash credit that we

6  get towards each of our bid with respect to the

7  breakup free is also the understanding.  It's in

8  the contract, but they'd like it on the record.

9  But it's also his understanding of how our bids

10  would work.

11        So the breakup fee portion of 2 percent

12  would go to -- stay with FREO rather than going

13  back to the estate if we were to be the winner.

14        MR. MARK FRANKEL:  Confirmation that your

15  breakup 2 percent is on the total -- gross bid,

16  the winning bid.

17        MS. KIM LONGO:  No, that -- if the -- if

18  FREO turns out to be the winning bidder, that 2

19  percent of that stays with FREO as the credit

20  portion of their bid which is in the contract.

21        MR. MARK FRANKEL:  Can you point out to me

22  the section in the contract and allow the auction

23  to continue?

24        MS. KIM LONGO:  Of course.  It's paragraph

25  1.04, the last sentence of 1.04 in the contract.

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 7, 2022

```
                                              Page 27
 1            MR. MARK FRANKEL:  I mean, I can't
 2     really -- it's ultimately going to be contested in
 3     a decision for the Court; and I mean, your
 4     contract has not been approved by the Court.  It's
 5     a stalking horse subject to higher and better.  So
 6     I can't opine that anything in that contract is
 7     going to be approved by Judge Drain.  It's his
 8     decision, but I can look at 1.04 and get back to
 9     you on -- on how I read it.
10            MR. JOEL WERTZBERGER:  We want clarity
11     from the bidder if the bidder -- if they're
12     bidding really $300,000 less.  This is really very
13     important.  They have to say on the record what
14     the bid is, 2 percent less or not, because if it
15     is 2 percent less, then they're not bidding real
16     money.
17            MS. KIM LONGO:  It will be the same amount
18     of money that goes to the estate one way or the
19     other, there's no -- there's no penalty that's
20     given to FREO by virtue of --
21            MR. MATTHEW STEIN:  Brooklyn Lender
22     objects.  Brooklyn Lender objects to any --
23     there's no -- there's no -- a credit bid and a
24     breakup fee are not the same thing.  FREO's bid is
25     an all-cash bid.  There is no credit portion of
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

```
                                              Page 28
 1   any component of the bid to the extent that the
 2   agreement provides as such, which I don't believe
 3   it does, but to the extent it does, the Court has
 4   never even reviewed -- let alone approved -- the
 5   draft agreement that FREO entered into the
 6   debtors, it is completely extrajudicial, and
 7   there's no authority under the bankruptcy code or
 8   any decision in this case authorizing --
 9   authorizing such treatment --
10           MR. MATTHEW MANNION:  Okay.  Understood.
11           MR. JOEL WERTZBERGER:  We are going to --
12   we are going to -- this is ridiculous.  We're
13   going to say that our bids are not increased
14   unless FREO confirms that they're not getting
15   2 percent credit in their own bid that they win.
16   Otherwise, they're bidding against us with play
17   money that we believe is not real.
18           So they need to state what their bid is.
19   A bid with a credit or bid without a credit, net
20   to the debtor.  What is the bid.  You have to ask
21   them because they're using phantom money to bid
22   against us.  It just doesn't make sense.
23           MS. KIM LONGO:  With all due respect, this
24   is a standard provision and it's --
25           MR. JOEL WERTZBERGER:  It's not standard,
```

Page 29

1  I've been involved in many bankrupts, and I've
2  never heard a stalking horse bidder saying that
3  they -- if they win the bid, they're getting a
4  discount of 2 percent, never.
5          MR. MATTHEW MANNION:  All right.  All
6  right.  Kim, can you -- $17,000,000 -- or
7  $18,000,000, are you saying that you're supposed
8  to be getting 2 percent of that as a credit back?
9  Are you bidding 18,000,000?  18,000,000 is your
10 bid, and that's the amount that you're bidding?
11         MS. KIM LONGO:  18 million is our bid and
12 as same with any other bidder, the 2 percent would
13 not go to the estate at the end if we were to be
14 the winning bidder.  Same as any other bidder.
15         MR. JOEL WERTZBERGER:  So you bid --
16 they -- 360,000 less than 18 million.
17         MR. MARK FRANKEL:  Mr. Wertzberger,
18 Mr. Wertzberger, if we are making a bid subject to
19 bankruptcy court approval, that it's going to get
20 a credit, then that is something that we will
21 consider when we have to consider what is the
22 highest and best bid.
23         MR. JOEL WERTZBERGER:  But, Mark, when we
24 are increasing our bid, we cannot have a little
25 mouse bid against us and say we need to outbid

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 7, 2022

Page 30

1   them.  We have to have real people bidding over
2   here.  So if they're bidding 350,000 less, I'm
3   preserving the right to decrease the bid when it
4   comes to deferment based on the fact that there
5   was never a bidder against us.
6           MS. KIM LONGO:  I mean, I just don't see
7   how it makes a difference where the money ends up.
8   I will talk to my client offline for a moment if
9   everyone is okay with that.
10          MR. MATTHEW MANNION:  We're still waiting
11  for FREO's bid.  We're at 18 million right know.
12          MR. JOEL WERTZBERGER:  They're saying --
13  they're saying if we lose, we have a stalking
14  horse breakup; so, therefore, we can bid phantom
15  money even if we win --
16          MR. MATTHEW MANNION:  Joel --
17          MR. JOEL WERTZBERGER:  -- because if we
18  lose, we get it.
19          MR. MATTHEW MANNION:  Joel, your mic is
20  on.
21          18 million to FREO for the bulk bid.
22  FREO.
23          FREO:  Hi, Matt.
24          MR. MATTHEW MANNION:  Yes.
25          FREO:  Where is the bidding at right now?

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 7, 2022

```
                                              Page 31
 1          MR. MATTHEW MANNION:  18 million.
 2          FREO:  Okay.  We'll go up 50,000 increment
 3   right now.  And just to make it clear, that is not
 4   taking into account any sort of disputed, you
 5   know, breakup fee concepts.  But, obviously, we
 6   kind of reserve rights to challenge, you know,
 7   that bid.  But just to make it clear, that is a
 8   net number.
 9          MR. MATTHEW MANNION:  Understood.
10   18,050,000 thank you.  18,050,000 bulk to FREO.
11   All right.
12          Next up we are at Maguire for 325
13   Franklin.  325 Franklin to Maguire.  You were at
14   2 million 625 yesterday.
15          MR. AZRAK:  No, you did that already.  You
16   went to 625.
17          MR. MATTHEW MANNION:  That's right.
18          MR. AZRAK:  Maybe you should ask Joel the
19   question.
20          MR. MATTHEW MANNION:  Got it.  Next we've
21   got -- Joel, going back to 618 Lafayette, you were
22   at 1.5 yesterday.  Did you want to take that, do
23   you want to increase your bid?  You're muted
24   still, Joel.  Can you hear me?  There we go.
25          MR. JOEL WERTZBERGER:  We're still
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 7, 2022

---

Page 32

1   thinking about it.  You can move on to the next
2   property for now.
3         MR. MATTHEW MANNION:  What about 834,
4   Joel?  Do you want to increase that one again, or
5   do you want to keep it?
6         MR. JOEL WERTZBERGER:  That one, for now,
7   we keep it.  Question, I didn't hear, did they say
8   their bid is net and they're not getting a breakup
9   fee?  They confirmed it on the record, no breakup
10  fee on their bid?
11        MR. MATTHEW MANNION:  They said they
12  reserve rights, but they said it's a net bid.
13        MR. JOEL WERTZBERGER:  All right.  I
14  reserve the rights to the extent that they reserve
15  the rights if their net bid was announced that
16  it's not net and they kept the reserve of rights.
17  Automatically, the bid is not a bid, and I reserve
18  the rights to knock out their bid.
19        If they don't formally withdraw that
20  statement, I reserve my rights as well.  And I'm
21  also going to reserve my right to use, by the way,
22  this coffee cup.  I'm not going to tell you what's
23  in there, it might be a Bitcoin to bid with this
24  as well.  Reserve the rights.
25        MR. MATTHEW MANNION:  All right.  53

---

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                      January 7, 2022

Page 33

1    Stanhope for Maguire.

2           Maguire, you have the last properties we

3    haven't gotten to yet.  But 53 Stanhope is a

4    million.

5           MR. AZRAK:  Can you go back -- go back to

6    South 4th Street, and we'll raise that to --

7           MR. MATTHEW MANNION:  You increase that by

8    what?

9           MR. AZRAK:  We'll raise that by 50,000,

10   2.4 million.

11          MR. MATTHEW MANNION:  2.4 million to

12   Maguire.  Let the record state 2.4 million for

13   Maguire for 92 South 4th.  92 South 4th 2.4.

14          All right.  That puts the aggregates back

15   at 18,050,000.  Going back to FREO.

16          FREO:  Give us a minute.

17          MR. MATTHEW MANNION:  Okay.

18          MR. AZRAK:  Matt, how long do you expect

19   this to go on?  I can't stay in the office all day

20   here.  We have the Sabbath coming.

21          FREO:  We have a counterbid.  FREO.

22          MR. MATTHEW MANNION:  Okay.  Go ahead.

23          FREO:  We'll go up to 18.25 million.

24          MR. MATTHEW MANNION:  18,250,000 to FREO.

25   That's $200,000 difference for the aggregates to

JANE ROSE REPORTING                 National Court-Reporting Coverage
1-800-825-3341                        janerose@janerosereporting.com

Remote Proceedings Of                        FINAL COPY
Rosewood Realty Auction                      January 7, 2022

                                                    Page 34

1   get to.  18 million 250 for the bulk bid by FREO.
2   Aggregates, you're at 18 million 50, so you have
3   to increase by 200.
4           All right.  Going back to the list.  The
5   two we haven't gotten to yet are 53 Stanhope, 263
6   18th Street.  Those are Maguire.  We can also go
7   back to ones we've already been to.  Do we want to
8   increase our bids anywhere else, gentlemen?
9           Greene Avenue, is at 4.6.  We've got --
10  Willoughby, 1.75.  We've got 834 Metropolitan at
11  1.6 from Joel.
12          Joel, Lafayette is still at 1.5.  Any
13  interest in increasing that?
14          MR. JOEL WERTZBERGER:  To the extent --
15  this is our bid:  To the extent that FREO by
16  reserving their rights, the judge finds that they
17  were entitled to a 2 percent breakup fee, we are
18  increasing our bid with $100,000.  To the extent
19  that by reserving the right, the judge finds they
20  were never entitled to a breakup fee yet they
21  still kept the breakup fee in the bid, we are not
22  increasing our bid.  Net result is you have a live
23  bid subject to reservation of rights of FREO.
24          MR. MATTHEW MANNION:  Thank you, Joel.
25  $1,600,000 for Lafayette.  That brings --

JANE ROSE REPORTING                National Court-Reporting Coverage
1-800-825-3341                     janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

Page 35

1          MR. JOEL WERTZBERGER:  Subject to the --
2    subject to the FREO reservation of rights.
3          MR. MATTHEW MANNION:  Thank you, Joel.  18
4    million 150 is the total for aggregate.  There's
5    $100,000 differential right now between the
6    aggregate bids and FREO's bulk bid.
7          MR. AZRAK:  What's the differential?
8          MR. MATTHEW MANNION:  What's that?
9          MR. AZRAK:  What's the differential?
10         MR. MATTHEW MANNION:  100,000.
11         MR. JOEL WERTZBERGER:  I encourage
12   everyone to make the same reservation because we
13   might all save over here $400,000.
14         MR. MATTHEW MANNION:  It's a $100,000
15   differential right now between after Joel's
16   $100,000 increase, there's a $100,000 difference.
17         MR. AZRAK:  Okay.  We'll increase 50,000
18   on Jefferson.  50,000 on Franklin.
19         MR. MATTHEW MANNION:  Okay.  All right.
20   Bringing Jefferson up to 975,000.  And we're going
21   to bring Franklin up to 2,775,000.
22         MR. AZRAK:  No.
23         MR. MATTHEW MANNION:  You said 50,000 for
24   each, yes?  50,000, Franklin.  50,000 --
25         MR. AZRAK:  We're at 2675, correct?

