# KASOWITZ BENSON TORRES LLP

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

JENNIFER S. RECINE
DIRECT DIAL: (212) 506-1916
DIRECT FAX: (212) 658-9722
JRECINE@kasowitz.com

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

January 13, 2022

The Honorable Robert D. Drain
United States Bankruptcy Court
300 Quarropas Street
White Plains, New York 10601-4140

      Re:    <u>In re 53 Stanhope LLC, et al., Case No. 19-23013 (Bankr. S.D.N.Y.) (RDD)
(the "Chapter 11 Cases")</u>

Dear Judge Drain:

      We write on behalf of Brooklyn Lender LLC ("<u>Brooklyn Lender</u>") regarding the auction of certain of the 53 Stanhope Debtors' real estate assets that was conducted on January 6-7, 2022 and the selection by the 53 Stanhope Debtors of bids that were indisputably lower than the amount of Brooklyn Lender's credit bid as the winning bidders.

      As admitted by the 53 Stanhope Debtors in their email dated January 11, 2022 to Your Honor, the Debtors rejected Brooklyn Lender's higher bid because it excluded an express cash component. In doing so, the 53 Stanhope Debtors maintain that all valid bids must include cash in an amount sufficient to pay estate costs, including those of professionals the 53 Stanhope Debtors neglected to retain (as discussed below). Yet, that sort of eleventh-hour and inequitable modification of bidding procedures is contrary to both the 53 Stanhope Plan and the related bid procedures approved by the Court.[1] Each authorizes Brooklyn Lender to credit bid without any reference to a supplemental cash requirement. That fact is indisputable. In addition, as noted by Your Honor previously, Brooklyn Lender has the express right to credit bid up to the allowed amount of its secured claims pursuant to Section 363(k) of the Bankruptcy Code. (*See* Dkt. 245, Ex. A, ¶ 68.) Never at any part of the process did the 53 Stanhope Debtors provide Brooklyn Lender, much less the Court, of notice of any change to the bidding procedures that would disadvantage our client or its statutory right to credit bid. Given the severity of this gating issue, it is premature to hold a sale hearing. Brooklyn Lender therefore requests an interim status conference prior to any sale hearing to address it.

---

[1]     The "53 Stanhope Plan" refers to the corrected fourth amended plan of reorganization (Dkt. 245, Ex. A) and the "53 Stanhope Confirmation Order" refers to this Court's order on June 11, 2021 (Dkt. 285) confirming the 53 Stanhope Plan.

KASOWITZ BENSON TORRES LLP

The Honorable Robert D. Drain
January 13, 2022
Page 2

      The 53 Stanhope Debtors' decision to invalidate Brooklyn Lender's Court-approved right to credit bid is borne from the self-interest of estate professionals. In a credit bid scenario, absent Brooklyn Lender's agreement to fund estate costs (a concession Brooklyn Lender would have agreed to within reason in that context), there would be no cash proceeds available to satisfy estate professional costs, including but not limited to, costs having no relation to the auction. This is again an issue the 53 Stanhope Debtors neglected to address in the 53 Stanhope Plan or bid procedures. Brooklyn Lender funded this case with its cash collateral for approximately three years. Nothing in the 53 Stanhope Plan constituted a guarantee that it would continue to do so through consummation if the 53 Stanhope Debtors failed to garner interest in the subject assets above the amount of Brooklyn Lender's claim. Further compounding this issue is that the 53 Stanhope Debtors are asserting administrative expenses approximately six-fold greater than estimated in the 53 Stanhope Plan and related disclosure statement. And while Brooklyn Lender has sought to consensually resolve this issue, discussions are at a standstill.

      Your Honor's prior orders in these Chapter 11 Cases create fair and complete rules as to the use of Brooklyn Lender's cash collateral to fund these expenses. The governing order establishes a limited carve-out for estate costs, but nowhere does that order expand the existing carve-out to include the types of costs the 53 Stanhope Debtors now seek to cover by selecting non-value maximizing bids. Indeed, the cash collateral carve-out does not speak to estate professional costs at all. Nor does that order or the 53 Stanhope Plan provide estate professionals with authority to surcharge Brooklyn Lender's collateral post-confirmation. Any purported requirement of Brooklyn Lender to contribute cash for the 53 Stanhope Debtors to select it as the highest or otherwise best bid is contrary to the absolute priority rule, the 53 Stanhope Plan, the bid procedures, and the 53 Stanhope Confirmation Order.[2]

      Further complicating this issue is the excessive and unauthorized 5% broker fee insisted upon by the Rosewood Realty Group ("Rosewood"). The amount of such fee was never expressly ordered by the Court, never incorporated into the 53 Stanhope Plan or the bid procedures, never the subject of any retention application by the 53 Stanhope Debtors, and did not provide commensurate value to the 53 Stanhope Debtors' estates. As a result, the fee manifestly is not justified and cannot be compensable under Bankruptcy Code Sections 328

