**<u>Exhibit D</u>**

**Transcript of April 12, 2021 Hearing[1]**

---

[1]        There appears to be a scrivener's error in the date of the attached transcript.  The hearing occurred on April 12, 2021, not April 9, 2021.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                                    :
                                          : Case #19-23013-rdd
            53 STANHOPE LLC               :
                                          : 300 Quarropas Street
                                          : White Plains, New York
            For Chapter 11                :
                                          : April 9, 2021
                                          : 11:03 a.m.
----------------------------------        :
                                          TELEPHONE CONFERENCE

TRANSCRIPT OF NOTICE OF HEARING/NOTICE OF HEARING TO CONSIDER
APPROVAL OF DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF
LIQUIDATION PROPOSED BY BROOKLYN LENDER LLC (RELATED
DOCUMENT(S)204), DISCLOSURE STATEMENT/DISCLOSURE STATEMENT FOR
CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY BROOKLYN LENDER LLC
(RELATED DOCUMENT(S)203) FILED BY MATTHEW BENJAMIN STEIN ON
BEHALF OF BROOKLYN LENDER LLC. (ECF #204), CHAPTER 11
PLAN/CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY BROOKLYN
LENDER LLC FILED BY MATTHEW BENJAMIN STEIN ON BEHALF OF
BROOKLYN LENDER LLC.(ECF #203), NOTICE OF HEARING FOR
DISCLOSURE STATEMENT APPROVAL (RELATED DOCUMENT(S) 198, 200,
196), SECOND AMENDED DISCLOSURE STATEMENTS FOR 55 STANHOPE
LLC, 119 ROGERS LLC, 127 ROGERS LLC, C & YSW, LLC, NATZLIACH
LLC, 106 KINGSTON LLC, AND 167 HART LLC (RELATED
DOCUMENT(S)94) FILED BY MARK A. FRANKEL ON BEHALF OF 53
STANHOPE LLC. (ECF #200), SECOND AMENDED DISCLOSURE STATEMENT
FOR D&W REAL ESTATE SPRING LLC AND MESEROLE AND LORIMER LLC
(RELATED DOCUMENT(S)94) FILED BY MARK A. FRANKEL ON BEHALF OF
53 STANHOPE LLC.(ECF #198), SECOND AMENDED DISCLOSURE
STATEMENT FOR 53 STANHOPE LLC, 325 FRANKLIN LLC, 618 LAFAYETTE
LLC, 92 SOUTH 4TH ST LLC, 834 METROPOLITAN AVENUE LLC, 1125-
1133 GREENE AVE LLC, APC HOLDING 1 LLC; EIGHTEEN HOMES LLC,
AND 1213 JEFFERSON LLC (RELATED DOCUMENT(S)94) FILED BY MARK
A. FRANKEL ON BEHALF OF 53 STANHOPE LLC (ECF #196),OMNIBUS
OBJECTION TO DISCLOSURE STATEMENT (RELATED DOCUMENT(S)198,
200, 196) FILED BY MATTHEW BENJAMIN STEIN ON BEHALF OF
BROOKLYN LENDER LLC. (ECF #219), OBJECTION TO DISCLOSURE
STATEMENT (RELATED DOCUMENT(S) 204) FILED BY MARK A. FRANKEL
ON BEHALF OF 53 STANHOPE LLC. (ECF #220), RESPONSE TO
DISCLOSURE STATEMENT OBJECTION (RELATED DOCUMENT(S)219) FILED
BY MARK A. FRANKEL ON BEHALF OF 53 STANHOPE LLC.(ECF #232)
BEFORE JUDGE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For Debtors:                    BACKENROTH FRANKEL & KRINSKY, LLP
                                BY:  MARK FRANKEL, ESQ.
                                     DAVID GOLDWASSER, ESQ.
                                800 Third Avenue, 11th Floor
                                New York, New York  10022

                                ABRAMS, FENSTERMAN, FENSTERMAN,
                                EISMAN, FORMATO, FERRARA, WOLF
                                & CARONE, LLP
                                BY:  ANDREA CARUSO, ESQ.
                                1 MetroTech Center, Suite 1701
                                Brooklyn, New York  11201

For the United States:          UNITED STATES ATTORNEY'S OFFICE
                                SOUTHERN DISTRICT OF NEW YORK
                                BY:  SAMUEL DOLINGER, ESQ.
                                86 Chambers Street, 3rd Floor
                                New York, New York 10007

For Brooklyn Lender:            KASOWITZ BENSON TORRES LLP
                                BY:  MATTHEW STEIN, ESQ.
                                     JENNIFER RECINE, ESQ.
                                     DAVID ROSNER, ESQ.
                                1633 Broadway
                                New York, New York  10019

For Israeli Claimants:          NORRIS MCLAUGHLIN, P.A.
                                BY:  MELISSA PENA, ESQ.
                                7 Times Square, 21st Floor
                                New York, New York  10036




Transcription Service:              Carole Ludwig,
                                    *Transcription Services*
                                    155 East Fourth Street, #3C
                                    New York, New York 10009
                                    Phone:  (212) 420-0771
                                    Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

**<u>INDEX</u>**

**<u>E X A M I N A T I O N S</u>**

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| NONE | | | | |

**<u>E X H I B I T S</u>**

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| NONE | | | | |

PROCEEDING                                         4

1   (Proceedings commence at 11:03 a.m.)

2          THE COURT:  So I think that just leaves one

3   remaining matter on the calendar, anyone who is on for any

4   other case should certainly feel free to leave the call at

5   this point. So the last matter on the calendar is In re 53

6   Stanhope LLC, et al.

7          MS. ANDREA CARUSO:  Your Honor, Andrea Caruso,

8   special counsel to the debtors from Abrams Fensterman.

