

Kim M. Longo
212.237.1050
klongo@windelsmarx.com

156 West 56th Street | New York, NY 10019
T. 212.237.1000 | F. 212.262.1215

January 21, 2022

Honorable Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarrapos Street
White Plains, NY 10601-4140

Re:     *In re 53 Stanhope, LLC, et al., Case No. 19-23013 (RDD)*

Dear Judge Drain:

      We represent FREO U.S. Acquisitions, LLC ("FREO"), the stalking horse bidder for the recent auction of Debtors' properties. I write in support of the break-up fee ("Break-Up Fee") that is being sought by the Debtors for FREO, as contemplated by prior Order of this Court and in the Purchase and Sale Agreement between FREO and the Debtors dated December 17, 2021 (the "PSA") annexed as Exhibit C to the Debtors' Notice of Hearing to Approve Sale filed on January 12, 2022 [Doc. 342] (the "Notice of Hearing").

      Beginning in the latter half of 2021 and continuing through execution of the PSA, FREO and the Debtors engaged in good faith negotiations for the purchase of Debtors' properties, in accordance with the Debtors' Plan and Disclosure Statement [Doc. 245] (the "Plan") as approved by this Court by Order dated June 11, 2021 [Doc. 285] (the "Plan Confirmation Order"). During this period FREO also engaged in extensive due diligence on the thirteen real properties that are the subject of the sale. On December 17, the parties signed the PSA, which agreement provides for the "as is" sale of the properties for a stalking horse purchase price of $17.35 million.

      Per paragraph 1.04 of the PSA, FREO is to receive a break-up fee in the amount of 2% of the winning bid in the event FREO is not the highest bidder at auction.[1] This provision parrots the Bidding Procedures, as annexed to the Plan, which provide as follows:

> If Proponent consummates a sale of the Property to a third party other than the Mortgagee or the Mortgagee's designee, then Proponent shall pay the Stalking Horse 2% of the Purchase Price in cash following consummation of such alternative transaction.

      The auction was held on January 6 and 7, 2022, and FREO was outbid. The winning bid was $18,310,001, making the Break-Up Fee—at 2% of that amount—$366,200.02.

---

[1] The exact language is "$347,000.00 or 2% of the winning bid, whichever is higher." The $347,000 represents 2% of the $17.35 million stalking horse purchase price.

{12002565:1}    1

Honorable Robert D. Drain
January 21, 2022
Page 2

On January 13, 2022, Brooklyn Lender LLC ("Lender") filed a letter with this Court [Doc. 345] that among other things challenged the validity of the Break-Up Fee, followed by a formal objection filed on January 18, 2022 further elaborating on the points in its letter [Doc. 348]. Lender's objections are unfounded.

First, in light of the Plan Confirmation Order and approved Bidding Procedures therein, FREO is well within the bounds of reasonableness to expect such a fee to apply. FREO engaged in negotiations with Debtors and agreed to act as a stalking horse in reliance on the Plan's provisions. The PSA tracks the terms of the Bidding Procedures and seeks no fees or expenses beyond the percentage provided. It is disingenuous for Lender to assert that the stalking horse fee is "unapproved" simply because all bankruptcy sales are ultimately subject to final court approval. Break-up fees are regularly provided to stalking horses. And at 2% of the Purchase Price, the Break-Up Fee is in any event well within the range of reasonableness in comparison to other matters.[2]

Second, the Break-Up Fee was a necessary inducement to FREO to enter into the PSA, engage in the costly due diligence necessary to sufficiently vet the purchase of thirteen separate real properties, take on the risk of an "as is" purchase, and provide the minimum bid for auction for all of those properties. Now that FREO has lost the bidding, the Break-Up Fee is the sole method by which it might be compensated for its substantial efforts and expenditures.

Third, contrary to "chilling" the bidding, FREO's involvement provided a direct, quantifiable value to the auction process. As stated in Lender's objection, the winning bid of $18,310,001 is comprised of bids from each of the parties bidding on the individual properties. Doc. 348 at ¶ 59. At the end of bidding for the individual properties, the aggregate bids for those properties was only $15.65 million, and so FREO was still the leading bidder by a significant margin. *Id*. at ¶ 48. In order to succeed against FREO's $17.35 million bid, those individual bidders were required to increase their bids by over $2 million in the aggregate, which they did—forcing FREO to raise its own aggregate bid multiple times, before the individual bidders ultimately won, for almost $3 million more than if they had bid only against each other. *Id*. at ¶¶ 48, 53, 59. That increase in price from $15 to $18 million is directly attributable to FREO's willingness to act as the stalking horse and its participation in this auction, and would not have occurred if FREO had not been involved.

Finally, we note that Lender takes issue with various aspects of the auction itself, arguing that FREO's lack of value as a stalking horse is somehow evidenced by the issues that arose and were dealt with during the course of the auction. But despite Lender's significant efforts to paint the auction as "chaotic," its logic as to how such issues relate to the validity of the Break-Up Fee is at best difficult to follow. For example, Lender argues that the issue over FREO's right to a credit for the Break-Up Fee had it won the auction affected bidding, but fails to explain how. It also fails to explain why, in any event, a stalking horse's assertion of a right pursuant to the terms of its signed agreement may be used to invalidate its break-up fee. The results of the auction here speak for themselves. Lender's arguments seek only to divert the Court's attention from the fact that FREO's stalking horse bid provided a demonstrable benefit to the Debtors'

---

[2] *See, e.g., In re Metaldyne Corp, et al.*, 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009)

{12002565:1}                              2

Honorable Robert D. Drain
January 21, 2022
Page 3

estates, as detailed above.

    For all of the foregoing reasons, the Break-Up Fee sought here is appropriate and justified. FREO respectfully requests that the Court approve the Break-Up Fee of $366,200.02 as provided in the Plan and the PSA and reject any objections to same.

    Respectfully submitted,

    /s/ Kim M. Longo
    Kim M. Longo