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

```
                                            Page 36
 1            MR. MATTHEW MANNION:  2675.
 2            MR. AZRAK:  How did you get the 2775?
 3   It's a hundred thousand.
 4            MR. MATTHEW MANNION:  I had a note that
 5   you increased Franklin.
 6            MR. AZRAK:  What?
 7            MR. MATTHEW MANNION:  I had a note that
 8   you had already increased Franklin.
 9            MR. AZRAK:  Yeah, from 2625 to 2675.
10            MR. MATTHEW MANNION:  All right.  Bear
11   with me one moment.
12            MR. AZRAK:  Yeah, I have the aggregate at
13   18250 right now, and I can read them off to you if
14   you like.
15            MR. MATTHEW MANNION:  Bear with me one
16   second.
17            So Franklin is at 2725, yes?  Maguire
18   Capital?  2,725,000 for Franklin.  One second.
19            All right.  We've got the aggregate at
20   18 million 250, which is putting the ball back in
21   FREO's court for the bulk.
22            FREO:  We'll need a minute.  Sorry, guys.
23            MR. JOEL WERTZBERGER:  Of course, the
24   bidders are objecting to FREO's ability to make a
25   bid without clarity if it's 2 percent less than
```

Remote Proceedings Of                          **FINAL COPY**
Rosewood Realty Auction                        January 7, 2022

Page 37

1    what they're bidding.

2         Madeline, you're taking records of all the

3    objections, right?

4         THE REPORTER:  Yes, sir.

5         MR. JOEL WERTZBERGER:  Madeline?

6         THE REPORTER:  Yes.

7         MR. JOEL WERTZBERGER:  Are you taking

8    records of our objections?

9         THE REPORTER:  I am, sir. I am taking down

10   every word.

11        MR. JOEL WERTZBERGER:  Okay, thank you.

12   Thank you very much.

13        MR. MATTHEW MANNION:  18 million 250 over

14   to FREO.  18 million 250.

15        Gentlemen, I do want to afford everyone

16   time, but we should try to keep the pauses to a

17   minimum.  It is taking longer than expected.

18        MR. ABE ROSE:  (Indecipherable.)

19        MR. MATTHEW MANNION:  Abel Rose, are

20   you -- are you with FREO, or who are you with?

21        MR. ABE ROSE:  Hello.

22        MR. MATTHEW MANNION:  Hello.  Abe Rose,

23   can you identify yourself, please.

24        MR. ABE ROSE:  Abe Rose, going for 568

25   Willoughby.

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                      January 7, 2022

Page 38

1           MR. MATTHEW MANNION:  Josef, is that
2      Josef?
3           MR. JOSEF MICHELSON:  Matthew, he's with
4      me, yes.
5           MR. MATTHEW MANNION:  Can I go ahead and
6      mute him and you --
7           MR. JOSEF MICHELSON:  I'm sorry.
8           MR. MATTHEW MANNION:  Josef, I'm going to
9      mute him, and you can talk when you need to bid.
10     Okay?  Josef, can you hear me?  Josef Michelson.
11     Josef, please send me a message in the chat if you
12     can hear me.
13          FREO, 18 million 250.
14          MR. JOSEF MICHELSON:  So, Matthew, what's
15     our aggregate versus theirs?
16          MR. MATTHEW MANNION:  Currently, they're
17     both the same right now.  With aggregates at 250
18     could just place the last bid, it's now up to FREO
19     if they would like to increase their bid.  If not,
20     then we'll go back to the aggregate for a small
21     increase to have the higher bid.
22          But right now, the aggregate is at 250,
23     they just placed the last bid.  Current bid is
24     going to FREO to see if they want to increase.
25          Was that Josef that talked right there?

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                       January 7, 2022

Page 39

1          MR. AZRAK:  Matthew.

2          MR. MATTHEW MANNION:  Yes.

3          MR. AZRAK:  I mean, it's a little

4    ridiculous that we're waiting five minutes and

5    we're bidding in one second.  I mean, you gotta --

6          MR. JOEL WERTZBERGER:  You are allowed to

7    close out the auction now.  We're in the lead,

8    they have a vague bid.  You should close off the

9    auction.

10         MR. AZRAK:  We're bidding after one

11   second, and these guys take ten minutes every

12   time.

13         MR. MATTHEW MANNION:  I know, gentlemen --

14   gentlemen, I know it's taking a long time.

15         MR. JOEL WERTZBERGER:  You're allowed to

16   close off the auction, and I'm going to leave and

17   I'm going to leave in two minutes.  You're going

18   to interfere with the auction process.  It's

19   before Shabbos, we have to close it up.

20         MR. MATTHEW MANNION:  All right.  FREO,

21   can you please place a bid?

22         MR. JOEL WERTZBERGER:  Going once, going

23   twice.  Do it the right way.

24         MR. MATTHEW MANNION:  Well, there's a lot

25   of money on the line here, and if you're --

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

```
                                              Page 40
 1           MR. JOEL WERTZBERGER:  We don't even know
 2   if there's a lot of money on the line.  They might
 3   have a lesser bid than us, they reserve the right
 4   that they have a lesser bid than us and --
 5           MR. MATTHEW MANNION:  I understand --
 6           MR. JOEL WERTZBERGER:  -- you're waiting
 7   ten minutes --
 8           MR. MATTHEW MANNION:  I understand your
 9   frustration.
10           MR. JOEL WERTZBERGER:  And you can
11   decrease the amount to the debtor.  Maybe you are
12   decreasing the amount to the debtor.
13           MR. MATTHEW MANNION:  My job here is to
14   make sure we have a good process and that
15   everything goes --
16           MR. JOEL WERTZBERGER:  When you do that
17   amount, maybe Bitcoin in this cup is also part of
18   the bid.  And you are increasing the debtor --
19           MR. MATTHEW MANNION:  I'm giving everyone
20   enough time to --
21           MR. JOEL WERTZBERGER:  -- using ten
22   minutes each time.  You're decreasing the amount
23   of the bid, you're interfering in the value for
24   the debtor over here.
25           MR. MATTHEW MANNION:  I'm trying to get
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

```
                                              Page 41
 1    the highest number we can, Joel.
 2            MR. JOEL WERTZBERGER:  It's not the
 3    highest.  You're not paying attention.  They're
 4    2 percent less.  You don't understand.  The
 5    highest may be for Rosewood's commission, but it's
 6    not the highest to the debtor.
 7            MR. MATTHEW MANNION:  FREO, can you please
 8    place a bid?  FREO, can you hear me?
 9            MR. JOEL WERTZBERGER:  Matthew, going
10    once, going twice.  Go for it.
11            MR. MATTHEW MANNION:  FREO, can you hear
12    me?  FREO?
13            MR. JOEL WERTZBERGER:  Matthew, going
14    once.  Do the right thing.
15            MR. MATTHEW MANNION:  FREO, I need FREO to
16    place a bid if they're interested in placing a
17    bid.  If they're all done, they'd let me know that
18    they're done.  FREO?
19            MR. JOEL WERTZBERGER:  Okay.  Maguire, can
20    we all walk out of the room if Matthew is not
21    conducting an auction?
22            MR. MATTHEW MANNION:  Gentlemen, please,
23    please we're not --
24            MR. JOEL WERTZBERGER:  We're going to walk
25    out of the room.  You're interfering in the
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                   January 7, 2022

```
                                          Page 42
 1   process.
 2            MR. MATTHEW MANNION:  Please do not leave.
 3            MR. AZRAK:  Matthew, do not -- this is not
 4   an auction.  An auction --
 5            MR. JOEL WERTZBERGER:  This not an
 6   auction.
 7            MR. AZRAK:  An auction has time --
 8            MR. JOEL WERTZBERGER:  Matthew, knock it
 9   down.  Do the right thing.
10            MR. MATTHEW MANNION:  FREO, last chance.
11            MR. JOEL WERTZBERGER:  Matthew, knock it
12   down.  Do the right.
13            MR. MATTHEW MANNION:  FREO, can you hear
14   me?  FREO?
15            MR. JOEL WERTZBERGER:  Matthew, knock it
16   down.  Do the right thing.  We're all walking out
17   of the room.
18            MS. KIM LONGO:  Matthew, we're calling for
19   FREO to come back right now.
20            MR. MATTHEW MANNION:  Okay.  We need -- we
21   need them right now.
22            MS. KIM LONGO:  Okay.
23            MR. JOEL WERTZBERGER:  Matthew, knock it
24   down.  Do the right thing.
25            MR. MATTHEW MANNION:  Mr. Wertzberger,
```

Remote Proceedings Of                              FINAL COPY
Rosewood Realty Auction                            January 7, 2022

Page 43

1   we're doing everything above-board here. We're
2   giving everyone enough time. There's a lot of
3   money on the table right now --
4           MR. JOEL WERTZBERGER:  They're giving a
5   bid that's less than our bid, they're giving a bid
6   that is effectively less than our bid.  And in
7   their own words --
8           MR. MATTHEW MANNION:  That's not true --
9           MR. JOEL WERTZBERGER:  And in their own
10  words they're waiting for them.
11          MR. MATTHEW MANNION:  All right.  Well --
12  FREO -- Kim, can -- Kim, what's -- is FREO going
13  to be bidding?
14          MS. KIM LONGO:  Sorry.  Yes, Matthew, give
15  us one moment please.  And we apologize for the
16  delay, but we will be coming back to you in one
17  moment.
18          FREO:  We will -- FREO will go up 50,000.
19          MR. MATTHEW MANNION:  What's that?  What's
20  that, FREO?  Say again, please.
21          FREO:  We'll go up 50,000 more.
22          MR. MATTHEW MANNION:  Okay.  18,300,000.
23          MR. JOEL WERTZBERGER:  If you clarify the
24  bid if it's 2 percent less to the debtor or not.
25  If you're still reserving your rights.

Remote Proceedings Of                              FINAL COPY
Rosewood Realty Auction                            January 7, 2022

Page 44

1        MR. MATTHEW MANNION:  18,300,000.
2        MR. JOEL WERTZBERGER:  We need
3   clarification that that's subject to the earlier
4   reservation for the 2 percent.
5        MR. MATTHEW MANNION:  18,300,000, FREO's
6   bulk auction price going back to the aggregates.
7   All right.  We haven't gone -- we haven't
8   increased or touched 53 Stanhope or 263 18th.
9        To Maguire, are you interested in
10  increasing any of those?  53 Stanhope with what is
11  one million flat to Maguire.  263 18th is
12  1.6 million to Maguire.  $50,000 difference --
13  differential right now.
14       MR. AZRAK:  I need a minute now.  Do I get
15  time?
16       MR. MATTHEW MANNION:  Yes, you get time.
17       While Maguire is thinking, we also have
18  Josef at 568 Willoughby, you're at 1 million 750
19  right now, Josef.  Are you interested in
20  increasing your bid at all?  There's a 50,000
21  differential right now between the bulk bid and
22  the aggregate.
23       Josef, can you hear me?  You're muted
24  right now.
25       MR. JOSEF MICHELSON:  I couldn't hear you.