---

[2]     Contrary to the 53 Stanhope Debtors' efforts here, the equitable doctrine of marshaling evolved at equity to preserve, not undermine secured creditor rights. "[T]he equitable doctrine of marshaling rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." *Meyer v. United States*, 375 U.S. 233, 236 (1963) (quoting *Sowell v. Fed. Reserve Bank*, 268 U.S. 449, 456-57 (1925)). To that end, courts in this district have held that "[t]he party who seeks marshalling must demonstrate that the rights of other creditors, including the senior creditor will not be prejudiced." *Walther v. Bank of New York*, 772 F. Supp. 754, 767 (S.D.N.Y. 1991). The 53 Stanhope Debtors attempt therefore to cripple the auction process here by foisting up an inferior bid, all to benefit the rights of a junior class of creditors, administrative claimants, makes that prejudice all the more real. That the 53 Stanhope Debtors can find no authority among any order entered by the Court to support that level of prejudice further evidences the conclusion that the Brooklyn Lender's offer constitutes the highest or best bid and must be accepted.

KASOWITZ BENSON TORRES LLP

The Honorable Robert D. Drain
January 13, 2022
Page 3

(limiting compensation to professional persons retained under section 327 or 1103 of the Bankruptcy Code) or 330 ("After notice to the parties in interest and the United States Trustee and a hearing . . . the Court may award [reasonable compensation] to a professional person employed under section 327 or 1103."). It is black letter law that debtors cannot compensate unretained professionals outside the ordinary course. And even if that were that not the case, Rosewood's minimal effort to market the properties hardly justifies the excessive fee it seeks as an unretained professional. As the 53 Stanhope Debtors seemingly acknowledged at the auction, following a six-month marketing process beginning in the summer of 2021, individual bidders appear to not have been contacted until the week prior to the auction. Accordingly, even if it were retained by order of the Court, which again it is not, Rosewood should not be entitled to receive a 5% fee under these circumstances, particularly in view of the fact that the highest and best bid for the properties came from Brooklyn Lender through its credit bid.

Additionally, there were other infirmities with the auction process that adversely impacted the result of the auction. As Brooklyn Lender stated on the record and previewed with the Court, the Court has neither approved the proposed stalking horse agreement nor the related break-up fee. As a result, the 53 Stanhope Debtors should not have conducted the auction with the premise that either will be accepted by the Court. As evidenced on the record at the auction and the various objections placed on the record by different parties, individual bidders were confused by the validity of the break-up fee and the purported stalking horse bidder's asserted ability to credit bid its unapproved break-up fee to bids by other parties in excess of its opening bid. And astonishingly, the Debtors agreed, in the form of the unapproved agreement provided to the undersigned, that the break-up fee would increase as bids increased, which not only is highly unusual, but also untethers the amount of the break-up fee from any actual benefit to the estate, to the extent any exists, derived from the initial bid. Moreover, given that the existence of the stalking horse agreement was not announced until the commencement of the auction, it added no benefit to the estates or the efforts to sell the subject properties. The break-up fee should be disregarded for this reason alone. Rather than increasing interest in the auction and enhancing value, it appears that the Debtors' attempt to legitimize the stalking horse chilled bidding, confused the process, and detracted from the purpose of the auction which was to maximize the value of the Debtors' assets. It also appears that bidders were not provided adequate advance notice of how bidding would operate (including the ability to collude on day 2 of the auction).

Finally, there is no basis to sell Brooklyn Lender's collateral without either its consent or satisfaction of its outstanding liens in full. That the 53 Stanhope Debtors are attempting to do so while ignoring Brooklyn Lender's valid credit bid is unauthorized and must be addressed as quickly as possible to avoid third parties wasting unnecessary time and resources.

Brooklyn Lender remains ready, willing, and able to close on the sale of the 53 Stanhope Debtors' real properties. Brooklyn Lender also remains willing to work through a consensual resolution to the above-referenced issues and the concerns of the 53 Stanhope Debtors to ensure the payment of reasonable administrative expenses and consummation of the Plan, as has been

K ASOWITZ  B ENSON  T ORRES LLP

The Honorable Robert D. Drain
January 13, 2022
Page 4

communicated to counsel to the 53 Stanhope Debtors since the auction.  In view of the foregoing, Brooklyn Lender respectfully suggests that a status conference prior to the sale hearing is in the best interest of all parties in interest.  Brooklyn Lender reserves all rights to object on the grounds referenced at the auction, and on any other grounds as may be appropriate.

    Respectfully,

    */s/ Jennifer S. Recine*

    Jennifer S. Recine

cc:    ECF Notice Parties