9          THE COURT:  Good morning.

10          MS. CARUSO:  Good morning.

11          MS. MELISSA PENA:  Melissa Pena from the law

12   firm Norris McLaughlin on behalf of the Israeli

13   claimants.

14          THE COURT:  Good morning.

15          MR. MATTHEW STEIN:  Good morning, Your Honor,

16   Matthew Stein, Kasowitz Benson Torres, on behalf of

17   Brooklyn Lender, and I'm here with my colleagues,

18   David Rosner and Jen Recine.

19          THE COURT:  Okay, good morning.

20          MR. SAMUEL DOLINGER:  Good morning, Your

21   Honor, Samuel Dolinger from the US Attorney's Office

22   for the United States.

23          THE COURT:  Good morning. Mr. Frankel, I see you

24   on the hearing dashboard, you may be on mute?

25          MR. MARK FRANKEL:  I suppose I was, can you

1 hear me, yes, you can hear me now, I don't know why

2 that happened.  Yes, Mark Frankel, Backenroth, Frankel

3 and Krinsky, attorneys for the debtors, and David

4 Goldwasser is on the line, as well.

5        THE COURT:  Okay, good morning.  Does anyone

6 else want to note their appearance?

7        Okay, we're here on two matters, the hearings

8 on the debtor's request for approval of three separate

9 disclosure statements for three separate Chapter 11

10 plans. On Friday the debtors filed proposed third

11 amended disclosure statements and second amended

12 plans, again in respective three separate plans, what

13 have been referred to as a refinancing plan, a

14 reinstatement plan and a sale plan for the different

15 debtors listed in those plans.

16        The disclosure statements, albeit not the most

17 recent ones, were objected to by Brooklyn Lender, the

18 debtor's primary creditor.  We're also here on

19 Brooklyn Lender's request for a joint, I'm sorry, for

20 an amended disclosure statement for a joint amended

21 plan for all of the debtors which in a prior version

22 was also objected to, this time by the debtors.

23        I received the amended disclosure statement

24 and amended plan by Brooklyn Lender this morning. It's

25 dated Sunday, the 11th, but I've had a chance to review

1  the redline. The changes, though in some respects

2  important, were not extensive. So you should assume I

3  have read those pleadings as well as the parties'

4  respective replies to the objections that were filed.

5        I don't know if there are any further updates.

6  What I propose is that we go ahead first with the

7  debtor's three proposed disclosure statements, at

8  which one anyone can tell me if there are any updates,

9  and then we proceed with the Brooklyn Lender request

10 for approval of disclosure statement.

11       MR. FRANKEL:  Judge, this is Mark Frankel. I

12 have no updates for you and I'm prepared to proceed on

13 the debtor's disclosure statements. In response to the

14 objections, we believe we have resolved the most

15 significant issues which were the financial issues on

16 the financing and on the refinancing and the

17 reinstatement plans we have shown an additional

18 $600,000 on the commitment letter for the refinancing

19 and an extension of time on that.  And for both the

20 refinancing and the reinstatement we have shown in

21 exhibit E an additional $1 million of new value that

22 the interest holders have put into escrow conditioned

23 on plan confirmation to fund additional amounts that

24 may be due that would include additional amounts for

25 Brooklyn Lender attorney fees and if there are

1   additional amounts with respect to claims that may

2   arise in the meantime.

3          With respect to the sale plans, we have also

4   attached to the third amended disclosure statement the

5   listing agreement with Rosewood which is a very

6   experienced bankruptcy auctioneer and prepared to sell

7   the properties according to routine bankruptcy sale

8   procedures.  We believe that these disclosure

9   statements describe plans that can be confirmed and

10  should be confirmed because with respect to the

11  refinancing and reinstatement plans, they avoid

12  forfeitures of the properties which we believe was

13  contemplated by the bench ruling on the prior debtor's

14  plan, and on the sale plan provides for a quick sale

15  which is important because of default interest

16  accruing. And by the same token, quick refinancing is

17  important for the refinancing plans because of the

18  accrual of default interest.

19         The Brooklyn Lender plans, we are not up to

20  that yet but we believe consideration --

21         THE COURT:  No, let's not cover those at this

22  point, let's just focus on the debtor's plan and then

23  we'll move to the Brooklyn Lender plan --

24         MR. FRANKEL:  Well then, Judge, I would just

25  recap at this point and say that we believe that our

PROCEEDING                                          8

1   plans can be confirmed and consummated quickly before

2   24 percent interest accrues and makes them not

3   feasible. That we have described an efficient

4   transparent process that can be achieved at arm's

5   length and that the Court should consider our plans as

6   soon as convenient and defer Brooklyn Lender's

7   disclosure statements until after our plans have been

8   considered.

9           THE COURT:  Okay.  As I said, I've reviewed

10  Brooklyn Lender's objection to the disclosure

11  statement and, as I think everyone on the call knows,

12  I generally carefully review plans and disclosure

13  statements before the disclosure statement hearing and

14  will give my own comments to the plan proponent where

15  I think it's important to either add information or fix

16  some problem in the plan that I believe needs to be

17  addressed at this point as opposed to maybe addressed

18  depending upon how people vote or how the evidence

19  shakes out if there's a contested confirmation

20  hearing. So I'm ready to do that, as well, but if

21  counsel for Brooklyn Lender wants to cover more than

22  is in the objection or to highlight what they want to

23  have me hear in light of the objection, I'm happy to

24  hear them now.

25          MR. STEIN:  Good morning, Your Honor, for the

1 record, Matthew Stein, Kasowitz, Benson, Torres, on

2 behalf of Brooklyn Lender.  Your Honor, given your

3 comments I'll be brief, but there are a couple of high

4 level points that need to be hit upon.