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                    janerose@janerosereporting.com

Remote Proceedings Of                                    FINAL COPY
Rosewood Realty Auction                                  January 7, 2022

Page 45

1          MR. MATTHEW MANNION:  Okay.  Any interest
2    in increasing that bid on 568 Willoughby?
3          MR. JOSEF MICHELSON:  We're holding with
4    the aggregate from Farrow (phonetic.)
5          MR. MATTHEW MANNION:  What's that?
6          MR. JOSEF MICHELSON:  What -- where are we
7    holding with the aggregate numbers?
8          MR. MATTHEW MANNION:  There's a 50,000
9    differential between you and the bulk bidder right
10   now.  Right now, Maguire is still --
11         MR. JOEL WERTZBERGER:  Well, we're not
12   sure -- we're not sure there's a $50,000
13   differential because FREO says maybe yes, maybe
14   no.  So we all are bidding. Maybe yes, maybe no.
15         SPEAKER:  I agree with Joel here, on the
16   record.
17         MR. MATTHEW MANNION:  What does it mean
18   you agree?  Specify.  Say exactly what you agree.
19   Say it out loud.
20         MR. MARK FRANKEL:  Mr. Wertzberger, for
21   your clarification on our position on this, we --
22   we believe -- we do disagree with FREO's
23   interpretation.  We will urge the Court to adopt
24   the requirement that they pay in full.  But you're
25   making it hard for us to -- when we have to decide

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

Page 46

1    which is the highest and best bid.  If we're going
2    to have to win the litigation for yours to be
3    highest and best, that's going to be a problem.
4           But I have read the provision.  I see it
5    differently.  I don't know what the Court is going
6    to do, or if the Court is even going to honor the
7    contract.  There's ambiguity here, and I know
8    it's -- I'm just giving you what our guidance is
9    on it.
10          MR. JOEL WERTZBERGER:  The problem there
11   is if you don't postpone the auction, you have a
12   bidder giving a $400,000 phantom bid that doesn't
13   exist in reality because they're saying we're not
14   bidding really this amount.  We're only saying
15   that --
16          MS. KIM LONGO:  I don't mean to interrupt,
17   but I can get through some of this.
18          MR. JOEL WERTZBERGER:  And Matthew is
19   holding 30-minute breaks for them or 10-minute
20   breaks for them for a bid that doesn't even exist.
21          MR. MATTHEW MANNION:  I'm also giving
22   breaks to everybody.
23          MS. KIM LONGO:  Matthew, can I speak for a
24   moment.  I think I can cut through some of this.
25   We think it's unfortunate that this provision is

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

Page 47

1   contentious and has been a problem, but we want to

2   make sure there's complete transparency and

3   clarity and everyone is on the same page with

4   respect to this auction.

5          So we are withdrawing our reservation of

6   rights as to that sentence; and any bid we put in,

7   we would expect to be treated as a full amount if

8   we were to be the winning bid.  We will not expect

9   the 2 percent discount, and if we are the losing

10  bid, we would fully, to the same extent, expect a

11  full 2 percent on the amount of the winning bid,

12  whosoever it might be.

13         So I think this provision will allow this

14  auction to go forward and stop any ongoing issues

15  that might be created in order to cause problems.

16         MR. MATTHEW MANNION:  Thank you.

17         MR. MARK FRANKEL:  Thank you.

18         SPEAKER:  Thank you very much. We

19  appreciate it.

20         MR. MATTHEW MANNION:  Going back to the

21  bidding and the auction.

22         Maguire Capital, have you come to a

23  decision yet on any of the properties, 53 Stanhope

24  or 263 18th?

25         MR. AZRAK:  I'm not through yet.  If you

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

Page 48

 1  could go to the next parties and let me think
 2  about it.  I don't want to hold the auction up.
 3       MR. MATTHEW MANNION:  Josef, you were at
 4  1 million 750 for 563 Willoughby.  Did you --
 5  would you want to increase at all -- right now,
 6  there's a 50,000 differential between the
 7  aggregate bidders and the bulk bid.  Josef, can
 8  you hear me?
 9       MR. JOSEF MICHELSON:  Can I go up
10  increments of 25,000?
11       MR. MATTHEW MANNION:  We're going to hold
12  at 50 right now, but we'll go to 25 later.  50,000
13  increment right now.
14       1.8, Josef?
15       MR. JOSEF MICHELSON:  I guess so.
16       MR. MATTHEW MANNION:  Josef, can you say
17  1,800,000 just for the record?  Josef.  Josef, I
18  need you to say 1,800,000 for the record.  Josef,
19  can you hear me?
20       Josef, I need your verbal confirmation of
21  that number.  You can message it to me if you
22  want.  Josef, please come back to the audio.
23       FREO, can you please go ahead and start
24  thinking about your next bid.  I'm going to have
25  Josef for the record confirm his 50,000 increase

Remote Proceedings Of                              FINAL COPY
Rosewood Realty Auction                            January 7, 2022

```
                                                      Page 49
 1    to Willoughby to bring it 1.8.  That will bring

 2    the aggregate up to 18,300,000 once he approves

 3    that.  So I would ask that you start thinking now

 4    about the bid.

 5            We have been here a long time; and, again,

 6    my job here is to make sure this goes smooth and

 7    we get the highest number possible, so I will

 8    allow some time.  But we need to start shortening

 9    this time a bit.  We've been here since 11:00, and

10    we had five hours yesterday; so let's try to close

11    this out.

12            Josef, can you hear me?  Josef Michelson.

13            MR. JOSEF MICHELSON:  Can you hear me,

14    Matthew?

15            MR. MATTHEW MANNION:  Yes, I can hear you,

16    yes.

17            MR. JOSEF MICHELSON:  Okay.  Where are we

18    holding?

19            MR. MATTHEW MANNION:  Okay.  Can you

20    confirm for me that you want to bid 1,800,000 for

21    568 Willoughby?

22            MR. JOSEF MICHELSON:  Yes.

23            MR. MATTHEW MANNION:  Thank you.  All

24    right.  Aggregate bid is currently at 18,300,000.

25            Going back over to FREO.
```

Remote Proceedings Of                              FINAL COPY
Rosewood Realty Auction                         January 7, 2022

```
                                              Page 50
 1          MR. JOSEF MICHELSON:  Yeah, but guys, if
 2   you go back over to FREO, it has to be within 60
 3   seconds.  They cannot have the privilege of
 4   waiting ten minutes and we have to make a decision
 5   in one minute.  That's not fair.
 6          MR. MATTHEW MANNION:  I've been giving
 7   everybody time.  I have not been telling you that
 8   you don't have time.  Right now, I allowed -- I
 9   Maguire to have time to deliberate.  It's not just
10   for FREO.  I'm sure the record will show that.
11          MR. JOEL WERTZBERGER:  Matthew, Matthew,
12   we're coming very close to --
13          MR. MATTHEW MANNION:  I'm going to have to
14   lower your time here to two minutes.  Okay.  Let's
15   get going.
16          MR. AZRAK:  Matthew?
17          MR. MATTHEW MANNION:  Yes.
18          MR. AZRAK:  Can we put an actual time
19   stamp on the decisions?  It's fine.  Just have it
20   realtime, say two minutes, say one minute and
21   count it down.
22          MR. MATTHEW MANNION:  Okay.  I agree we'll
23   do minutes, we'll do two minutes.
24          FREO, two minutes, two minutes.  On the
25   clock, two minutes.
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 7, 2022

```
                                          Page 51
  1          Kim, can you hear me?  Can you please
  2    ensure that FREO is aware of the timelines.
  3          MS. KIM LONGO:  They are and I will, thank
  4    you.
  5          MR. MATTHEW MANNION:  Okay.  Give them a
  6    minute.  A little over a minute.  30-second
  7    warning.
  8          FREO:  Okay.  FREO -- FREO is done
  9    bidding.
 10          MR. JOEL WERTZBERGER:  Okay.  FREO is done
 11    bidding at this time. Aggregate bids at
 12    18,300,000.  That is the same as the bulk, so we
 13    need you to increase by a dollar, a thousand
 14    dollars, whatever it might be.  But right now,
 15    you're at the same exact price, so we need a small
 16    increase by the aggregate bidders.
 17          Does anyone want to volunteer?
 18          SPEAKER:  You void the dollar or no?
 19          MR. MATTHEW MANNION:  You can do a dollar.
 20          Joel, would you like increase it?
 21          MR. JOEL WERTZBERGER:  With the
 22    reservation of rights.
 23          MR. MATTHEW MANNION:  For which property,
 24    Joel, 618?
 25          MR. JOEL WERTZBERGER:  With the -- yeah,
```

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 7, 2022

                                                 Page 52
1    618 with the dollar.  Okay.  Good Shabbos.  Thank
2    you.
3            MR. AZRAK:  Good Shabbos, guys.  Thank
4    you.
5            MR. JOEL WERTZBERGER:  Thank you very
6    much.
7            MR. MARK FRANKEL:  Hold on, hold on, hold
8    on.
9            MR. MATTHEW MANNION:  Nobody leave until
10   he -- please, nobody leave.  Currently, we're at
11   18 million 301 dollar to the aggregate bidders,
12   18,300,000.  All right.  And that is -- now all
13   this is subject to Court approval.
14           MR. MARK FRANKEL:  No, no, stop.  Matthew,
15   Matthew, before you close the auction, I heard
16   Mr. Wertzberger said reservation of rights.  And
17   in order for us to determine whether that bid is
18   better, I need to know what is being reserved.
19           MR. JOEL WERTZBERGER:  Mark, I was joking
20   for the dollar and reserving the right.  I was
21   just joking.  I'm sorry.  I'm withdrawing all
22   reservations.  I'm sorry.
23           MR. MARK FRANKEL:  Thank you.
24           MR. MATTHEW MANNION:  Okay.  18,300,001.
25   That's the high bid by the aggregate.  I will not

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 7, 2022

Page 53

1   be knocking anything down.  I'll not be selling
2   anything because that is up to the determination
3   of the Court.
4        However, aggregate bidders have the
5   highest cash bid today, $18,300,301.
6        Mark, do you have any closing statements
7   for the record?
8        MR. AZRAK:  Matt, can we leave here?
9        MR. MATTHEW MANNION:  What's that?
10       MR. AZRAK:  Can I drop?  I'm dropping.
11       MR. MATTHEW MANNION:  You can go ahead and
12   drop unless there's anything, Mark, that you need
13   to say to anybody.
14       MR. MARK FRANKEL:  No, we will -- we
15   can -- we can close the auction now, and we will
16   send an email once we have determined the highest
17   and best bid.  We now know what the bids are.
18       MR. MATTHEW MANNION:  Thank you,
19   everybody, for your time.  Thank you for your
20   patience.  Best of luck.
21       MR. MATTHEW STEIN:  Just one second.  I'm
22   not sure -- I just want to make sure the record is
23   clear.
24       This is just for the record, this is
25   Matthew Stein on behalf of Brooklyn Lender.

Remote Proceedings Of                              FINAL COPY
Rosewood Realty Auction                            January 7, 2022