5          First, with respect to the refinance plan, it

6 is our opinion, and it's based on looking at the

7 numbers attached both as Exhibit B and Exhibit D to

8 the disclosure statement for that D&W plan, that the

9 amounts are still insufficient to provide for the

10 payments contemplated by that plan.  The proposed exit

11 facility, as it sits, which is Exhibit A to the plan,

12 is at $15 million, leaving approximately $14 million

13 after payment of closing costs.

14          Exhibit B indicates that there's $14,162,000

15 of payments. Assuming the size of the Brooklyn Lender

16 claim as the debtors have put in the plan, we believe

17 that that amount is short even under existing orders

18 by about $390,000. So that even if $100,000 of

19 additional capital is raised from interest holders as

20 contemplated, the amount of financing is still short

21 to fund payments that the plan says needs to be made.

22          Moreover, with the extra $600,000 that Maguire

23 is willing to commit, the language in the commitment

24 letter provides that it's willing to commit if the

25 Court rules a higher total payoff amount. And given

1   now that that condition has not been met, I mean the

2   financing as exists today, it doesn't cover an

3   existing shortfall.  If there are additional fees or

4   additional costs --

5           THE COURT:  I'm sorry --

6           MR. STEIN:  Sure.

7           THE COURT:  Are you reading that language to

8   say that I have to rule on it now?

9           MR. STEIN:  Now --

10          THE COURT:  (indiscernible) applicable?

11          MR. STEIN:  No, what I'm saying is that the

12  commitment letter, itself, makes that $600,000

13  conditional so that, such that it is only, they're

14  only willing to lend that $600,000 if there is a, and

15  it's a defined term but it doesn't seem to be defined

16  anywhere, it is capital T, capital P, capital A, total

17  payoff amount.  I'm not exactly sure what that is, but

18  it seems, as we sit here today, that condition has not

19  been met and, therefore, there is a financing

20  shortfall --

21          THE COURT:  You just said what you said it

22  didn't mean. So I don't know what you're saying. Of

23  course it's not met today, it doesn't mean what

24  (indiscernible) to rule today.  Move on to your next

25  point.

PROCEEDING                                          11

1          MR. STEIN:  Okay.  There's also the financing

2    is not sufficient to cover the disputed claim reserve

3    which under the plan needs to be funded.

4          THE COURT:  Well for disputed claims, but your

5    claim doesn't dispute it.  It's on appeal, that's not

6    a disputed claim.  You've cited no case law to that

7    effect and I think you know why, because there is

8    none.

9          MR. STEIN:  Understood, Your Honor. I'll move

10   on.

11         THE COURT:  Okay.

12         MR. STEIN:  The other point is that the

13   outside date of May 31st is exceedingly tight in giving

14   normal notice, such that if even the disclosure

15   statement is approved today, the confirmation hearing

16   would be five weeks from today which would be May 17th.

17   May 31st is exactly two weeks after that date, so it's

18   an exceedingly tight schedule. And to the extent that

19   the schedule slips at all, it's unclear whether the

20   debtors have had continued conversations about

21   extending that date even further.

22         THE COURT:  Okay.

23         MR. STEIN:  with respect to, moving on, with

24   respect to the 55 Stanhope plan, the reinstatement

25   plan, the disclosure statement references Exhibits D,

PROCEEDING                                              12

1  E and F, that are not attached to the existing

2  disclosure statement.  Exhibit F is particularly

3  important because the debtors cite that for proof that

4  the net operating income will be sufficient to fund

5  interest payments on the reinstated debt. Based on our

6  review of the monthly operating reports, it seems as

7  if the rental income has been declining to the point

8  where it would be barely sufficient to pay those

9  monthly interest payments and leave nothing left over

10 for operating expenses.

11         THE COURT:  Well, Mr. Frankel, what is the

12 status of those three exhibits?

13         MR. FRANKEL:  I made a mistake on Friday when

14 I was assembling them, I did not attach them. I can do

15 that.

16         THE COURT:  Well have they changed from

17 version two of the disclosure statement?

18         MR. FRANKEL:  Yes, Exhibit F are projections

19 which are important to show feasibility to pay the

20 amounts required under the loans. And Exhibit E is the $1

21 million escrow letter.  That would be the same as in the

22 refinance Exhibit E.  So that's fairly easy to attach. And

23 Exhibit F are projections that were unintentionally

24 omitted.

25         THE COURT:  Okay.  It wasn't clear to me whether

PROCEEDING                                    13

1   the objection actually posited a shortfall or just said

2   there might be one.

3          MR. STEIN:  Your Honor, we said that there

4   might be one.  At the time that we filed the objection

5   the most recent operating report that was on file was

6   for November.  Since then, last week, the debtors have

7   caught up and filed their December, January and

8   February monthly operating reports. Other than

9   December where rental income for these debtors I

10  believe ticked up to about $78,000 per month, January

11  and February were both down. January was about $67,000

12  and February was $61,000.  At those levels, we do not

13  believe that the debtor can fund operations and also

14  pay the monthly interest payments that would be

15  required under the reinstated debt.

16         THE COURT:  Okay.

17         MR. STEIN:  And then briefly, Your Honor, just

18  moving to adequate information that we believe should

19  be added to the disclosure statement. First,

20  especially with respect to the reinstatement and

21  refinance plan, both those disclosure statements

22  should include a statement about the risk to the

23  extent that Your Honor believes that the funding and

24  financing statements that I've made today are not

25  (indiscernible) confirmability objections, there

1   should at least be a disclosure indicating there is

2   that risk to the extent that the Brooklyn Lender claim

3   is higher than what it disclosed in the disclosure

4   statement that does present difficulties for the

5   debtor to effectuate the terms of the plan.

6          I should also note that in the disclosure

7   statement, the debtor's description of the appeal is

8   incorrect as a matter of law in that they highlight

9   the fact that we did not seek a state pending appeal

10  such that this is, so the Court's opinion is law of

11  the case. While it is law of the case, there has been

12  nothing that Brooklyn Lender has needed to stay

13  because there is no confirmation order yet and there

14  is no risk of mootness.  So we do not think that that

15  is an appropriate statement to include in any of the

16  three disclosure statements.