```
                                                    Page 54
 1   Sorry, my video is not on.  I just want to make
 2   sure what is -- what was the current ending of
 3   that bid, the bid announced.
 4           MR. MATTHEW MANNION:  The current end is
 5   the aggregate bidders, meaning the individuals who
 6   bid piecemeal on the properties, their total bid
 7   was $18,300,001.
 8           MS. KIM LONGO:  And, Matthew, for the
 9   record, what was the breakup fee?  Can you confirm
10   the breakup fee for that?
11           MR. MATTHEW MANNION:  Mark, could you
12   opine on the breakup fee?
13           MR. JOEL WERTZBERGER:  While Mark is
14   compounding the breakup fee, Kim, can you verify
15   if your client maintains the bid or was
16   withdrawing their bid so the only bids are from
17   the live bidders and you're looking for the
18   breakup fee, and it makes a huge difference if you
19   have the competing bid with the dollar less or
20   not.
21           MS. KIM LONGO:  If I'm understanding your
22   question, our reservation of rights with respect
23   to the 2 discount was withdrawn, and our bids were
24   a net amount.
25           Is that -- you're seeking to confirm that
```

JANE ROSE REPORTING                National Court-Reporting Coverage
1-800-825-3341                     janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

Page 55

1    point?

2          MR. JOEL WERTZBERGER:  Okay.  I'm looking

3    to confirm if you're looking for the breakup fee

4    or if you're looking to maintain as well.

5          MS. KIM LONGO:  No.  I'm just asking here

6    to put on the record what the -- what would be,

7    you know, put into the court -- the court papers

8    seeking to approve the sale?

9          MR. MARK FRANKEL:  I think the breakup fee

10   is 2, isn't it?

11         MS. KIM LONGO:  Yeah, so I was just

12   looking for a solid calculation of that, that's

13   all.

14         MR. MARK FRANKEL:  I'm not -- I'm not that

15   great at math.

16         MS. KIM LONGO:  That's fine, it's fine.

17   It's fine.

18         MR. MATTHEW STEIN:  Just so -- so just so

19   I'm clear, and I have a bunch of objections to put

20   into the record as just -- just bear with me for

21   one moment.

22         So the last aggregate bid you said was

23   18,000,300.  Can you just repeat the numbers again

24   with the last aggregate bid and the last --

25         MR. MATTHEW MANNION:  Yeah, aggregate bid,

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 7, 2022

---

Page 56

1   meaning all of the individual bidders combined, is

2   the bid total was $18,300,001.

3          MR. MATTHEW STEIN:  Understood.  And the

4   last FREO bid prior to that was?

5          MR. MATTHEW MANNION:  18,300,000.

6          MR. MATTHEW STEIN:  Okay.  And -- and can

7   we go through each of the -- each of the

8   individual bids on the nine debtors, just so that

9   the record is clear?

10         MR. MATTHEW MANNION:  Can you say again?

11         MR. MATTHEW STEIN:  Can we go through the

12  last high -- the last bid for each of the

13  individual properties so that the record is clear?

14         MR. MATTHEW MANNION:  Yes.  Bear with me

15  one second.  Okay.  So the first property, we're

16  going down the list, 1125-1133 Greene Avenue.  Let

17  me know when you're ready.

18         MR. MATTHEW STEIN:  I'm ready.

19         MR. MATTHEW MANNION:  4,600,000 by Maguire

20  Capital.  4,600,000.

21         MR. MATTHEW STEIN:  Next?

22         MR. MATTHEW MANNION:  Next is 1213

23  Jefferson Avenue.  And that is 975,000.  Maguire

24  Capital.

25         MR. MATTHEW STEIN:  Okay.  Next.

---

Remote Proceedings Of                                    FINAL COPY
Rosewood Realty Auction                                 January 7, 2022

Page 57

1          MR. MATTHEW MANNION:  Next is 568
2    Willoughby and that is 1,800,000.  And that's for
3    Josef Michelson.
4          Next we've got 618 Lafayette, and that's
5    $1,600,001.  $1,600,001.
6          Next we've got 834 Metropolitan, and that
7    is 1,600,000.  That's to Joel.  I didn't say it,
8    but 618 Lafayette was for Joel as well.
9          MR. JOEL WERTZBERGER:  We're going to --
10   we're going to increase our bid voluntarily and
11   add another $10,000 to our bid just so it's not a
12   dollar more which is and it has to be a meaningful
13   amount of money.
14         Therefore, we're going to add $10,000 to
15   834 Metropolitan voluntarily to make it a more
16   attractive bid than before, and it's all subject
17   to -- of course, to what appears in the sale that
18   there's no transfer tax and no mortgage tax
19   attached to these transactions.
20         MR. MATTHEW MANNION:  Okay.  You're going
21   to leave that one dollar on Lafayette, though,
22   right?
23         MR. JOEL WERTZBERGER:  Yes.  Thank you.
24         MR. MARK FRANKEL:  It's too late to add
25   new conditions.  The -- the documents, the court

Remote Proceedings Of                                    FINAL COPY
Rosewood Realty Auction                                 January 7, 2022

Page 58

1   documents do have a transfer tax exemption.  The

2   order will have it, the order confirming the plan

3   has mention of the mortgage recording tax, but we

4   can't make it a condition that the state is going

5   to agree with that because then we may have to

6   escrow for it, so we're just going to --

7            MR. JOEL WERTZBERGER:  You're right again.

8   I'm sorry.  I'm not a lawyer.  You're right.

9   We're going to make it carte blanche, $10,000

10  increase in the --

11           MR. JASON LEBOWITZ:  Mr. Wertzberger, can

12  you just restate what your actual bid is?  I just

13  want to -- I know you keep saying -- I want you to

14  just say what it is for the record.

15           MR. JOEL WERTZBERGER:  You know, I will be

16  honest with you, I don't remember.  Whatever it

17  was before, I believe it's 1 million 550, we're

18  adding --

19           MR. JASON LEBOWITZ:  I thought you were at

20  1 -- 1 -- I thought you were higher than that.

21           MR. MATTHEW MANNION:  Joel, you were at

22  1,600,000 for Metro.

23           MR. JOEL WERTZBERGER:  1,610,000.

24           MR. MATTHEW MANNION:  1,610,000 for Joel.

25  Got it.  Thank you.  That brings the total -- for

JANE ROSE REPORTING                National Court-Reporting Coverage
1-800-825-3341                     janerose@janerosereporting.com

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

```
                                             Page 59
 1   the record, that brings the total of the aggregate
 2   bidding up to $18,310,001.
 3            Did you get that, Mr. Stein?
 4            MR. MATTHEW STEIN:  I did.  Thank you.
 5            MR. MATTHEW MANNION:  And we left off --
 6   we left off at Metropolitan, right?
 7            SPEAKER:  Correct.
 8            MR. MATTHEW MANNION:  And that one is for
 9   1,610,000 to Joel.
10            Okay.  Next is 92 South 4th Street,
11   2,400,000, Maguire.  2,400,000, Maguire.
12            All right.  Next, 325 Franklin.  325
13   Franklin, 2,725,000 to Maguire.
14            SPEAKER:  (Indecipherable.)
15            MR. MATTHEW MANNION:  What's that?
16            MR. MATTHEW STEIN:  Just confirming that
17   was to Maguire?
18            MR. MATTHEW MANNION:  Yes.  Then we have
19   53 Stanhope next.  53 Stanhope Street was a
20   million dollars to Maguire.  That was not
21   increased today.
22            And then, finally, we have 263 18th Street
23   Brooklyn, New York.  1,600,000 to Maguire.  And
24   the total is 18,310,0001.
25            MR. JASON LEBOWITZ:  So that remains
```

Remote Proceedings Of                          FINAL COPY
Rosewood Realty Auction                        January 7, 2022

Page 60

1    unchanged from yesterday?

2           MR. MATTHEW MANNION:   What -- yes, those

3    two, Jason.   263 18th Street and 53 Stanhope had

4    no increases.   And those were Maguire Capital high

5    bids.

6           MR. MATTHEW STEIN:   Thank you.

7           MR. MATTHEW MANNION:   You're welcome.

8           Okay.   That concludes the auction.   Thank

9    you, ladies and gentlemen, for your patience.

10   Thank you for your --

11          MR. MATTHEW STEIN:   One second, one more

12   thing.   I just want to make sure so that the

13   record is clear, is that Brooklyn Lender is

14   reiterating its objections from yesterday,

15   including the fact that the auction procedures

16   that were governing this auction were -- seemed to

17   be lacking and were certainly not published and

18   distributed amongst all the participants prior to

19   the auction.

20          We reserve all rights, but what I would

21   ask when the debtor does announce the highest and

22   best bid or bids, that the scheduling of the sale

23   hearing and the objection deadline is scheduled

24   and in such a manner that there's sufficient time

25   for parties to file formal objections if they so

Remote Proceedings Of                      FINAL COPY
Rosewood Realty Auction                    January 7, 2022

```
                                          Page 61
 1   choose.
 2           MR. MARK FRANKEL:  I have asked the Court
 3   for a hearing date.  I did not -- I sent an email
 4   first thing this morning.  I've gotten no
 5   response.
 6           MR. MATTHEW STEIN:  Thank you.
 7           MR. JOEL WERTZBERGER:  I have one more
 8   thing to say, that we signed a contract,
 9   Metropolitan and one entity.  We intend to use a
10   separate entity for the property on Lafayette, and
11   I don't want there to be any issue where it's not
12   allowed to be assigned or anything, I just want to
13   make clear we bidded on two separate entities and
14   looking forward to the contract.
15           And the final -- thank you very much.  I
16   know it was contentious at times, but
17   (indecipherable) for the better of everyone.
18           MR. JASON LEBOWITZ:  Thank you.  We have
19   one -- we have one additional bid to increase, and
20   that is our credit with respect to the bulk from
21   19 to 20 million.
22           MR. MATTHEW MANNION:  Okay.  For the
23   record, the lender, Brooklyn Lender's credit bid
24   for the bulk was 19 million, and they're
25   increasing it by 1 million to 20 million.  Is that
```

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 7, 2022

Page 62

1   correct, Jason?

2         MR. JASON LEBOWITZ:   Correct.   Thank you.

3         MR. MATTHEW MANNION:   All right.   That

4   ends it, everybody.

5         MR. JOEL WERTZBERGER:   The auction was

6   closed.

7         MR. JASON LEBOWITZ:   We'd also -- we'd

8   also make a request for any additional purchase

9   and sale agreements that may or may not have been

10  entered into, or that may have been entered into,

11  at least.  We don't have that.

12        MR. MATTHEW MANNION:   Understood.   We're

13  going to go off the record now.   Thank you,

14  everybody.

15              (Whereupon, at 2:35 p.m. the above

16        matter concluded.)

17

18                  ∘          ∘          ∘          ∘

19

20

21

22

23

24

25

Remote Proceedings Of                    FINAL COPY
Rosewood Realty Auction                  January 7, 2022

```
                                              Page 63
 1                  C E R T I F I C A T E

 2

 3      STATE OF NEW YORK          )

 4                                 :  SS.:

 5      COUNTY OF RICHMOND         )

 6

 7           I, MADELINE TAVANI, a Notary Public for

 8      and within the State of New York, do hereby

 9      certify:

10           That the above is a correct

11      transcription of my stenographic notes.

12           I further certify that I am not related

13      to any of the parties to this action by

14      blood or by marriage and that I am in no way

15      interested in the outcome of this matter.

16           IN WITNESS WHEREOF, I have hereunto set

17      my hand this 9th day of January, 2022.