17         THE COURT:  Well it's accurate, right, you

18  haven't sought a state pending appeal.

19         MR. STEIN:  Correct, but there is a, that is

20  correct and it is law of the case, but I don't think

21  it has, that has the meaning that the debtors are

22  intending it to mean.

23         THE COURT:  Well, they don't say what they

24  think it means.

25         MR. STEIN:  Understood, Your Honor.

1          THE COURT:  Okay.

2          MR. STEIN:  And with that I'll yield the

3    podium.

4          THE COURT:  Well, so on the sale plan is there

5    any issue there?

6          MR. STEIN:  I'm sorry, Your Honor.  On the

7    sale plan, simply just on the adequate disclosure, we

8    believe that there should be a disclosure to the

9    extent that Brooklyn Lender believes that its claim

10   amount is higher and that there is risk given the

11   pending appeal. And there is already a statement about

12   the legal fees.  But I believe that the risk due to

13   the pending appeal should be clarified.

14         THE COURT:  Mr. Frankel, I thought you

15   referenced the pending appeal in each of the three

16   amended disclosure statements?  All right.  Well let

17   me go through with you my comments on the plan and

18   disclosure statement for each of the three documents.

19   Let me start with the D&W Real Estate Spring LLC and

20   Meserole and Lorimer LLC documents.  And there are

21   conforming changes to the disclosure statement, too.

22         At paragraph 36, the first time it comes up in

23   that plan, it refers to the new owners getting the

24   property under Section 363(B) of the Bankruptcy Code.

25   I guess I have two questions related to that.  First,

1   this isn't really a sale, right, they're not buying

2   the equity except to the extent that their

3   contributing the $1 million?

4            MR. FRANKEL:  Yes.

5            THE COURT:  Okay.  So I think what you need to

6   say is that they're getting the property under the

7   plan, under 1141 including (C) of the Bankruptcy Code

8   and 1129, it's not really a 363(B).

9            Secondly, related to that, I think you need to

10  have a mechanism here in the section, "Means for

11  Implementation," which is on page 13, paragraph 67,

12  which is headed, "Sources of Funds." And again, I

13  don't think it's under 363(B), I think it's under 1129

14  and 1141.  And I think either here or in the

15  disclosure statement you need to spell out the

16  disclosure that is being provided by the existing

17  interest holders, which you should capitalize in the

18  third line of 67, to obtain the equity in the new

19  owners. I think it is their agreement in respect of

20  the loan to guarantee and their agreement with regard

21  to the $1 million, which isn't referenced here. And

22  you need to spell out how the $1 million gets

23  triggered and paid.  Okay, are you following me on

24  that?

25           MR. FRANKEL:  Yes, Judge, I'm writing it down

1  as you speak.

2         THE COURT:  Okay.  The letter says that

3  Sheffield Strulovitch is paying the $1 million or

4  having it be available on account of all interest

5  holders.  But I think the plan should make it clear

6  that whenever you refer to interest holders here in

7  the "Treatment" section, in paragraph 62, and in the

8  "Means for Implementation" section, paragraph 67, it's

9  all interest holders.

10        So in paragraph 62 it says, "On the effective

11 date all interest will be cancelled," and then add the

12 word all before interest holders. And again, when

13 you're rewriting paragraph 67, you should spell out

14 that this is being, this new value is being provided

15 on account of or for the benefit of all interest

16 holders. And in paragraph 68, again, refer to all

17 interest holders receiving the benefit of the new

18 ownership subject to the dilution under the "Unsecured

19 Creditor" section.

20        MR. FRANKEL:  Yes, Judge.

21        THE COURT:  Okay.  I have a question about the

22 $1 million in addition to all of that, which is are

23 there two $1 millions or just one $1 million, because

24 there's the $1 million that applies to the

25 reinstatement plan, as well.

PROCEEDING                                        18

1           MR. FRANKEL:  It was $1 million across both

2    depending upon what the needs turn out to be.

3           THE COURT:  Okay, so you need to spell that

4    out.

5           MR. FRANKEL:  Will do.

6           THE COURT:  The last point I have on the plan

7    is the reference to the breakup fee in the commitment

8    letter, the April 8th commitment letter.

9           MR. FRANKEL:  Yes.

10          THE COURT:  That isn't binding until it's

11   approved by me. So I just, you know, I just want to go

12   on record on that, it's just not a binding provision

13   of the debtor's estate until I've approved that.

14          MR. FRANKEL:  We'll make that disclosure.

15          THE COURT:  Okay.  Now, as far as the

16   disclosure statement, again, it's really similar

17   comments, instead of the paragraphs I've been

18   referring to it's in paragraph 33 and paragraph 38

19   where the changes need to be made that we've been

20   talking about.  I do not believe that any issues as to

21   feasibility that have been raised with regard to this

22   plan are the type of issue that would render the plan

23   on its face unconfirmable, particularly given the

24   $600,000 contingent increase to the commitment letter

25   and the $1 million contribution amount that we've

1   already talked about.  But you should add to the

2   disclosure statement where you discuss Brooklyn

3   Lender's claim, a sentence that states that Brooklyn

4   Lender asserts that its claim is higher and if it is

5   allowed in a greater amount than the commitment letter

6   and $1 million commitment would enable payment of, the

7   plan without modification would not be confirmable.

8          MR. FRANKEL:  We'll add that.

9          THE COURT:  Okay. I do not believe any of the

10  other objections raised by Brooklyn Lender are, have

11  any merit.  I've reviewed them all, including a

12  discussion of the liquidation analysis which I think

13  is premised solely on the contention that in a Chapter

14  7 liquidation there would be more time for Brooklyn

15  Lender to pursue its appeal, but that doesn't warrant

16  any further change to the disclosure statement, nor,

17  as I said, to its objections regarding feasibility.