18

19           _____

20                    MADELINE TAVANI

21

22

23

24

25
```

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Remote Proceedings Of
Rosewood Realty Auction

**FINAL COPY**
January 7, 2022

Page 64

**A**

Abe 37:18,21,22,24,24
Abel 37:19
ability 19:5 36:24
able 17:13
above-board 43:1
accept 12:20
account 31:4
action 63:13
actual 50:18 58:12
add 15:10 57:11,14,24
adding 58:18
additional 61:19 62:8
Additionally 4:22
address 19:12
adopt 45:23
Affairs 4:3
afford 37:15
afternoon 4:1 8:2
aggregate 4:18 5:3,9
  5:13 7:2 9:9,13,25
  10:2,4 11:1,17 14:13
  15:21 16:14 17:4
  18:25 20:20 21:6
  25:22 35:4,6 36:12
  36:19 38:15,20,22
  44:22 45:4,7 48:7
  49:2,24 51:11,16
  52:11,25 53:4 54:5
  55:22,24,25 59:1
aggregated 11:11
aggregates 17:17
  33:14,25 34:2 38:17
  44:6
agree 45:15,18,18
  50:22 58:5
agreement 19:19 28:2
  28:5
agreements 62:9
ahead 33:22 38:5
  48:23 53:11
allow 26:22 47:13 49:8
allowance 23:1,4
allowed 39:6,15 50:8
  61:12
all-cash 27:25
ambiguity 46:7
amount 19:21 22:17
  24:2 27:17 29:10
  40:11,12,17,22
  46:14 47:7,11 54:24
  57:13
and/or 13:1
announce 5:18,19
  60:21
announced 32:15 54:3
announcements 4:8

  6:23 7:18 8:10
anybody 53:13
anyway 6:11,15
apologize 43:15
**APPEARANCES** 2:1
appears 57:17
apply 4:9
appreciate 47:19
approval 6:5 29:19
  52:13
approve 6:11,15 55:8
approved 27:4,7 28:4
approves 49:2
asked 8:13 10:24 61:2
asking 26:3 55:5
assigned 61:12
attached 57:19
attention 41:3
attractive 57:16
auction 1:1,3,9 4:6,9
  6:5,7,21 8:1,7,19 9:4
  11:4 13:12 24:12,15
  26:22 39:7,9,16,18
  41:21 42:4,4,6,7
  44:6 46:11 47:4,14
  47:21 48:2 52:15
  53:15 60:8,15,16,19
  62:5
auctioneer 1:12 2:4
  4:4 24:4,20
auctions 2:6 6:3
audio 48:22
authority 28:7
authorized 23:5,11
authorizing 28:8,9
Automatically 32:17
Avenue 2:17 8:24,25
  12:4 13:16,19 14:6
  15:2,13 18:7 21:25
  34:9 56:16,23
aware 18:24 51:2
**AZRAK** 9:2,18,21 10:6
  12:8 14:18,20 15:4,8
  15:16,20 16:2,6,9
  17:1,3,7,13,20,23
  18:2,13 19:2,10 20:6
  20:11 25:20 31:15
  31:18 33:5,9,18 35:7
  35:9,17,22,25 36:2,6
  36:9,12 39:1,3,10
  42:3,7 44:14 47:25
  50:16,18 52:3 53:8
  53:10

**B**

back 5:2 7:4,5 8:23
  11:16 16:25 17:16

  17:17,21 18:19,20
  20:2,16,24 21:4,13
  25:22,24 26:13 27:8
  29:8 31:21 33:5,5,14
  33:15 34:4,7 36:20
  38:20 42:19 43:16
  44:6 47:20 48:22
  49:25 50:2
**ball** 36:20
bankruptcy 28:7 29:19
bankrupts 29:1
based 30:4
bear 13:9 36:10,15
  55:20 56:14
beginning 7:19
behalf 22:7,24 53:25
believe 8:5 11:5,7,12
  11:18 22:21 23:13
  23:15,19 25:3 28:2
  28:17 45:22 58:17
benefit 23:6
best 24:12 29:22 46:1
  46:3 53:17,20 60:22
better 27:5 52:18
  61:17
bid 4:16,18,18,23 5:4
  5:6,21,24 7:5,25 9:5
  9:9,16,20,23 10:21
  10:22 11:1,17,17
  12:3,8,10,17,20
  13:16,19,23 15:1,4
  15:14,14 16:16,18
  17:9,11,14,16,25
  19:4 20:17,25 21:3,5
  22:11,15,16,17 23:1
  23:16,18,23,25 24:1
  24:3,5,8,8,19,21,22
  25:11,12,14 26:6,15
  26:16,20 27:14,23
  27:24,25 28:1,15,18
  28:19,19,20,21 29:3
  29:10,11,15,18,22
  29:24,25 30:3,11,14
  30:21 31:7,23 32:8
  32:10,12,15,17,17
  32:18,23 34:1,15,18
  34:21,22,23 35:6
  36:25 38:9,18,19,21
  38:23,23 39:8,21
  40:3,4,18,23 41:8,16
  41:17 43:5,5,5,6,24
  44:20,21 45:2 46:1
  46:12,20 47:6,8,10
  47:11 48:7,24 49:4
  49:20,24 52:17,25
  53:5,17 54:3,3,6,6
  54:15,16,19 55:22

  55:24,25 56:2,4,12
  57:10,11,16 58:12
  60:22 61:19,23
bidded 61:13
bidder 5:7,15,20,24
  6:1,8,22,23 7:15
  8:23 9:5 13:5 14:24
  26:18 27:11,11 29:2
  29:12,14,14 30:5
  45:9 46:12
bidders 4:19 5:3,9,13
  7:2,11,23 8:14 9:10
  9:14 11:24 14:13
  16:14 19:1 25:22
  36:24 48:7 51:16
  52:11 53:4 54:5,17
  56:1
bidding 5:23 6:12,16
  6:18,24 7:18 9:11
  12:13,15,20 14:21
  17:3,6,11 19:5,12
  23:7,13 25:7 27:12
  27:15 28:16 29:9,10
  30:1,2,25 37:1 39:5
  39:10 43:13 45:14
  46:14 47:21 51:9,11
  59:2
bids 4:15 9:10 10:15
  11:8,8,10,11,25
  12:25 14:16 19:8,14
  19:21 22:12 26:9
  28:13 34:8 35:6
  51:11 53:17 54:16
  54:23 56:8 60:5,22
bit 4:13 7:9 13:7 49:9
**Bitcoin** 32:23 40:17
blanche 58:9
blood 63:14
breaks 46:19,20,22
breakup 19:22,23
  22:10,15,16 23:4,7
  23:10,22 24:10,16
  26:7,11,15 27:24
  30:14 31:5 32:8,9
  34:17,20,21 54:9,10
  54:12,14,18 55:3,9
bring 35:21 49:1,1
**Bringing** 35:20
brings 34:25 58:25
  59:1
**Brooklyn** 8:25 18:11
  22:24 27:21,22
  53:25 59:23 60:13
  61:23
**BUILDING** 1:4
bulk 4:16 9:13 17:11
  21:5 25:14 30:21

  31:10 34:1 35:6
  36:21 44:6,21 45:9
  48:7 51:12 61:20,24
**bunch** 55:19
**buy** 12:6 19:11

**C**

C 63:1,1
calculated 22:19
calculation 55:12
call 19:3
calling 42:18
**Capital** 9:1,5,7,17
  14:25 15:7,11,18
  18:6,8 20:2 25:19
  36:18 47:22 56:20
  56:24 60:4
**Capital's** 20:14
cart 14:15
carte 58:9
case 28:8
cash 4:19 11:8,11,14
  19:20 26:5 53:5
cause 47:15
certainly 60:17
**Certificate** 3:3
certify 63:9,12
challenge 31:6
chance 42:10
chat 38:11
chessboard 11:4 13:6
  13:8
choose 61:1
**City** 4:3
clarification 44:3
  45:21
clarify 5:22 6:2,3 8:12
  19:20 43:23
clarifying 7:22
clarity 27:10 36:25
  47:3
clear 7:10 22:23 31:3
  31:7 53:23 55:19
  56:9,13 60:13 61:13
client 30:8 54:15
clock 50:25
close 15:24 19:10
  39:7,8,16,19 49:10
  50:12 52:15 53:15
closed 12:9 62:6
closing 53:6
code 28:7
coffee 32:22
combination 11:15
combined 4:21,24
  7:12 11:9 13:15 56:1
come 7:7 20:16,23

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 7, 2022

Page 65

21:4,7,14 42:19
47:22 48:22
**comes** 4:7 30:4
**coming** 33:20 43:16
50:12
**commission** 41:5
**competing** 5:25 54:19
**complete** 47:2
**completely** 28:6
**component** 28:1
**compounding** 54:14
**concept** 11:7
**concepts** 31:5
**concluded** 62:16
**concludes** 60:8
**condition** 58:4
**conditions** 57:25
**conduct** 24:12
**conducting** 41:21
**confer** 16:23
**confirm** 48:25 49:20
54:9,25 55:3
**confirmation** 26:4,14
48:20
**confirmed** 32:9
**confirming** 58:2 59:16
**confirms** 28:14
**confusing** 12:21
**consider** 29:21,21
**considered** 8:6
**Consumer** 4:3
**contentious** 47:1
61:16
**CONTENTS** 3:1
**contested** 27:2
**continuation** 4:5
**continue** 19:14 25:8
26:23
**continuing** 19:20 25:7
**contract** 22:8,9 23:14
23:21 26:8,20,22,25
27:4,6 46:7 61:8,14
**COPY** 1:24
**correct** 16:3 35:25
59:7 62:1,2 63:10
**counsel** 19:16
**count** 50:21
**counterbid** 21:17
33:21
**COUNTY** 63:5
**course** 25:1 26:24
36:23 57:17
**court** 2:20 6:5,7,10,14
9:12 12:11 23:5,9
27:3,4 28:3 29:19
36:21 45:23 46:5,6
52:13 53:3 55:7,7

57:25 61:2
**cover** 22:17
**created** 47:15
**credit** 4:23 11:8,10,14
11:17 19:21,23 23:1
26:5,19 27:23,25
28:15,19,19 29:8,20
61:20,23
**cup** 32:22 40:17
**current** 5:19 15:1 21:5
38:23 54:2,4
**currently** 4:11 5:12
7:11 15:25 16:13
20:9 38:16 49:24
52:10
**cut** 46:24

**D**

**D** 4:2
**date** 61:3
**DAVID** 8:11
**day** 11:6 33:19 63:17
**deadline** 60:23
**deals** 10:8
**debtor** 10:24 11:12
28:20 40:11,12,18
40:24 41:6 43:24
60:21
**debtors** 28:6 56:8
**decent** 21:23
**decide** 6:8 9:23 12:11
45:25
**decision** 27:3,8 28:8
47:23 50:4
**decisions** 6:4 10:7
50:19
**decrease** 30:3 40:11
**decreasing** 40:12,22
**deferment** 30:4
**delay** 43:16
**deliberate** 21:25 50:9
**deliberating** 18:4
**determination** 53:2
**determine** 52:17
**determined** 53:16
**difference** 30:7 33:25
35:16 44:12 54:18
**differential** 5:16 9:13
35:5,7,9,15 44:13,21
45:9,13 48:6
**differently** 46:5
**directive** 8:18
**disagree** 45:22
**discount** 29:4 47:9
54:23
**discussed** 20:4
**discussion** 14:1

**disputed** 31:4
**distributed** 60:18
**Division** 4:3
**documents** 57:25 58:1
**doing** 43:1
**dollar** 51:13,18,19
52:1,11,20 54:19
57:12,21
**dollars** 51:14 59:20
**draft** 28:5
**Drain** 27:7
**drop** 53:10,12
**dropping** 53:10
**due** 28:23

**E**

**E** 63:1,1
**earlier** 44:3
**Eastern** 4:11
**effectively** 43:6
**email** 53:16 61:3
**encourage** 35:11
**ends** 30:7 62:4
**ensure** 51:2
**entered** 28:5 62:10,10
**entities** 61:13
**entitled** 34:17,20
**entity** 61:9,10
**equal** 19:22
**escalating** 23:7
**escrow** 58:6
**Especially** 10:23
**estate** 23:6 26:13
27:18 29:13
**evaluate** 8:15,17
**event** 23:12 24:25
**everybody** 4:2 14:8,9
18:22 46:22 50:7