18          So with those changes to the plan and

19  disclosure statement, I will approve the disclosure

20  statement for the D&W Spring and Meserole and Lorimer

21  plan.

22          Mechanically you should make the changes that

23  were discussed and email a blackline to chambers

24  copying counsel at Kasowitz.  I'll review them to see

25  if they address my comments.  If they do, we'll

1   contact you and you can file the amended disclosure

2   statement and plan and email the order approving the

3   disclosure statement and scheduling the confirmation

4   hearing to chambers.

5           MR. FRANKEL:  Yes, Judge.

6           THE COURT:  Okay. So then let me turn to the

7   bail plan which really doesn't have much of an

8   objection. This is the 53 Stanhope and other debtors'

9   plan.  My comments here are again on the plan and then

10  conforming changes to the disclosure statement.  The

11  plan, as I said, contemplates the sale of the

12  properties and it's in the "Source of Funds" section,

13  the means for implementation. Again, instead of

14  referring to 363(B), I think you need to refer to

15  1123(A)(5) and 1141(C) to be free and clear since it's

16  being done under the plan.

17          MR. FRANKEL:  Judge, the reason I've included

18  363(B) has been that in the past title companies

19  always want the comfort of --

20          THE COURT:  Right.  Well you can, tell you

21  what, you can say 363(B), 1123 and 1141 because I

22  guess 1123 you can say is incorporating 363.

23          MR. FRANKEL:  Okay, thank you.

24          THE COURT:  Okay. And then on the sale

25  procedures, how are you going to set the opening bid?

1   Right now it's blank.

2          MR. FRANKEL:  Yes, we had not, we were hoping

3   to work with Brooklyn Lender on a consensual opening

4   bid given the fact that they have the right to credit

5   bid and we hadn't gotten to that yet.

6          THE COURT:  Okay.  So I think there you should

7   drop a footnote and say that the debtor will try to

8   set opening bids for the properties in consultation

9   with Brooklyn Lender and the broker. And if it is

10  unable to reach agreement with Brooklyn Lender it will

11  do so with the broker and will have opening bids

12  confirmed at the, no later than seven days before the

13  hearing on confirmation.

14         MR. FRANKEL:  Yes, Judge.

15         THE COURT:  And then related to that in the

16  same paragraph with the blanks, you have it so that

17  people can bid on the whole group, subsets of the

18  group or individual properties and I just think you

19  need to conform this paragraph to that.  You know,

20  opening bids per property shall be as opposed to just

21  the opening bid shall be.

22         MR. FRANKEL:  Okay.

23         THE COURT:  And then you already mentioned

24  363(K).  There's a sentence at the, a paragraph, the

25  next to last paragraph of the bidding procedures

 1  before the form of contract, it covers the mortgagee

 2  and says the mortgagee shall be entitled to name a

 3  designee, a designee who shall be deemed qualified to

 4  bid without posting a qualifying deposit but complying

 5  with the other requirements.  I think you need to

 6  precede that sentence by saying that the mortgagee

 7  will have the right under Section 363(K) to bid the

 8  amount of its allowed secured claim or allowed claim,

 9  excuse me, it's allowed claim on each property. And

10  then the designee point is a designee who would be the

11  owner in respect of a credit bid.

12          MR. FRANKEL:  Okay.

13          THE COURT:  Those are my comments on the plan

14  and the exhibit. On the disclosure statements just

15  there are conforming changes. And in addition, I don't

16  see anything in here about funding the debtors pending

17  the sale. I think you should just state that you

18  intend to do that, I'm assuming that's the case,

19  right?

20          MR. FRANKEL:  Yes, we're going to continue to

21  use the cash flow which has been sufficient to keep

22  the mortgage paid at the contract non-default rate and

23  pay operating expenses.

24          THE COURT:  Okay, so you should put in the

25  disclosure statement.

1          Okay, so then let's turn to the reinstatement

2    plan which is the 55 Stanhope plan and covers the

3    other debtors.  We already talked about the $1 million

4    and I think that needs to be addressed in the same

5    way.  In the "Source of Funds" paragraph, paragraph 21

6    and, again, it should say from a cash contribution be

7    funded by or on behalf of all Interest Holders,

8    initial caps, interest and holders. But then I think

9    you need to explain more than that, that this

10   contribution would come from the $1 million to the

11   extent necessary and to the extent not used, that fund

12   is not used in the D&W plan.  So that would be in

13   paragraph 21 of the plan and the similar paragraph in

14   the disclosure statement.

15          MR. FRANKEL:  Yes, Judge.

16          THE COURT:  Okay.  And then the "Treatment"

17   section for interest holders in the plan should

18   provide that on account of the $1 million -- I'm

19   sorry, that allowed interest holders will, I guess

20   this is a question I have here, why are you having all

21   interest be cancelled as opposed to just having them

22   survive subject to the dilution?

23          MR. FRANKEL:  That was a mistake.

24          THE COURT:  Okay.  All right, I appreciate

25   you're plucking provisions from other plans but I

PROCEEDING                                    24

1  think this isn't a, there will be a contribution made

2  but, and I think you should provide for that here in

3  the treatment, to the extent necessary, to confirm the

4  plan from the $1 million. But then have that the

5  interest will continue subject to dilution. And then

6  the dilution is fine the way you've described it.

7           MR. FRANKEL:  I apologize for that mistake.

8           THE COURT:  That's all right.  And then on the

9  "Class Two Treatment" section, you need to I think

10 state, although it's implicit here, I think you need

11 to state it, particularly given the free and clear

12 language later in the plan that the mortgagee's liens

13 on the debtor's assets shall remain.