53:19 62:4,14
**exact** 19:12 51:15
**exactly** 45:18
**excess** 11:15
**excuse** 23:3,3
**exemption** 58:1
**exist** 46:13,20
**existing** 22:11
**expect** 33:18 47:7,8
47:10
**expected** 37:17
**exponentially** 22:18
**extent** 28:1,3 32:14
34:14,15,18 47:10
**extrajudicial** 28:6

**F**

**F** 63:1
**fact** 19:3 30:4 60:15

**fair** 6:21 10:10 17:8
50:5
**fallacy** 11:8
**far** 18:3
**Farrow** 45:4
**favor** 15:20
**fee** 19:22,23 22:10,15
22:16 23:4,7,10,22
24:10,16 26:11
27:24 31:5 32:9,10
34:17,20,21 54:9,10
54:12,14,18 55:3,9
**Fifth** 2:17
**file** 60:25
**final** 1:24 19:8 61:15
**finally** 59:22
**find** 15:24
**finds** 34:16,19
**fine** 50:19 55:16,16,17
**finish** 6:23 18:18
**first** 8:22 15:12 20:19
56:15 61:4
**five** 39:4 49:10
**flat** 44:11
**formal** 60:25
**formally** 32:19
**forth** 7:6 17:22
**forward** 47:14 61:14
**Frankel** 7:17,17,20 8:5
8:12 26:4,14,21 27:1
29:17 45:20 47:17
52:7,14,23 53:14
55:9,14 57:24 61:2
**Franklin** 18:7 21:25
25:17,17 31:13,13
35:18,21,24 36:5,8
36:17,18 59:12,13
**free** 26:7
**FREO** 4:17 7:4 16:7,10
16:12,19,22,25
18:13,15 20:23 21:1
21:13,14,16,21 22:7
25:6,10,12,14,22,23
26:3,12,18,19 27:20
28:5,14 30:21,22,23
30:25 31:2,10 33:15
33:16,21,21,23,24
34:1,15,23 35:2
36:22 37:14,20
38:13,18,24 39:20
41:7,8,11,12,15,15
41:18 42:10,13,14
42:19 43:12,12,18
43:18,20,21 45:13
48:23 49:25 50:2,10
50:24 51:2,8,8,8,10
56:4

**FREO's** 19:16 21:2,4
27:24 30:11 35:6
36:21,24 44:5 45:22
**Friday** 4:12
**frustration** 40:9
**full** 45:24 47:7,11
**fully** 47:10
**further** 23:17 63:12

**G**

**game** 11:4
**gentlemen** 34:8 37:15
39:13,14 41:22 60:9
**getting** 8:16 25:2
28:14 29:3,8 32:8
**give** 10:1,4,11 14:8
15:21 25:23 33:16
43:14 51:5
**given** 7:24 10:7 27:20
**giving** 40:19 43:2,4,5
46:8,12,21 50:6
**go** 4:14 5:2 7:3,3,5
8:11,17 9:15 14:10
14:11 15:11 17:15
17:17,21 18:14,17
18:19,20,22 20:2,4,6
21:1,9,13 24:24
26:12 29:13 31:2,24
33:5,5,19,22,23 34:6
38:5,20 41:10 43:18
43:21 47:14 48:1,9
48:12,23 50:2 53:11
56:7,11 62:13
**goes** 27:18 40:15 49:6
**going** 4:13,14 5:1,2,5
5:17 7:9,11,16 8:15
8:23 10:13 11:22
15:2,10,11,11 17:3
17:10,13,15,17,25
18:1,1,16,25 19:3,10
20:16,23 21:7,11
22:13,14,18 25:22
26:12 27:2,7 28:11
28:12,13 29:19
31:21 32:21,22
33:15 34:4 35:20
37:24 38:8,24 39:16
39:17,17,22,22 41:9
41:10,13,24 43:12
44:6 46:1,3,5,6
47:20 48:11,24
49:25 50:13,15
56:16 57:9,10,14,20
58:4,6,9 62:13
**Goldwasser** 8:9,11,21
**good** 4:1 16:9,9 40:14
52:1,3

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 7, 2022

Page 66

**gotta** 39:5
**gotten** 18:5,17 21:24
  25:16 33:3 34:5 61:4
**governing** 60:16
**great** 55:15
**Greene** 8:24,25 12:4
  15:1 34:9 56:16
**gross** 26:15
**guaranteed** 6:6
**guess** 48:15
**guidance** 46:8
**guys** 36:22 39:11 50:1
  52:3

**H**

**hand** 63:17
**happened** 14:24
**hard** 45:25
**hear** 31:24 32:7 38:10
  38:12 41:8,11 42:13
  44:23,25 48:8,19
  49:12,13,15 51:1
**heard** 29:2 52:15
**hearing** 12:1 60:23
  61:3
**Hello** 18:22 37:21,22
**hereunto** 63:16
**Hi** 22:4,6 26:1 30:23
**high** 5:20,23 6:1,8,8
  6:21,22 7:23 8:14,23
  9:5,5 14:24 15:13
  52:25 56:12 60:4
**higher** 23:23 27:5
  38:21 58:20
**highest** 7:6 29:22 41:1
  41:3,5,6 46:1,3 49:7
  53:5,16 60:21
**hit** 10:13,14
**hold** 10:15 13:24 22:8
  48:2,11 52:7,7,7
**holding** 20:20 45:3,7
  46:19 49:18
**holds** 12:14
**honest** 58:16
**honor** 14:24 46:6
**hopefully** 11:6
**horse** 5:7,11,15 7:3,4
  7:15 14:15 16:16
  18:19,20 23:14
  24:16 27:5 29:2
  30:14
**hours** 49:10
**huge** 54:18
**hundred** 20:12,13
  36:3

**I**

**identify** 37:23
**important** 27:13
**include** 16:16
**including** 60:15
**inclusive** 5:10
**increase** 5:6,21,24 7:5
  7:13 9:8,10,16,20
  12:25 13:23,25 14:1
  15:3,4,14 16:18
  17:19 19:14 20:3,10
  20:11,17,24 23:16
  23:17,25 24:16
  25:19,20 31:23 32:4
  33:7 34:3,8 35:16,17
  38:19,21,24 48:5,25
  51:13,16,20 57:10
  58:10 61:19
**increased** 17:18 24:2
  28:13 36:5,8 44:8
  59:21
**increases** 14:13 17:16
  23:7 60:4
**increasing** 11:25
  14:15 23:17 29:24
  34:13,18,22 40:18
  44:10,20 45:2 61:25
**increment** 24:3 31:2
  48:13
**increments** 16:19,21
  17:4 20:25 24:20,22
  24:23 48:10
**incriminate** 14:13
**indecipherable** 4:23
  14:18 37:18 59:14
  61:17
**indicate** 23:10
**individual** 5:4 7:23
  11:24 14:11,21 56:1
  56:8,13
**individuals** 6:1 17:9
  54:5
**inform** 6:13
**informed** 7:25
**initial** 24:1
**instance** 14:25
**instruct** 24:14
**intend** 61:9
**interest** 11:25 34:13
  45:1
**interested** 12:6 41:16
  44:9,19 63:15
**interfere** 39:18
**interfering** 40:23
  41:25
**interpretation** 45:23
**interrupt** 46:16
**involved** 29:1

**issue** 61:11
**issues** 47:14

**J**

**JANE** 1:25 2:16
**January** 1:10 4:12
  63:17
**Jason** 58:11,19 59:25
  60:3 61:18 62:1,2,7
**Jefferson** 15:13 35:18
  35:20 56:23
**job** 40:13 49:6
**Joel** 6:10,14,19,24,25
  10:6,16 11:3,21 12:2
  12:10,16,22,23,24
  13:5,10,11,13,13,15
  13:21,24 14:4,6,7
  16:2,2 23:15,24
  24:14,19 25:1 27:10
  28:11,25 29:15,23
  30:12,16,17,19
  31:18,21,24,25 32:4
  32:6,13 34:11,12,14
  34:24 35:1,3,11
  36:23 37:5,7,11 39:6
  39:15,22 40:1,6,10
  40:16,21 41:1,2,9,13
  41:19,24 42:5,8,11
  42:15,23 43:4,9,23
  44:2 45:11,15 46:10
  46:18 50:11 51:10
  51:20,21,24,25 52:5
  52:19 54:13 55:2
  57:7,8,9,23 58:7,15
  58:21,23,24 59:9
  61:7 62:5
**Joel's** 35:15
**joking** 52:19,21
**Josef** 10:7,16,18,20
  20:16,18 21:4,7,9,12
  38:1,2,3,7,8,10,10
  38:11,14,25 44:18
  44:19,23,25 45:3,6
  48:3,7,9,14,15,16,17
  48:17,18,20,22,25
  49:12,12,13,17,22
  50:1 57:3
**judge** 12:17,19 27:7
  34:16,19

**K**

**keep** 18:1,21 19:5,11
  19:12 23:17 25:6
  32:5,7 37:16 58:13
**kept** 32:16 34:21
**Kim** 19:15,15,18,25
  22:4,6,6 23:8,20

24:5,21 25:3,8 26:1
  26:3,17,24 27:17
  28:23 29:6,11 30:6
  42:18,22 43:12,12
  43:14 46:16,23 51:1
  51:3 54:8,14,21 55:5
  55:11,16
**kind** 31:6
**knock** 32:18 42:8,11
  42:15,23
**knocked** 18:1
**knocking** 53:1
**know** 4:14 7:8 9:21,24
  12:19 13:7,11 14:14
  14:14 22:14 24:6,8,9
  24:11,11,23 25:4
  30:11 31:5,6 39:13
  39:14 40:1 41:17
  46:5,7 52:18 53:17
  55:7 56:17 58:13,15
  61:16

**L**

**lacking** 60:17
**ladies** 60:9
**Lafayette** 13:1,3,6,10
  13:13 31:21 34:12
  34:25 57:4,8,21
  61:10
**larger** 24:23
**lastly** 18:11
**late** 57:24
**lawyer** 58:8
**lead** 39:7
**leave** 39:16,17 42:2
  52:9,10 53:8 57:21
**LEBOWITZ** 58:11,19
  59:25 61:18 62:2,7
**left** 59:5,6
**lender** 22:25 27:21,22
  53:25 60:13 61:23
**Lender's** 61:23
**lesser** 40:3,4
**let's** 7:1 20:19 49:10
  50:14
**license** 4:4
**Licensed** 4:3
**line** 16:8,11 25:4
  39:25 40:2
**lines** 9:14
**list** 5:18 11:22 14:10
  15:12 18:17 34:4
  56:16
**litigation** 46:2
**little** 4:13 7:9 13:7
  29:24 39:3 51:6
**live** 34:22 54:17

**LLC** 2:6
**long** 33:18 39:14 49:5
**longer** 37:17
**Longo** 19:15,18,25
  22:4,6,6 23:8,20
  24:5,21 25:3,8 26:1
  26:3,17,24 27:17
  28:23 29:11 30:6
  42:18,22 43:14
  46:16,23 51:3 54:8
  54:21 55:5,11,16
**look** 11:6 27:8
**looking** 54:17 55:2,3,4
  55:12 61:14
**lose** 30:13,18
**losing** 47:9
**lot** 39:24 40:2 43:2
**loud** 45:19
**lower** 50:14
**luck** 53:20

**M**

**Madeline** 2:20 37:2,5
  63:7,20
**Maguire** 9:1,4,7,17
  14:25 15:7,10,18
  18:6,8,10 20:2,14
  21:25 22:2,3 25:18
  25:18 31:12,13 33:1
  33:2,12,13 34:6
  36:17 41:19 44:9,11
  44:12,17 45:10
  47:22 50:9 56:19,23
  59:11,11,13,17,20
  59:23 60:4
**maintain** 55:4
**maintains** 54:15
**majority** 10:1
**making** 29:18 45:25
**manner** 60:24
**Mannion** 1:12 2:5,6
  4:1,2 6:13,17,20 7:1
  7:21 8:3,8,20 9:3,19
  10:3,16,19,25 11:20
  12:12,22,24 13:9,14
  13:18,22 14:3,5,19
  14:23 15:6,9,17,23
  16:4,7,10,13,20,24
  17:2,5,10,15,21,24
  18:3,15 19:7,13,17
  19:24 20:1,8,13,21
  21:2,10,15,18,22
  22:5,21 23:2 24:18
  25:10,13,21,25 26:2
  28:10 29:5 30:10,16
  30:19,24 31:1,9,17
  31:20 32:3,11,25

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 7, 2022

Page 67

33:7,11,17,22,24
34:24 35:3,8,10,14
35:19,23 36:1,4,7,10
36:15 37:13,19,22
38:1,5,8,16 39:2,13
39:20,24 40:5,8,13
40:19,25 41:7,11,15
41:22 42:2,10,13,20
42:25 43:8,11,19,22
44:1,5,16 45:1,5,8