14          MR. FRANKEL:  Yes.

15          THE COURT:  And a similar statement in the

16 disclosure statement when you're talking about the

17 treatment of class two in paragraph 21. And then again

18 in the disclosure statement, the conforming paragraph

19 on treatment is paragraph 32 and then you need to

20 attach the exhibits, obviously, the three that weren't

21 attached.

22          MR. FRANKEL:  So I will attach all exhibits

23 with the next version.

24          THE COURT:  Right.  So, again, with those

25 changes I'll approve the disclosure statement for the

1   reinstatement plan. Again, the other -- I'm sorry, you

2   need to add the same language in the disclosure

3   statement where you're discussing the claims of the

4   mortgagee that I've already had you put in the other

5   two --

6           MR. FRANKEL:  Yes.

7           THE COURT:  i.e. the risk that the plan is not

8   confirmable if those claims are allowed in a greater

9   amount, in a substantially greater amount.

10          Okay, and you should go through the same

11  process with this disclosure statement and plan as

12  with the other two, email a blackline and in this case

13  the three exhibits to chambers and we'll check them to

14  make sure they conform. If they do we'll let you know

15  and you can file them and then email the order

16  approving the disclosure statement scheduling the

17  confirmation hearing and related information for

18  entry. But with those changes I find that the

19  disclosure statements for each of these three plans

20  would contain adequate information with respect to

21  each plan and would overrule the other objections by

22  Brooklyn Mortgage to the extent that I haven't

23  incorporated them in my comments on the disclosure

24  statement.

25          MR. FRANKEL:  Thank you, Judge.  When I send

1   these to chambers with the revisions, may I also make

2   a motion to reduce time for the confirmation hearing

3   so that we can satisfy all the conditions before the

4   deadline and the refinancing?

5        THE COURT:  Well I'm not sure you would need

6   that. I mean if you get it to me tomorrow, you can

7   send it out by the end of the week and I thought it

8   was, end of May was the financing. Is there a

9   confirmation date in the financing?

10       MR. FRANKEL:  No.  Well there was a May 31st

11  deadline.

12       THE COURT:  Right, well that would be more

13  than enough time. I don't think you need it at this

14  point. I mean, obviously, if it drags a bit then, yes,

15  you can make such a motion, but I don't think you need

16  it at this point.

17       MR. FRANKEL:  Okay, thank you.

18       THE COURT:  Given the 28 days requirement.

19       MR. DOLINGER: Your Honor, Samuel Dolinger from

20  the US Attorney's Office, may I be heard very briefly

21  on debtor's plan?

22       THE COURT:  Sure.

23       MR. DOLINGER:  Thank you.  The IRS has filed

24  some relatively minor administrative priority and

25  unsecured general claims. We have conferred with

1  debtor's counsel and it is our understanding that

2  debtor's do intend to modify the plans to provide

3  appropriately for the IRS's tax claims including

4  interest at the statutory rate where that's

5  appropriate.  So it is our understanding that that

6  modification will also be made to the plans.

7          THE COURT:  Okay.

8          MR. DOLINGER:  Thank you.

9          MR. FRANKEL:  Yes, Judge, and the amounts are

10 not material and I will, I will work with, continue to

11 work with Mr. Dolinger and make sure that the

12 government's interests are protected.

13         THE COURT:  All right.  So I guess before we

14 go ahead, I did ask one question on the three plans

15 that pertain to the Israeli investors which I haven't

16 raised so far.  The debtor's reply to the disclosure

17 statement objection referred to discussions to send

18 those claims to arbitration, is that not finalized so

19 that wouldn't be in the disclosure statement?

20         MR. FRANKEL:  As far as I know, it has not

21 been finalized, but I have not spoken -- that's, I

22 have not spoken to the attorney at Herrick Feinstein

23 who is handling that, there's a lot of other defendants

24 and it's all part of a global arbitration agreement and I

25 just don't know the answer, but I will find out.

PROCEEDING                                                    28

1          THE COURT:  All right, you should check and if

2   there is an answer you should put it in, if there isn't then

3   you shouldn't put it in.

4          MR. FRANKEL:  All right.

5          THE COURT:  And then as to the treatment of those

6   claims, I did rule that certain of them were, in fact,

7   subject to statutory subordination under 510(B) of the code

8   to the level of equity interests. It wasn't clear to me, I

9   don't think the disclosure statement discusses that and it

10  should, where those claims have already been ruled on.  And

11  should just state that those claims will be treated as

12  equity interest to the extent allowed. And I'm just, I don't

13  recall which debtors they were at, but where they are

14  against a debtor then the disclosure statement should

15  reflect, I don't think you need a separate class because --

16  well it depends, I guess. If they're in the impaired class

17  in the sale plan you would need to provide for it, a

18  separate class. I just don't remember which debtors they

19  were against.

20         MR. FRANKEL:  I believe the claims were filed

21  against every debtor, but I will check.

22         THE COURT:  No, no, but my ruling only covered

23  specific ones.

24         MR. FRANKEL:  Oh.

25         THE COURT:  The ruling that found specific claims

1   to be 510(B) claims.

2         MR. FRANKEL:  Right, those were Jefferson,

3   Kingston, Lafayette and Franklin, I will check that.

4         THE COURT:  So that's the reinstatement plan then

5   I think.  So as an unsecured claim they don't, well they

6   don't vote, but they, but the ones that go to the level of

7   interest would have the right to vote, because interests are

8   impaired under the plan. So I think you need to set up a

9   separate class of 510(B) claims and say they have the same

10  treatment as the interest class --

11        MR. FRANKEL:  Okay.

12        THE COURT:  In the reinstatement plan and if

13  they're entitled to vote.