45:17 46:21 47:16
47:20 48:3,11,16
49:15,19,23 50:6,13
50:17,22 51:5,19,23
52:9,24 53:9,11,18
54:4,11 55:25 56:5
56:10,14,19,22 57:1
57:20 58:21,24 59:5
59:8,15,18 60:2,7
61:22 62:3,12
**Manny** 25:4
**Mark** 7:17,20 8:3,5
26:4,14,21 27:1
29:17,23 45:20
47:17 52:7,14,19,23
53:6,12,14 54:11,13
55:9,14 57:24 61:2
**marriage** 63:14
**math** 24:6 55:15
**Matt** 18:13 30:23
33:18 53:8
**matter** 1:1 62:16 63:15
**Matthew** 1:12 2:5 4:1
4:2 6:13,17,20 7:1
7:21,22 8:3,8,20 9:3
9:19 10:3,16,19,25
11:3,20 12:12,22,24
13:9,14,18,22 14:3,5
14:19,23 15:6,9,17
15:23 16:4,7,10,13
16:20,24 17:1,2,5,10
17:15,21,24 18:3,15
19:7,13,15,17,24
20:1,8,13,21 21:2,10
21:15,18,22 22:4,5
22:21,23,24 23:2,3
24:18 25:10,13,21
25:25 26:1,2 27:21
28:10 29:5 30:10,16
30:19,24 31:1,9,17
31:20 32:3,11,25
33:7,11,17,22,24
34:24 35:3,8,10,14
35:19,23 36:1,4,7,10
36:15 37:13,19,22
38:1,3,5,8,14,16
39:1,2,13,20,24 40:5

40:8,13,19,25 41:7,9
41:11,13,15,20,22
42:2,3,8,10,11,13,15
42:18,20,23,25 43:8
43:11,14,19,22 44:1
44:5,16 45:1,5,8,17
46:18,21,23 47:16
47:20 48:3,11,16
49:14,15,19,23 50:6
50:11,11,13,16,17
50:22 51:5,19,23
52:9,14,15,24 53:9
53:11,18,21,25 54:4
54:8,11 55:18,25
56:3,5,6,10,11,14,18
56:19,21,22,25 57:1
57:20 58:21,24 59:4
59:5,8,15,16,18 60:2
60:6,7,11 61:6,22
62:3,12
**mean** 11:2 24:5 27:1,3
30:6 39:3,5 45:17
46:16
**meaning** 4:18 5:3,23
54:5 56:1
**meaningful** 14:1 57:12
**memory** 11:16
**mention** 58:3
**message** 38:11 48:21
**messed** 13:6
**Metro** 58:22
**Metropolitan** 13:2,2
13:16,18 14:6 16:3
34:10 57:6,15 59:6
61:9
**mic** 30:19
**Michelson** 10:18,20
20:18 21:9 38:3,7,10
38:14 44:25 45:3,6
48:9,15 49:12,13,17
49:22 50:1 57:3
**million** 7:12 11:12,15
12:4,7 13:3,4,19
15:1,5,6,19 16:5
18:9 20:22 21:5,6,8
21:11,12 22:1,2
25:13,14,18,18,21
29:11,16 30:11,21
31:1,14 33:4,10,11
33:12,23 34:1,2 35:4
36:20 37:13,14
38:13 44:11,12,18
48:4 52:11 58:17
59:20 61:21,24,25
61:25
**mind** 24:13
**minimum** 5:9 7:13

16:15 37:17
**minute** 21:19 25:23
33:16 36:22 44:14
50:5,20 51:6,6
**minutes** 16:22 21:20
39:4,11,17 40:7,22
50:4,14,20,23,23,24
50:24,25
**misspoke** 23:4
**mixed** 13:7
**moment** 6:22 13:10
14:8 15:25 21:11
30:8 36:11 43:15,17
46:24 55:21
**money** 27:16,18 28:17
28:21 30:7,15 39:25
40:2 43:3 57:13
**morning** 61:4
**mortgage** 57:18 58:3
**mouse** 29:25
**move** 32:1
**Moving** 25:15
**mute** 38:6,9
**muted** 31:23 44:23

**N**

**naught** 9:11
**need** 28:18 29:25
36:22 38:9 41:15
42:20,21 44:2,14
48:18,20 49:8 51:13
51:15 52:18 53:12
**needed** 24:2
**net** 28:19 31:8 32:8,12
32:15,16 34:22
54:24
**never** 11:4 28:4 29:2,4
30:5 34:20
**new** 2:18,18 4:2 18:12
20:4,6,14 21:2 57:25
59:23 63:3,8
**nine** 56:8
**Notary** 63:7
**note** 9:9 36:4,7
**noted** 11:21 24:15
**notes** 63:11
**number** 4:4 5:10 7:6
10:2,4,13,14 31:8
41:1 48:21 49:7
**numbers** 6:4 8:16
20:20 45:7 55:23

**O**

**Oaky** 6:25
**objecting** 36:24
**objection** 22:25 60:23
**objections** 37:3,8

55:19 60:14,25
**objects** 27:22,22
**obviously** 12:9 31:5
**occurred** 4:8
**offer** 9:13
**office** 33:19
**offline** 30:8
**okay** 7:1 10:3,19,25
11:22,23 13:14,21
14:5 15:9,17 16:6,22
16:25 17:20,23 18:2
18:13,16,23 19:6
21:2,3,10,21 22:21
23:2,24 24:14 25:10
25:25 28:10 30:9
31:2 33:17,22 35:17
35:19 37:11 38:10
41:19 42:20,22
43:22 45:1 49:17,19
50:14,22 51:5,8,10
52:1,24 55:2 56:6,15
56:25 57:20 59:10
60:8 61:22
**once** 5:12 7:8 18:18
20:25 23:15 39:22
41:10,14 49:2 53:16
**ones** 20:5,6 34:7
**ongoing** 47:14
**open** 6:15,17 19:11
24:6
**opening** 6:11 14:20
**opine** 8:4 27:6 54:12
**opportunity** 7:24,25
**order** 5:7,15 7:14 8:11
47:15 52:17 58:2,2
**orders** 23:9
**outbid** 29:25
**outcome** 63:15
**overbidding** 10:15
**overpaid** 10:23

**P**

**page** 3:3 47:3
**papers** 55:7
**paragraph** 26:24
**parameters** 24:13
**part** 4:5 19:22 40:17
**participants** 60:18
**parties** 48:1 60:25
63:13
**parts** 14:14
**patience** 53:20 60:9
**pauses** 37:16
**pay** 23:21 45:24
**paying** 41:3
**penalty** 27:19
**people** 5:3 30:1

**percent** 22:10,14,16
23:16,22 24:1,7,10
24:18 26:11,15,19
27:14,15 28:15 29:4
29:8,12 34:17 36:25
41:4 43:24 44:4 47:9
47:11
**percentage** 10:8
**phantom** 28:21 30:14
46:12
**phonetic** 45:4
**piecemeal** 4:21 54:6
**place** 11:1 38:18
39:21 41:8,16
**placed** 12:10 13:15
38:23
**placing** 41:16
**plan** 58:2
**play** 10:9 28:16
**please** 6:23 9:9 15:21
37:23 38:11 39:21
41:7,22,23 42:2
43:15,20 48:22,23
51:1 52:10
**plus** 22:15,16
**point** 10:12,14 18:16
19:18 22:7 26:21
55:1
**PORTFOLIO** 1:4
**portion** 26:11,20
27:25
**position** 45:21
**positions** 8:17
**possible** 49:7
**postpone** 46:11
**preamble** 12:18
**preference** 11:14
**preserving** 30:3
**pretty** 15:24
**previous** 20:3
**price** 16:15 20:14 44:6
51:15
**prior** 4:9 7:18 8:1,16
56:4 60:18
**privilege** 50:3
**probably** 15:24
**problem** 46:3,10 47:1
**problems** 47:15
**procedures** 60:15
**PROCEEDINGS** 1:8
**process** 8:14,18 11:18
12:20 39:18 40:14
42:1
**properties** 4:16,21,24
5:4,18 8:24 11:10,23
14:11 17:18 18:4,17
18:21 19:11 20:3

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 7, 2022

Page 68

21:24 25:16 33:2
47:23 54:6 56:13
**property** 5:19 8:22
9:23 11:11 14:21
19:3,5,11 32:2 51:23
56:15 61:10
**protection** 5:11 16:16
17:12
**provides** 28:2
**provision** 28:24 46:4
46:25 47:13
**Public** 63:7
**published** 60:17
**purchase** 19:19 62:8
**purchaser** 23:21
**put** 21:11 47:6 50:18
55:6,7,19
**puts** 33:14
**putting** 14:15 36:20
**p.m** 1:11,11 4:11
62:15

**Q**
**question** 7:22 8:13
31:19 32:7 54:22

**R**
**R** 63:1
**raise** 33:6,9
**reach** 5:9 7:14
**reached** 4:19
**read** 9:14 23:21 27:9
36:13 46:4
**ready** 18:13 25:11
56:17,18
**real** 8:16 27:15 28:17
30:1
**reality** 46:13
**really** 9:22 27:2,12,12
46:14
**realtime** 50:20
**REALTY** 1:3
**reason** 5:6
**receive** 19:20
**Received** 18:16
**recommencement** 8:1
**record** 4:22 9:3,8 11:5
12:3,5 23:10 26:4,8
27:13 32:9 33:12
45:16 48:17,18,25
50:10 53:7,22,24
54:9 55:6,20 56:9,13
58:14 59:1 60:13
61:23 62:13
**recording** 58:3
**recordings** 4:7
**records** 37:2,8

**refer** 23:9
**referencing** 13:17
**reiterating** 60:14
**reject** 12:5
**related** 63:12
**relocate** 13:8
**remains** 59:25
**remember** 58:16
**REMOTE** 1:8
**reopening** 5:22 12:14
**repeat** 7:9 55:23
**Reporter** 2:20 37:4,6,9
**Reporter's** 3:3
**REPORTING** 1:25
2:16
**request** 62:8
**requirement** 45:24
**reservation** 34:23
35:2,12 44:4 47:5
51:22 52:16 54:22
**reservations** 52:22
**reserve** 11:19 25:9
31:6 32:12,14,14,16
32:17,20,21,24 40:3
60:20
**reserved** 52:18
**reserving** 34:16,19
43:25 52:20
**respect** 26:6 28:23
47:4 54:22 61:20
**response** 61:5
**restate** 58:12
**result** 34:22
**reviewed** 28:4
**rich** 25:2
**RICHMOND** 63:5
**ridiculous** 28:12 39:4
**right** 8:9,22 12:24
14:22 15:21 16:5
18:14,25 20:1,22,23
21:6 22:12 23:8,20
24:5 25:15,23 29:5,6
30:3,11,25 31:3,11
31:17 32:13,21,25
33:14 34:4,19 35:5
35:15,19 36:10,13
36:19 37:3 38:17,22
38:25 39:20,23 40:3
41:14 42:9,12,16,19
42:21,24 43:3,11
44:7,13,19,21,24
45:9,10 48:5,12,13
49:24 50:8 51:14
52:12,20 57:22 58:7
58:8 59:6,12 62:3
**rights** 11:19 25:9 31:6
32:12,14,15,16,18

32:20,24 34:16,23
35:2 43:25 47:6
51:22 52:16 54:22
60:20
**room** 41:20,25 42:17
**Rose** 1:25 2:16 37:18
37:19,21,22,24,24
**ROSEWOOD** 1:3
**Rosewood's** 41:5

**S**
**Sabbath** 33:20
**sale** 19:19 55:8 57:17
60:22 62:9
**save** 35:13
**saying** 11:5 19:8 29:2
29:7 30:12,13 46:13
46:14 58:13
**says** 45:13
**scheduled** 60:23
**scheduling** 60:22
**screen** 14:22
**second** 13:24,25 19:2
22:8 36:16,18 39:5
39:11 53:21 56:15
60:11
**seconds** 50:3
**section** 26:22
**see** 10:9 23:18 24:12
30:6 38:24 46:4
**seeking** 54:25 55:8
**Seller** 23:21
**selling** 53:1
**send** 38:11 53:16
**sense** 9:22 10:12,21
10:22 11:13 25:4,5
28:22
**sent** 61:3
**sentence** 26:25 47:6
**separate** 61:10,13
**set** 4:13 22:10 63:16
**Shabbos** 39:19 52:1,3
**shortening** 49:8
**show** 12:17 50:10
**signed** 61:8
**significant** 9:12
**significantly** 14:16
**similarly** 23:9
**sir** 37:4,9
**small** 14:12 38:20
51:15
**smaller** 10:8
**smooth** 49:6
**sold** 6:6
**solid** 55:12
**soon** 5:17
**sorry** 7:12 14:9 18:21

32:20,24 34:16,23