14        All right, why don't we turn then to the Brooklyn

15  Lender joint plan and first amended disclosure statement.

16  Again, I have reviewed this plan, including the one that was

17  filed on Sunday, and the disclosure statement and the

18  debtor's objection and Brooklyn Lender's reply.  Again, as I

19  always do, I have a number of comments on the plan and

20  disclosure statement, but I'm happy to hear from the debtor

21  and anyone else that wants to address the disclosure

22  statement first.

23        MR. ROSNER:  Your Honor, this is David Rosner

24  from Kasowitz Benson Torres, we're okay to have Your

25  Honor go ahead and give us comments and observations.

1              THE COURT:  Okay.

2              MR. FRANKEL:  And, Judge, on behalf of the

3    debtors, as we stated in our objection, the thrust of

4    our argument is that the consideration of plan

5    confirmation should be deferred and I think that that

6    argument was enhanced by the plan filed last night.

7    Because what's going to happen is that in order to get

8    to a confirmable plan with final orders on the claims

9    that are being subordinated, there is going to need to

10   be a lot of litigation which would be made moot by

11   confirmation of the debtor's plans or at least

12   partially moot. And we think that there is no need to

13   litigate those at this point, particularly since the

14   plan's been providing for a sale of all the

15   properties, essentially deny the debtors the right to

16   reinstate and refinance which we believe was preserved

17   by the bench ruling. And, therefore, we think that it

18   makes more sense to proceed quickly with the debtor's

19   plans and if those are not confirmed then to move onto

20   the Brooklyn Lender plan.

21             THE COURT:  Well, I think you'll see that

22   these plans may be on a different track, just as a

23   practical matter, towards confirmation.  So why don't

24   we go through the comments first and then I'll come

25   back to the schedule.

1          I am focusing first on the plan but there need

2   to be conforming changes to the disclosure statement.

3   First, the, I don't know if this is intentional, I'm

4   assuming it is because it appears consistently in the

5   document, but the effective date of the plan is

6   conditioned on the closing of the auction sale.  And

7   to me that raises a number of issues as to how the

8   plan can direct certain things to happen when it

9   hasn't gone effective yet, such as the auction,

10  itself.  Or the delay in assuming or rejecting

11  contracts which under 365 is up to confirmation, not

12  the effective date. So I think that needs to be

13  thought through, I'm just not sure how you contemplate

14  that happening.

15          Second, the auction procedures are nowhere

16  bound and it's a central aspect of this plan. Where

17  discussed, it contemplates one sale with one

18  purchaser, notwithstanding the great number of

19  debtors, which doesn't make sense. And we don't even

20  know who the broker is.  The definition of broker says

21  means Cushman & Wakefield or such other commercial

22  real estate broker appointed by the plan proponents

23  pursuant to the sale and bid procedures, which we

24  don't have. So all of those points need to be

25  clarified in a plan and a disclosure statement. One

1   can't consider a plan like this, which is a sale plan

2   dependent upon bid procedures, without knowing this

3   fundamental point.

4         As modified, the plan does have now a

5   subordinated creditor class, but oddly, it doesn't

6   include the 510(B) subordinated creditors, it just

7   includes the insider creditors, which is a problem

8   with the plan.  Let me just make sure I have the

9   section here on -- the 510(B) group needs to be in a

10  different class and their treatment needs to be

11  specified as being the same as the interest holders.

12        MR. STEIN:  Your Honor, one moment, this is

13  Matthew Stein on behalf of Brooklyn Lender. In the

14  plan the definition of interest includes subordinated

15  510(B) claims and, therefore, we've classified those

16  claims along with the class of interest holders.

17        THE COURT:  Okay.  But, and that includes for

18  voting purposes?

19        MR. STEIN:  It does, yes, Your Honor.

20        THE COURT:  Okay.  You should spell that out

21  in the disclosure statement in more detail than just

22  referring people to the definition of interest.

23        MR. STEIN:  Will do.

24        THE COURT:  The treatment of the Brooklyn

25  Lender secured claim I think provides, as I read it,

PROCEEDING                                          33

1  that notwithstanding the order on allowance, it

2  includes all interest, it includes the whole claim as

3  asserted, right?  If you go to page 11 --

4           MR. STEIN:  I'm looking at, Your Honor, this

5  is Matthew Stein for the record, that was not the

6  intent. The intent was that the parts of the claim

7  that had been denied by Your Honor are up on appeal,

8  but it does include interest and other costs. So we

9  can clarify, we can clarify that.

10           THE COURT:  Well you should just take the

11  sentence out, it just says, "Class two consists of the

12  allowed Brooklyn Lender secured claim."  Because to

13  the extent you're under secured it wouldn't include

14  interest and fees.

15           MR. STEIN:  Agreed.

16           THE COURT:  Okay.  And in the next sentence it

17  should say, "until its allowed claims are satisfied in

18  full."

19           And then this is an issue that runs through

20  the plan and disclosure statement.  When you look at

21  the Brooklyn Lender administrative expense

22  contribution and the treatment of administrative

23  expenses, it says that it shall be enough to pay them

24  in full. But when you looked to the claim distribution

25  enhancement it's defined as first a voluntary

1   contribution.  I'm not sure what that means.  Does

2   that mean that Brooklyn Lender can say I'm not

3   contributing it?  Or is it a committed contribution?

4          MR. STEIN:  It's committed because Brooklyn

5   Lender is proposing the plan.

6          THE COURT:  All right, so I think you should

7   take out, voluntary is just ambiguous and I think

8   Brooklyn Lender knows better than having it in there.

9   It just gives the purpose of enhancing the

10  distribution.  Although it does say at the end, "to

11  insure that the holders of such claims are paid in

12  full in cash," although now I believe it provides, if

13  I can go back to the Sunday plan, that that isn't the

14  case.  Let me just take a look at that.