35:2 43:25 47:6
51:22 52:16 54:22
60:20
**sort** 31:4
**South** 13:16 15:18
18:5 20:8,9,14 33:6
33:13,13 59:10
**speak** 46:23
**SPEAKER** 45:15
47:18 51:18 59:7,14
**Specify** 45:18
**spiel** 12:18
**SS** 63:4
**stage** 4:13
**stalking** 5:7,11,15 7:2
7:4,14 16:15 18:19
18:20 23:14 24:16
27:5 29:2 30:13
**stamp** 50:19
**Stand** 15:23
**standard** 28:24,25
**standing** 22:25
**stands** 15:22
**Stanhope** 18:9 22:2
33:1,3 34:5 44:8,10
47:23 59:19,19 60:3
**start** 48:23 49:3,8
**started** 4:6
**state** 28:18 33:12 58:4
63:3,8
**stated** 12:12,13 22:9
**statement** 11:20 32:20
**statements** 53:6
**stay** 26:12 33:19
**stays** 26:19
**Stein** 7:21,22 22:23,24
23:3 27:21 53:21,25
55:18 56:3,6,11,18
56:21,25 59:3,4,16
60:6,11 61:6
**stenographic** 63:11
**stop** 47:14 52:14
**Street** 15:18 18:5,11
20:8,9,15 22:3 33:6
34:6 59:10,19,22
60:3
**subject** 27:5 29:18
34:23 35:1,2 44:3
52:13 57:16
**submit** 4:7 12:3 17:25
**submitted** 4:15,17
**submitting** 12:17
**sufficient** 60:24
**supposed** 29:7
**sure** 7:10 40:14 45:12
45:12 47:2 49:6
50:10 53:22,22 54:2

22:16 36:22 38:7
43:14 52:21,22 54:1
58:8
**sort** 31:4
**South** 13:16 15:18
18:5 20:8,9,14 33:6
33:13,13 59:10
**speak** 46:23
**SPEAKER** 45:15
47:18 51:18 59:7,14
**Specify** 45:18
**spiel** 12:18
**SS** 63:4
**stage** 4:13
**stalking** 5:7,11,15 7:2

60:12

**T**
**T** 63:1,1
**table** 3:1 43:3
**take** 11:14 21:19,19
21:23 31:22 39:11
**talk** 30:8 38:9
**talked** 38:25
**Tavani** 2:20 63:7,20
**tax** 57:18,18 58:1,3
**team** 16:23
**tell** 32:22
**telling** 50:7
**ten** 39:11 40:7,21 50:4
**terms** 12:6
**thank** 8:8,20 12:23
14:6,9 15:19 16:25
20:15 25:1,14 31:10
34:24 35:3 37:11,12
47:16,17,18 49:23
51:3 52:1,3,5,23
53:18,19 57:23
58:25 59:4 60:6,8,10
61:6,15,18 62:2,13
**theirs** 38:15
**they'd** 26:8 41:17
**thing** 27:24 41:14 42:9
42:16,24 60:12 61:4
61:8
**think** 13:6 22:12,19
23:6 46:24,25 47:13
48:1 55:9
**thinking** 32:1 44:17
48:24 49:3
**thought** 58:19,20
**thousand** 20:12,13
36:3 51:13
**three** 11:1 17:8
**time** 4:7,12 7:16 8:16
14:11 16:17 21:16
21:23,23 22:19
37:16 39:12,14
40:20,22 42:7 43:2
44:15,16 49:5,8,9
50:7,8,9,14,18 51:11
53:19 60:24
**timelines** 51:2
**times** 61:16
**today** 5:1 21:23 53:5
59:21
**told** 8:6
**top** 13:5 17:11
**total** 4:18,23 5:14 7:13
26:15 35:4 54:6 56:2
58:25 59:1,24
**touched** 44:8

Remote Proceedings Of
Rosewood Realty Auction

FINAL COPY
January 7, 2022

Page 69

transactions 57:19
transcription 63:11
transfer 57:18 58:1
transparency 47:2
treated 47:7
treatment 28:9
true 43:8
try 37:16 49:10
trying 40:25
turn 22:9
turns 26:18
twice 39:23 41:10
two 4:5 16:22 21:20
  23:25 34:5 39:17
  50:14,20,23,24,24
  50:25 60:3 61:13

U

ultimately 27:2
unchanged 60:1
understand 22:20,22
  40:5,8 41:4
understanding 24:24
  26:5,7,9 54:21
Understood 12:22
  19:24 28:10 31:9
  56:3 62:12
unfortunate 46:25
upend 5:7,15 7:2,14
  16:15
upended 18:19
urge 45:23
use 32:21 61:9

V

vague 39:8
value 40:23
verbal 48:20
verify 54:14
versus 38:15
video 18:22 54:1
virtue 27:20
void 51:18
volume 22:9
voluntarily 57:10,15
volunteer 51:17

W

wait 10:6 14:9
waiting 30:10 39:4
  40:6 43:10 50:4
walk 41:20,24
walking 42:16
want 7:10 9:23 10:4
  10:11 12:2,3 15:2,4
  15:10,14 19:4,4,18
  20:2,4,10,17 27:10

31:22,23 32:4,5 34:7
  37:15 38:24 47:1
  48:2,5,22 49:20
  51:17 53:22 54:1
  58:13,13 60:12
  61:11,12
wanted 22:7
warning 51:7
way 8:18 10:20 11:16
  14:14 17:24 23:18
  27:18 32:21 39:23
  63:14
WebEx 1:9
welcome 60:7
went 16:2 31:16
Wertzberger 6:10,14
  6:19,25 11:3 12:2,10
  12:16,23 13:5,11,13
  13:15,21,24 14:4
  23:15,24 24:14,19
  25:1 27:10 28:11,25
  29:15,17,18,23
  30:12,17 31:25 32:6
  32:13 34:14 35:1,11
  36:23 37:5,7,11 39:6
  39:15,22 40:1,6,10
  40:16,21 41:2,9,13
  41:19,24 42:5,8,11
  42:15,23,25 43:4,9
  43:23 44:2 45:11,20
  46:10,18 50:11
  51:10,21,25 52:5,16
  52:19 54:13 55:2
  57:9,23 58:7,11,15
  58:23 61:7 62:5
we'll 5:17 8:22 13:25
  15:24 16:25 17:21
  18:19,20,21 21:1
  25:6,8,8,12,20,23
  31:2 33:6,9,23 35:17
  36:22 38:20 43:21
  48:12 50:22,23
we're 5:1,2,4,12 10:13
  15:25 16:5,9 17:8,15
  18:1 19:10 20:21
  21:10 24:6 28:12
  30:10,11 31:25
  35:20,25 39:4,5,7,10
  41:23,24 42:16,18
  43:1,1 45:3,11,12
  46:1,13,14 48:11
  50:12 52:10 56:15
  57:9,10,14 58:6,9,17
  62:12
we've 31:20 34:7,9,10
  36:19 49:9 57:4,6
WHEREOF 63:16

whichever 23:23
whosever 47:12
willing 20:24
Willoughby 21:8 34:10
  37:25 44:18 45:2
  48:4 49:1,21 57:2
win 13:13 28:15 29:3
  30:15 46:2
winner 26:13
winning 23:23 24:8,8
  26:16,18 29:14 47:8
  47:11
withdraw 32:19
withdrawing 47:5
  52:21 54:16
withdrawn 54:23
WITNESS 63:16
won 13:12
word 37:10
words 43:7,10
work 26:10
wouldn't 17:8
wrong 11:18 23:19
  24:15
wronged 11:13

Y

yeah 6:19 12:8 14:4
  19:7 25:6 36:9,12
  50:1 51:25 55:11,25
yesterday 4:6,15,20
  6:2,21 8:14 9:4
  11:24 12:14 13:1,12
  14:25 31:14,22
  49:10 60:1,14
yesterday's 4:9 9:4
York 2:18,18 4:2 18:12
  59:23 63:3,8

Z

zero 11:13

$

$1,600,000 34:25
$1,600,001 57:5,5
$10,000 57:11,14 58:9
$100,000 34:18 35:5
  35:14,16,16
$15,650,000 4:20 5:13
  7:12
$17,000,000 29:6
$17,350,000 4:17
$17,800,000 5:10,14
$18,000,000 29:7
$18,300,001 54:7 56:2
$18,300,301 53:5
$18,310,001 59:2

$2,150,000 5:16
$2,350,000 20:15
$2,500,000 9:6,15
$2,625,000 18:8
$20 11:12,15
$200,000 33:25
$30,756,000 4:25
$300,000 27:12
$347,000 23:22
$400,000 35:13 46:12
$5,000 24:3
$50,000 14:2 16:21
  44:12 45:12

1

1 13:2,4,19 22:2 44:18
  48:4 58:17,20,20
  61:25
1,500,000 13:10
1,600,000 14:6 18:12
  57:7 58:22 59:23
1,610,000 58:23,24
  59:9
1,750,000 21:12
1,800,000 48:17,18
  49:20 57:2
1-800-825-3341 1:25
  2:19
1.04 26:25,25 27:8
1.5 31:22 34:12
1.6 22:3 34:11 44:12
1.7 21:8
1.75 34:10
1.8 48:14 49:1
1:00 1:11
1:10 4:11
10-minute 46:19
100,000 18:14 35:10
10011 2:18
11:00 49:9
11221 8:25
1123 12:4
1125 8:24 12:3
1125-1133 56:16
1127 8:24
1129 8:24
1131 8:25
1133 8:25
1213 56:22
13 4:16
1434494 4:4
15,000 16:1
15,650,000 4:22
150 35:4
16 7:12
17 16:5 20:22 21:5,6
  21:11 24:9

17,000 20:22
17,350,000 5:8
17,550,000 15:25
17,800,000 7:3,14 16:5
  16:14 19:1
17,900,000 18:15
17,950,000 21:3
17-9 19:22
17-95 24:9
17.9 18:14
18 25:13,14,21 29:11
  29:16 30:11,21 31:1
  34:1,2 35:3 36:20
  37:13,14 38:13
  52:11
18th 18:11 22:2 34:6
  44:8,11 47:24 59:22
  60:3
18,000,000 29:9,9
18,000,300 55:23
18,050,000 31:10,10
  33:15
18,250,000 33:24
18,300,000 43:22 44:1
  44:5 49:2,24 51:12
  52:12 56:5
18,300,001 52:24
18,310,0001 59:24
18.25 33:23
18250 36:13
19 61:21,24

2

2 15:19 21:25 22:10,14
  22:16 23:16,22 24:7
  24:10,18,24 25:18
  25:18 26:11,15,18
  27:14,15 28:15 29:4
  29:8,12 31:14 34:17
  36:25 41:4 43:24
  44:4 47:9,11 54:23
  55:10
2,150,000 7:13
2,250,000 18:6 20:9
2,400,000 59:11,11
2,725,000 36:18 59:13
2,775,000 35:21
2.4 33:10,11,12,13
2.5 15:1
2:35 1:11 62:15
20 61:21,25
200 34:3
2022 1:10 4:12 63:17
25 48:12
25,000 48:10
250 34:1 36:20 37:13
  37:14 38:13,17,22

Remote Proceedings Of
Rosewood Realty Auction

**2625** 36:9
**263** 18:11 22:2 34:5
  44:8,11 47:24 59:22
  60:3
**2675** 35:25 36:1,9
**2725** 36:17
**2775** 36:2

**3**

**3.5** 12:4,7
**30-minute** 46:19
**30-second** 51:6
**301** 52:11
**325** 18:7 21:25 25:17
  25:17 31:12,13
  59:12,12
**350,000** 30:2
**360,000** 29:16

**4**

**4th** 13:16 15:18 18:5
  20:9,14 33:6,13,13
  59:10
**4,600,000** 56:19,20
**4.6** 15:5,6 34:9

**5**

**5,000** 24:20,21
**50** 34:2 48:12
**50,000** 14:3 16:3 20:25
  21:1,9 25:12,20,21
  31:2 33:9 35:17,18
  35:23,24,24 43:18
  43:21 44:20 45:8
  48:6,12,25
**500** 13:4
**53** 18:9 22:2 32:25
  33:3 34:5 44:8,10
  47:23 59:19,19 60:3
**550** 13:3,19 58:17
**563** 48:4
**568** 21:8 37:24 44:18
  45:2 49:21 57:1

**6**

**60** 50:2
**618** 13:1,3,6,10,13
  31:21 51:24 52:1
  57:4,8
**625** 22:1 25:18,18
  31:14,16
**63** 3:3

**7**

**7** 1:10
**7th** 4:12
**74** 2:17

**750** 21:12 44:18 48:4

**8**

**834** 13:1,2,16,18 14:6
  32:3 34:10 57:6,15

**9**

**9** 1:4 21:11
**9th** 63:17
**900** 20:22 21:6
**92** 15:18 18:5 20:8,9
  20:14 33:13,13
  59:10
**925,000** 15:14
**950** 21:5
**975,000** 35:20 56:23