15         No, it still just says, "to insure that the

16  holders of such claims are paid in full in cash."  But

17  that's not what you're doing, right?  There are

18  certain unsecured claims that you're not going to pay

19  in full in cash, you're not going to pay them at all.

20  So that needs to be changed.

21         MR. STEIN:  Your Honor, for the record,

22  Matthew Stein again, the definition of allowed general

23  and secured claims excludes claims that subordinated

24  or disallowed.  We can make sure that's crystal clear

25  but we also say that the claim distribution

1  enhancement is not intended to pay in full 510(B)

2  claims or other claims of the Israeli investors, or

3  claims of insiders.

4           THE COURT:  Okay.

5           MR. STEIN:  And the reason why the definition

6  of claim distribution enhancement was drafted the way

7  it is, is because the plan follows a waterfall

8  distribution and the enhancement is intended to true

9  up the administrative claim class and the general and

10 secured claim class to insure they do get paid in full

11 in cash.

12          THE COURT:  Okay, well on that point the

13 treatment section actually doesn't say that for class

14 three or class four. It says that if the funds are

15 insufficient to pay general allowed unsecured claims

16 in full in cash, they shall receive a distribution of

17 cash from the claim distribution enhancement. So I

18 think you need to say sufficient pay the allowed claim

19 in full.  Okay?

20          MR. STEIN:  Agreed, Your Honor.

21          THE COURT:  And then on the interest holder

22 and sub debt class, the plan says that they're

23 conclusively entitled to, they're conclusively deemed

24 to reject the plan, but that's not the case on your

25 1126(G) because it is a waterfall plan. The plan

1  doesn't say they're not getting anything.

2          MR. STEIN:  Your Honor, again for the record,

3  Matthew Stein, our thinking on this was that based on

4  values it's exceedingly unlikely for them to receive a

5  distribution.  If Your Honor thinks that we need to

6  solicit class five, then that is what we will do.

7          THE COURT:  Well, then should there just not,

8  I mean you can say they're not getting a distribution

9  but right now it's a waterfall plan to they would need

10 to vote.

11         I don't understand how, in the, on page 15 it

12 says, "the disbursing agent shall have no obligation

13 to file income tax returns or similar reports, such

14 obligation shall remain with the debtors." If the

15 effective date is happening only upon the sale, I

16 would think the post effective date tax reports which

17 are all on the distributions, would be prepared by the

18 disbursing agent, it's just the pre-petition, I'm

19 sorry, the pre-effective date reports that are

20 prepared by the debtors.

21         On page 18 there's a problem with 365(D)(2) in

22 having assumption or rejection be after the effective

23 date.  I think you can work it out in the sale

24 procedures but I just don't know how long it's going

25 to take between the confirmation date and the

PROCEEDING                                                37

1   effective date or how you're proposing that the debtor

2   do all the things that you want it to do and who is

3   acting on behalf of the debtor before the effective

4   date with regard to the option.

5           As far as the disclosure statement is

6   concerned, there's various provisions that need to be

7   fixed to conform with this, including the voting

8   statement on page 1, the treatment sections.

9   Obviously you need to talk about the sale procedures

10  differently and how the two contribution amounts work,

11  who is running the debtors pending the effective date,

12  page 11.  You also need to state in detail, because

13  I'm assuming this will be your basis for looking for

14  this since you now are looking for a Court ruling at

15  confirmation that the insider claims and the Israeli

16  investor claims are subordinated as to the basis for

17  that.

18          Similarly, because I'm assuming that this is

19  the document that will justify the third party release

20  and the ability to set off claims or estimation

21  claims, why more than just saying as the plan

22  proponent Brooklyn Lender is entitled to a third party

23  release and a release of any claims that the debtor

24  may have against it.  Which would include an estimate,

25  I believe, of the amounts of the monetary payments to

PROCEEDING                                      38

 1  be made under the plan by Brooklyn Lender.

 2          So I don't really know whether a mechanism

 3  will work or you can just provide a black line to

 4  chambers on this. It might, depending on the sale

 5  procedures and other changes you come up with, it

 6  might not. I'll let you try it and I'll see whether

 7  these fixes are clear enough or whether we need to

 8  have an adjourn date with a hearing on the disclosure

 9  statement. To be safe, you should get an adjourn date

10  just so you can have on reserved. You can always tell

11  Ms. Lee you don't need it based on my review of the

12  black line. But you should also send to Mr. Frankel.

13          MR. STEIN:  Will do, Your Honor, we will

14  provide your chambers and Mr. Frankel with an updated

15  amended plan and disclosure statement, I know they're

16  (indiscernible) tomorrow.

17          THE COURT:  Okay.  In the section about the

18  release where you're talking about the amount of money

19  that Brooklyn Lender is coming up with for the plan,

20  you should also give an estimate of the delay in costs

21  to Brooklyn Lender in simply foreclosing on each of

22  these properties.

23          MR. STEIN:  Will do.

24          THE COURT:  All right, does anyone have any

25  further thing to say for today's hearing or any

PROCEEDING                                              39

1   further questions?  So going back to Mr. Frankel's

2   point about scheduling, I am not going to hold up

3   either plan to wait for the other plan. I don't

4   believe that's warranted in this situation. So it is

5   quite possible that I would not schedule a

6   confirmation hearing on both plans at the same time. I

7   will see where the finalization of the disclosure

8   statement shakes out before scheduling.

9            MR. FRANKEL:  Great. Thank you, Your Honor.

10           THE COURT:  Very well. All right, hearing no

11  one else then, I'll sign off at this point.

12               (Whereupon the matter is adjourned.)

13  I, Carole Ludwig, court approved transcriber, certify that

14  the foregoing is a correct transcript from the official

15  electronic sound recording of the proceedings in the above-

16  entitled matter.

17

18

19  _____        _____

20      CAROLE LUDWIG                    April 14, 2021

21

22

23

24

25